*CASE NO. 03-945- PLAINTIFFS' APPENDIX OF UNREPORTED CASES, EXHIBIT 1*
**Accashian v. City of Danbury**
1999 WL 27223, 23 Conn. L. Rptr. 648 , Conn.Super., Jan 06, 1999
Not Reported in A.2d
Conn.Super.,1999.
Jan. 6, 1999.

RULING ON MOTIONS TO STRIKE OF THE CITY OF DANBURY AND CITY OFFICIALS

HODGSON.
*1 The above-captioned case involves claims for damages brought by hundreds of plaintiffs who claim to have suffered either personal injuries or damage to their real property as a result of alleged environmental contamination arising from the operation of the Danbury municipal landfill.

There are two groups of plaintiffs: persons who claim injury arising from their presence at the landfill as employees ("employee plaintiffs") and those who claim injury or loss arising from their residence in proximity to the landfill ("residential plaintiffs"). The plaintiffs have alleged liability against several categories of defendants: 1) the City of Danbury, 2) four named officials of the City of Danbury, 3) unidentified employees of the City denominated as "John Doe," and 4) corporations claimed to have deposited substances in the landfill that caused environmental pollution. All of the claims against the city and city officials are brought only by the residential plaintiffs.

The City of Danbury (on its own behalf and in connection with claims that it must indemnify the "John Doe" defendants) and the individual municipal officials, Mayor Gene F. Eriquez, Superintendent of Public Utilities William J. Buckley, Jr., and Coordinator of Environmental and Occupational Health Services Jack S. Kozuchowski, have moved to strike Counts One through Five, Seven, Nine, Eleven, Twelve, and Fourteen through Sixteen of the complaint, plus subparts (a) through (e) of paragraphs 299, 304 and 309, as well as the plaintiffs' claims for emotional distress and loss of spousal, filial, and parental consortium.

Standard of review
The function of a motion to strike is to test the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. *Novametrix Medical Systems, Inc. v. BOC Group, Inc.,* 224 Conn. 210, 214-15, 618 A.2d 25 (1992); *Ferryman v. Groton,* 212 Conn. 138, 142, 561 A.2d 432 (1989); Practice Book § 10-39.

In adjudicating a motion to strike, the court must construe the facts alleged in the complaint most favorably to the plaintiff. *Bohan v. Last,* 236 Conn. 670, 675, 674 A.2d 839 (1996); *Sassone v. Lepore,* 226 Conn. 773, 780, 629 A.2d 357 (1993); *Novametrix Medical Systems, Inc., v. BOC Group, Inc., supra,* 224 Conn. 215; *Gordon v. Bridgeport Housing Authority,* 208 Conn. 161, 170, 544 A.2d 1185 (1988). Conclusions of law without sufficient alleged facts to support them will not, however, withstand a motion to strike. *Fortini v. New England Log Homes, Inc.,* 4 Conn.App. 132, 134-35, 492 A.2d 545 (1985); cert. dismissed, 197 Conn. 801, 495 A.2d 280 (1985).

Governmental v. Proprietary Function--Counts One, Two and Three
*2 The city and the municipal employees claim that the operation of the landfill was a governmental activity, and that they are immune from claims arising from such operation. In *Elliott v. Waterbury,* 245 Conn. 385, 407-08, 411, 715 A.2d 27 (1998), the Connecticut Supreme

Court ruled that the scope of governmental immunity is defined in part by Conn. Gen.Stat. § 52-557n (which in part codifies some aspects of the common law on the subject) and in part by common law principles concerning such immunity. A municipal government is immune from liability for the performance of governmental acts that are discretionary, as opposed to ministerial, in nature. *Elliott v. Waterbury, supra,* 245 Conn. 411; *Evon v. Andrews,* 211 Conn. 501, 505, 559 A.2d 1131 (1989). Municipalities are not, however, immune from liability for acts that concern a proprietary, as opposed to a governmental, activity. *Id.* Section 52-557n(a)(1)(b) provides that "[e]xcept as otherwise provided by law, a political subdivision of that state shall be liable for damages to person or property caused by: ... negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit." The distinction between governmental and proprietary acts is not drawn on the basis of whether the activity serves the public. Operation or maintenance of the following public amenities has been ruled governmental rather than proprietary: storm sewers, *Spitzer v. Waterbury,* 113 Conn. 84, 154 A. 157 (1931); public parks, *Stradmore Development Corp. v. Commissioners,* 164 Conn. 548, 324 A.2d 919 (1973), and *Wysocki v. City of Derby,* 140 Conn. 173, 98 A.2d 659 (1953); swimming facilities, *Carta v. City of Norwalk,* 108 Conn. 697, 145 A. 158 (1929); fire departments, *O'Donnell v. Groton,* 108 Conn. 622, 144 A. 468 (1929); police services, *Gordon v. Bridgeport Housing Authority,* 208 Conn. 161, 544 A.2d 1185 (1988); and maintenance of fire hydrants, *Williams v. City of New Haven,* 243 Conn. 763, 707 A.2d 1251 (1998).

Provision of utilities for profit, such as the operation of a water works, has been ruled proprietary. *Abbott v. Bristol,* 167 Conn. 143, 355 A.2d 68 (1974); *Richmond v. City of Norwalk,* 96 Conn. 582, 115 A. 11 (1921); *Hourigan v. Norwich,* 77 Conn. 358, 59 A. 487 (1904).

A proprietary function is an act "done in the management of [a city's] property or rights for its own corporate benefit or profit and that of its inhabitants." *Richmond v. Norwich,* 96 Conn. 588. This court has not located, and the parties have not cited, any appellate Connecticut case characterizing the operation of a landfill as either proprietary or governmental in nature. The Connecticut Supreme Court has ruled that refuse disposal operations, unlike water utilities, are governmental functions: "[a] refuse disposal operation is generally held to be a governmental function." *Wood v. Wilton,* 156 Conn. 304, 310, 240 A.2d 904 (1968). The Court in that case was not, however, faced with facts indicating a proprietary method of operation of the facility at issue.

*3 The Supreme Court demonstrated in *Elliott v. Waterbury, supra,* that it does not look to the nature of the enterprise but to the nature of the specific activity that is alleged to give rise to liability. In *Elliott,* the city and its officials were alleged to have been negligent in allowing hunting on watershed property. The plaintiff in that case was a jogger accidentally killed by a hunter. The Court noted that in other cases in which operation of a water authority was found to be proprietary, the "allegedly tortious conduct of the municipalities was inextricably linked to the operation of the water utility for corporate gain," while the authorization of hunting on the premises was not so linked. *Elliott v. Waterbury, supra,* 245 Conn. 413. Since the actual acts in question were unrelated to the proprietary functions, the Court found that they involved discretionary activities to which immunity applied:

It is apparent, rather, that that activity consisted of a set of policy decisions--which the plaintiff concedes required the exercise of judgment and discretion--concerning the use of city land for recreational purposes. Moreover, the plaintiff does not allege, and there is no indication in the record, that Waterbury received corporate gain or benefit from the hunting. In these circumstances, we conclude that, as a matter of law, the conduct of which the plaintiff complains

constituted governmental, and not proprietary, acts.
*Elliott v. Waterbury, supra,* 245 Conn. 414.

The plaintiffs in the case before this court have argued that the characterization of an activity as governmental or proprietary is not a matter of law and must therefore be decided by the trier of fact. The plaintiffs cite a number of trial court rulings to this effect; however, our Supreme Court has recently determined otherwise in *Elliott,* finding the acts at issue to have been governmental, and affirming the trial court's granting of summary judgment on grounds of governmental immunity. In *Gordon v. Bridgeport Housing Authority, supra,* 208 Conn. 180-81, the Court likewise found that the characterization of a function as a private versus a public duty of a municipality was an issue of law, not of fact.

The plaintiffs in the case before this court allege, in effect, that in addition to operating a municipal landfill for the benefit of town residents, the city conducted a proprietary enterprise in that it accepted waste from entities that were not town residents in return for a per-load fee. They allege that the city accepted demolition waste and construction waste from non- residents, including out-of-state customers, in return for fees of thirty-five dollars per ton. The plaintiffs allege that between January 1995 and December 1996 the city's income from such tipping fees was approximately twelve million dollars.

*4 The issue of the status of the sewer treatment plant as a governmental or proprietary function likewise depends on the manner of operation. Under the standard of *Bohan v. Last, supra,* 260 Conn. 670: this court is unable to determine that there is no set of facts provable under the complaint that would support a finding that the sewer treatment plant is a proprietary rather than a governmental function, especially since sewer treatment plants are often operated, like water companies, as utilities.

Applying the standard applicable upon a motion to strike, this court cannot conclude that there is no set of facts provable under the allegations of the complaint that would lead to the characterization of the operations at issue as proprietary rather than governmental.

The municipal defendants assert that even if the conduct is proprietary, municipal immunity bars the claims if the acts complained of are discretionary in nature. The words of § 52-557n(a)(B) negate this assertion: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by ... negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit." The Supreme Court has ruled that the phrase "except as otherwise provided by law" means only statutory law, not common law. *Sanzone v. Board of Police Commissioner,* 219 Conn. 179, 191-92, 592 A.2d 912 (1991). Since the municipal defendants have cited no statute that provides immunity from liability from negligence in the performance of proprietary functions, the court cannot agree with its position that immunity applies as a matter of law.

The municipal defendants further argue that they cannot be held liable because § 52-557n(b)(9) provides that municipalities and their employees shall not be liable for "failure to detect or prevent pollution of the environment including groundwater, watercourses and wells, by individuals or entities other than the political subdivision." The plaintiffs have alleged liability based on the deeds of the municipal employees themselves, not on failure to detect the environmental torts of others. The exemption from liability is, on its face, not applicable.

The motion to strike is denied as to Counts One, Two and Three.

Motion to Strike Certain allegations of Negligence

The municipal defendants have moved to strike certain allegations in the plaintiffs' complaint on the grounds that these paragraphs do not state a cognizable cause of action. The paragraphs so

challenged are subparagraphs a), c), d), and e) of paragraphs 299, 304, and 309. Though these subsections are inartfully pleaded as if they stated discrete instances of negligence, under the favorable reading required by case law, they may be read as the plaintiffs' allegations of knowledge of the dangers of accepting and handling particular kinds of waste in the manner that these defendants are alleged to have done. While the defendants object that they were authorized to accept such waste, such factual defenses cannot be considered upon a motion to strike. The defendants ask this court to accept the allegations in their brief that they received only materials authorized and dealt with them only in authorized ways. In short, the municipal defendants invite a trial on the merits under the guise of adjudicating a motion to strike. As has been discussed above, they have mistaken the function of the motion.

*5 The motion is denied as to these paragraphs, without reaching the issue whether discrete paragraphs of a complaint, rather than claims, can be stricken.

"John Doe" Defendants--Count Four

The City has moved to strike claims that it has a duty to indemnify pursuant to Conn. Gen.Stat. § 7-465 unnamed, unserved defendants designated "John Doe" in Count Four of the complaint. Count Four contains claims of negligence against up to one hundred "John Does" who are claimed to be municipal employees. In Count Five, the plaintiffs seek indemnification of all municipal employees, including, presumably, the John Does. Section 7-465 provides that the City must "pay on behalf of any employee of such municipality .... all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded ... for physical damages to person or property ... if the employee, at the time of the occurrence, ... was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty."

The sheriff's return indicates that no "John Doe" has been served either in person or at his place of abode as required by Conn. Gen.Stat. § 52-57(a). Accordingly, there is no valid pending suit against any municipal employee other than the three individually named and served.

The City's duty to indemnify is contingent on the bringing of suit against a municipal employee within the scope of § 7-465. No such claims are pending, as the "John Does" have not been identified and served. See Conn. Gen.Stat. §§ 52-54 and 57(a). While the City has no standing to move to strike the claims against the "John Doe" employees, it has standing to move to strike the claim of indemnification. Accordingly, the motion to strike Count Four is denied; the motion to strike indemnification claims arising from the claimed liability of "John Doe" defendants is granted.

Indemnification--Count Five

In Count Five, the plaintiffs allege that the individual municipal defendants were negligent in their operation of the landfill and that the City is required to indemnify them pursuant to Conn. Gen.Stat. § 7-465. The individual municipal defendants invoke municipal immunity; however, this ground must be rejected for the same reasons as are discussed above in connection with the first three counts of the complaint. Section 7-465, moreover, provides that "[g]overnmental immunity shall not be a defense in any action brought under this section."

The municipal defendants additionally claim that the plaintiffs have failed to state a cause of action because they have failed to comply with the requirement stated in § 7-465(a) that they provide written notice of the intention to commence their action. The plaintiffs have alleged the giving of such notice. The City has moved to strike on the ground that the plaintiffs failed to comply with Practice Book § 10-68, which provides that "[w]henever in an action of tort or upon

a statute the plaintiff is compelled to allege the giving of a notice required by statute, the plaintiff shall either recite the same in the complaint or annex a copy thereto."

*6 If the municipal defendants had wished to enforce the pleading requirements of Practice Book § 10-68, they could have requested that the plaintiffs revise their complaint to attach each notice alleged to have been provided. Instead, their request to revise then-paragraph 131, in which the plaintiffs alleged that they had filed written notice with the Town Clerk "of their intention to commence an action for personal injuries and a general description of same and the cause thereof" was as follows: "Defendants request that this paragraph be deleted in its entirety, as it is repetitive of Count Five and therefore improper." Since § 10-68 merely states the manner in which notice should be pleaded, by failing to request a revision to require pleading in the prescribed form, the defendants acceded to the plaintiffs' choice merely to allege that they had filed notices of the kind required by Conn. Gen.Stat. § 7-465.

The City now attempts to convert a Practice Book provision concerning the form of pleading into a substantive provision concerning the sufficiency of the cause of action under § 7-465. The plaintiffs allege that they have provided the requisite notice of the claim. Under that allegation, they may produce at trial the notice that their claim constitutes their compliance with this prerequisite. If the City wishes to test the sufficiency of the notice prior to trial, it may do so by a motion for summary judgment, such that the plaintiffs will have an opportunity to file the documents to which the allegations of compliance made in the complaint must refer. The Supreme Court noted in *Bresnan v. Frankel,* 224 Conn. 23, 28, 615 A.2d 1040 (1992), that the court may determine as a matter of law whether a required notice is patently inadequate or whether its adequacy is a jury issue.

The motion to strike Count Five is denied, except with respect to the "John Doe" defendants, as set forth above.

Negligence based on non-compliance with Conn. Gen.Stat. § 22a-427--Count Seven

Section 22a-247 provides that "[n]o person or municipality shall cause pollution of any of the waters of the state or maintain a discharge of any treated or untreated wastes in violation of any provision of this chapter." The chapter referred to is the Water Pollution Control Chapter, 446k. The defendants assert that Count Seven should be stricken because the cited statute is not enforceable by a private cause of action. In fact, the plaintiffs quite clearly are not attempting to maintain a direct cause of action based on the cited statute or to enforce statutory remedies. The plaintiffs have quite explicitly pleaded that it was negligent of the defendants to engage in conduct that failed to comply with the standard required by the statute. Negligence is the failure to use the required care in a situation. As the Connecticut Supreme Court has steadfastly held, a duty of care may derive from contract, from common law or from a statute. *Coburn v. Lenox Homes, Inc.,* 186 Conn. 370, 375, 441 A.2d 620 (1982); *Neil v. Shiels, Inc.,* 166 Conn. 3, 12-13, 347 A.2d 102 (1974); *Connecticut Savings Bank of New Haven v. First National Bank & Trust Co. of New Haven,* 138 Conn. 298, 303-04, 84 A.2d 267 (1951); *Orlo v. Connecticut Co.,* 128 Conn. 231, 237, 21 A.2d 402 (1941).

*7 In *Commercial Union Ins. Co. v. Frank Perrotti & Sons, Inc.,* 20 Conn.App. 253, 260, 566 A.2d 431 (1989), the Appellate Court ruled that a municipal ordinance requiring separation of combustible materials from other trash could supply the standard of care in a claim based on negligence in disposing of flammable fuel in a load of trash. The court did not treat the allegation as an attempt to bring a direct cause of action under the ordinance, which was enforceable by municipal authorities. It is, of course, commonplace for plaintiffs alleging negligent operation of motor vehicles to claim that violation of traffic control statutes constitutes negligence per se. The

fact that such statutes are enforceable by the police has never been viewed as a reason to prohibit plaintiffs from invoking the standards of care stated in them in claims of negligence.

Violations of statutory standards may be the basis of a claim of negligence per se "if the plaintiff is within the class of persons whom the statute was intended to protect and if the harm was of the type that the enactment was intended to prevent." Wright and Fitzgerald, Connecticut Law of Torts, 38 (1968).

The municipal defendants argue that the prohibition against discharge of wastes in manners prohibited by provisions of Chapter 446k is an enactment not meant for protection of persons living in proximity to an alleged hazardous discharge, but rather only for the benefit of the Commissioner of Environmental Protection. This argument is akin to saying that the traffic laws exist for the benefit of the police who enforce them.

This court finds persuasive the conclusion of the court in *Goodrich v. Jennings,* Superior Court, Judicial District of New Haven, Docket No. 150074 (May 22, 1997), 19 CONN. L. RPTR. 544, 1997 WL 297732, that the cited statute may be the basis for a claim of negligence per se in discharge of waste.

The motion to strike Count Seven is denied.

Strict liability--Count Nine

The plaintiffs claim in Count Nine of their complaint that accepting hazardous and toxic substances in the Danbury landfill and discharging or allowing the discharge of hazardous and toxic substances constituted knowingly engaging in an abnormally dangerous activity and that as a result of the defendants conducting these activities, the plaintiffs were injured. The defendants have moved to strike on the ground that the activities at issue do not constitute ultrahazardous activities of the kind that should give rise to strict liability.

An ultrahazardous activity for the conduct of which strict liability for damages is imposed is one that poses danger even if due care is exercised. *Caporale v. C.W. Blakeslee & Sons, Inc.,* 149 Conn. 79, 85, 175 A.2d 561 (1961); *Green v. Ensign-Bickford Co.,* 25 Conn.App. 479, 485, 595 A.2d 1383 (1991). Just three activities have been held to be ultrahazardous to date by the appellate courts of this state: blasting, *Whitman Hotel Corporation v. Elliott & Watrous Engineering Co.,* 137 Conn. 562, 570, 79 A.2d 591 (1951); pile-driving, *Caporale v. C.W. Blakeslee & Sons, Inc., supra* ; and manufacturing explosives, *Green v. Ensign-Bickford, supra,* 25 Conn.App. 486.

*8 The Appellate Court ruled in *Green v. Ensign Bickford Co., Id.*, that the characterization of an activity as ultrahazardous is a question of law for the court to determine; and the court approved adherence to the factors listed at § 520 of the Restatement (Second) of Torts, in determining whether an activity is, as a matter of law, ultrahazardous:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) extent to which its value to the community is outweighed by its dangerous attributes.

The actual materials that the plaintiffs claim are to blame for toxic conditions are demolition debris and construction debris. These are common substances which do not pose the same degree of risk as, for example, explosives. State and federal regulatory schemes suggest that these materials do not pose a hazard if handled properly. See Conn. Gen.Stat. §§ 22a-114 through 134q. While they may be hazardous to some degree, this court cannot conclude, after considering all the factors set forth above, that it is an ultrahazardous activity to receive and process these materials in a landfill facility.

The plaintiffs note that a federal trial court found receipt of hazardous and toxic wastes by a landfill to be an ultrahazardous activity in *Albahary v. Bristol,* 963 F.Supp. 150 (D.Conn.1997). The court in that case purported to distinguish storage of hazardous substances as giving or not giving rise to strict liability depending on the locus of the storage, declining to follow rulings by other federal judges holding that storage of such materials at various places of business was not an ultrahazardous activity. One of the factors set forth in the Restatement is the appropriateness of the activity to the place where it is conducted. The storage of hazardous materials in a landfill facility under the supervision of state, federal, and local regulatory authorities cannot logically be a reason for finding strict liability if storage at less equipped, less supervised locations does not. This court does not find the reasoning in *Albahary* persuasive.

The motion to strike Count Nine of the complaint is granted.

Trespass--Count Eleven

The movants challenge the legal sufficiency of Count Eleven, in which the plaintiffs claim that discharge of materials from the landfill constituted a trespass that damaged their property. The sole ground raised by the movants is the failure to allege an intent to invade the property of the plaintiffs.

The Restatement of Torts (Second) sets forth the elements of a cause of action for trespass to stand in Section 158:

One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally

*9 (a) enters land in the possession of the other, or causes a thing or a third person to do so, or

(b) remains on the land, or

(c) fails to remove from the land a thing which he is under a duty to remove.

The plaintiffs assert that they have adequately pleaded facts supporting the element of intent by alleging that the landfill was unlined and that it was contiguous to wetlands. The Comments to § 158(a) of the Restatement indicate that intent to invade another's land may be established by showing conduct of a kind substantially certain to result in an invasion: "It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter. Thus one who so piles sand close to his boundary that by force of gravity alone it slides down onto his neighbor's land or who so builds an embankment that during ordinary rainfalls the dirt from it is washed upon adjacent lands, becomes a trespasser on the other's land."

Courts in other cases involving alleged leaching of liquids or aerial transmissions of dust have found that a cause of action in trespass could be maintained. See *P.R.I.C.E. v. Keeney,* Docket No. CV 94-0542469, 22 CONN. L. R PTR. 373, 1998 WL 417591 (Conn.Super.7/10/98); *Ahnert v. Getty,* Docket No. 537008, 1997 WL 178064 (4/4/97).

The motion to strike Count Eleven is denied.

Public nuisance--Count Twelve

The plaintiffs claim at Count Twelve of their complaint that the municipal defendants are liable for creating a public nuisance. In order to maintain such a cause of action, a plaintiff must plead facts to support the following elements of proof "1) the condition complained of has a natural tendency to create danger and inflict injury upon person and property; 2) the danger created was a continuing one; 3) the use of the land was unreasonable or unlawful; and 4) the existence of the nuisance was the proximate cause of the plaintiff's injuries and damages.'*State v. Tippetts-AbbettMcCarthy-Stratton,* 204 Conn. 177, 183, 527 A.2d 688 (1987). Where the alleged creator of the nuisance is a municipality, another element is required: "the plaintiff must prove that the defendants, by some positive act, intentionally created the condition alleged to constitute a

nuisance." *Elliott v. Waterbury, supra,* 245 Conn. 421, citing *Keeney v. Old Saybrook,* 237 Conn. 135, 165-66, 676 A.2d 795 (1996) ("*Keeney I*"), and *Wright v. Brown,* 167 Conn. 464, 470, 356 A.2d 176 (1975).

In *Elliott v. Waterbury, supra,* the claimed nuisance involved hunting being permitted in a watershed area. Since the plaintiffs had not alleged that the town of Morris permitted hunting on the portion of the watershed property within the boundaries of the town, summary judgment was held to have been properly granted as to the nuisance claim against the town of Morris. By contrast, our Supreme Court reversed summary judgment on the nuisance claim against the City of Waterbury, which had opened its land to hunters.

*10 A plaintiff must allege and prove that the municipality intentionally created the condition claimed to be a nuisance. In *Keeney I, supra,* 237 Conn. 163, the Supreme Court announced the rule that "an interference with the public right is intentional if the municipality ... knows that it is resulting or is substantially certain to result from its conduct." The Court noted that "it is not enough to make an invasion intentional that the actor realizes or should realize that its conduct involves a serious risk or likelihood of causing the invasion. The actor must either act for the purpose of causing it or know that it is resulting or is substantially certain to result from the actor's conduct."*Keeney I, supra,* 237 Conn. 163-64, citing 4 Restatement (Second) Torts § 825 (1979).

The plaintiffs allege at paragraphs 344 through 347 that the municipal defendants knowingly permitted the demolition and construction debris to be deposited. The only allegation they make as to intent to cause the result of danger or harm from invasion of the rights of others, however, is the allegation at subparagraph (e) of paragraphs 299, 304 and 309 that the defendants "knew or should have known of the possibility" that toxic substances would be created. Such an allegation is a far cry from the standard required by the Supreme Court in *Keeney I, supra.* The plaintiffs have neither alleged knowledge of the result or substantial certainty of the result of allowing the dumping of demolition and construction materials nor have they alleged facts that would lead to an inference of such knowledge. At most, the factual allegations are that the municipal defendants knew the dumping was occurring, not what the result was or was likely to be. In contrast to a cause of action for trespass, which requires only substantial certainty of invasion, a cause of action in nuisance requires substantial certainty of danger from that invasion.

The plaintiffs urge that their nuisance count should survive even though they have failed to plead, even in a conclusory manner, the level of intent required under *Keeney I.* This position cannot be adopted. A plaintiff must allege facts that support all required elements of the cause of action.

The motion to strike Count Twelve is granted.

Private nuisance--Count Fourteen

In Count Fourteen, the plaintiffs allege private nuisance not against the City itself, but only against the individual municipal defendants. These employees argue that operation of the landfill is a governmental function and that municipal immunity applies to the creation of a private nuisance. As has been discussed above, the pleadings are sufficient to support a claim that the actions complained of were proprietary rather than governmental. It is, however, not likely that municipal immunity bars a cause of action in nuisance, since Conn. Gen.Stat. § 52-557n specifies that immunity applies to damages caused by negligent acts. That statute, at subsection (a)(1)(C) provides that a municipality is liable for acts "which constitute the creation or participation in the creation of a nuisance."

*11 The plaintiffs assume that the same element of intent required for proof of a public nuisance

is not required where a private nuisance is alleged. This court does not agree. The distinction between private and public nuisance is only in the identity of the injured party, not the nature of the conduct. A private nuisance is the creation of a condition that causes damage to the property of another; a public nuisance is the creation of a condition that causes damage to the public in general. See 4 Restatement (Second) Torts §§ 821B and 821D. The Restatement, on which the Supreme Court relied in *Elliott, supra,* makes no distinction on the basis of private/public harm in the elements of proof of wrongful conduct; rather, it specifies the same elements with regard to both public and private nuisance:

The conduct necessary to make the actor liable for either a public or a private nuisance may consist of

(A) an act; or

(B) a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference with the public interest or the invasion of the private interest. 4 Restatement (Second) Torts § 824.

Section 825 of the Restatement, the section relied upon by the Supreme Court in *Keeney I* with regard to the need to allege knowledge or substantial certainty of harm, is followed by a Comment that indicates that "the rule here stated applies to conduct that results in a private nuisance."

Whether the nuisance alleged is private or public in its consequences, a plaintiff must allege intent to create a nuisance, that is, that the actor knew of the dangerous result or was reasonably certain of its occurrence. The allegations of Count Fourteen contain no such allegations of intent. The motion to strike this count is therefore granted.

Inverse condemnation--Count Fifteen

In the various paragraphs of the revised complaint in which the identity of each plaintiff is set forth, the residential plaintiffs allege that they reside in premises alleged to be in proximity to the Danbury landfill. In Count Fifteen, the plaintiffs reallege paragraphs 1 through 362, in which these allegations of residence are set forth, yet claim, conclusorily, that "the physical invasion, contamination and stigmatization of Residential Plaintiffs' property caused by the Municipal Defendants' operation of the Danbury landfill and/or the Danbury Sewage Treatment Plant has deprived Residential Plaintiffs of substantially all of the value of their property."

None of the plaintiffs has alleged that he or she has been forced to move out of his or her residence because of environmental contamination; rather, the plaintiffs allege "substantial devaluation," a term that ordinarily means a lessening of value.

A landowner is not eligible for compensation for a diminution in the value of property because of municipal activities "unless the property cannot be utilized for any reasonable and proper purpose ... as where the economic utilization of the land is, for all practical purposes, destroyed." *Tamm v. Burns,* 222 Conn. 280, 284, 610 A.2d 590 (1992), quoting *Horak v. State,* 171 Conn. 257, 261, 368 A.2d 155 (1976). The plaintiffs have not alleged the requisite completeness of dimunution of value and usefulness of their properties, which they acknowledge in their pleadings still furnish them with residences.

*12 The motion to strike Count Fifteen is granted.

Claim for clean-up costs pursuant to Conn. Gen.Stat. § 22a-452--Count Sixteen

The plaintiffs claim in Count Sixteen that the defendant City of Danbury is liable to them for clean-up costs that they have encountered or will encounter for removal of discharged substances from their properties. Section 22a- 452(a) provides that "a person, firm, corporation or municipality" that contains, removes or mitigates the effects of discharge of hazardous wastes

"shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended ..." On its face, the statute does not include municipalities among the kinds of entities from whom reimbursement may be sought. Since the statute was amended by Public Act 86-239, § 12, to specifically list municipalities as among those entities that can recover for performing a clean-up, the General Assembly was being quite specific in identifying rights and exposures according to the identity of the entity. The omission of "municipalities" from the listing of entities from which reimbursement is available must therefore be given effect.

"In construing a statutory provision, [the court] first look[s] to its language, and if that language is plain and unambiguous, [the court] need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature." (Internal quotation marks omitted.) *Samperi v. Inland Wetlands Agency,* 226 Conn. 579, 590, 628 A.2d 1286 (1993); *Nicotra Wieler Inv. Management, Inc. v. Grower,* 207 Conn. 441, 455, 541 A.2d 1226 (1988). "Unless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive." *Dowling v. Slotnik,* 244 Conn. 781, 803, 712 A.2d 396 (1998). The motion to strike Count Sixteen is granted.

Loss of Consortium Claims

The municipal defendants have moved to strike all claims for loss of consortium. The motion is granted as to claims of parental/filial consortium, as the Supreme Court has rejected such claims in *Mendillo v. Board of Education,* 246 Conn. 456, 717 A.2d 1177 (1998).

The movants seek an order striking the claims of spousal loss of consortium on the ground that the plaintiffs have failed to plead such causes of action sufficiently.

In each count of their complaint, the plaintiffs have alleged injury to themselves and, in a list of damages, they have alleged that they "have been deprived of the services, consortium, care and society of their spouses." This court cannot conclude that this allegation would not support proof that each plaintiff was married to one of the other named plaintiffs at the time of the claimed harm. If the defendants really had desired each of the hundreds of plaintiffs to allege that he or she was married to the other plaintiff identified in the same paragraph of the complaint, such corrections to the form of pleading could have been achieved by way of a request to revise.

*13 The motion to strike the claims for loss of spousal consortium is denied.

Claims for damages for emotional distress

The municipal defendants have moved to strike the plaintiffs'  claims for damages for emotional distress as an element of damages in Counts One, Two, Three, Four, Seven, Nine, Eleven, Twelve and Fourteen. The defendants offer the patently frivolous argument that emotional distress is not available as an element of damages unless the plaintiffs assert a cause of action for negligent or intentional infliction of emotional distress. The total vacuity of this position would lead to incredulity that it could be submitted for adjudication; however, the municipal defendants have actually included the following statement in their brief: "(P)laintiffs'  bare assertions that they suffered emotional distress, as a result of the defendants'  alleged negligence falls well short of meeting that standard (of a cause of action for negligent infliction of emotional distress). Therefore, the plaintiffs'  claim for damages arising from emotional distress must be stricken." Plaintiffs quite plainly have alleged that among the various kinds of harm that they have suffered as a result of the defendants'  alleged negligence is emotional distress at the discharge of toxic substances into the land, water and air around them. It is unequivocally the law of Connecticut that mental suffering or emotional distress may be an element of damages arising from negligent conduct. See, e.g., *Orlo v. Connecticut Co.,* 128 Conn. 231, 239, 21 A.2d 402 (1941); *Bushnell v. Bushnell,* 103 Conn. 583, 594, 131 A. 432 (1925).

The motion to strike claims for emotional distress arising from the movants' alleged negligence is denied. Since the movants have not briefed any ground for striking the claims for emotional distress in the counts that are based on causes of action other than negligence, the motion is denied as to those counts as well.

Conclusion

The motion to strike is granted as to the indemnification claims against the City in Counts Four, Nine, Twelve, Fourteen, Fifteen and Sixteen and the claims for damages for loss of filial/parental consortium.

The motion to strike is denied as to Counts One, Two, Three, Five, Seven, Eleven, as to claims for emotional distress caused by the movants' negligence, as to the challenged portions of paragraphs 299, 304 and 309, and as to claims of loss of spousal consortium.

Conn.Super.,1999.

Accashian v. City of Danbury

1999 WL 27223 (Conn.Super.), 23 Conn. L. Rptr. 648

END OF DOCUMENT

*CASE NO. 03-945- PLAINTIFFS' APPENDIX OF UNREPORTED CASES, EXHIBIT 2*
**Accashian v. City of Danbury**

2000 WL 157926, 26 Conn. L. Rptr. 287, Conn.Super., Jan 27, 2000

Not Reported in A.2d

Conn.Super.,2000.

Jan. 27, 2000.

MEMORANDUM OF DECISION ON DEFENDANT CITY OF DANBURY'S MOTION TO STRIKE PORTIONS
OF THE FIFTH AMENDMENT COMPLAINT

HODGSON.

*1 The above-captioned action concerns claims by the plaintiffs for damages resulting from the operation of the Danbury landfill. By an order issued January 6, 1999, this court granted in part a motion to strike claims against the City of Danbury in the plaintiffs' fourth amended complaint. The plaintiffs have pleaded over, and the City of Danbury ("City") has moved to strike nine counts of the fifth amended complaint: Counts 4, 5, 8, 11, 12, 14,15,16 and 17.

Standard of review

The function of a motion to strike is to test the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. *Novametrix Medical Systems, Inc. v. BOC Group, Inc.,* 224 Conn. 210, 214-15 (1992); *Ferryman v. Groton,* 212 Conn. 138, 142 (1989); Practice Book § 10-39.

In adjudicating a motion to strike, the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff. *Bohan v. Last,* 236 Conn. 670, 675 (1996); *Sassone v. Lepore,* 226 Conn. 773, 780 (1993); *Novametrix Medical Systems, Inc. v. BOC Group, Inc., supra,* 224 Conn. 215; *Gordon v. Bridgeport Housing Authority,* 208 Conn. 161, 170 (1998). The requirement of favorable construction does not extend, however, to legal opinions or conclusions stated in the complaint, but only to factual allegations and the facts "necessarily implied and fairly provable under the allegations." *Forbes v. Ballaro,* 31 Conn.App. 235, 239 (1993).

Conclusory statements or statements of legal effect not supported by allegations of fact will not enable a complaint to withstand a motion to Strike. *Mingachos v. CBS, Inc.,* 196 Conn. 191, 108 (1985); *Fortini v. New England Log Homes, Inc.,* 4 Conn.App. 132, 134-35, cert. dismissed, 197 Conn. 801 (1985).

Counts 4 and 5 "John Doe" claims

Counts 4 and 5 of the current complaint, like counts 4 and 5 of the prior complaint, allege tortious conduct by unnamed John Doe employees of the City of Danbury, who have been neither named nor served with process. For the same reasons that these claims were stricken in the court's January 6, 1999 ruling on the motion to strike the prior complaint, these counts are stricken.

Count 8 Strict liability

In pleading over, the plaintiffs again allege that operating a landfill is an inherently ultrahazardous activity to which the doctrine of strict liability applies. This claim repeats the claim of strict liability stricken by this court in the January 6, 1999 ruling. The plaintiffs allege that they have amended their factual allegations to include the claim that the activity alleged to be ultrahazardous is the City's "acceptance, over the last five or six decades, of a variety of carginogenic, teratogenic, and otherwise toxic chemicals and industrial waste" at the landfill site. While the plaintiffs characterize their allegations as a claim that the City disposed of toxic wastes at the site, at oral argument they conceded that they do not allege that the City disposed of waste but only that it accepted at the landfill wastes disposed of by others. This court ruled in connection with the 1998 motion to strike that storage of wastes is not the sort of ultrahazardous activity that is associated with causing damage even if precautions are taken. The plaintiffs now seek to characterize the maintenance of a landfill not as storage but as disposal, even though they do not allege that the City itself disposed of any toxic material on the site.

*2 The court finds that the operation of a landfill is not an ultrahazardous activity giving rise to strict liability, as detailed in the 1999 ruling, and that the plaintiffs' amendments have added nothing to alter that analysis or conclusion. The motion to strike this count is granted.

Count 11 Trespass

This court previously denied the City's motion to strike the plaintiffs' claim of trespass. In its present challenge to the trespass count in the fifth amended complaint, the City cites a trial court ruling striking a claim of trespass. In *Mather v. Birken Manufacturing Co.,* 23 CONN.L.RPTR. 13, 1998 WL 920267 (December 8, 1998), the court, Hennessey, J., granted a motion to strike a trespass claim where the plaintiff had failed to allege facts sufficient to support a finding that the defendant's invasion of the plaintiff's property was intentional. The court in that case concluded that the allegations did not indicate that the defendant's act was "done with knowledge that it [would] to a substantial certainty result in the entry of the foreign matter on the property" of the plaintiff. *Mather v. Birken Manufacturing Co., supra,* 23 CONN.L.RPTR. 13, 1998 WL 920267, p. 3.

By contrast, in this case the plaintiffs have alleged that the City was put on notice in 1987 by inspectors from the Environmental Protection Agency that the groundwater had been contaminated and that leaching from the unlined landfill would continue into the groundwater, and that the City was aware that the landfill is situated above an aquifer. An aquifer is an underground stream that flows under the land, and the plaintiffs thus allege, in effect, that operation of the landfill after knowledge of contamination of the groundwater posed a substantial likelihood of contamination of land affected by the aquifer.

The motion to strike the plaintiffs' trespass claim is again denied.

Courts 12 through 17 Nuisance

In counts Twelve through Seventeen, the plaintiffs allege that the City is liable for creating a nuisance, specifically, the release into the groundwater and soil and air of toxic and hazardous wastes from the Danbury landfill. In their Fifth Amended Complaint, unlike the prior complaint, the plaintiffs plead factual allegations that, if proven, could support a finding that the City continued to create and/or maintain the conditions complained of after learning the likely effects of the activities at issue. (See paragraph 371-72.) Contrary to the City's view, these factual allegations include knowledge by the City that wastes had entered the groundwater. The allegation that the unlined landfill lay on an aquifer is sufficient to support an inference of knowledge of likely harm to properties affected by that aquifer.

The nuisance claim was stricken from the prior complaint for failure to allege facts that would support a finding that the failure to respond to reports of conditions affecting the property of others was the equivalent of a "positive act" within the holding of _Keeney v. Old Saybrook,_ 237 Conn. 135, 165-66 (1996). The plaintiffs have now remedied that deficiency.

*3 The City claims in its motion that a further reason to strike the nuisance claims is that an additional element of intent to cause an intrusion on to surrounding properties is required. The Connecticut Supreme Court stated in _Elliott v. Waterbury,_ 245 Conn. 385, 421 (1998): "Finally, in order to overcome the governmental immunity of municipal defendants where it applies, the plaintiff must prove that the defendants, by some positive act, intentionally created the conditions alleged to constitute a nuisance." The reference to "intent," taken by the City as creating a new requirement for a cause of action in nuisance against a municipality, is more accurately read as merely synonymous with the longstanding requirement that the condition claimed to constitute a nuisance must be the result of a positive act in creating the condition, as distinguished from an omission. See _Hoffman v. Bristol,_ 113 Conn. 386, 390-92 (1931); _Prifty v. Waterbury,_ 133 Conn. 654 (1947); _Wright v. Brown,_ 167 Conn. 464, 470 (1975).

In _Keeney v. Old Saybrook, supra,_ 237 Conn. 165-66, the Supreme Court amended the law of nuisance claims against municipal defendants only by recognizing that a steadfast refusal to change a situation known to cause an intrusion on the property of others satisfied the requirement of a showing of a "positive act," since the prolonged continuation of the status quo with knowledge of the results evidenced a choice by the town to let the condition exist. The distinction after _Keene_ is between conditions caused by the failure of a municipality to remedy an intrusion unexpectedly created by others and conditions that are, in effect, adopted as the acts of the municipality after prolonged knowledge of their effect or likely effect on the property of others, after an opportunity to pursue some other course than maintaining the condition created. The former are omissions: failure to remedy conditions created by others, and do not support a cause of action against a municipality for having created a nuisance; the latter are positive acts that support a cause of action in nuisance.

The Supreme Court in _Keeney v. Old Saybrook, supra,_ 237 Conn. 165, noted that "a municipality may be liable for nuisance it creates through its negligent misfeasance or nonfeasance even if that misfeasance or nonfeasance also constitutes negligence." This statement specifically negates any implication that in order to be liable in nuisance a municipality must have acted intentionally, rather than negligently, in the creation of the condition claimed to constitute a nuisance.

In using the term "intent" in _Elliott v. Waterbury, supra,_ 245 Conn. 385, the Supreme Court did not announce that it was departing from the longstanding principle that a cause of action in nuisance against a municipality could arise from a positive act that was merely negligent and that

henceforth only intentionally-caused conditions would give rise to a nuisance claim against a municipality. Instead, the Court in *Elliott* cited with approval the cases cited above, signaling an intent to apply, not alter the standards they delineate for this cause of action. In applying the principles it had discussed, the Court in *Elliott* found that the town of Morris had no role in deciding that hunting could take place on the road at issue, defeating the claim that hunting in the area, the condition claimed to constitute a nuisance, was the result of a positive act by the town of Morris. Though the use of the word "intentional" to explain "positive act" creates the appearance adoption of the adoption of a new standard, the Court's actual ruling on the nuisance claim in *Elliott* turns on whether the claimed nuisance resulted from an act of the town, not whether the town intended an intrusion. [FN1]

> FN1. See the well-reasoned discussion of this point in Calibey and Hammond, "Significant 1998 Tort Law Developments," 73 Conn.Bar J. 317, 328-29 (Oct.1999).

\*4 The only ground stated in the motion to strike regarding Counts Twelve through Seventeen is the absence of allegations establishing intent to cause an intrusion or cause damage. Having found that allegations of intentional conduct are not a required element of the cause of action in nuisance against a municipal defendant, and that the factual allegations of the present complaint remedy the omissions identified in the court's January 6, 1999 ruling on the motion to strike the nuisance counts, the court hereby denies the motion to strike these claims.

Conclusion

The motion to strike is granted as to Counts 4, 5 and 8 and denied as to Count 11, 12, 13, 14, 15, 16 and 17.

Conn.Super.,2000.

Accashian v. City of Danbury

2000 WL 157926 (Conn.Super.), 26 Conn. L. Rptr. 287

END OF DOCUMENT

**CASE NO. 03-945- PLAINTIFFS' APPENDIX OF UNREPORTED CASES, EXHIBIT 3**
**1981 Ohio App. LEXIS 13657, \***
**JOHN P. ALBERTSON, et al. Plaintiff-Appellants v. THE CITY OF AKRON Defendant-Appellee**
**NO. 9838**
**COURT OF APPEALS, NINTH APPELLATE SUMMIT COUNTY, OHIO**
**1981 Ohio App. LEXIS 13657**
**February 18, 1981**

**COUNSEL:** RANDALL A. COLE, City Law Department, 304 Municipal Bldg., Akron, OH 44308 for Defendant-Appellee.

PAUL E. WEIMER, Attorney at Law, 411 Wolf Ledges Pkwy., Suite 105, Akron, OH 44311 for Plaintiff-Appellants.

**JUDGES:** BELL, P. J.

VICTOR, J.

CONCUR

**OPINIONBY:** MAHONEY, J.

**OPINION:** This cause was heard January 5, 1981, upon the record in the trial court and the briefs. It was argued by counsel for the parties and submitted to the court. We have reviewed each assignment of error and make the following disposition:

DECISION AND JOURNAL ENTRY

Appellants challenge the trial court's ruling granting the city of Akron's motion to dismiss on the grounds that the city is immune from liability in a private nuisance suit. We reverse and remand.

FACTS

The appellants are all residents of that part of Hardy Road in Northampton Township which is adjacent to the Hardy Road landfill. The city of Akron annexed the site in 1978 and presently operates the sanitary landfill for the purpose of disposal of solid waste under license from the Ohio Environmental [*2] Protection Agency.

On March 21, 1980, plaintiffs-appellants filed a complaint alleging that the city maintained and operated the landfill in such a fashion as to create a nuisance. Appellants claimed that their health, well being and property values were adversely affected and, therefore, prayed for damages. Appellants also asserted that the city's actions in operating the landfill amounted to a taking of their property without due process of law.

The city filed their motion to dismiss for failure to state a claim upon which relief could be granted on April 1, 1980. The city argues that the case of Osborn v. City of Akron, 171 Ohio St. 361 (1960) conclusively holds the operating of a sanitary landfill by a municipality is a governmental function and a municipality is not liable to adjacent property owners for an alleged nuisance arising from its operation. Appellants responded claiming that the use of the landfill for a fee by private corporations, other municipalities and individuals transformed the operation of the landfill into a proprietary function. Appellants filed affidavits of the Hardy Road residents detailing their nuisance claims. The city filed a reply [*3] brief to which they attached the affidavit of Larry E. Lann, City Finance Director. This affidavit recited the city's receipts and expenditures for 1979 and the ten (10) year period preceding January 1, 1980, for garbage and refuse disposal.

On the basis of the affidavits filed along with the parties' briefs, the trial court treated the defendant's motion to dismiss as a motion for summary judgment.

DISCUSSION

ASSIGNMENTS OF ERROR

"I. The trial court erred in its interpretation of Osborn v. The City of Akron as the Ohio Supreme Court, in Osborn did not absolutely decide that in all cases the disposition of garbage by a municipality is a governmental function.

"II. The trial court's award of summary judgment in favor of the defendant based on the defendant's financial data was erroneous as the mere dispute between the plaintiffs and defendant over the amount of income produced by the defendant's operation of the Hardy Road landfill creates a genuine issue of a material fact that must be litigated at trial."

The appellants' assignments of error taken together challenge the sufficiency of the trial court's granting of summary judgment. The city of Akron's [*4] motion to dismiss was filed pursuant to Civ. R. 12(B)(6). Section 12(B) <sup>HN1</sup>clscc1clscc1provides in part:

"* * * When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. Provided however, that the court shall consider only such matters outside the pleadings as are specifically enumerated in Rule 56. All parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56."

The first indication that the trial court intended to treat the city's motion as a motion for summary judgment is in the court's findings and final order. This is contrary to the purpose of the final sentence of Civ. R. 12(B) which places a duty on the trial court to notify the parties and allow them to submit all pertinent materials before ruling on the motion. Only proper notice to the parties would provide a reasonable opportunity to present all materials pertinent to the issues raised by a summary judgment motion.

The parties' inclusion of affidavits [*5] with their briefs did not constitute a reasonable opportunity to present all pertinent material. Unaware of the court's intent to treat the city's motion to dismiss as a motion for summary judgment, appellants did not have a reasonable opportunity to file further affidavits which might refute the immunity claim of the city. Furthermore, even if the trial court had proceeded to judgment on the Civ. R. 12(B)(6) motion it would have been incumbent on the trial court to allow the plaintiffs the opportunity to amend their complaint to include allegations that the landfill was a proprietary function. Having failed to follow either of the above procedures, the trial court erred in its treatment of the city's Civ. R. 12(B)(6) motion under Civ. R. 56 summary judgment procedures.

The essence of appellants' challenge to the lower court ruling is that a genuine issue of material fact existed on the issue of whether the landfill operation was a proprietary or governmental function.

"* * *The judicially established rule, which is based upon the traditional doctrine of sovereign immunity, is that a municipality is not liable for damages resulting from the exercise of a governmental [*6] function. Damage caused in the exercise of a proprietary function is

actionable. * * *."

Frankhauser v. Mansfield, 19 Ohio St. 2d 102, 104 (1969).

In Osborn v. City of Akron, supra, the Supreme Court stated in its syllabus:

"A municipal corporation is not liable to owners of adjacent lands for an alleged nuisance arising from the operation by such municipality of a sanitary land fill for the disposal of garbage and refuse."

On the authority of Broughton v. City of Cleveland, 167 Ohio St. 29 (1957), the Osborn court had accepted without question that the collection of garbage is a governmental function. We recognize that the Supreme Court of Ohio speaks only through the syllabus of a decision. Cassidy v. Glossip, 12 Ohio St. 2d 17 (1967). However, the law stated in a syllabus is predicated on the particular facts of that case. Moreover, the actual opinion is helpful in revealing the reasoning behind the law stated in the syllabus. 23 O. Jur. 3d, Courts and Judges, §§ 530, 534 (1980).

We do not dispute the general rule that a municipally run sanitary landfill is a governmental function. However, there is leeway in the fact situation presented and language [*7] used in Osborn v. City of Akron, supra, to allow for the liability of a municipality operating a landfill where there is a proper showing that the operation is proprietary in character. We note that this court, in an opinion never overruled by the Supreme Court, held that a plaintiff demonstrated sufficient evidence of proprietary operation of a landfill to hold the city liable. Lasko v. City of Akron, 109 Ohio App. 409 (1958).

Because this case was disposed of on what the trial court treated as a motion for summary judgment, Civ. R. 56(C) is controlling. This rule provides in part:

"* * *Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *."

The affidavit of the City Finance Director by itself raises an issue as to whether the operation of the landfill was proprietary in character. The figures cited in the affidavit admit that revenues [*8] exceeded expenditures for 1975, 1978, and 1979. In 1977 and 1978, net profits were offset by capital equipment outlay. The 1980 figures are not available. Based upon the material before the court, we find that there was a genuine issue as to whether the operation of the Hardy Road landfill was a proprietary or governmental function. Therefore, summary judgment should not have been granted by the trial court.

SUMMARY

We sustain appellants'  assignment of error, reverse the trial court judgment and remand the case

for further proceedings consistent with law.

The court finds that there were reasonable grounds for this appeal.

We order that a special mandate, directing the County of Summit Common Pleas Court to carry this judgment into execution, shall issue out of this court. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).

Costs taxed to appellee.

Exceptions.
END OF DOCUMENT


*CASE NO. 03-945- PLAINTIFFS' APPENDIX OF UNREPORTED CASES, EXHIBIT 4*
**Augelli v. Matos**
2003 WL 21958554, 35 Conn. L. Rptr. 228 , Conn.Super., Jul 29, 2003
Not Reported in A.2d
Conn.Super.,2003.
July 29, 2003.

Dean Martha, A. Law Offices, Hartford, CT, for Anthony and Rosemarie Augelli.
Halloran & Sage, Hartford, for Elisiario and Lourdes Matos.
Baio & Associates Law Office PC, Rocky Hill, for Andy's Oil Service Inc.


DUBAY, J.
*1 On July 17, 2001, the plaintiffs, Anthony and Rosemarie Augelli, filed a seven-count complaint against the defendants, Elisiario and Lourdes Matos. The plaintiffs seek to recover for damages and personal injuries they allegedly sustained when the defendants' underground oil tank leaked oil that subsequently migrated onto the plaintiffs' property. Count one alleges that the defendants were negligent in the maintenance of the oil tank. Count two alleges negligent infliction of emotional distress resulting from the oil spill and the defendants' conduct after the spill. Counts three and four allege trespass to land and private nuisance respectively. Count five seeks reimbursement of the costs the plaintiffs have incurred or will incur in the future to clean up and remediate their property pursuant to General Statutes § 22a-452. [FN1] Count six seeks declaratory and/or equitable relief pursuant to General Statutes § 22a-16 [FN2] and count seven alleges negligence per se in violation of General Statutes § 22a-430. [FN3]

   FN1. General Statutes § 22a-452 provides in relevant part: "Any person, firm, corporation or municipality which contains or removes or otherwise mitigates the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous

wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution

or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation."

FN2. General Statutes § 22a-16 provides in relevant part: "The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction."

FN3. General Statues § 22a-430 provides in relevant part: "No person or municipality shall initiate, create, originate or maintain any

discharge of water, substance or material into the waters of the state without a permit for such discharge issued by the commissioner ."

Presently before the court is the defendants'  motion to strike counts two, five, seven and subparagraphs a, c, d and e of paragraph 21 of count one of the plaintiffs'  complaint. As grounds for striking counts two and five, the defendants assert that the plaintiffs have failed to allege facts sufficient to support a claim either of negligent infliction of emotional distress or for liability pursuant to § 22a-452. The defendants move to strike count seven on the ground that a negligence per se action premised on a violation of § 22a-430 is not permitted under Connecticut law. The defendants move to strike subparagraphs a, c, d, and e of paragraph 21 of count one on the ground that such paragraphs seek to recover future potential damages, which are not recoverable.

"The purpose of a motion to strike is to contest ... the legal sufficiency of the allegations of any complaint ... to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Peter-Michael, Inc. v. Sea Shell Associates,* 244 Conn. 269, 270, 709 A.2d 558 (1998).

"In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) *Faulkner v. United Technologies Corp.,* 240 Conn. 576, 580, 693 A.2d 293 (1997). In reviewing a motion to strike, the court must "construe the complaint in the manner most favorable to sustaining its legal sufficiency ... Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) *Vacco v. Microsoft Corp.,* 260 Conn. 59, 65, 793 A.2d 1048 (2002).

Count Two (Negligent Infliction of Emotional Distress)

The defendants first argue that the negligent infliction of emotional distress claim should be stricken because the plaintiffs' conduct was neither extreme nor outrageous and because the plaintiffs have failed to allege that their emotional distress was reasonable in light of the defendants' conduct. (Defendants' Memorandum, pp. 5-7.) The plaintiffs counter that the defendants' conduct need only be negligent for the plaintiffs to recover for negligent infliction of emotional distress, not extreme or outrageous. (Plaintiffs' Memorandum, p. 2.) The plaintiffs further argue that, although it is true that the emotional distress experienced by the plaintiffs must be reasonable in light of the defendants' conduct, the plaintiffs were not required to plead, as an element of the cause of action, the reasonableness of their distress. The court agrees with the plaintiffs and denies the defendants' motion to strike count two.

\*2 "[A] defendant is not liable for emotional distress unless the defendant, or its agents or servants, should have realized that its conduct involved an unreasonable risk of causing the distress, and from the facts known to it, or its agents, should have realized that the distress, if it were caused, might result in illness or bodily harm." *Montinieri v. Southern New England Telephone Co.,* 175 Conn. 337, 345, 398 A.2d 1180 (1978). "[I]n order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm ... This part of the *Montinieri* test essentially requires that the fear or distress experienced by the plaintiffs be reasonable in light of the conduct of the defendants. If such a fear were reasonable in light of the defendants' conduct, the defendants should have realized that their conduct created an unreasonable risk of causing distress, and they, therefore, properly would be held liable. Conversely, if the fear were unreasonable in light of the defendants' conduct, the defendants would not have recognized that their conduct could cause this distress and, therefore, they would not be liable." (Citations omitted; internal quotation marks omitted.) *Carrol v. Allstate Ins. Co.,* 262 Conn. 433, 446, 815 A.2d 119 (2003). "[T]he plaintiff has a more difficult burden when the defendant's state of mind is intentional, rather than negligent. Put another way, where the defendant's state of mind is purposefully to inflict emotional distress on the plaintiff, the plaintiff may not recover unless the defendant's conduct in pursuance of that intent is also extreme and outrageous; but where the defendant did not have such a malevolent state of mind, but merely was negligent, the plaintiff may recover without having to prove that the conduct engaged in by the defendant was extreme and outrageous." *Id.,* 452 (*Borden, J.,* concurring).

Thus, under *Carrol v. Allstate Ins. Co.* and *Montinieri,* a plaintiff need only allege that the defendant knew or should have known that his or her conduct involved an unreasonable risk of causing emotional distress and that such emotional distress in fact occurred. The plaintiffs have met these minimal requirements by alleging that "[t]he defendants knew, or in the exercise of reasonable care should have known, that their activities ... involved an unreasonable risk of exposing the [plaintiffs] and the [plaintiffs'] property to harmful contaminants" and that the

defendants "knew, or in the exercise of reasonable care should have known, that the [plaintiffs' ] knowledge of their exposure to harmful contaminants involved an unreasonable risk of causing in [them] emotional and mental distress" and that "the [plaintiffs] have suffered emotional and mental distress" as a result of the defendant's conduct. (Complaint, ¶¶ 22-25.) The court disagrees, moreover, with the defendants' assertion that *Carrol v. Allstate Ins. Co.* requires that the plaintiffs allege that their emotional distress was reasonable in light of the defendants' conduct. Under *Carrol v. Allstate Ins. Co.,* the reasonableness of the plaintiffs' emotional distress is simply part of the plaintiffs' burden of proof at trial: "[I]n order to prevail on a claim of negligent infliction of emotional distress, the plaintiff *must prove* that the ... fear or distress experienced by the plaintiffs be reasonable in light of the conduct of the defendants." (Emphasis added.) *Carrol v. Allstate Ins. Co., supra,* 262 Conn. 446. See also *Williams Ford, Inc. v. Hartford Courant Co., 972, 232 Conn. 559, 580, 657 A.2d 212 (1995)* (holding that "reasonableness is a question of fact for the trier to determine based on all of the circumstances"). Accordingly, the defendants' motion to strike count two is denied.

Count Five (Reimbursement Under § 22a-452)

*3 The defendants next move to strike count five, a claim for reimbursement pursuant to § 22a-452, on the ground that such claim fails to allege with specificity what costs, if any, the plaintiffs have incurred in remediating their property and because it seeks to recover costs which have yet to be incurred. (Defendants' Memorandum, pp. 7-9.) In their memorandum of law in opposition to the defendants' motion, the plaintiffs assert simply that "the defendants have cited no authority for their proposition that the specific costs sought to be compensated must be specifically alleged ." (Defendants' Memorandum, p. 4.)

General Statutes § 22a-452 provides in relevant part:

Any person, firm, corporation or municipality which contains or removes or otherwise mitigates the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation.

By its express terms, General Statutes § 22a-452 allows reimbursement of remediation costs only if a plaintiff has contained, removed or otherwise mitigated contamination. Courts that have considered the sufficiency of a claim for reimbursement under § 22a-452 have uniformly held that a plaintiff seeking reimbursement under the statute must at least allege that he has taken action to remediate the alleged contamination of the property or that he has expended funds for such remediation. See, e.g., *Hartt v. Schwartz,* Superior Court, judicial district of New Haven, Docket No. 331912 (December 3, 1997, *Blue, J.*), 21 Conn. L. Rptr. 52; *Albahary v. City & Town of Bristol, Conn., 963 F.Supp. 150, 156 (D.Conn.1997)* ("by its terms, § 22a-452 allows reimbursement of remediation costs only if a plaintiff has ' contain[d] or remove[d] or otherwise mitigate[d]' contamination")*Warner v. Kedah Corp.,* Superior Court, judicial district of Middletown, Docket No. 72964 (September 20, 1995, *Stanley, J.*); *Bristol Shopping Plaza v. Vigilante Cleaners,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 338958 (December 1, 1989, *Ripley, J.*); *Connecticut Light & Power Co. v. Knight,* Superior Court, judicial district of Windham at Putnam, Docket No. 33646 (July 23, 1993, *Potter, J.*). Count five of the plaintiffs' complaint incorporates the allegations contained in count one.

Paragraph 21 of count one alleges: "As the direct and proximate result of the Defendants' negligent discharge, release, spillage and uncontrolled loss of the Contaminants into the environment ... the [plaintiffs] have suffered the following damages: (a) The [plaintiffs] have, and will continue to, incur costs, including attorney fees, in order to investigate, remediate, restore and monitor the nature and extent of the contamination of the [plaintiffs' ] property." (Complaint, ¶ 21(a).) Paragraph 24 of count five further alleges: "The costs incurred, or to be incurred, by the Augellis to contain, remove or otherwise mitigate the effects of the oil and petroleum byproducts are or will be reasonable." (*Id.,* count five, ¶ 24.)

*4 Although the plaintiffs do not specify what actions they have taken to remediate their property nor what costs they have incurred in undertaking such remediation, count five is sufficient to withstand the defendants'  motion to strike to the extent that it alleges that the plaintiffs "have ... incur[ed] costs ... in order to ... remediate [and] restore" their property. To the extent, however, that allegations contained in count five seek to recover for costs yet to be incurred, they are improper and are hereby stricken.

Count Seven (Negligence Per Se)

The defendants next move to strike count seven on the ground that § 22a-430 does not support a negligence per se claim. The plaintiffs, on the other hand, "readily acknowledge ... that there is a split of authority as to the viability of a negligence per se claim based on a violation of § 22a-430 ... [but] contend that the better reasoned opinions permit a claim such as Count Seven ." (Plaintiffs'  Memorandum, p. 5.) The court disagrees with the plaintiffs and grants the defendants' motion to strike count seven. In so doing, the court adopts the reasoning of the cases that have held that the Water Pollution Control Act, General Statutes § 22a-416 et seq., which includes § 22a-430, does not support a private cause of action nor establish standards of care the violation of which is negligence per se. For an excellent analysis of the issue, see *Connecticut Water Co. v. Thomaston,* Superior Court, judicial district of Hartford at Hartford, Docket No. 535590 (March 4, 1995, *Corradino, J.) (16 Conn. L. Rptr. 213, 213-15)* (striking a negligence per se claim under General Statutes §§ 22a-427, 22a-430 and 22a-450 on the ground that no private cause of action based on these statutes can be a basis for negligence per se claims). See also *Chromium Process v. Yankee Gas Service,* Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 038532 (June 23, 1995, *Comerford, J.*); *Michael v. Kenyon Oil Co., Inc.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 344098 (March 22, 1989, *O'Connor, J.*) (4 C.S.C.R. 337, 338).

Paragraph 21 a, c, d and e of Count One (Negligence)

Finally, the defendants move to strike subparagraphs a, c, d, and e of paragraph 21 of count one on the ground that (1) subparagraph a seeks attorney fees, which are not recoverable in a negligence action, and (2) subparagraphs c, d, and e seek future potential damages, which are also not recoverable. (Defendants'  Memorandum, pp. 12-13.) The plaintiffs concede that attorney fees are not recoverable in a negligence action and, accordingly, subparagraph a is ordered stricken. As for the remaining subparagraphs, however, it is well established that an individual paragraph contained in a complaint or special defense is not the proper subject of a motion to strike unless it embodies an entire cause of action or defense. See, e.g., *Selander v. Soundview Technology Corp.,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV02-0189753 (Feb. 10, 2003, *Adams, J.*); *Geary v. George A. Tomasso Construction Corp.,* Judicial District of Superior Court, judicial district of Waterbury, Docket No. 122785 (October 13, 1995, *Vertefeuille, J.*); *Rea v. Allstate Insurance Co.,* Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 463702 (October 17, 1995, *Arena,*

*J.*); *Warner v. Kedah Corp.,* Superior Court, judicial district of Middlesex at Middletown, Docket No. 072964 (September 20, 1995, *Stanley, J.*); *Wordell v. Fairfield Transportation Group,* Superior Court, judicial district of New London at New London, Docket No. 533430 (July 7, 1995, *Hendel, J.*); *Enterprises Ltd. Partnership v. Arrow Paper Party Stores,* Superior Court, judicial district of New London at New London, Docket No. 529862 (January 18, 1995, *Hurley, J.*) (noting that a motion to strike may not challenge a subparagraph of a complaint unless it set forth a distinct cause of action). Count one is a negligence count. Because subparagraphs c, d, and e of paragraph 21 of count one do not purport to allege a cause of action distinct from negligence, the defendants'   motion to strike subparagraphs c, d and e is denied. Conn.Super.,2003.
Augelli v. Matos
2003 WL 21958554 (Conn.Super.), 35 Conn. L. Rptr. 228
END OF DOCUMENT


*CASE NO. 03-945- PLAINTIFFS' APPENDIX OF UNREPORTED CASES, EXHIBIT 5*
**Barnes v. General Electric Co.**
1995 WL 447904, 14 Conn. L. Rptr. 455 , Conn.Super., Jul 20, 1995
Not Reported in A.2d
Conn.Super.,1995.
July 20, 1995.

*MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE*

HENNESSEY, Judge.
*1 On October 6, 1994, the plaintiffs, Morrill and Laurie Barnes, Susan and William Pallato, Christopher Pallato, Mark J. and Nancy Simone, and Mark D. Simone, Joseph Simone and Daniel Simone, filed a ten count revised complaint against the defendants General Electric, United Technologies Corporation, d/b/a Pratt & Whitney ("Pratt & Whitney") and the Town of Southington.
The plaintiffs allege the following. The Barnes'   are owners of a house located at 413 Old Turnpike Road in the Town of Southington, Connecticut. The Barnes'   purchased the premises in 1986 and have continuously resided there since that date. Susan and William Pallato own a house located at 435 Old Turnpike Road in Southington, and lived there from 1978 through 1993. Christopher Pallato is the son of the plaintiffs Susan and William Pallato and lived with them from 1978 through 1993. Mark J. and Nancy Simone own a house in Southington at 101 ReJean Road and have lived there since 1987. Mark D., Joseph and Daniel Simone are the minor children of the plaintiffs, Mark J. and Nancy Simone, and have lived at 101 ReJean Road since 1987.
The defendant, Town of Southington, from 1920 to 1967, owned and operated a landfill known as the Old Southington Landfill ("OSL") which is located adjacent to the plaintiffs'   property. During the forty-seven years that the Town of Southington operated the site, it accepted hazardous and toxic substances which continue to pose a hazard to the environment and to the health and well being of the general public and specifically the plaintiffs.
During the period of time that the OSL was in operation, the defendant, Pratt & Whitney, used

the OSL for the disposal of metals, solvents, PCBs, and other hazardous and toxic substances which posed and continue to pose a threat to the environment and the health and well being of the public, including the plaintiffs. Prior to 1964, open burning by the Town of Southington of the various hazardous wastes took place at the site.

In 1967, the Town of Southington, closed the OSL by compacting the loose refuse and covering the OSL with fill and seeding the site with grass. No impervious covering was used to close the OSL before it was permanently shut down. The site on which the landfill was located was later subdivided. The Town of Southington permitted the purchasers of the subdivisions to apply for, and did grant, building permits for the erection of recreational facilities, commercial, industrial and residential properties, including the residential dwellings of the plaintiffs as described above. Prior to granting the building permits, the Town of Southington did not test the properties to ascertain whether there were hazardous or toxic materials thereon resulting from the operations of the OSL. Such testing would have predicted whether the operations of the OSL caused any contamination, harm or danger to occupants and/or users of the residences, recreational facilities, industrial buildings and commercial establishments which were to be built on the properties in question.

*2 The plaintiffs further allege that the defendants, Pratt & Whitney and General Electric were aware, or in the exercise of reasonable care should have been aware, of the uses to which the site, and properties abutting the site, were being put after the closure of the OSL. Further, Pratt & Whitney and General Electric knew, or in the exercise of reasonable care should have known, that the Town of Southington had not tested the properties to ascertain whether there were hazardous or toxic materials thereon resulting from the operation of the OSL.

In a motion dated November 30, 1994, the Town of Southington moved to strike the fifth and tenth counts of the plaintiffs' amended complaint on the ground that each of those counts fails to state a claim upon which relief can be granted. Additionally, on December 5, 1994 and December 12, 1994, respectively, Pratt & Whitney and General Electric each filed motions to strike the fifth, seventh and tenth counts of the plaintiffs' amended complaint on the ground that each count is insufficient as a matter of law.

A motion to strike is used to test the legal sufficiency of a complaint, counterclaim, or any count therein to state a claim upon which relief can be granted. Practice Book § 152; see *Novametrix Medical Systems, Inc. v. BOC Group. Inc.,* 224 Conn. 210, 214-15, 618 A.2d 25 (1992). A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." *Mingachos v. CBS, Inc.,* 196 Conn. 91, 108, 491 A.2d 368 (1985). Accordingly, "if facts provable under the allegations would support a defense or a cause of action, the demurrer [motion to strike] must fail." *Ferryman v. Groton,* 212 Conn. 138, 143, 561 A.2d 432 (1989).

In ruling on a motion to strike, the court may only consider the grounds raised in the motion. *Blancato v. Feldspar Corporation,* 203 Conn. 34, 44, 522 A.2d 1235 (1987). The court "must take the facts to be those alleged in the plaintiff's complaint and construe the complaint in the manner most favorable to sustaining its legal sufficiency." *Warner v. Konover,* 210 Conn. 150, 152, 553 A.2d 1138 (1989). In deciding the motion, the facts to be considered "include the facts necessarily implied and fairly provable under the allegations ... It does not include, however, the legal conclusions or opinions stated in the complaint...." (Citations omitted). *Westport Bank & Trust Co. v. Corcoran, Mallin & Aresco,* 221 Conn. 490, 495, 605 A.2d 862 (1992).

I. *FIFTH COUNT--STRICT LIABILITY*

In the fifth count, which sounds in strict liability, the plaintiffs allege that the defendants,

General Electric, Pratt & Whitney and the Town of Southington handled, burned, buried and disposed of toxic and ultrahazardous substances and materials, including chemicals and chemical products at the site. The plaintiffs further allege that these substances and materials contained latent defects and dangers to the extent that they were inherently and unreasonably hazardous and dangerous and therefore constituted a menace to human health. The plaintiffs allege that the defects in these substances were the proximate cause of the injuries to the plaintiffs.

*3 As to the fifth count, General Electric and the Town of Southington both adopt the memorandum of law submitted by their codefendant Pratt & Whitney on December 5, 1994. The defendants argue that because the defendants' pre-1967 disposal of wastes was not an ultrahazardous activity, the fifth count fails to state a claim of strict liability. The defendants contend that "[n]o court has concluded that the Connecticut common law of strict liability applies to the landfilling of wastes or resulting subsurface contamination."

In opposition, the plaintiffs argue that the defendants' disposal of hazardous wastes does constitute an ultra-hazardous activity sufficient to state a claim for strict liability. The plaintiffs contend that the Connecticut Supreme Court has never adopted a mechanical view with respect to the application of the doctrine of strict liability. Rather, the plaintiffs note that the court looks at the "circumstances and conditions" under which an instrumentality capable of producing harm is used instead of the activity itself.

To sustain a cause of action for strict liability, a plaintiff must show that certain factors are present:

(1) an instrumentality capable of producing harm;

(2) circumstances and conditions in its use which irrespective of a lawful purpose of due care involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; and

(3) a causal relation between the activity and the injury for which damages are claimed. *Caporale v. C.W. Blakeslee and Sons, Inc.,* 149 Conn. 79, 85, 175 A.2d 561 (1961); see also *Arawana Mills Co. v. United Technologies Corp.,* 795 F.Sup. 1238, 1251 (D.Conn.1992). Strict liability for dangerous activities "has been found applicable when an activity, not regularly engaged in by the general public, is conducted in or near a heavily populated area, such that it necessarily subjects vast numbers of persons to potentially serious injury in the event of a mishap." *Levenstein v. Yale University,* 40 Conn.Sup. 123, 126, 482 A.2d 724 (1984, Aaronson, J.).

Sections 519 and 520 of 3 Restatement (Second), Torts, address the doctrine of strict liability for ultrahazardous activities. Section 519 provides in pertinent part: "(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Comment (d) of the Restatement points out, that the liability of 519 is not based on any intent of the defendant to do harm to the plaintiff; rather, it arises out of the abnormal danger of the activity itself, and the risk that it creates of harm to those in the vicinity. "It is founded upon a policy of law that imposes upon anyone who for his own purposes creates an abnormal risk of harm to his neighbors, the responsibility of relieving against the harm when it does in fact occur." Id.

*4 The factors for a court to consider in determining whether an activity is abnormally dangerous are listed in 520 of the Restatement as: "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the

activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes." 3 Restatement (Second), Torts 520.

... It is important to note that comment (f) of 520 clearly states that all of the factors need not be present for an activity to be considered abnormally dangerous. Comment (f) to 520 provides: "In determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance. Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. *On the other hand it is not necessary that each of them be present, especially if others weigh heavily.*" (Emphasis added.)

....

... Comment (h) provides that "[a] combination of the factors stated in clauses (a), (b) and (c), or sometimes any of them alone, is commonly expressed by saying the activity is 'ultrahazardous' or ' extrahazarous....' "

*Green v. Ensign-Bickford Co.,* 25 Conn.App. 479, 485-87, 595 A.2d 1383, cert. denied, 220 Conn. 919, 597 A.2d 341 (1991) citing 3 Restatement (Second) of Torts, §§ 519, 520. "The issue of whether an activity is abnormally dangerous, however, is a question of law for a court to decide." *Green v. Ensign-Bickford Co.,* supra, 25 Conn.App. 485.

Two Superior Courts have extended strict liability for an abnormally dangerous activity to situations where gasoline discharged from storage tanks and/or pumps invaded their neighbors' land. The court in *Michael v. Kenyon Oil Co., Inc.,* 4 C.S.C.R. 337, 339 (March 22, 1989, O' Connor, J.), stated that the underground storage of gasoline, diesel fuel and kerosine can constitute an abnormally dangerous activity so as to permit the imposition of strict liability. Similarly, in denying the defendant' s motion to strike, the court in *Southern New England Telephone Co. v. Clifford,* Superior Court, Judicial District of Litchfield, Docket Number 05 71 31 (December 10, 1991, Pickett, J.), held that where the plaintiff alleges that the defendant knowingly engaged in an abnormally dangerous activity, namely, the use of underground gasoline storage tanks and pumps, and has permitted the escape of ultra-hazardous substances, specifically, gasoline, the allegations were sufficient to establish a claim sounding in strict liability.

In 1983, the New Jersey Supreme Court in *State, Department of Environmental Protection v. Ventron Corp.,* 94 N.J. 473, 468 A.2d 154, in upholding a trial court decision, concluded that the disposal of hazardous or toxic wastes, past or present, is an abnormally dangerous activity and the corporations which contributed to the pollution of a 40-acre tract were held strictly liable. The court in *Ventron* recognized that the disposal of toxic waste may well be an activity that is of some use to society, "[n]onetheless, the unavoidable risk of harm that is inherent in it requires that it be carried on at [Ventron' s] peril, rather than at the expense of the innocent person who suffers harm as a result of it." Id., 493.

*5 In *Kenney v. Scientific, Inc.,* 204 N.J.Super. 228, 497 A.2d 1310 (Law Div.1985), a 1985 New Jersey Superior Court decision, the plaintiffs, who resided in the vicinity of two landfills, brought an action in strict liability, inter alia, against the owners of the landfills and a number of companies that allegedly generated the disposed of hazardous waste which led to the plaintiffs' injuries. In denying the defendants' summary judgment motion as to the count in strict liability against the companies which generated the waste, the court in *Kenney* noted the significance of the decision in *State, Dept. of Env. Protect. v. Ventron,* supra, 94 N.J. 473.

The *Kenney* court stated that:

Since the potential for calamity lurking in an abnormally dangerous substance is precisely what justifies the imposition of absolute liability, the place where the substance ultimately does its marauding should not serve to dissipate such liability. A company which creates the Frankenstein monster of abnormally dangerous waste should not expect to be relieved of its accountability for the depredations of its creature merely because the company entrusts the monster' s care to another ... Furthermore, an important argument in support of strict or absolute liability is that despite the economic hardship involved, the creators of abnormally dangerous substances are far better able than the victims to sustain the costs of the injuries resulting from those substances.

*Kenney v. Scientific, Inc.,* supra, 204 N.J.Super. 247-48. The *Kenney* court reinforced the notion that innocent parties should not be harmed, rather those parties who benefit, either economically or otherwise, from the abnormally dangerous activity should be held accountable. *Kenney v. Scientific, Inc.,* supra, 204 N.J.Super. 247-50.

In 1992 and 1994, the United States District Court for the District of Connecticut, however, declined to extend strict liability to situations involving abnormally dangerous activities. In *Arawana Mills Co. v. United Technologies Corp.,* 795 F.Sup. 1238 (D.Conn.1992), a landlord-plaintiff brought an action against the tenant-defendant who was allegedly depositing hazardous waste on the property. The District Court concluded that the tenant- defendant' s metal finishing business was not a hazardous activity subject to strict liability. The court stated that "Connecticut has traditionally limited the imposition of strict liability in tort to those property owners engaged in such ultrahazardous activities as blasting and pile driving." *Arawana Mills v. UTC,* supra, 795 F.Sup. 1251.

"At least two other courts, including this court, have rejected the notion that the storage and use of hazardous materials, which result in a subsequent release, constitutes an abnormally dangerous activity for which strict liability should be imposed. See *The Stop and Shop Companies, Inc. v. Amerata Hess Corp.,* H-84-454 (MJB), 11 Conn.L.Trib. No. 11, at 1 (D.Conn. Oct. 16, 1984) (Blumenfeld, J.) (where gasoline leaking from underground storage tanks had contaminated subsoil and groundwater on property, no cause of action for strict liability because gasoline storage is not abnormally dangerous or ultrahazardous); *William Burns, Comm'r of Transp. v. Lehigh, Inc.,* 1988 C.S.C.R. 722 (Conn.Super.Ct. July 12, 1988) ("leakage of gasoline into the subsurface soil is insufficient to state a cause of action for strict liability"). *6 Id., 1251. In dismissing the plaintiff' s strict liability count, the District Court relied on the plaintiff' s failure to allege facts sufficient to meet the second prong of the requirements set forth in *Caporale,* supra, 149 Conn. 85. The District Court concluded that "the storage and use of hazardous waste is not *per se* an "ultrahazardous" or "abnormally dangerous" activity for the purpose of imposing strict liability." (Emphasis in original.) Id., 1252.

The District Court for the District of Connecticut revisited this issue in the case of *Nielsen v. Sioux Tools, Inc.,* 870 F.Sup. 435 (D.Conn.1994). In *Nielsen,* the court dismissed the plaintiff' s strict liability count against the defendant whose alleged storage of hazardous waste on the plaintiff' s property resulted in soil and groundwater contamination. The District Court relied heavily on the decision in *Arawana Mills v. UTC,* supra, 795 F.Sup. 1238, in declining to extend strict liability for claims such as those of the plaintiff.

In the present case, the plaintiffs allege that hazardous and toxic substances and compounds, volatile organic compounds, PCB' s, metals and pesticides from the OSL had seeped onto their properties and into adjacent wetlands and ground water, which posed and continues to pose a hazard to the health and well being of the public and the plaintiffs.

The court, in the first instance, notes that neither the Connecticut Supreme Court nor the Appellate Court has had occasion to address the issue of whether the disposal or storage of hazardous and toxic wastes at a landfill constitutes an abnormally dangerous or ultrahazardous activity sufficient to maintain a cause of action for strict liability. In the absence of binding authority on this issue, the court looks to the Federal District Court for the District of Connecticut and the Superior Courts, whose decisions provide merely persuasive authority to this court.

This court's application of both the requirements set forth in *Caporale,* as well as those in section 520 of the Restatement (Second) of Torts, leads it to the conclusion that the plaintiff has sufficiently alleged facts to withstand the defendants' motion to strike the plaintiffs' fifth count which sounds in strict liability.

The storage, burial and disposal of hazardous and toxic waste at a municipal landfill is capable of producing harms, including ground and surface water contamination, irrespective of whether due care is used. Additionally, the storage, burial and disposal of hazardous and toxic waste at a municipal landfill poses a risk of probable injury to such a degree that the activity fairly can be categorized as intrinsically dangerous to people or property. Furthermore, the court finds a sufficient causal relation between the defendants' storage, burial and disposal of hazardous and toxic wastes and the plaintiffs' alleged injuries.

Upon application of section 520(a) of the Restatements, the court determines that the defendants' storage, burial and disposal of hazardous and toxic wastes at a municipal landfill involved a high degree of risk of harm to property and persons and was, therefore, abnormally dangerous. The court also finds in applying section 520(b) that the "likelihood" of resulting harm from the defendants' activities to property and persons, whether it is actually minimal or severe, is "great." Additionally, the court finds under section 520(c) that the risk of "great" harm from defendants' abnormally dangerous activities cannot be eliminated by the exercise of reasonable care due to the nature of hazardous and toxic wastes and the severity of its harmful characteristics.

*7 In following section 520(d), the court notes that while the OSL was in operation, it was common usage to dispose of commercial wastes at a landfill as it was not clearly known that disposing of these wastes was an abnormally dangerous activity. During the entire period of operation of the OSL the court is not certain that the defendants' activities were "inappropriate" under Section 520(e) in the sense that such waste had to be disposed of in some fashion.

Applying guideline (f) of section 520, the court finds the fact that the disposal of hazardous and toxic wastes may be an activity of some use to society, "the unavoidable risk of harm that is inherent in it requires that it be carried on at [the disposers' own] peril, rather than at the expense of the innocent person who suffers as a result of it." See Restatement (Second) of Torts, supra, § 520, comment h at 39. The court is mindful that in accordance with the words of comment f of section 520 it is not necessary that the court find each factor listed in section 520 to hold that an activity is abnormally dangerous.

Against this background, upon considering and weighing the section 520 requirements and the factors set forth by the Supreme Court in *Caporale,* the court finds that the plaintiffs' complaint sufficiently alleges that the defendants' actions were abnormally dangerous activities to support a claim sounding in strict liability. Accordingly, count five of the plaintiffs' complaint is sufficient as a matter of law and, therefore, the defendants' motion to strike the plaintiffs' fifth count is denied.

II. *SEVENTH COUNT--INVERSE CONDEMNATION*

In count seven, which sounds in inverse condemnation against defendants, the Town of

Southington, General Electric and Pratt & Whitney, the plaintiffs allege the following. The plaintiffs have been continually and substantially damaged by the Town of Southington' s allowance of toxic and hazardous substances and materials, including chemicals and chemical vapors, which were disposed of by General Electric and Pratt & Whitney. The plaintiffs have been continually and substantially damaged by the Town of Southington' s allowance of such substances to spread and contaminate the area surrounding the OSL, including specifically the plaintiffs' properties. This contamination has caused the plaintiffs to be denied the use and enjoyment of their real property. This contamination has also caused the plaintiffs' respective properties to become unsalable, uninhabitable and worthless, to the extent that the properties are unable to be utilized for any reasonable and proper purpose.

Further, by reason of the State Health Report released on June 21, 1993, which declared a health emergency to exist at the site, the public-at-large became informed of the severe health dangers affecting the area, and specifically the plaintiffs' real property. As a result of this contamination, and the subsequent State Health Report, the properties have become unmarketable and unsalable, thereby substantially diminishing their value and leaving the property unable to be utilized for any reasonable and proper purpose. The Town of Southington has refused to condemn the property by eminent domain and offer just compensation. By reason of the foregoing, the real property of the plaintiffs has been markedly devalued and inversely condemned by the acts and omissions of General Electric, Pratt & Whitney and the Town of Southington. On December 5, 1994 and December 12, 1994, respectively, Pratt & Whitney and General Electric each filed motions to strike the seventh count of the amended complaint. Defendant General Electric, in its motion, states that for the purpose of the motion to strike count seven, General Electric adopts the memorandum of law submitted by defendant Pratt & Whitney. The defendants argue that because Pratt & Whitney and General Electric have no sovereign power to condemn property, the seventh count, as against them, fails to state a claim for inverse condemnation. The defendants argue that a suit for inverse condemnation is a constitutional claim founded upon the premise that a governmental body, or some other body possessing condemnation power, has physically taken the property of the claimant; or has not compensated the affected party. Finally, the defendants contend that inverse condemnation simply is not a viable cause of action against a party which does not possess the sovereign power of condemnation.

*8 In opposition, the plaintiffs argue that the seventh count alleges an inverse condemnation of the plaintiffs' properties by reason of the acts and omissions of the defendants General Electric and Pratt & Whitney, all of which where done with the consent and permission of the defendant Town of Southington. The plaintiffs further argue that while it is clear that an express delegation is necessary in order to invoke the power of condemnation, there is no reason why an express delegation is necessary in an action for inverse condemnation, where there is no actual exercise of the power of eminent domain.

"Inverse condemnation or a constitutional taking may be complete without an actual, physical appropriation of property ... when property cannot be utilized for any reasonable and proper purpose, as where the economic utility of the property has, for all practical purposes, been destroyed ..." (Internal quotation marks omitted.), *Spicer Plus v. Groton Zoning Board of Appeals,* Superior Court, Judicial District of New London at New London, Docket Number 52 11 98 (October 26, 1992, Hurley, J.), quoting *Manor Development Corp. v. Conservation Commission,* 180 Conn. 692, 695-96, 433 A.2d 999 (1980). "Inverse condemnation is, therefore, a cause of action against a government defendant to recover the value of property which has been taken in fact by a governmental entity although not through eminent domain procedures."

McQuillan, Municipal Corporations, Vol. 11A. § 32.132.20, p. 266 (3rd ed.). Inverse condemnation of a landowner's property rights in violation of article first, 11 of the constitution occurs when "[a] landowner who, *as a result of governmental action,* suffers a total deprivation" of the use of his property. (Emphasis added.) *Luf v. Southbury,* 188 Conn. 336, 342, 449 A.2d 1001 (1982).

Connecticut Courts have not had the occasion to decide whether an action for inverse condemnation lies against a private party. Such claims, however, have been rejected in other jurisdictions. See *Sheffet v. County of Los Angeles,* 3 Cal.App.3d 720, 735, 84 Cal.Rptr. 11 (1970) (Court held that the public entity, not the subdivider was liable in an inverse condemnation suit.); *Pepper v. King County,* 810 P.2d 527 (Wash.App.1991) (Court noted that the historic reasons for allowing an inverse condemnation claim against the government do not apply to private entities against whom a tort action may be brought.); *Bach v. County of Butte,* 215 Cal.App.3d 294, 263 Cal.Rptr. 565 (1989) (Court held that an inverse condemnation action requires state action and, therefore, cannot be asserted against private parties.)

Since the defendants are not governmental entities, but instead, are private companies, the defendants cannot be held liable in inverse condemnation. Therefore, the seventh count of the plaintiffs' amended complaint is legally insufficient. Accordingly, the defendants' motion to strike the seventh count as to defendants General Electric and Pratt & Whitney is granted.

III. *TENTH COUNT--CUTPA*

*9 In the tenth count, the plaintiffs allege that the Town of Southington's activities in offering for sale and/or selling the site constituted the conduct of a trade or commerce as defined in the provisions of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et. seq. The plaintiffs' further allege that the activities of the defendants, General Electric and Pratt & Whitney, in disposing of hazardous and toxic materials and substances at the site constituted the conduct of a trade or commerce as defined in the provisions of CUTPA. The plaintiffs' allege that by failing to disclose the severity of the contamination of the site and adjoining properties even after they were aware of it, and further, after the site was placed on the NPL, the acts, omissions, misrepresentations and conduct of all of the defendants were and are unfair and deceptive acts and practices in the conduct of a trade or commerce in violation of General Statutes § 42-110b.

On November 30, 1994, December 5, 1994 and December 8, 1994, respectively, The Town of Southington, Pratt and Whitney and General Electric each filed motions to strike the tenth count of the plaintiffs' complaint. The Town of Southington and General Electric, in their motions, expressly adopt Pratt & Whitney's memorandum of law in support of their motions to strike. In its memorandum in support of its motion to strike, Pratt & Whitney argues as follows.

Pratt & Whitney contends that because its activities in connection with the site were not part of its "trade or commerce," the tenth count fails to state a claim under CUTPA. Pratt & Whitney claims that the plaintiffs have not alleged that Pratt & Whitney's disposal of waste at the site was the conduct of *its* "trade or commerce" within the meaning of CUTPA. Pratt and Whitney contends that there is no allegation that it was, or ever had been, in the waste disposal business or that it ever advertised, sold, rented, leased, offered for sale, or distributed waste disposal services to the plaintiffs or any other party.

In opposition, the plaintiffs argue that each of the defendants were engaged in a trade or commerce in the state of Connecticut as defined by General Statutes § 42-110(4). As to the defendants Pratt & Whitney and General Electric, the plaintiffs argue that they were manufacturing companies which manufactured and offered products for sale in this state. The

plaintiffs further argue that the disposal of the by-products of that manufacturing process by Pratt & Whitney and General Electric was an integral and necessary part of the trade or commerce engaged in by these defendants.

General Statutes § 42-110(b) states that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." In determining whether a practice violates CUTPA, the courts utilize the following criteria: (1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-- whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen].

*10 (Citations omitted; Internal quotation marks omitted.) *Jacobs v. Healey Ford-Subaru, Inc.,* 231 Conn. 707, 725, --- A.2d ---- (1995); *Sanghavi v. Paul Revere Life Ins. Co.,* 214 Conn. 303, 311-12, 572 A.2d 307 (1990). All three criteria do not need to be satisfied. A practice may be unfair because of the degree to which it meets one of the criteria or to a lessor extent it meets all three. *Cheshire Mortgage Services, Inc. v. Montes,* 223 Conn. 80, 105-06, 612 A.2d 1130 (1992). The term "trade or commerce" is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other commodity, or thing of value in this state." General Statutes § 42-110a(4).

In *Mayer-Wittmann Joint Ventures, Inc. v. Gunther International, Ltd.,* 12 Conn.L.Rptr. No 16, 532 (November 14, 1994, Lewis, J.), the court granted the defendant's motion to strike a CUTPA claim since the alleged violation did not occur in the plaintiff's normal course of trade or commerce. The defendant, Gunther, hired the plaintiff to assist it in managing and recapitalizing its corporation. The court noted that while the plaintiff seems to be in the business of providing consulting services, the defendant is not in the business of reorganizing and restructuring its corporate debt. In reaching this conclusion, the court stated that "the central issue in determining whether CUTPA should apply is whether the party against whom [the CUTPA claim] is made *is in the business of entering into transactions of the type that is at issue.*" (Emphasis in original) quoting *Larson & Skiba v. C & C Package Store,* 10 Conn.L.Rptr. No. 14, 441, (December 13, 1993, Corradino, J.).

In *Arawana Mills Co. v. United Technologies Corp.,* supra, 795 F.Sup. 1238, the Federal District Court for the District of Connecticut dismissed the plaintiff's CUTPA count since the alleged misconduct did not occur within the defendant's trade or commerce. The plaintiffArawana Mills, brought action against the defendant arising out of a lease agreement between the parties. The District Court noted that the "question before the court, therefore, is whether defendant's act of leasing the Property from the plaintiff is in the conduct of defendant's "trade or commerce" within the meaning of CUTPA." *Arawana Mills Co. v. UTC,* supra, 795 F.Sup. 1252.

In dismissing the plaintiff's CUTPA count, the court concluded that "defendant's act of leasing the property from the plaintiff is incidental to the conduct of its true business on the Property, the repair and servicing of aircraft engines." Id., 1253.

The District Court of Connecticut revisited this issue in the case of *Brandeiede v. Emery Worldwide,* United States District Court, District of Connecticut at Bridgeport, Civ. No. 5-90-504 (October 7, 1994). The court in *Brandeiede* noted that a claim under CUTPA is not actionable when the practice complained of is incidental to the actual trade or business of the

party. The defendant, Emery Worldwide, which was engaged in the business of overnight freight delivery, claimed that it was not in the "trade or commerce" of leasing commercial aircraft for the purposes of a CUTPA claim. In discussing the CUTPA claim before the court, it stated that "[i]n this case, defendant's conduct of leasing the aircraft was incidental to its primary business of providing overnight freight service." *Brandewiede v. Emery Worldwide,* supra, U.S. District Court, District of Connecticut at Bridgeport.

*11 The court finds that the defendants, General Electric's and Pratt & Whitney's, activities in connection with the OSL are not within the normal "trade or commerce" of these parties within the meaning of CUTPA. The court finds that the plaintiffs' allegations of the defendants' disposal of hazardous and toxic waste chemicals at OSL are merely incidental to the primary trade or commerce of the defendants. Therefore, a CUTPA claim based on such alleged conduct is not viable against the defendants.

Accordingly, the motion to strike the tenth count of the plaintiffs' amended complaint as against defendants General Electric and Pratt & Whitney is granted. Since the court finds that the action complained of does not fall within the meaning of "trade or commerce" so as to support a CUTPA claim, the other grounds for the motion to strike the plaintiffs' tenth count need not be addressed.

As against the defendant Town of Southington, the plaintiffs allege that the Town engaged in a trade or commerce by operating the Old Southington Landfill as a landfill, open to the public for the disposal of waste material. The plaintiffs further allege that the Town engaged in a trade or commerce when it decided to offer for sale to the public the property on which the site was located.

The Town of Southington argues in its memorandum of law in support of its motion to strike dated November 30, 1994 that a cause of action under CUTPA cannot lie against municipalities and, therefore, the tenth count of the plaintiffs' complaint must fail.

The plaintiffs argue in opposition that CUTPA does apply to municipalities. The plaintiffs contend that in the instant case, the activities which are the basis of the plaintiffs' CUTPA claim are not normally activities carried out by a municipality, i.e. the offer and sale of land to the public. The plaintiffs further contend that the offer and sale of land to the public is also an activity which is not regulated either by the state or federal government and an activity not normally within the purview of a municipality's responsibilities. The plaintiffs argue that there is nothing in General Statutes § 42-110a or its legislative history to indicate that municipalities engaged in activities outside their normal purview are exempt from the application of CUTPA. In *Connelly v. Housing Authority of the City of New Haven,* 213 Conn. 354, 567 A.2d 1212 (1990), the Connecticut Supreme Court held that the acts of a municipal housing authority are exempt from liability under CUTPA. The court did not, however, expressly state that municipalities are not subject to CUTPA. Id., 362. Nonetheless, many superior courts have relied upon the Supreme Court's holding in *Connelly* to support the conclusion that CUTPA does not apply to municipalities. See *Lazaros v. City of West Haven,* Superior Court, Judicial District of New Haven at New Haven, Docket No. 278994, (August 24, 1994, Flanagan, J.); *Lomaglio Construction v. Town of Berlin,* Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 52998, (March 16, 1994, Wagner, J.); *Stratford v. Siciliano,* 9 Conn.L.Rptr. 506 (September 13, 1993, Leheny, J.); *Stack Contracting Services v. Stamford,* 5 Conn.L.Rptr. 233 (October 28, 1991, Murray, J.); *Metcalfe v. Town of Ridgefield,* 1 Conn.L.Rptr. 174 (April 27, 1990, Flynn, J.); *French v. Wallingford Board of Education,* 3 Conn.L.Rptr. 59 (December 20, 1990, Berdon, J.); *Chernet v. Wilton,* 2 Conn.L.Rptr. 475 (September 28, 1990,

Cioffi, J.).

*12 The court initially notes that the plaintiffs have cited no authority in their brief to support their proposition that a CUTPA claim may be brought against a municipality. Against this background, this court is in accord with the numerous superior court decisions which have held that CUTPA is inapplicable to the acts of a municipality. Accordingly, the Town of Southington's motion to strike the plaintiffs' tenth count alleging a CUTPA claim is granted. In summary, as to the plaintiffs' fifth count which sounds in strict liability, the defendants', General Electric and Pratt & Whitney, motions to strike are denied. As to the plaintiffs' seventh count which sounds in inverse condemnation, defendants General Electric and Pratt & Whitney's motions to strike are granted. As to the plaintiffs' tenth count alleging a CUTPA violation, the court grants the motions to strike as to each defendant, General Electric, Pratt & Whitney, and the Town of Southington.

Conn.Super.,1995.

Barnes v. General Electric Co.

1995 WL 447904 (Conn.Super.), 14 Conn. L. Rptr. 455

END OF DOCUMENT


**CASE NO. 03-945- PLAINTIFFS' APPENDIX OF UNREPORTED CASES, EXHIBIT 6**
**Blackburn v. Miller-Stephenson Chemical Co., Inc.**

1995 WL 23543, 13 Conn. L. Rptr. 364 , Conn.Super., Jan 12, 1995

Not Reported in A.2d

Conn.Super.,1995.

Jan. 12, 1995.


MEMORANDUM OF DECISION ON MOTION TO STRIKE


STODOLINK, Judge.

*1 On July 13, 1993, the plaintiff, Barbara Blackburn, filed a nine count complaint seeking, inter alia, damages for an alleged contamination of her well water supply.

In the first count, the plaintiff states that her property, located at 44 Backus Avenue in Danbury, Connecticut, is served by a private on-site well that serves as a source of water for both drinking and domestic use. The plaintiff further states that the defendant, Miller-Stephenson Chemical Company, Inc. ("defendant"), owns and operates a facility located at 55 Backus Avenue in Danbury, Connecticut. According to the plaintiff, the defendant packages and distributes chemicals at its facility, an activity that includes packaging volatile organic compounds. The plaintiff alleges that the Connecticut Department of Environmental Protection ("DEP") conducted soil samples at the defendant's facility which indicated that the soil was contaminated with five different compounds, including the compound benzene, in excess of state standards and that groundwater samples taken at the defendant's facility in 1989 revealed that the water contained three contaminants in excess of state standards. The plaintiff alleges that well water samples taken at her property indicated the presence of five contaminants. The plaintiff alleges that two of these contaminants, trichloroethane and benzene, were present in amounts that exceeded state standards. The plaintiff then alleges that on April 16, 1993, the Commission of Health and Services determined that the benzene pollution of the plaintiff's well water supply

could reasonably be expected to create an unacceptable risk of injury to the health or safety of those using her well as a source of drinking water. As a result of the contamination found at the defendant's facility and the plaintiff's water supply, the plaintiff alleges: (1) that the defendant was ordered to provide bottled water to the plaintiff as a short-term drinking water supply, and to extend public water lines to her property as a long-term measure; (2) that plaintiff's tenant, upon notification of the well water contamination, vacated the premises and the plaintiff is unable to rent her property to another tenant due to not only the health hazards posed by the contamination, but also due to the guidelines for domestic use imposed by the Department of Health Services; (3) that the market value of her property has permanently diminished; and, (4) that she "may incur significant costs in investigating, containing, removing or otherwise initiating the effects of the contamination at her property." Therefore, the plaintiff alleges negligence in count one against the defendant in that the defendant, as owner and operator of the facility, had a duty to use its facility in a reasonable manner and that the defendant knew, or in the exercise of reasonable care should have known, that its activities would result in soil and groundwater contamination.

The plaintiff alleges in the second count that the defendant's actions violated General Statutes, Secs. 22a-427, 22a-430, and Sec. 22a-454, and by violating such sections, the defendant was negligent per se.

*2 Counts three through five allege common law actions in res ispa loquitur, nuisance and trespass, respectively. The sixth count alleges strict liability based on an ultrahazardous activity. Counts seven through nine allege violations of General Statutes, Secs. 22a- 451, 22a-452 and 22a-16, respectively.

On August 19, 1993, the defendant filed a motion to strike the second, third, fifth, sixth, seventh, eighth and ninth counts of the plaintiff's complaint on the grounds that: (1) counts two and three do not set forth legal causes of actions; (2) count five is barred pursuant to Connecticut law; (3) the use of volatile organic compounds in the packaging and distribution of chemicals is not an ultrahazardous activity as alleged in count six; (4) section 22a-451 does not provide for a private cause of action as alleged in count seven; (5) plaintiff is not entitled to relief under section 22a-452 because she has not alleged that she has incurred response costs in count eight; and, (6) section 22a-16 does not apply to plaintiff's claim as alleged in count nine.

The defendant filed a memorandum of law in support of its motion. The plaintiff then filed a memorandum of law in opposition to the defendant's motion.[FN1] Thereafter, the defendant filed a memorandum of law in response to the plaintiff's opposition memorandum.

FN1. At oral argument on September 19, 1994, the plaintiff withdrew her claim as to the seventh count of her complaint.

The purpose of the motion to strike is to challenge the legal sufficiency of the allegations of any complaint. *Gordon v. Bridgeport Housing Authority,* 208 Conn. 161, 170, 544 A.2d 1185 (1988). In judging the motion, it does not matter whether the party can prove the allegations at trial. *Levine v. Bess and Paul Sigel Hebrew Academy of Greater Hartford, Inc.,* 39 Conn.Sup. 129, 131, 471 A.2d 679 (Super.Ct., 1983). The motion admits all facts well pleaded, but does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. *Mingachos v. CBS, Inc.,* 196 Conn. 91, 108, 491 A.2d 368 (1985). The sole inquiry is whether the plaintiff's allegations, if proved, state a cause of action. Id.

I. *The Second and Third Counts*

In the second count, the plaintiff incorporates the factual allegations as set forth in the first count of her complaint and further alleges, inter alia, that (1) the defendant, by discharging volatile organic compounds at its facility, violated section 22a-427 by causing pollution and discharging wastes in violation of Chapter 446k of the General Statutes; (2) the defendant created or maintained a discharge into the waters of this state without a permit in violation of section 22a-430; and, (3) the defendant operated a hazardous waste facility or disposed of hazardous waste at its facility in violation of section 22a-454. The plaintiff further alleges that she is a member of the class of persons that the above statutes were designed to protect, and that the defendant' s actions in violating those statutes constitutes negligence per se and proximately caused the contamination of her property.

*3 ' The doctrine of negligence per se serves to superimpose a legislatively prescribed standard of care on the general standard of care.' [Citations omitted.] ' Where a statute is designed to protect persons against injury, one who has, as a result of its violation, suffered such an injury as the statute was intended to guard against has a good ground of recovery.' [Citations omitted.] That principle of law sets forth two conditions which must coexist before statutory negligence can be actionable. First, the plaintiff must be within the class of persons protected by the statute. [Citations omitted.] Second, the injury must be of the type which the statute was intended to prevent. [Citations omitted.]'

*Gore v. People's Savings Bank,* 35 Conn.App. 126, 130, 131, 644 A.2d 945 (1994).

In its supporting memorandum, the defendant argues that negligence per se is not a distinct cause of action but a legislative standard derived from traditional tort principles. Therefore, the defendant argues that the second count of the plaintiff' s complaint does not set forth a cognizable claim and should be stricken.

The plaintiff counters that negligence per se is a valid, independent cause of action and that the defendant' s negligent acts in contaminating her land as alleged in the first count are different from the statutory violations as alleged in the second count. Therefore, the plaintiff argues that she has properly alleged separate causes of action.

In the present case, the plaintiff has alleged that the defendant has violated several statutory sections and has further alleged that those violations caused the contamination of her property. "If a plaintiff alleges that a statute, ordinance or regulation has been violated, thereby relying on negligence per se, and also alleges that there is a causal connection between such negligence and the injuries sustained, a cause of action has been stated." *Commercial Union Ins. Co. v. Frank Perrotti & Sons, Inc.,* 20 Conn.App. 253, 258, 566 A.2d 431 (1989). Therefore, the plaintiff has stated a cause of action based on negligence per se.

Turning to the allegations as set forth in the third count, the plaintiff alleges negligence based on the doctrine of res ipsa loquitur in that contamination would ordinarily not have occurred at defendant' s facility without careless construction, inspection, or use of materials and that construction, inspection, and use of materials at the defendant' s facility were all in the control of the defendant. Based on the foregoing, the plaintiff alleges that the defendant is liable in negligence for her damages.

The doctrine of res ipsa loquitur is predicated on the following three elements:

' (1) The situation, condition, or apparatus causing the injury must be such that in the ordinary course of events no injury would result unless from a careless construction, inspection or user.
(2) Both inspection and user must have been at the time of the injury in the control of the party charged with neglect. (3) The injurious occurrence or condition must have happened irrespective

of any voluntary action at the time by the party injured.'

*4 *Malvicini v. Stratfield Motor Hotel, Inc.,* 206 Conn. 439, 443, 538 A.2d 690 (1988), quoting *Schurgast v. Schumann,* 156 Conn. 471, 479-81, 242 A.2d 695 (1968).

'  [T]he doctrine of *res ipsa loquitur* is a rule of common sense and not a rule of law which dispenses with proof of negligence. It is a convenient formula for saying that a plaintiff may, in some cases, sustain the burden of proving that the defendant was more probably negligent than not, by showing how the accident occurred, without offering any evidence to show why it occurred.'

*Malvicini v. Stratfield Motor Hotel, Inc.,* supra, 442. "The doctrine has no evidential force, does not shift the burden of proof and does not give rise to a presumption. [Citation omitted.] It is but a specific application of the general principle that negligence can be proved by circumstantial evidence." Id.

The defendant argues that the third count of the plaintiff's complaint should be stricken because it fails to allege a legal cause of action and only asserts a claim for relief based upon a "procedural device."

Conversely, the plaintiff argues that the third count alleges facts separate and distinct from those facts alleging negligence as set forth in the first count. Therefore, the plaintiff argues that she has not lost her right to rely on the allegations set forth in the third count, which are separate and distinct from the allegations of specific negligence set forth in the first count.

In *Estate of Just v. Aparo,* 8 CSCR 542 (April 27, 1993, Higgins, J.), the plaintiff brought an action arising out of the drowning of his decedent in a boating accident. The plaintiff, in the third count of a revised nine count complaint, asserted an action based on the doctrine of *res ipsa loquitur.*

The defendant *Aparo* argued that the third count of the plaintiff's complaint should be stricken because there is no independent cause of action based on that doctrine. The court in *Aparo* held: Count three of the plaintiff's complaint is stricken on the ground that it fails to state a cause of action. In count three the plaintiff has repeated his cause of action for negligence from count one and added allegations associated with the doctrine of res ipsa loquitur. The doctrine of res ipsa loquitur is a rule of circumstantial evidence that is designed to allow the inference of negligence and is not an independent cause of action. While this case may be a proper one to apply the doctrine of res ipsa loquitur, it is not proper to plead it as a separate cause of action. The plaintiff, having already alleged a cause of action for negligence in count one, cannot allege the same action again in count three by merely claiming it is a separate action based on the doctrine of res ipsa loquitur.

Id., 543. See also *Estate of Shrader v. Atlantic Coast Cable,* 8 CSCR 738 (June 28, 1993, Fuller, J.) (the doctrine of *res ipsa loquitur* cannot survive independently as an additional count for negligence in a complaint which already contains a negligence count based on the same facts).

*5 Since it is not necessary to allege the elements of *res ipsa loquitur* in order to rely upon them, and since a plaintiff does not waive the right to rely upon the doctrine by pleading specific acts of negligence; *Schurgast v. Schumann,* supra, 479; *Estate of Shrader v. Atlantic Coast Cable,* supra, 739; the defendant's motion to strike count three of the plaintiff's complaint is granted.

II. *The Fifth Count*

In the fifth count, the plaintiff incorporates the factual allegations as set forth in the first count of her complaint and further alleges that:

The volatile organic compounds discharged at defendant's property migrated through the groundwater into plaintiff's property and contaminated plaintiff's well.

This migration was and continues to be a physical invasion of plaintiff's property by defendant. By reason of the foregoing, defendant is liable to plaintiff for trespass. Plaintiff's Complaint dated June 25, 1993, pars. 18-20.

In general, trespass is an unlawful intrusion that interferes with another's person or property *Holt v. Crest Lincoln Mercury, Inc.,* 3 Conn.L.Rptr. 574, 575 (December 10, 1990, Pastore, S.T.R.). The action of trespass to land is used most commonly to describe the intentional and wrongful invasion of another's real property.

As the action evolved it appears that owners of land are expected to use their property reasonably without unduly interfering with the rights of the owners of contiguous land. Anything that a person does that appropriates adjoining land or substantially deprives an adjoining owner of the reasonable enjoyment of his or her property is an unlawful use of one's property.

At common law, every man's land was deemed to be enclosed, so that every unwarrantable entry on such land necessarily carried with it some damage for which the trespasser was liable. Any entry on land which was in the peaceable possession of another is deemed a trespass, without regard to the amount of force used, and neither the force of the instrumentality, by which the close is broken, nor the extent of the damages is material.

(Citations omitted.) Id.

The defendant argues that as a matter of law, the plaintiff's action in trespass cannot be maintained because she has not alleged that there has been a forcible entry upon her land and cites *Platt Bros. & Co. v. Waterbury,* 80 Conn. 179 (1907) as authority for that proposition. In contrast to the defendant's position, the plaintiff contends that forcible entry need not be alleged and that she has therefore alleged facts sufficient to form the basis for a trespass claim. "[A] trespass may be committed on, beneath, or above the surface of the earth [and] the phrase 'surface of the earth' includes soil, water, trees, and other growths." (Restatement of the Law, Torts 2d, Sec. 159.) Additionally, "[a] trespass need not be inflicted directly on another's realty, but may be committed by discharging foreign polluting matter at a point beyond the boundary of such realty." (75 Am.Jur.2d, Trespass, Sec. 56.)

*6 At least one court, noting the indefinite extent of land both upward as well as downward, has held that "[e]ntry upon the land of another constituting a trespass is not confined to an intrusion thereof upon the surface of the ground." See *Holt v. Crest Lincoln Mercury, Inc.,* supra, 575. Based on the foregoing, forcible entry need not be alleged in order to make out a legally sufficient trespass claim. Furthermore, with regard to the defendant's argument that based on *Platt Bros. & Co. v. Waterbury,* supra, the plaintiff's trespass action is insufficient because it fails to allege that there has been a forcible entry upon her land, the facts of *Platt Bros.* are inapposite to the facts of the present case. The *Platt Bros.* case discussed the distinction between torts accompanied or unaccompanied by force only for purposes of determining the statutes of limitations to be applied to an action originally brought in nuisance.

Viewed in the light most favorable to the pleader, the plaintiff has sufficiently alleged facts to support a claim for trespass, and the defendant's motion to strike count five is denied.

III. *The Sixth Count*

The sixth count relies on the doctrine of strict liability and alleges that the defendant engaged in an ultrahazardous activity. In this count, the plaintiff again incorporates those allegations that serve as the factual predicate for her negligence claim and further alleges that:

The volatile organic compounds used by defendant in its business constituted an instrumentality capable of producing harm, in that the release of such materials to the environment could and did cause contamination of the soil and groundwater in and around the facility.

The circumstances and conditions of defendant's use of volatile organic compounds, irrespective of a lawful purpose or due care, involved a risk of probable injury to plaintiff's property to such a degree that the activity was intrinsically dangerous to said property.

Defendant's use of volatile organic compounds was the proximate cause of the contamination to plaintiff's property and the damages sustained by plaintiff....

Plaintiff's Complaint dated June 25, 1993 pars. 18-20.

Sections 519 and 520 of 3 Restatement (Second), Torts, address the doctrine of strict liability for ultrahazardous activities. Section 519 provides in pertinent part: ' (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.' Comment (d) of the Restatement points out that the liability of Sec. 519 is not based on any intent of the defendant to do harm to the plaintiff; rather, it arises out of the abnormal danger of the activity itself, and the risk that it creates of harm to those in the vicinity. ' It is founded upon a policy of law that imposes upon anyone who for his own purposes creates an abnormal risk of harm to his neighbors, the responsibility of relieving against the harm when it does in fact occur.' Id.

*7 The factors for a court to consider in determining whether an activity is abnormally dangerous are listed in Sec. 520 of the Restatement as: ' (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.' Restatement (Second), Torts, Sec. 520.

It is important to note that comment (f) of Sec. 520 clearly states that all of the factors need not be present for an activity to be considered abnormally dangerous. Comment (f) to Sec. 520 provides: ' In determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance. Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. *On the other hand it is not necessary that each of them be present, especially if others weigh heavily.*' (Emphasis added.)

Comment (h) provides that [a] combination of the factors stated in clauses (a), (b) and (c), or sometimes any of them alone, is commonly expressed by saying the activity is 'ultrahazardous' or ' extra hazardous....'

*Green v. Ensign-Bickford Co.,* 25 Conn.App. 479, 485-87, 595 A.2d 1383 (1991).

The issue of whether an activity is abnormally dangerous, however, is a question of law for a court to decide.

*Green v. Ensign-Bickford Co.,* supra, 485.

The defendant argues in its memorandum of law that the sixth count should be stricken because the use of volatile organic compounds in the packaging and distribution of chemicals is not an ultrahazardous activity.

The plaintiff responds that the facts as alleged in the sixth count set forth the requisite elements of strict liability. Therefore, the plaintiff opines that the sixth count states a claim upon which relief can be granted.

As stated in section 519 of the Restatement of Torts, "[strict] liability arises out of the abnormal danger of the activity itself...." "For an activity to be abnormally dangerous, not only must it create a danger of physical harm to others but the danger must be an abnormal one. In general,

abnormal dangers arise from activities that are in themselves unusual, or from unusual risks created by more usual activities under particular circumstances." Restatement (Second), Torts, Sec. 520, comment f.

Even though all six factors need not be satisfied in order to find that the defendant's activity is ultrahazardous, the sixth count is devoid of facts which could demonstrate that the packaging and distribution of chemicals as incorporated by reference from the first count rises to the level of an activity which is, in and of itself, unusual. This is especially true when considering that the doctrine of strict liability has "traditionally been applied in cases involving blasting and explosives. [Citation omitted.] Connecticut's sole extension beyond blasting cases is to damage from a concussion resulting from pile driving." (Citation omitted.) Green v. Ensign-Bickford Co., supra, 482-483. Therefore, in taking the allegations as set forth in the sixth count as true, those allegations simply do not comport with the factors enunciated in section 520 of the Restatement. The sixth count fails to approach the threshold of ultrahazardous activity as a matter of law, and the defendant's motion to strike that count is granted.

IV *The Eighth Count*

*8 The eighth count alleges liability pursuant to General Statutes, Sec. 22a-452, which provides, in part, that:

(a) Any person, firm, corporation or municipality which contains or removes or otherwise mitigates the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation. When such pollution or contamination or emergency results from the joint negligence or other actions of two or more persons, firms or corporations, each shall be liable to the others for a pro rata share of the costs of containing, and removing or otherwise mitigating the effects of the same and for all damage caused thereby.

General Statutes, Sec. 22a-452 "creates a civil action for reimbursement for reasonable costs expended for the containment, removal or mitigation of pollution or contamination." *Electroformers, Inc. v. Emhart Corp.,* 8 Conn.L.Rptr. 307, 309 (January 29, 1993, Fuller, J.). "It has been recognized that this statute creates a private cause of action for reimbursement for cleaning up environmental contamination from hazardous waste." Id.

The defendant argues that the eighth count should be stricken because the plaintiff has not alleged that she expended costs to abate pollution on her property.

The plaintiff counters that the necessary elements of an action pursuant to section 22a-452 have been sufficiently alleged so as to survive a motion to strike.

The eighth count recites, in part, that:

The contamination of plaintiff's property resulting from the discharge, seepage or filtration of chemical liquids or hazardous wastes at the Backus Avenue facility was caused by defendant's negligence or other actions.

The costs incurred or to be incurred by plaintiff to contain, remove, or otherwise mitigate the effects of the chemical liquids or hazardous wastes resulting from the discharge, seepage or filtration of these substances at defendant's facility are or will be reasonable.

Plaintiff is therefore, pursuant to General Statutes, Sec. 22a-452, entitled to reimbursement from defendant for reasonable costs expended for containment, removal, or mitigation of the pollution

or contamination.

Plaintiff's Complaint dated June 25, 1993 pars. 20-22.

By alleging that costs have been incurred by the plaintiff due to the alleged negligent discharge of chemical substances from the defendant's facility, the plaintiff has sufficiently stated a cause of action pursuant to section 22a- 452.

*9 The defendant argues in its reply memorandum that an "ambivalent" allegation that costs "incurred or to be incurred" as alleged in paragraph 21, supra, cannot trigger application of section 22a-452. The defendant further posits that the possibility that the plaintiff "may" incur future costs to remedy the effects of the contamination fails to satisfy the requirements for recovery under the statute.

However, viewed in the light most favorable to the pleader, the plaintiff has alleged, in part, that she has incurred costs associated with the alleged chemical discharge. If the defendant desired a deletion of that part of the eighth count which alleged reimbursement for future costs which may be incurred by the plaintiff, the defendant's procedural remedy would have been a request to revise pursuant to Practice Book, Sec. 147, and not a motion to strike. Based on the foregoing, the defendant's motion to strike count eight is denied.

V. *The Ninth Count*

The ninth count alleges liability pursuant to General Statutes, Sec. 22a- 16, the Connecticut Environmental Protection Act (CEPA), which provides:

The attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford-New Britain, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction.

By enacting section 22a-16, the legislature has provided any party with a specific action for declaratory or equitable relief. *Tamm v. Burns,* 222 Conn. 280, 290, 610 A.2d 590 (1992). Statutes such as section 22a-16 "are remedial in nature and should be liberally construed to accomplish their purpose." *Manchester Environmental Coalition v. Stockton,* 184 Conn. 51, 57, 441 A.2d 68 (1981).

The defendant argues that section 22a-16 does not apply to the plaintiff's claim because the history of CEPA, and the case law which has developed under it, reveals that CEPA was not intended to provide a remedy to an individual property owner such as the plaintiff, but only to concerned citizen groups or public entities and officials in an effort to prevent damage to environmental resources that affect the public as a whole. The defendant's position is that since the plaintiff already has an ownership interest in the land sought to be protected, and since the plaintiff also has other means by which she may seek relief--specifically, other counts set forth in her complaint--the plaintiff does not fall within the class of persons intended to be protected by General Statutes, Sec. 22a-16.

*10 In response, the plaintiff postulates that section 22a-16 states that "any person," and not any "group of persons," may bring suit and since nothing in the statute itself or case law prohibits a party with a private interest from also bringing suit in the public interest, her ninth count states a

claim upon which relief can be granted.

Since the legislature has provided *any party* with a specific action for injunctive relief, the plaintiff has sufficiently alleged a claim pursuant to General Statutes, Sec. 22a-16. Therefore, the defendant' s motion to strike count nine is denied.

Conn.Super.,1995.

Blackburn v. Miller-Stephenson Chemical Co., Inc.

1995 WL 23543 (Conn.Super.), 13 Conn. L. Rptr. 364

END OF DOCUMENT