*CASE NO. 03-945- PLAINTIFFS' APPENDIX OF UNREPORTED CASES, EXHIBIT 7*
**Brownlee v. Town of Newtown**
1992 WL 17123, Conn.Super., Jan 24, 1992
Not Reported in A.2d
Conn.Super.,1992.
Jan. 24, 1992.

*MEMORANDUM OF DECISION ON MOTION TO STRIKE*

FULLER, Judge.
*1 The complaint in this action has been brought by a student in the Newtown schools and his mother against the Town of Newtown and a gym teacher at one of the Town's schools for personal injuries sustained by the named plaintiff when his right thumb became caught in a basketball hoop during a gym class. The defendant Town has filed a motion to strike the sixth count of the complaint on the ground that it does not state a cause of action for public nuisance because the plaintiff was not exercising a public right when the accident occurred.

The relevant parts of the sixth count allege that the plaintiff was injured when his right thumb was caught in the basketball hoop which the defendant Town placed or allowed to be placed in a dangerous and careless position, and that the Town knew or should have known that the basket had a natural tendency to create danger and inflict injury upon members of the public, including the plaintiff. It is claimed that as a result of that conduct, the defendant created and maintained a nuisance which injured the plaintiff.

A motion to strike may be used to challenge the legal sufficiency of a pleading. *Ivey, Barnum & O'Mara v. Indian Harbor Properties, Inc.,* 190 Conn. 528, 530 n. 2; Connecticut Practice Book, Sec. 152. With a motion to strike, all of the facts alleged in the complaint and facts necessarily implied from the allegations in it are accepted as true, and the complaint is construed in the manner most favorable to the plaintiff. *Blancato v. Feldspar Corporation,* 203 Conn. 34, 36. The court is limited to the facts alleged in the complaint and cannot infer other facts beyond those alleged or necessarily implied from stated facts. *Gordon v. Bridgeport Housing Authority,* 208 Conn. 161, 170. While a motion to strike admits all facts pleaded, it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. *Mingachos v. CBS, Inc.,* 196 Conn. 91, 108.

A municipality may be held liable on the theory of nuisance only if the condition in question was both created and maintained by the municipality. *Lukas v. New Haven,* 184 Conn. 205, 209; *Wright v. Brown,* 167 Conn. 464, 470. A nuisance is a condition, the natural tendency of which is to create danger and inflict injury upon person or property. *Dingwell v. Litchfield,* 4 Conn.App. 621, 624; *Kostyal v. Cass,* 163 Conn. 92, 99. There are two types of nuisance: public and private. " 'A private nuisance exists only where one is injured in relation to a right which he enjoys by reason of his ownership of an interest in land.' " *Couture v. Board of Education,* 6 Conn.App. 309, 314; *Webel v. Yale University,* 125 Conn. 515, 525. The facts here do not support an action for private nuisance, and the plaintiff here only claims that the basketball hoop was a public nuisance.

Public nuisances are ones which violate public rights and produce an common injury and affect the rights enjoyed by citizens as part of the public; " '[I]f the annoyance is one that is common to the public generally, then it is a public nuisance.... The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A public

nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence.' *Couture v. Board of Education,* supra, 314, 315; *Higgins v. Connecticut Light & Power Co.,* 129 Conn. 606, 611-12; Connecticut Law of Torts, 2d Ed., Sec. 130. In order to prevail on a claim of nuisance, a plaintiff must prove that: "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was a proximate cause of the plaintiffs'   injuries and damages.' *State v. Tippetts-Abbett-McCarthy-Stratton,* 204 Conn. 177, 183; *Filisko v. Bridgeport Hydraulic Co.,* 176 Conn. 33, 35-36. Whether these four elements for a nuisance claim exist depends upon the facts of each case and presents questions of fact for the trier. *Heilig v. LeQuire,* 4 Conn.App. 125, 127; *Kostyal v. Cass,* supra, 100.

*2 In order to prevail on a public nuisance claim, the plaintiff must also prove a fifth element, namely, that the condition or conduct complained of interfered with a right common to the general public. *Doe v. Manheimer,* 212 Conn. 748, 755-556 n. 4; *Couture v. Board of Education,* supra, 316; *Higgins v. Connecticut Light & Power Co.,* supra, 611. The defendant bases its motion to strike on a claim that the plaintiff was not engaged in a public right when the accident occurred. It relies upon the *Couture* and *Higgins* cases. Both of these decisions involved directed verdicts at the time of trial after the court heard evidence on the plaintiffs'  claims. In *Higgins,* the plaintiff was injured by a high tension wire thirty feet in the air, an area clearly not accessible to the general public. In *Couture,* the plaintiff, while acting as a football game official, was injured when driven into an unprotected grandstand during the game, and the court concluded that he was in the area where he was injured only because of his special status as a game official and not based upon any interest he held in common with the general public.

It is alleged in paragraph eight that the basket had a tendency to create danger and inflict injury upon members of the public, including the minor plaintiff. Elsewhere in the complaint, there is an allegation that the basket was six feet off the floor rather than at the standard ten foot height. The defendant' s brief also states facts which may be germane to whether or not the basket was a nuisance. There are factual issues in dispute, including the extent to which the public in general had access to the basket. While the defendant may eventually prevail on its claim, factual issues cannot be resolved on a motion to strike.

The motion to strike the sixth count of the complaint is denied.

Conn.Super.,1992.

Brownlee v. Town of Newtown

1992 WL 17123 (Conn.Super.)

END OF DOCUMENT

*CASE NO. 03-945- PLAINTIFFS' APPENDIX OF UNREPORTED CASES, EXHIBIT 8*
**Cadlerock Properties v. Schilberg**
2000 WL 268548, 26 Conn. L. Rptr. 427 , Conn.Super., Feb 25, 2000
Not Reported in A.2d
Conn.Super.,2000.
Feb. 25, 2000.

Memorandum of Decision on Motion to Strike

SULLIVAN.

*1 The plaintiff, the present owner of property at Squaw Hollow Road in Ashford and Willington, brings this action against the defendants Benjamin Schilberg and Schilberg Integrated Metals Corp., claiming that they, as lessee (Benjamin) and Metals Corp., under Benjamin's officership and influence, caused the contamination of the soil and water at the site by the burning of wire and insulation. As to each of these defendants the plaintiff claims that they are responsible to the plaintiff both under the provisions of General Statutes § 22a-452 and under a common law cause of action in negligence. It is alleged, as against another defendant Thomas Nigro that Nigro was the owner of the site when Benjamin and Metals Corp. operated the site. Nigro, although a party to this action, is not a party to the present motion.

The defendant Benjamin and Metals Corp. move to strike the complaint against them. They claim that under General Statutes § 22a-245 there is no cause of action against a former lessee. They further claim that under the negligence counts there is no cause of action in favor of a subsequent purchaser of the property. This claim is based on the premise that there is no duty running between them, first on the legal concept of forseeability and second on the legal bar provided by the doctrine of Caveat Emptor. This same claim of legal duty and forseeability is directed to the statutory counts.

I

The causes of action under General Statutes § 22a-452

This statute provides that a person who contains or removes or mitigates the effects of this type of pollution *shall* be entitled to reimbursement from any person if said pollution resulted from the negligence or other actions of that person. The statute also allows a pro rata contribution of each person, each liable to the other for such pro-rata share.

The Supreme Court case of *Knight v. F.L. Roberts & Co.,* 241 Conn. 466, 475 (1997) specifically addresses the purpose of this legislation. "The clear purpose of this provision is to encourage parties to pay for remediation by providing them with an opportunity to recoup at least some of their remediation costs from others who are also found to be responsible for the contamination." *Knight, supra,* p. 475. Of course the first sentence allows full reimbursement if the negligence of the person against whom reimbursement is sought is entirely responsible. Recovery under this statute requires proof of "negligence or other actions" of the person or persons against whom recovery or pro rata contribution is sought. *Connecticut Resources Recovery Authority v. Refuse Gardens, Inc.,* 229 Conn. 455, 457 (1994).

The defendant takes the position that the doctrine of forseeability as to the particular person who may be harmed by a negligent act is critical, for if there is no duty owed there can be no negligence. Hence since the defendant cannot know who will eventually own the property, the defendant cannot foresee harm coming to that person.

*2 Hence no forseeability equals no duty equals no negligence. The defendant overlooks the fact that the harm is to the land. This court cannot accept a proposition that the duty to not pollute occurs only to the benefit of the then land owner, as it may well appear forseeable that the fact of pollution and its cause may well not surface until after the original owner transfers property to a subsequent purchaser. The proposition set forth by the defendant, as to duty owed, is vastly different than that of the most recent case *Lodge v. Arret Sales,* 246 Conn. 563, 586 (1998) whereby the negligence was determined by the Supreme Court to be beyond the scope of the risk. Here, the specific *risk* of the pollution from a damages/liability standpoint is that the owner, present or future, is going to be responsible for clean up when the pollution is then discovered,

and this is completely foreseeable.

The defendant further argues that the plaintiff's claim is barred by the doctrine of Caveat Emptor. The doctrine of Caveat Emptor has been much diminished in recent years. Since at least 1962 the courts have determined that the doctrine does not apply to conditions which a purchaser cannot be expected to discover upon reasonable inspection, and does not apply to negligent misrepresentation or nondisclosure as concerns defects. See *Masterson v. Atherton,* 149 Conn. 302, 306, 307 (1962); *Johnson v. Healy,* 176 Conn. 97, 102 (1978); *Citicorp Mortgage, Inc. v. Burges,* 227 Conn. 116, 120, 121 (1993).

The same set of circumstances are applicable to the plaintiff's negligence counts against these defendants. The defendants also claim that the plaintiff's counts against the defendants claiming reckless misconduct must be stricken as the plaintiff cannot establish a duty running from the defendant to the plaintiff. This argument is the same as has been heretofore disposed of as concerns the statutory and the negligence counts.

For the reasons set forth herein the motion to strike is denied.

Conn.Super.,2000.

Cadlerock Properties v. Schilberg

2000 WL 268548 (Conn.Super.), 26 Conn. L. Rptr. 427

END OF DOCUMENT

***CASE NO. 03-945- PLAINTIFFS' APPENDIX OF UNREPORTED CASES, EXHIBIT 9***
**French Putnam LLC v. County Environmental Services,**
2000 WL 1172341, 27 Conn. L. Rptr. 684 , Conn.Super., Jul 21, 2000

Not Reported in A.2d

Conn.Super.,2000.

July 21, 2000.

MEMORANDUM OF DECISION RE: MOTIONS TO STRIKE # 155 AND # 157

D' ANDREA

I. FACTS

*1 On September 20, 1999, the plaintiff, French Putnam, LLC, filed a revised forty-two count complaint, with six counts against each of the seven defendants, County Environmental Services, Inc. (CE Services), County Environmental Systems, Inc. (CE Systems), Sam Testa and Ann Testa (the Testas), Edward Alfveby, Anton Tantalos and C.R. Warner, Inc., alleging negligence, reimbursement pursuant to General Statutes § 22a-452, negligence per se, recklessness, strict liability for ultrahazardous activity and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42- 110 et seq.

The revised complaint alleges the following facts: The defendants Sam Testa and Ann Testa acquired the subject property in 1981, which acquisition included real property, buildings and structures located at 35-37 Putnam Avenue in Norwalk, Connecticut. The Testas operated a construction business on the property until 1996. They allegedly used the property for the storage of construction equipment and materials and the mining of gravel and sand and allowed disposal of construction debris on the property. In addition, the Testas leased a portion of the property to CE Services and CE Systems, two waste transportation enterprises. CE Services and CE Systems

brought waste oil, solvents and other materials onto the property and stored them in large above ground tanks and drums on the property without appropriate permits. The defendants Tantalos and Alfveby, the president and manager of CE Services, respectively, were responsible for managing CE Services and overseeing its daily operations. The plaintiff purchased the property in June 1996 from the Testas' former mortgagee, which had foreclosed on the mortgage in January 1996.

The soil and groundwater of the subject property contains, or contained, levels of hazardous materials in excess of those permitted by law, which were allegedly discharged on the property prior to June 13, 1996, the date the plaintiff purchased the property. The Testas, CE Services, CE Systems, Alfveby and Tantalos are allegedly responsible for bringing numerous chemicals and hazardous materials onto the property and for permitting such chemicals and hazardous materials to be discharged on the property. Defendant C.F. Warner, Inc. allegedly owned and/or operated the storage tanks located on the property at the time the hazardous materials were discharged. The plaintiff claims damages in the form of costs incurred in relation to the investigation of the nature and extent of the contamination costs related to mitigation of the contamination and diminished value of the property.

On November 9, 1999, defendants CE Services, Tantalos and Alfveby jointly filed a motion to strike accompanied by a supporting memorandum of law. On December 2, 1999, defendant CE Systems filed a motion to strike all counts and prayers for relief pertaining to CE Systems. The only ground expressly raised in both motions is the caveat emptor doctrine. [FN1] CE Systems adopted, in its entirety, the memorandum of law in support of defendants CE Services, Tantalos and Alfveby' s motion to strike. On January 13, 2000, the plaintiff filed a memorandum of law in opposition to the motions to strike.

FN1. The defendants' motions merely state that their ground for striking the challenged counts is the plaintiff' s failure to state a claim upon which relief can be granted, and the plaintiff has not objected to

this procedural defect. This court may still consider the motion as presented. In *Bouchard v. People's Bank*, 219 Conn. 465, 594 A.2d 1 (1991), "[t]he defendant' s motion to strike simply stated that the plaintiff had ' failed to state a claim upon which relief can be granted.' Because the defendant did not specify the distinct reasons for the claimed insufficiency of the plaintiff' s complaint in its motion, the motion was ' fatally defective' under Practice Book § [10-41] notwithstanding the defendant' s inclusion of such reasons in its supporting memorandum.... We, nevertheless, consider the defendant' s motion in the form presented to the trial court due to the plaintiff' s failure to object to its form and the nonjurisdictional nature of § [10-41 (formerly § 154) ]." (Citation omitted.) *Id.*, 468 n. 4; see also *North Park Mortgage Services, Inc. v. Pinette*, 27 Conn.App. 628, 630 n. 4, 608 A.2d 714 (1992).

II. DISCUSSION

*2 Practice Book § 10-39(a) provides in pertinent part: "Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted ... that party

may do so by filing a motion to strike the contested pleading or part thereof." See also *Peter-Michael, Inc. v. Sea Shell Associates,* 244 Conn. 269, 270, 709 A.2d 558 (1998).

A. NEGLIGENCE

The defendants move to strike counts fifteen, sixteen, nineteen and twenty of the revised complaint alleging negligence against CE Services, CE Systems, Alfveby and Tantalos, respectively. They move to strike the negligence counts on the ground that these claims do not state legally sufficient causes of action upon which relief may be granted. In relevant part, the defendants argue that a cause of action for common law negligence cannot be stated because no duty exists between themselves, as former lessees of the former property owner, and the plaintiff, the subsequent property owner. In support of their argument, the defendants rely on the doctrine of caveat emptor [FN2] for the proposition that it bars claims by subsequent property purchasers against lessees of the former property owners. The defendants also rely on *Wiehl v. Dictaphone Co.,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 306492 (February 11, 1998) (Mottolese, J.) (21 Conn.L.Rptr. 402).

> FN2. "Let the buyer beware. This maxim summarizes the rule that a purchaser must examine, judge, and test for himself...." Black's Law Dictionary (5th Ed.1979).

The defendants further argue that the plaintiff had the responsibility and the opportunity to inspect the property, to examine appropriate land and department of environmental protection records and to obtain environmental disclosure letters. They assert that, had the plaintiff exercised due diligence in inspecting the property, the environmental contamination would have been discovered prior to purchasing the property and would have been taken into account in the negotiated price. They also assert that, in the event the plaintiff was an "innocent" purchaser without knowledge of the environmental contamination, the appropriate remedy is against the seller pursuant to General Statutes § 22a-134b.

In opposition, the plaintiff argues that the elements of common law negligence have been sufficiently alleged to withstand the defendants' motions to strike. The plaintiff contends that the determination of whether a duty of care exists is dependent on whether the harm is foreseeable. The plaintiff asserts that it has alleged that the defendants used the property to store hazardous materials and knew or reasonably should have known that hazardous contaminants were being discharged from the materials and negatively impacting the property. The plaintiff concludes, therefore, that the resultant contamination of the property was reasonably foreseeable and a duty of care should have been exercised by the defendants. The plaintiff maintains that *Wiehl v. Dictaphone Co., supra,* 21 Conn.L.Rptr. 402, the case on which the defendants rely, is distinguishable because that court's analysis did not address the requisite "foreseeability of harm" inquiry in determining the existence of a duty of care.

*3 "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. *RK Constructors, Inc. v. Fusco Corp.,* 231 Conn. 381, 384, 650 A.2d 153 (1994). Negligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails to do so. *Dean v. Hershowitz,* 119 Conn. 398, 407-08, 177 A. 262 (1935). A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act. *Coburn v. Lenox Homes, Inc.,* 186 Conn. 370, 375, 441 A.2d 620 (1982). What

duty the defendant had, if any, is a question of law. *Nolan v. The New York New Haven & Hartford Railroad Co.,* 53 Conn. 461, 471, 4 A. 106 (1885). The issue of whether the defendant owed the plaintiff a duty of care is an appropriate one for a motion to strike because the question embodies a matter of law to be decided by the court. *Gordon v. Bridgeport Housing Authority,* 208 Conn. 161, 171, 544 A.2d 1185 (1988)." (Internal quotation marks omitted.) *Bennett v. Connecticut Hospice, Inc.,* 56 Conn.App. 134, 137, 741 A.2d 349 (1999), *cert. denied,* 252 Conn. 938, 747 A.2d 2 (2000).

The Supreme Court has stated that the test for determining the existence of a legal duty of care involves a two prong inquiry: "(1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." *Lodge v. Arett Sales Corp.,* 246 Conn. 563, 572, 717 A.2d 215 (1998). As to the foreseeability prong, "[t]he ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised ... By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person], in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" (Internal quotation marks omitted.) *Lombard v. Edward J. Peters, Jr., P.C., supra,* 252 Conn. 633. As to the second prong regarding policy considerations, the Supreme Court has stated that "[t]he fundamental policy purposes of the tort compensation system [are] compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct ... It is sometimes said that compensation for losses is the primary function of tort law ... [but it] is perhaps more accurate to describe the primary function as one of determining when compensation is required ... An equally compelling function of the tort system is the 'prophylactic' factor of preventing future harm ... The courts are concerned not only with compensation of the victim, but with admonition of the wrongdoer ... [I]mposing liability for consequential damages often creates significant risks of affecting conduct in ways that are undesirable as a matter of policy. Before imposing such liability, it is incumbent upon us to consider those risks." *Lodge v. Arett Sales Corp., supra,* 246 Conn. 578-79.

*4 "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual ... Although it has been said that no universal test for [duty] ever has been formulated ... our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant." (Citations omitted; internal quotation marks omitted.) *RK Constructors, Inc. v. Fusco Corp.,* 231 Conn. 381, 385, 650 A.2d 153 (1994).

"A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally 'foreseeable,' yet for pragmatic reasons, no recovery is allowed ... A further inquiry must be made, for we recognize that 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection ... While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the

ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree ... The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Citations omitted; internal quotation marks omitted.) *Id., 386.* The doctrine of caveat emptor has been treated differently by those Superior Court judges having occasion to analyze the doctrine's application in the present context, i.e., where a common law negligence claim for environmental contamination is brought by a subsequent property owner against the lessee of the previous property owner. In *Wiehl v. Dictaphone Co., supra,* 21 Conn.L.Rptr. 402-03, the court struck a negligence count after addressing, as an issue of first impression, whether lessees of former property owners owed a duty to subsequent property purchasers to exercise care in the use of contaminants on the property. That court found that mere foreseeability of harm is not enough for imposition of a duty and that "inquiry must be made as to whether *under the fundamental policy of the law,* the defendant's responsibility should extend to such results ..." (Citation omitted; internal quotation marks omitted; emphasis added.) *Id.,* 403. That court stated that such a case involves two competing fundamental policies of law: (1) Connecticut's strong policy against environmental contamination; and (2) the common law doctrine of caveat emptor. While observing that the caveat emptor doctrine has not precluded liability in special cases such as *Coburn v. Lennox Homes, Inc.,* 186 Conn. 370, 375, 441 A.2d 620 (1982), which involved the defective construction of buildings and other appurtances by builder-vendors of real property, the court in *Wiehl v. Dictaphone Co., supra,* 21 Conn.L.Rptr. 403, did employ the doctrine of caveat emptor. The *Wiehl* court reasoned that the fundamental policy of law provides protections to those having no opportunity to protect themselves and that "the rationale upon which the doctrine of caveat emptor is based applies here." *Id.,* 403. That court noted that a purchaser of real property may take measures to discover harm, inspect the premises, and negotiate the terms and conditions of the purchase. *Id.* The *Wiehl* court relied on policy considerations when it held that the doctrine of caveat emptor precludes a subsequent purchaser from asserting a common law cause of action for negligent contamination of commercial property against the lessees of the previous property owners. *Id.* But see *Cadlerock Properties v. Schilberg,* Superior Court, judicial district of Tolland at Rockville, Docket No. 69263 (February 25, 2000) (Sullivan, J.) [26 CONN.L.RPTR. 427], denying the defendant lessee's motion to strike the common law negligence and recklessness claims brought against it by the subsequent property owner for alleged contamination of the property. That court noted that the application of the caveat emptor doctrine has diminished in recent years and that it is completely foreseeable that the subsequent purchaser of polluted property would have to clean up the property once the pollution is discovered and, therefore, found that a lessee that contaminates land and water can be liable in negligence to the subsequent property purchaser. See *id.* That court reasoned that "the duty to not pollute [does not extend] only to the benefit of the then land owner, as it may appear foreseeable that the fact of pollution and its cause may well not surface until after the original owner transfers property to a subsequent purchaser ... [and that] the specific risk of the pollution from a damages/liability standpoint is that the owner, present or future, is going to be responsible for clean up when the pollution is then discovered, and this is completely foreseeable." *Id.* The decisions in *Wiehl v. Dictaphone Co., supra,* 21 Conn.L.Rptr. 403, and *Cadlerock Properties v. Schilberg, supra,* Docket No. 69263, do not address both prongs of the analysis for determining the existence of a duty of care to state a negligence claim. The *Wiehl* court based its decision on the policy considerations prong, whereas the *Cadlerock* court based its decision on the foreseeability of harm prong.

\*5 In *Coburn v. Lenox Homes, Inc., supra,* 186 Conn. 375-76, relied upon by the plaintiff, the Supreme Court affirmed that a builder-vendor of a house with a negligently designed and installed septic system owed a duty of care to the second owners of the property, who purchased it from the original buyers, because the testimony and documentary evidence at trial showed that the defendant should have known that the septic system it designed and installed was likely to fail in the manner it did. This court finds that *Coburn v. Lenox Homes, Inc., supra,* 186 Conn. 370, is distinguishable from the present case. That case involved defective residential construction by the former property owner who had built and designed the septic system. *Id.,* 373-74. Moreover, the court in *Coburn v. Lenox Homes, Inc., supra,* 186 Conn. 370, did not have occasion to expressly address the caveat emptor doctrine because the defendant builder-vendor did not raise it as a challenge to the negligence claim.

In *Connecticut Resources Recovery Authority v. Refuse Gardens, Inc.,* 229 Conn. 455, 458 n. 5, 642 A.2d 697 (1994), the court, citing, in pertinent part, to *Coburn v. Lenox Homes, Inc., supra,* 186 Conn. 375, stated that "the imposition of liability for negligence on former landowners is a substantial deviation from the common law rule of caveat emptor. The common law rule continues to have vitality even though it has given way to liability for negligence in special cases such as those involving the defective construction of buildings or their appurtenances by builder-vendors of real property." *Id.* Although the court in *Connecticut Resources Recovery Authority v. Refuse Gardens Inc., supra,* was not directly addressing the applicability of the caveat emptor doctrine in that case, [FN3] that court's discussion of the doctrine is persuasive.

> FN3. Rather, the issue that the court in *Connecticut Resources Recovery Authority v. Refuse Gardens, Inc., supra,* 229 Conn. 455, addressed was whether General Statutes § 22a-452(a) imposes strict liability on a prior landowner for a subsequent landowner's environmental clean up costs.

Additionally, in *ABB Industrial Systems v. Prime Technology, Inc.,* 120 F.3d 351 (2d Cir.1997), the purchaser of real property sued the previous chain of owners for environmental clean up costs alleging, inter alia, that each negligently contaminated the property. The circuit court, upon reviewing the district court's grant of summary judgment for the defendants, noted that "[the purchaser] pleaded a common law negligence claim but not a claim under section 22a-452(a) raises novel issues of Connecticut law. Connecticut could treat a common law negligence claim that falls within section 22a-452(a) as arising under that section. On the other hand, Connecticut could treat such a claim like any other common law negligence claim. The distinction could be crucial." *Id.,* 359-60. The circuit court in *ABB Industrial Systems v. Prime Technology, Inc., supra,* 120 F.3d 360, cited *Connecticut Resources Recovery Authority v. Refuse Gardens, Inc., supra,* 229 Conn. 456-58 n. 5, for the proposition that "[t]he Connecticut Supreme Court has indicated that the doctrine of caveat emptor generally bars common law negligence claims but does not bar claims under [General Statutes § ] 22a-452(a)." [FN4]

> FN4. The circuit court in *ABB Industrial Systems v. Prime Technology, Inc., supra,* 120 F.3d 360, did not make a decision on the applicability of the caveat emptor doctrine because it did not reach the issue since the plaintiff could not establish that the defendants negligently contaminated the property.

*6 Recently, this court in *Piantidosi v. Dragone,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 174606 (June 28, 2000) (D'Andrea, J.), addressed, on a motion to strike, whether a subsequent property purchaser can state a negligence claim against the professional environmental testing company that performed tests for the seller's previous owner to determine if the underground oil storage tank was or had been leaking. Although this court struck the negligence claim for failure to sufficiently allege foreseeability of harm, this court noted that the subsequent property purchaser was not precluded as a matter of law from asserting a negligence claim against the environmental testing company. This court reasoned that "[i]f foreseeability is sufficiently alleged or established, courts have determined that the nature of the relationship between third parties and certain professionals ... permits the professionals to be held liable for the foreseeable consequences of their negligent conduct, even in the absence of privity." *Id.* That case is distinguishable from the present case with respect to the nature of the relationship between the parties. See *id.* That case, unlike the present case, involves a defendant who allegedly negligently performed professional services for a previous property owner. See *id.* Also, in that case the defendant did not raise the caveat emptor doctrine, and policy considerations did not dictate that the environmental testing company could not be held liable. See *id.*

Returning to the two prong analysis for determining the existence of a duty of care in the present case, policy considerations and the Supreme Court's dicta in *Connecticut Resources Recovery Authority v. Refuse Gardens, Inc., supra,* 229 Conn. 456-58 n. 5, weigh in favor of applying the rule of caveat emptor. The law provides protection to purchasers of real property in cases where, for example, the seller makes negligent misrepresentations regarding the condition of the property. [FN5] The plaintiff has not pleaded any allegations that any exceptions to the caveat emptor doctrine apply in this case. The plaintiff has not fulfilled its burden of alleging facts necessary to preclude the imposition of the doctrine of caveat emptor. Additionally, the plaintiff has not alleged that it purchased the property without knowledge that the property had been contaminated by hazardous waste. [FN6] Accordingly, this court strikes counts fifteen, sixteen, nineteen and twenty of the plaintiff's revised complaint.

FN5. This court finds that the plaintiff has other available remedies against the defendants. See infra.

FN6. In the negligence counts, the plaintiff incorporates the allegations contained in paragraphs one through thirty-three of the statutory reimbursement counts and alleges additional facts. The plaintiff alleges that the defendants, as former operators of the site and storage tanks, has a duty of care to use the site and the storage tanks in a reasonable manner and to avoid the unlawful discharge of hazardous materials and, if such materials were discharged, to contain or remediate the hazardous materials at the site. (Revised Complaint, Count One, ¶ 31.) The plaintiff further alleges that the defendants "negligently used, stored and treated Hazardous Materials and/or permitted the use, storage or

treatment of Hazardous Materials at the Site, resulting in Discharge." (Revised Complaint, Count One, ¶ 32.) The plaintiff also alleges that the defendants allowed and/or caused hazardous materials to be discharged on the property, that they knew, or in the exercise of reasonable care should have known, their acts or omissions would result in the contamination of soil and groundwater. (Revised Complaint, Count One, ¶ 33.) The plaintiff alleges that the defendants' use, storage, treatment or discharge of hazardous materials has caused and continues to cause damage to the property. (Revised Complaint, Count Fifteen, ¶ 34.) The plaintiff goes on to allege that, "as a proximate result of the foregoing, [it] has been injured in that it has expended costs to investigate, contain, remove or mitigate the effects of such Hazardous Materials." (Revised Complaint, Count Fifteen, ¶ 35.) It alleges that it "is entitled to reimbursement of all costs and expenses incurred and to be incurred in investigating, remediating, containing, removing, or otherwise mitigating the effects of the Hazardous Materials on the Site, as well as damages and losses due to diminution in the value and/or loss of use of the Site, including losses resulting from stigma." (Revised Complaint, Count Fifteen, ¶ 35.) The plaintiff has pleaded the same negligence allegations against each defendant in individual counts directed at each movant.


B. REIMBURSEMENT PURSUANT TO GENERAL STATUTES § 22a-452
In counts one, two, five and six, the plaintiff has alleged that it is entitled to reimbursement from CE Services, CE Systems, Alfveby and Tantalos for the environmental decontamination costs of the property as well as property value diminution and lost use of the property, pursuant to General Statutes § 22a-452. The defendants move to strike these counts on the ground that the plaintiff has failed to allege a legally sufficient claim. In response, the plaintiff counters that it has alleged sufficient facts to maintain the statutory reimbursement claim for monies expended in removing, containing and mitigating the environmental contamination on the property.
*7 The defendants argue that negligence is a requisite element of a claim pursuant to General Statutes § 22a-452 and that the plaintiff cannot establish negligence against them as a matter of law. They assert that the caveat emptor doctrine bars the plaintiff's statutory reimbursement claim because no duty exists between them, as former lessees of the former property owners, and the plaintiff, a subsequent property owner, to satisfy the duty element of negligence. The defendants further argue that the plaintiff has failed to allege culpability, the second essential element of a claim pursuant to General Statutes § 22a-452, and, consequently, the statutory reimbursement counts are legally insufficient.
The plaintiff counters that General Statutes § 22a-452, itself, permits recovery by any person incurring environmental decontamination costs relating to property contaminated by another's negligent actions. The plaintiff relies on *ABB Industrial Systems v. Prime Technology, Inc., supra,* 120 F.3d 351, in which the second circuit noted that Connecticut's Supreme Court has indicated that the doctrine of caveat emptor does not bar claims pursuant to General Statutes § 22a-452. The plaintiff also cites federal appellate cases [FN7] for the proposition that, just as caveat emptor is not a defense to a claim under the federal Comprehensive Environmental Response Compensation and Liability Act (CERCLA), it is also not a defense to a claim under General Statutes § 22a-452, which is modeled after CERCLA. In sum, the plaintiff's position is that application of the doctrine of caveat emptor would contravene the purpose of General Statutes § 22a-452 to provide a litigant with a cause of action to obtain reimbursement for

environmental decontamination costs from those responsible. Additionally, the plaintiff reiterates that the defendants owed it a common law duty of care because it was reasonably foreseeable that their contamination of the property would affect subsequent owners and occupiers of the property and, thus, the negligence element of a claim pursuant to General Statutes § 22a-452 is satisfied. The plaintiff also contends that it has alleged sufficient facts to satisfy the culpability element of a claim pursuant to General Statutes § 22a-452.

> FN7. The plaintiff relies on *Smith Land & Insp. Corp. v. Celotex Corp., 851 F.2d 86, 89-90 (3d Cir.1988)*, *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989) (holding that the caveat emptor doctrine cannot be used to bar relief under CERCLA and is contrary to the underlying policies of the legislation and congressional objective and, therefore, not an available defense), and on *Schiavone v. Pearce,* 79 F.3d 248 (2d Cir.1996), on remand, 77 F.Supp.2d 284 (D.Conn.1999) (holding that a subsequent owner may seek reimbursement for clean up costs, pursuant to General Statutes § 22a-452, from the successor property owner and operator of a facility that continued to environmentally contaminate the property like the original owner, from whom the successor owner sought contribution).

General Statutes § 22a-452(a) provides: *"Any person, firm, corporation or municipality which contains or removes or otherwise mitigates* the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste *shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation.* When such pollution or contamination or emergency results from the joint negligence or other actions of two or more persons, firms or corporations, each shall be liable to the others for a pro rata share of the costs of containing, and removing or otherwise mitigating the effects of the same and for all damage caused thereby ." (Emphasis added.)

*8 Two elements, causation and culpability, must be alleged to maintain a claim pursuant to General Statutes § 22a-452. *Connecticut Resources Recovery Authority v. Refuse Gardens, Inc.,* 43 Conn.Sup. 83, 90, 642 A.2d 762 (1993), aff'd 229 Conn. 455, 458, 642 A.2d 697 (1994). In *Connecticut Resources Recovery Authority v. Refuse Gardens, Inc., supra,* 229 Conn. 458, the Supreme Court, in affirming the trial court, characterized the issue as whether General Statutes § 22a-452 imposes strict liability on a prior landowner of environmentally contaminated property for a subsequent owner's clean up costs. The Supreme Court observed that "[t]he trial court concluded that the legislature intended § 22a-452(a) to require a showing of culpability and not merely causation. Because the plaintiff had not alleged such culpability on the part of the defendants, the [trial] court denied the plaintiff's application for a prejudgment remedy." *Id.,* 458. The Supreme Court agreed with the trial court and adopted its "well reasoned decision as a correct statement of the facts and the applicable law on the contested issue." *Id.,* 458. "The use of the phrase ' resulted from the negligence or other actions of such person, firm or corporation' in § 22a-452(a) can be interpreted to mean only that the legislature intended § 22a-452(a) to be based

on culpability and not merely causation .... We fail to see how the use of the term ' other actions' in § 22a-452(a) could negate the meaning of the word ' negligence,' which immediately precedes it. To read the term ' other actions' so as to convert § 22a-452(a) into liability without fault would cause us to consider the term ' negligence' as either insignificant or unnecessary." (Citations omitted.) *Connecticut Resources Recovery Authority v. Refuse Gardens, Inc., supra,* 43 Conn.Sup. 90.

In *ABB Industrial Systems v. Prime Technology, Inc., supra,* 120 F.3d 351, the second circuit, citing *Connecticut Resources Recovery Authority v. Refuse Gardens, Inc.* 229 Conn. 455, 456-58 & n. 5 (1994), stated that "[t]he Connecticut Supreme Court has indicated that the doctrine of caveat emptor generally bars common law negligence claims but does not bar claims under section 22a-452(a)." Application of the caveat emptor doctrine would eviscerate the plain meaning of the statutory language to provide a private cause of action for "any person" incurring clean up costs as a result of environmental contamination against those responsible. See *Cadlerock Properties v. Schilberg,* Superior Court, judicial district of Tolland at Rockville, Docket No. 69263 (February 25, 2000) (Sullivan, J.) [26 CONN.L.RPTR. 427] (denying a motion to strike a claim under General Statutes § 22a-452 by the subsequent owner of the property against the lessees of the former owner upon refitting the lessees' arguments on the basis that the doctrine of caveat emptor has been diminished in recent years and that it is foreseeable to a polluter that the present or future owner will be saddled with the clean up costs when the pollution is discovered).

*9 The plaintiff sufficiently alleges the causation and culpability elements of General Statutes § 22a-452. With respect to the causation element, the plaintiff alleges that the defendants caused the discharge, or permitted the discharge, of hazardous materials on the property when they stored and used the hazardous materials. The plaintiff further alleges that the defendants knew or should have known that their conduct would result in soil and ground water contamination and that as a proximate result of their conduct it has been injured in having to incur the costs of containing, removing and mitigating the pollution effects. As to the culpability element, General Statutes § 22a-452 requires "negligence *or other conduct."* The failure to satisfy the duty element of negligence does not bar a claim under General Statutes § 22a-452 provided that other culpable conduct is alleged. The plaintiff alleges that the defendants engaged in culpable conduct. Specifically, the plaintiff alleges that the defendants brought hazardous materials onto the property and stored them in above ground tanks and drums on the property without appropriate permits. The plaintiff further alleges that the defendants discharged or permitted the discharge of hazardous materials on the property in the course of their business operations and that the defendants, as former operators of the property, had a duty to exercise care in using the property and the storage tanks in a reasonable manner to avoid an unlawful discharge and contain or remediate any resultant effects. Based on the foregoing allegations, the plaintiff does state a claim upon which relief can be granted for reimbursement of environmental decontamination costs under General Statutes § 22a-452. The defendants' motion to strike counts one, two, five and six is denied.

*C.* NEGLIGENCE PER SE
In counts twenty-two, twenty-three, twenty-six and twenty-seven, respectively, the plaintiff has alleged that defendants CE Services, CE Systems, Alfveby and Tantalos were each negligent per se in violation of General Statutes §§ 22a- 114, et seq., the statutory provisions governing hazardous waste, and General Statutes §§ 22a-427, 22a-430, 22a-449, 22a-450, 22a-452, the statutory provisions contained in Connecticut' s Water Pollution Control Act (WPCA). The

defendants move to strike the negligence per se counts on the ground that they are legally insufficient. They argue that the statutes cited by the plaintiff are part of an administrative scheme and cannot be used as a separate cause of action under a theory of negligence per se. In support of their argument, the defendants rely on several Superior Court decisions for the proposition that the legislature did not intend to allow negligence per se actions under the WPCA; General Statutes §§ 22a-416 through 22a-484; because it is a broad administrative scheme. The defendants also argue that, although negligence per se means that a breach of a duty is inferred from a violation of the statute, there must be an existing duty in the first place to be breached by inference and that no duty exists in the present case. The defendants reiterate that no duty runs from them, as former lessees, of the previous landowner, to the plaintiff as the subsequent purchaser.

*10 The plaintiff counters that it has alleged a cognizable claim because the statutes cited establish a standard of care, it has alleged a breach of those statutes, it is within the class of persons the statutes were enacted to protect, the injuries and damages it sustained were of the type the statutes were intended to prevent, and it was injured as a proximate result of the statutory violations.

This court has previously sustained a negligence per se cause of action pursuant to General Statutes § 22a-427; see *Walker v. Barrett,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 169673 (November 8, 1999) (D' Andrea, J.)[25 CONN.L.RPTR. 665]; and has recognized that "[t]here is a split of authority as to cases sustaining negligence per se actions pursuant to General Statutes § 22a-427." *Id.* In *Walker v. Barrett supra,* Superior Court, Docket No. 169673, purchasers of a house brought suit against the sellers for allegedly concealing sewage problems with the property by running piping from the septic system to emit waste into a storm drain. This court denied the sellers' motion to strike the purchasers' negligence per se claim, ruling that a private cause of action pursuant to General Statutes § 22a-427 is sustainable when negligence per se is alleged. This court reasoned that, as inhabitants of the state, the purchasers were within the class of persons protected by the statute and they sustained the type of injury the statute was designed to prevent--the contamination of water of this state. This court further noted that "[s]ome Superior Courts have rigorously applied a two-prong test finding a negligence per se action sustainable pursuant to the statute where inter alia allegations of state water pollution have been made." *Id.*

Similarly, in *Goodrich v. Jennings,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 150074 (May 22, 1997) (Mintz, J.) (19 Conn.L.Rptr. 544, 544-45), the court denied a motion to strike a negligence per se action based on General Statutes §§ 22a-427, 22a-430 and 22a-450 of the WPCA on the basis that the plaintiff was within the class of persons protected by these statutes and sustained the type of injury these statutes were intended to prevent. The court reasoned that "[t]he doctrine of negligence per se serves to superimpose a legislatively prescribed standard of care on the general standard of care." (Internal quotation marks omitted.) *Goodrich v. Jennings, supra,* 19 Conn.L.Rptr. 545. The court emphasized that the plaintiffs were seeking to adopt those sections of the WPCA as the standard of care in their negligence claim and were not interpreting those statutes to provide a private cause of action under the WPCA. *Id.* Similarly, in *Blackburn v. Miller-Stephenson Chemical Co., Inc.,* Superior Court, judicial district of Danbury Docket No. 314089 (January 12, 1995) (Stodolink, J.) (13 Conn.L.Rptr. 364), the court denied a motion to strike a negligence per se claim by a property owner based on alleged violations of General Statutes §§ 22a-427, 22a-430 and 22a-454 by a neighboring property owner for contaminating a private on-site well that provided water for

drinking and domestic use. That court found that the plaintiff sufficiently alleged that the defendant's statutory violations caused contamination of her property and reasoned that '[i]f a plaintiff alleges that a statute, ordinance or regulation has been violated, thereby relying on negligence per se, and also alleges that there is a causal connection between such negligence and the injuries sustained, a cause of action has been stated." (Internal quotation marks omitted.) *Id.,* 366, quoting *Commercial Union Ins. Co. v. Frank Perrotti & Sons, Inc.,* 20 Conn.App. 253, 258, 566 A.2d 431 (1989); but see *Connecticut Water Co. v. Thomaston,* Superior Court, judicial district of Hartford at Hartford, Docket No. 535590 (March 4, 1996) (Corradino, J.) (16 Conn.L.Rptr. 213, 213-15) (striking a negligence per se claim under General Statutes §§ 22a-427, 22a-430 and 22a-450 on the ground that no private cause of action based on these statutes can be a basis for negligence per se claims); cf. *Wiehl v. Dictaphone Corp.,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 306492 (January 13, 1994) (Maiocco, J.) (10 Conn.L.Rptr. 591, 593) (granting a motion to strike a negligence per se claim pursuant to General Statutes § 22a-427 on the ground that such claim is legally insufficient because the statute does not create a private cause of action); *Reiser v. Island Transportation CO.,* Superior Court, judicial district of Danbury, Docket No. 332521 (May 2, 2000) (Radcliffe, J.) (26 Conn.L.Rptr. 642, 644) (denying summary judgment on the ground that violation of General Statutes §§ 22a-427 and 22a-430 does not support a negligence per se claim because these statutes are part of a broad regulatory scheme although they may serve as evidence of negligence); *Bernbach v. Timex Corp.,* 989 F .Sup. 403, 408 (D.Conn.1996) (district court dismissed a negligence per se count based on the WPCA violation because persuaded by the number of Connecticut cases holding that the legislature did not intend to provide private parties with negligence per se actions for WPCA violations).

*11 "[U]nder general principles of tort law, a requirement imposed by statute may establish the applicable standard of care to be applied in a particular action. It is well established that [i]n order to establish liability as a result of a statutory violation, a plaintiff must satisfy two conditions. First, the plaintiff must be within the class of persons protected by the statute ... Second, the injury must be of the type which the statute was intended to prevent." (Citations omitted; internal quotation marks omitted.) *Gore v. People's Savings Bank,* 235 Conn. 360, 375-76, 665 A.2d 1341 (1995). "Negligence per se operates to engraft a particular legislative standard onto the general standard of care imposed by traditional tort law principles, i.e., that standard of care to which an ordinarily prudent person would conform his conduct. To establish negligence, the jury in a negligence per se case need not decide whether the defendant acted as an ordinarily prudent person would have acted under the circumstances. They merely decide whether the relevant statute or regulation has been violated. If it has, the defendant was negligent as a matter of law ..." (Citation omitted; internal quotation marks omitted.) *Id.,* 376.

In the negligence per se counts, the plaintiff has alleged that the defendants' "improper use, storage treatment or Discharge of the ... Hazardous Materials is prohibited by applicable law, including but not limited to Conn.Gen.Stat. §§ 22a-114 et seq.; 22a-427; 22a-430; 22a-449; 22a-450; 22a- 452; and the regulations promulgated thereunder." (Revised Complaint, Count 22, ¶ 37.) The plaintiff has further alleged that "[t]he foregoing prohibitions are intended to protect the citizens of the state of Connecticut and the United States from physical and economic harm" and that "[it] is within the class of persons protected by the statutes, and it has suffered injury of the type which the statutes were intended to prevent." (Revised Complaint, Count 22, ¶ 38- 39 .) It has further alleged that "[a]s a proximate result of the foregoing, French has been injured in that it has expended costs to investigate, contain, remove or mitigate the effects of such Hazardous

Materials." (Revised Complaint, Count 22, ¶ 40.)

The plaintiff has sufficiently alleged facts to maintain its negligence per se claims against each movant for alleged violations of General Statutes §§ 22a-427 [FN8] and 22a-452. The plaintiff has alleged that as a business enterprise owning property and having its principal place of business in this state that it is within the class protected by the statute. The plaintiff has also alleged that it has sustained the type of injury the statute was intended to protect against--the environmental contamination of the water and land in this state and the economic losses from resultant environmental decontamination costs. The plaintiff further alleges that the defendants' statutory violations, such as discharge of hazardous materials, caused contamination of its property, and caused it to expend monies to remove and mitigate the effects of the hazardous materials. The plaintiff has alleged the required elements to maintain the negligence per se claims. Accordingly, the court denies the defendants' motions to strike the negligence per se claims in counts twenty- two, twenty-three, twenty-six and twenty-seven of the plaintiff's revised complaint.

> FN8. General Statutes § 22a-427 provides that [n]o person or municipality shall cause pollution of any of the waters of the state or maintain a discharge of any treated or untreated wastes in violation of any provisions of this chapter.

D. RECKLESSNESS

*12 The plaintiff has alleged in counts eight, nine, twelve and thirteen, respectively, that defendants CE Services, CE Systems, Alfveby and Tantalos were reckless in handling, storing and discharging hazardous materials on the property. The defendants have moved to strike the recklessness counts on the ground that the plaintiff cannot state a legally sufficient claim for recklessness. The defendants argue that the plaintiff has merely restated its negligence claim and labeled it recklessness. They further argue that the plaintiff has alleged a legal conclusion with no supporting factual allegations, including the failure to allege an intent to injure by the defendants. In response, the plaintiff contends that it has alleged sufficient facts to support an independent cause of action for recklessness and asserts that knowledge of potential harm to others is the level of mental culpability required to state a cause of action for recklessness. "Recklessness is a state of consciousness with reference to the consequences of one's acts.... It is more than negligence, more than gross negligence ... The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them ... Wanton misconduct is reckless misconduct ... It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action.... Wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse.... [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances.... Not only the action producing the injury but the resulting injury also must be intentional." (Citations omitted; internal quotation marks omitted.) *Dubay v. Irish,* 207 Conn. 518, 532-33, 542 A.2d 711 (1988). "To be legally sufficient, a count based on reckless and wanton misconduct must, like an action in negligence, allege some duty running from the defendant to the plaintiff." *Sheiman v. Lafayette Bank & Trust Co.,* 4 Conn.App. 39, 46, 492 A.2d 219 (1985). Because the caveat emptor doctrine bars the plaintiff's common law negligence

claims then, a fortiori, claims for recklessness are also precluded by the doctrine because the duty element of recklessness is lacking. Consequently, the plaintiff cannot state actionable claims for recklessness because the caveat emptor doctrine prohibits such claims as a matter of law. This court grants the defendants' motions to strike counts eight, nine, twelve and thirteen of the plaintiff's revised complaint.

E. STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITY

The plaintiff also alleges claims for strict liability for ultrahazardous activity against defendants CE Services, CE Systems, Alfveby and Tantalos in counts twenty-nine, thirty, thirty-three and thirty-four, respectively. These counts incorporate paragraphs one through thirty-four of the statutory reimbursement counts and also contain the additional allegations cited below. The hazardous materials allegedly stored on the property by the defendants without the appropriate permits included, but were not limited to, the following: Guard All, Shell Solvent 142 HT; used oil filters and gas filters; antifreeze coolant; ethylene glycol base product; propylene alcohol; anti-wear hydraulic fluid; ZEP cleaner; DYNA clean, parts cleaning system; Mobil grease special; lubricating grease; Quaker State Golden Chasis Lubricant; Safety Kleen Cold Parts; Hot Line Traffic Paint; dirty absorbent pads and gloves; oil-soaked debris, rags and similar materials; heavy equipment and construction material; characterized and uncharacterized waste material; and scrap metal. (Revised Complaint, Count One, ¶ 12-13.) The plaintiff alleges that the defendants "used, stored, treated or Discharged and/or permitted the use, storage or treatment or Discharge at the Site without a permit, Hazardous Materials which, by their nature or by their use, storage, treatment, or Discharge, are abnormally dangerous." (Revised Complaint, Count 29, ¶ 35.) The plaintiff further alleges that "[t]he Hazardous Materials which [the defendants] used, stored, treated, or Discharged at the Site were and are abnormally dangerous, and their use, storage, treatment or Discharge, all without a permit, was an abnormally dangerous activity [that] ... created a serious risk of environmental contamination that could not and cannot be eliminated by the exercise of reasonable care and that has injured, damaged, and/or impaired and continues to injure, damage and/or impair, the Site." (Revised Complaint, Count 29, ¶ 36-37.) It is further alleged that "[a]s a result of the foregoing, French has been injured in that it has expended costs to investigate, contain, remove or mitigate the effects of such Hazardous Materials." (Revised Complaint, Count 29, ¶ 38.)

*13 The defendants are moving to strike the strict liability counts on the basis that these counts fail to state claims upon which relief can be granted. They contend that the above-ground storage of hazardous materials does not constitute an abnormally dangerous activity, arguing that reasonable care can be applied to eliminate risk of injury, the activity is of common usage, and that the materials are not exceedingly corrosive and can be stored safely. The plaintiff counters that it has pleaded the requisite elements to state claims of strict liability for ultrahazardous activity. The plaintiff argues that these counts should not be stricken because there is no appellate authority addressing the issue of whether the storage of hazardous waste constitutes an ultrahazardous activity and because some Superior Court decisions recognize such claims in contexts involving similar activity to the storage of hazardous substances.

Strict liability for dangerous activities is "applicable when an activity, not regularly engaged in by the general public, is conducted in or near a heavily populated area, such that it necessarily subjects vast numbers of person to potentially serious injury in the event of a mishap." *Levenstein v. Yale University,* 40 Conn.Sup. 123, 126, 482 A.2d 724 (1984). Imposition of strict liability for an abnormally dangerous activity mandates that certain factors exist: "an instrumentality capable of producing harm; circumstances and conditions in its use which,

irrespective of a lawful purpose or due care, involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; and a causal relation between the activity and the injury for which damages are claimed." *Caporale v. C.W. Blakeslee & Sons, Inc.,* 149 Conn. 79, 85, 175 A.2d 561 (1961).

"The issue of whether an activity is abnormally dangerous ... is a question of law for a court to decide." *Green v. Ensign-Bickford Co.,* 25 Conn.App. 479, 485, 595 A.2d 1383, *cert. denied,* 220 Conn. 919, 597 A.2d 341 (1991). "The courts in Connecticut and other jurisdictions which recognize the doctrine of strict liability for dangerous activities, impose it only in narrow circumstances." *Levenstein v. Yale University, supra,* 40 Conn.Sup. 126. Traditionally, strict liability for ultrahazardous activity has been applied solely in the context of blasting and explosives; *Whitman Hotel Corp. v. Elliott & Watrous Engineering Co.,* 137 Conn. 562, 79 A.2d 591 (1951); and was later extended to pile driving; *Caporale v. C.W. Blakeslee & Sons, Inc., supra,* 149 Conn. 85; and research experiments involving highly volatile chemicals. See *Green v. Ensign-Bickford Co., supra,* 25 Conn.App. 485-87.

Neither Connecticut's Supreme Court nor its Appellate Court has ruled on whether the storage of hazardous materials constitutes an abnormally dangerous or ultrahazardous activity for the imposition of strict liability. In *Green v. Ensign-Bickford Co., supra,* 25 Conn.App. 486, however, the court observed that the factors for a court to consider in determining whether an activity is abnormally dangerous are listed in 3 Restatement (Second), Torts § 520 as follows: "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes." (Internal quotation marks omitted.) *Id.,* 486. "In determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance. Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. *On the other hand it is not necessary that each of them be present, especially if others weigh heavily.*" (Emphasis in original; internal quotation marks omitted.) *Id.,* quoting 3 Restatement (Second), Torts, § 520, Comment (f).

\*14 There is a split of authority among the judges of the Superior Court as to whether the *storage* of gasoline in underground tanks and pumps is an abnormally dangerous activity where gasoline has leaked and contaminated neighboring property and water supplies. See *Southern New England Telephone Co. v. Clifford,* Superior Court, judicial district of Litchfield, Docket No. 057131 (December 10, 1991) (Pickett, J.) (5 Conn.L.Rptr. 331, 331-32) (finding allegations that defendants knowingly engaged in an abnormally dangerous activity involving the use of underground gasoline storage tanks and pumps from which gasoline discharged and invaded plaintiff's land sufficient to establish a strict liability claim); *Michael v. Kenyon Oil Co., Inc.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 344098 (March 22, 1989) (Connor, J.) (4 C.S.C.R. 337, 339) (denying motion to strike because underground storage of gasoline is abnormally dangerous and sufficient factual allegations were alleged to state a strict liability claim); but see *Goodrich v. Jennings, supra,* 19 Conn.L.Rptr. 543-44, (finding that the storage of gasoline in an underground tank is not an ultrahazardous activity because the degree of risk is not particularly high as compared to the activities of blasting and pile driving, there is no evidence that the risk created by the activity cannot be eliminated by exercising reasonable care, and the activity is a matter of common usage in residential and

commercial areas); *Burns v. Lehigh, Inc.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 342600 (July 12, 1988) (Hennessey, J.) (3 C.S.C .R. 722) (finding the alleged leakage of gasoline insufficient to state a claim for strict liability noting that the plaintiff failed to allege whether the defendant' s activities were conducted in a heavily populated area or whether the gasoline was stored in an unsuitable or dangerous location). Similarly, in construing Connecticut law, some judges of the federal district court have found that the storage of hazardous wastes and toxic solvents, which were released into the environment, was not an abnormally dangerous activity. See *Arawana Mills Co. v. United Technologies Corp.,* 795 F.Sup. 1238, 1251 (D.Conn.1992); [FN9] *Nielsen v. Sioux Tools, Inc.,* 870 F.Sup. 435, 442 (D.Conn.1994).

FN9. The district court, Cabranes, J., in *Arawana Mills Co. v. United Technologies Corp., supra,* 795 F.Sup. 1251-52, stated that [i]t does not appear that the Connecticut Supreme Court has addressed the issue of whether the storage and use of hazardous waste is a basis for strict liability. In the absence of any direct decision by the state' s highest court, a federal court, must determine what it believes the state' s highest court would find if the same issue were before it ... I am persuaded that if given the opportunity to expand the narrowly-construed concept of "ultrahazardous" or "abnormally dangerous" activity to the storage and use of hazardous wastes, the Connecticut Supreme Court would decline to do so. Such activities are subject to extensive federal and state regulation ... and I do not believe that the Connecticut Supreme Court would interpose an expanding common law into such matters by imposing strict liability in every case in which a plaintiff can prove that a defendant stored and used hazardous waste. Accordingly, I conclude that the storage and use of hazardous waste is not per se an "ultrahazardous" or "abnormally dangerous" activity for the purpose of imposing strict liability. I conclude further that plaintiff has failed to state a claim for strict liability in this case inasmuch as it has failed to allege any facts showing that the "circumstances and conditions" of the activity conducted by defendant on

the Property "involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous." ... (Citations omitted.) *Id.*

The judges of the Superior Court have found that the *disposal* of toxic and hazardous materials constitutes an abnormally dangerous activity. See e.g., *Mather v. Birken Manufacturing Co.,* Superior Court, judicial district of Hartford at Hartford, Docket No. 564862 (December 8, 1998) (Hennessey, J.) (23 Conn.L.Rptr. 443, 447-49) (upholding plaintiff' s strict liability for ultrahazardous activity claim because of allegations that the defendants directly disposed hazardous waste into the soil and environment); *Barnes v. General Electric Co.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 529354 (July 25, 1995) (Hennessey, J.) (14 Conn.L.Rptr. 455, 456-59) (denying motion to strike because allegations of burning, burial and disposal of toxic materials that contained latent defects and dangers constituting a menace to human life sufficiently alleged that the defendants' actions were abnormally dangerous to support a strict liability for ultrahazardous activity claim); see also *Albahary v. Bristol,* 963 F.Sup. 150, 154-55 (D.Conn.1997) (disposal of toxic materials at a

landfill constitutes an abnormally dangerous activity sufficient to maintain a cause of action for strict liability); but see *Bernbach v. Timex Corp., supra,* 989 F.Sup. 407-08 (dismissing a strict liability for ultrahazardous activity claim because "the complaint [was] devoid of allegations that could support a finding that the substances stored and disposed of by Timex [were] so inherently dangerous that the risk of probable injury may not be eliminated by the exercise of due care"); *McDonald v. Timex Corp.,* 9 F.Sup.2d 120, 122-23 (D.Conn.1998) (dismissing a count alleging strict liability for ultrahazardous activity despite allegations of hazardous waste disposal and dumping because sufficient factual allegations regarding the circumstances and conditions of the activities that would make them intrinsically dangerous irrespective of the exercise of due care, had not been pleaded).

*15 Other decisions, distinguishing between the *disposal* of hazardous materials and the *storage* of such materials, have held that mere storage does not constitute an ultrahazardous activity without allegations that the corrosive properties or the gaseous nature of the materials makes them unable to be safely stored and reasonably handled without leaking or escaping into the environment. See *Connecticut Water Co. v. Thomaston, supra,* 16 Conn.L.Rptr. 216-17; *Skelton v. Chemical Leaman Tank Lines, Inc.,* Superior Court, judicial district of New Haven at New Haven, Docket No. 359236 (May 13, 1996) (Corradino, J.) (17 Conn.L.Rptr. 56, 57-5 8); (Revised Complaint, Count 22, ¶ 37).

This court applies the test set out by the Appellate Court in *Green v. Ensign-Bickford Co., supra,* 25 Conn.App. 485, incorporating the factors in § 520 of 3 Restatement (Second), Torts, and aligns itself with those judges of the Superior Court finding that the mere storage of hazardous materials without sufficient allegations of the abnormally dangerous propensities of the materials does not constitute an ultrahazardous activity. The factual allegations do not set forth a legally sufficient basis for a claim of ultrahazardous activity and, therefore, the strict liability counts are stricken on the ground that they fail to state a claim upon which relief can be granted. The plaintiff has not alleged three of the six factors set out in § 520 of 3 Restatement (Second) of Torts. Particularly, the plaintiff has failed to allege any facts relating to factors (d), (e) and (f). The plaintiff has not alleged that the defendants' storage of the hazardous materials is not a matter of common usage; that it occurred in a heavily populated area or otherwise inappropriate, unreasonable or dangerous location; or that the value to the community of storing such materials for transportation to appropriate waste treatment or other facilities is outweighed by the dangerous attributes of storing such materials. As to storage, the plaintiff has failed to allege whether the nature of the materials rendered them intrinsically dangerous and incapable of storage without escaping into the environment despite the exercise of reasonable care in following adopted safety standards. The plaintiff has also failed to allege whether the defendants' activities were conducted in a residential area and whether the materials were stored in unsuitable or dangerous places.

With respect to the disposal of hazardous materials, this court uses the decisions discussing disposal of such materials by analogy to determine whether the allegations in this case are sufficient to state a claim upon which relief can be granted. The plaintiff has failed to allege sufficient facts regarding the disposal of hazardous materials to state a claim upon which relief can be granted. The plaintiff does not directly allege or even use the word "disposal." Rather, the plaintiff alleges discharge of hazardous materials but does not allege whether the discharge was a result of direct disposal, burial, leakage or some other means. In summation, the plaintiff's allegations are insufficient in that they do not meet the Restatement factors adopted by the Appellate Court for determining whether an activity is ultrahazardous, and they do not

sufficiently allege that the defendants' storage, use and discharge of the hazardous materials was abnormally dangerous so as to warrant imposition of strict liability. Therefore, counts twenty-nine, thirty, thirty-three and thirty-four purporting to state claims for strict liability for ultrahazardous activities are stricken.

F. CUTPA

\*16 In counts thirty-six, thirty-seven, forty and forty-one, the plaintiff alleges that defendants CE Services, CE Systems, Alfveby and Tantalos, respectively, violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. In the CUTPA counts, the plaintiff incorporates the allegations contained in the statutory reimbursement counts, the recklessness counts, the negligence counts, the negligence per se counts and the strict liability counts against each defendant. The plaintiff then goes on to allege that the defendants are "person[s]" engaged in the conduct of "trade" or "commerce" in this state within the meaning of General Statutes § 42-110 et seq. The plaintiff further alleges that the defendants' acts and practices were violations of public policy, immoral, unethical, oppressive and unscrupulous constituting unfair trade practices that caused it ascertainable loss. The defendants move to strike the CUTPA counts on the ground that they fail to state claims upon which relief can be granted. They argue that the alleged activities do not fall within the definition of "trade" or "commerce." They also argue that the requisite consumer, competitor or business relationship must be alleged, but that such a relationship does not exist here because the defendants neither leased nor purchased the site from the plaintiff.

The plaintiff counters that it has alleged the required elements to state a CUTPA claim. The plaintiff asserts that three categories of plaintiffs have standing to bring a CUTPA claim: (1) consumers; (2) competitors; and (3) other business persons affected by the unfair or deceptive act. As such, the plaintiff contends that it has alleged that, as a commercial entity, it is a consumer of the subject property formerly leased, occupied and used by the defendants for their business enterprises. The plaintiff further contends that it has been directly injured by the defendants' mishandling of hazardous materials without required permits in the course of conducting their trade or commerce within the meaning of CUTPA.

General Statutes § 42-110b(a) states that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." ... " ' Trade' and ' commerce' means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." General Statutes § 42-110a(4). General Statutes § 42-11Og(a) provides, in part, that "[a]ny person who suffers any ascertainable loss of money or property ... as a result of the use or employment of a method, act or practice prohibited by section 42-100b, may bring an action ... to recover actual damages."

While CUTPA is a remedial statute and should be liberally construed in favor of consumers and businesses whom the legislature intended CUTPA to benefit; General Statutes § 42-110b(d); *Service Road Corp. v. Quinn,* 241 Conn. 630, 637-38, 698 A.2d 258 (1997); Connecticut' s Supreme Court has stated that "it strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm, caused by any person in the conduct of any ' trade' or ' commerce;" *Jackson v. R.G. Whipple, Inc.,* 225 Conn. 705, 725-26, 627 A.2d 374 (1993). Moreover, *Larsen Chelsey Realty Co. v. Larsen,* 232 Conn. 480, 496, 656 A.2d 1009 (1995), explicitly states, "CUTPA imposes no requirement of a consumer relationship" but that competitors or other business persons can bring a claim.

*17 In *Connecticut Water Co. v. Thomaston,* Superior Court, judicial district of Hartford at Hartford, Docket No. 535590 (November 6, 1996) (Corradino, J.), the court interpreted the phrase "other business persons" from the *Larsen* case, and explained that "the use of this ' other business person' language was not intended to expand the operation of the federal act or CUTPA beyond the original purposes of these acts--the preservation of fair competitive markets and the direct protection of consumers which was the whole aim of the legislative endeavor in the first place. Thus, when *Larsen* said CUTPA did not depend on a consumer relationship but was also designed to protect competitors and other business people it meant that protecting those underlined entities was necessary to ensure fair competition. The latter goal requires giving protection to direct competitors but also at times to business people who have that type of a commercial relationship to the alleged wrongdoer which is such that the latter' s unfair and deceptive acts might deleteriously affect fair competition in a particular market place." *Id.* In *Connecticut Water Co. v. Thomaston, supra,* Superior Court, Docket No. 535590, the Connecticut Water Company brought suit against the Standard Cycle and Auto Company (SCASCO) and the town of Thomaston for contamination of its well field located below a town operated garage that had underground gasoline storage tanks that leaked. SCASCO moved to strike the CUTPA claim against it on the ground of legal insufficiency. *Id.* It argued that the company had not alleged the requisite business or consumer relationship between the company and itself. *Id.* The company countered that it had alleged that it was a business affected by unfair conduct. *Id.* In striking the CUTPA count, the court noted that "CUTPA and its federal counterpart protect two classes or deal with two sets of problems. First, there is the protection of consumers from unfair or deceptive acts or practices. Then there is a concern with ensuring fair competition and in order to accomplish that end, competitors and other business people can bring a CUTPA action. But at the very least, other business people, who are not direct competitors, must have some type of commercial relationship with the alleged wrongdoer, commercial relationship not being so much a business to business relationship but some kind of relationship in the market place so that the particular acts of wrongdoing alleged will interfere with fair and open competition in that particular marketplace." *Id.* "Can it really be seriously argued that the alleged conduct of [the defendants] in polluting [the plaintiff' s] well field, improper as that may be, was the type of conduct that anyone drafting this legislation expected the commissioner of consumer protection to regulate in the absence of a consumer, competitor or other type of business relationship between the two companies ... ?" *Id.*

*18 In *Mather v. Birken Manufacturing Co., supra,* 23 Conn.L.Rptr. 444- 45, the plaintiff, owners and possessors of land on a road where the defendants also owned or operated a manufacturing facility that used, generated, stored and discharged hazardous chemicals and wastes, brought a CUTPA claim alleging that the close proximity of the parties' properties and the defendant' s contamination of their properties resulted in a diminution of property values and a disruption of business activity. *Id.,* 449-50. That court found that the alleged relationship did not constitute a consumer, competitor or business relationship. It held that the plaintiffs' lack of factual allegations demonstrating a sufficient consumer, competitor or business relationship with the defendants rendered their CUTPA claim legally insufficient. *Id.,* 450.

Similarly, the plaintiff has not alleged a sufficient consumer, competitor or business relationship with the defendants in the present case. The plaintiff has alleged that it is the current owner of property that the defendants formerly leased, used and occupied when previously owned by others. Yet, the plaintiff cites no authority, nor has the court found any that recognizes a CUTPA claim premised on such a relationship. The relationship alleged by the plaintiff does not

constitute a consumer, competitor or business relationship within the meaning of CUTPA. Accordingly, counts thirty-six, thirty-seven, forty and forty-one of the plaintiff's revised complaint are stricken.

III. CONCLUSION

For the reasons explained above, this court grants in part and denies in part the defendants' motions to strike. This court strikes the negligence counts, counts fifteen, sixteen, nineteen and twenty, the recklessness counts, counts eight, nine, twelve and thirteen, and the ultrahazardous activity counts, counts twenty-nine, thirty, thirty-three and thirty-four, as well as the CUTPA counts, counts thirty-six, thirty-seven, forty and forty-one.

The court denies the motion to strike with respect to the negligence per se counts, counts twenty-two, twenty-three, twenty-six and twenty-seven, and the § 22a-452 statutory reimbursement counts, counts one, two, five and six.

So Ordered.

Conn.Super.,2000.

French Putnam LLC v. County Environmental Services, Inc.

2000 WL 1172341 (Conn.Super.), 27 Conn. L. Rptr. 684

END OF DOCUMENT

***CASE NO. 03-945- PLAINTIFFS' APPENDIX OF UNREPORTED CASES, EXHIBIT 10***
**French Putnam, L.L.C. v. County Environmental Services, Inc.**

2002 WL 31236213, 33 Conn. L. Rptr. 3 , Conn.Super., Sep 06, 2002

Not Reported in A.2d

Conn.Super.,2002.

Sept. 6, 2002.

ADAMS, J.

*1 The plaintiff French Putnam, LLC (French) commenced this action to recover money damages to reimburse it for the costs of investigating and remediating the effects of contamination from various hazardous materials, including oil and petroleum products, on real property it purchased located at 35-37 Putnam Avenue in Norwalk, Connecticut (the Premises). The surviving claims seek reimbursement from various defendants pursuant to General Statutes § 22a-452 and on a negligence *per se* theory, based on alleged violations of environmental statutes. An affiliate of French purchased the property on June 10, 1996. This property was assigned by the affiliate to French on June 13, 1996. The writ, summons and complaint in the action were delivered to the sheriff on June 12, 1996 and served thereafter. The defendants, County Environmental Services, Inc., County Environmental Systems, Inc., Edward Alfveby, Anton Tantalos, Sam Testa and Ann Testa have filed motions for summary judgment seeking dismissal of the complaint on the ground that it is barred by the statute of limitations.

It is generally recognized that General Statutes § 52-577c [FN1] is the applicable statute of limitations for personal injury or property damage caused by exposure to a hazardous pollutant or hazardous chemical substance or mixture whether the claim is based on negligence, or some other theory. *Goldblum v. The Pittson Co.,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV920126252, (April 24, 1996) (Stevens, J.) (16 Conn. L. Rptr. 512); *Murawski v. Warren,* Superior Court, judicial district of Windham, Docket No. 40176 (March 1,

1991) (Potter, J.). The parties appear to agree that § 52-577c is the relevant statute of limitations applicable to this case. However, until October 1, 1998 Section 52-577c did not include petroleum products within its definition of a hazardous chemical substance or mixture. See *Doty v. Mucci,* 238 Conn. 238 800 (1996). [FN2] The time frame of the allegations in the revised complaint end in July 1996 and the original complaint was served in June 1998, well before the effective date of the amendment to Section 52-577c. The court is aware of several decisions holding that the amended Section 52-577c is not applicable to petroleum product contamination discovered prior the amendment. See *City of Bridgeport v. Admiral Associates,* Superior Court, judicial district of New Haven at New Haven CV98035277 (February 7, 2001) (Moran, J.) (29 Conn. L. Rptr. 444); *J.F.C. Endeavors. Inc v. Pioneer Steel Ball Co.,* Superior Court, judicial district of Hartford at Hartford, D.N. 58083 (December 14, 1999) (Hennessey, J.) (26 Conn. L. Rptr. 133). Nevertheless, in civil cases a statute of limitations is considered a procedural statute which should be applied retroactively, especially when the statute is only a limitation and does not create a right of action. *Jones Destruction, Inc. v. Upjohn,* 161 Conn. 191 (1971). Therefore, this court finds that Section 52-577c, which creates no substantive rights, is a procedural statute and applies to this case. Accord, *Town of Monroe v. Underground Construction & Survey, Inc.,* Superior Court, judicial district of Fairfield at Bridgeport, CV010384754 (April 16, 2002) (Thim, J.) (31 Conn. L. Rptr. 721).

FN1. The pertinent portion of Section 52-577c reads: "(b) Notwithstanding the provisions of sections 52-577 and 52-57a, no action to recover damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant

released into the environment shall be brought but within two years from the date when the injury or damages complained of is discovered or in the exercise of reasonable care should have been discovered."

FN2. P.A. 98-140 changed the definition of hazardous chemical substance or mixture to include "petroleum" and "a petroleum product."

*2 The defendants claim that French had discovered, or in the exercise of reasonable care should have discovered, the polluted condition of the property on or before June 13, 1996 the date of its purchase of the property and therefore its action is barred by Section 52-577c. French contends that it discovered new and additional contamination on the property in July 1996 that it, even in the exercise of reasonable care, could not have been expected to discover beforehand. Summary judgment may be granted on statute of limitations grounds when the material facts regarding the limitations issue are not in dispute. *Burns v. Hartford Hospital,* 192 Conn. 451, 452 (1984); see also *Doty v. Mucci, supra.* In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Appleton v. Board of Education,* 259 Conn. 205, 209 (2002). The movant must show that it is quite clear what the truth is, and that excludes any real doubt as

to the existence of any genuine issue of material fact ... [A] summary disposition ... should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party ... [A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed.

*Miller v. United Technologies Corp.,* 233 Conn. 732, 751-52 (1995) (citations omitted, internal quotation marks omitted). In ruling on a motion to dismiss, a court should not decide issues of material fact, but only determine whether any such issues exist. *Nolan v. Borkowski,* 206 Conn. 495, 500 (1988).

In this case the moving defendants have offered very substantial evidence on the issue when contamination on the site was discovered. This evidence includes reports by the Connecticut Department of Environmental Protection (DEP) going back to December 1993 when DEP's Oil and Chemical Spill Response Division responded to a purportedly anonymous report of contamination at the Premises. The defendants also point to documents in the plaintiff's possession indicating that in April 1996, prior to plaintiff's purchase of the premises, French was advised that it would cost close to $100,000.00 to remove waste material and soil from the premises. Finally, in the purchase agreement respecting the premises, dated June 10, 1996, French acknowledged that the premises had been used for a waste oil transfer business and "may contain contaminated earth."

In opposition to the motion French offers the affidavits of Donald Milligan, chief financial officer of French, and Robert Lamonica an environmental professional licensed in Connecticut pursuant to General Statutes § 22a-133v as "qualified ... to engage in ... investigation and remediation of pollution." [FN3] Milligan states that at the time of purchase of the premises, French knew it contained "certain environmental contamination." He also stated that French reviewed, prior to purchase, both Phase I and Phase II Environmental Site Assessments dated respectively March 4, 1994 and July 17, 1995. Milligan's affidavit also stated that subsequent to the purchase French began to excavate and remediate the soil on the premises "and learned, for the first time, of certain new contamination [on the premises]."

> FN3. French also contends that the moving defendants do not have a right to seek summary judgment on statute of limitations grounds because the limitations defense was not raised in the pleadings. However, the Testa defendants raised the limitations special defense in a pleading dated April 30, 2002 which was their first responsive pleading to the revised complaint of September 20, 1999. The plaintiff's objections to the remaining moving defendants' motion to amend their pleadings to add statute of limitations special defenses was overruled on June 4, 2002. (186.00)

*3 Lamonica's affidavit states that he has reviewed all the Phase I and II reports as well as other documents prepared for French after purchase. He states that it was "logical and appropriate" for French to rely on the professional opinions in the Phase I and II reports, that such reports were customarily prepared to assess contaminated property, and that, in his opinion, French "conducted a reasonable review and investigation of the environmental condition" of the premises. He further states that in July 1996, new contaminated soils were discovered, "contamination ... not specified in the Phase I or II reports."

The critical issue for § 52-577c analysis is when the "injury and damage complained of" was discovered or when it should have been discovered through the exercise of reasonable care. The

Connecticut appellate courts have provided no definition of "reasonable care." See *Visconti v. Pepper Partners Ltd.,* Superior Court, judicial district of Waterbury, X06CV990170072 (May 14, 2002) (McWeeny, J.).

On the record before it, this court is not able to conclude that there are no material facts at issue with respect to the application of the statute of limitations. There is considerable force to the moving defendants' contention that French knew or should have known of the contamination it seeks reimbursement for remediating, and indeed, French concedes some actual knowledge. However, the Lamonica affidavit puts into issue whether French's claimed lack of knowledge about "additional" contamination was reasonable, and this court believes that is quintessentially an issue for a jury to decide, along with the subsidiary issue concerning whether the subject contamination was, in fact, additional. Other courts have decided similar issues on summary judgment motions. See *Visconti v. Pepper Partners Ltd., supra; Blackburn v. Miller-Stephenson Chemical Co., Inc.,* Superior Court, judicial district of Danbury, CV930314089 (September 11, 1998) (Leheny, J.). In this case, however, there is very sparse information about what French knew. For instance, there is no deposition testimony of French personnel in the record and indeed the critical Phase I and II reports are not before the court.

The motions for summary judgment are denied.

Conn.Super.,2002.

French Putnam, L.L.C. v. County Environmental Services, Inc.

2002 WL 31236213 (Conn.Super.), 33 Conn. L. Rptr. 3

END OF DOCUMENT


*CASE NO. 03-945- PLAINTIFFS' APPENDIX OF UNREPORTED CASES, EXHIBIT 11*
**Giunta v. Town of Westport**

2002 WL 1293918, 32 Conn. L. Rptr. 232 , Conn.Super., May 16, 2002

Not Reported in A.2d

Conn.Super.,2002.

May 16, 2002.

WILLIAM B. LEWIS, Judge T.R.

*1 The original plaintiffs in this case were Quinto Giunta, the owner of premises located at 6 Vani Court, Westport, his son, Richard Giunta and Richard's wife, Karen Giunta, and their twin sons, Christopher and Michael, nine years old, all of whom reside at 6 Vani Court. During the pendency of this action, Quinto Giunta died, and his son continues to pursue the case in his individual capacity, but also as the executor of the estate of Quinto Giunta, deceased. The defendant is the town of Westport and its commissioner of public works, but the case was subsequently withdrawn as to the commissioner. The case involves odors allegedly emanating from the town's sewage treatment plant.

The plaintiffs have filed a "fourth revised complaint" dated October 9, 2001, which contains nine counts, including a claim for injunctive relief. The defendant has filed a motion (# 143) to strike all nine counts. Each of the challenged counts will be analyzed in turn to decide whether they should be stricken.

"The purpose of a motion to strike is to contest ... the legal sufficiency of the allegations of any complaints ... to state a claim upon which relief can be granted." (Internal quotation marks

omitted.) *Peter-Michael, Inc. v. Sea Shell Associates,* 244 Conn. 269, 270, 709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) *Faulkner v. United Technologies Corp.,* 240 Conn. 576, 580, 693 A.2d 293 (1997). "The role of the trial court [is] to examine the [complaint], construed in favor of the [plaintiff], to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) *Dodd v. Middlesex Mutual Assurance Co.,* 242 Conn. 375, 378, 698 A.2d 859 (1997).

*First Count--Private Nuisance*

The plaintiffs allege that Richard Giunta now owns the subject premises and that his wife and children also reside therein; that for a great number of years they "have been forced to endure intermittent, yet persistent, obnoxious odors, mostly that of raw sewage sufficient to warrant a gag response" from the municipal sewer plant located about a mile away from their home; that the defendant knew of this condition and the effect on the plaintiffs; that there were "continually unfulfilled promises of corrective action, continually and repeated missed deadlines, unrealized proposals and non-utilization of appropriated funds to correct the problem"; that the plaintiffs have been deprived of the right to use and enjoy their property in a variety of ways; that in 1993, the Connecticut Department of Environmental Protection (DEP) filed a notice that the sewer plan as operated by the defendant violated Section 22a-174-23(a)(1) of the Regulations of Connecticut State Agencies; [FN1] and that in 1998, the DEP issued an order to the defendant that problems with the sewer plant be rectified, but that the defendant had not complied with this order in any significant way and the plaintiffs continue to suffer damages as a result.

FN1. The order from the DEP stated in pertinent part that: "[b]ased on the criteria set forth in Section 22a-174-23(a)(2)(b) of the Regulations of Connecticut State Agencies, this odor was determined to unreasonably interfere with the enjoyment of life and the use of property, thereby constituting a nuisance."

This section of the regulation provides in pertinent part that:

(a)(1) No person shall cause or permit the emission of any substance or combination of substances which creates or contributes to an odor, in the ambient air, that constitutes a nuisance; (2) An odor constitutes a nuisance if present with such intensity, characteristics, frequency and duration that: (A) It is, or can reasonably be expected to be, injurious to public health or welfare, or (B) It unreasonably interferes with the enjoyment of life or the use of property, considering the character and degree of injury to, or interference with, the health, general welfare, property, or use of property of the people affected, and the location of the pollution source and character of the area or neighborhood affected. Whether the source of the emissions was present in the location first shall not be a consideration. (3) Except as provided in subsection (b) of this section, in determining whether an odor constitutes a nuisance the commissioner shall review information gathered from any source of information, including but not limited to citizen complaints and site inspections or surveys.

*2 In seeking to strike the first count, the defendant argues that: (1) Richard Giunta is the sole owner of the subject premises, not his wife and children, and that the first count claiming nuisance may be pursued only by an owner of property; (2) a municipality such as the defendant may be liable only when it creates a nuisance, and that mere nonfeasance does not set forth a proper cause of action; and (3) it is immune from liability because the operation of a sewer plant involves a discretionary governmental activity, not a ministerial function.

The subject of what constitutes a common law cause of action in private nuisance was discussed at some length in the recent case of _Pestey v. Cushman,_ 259 Conn. 345, 788 A.2d 496 (2002), where our Supreme Court ruled: "On the basis of our reexamination of our case law and upon our review of private nuisance law as described by the leading authorities, we adopt the basic principles of § 822 of the Restatement (Second) of Torts and conclude that in order to recover damages in a common-law private nuisance cause of action, a plaintiff must show that the defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of his or her property. The interference may be either intentional ... if the defendant intends the act that brings about a condition found to be nuisance; or the result of the defendant's negligence. Whether the interference is unreasonable depends upon a balancing of the interests involved under the circumstances of each individual case. In balancing the interests, the fact finder must take into consideration all relevant factors, including the nature of both the interfering use and the use and enjoyment invaded, the nature, extent and duration of the interference, the suitability for the locality of both the interfering conduct and the particular use and enjoyment invaded, whether the defendant is taking all feasible precautions to avoid any unnecessary interference with the plaintiff's use and enjoyment of his or her property, and any other factors that the fact finder deems relevant to the question of whether the interference is unreasonable. No one factor should dominate this balancing of interests; all relevant factors must be considered in determining whether the interference is unreasonable." (Internal citations omitted.) _Id., at 360-61._ Regarding the question of whether the interference is unreasonable, the Supreme Court wrote that: "Ultimately, the question of reasonableness is whether the interference is beyond that which the plaintiff should bear, under all of the circumstances of the particular case, without being compensated." _Id._ at 362. This case refers to the use and enjoyment of one's property. All the plaintiffs reside at 6 Vani Court, and they allege that the use and enjoyment of their home have been adversely affected by the defendant's conduct, thus affording them the right to pursue this action as plaintiffs.

*3 Contrary to the claim of the defendant municipality, _Hillman v. Greenwich,_ 217 Conn. 520, 528, 587 A.2d 99 (1991), indicates that an action for "private nuisance" may lie against a municipality. Moreover, General Statutes § 52-557n(b)(8) and (9) render a town such as the defendant liable for municipal properties and pollution of the environment. [FN2] Thus, governmental immunity is not applicable under these facts.

FN2. General Statutes § 52-557n(b)(8) provides in pertinent part that a municipality may be liable for damages for the "failure to make an inspection or making an inadequate or negligent inspection of ... property owned ... by such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety ..." Subsection (9) provides in pertinent part that a town may be liable for the "failure to detect or prevent pollution of the environment ..."

In summary, measuring the allegations in the first count against the essential elements of a cause of action for private nuisance, this court finds that the allegations are sufficient. Accordingly, the motion to strike the first count is denied.

### Second Count--Negligence

The plaintiffs have alleged that the defendant owes them a duty of "reasonable care" to prevent them from damage or harm; that by operating the sewer plant in the manner it did, despite the DEP's order, the defendant has violated the duty of due care owed them; and that the plaintiffs have been damaged as a result. The defendant's motion to strike is premised on the claim that its operation of the sewage treatment plant was a discretionary governmental function with respect to which a municipality is immune from liability.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Maffucci v. Royal Park Ltd. Partnership,* 243 Conn. 552, 566, 707 A.2d 15 (1998). "Recovery of damages in negligence requires proof by a fair preponderance of the evidence that the actor owed a duty of care to the victim, which was breached by the actor's failure to meet the standard of care arising therefrom and that the breach was the proximate cause of actual harm suffered by the victim." *Coburn v.. Lenox Homes, Inc.,* 186 Conn. 370, 372, 441 A.2d 620 (1982).

The plaintiffs have adequately pled a cause of action claiming negligence on the part of the defendant municipality. The claim of governmental immunity does not require the granting of the motion to strike this count for the same reasons set forth in the discussion of the first count of common-law private nuisance. The motion to strike the second count is denied.

### Third Count--Recklessness

At common law, the insertion of the word "reckless" or "recklessness" in a count otherwise stating a claim for negligence is insufficient to state a claim of recklessness. "There is a wide difference between negligence and a reckless disregard of the rights or safety of others, and a complaint should employ language explicit enough to clearly inform the court and opposing counsel that reckless misconduct is relied on ... Simply using the word ' reckless' or ' recklessness' is not enough. A specific allegation setting out the conduct that is claimed to be reckless or wanton must be made." (Internal quotation marks omitted.) *Dumond v. Denehy,* 145 Conn. 88, 91, 139 A.2d 58 (1958).

*4 In count three, the plaintiffs re-allege the allegations of negligence, but add new allegations that the defendant's "failure to adequately address, investigate and remediate the odor problem for such an extended time after the inordinate number of complaints ... constituted and continues to constitute reckless and wanton misconduct."

The plaintiffs in this case have properly alleged the existence of a cause of action for recklessness because they did not simply repeat the allegations of negligence and give them a new label but, to the contrary, made additional allegations referring to reckless and wanton misconduct. The motion to strike the third count is denied.

### Fourth Count--Breach of Statutory Duty under *General Statutes § 22a-184*

The plaintiffs have alleged that the defendant's conduct as outlined in the previous counts constitutes a breach of its obligations to them under General Statutes § 22a-184, which prohibits polluting the air. [FN3] The plaintiffs further allege that the defendant's failure to rectify the odor problem at the sewer plant has caused them to be damaged and harmed.

FN3. General Statutes § 22a-184 provides in pertinent part that: "No person shall cause air pollution in violation of any provisions of this chapter or Section 14-164c or of the

regulations adopted hereunder; no person shall construct, install, enlarge, or establish a new air contaminant source specified in regulations adopted by the commissioner without a permit issued by the commissioner, or in violation of an order of said commissioner. The commissioner may request the Attorney General to institute an action in the superior court for the judicial district of Hartford for injunctive relief to restrain any violation of this section."

The defendant claims that this statute does not afford the plaintiffs a private cause of action. The motion to strike this count is granted because the statute itself states explicitly that its enforcement is a function of the Attorney General of this state, and the plaintiffs have not cited any authority to the contrary.

*Fifth Count--Trespass*

The defendant next argues that the plaintiffs have failed to sufficiently allege a cause of action for trespass. The essential elements of a trespass action are: "(1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." *Abington Ltd. Partnership v. Talcott Mountain,* 43 Conn.Sup. 424, 427, 657 A.2d 732 (1994). "[A] trespass need not be inflicted directly on another's realty, but may be committed by discharging foreign polluting matter at a point beyond the boundary of such realty ... In order that there may be a trespass ... [i]t is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter [on the property]." (Citations omitted; internal quotation marks omitted.) *Mather v. Birken Manufacturing Co.,* Superior Court, judicial district of Hartford at Hartford, Docket No. 564862 (December 8, 1998, Hennessy, J.) (23 Conn. L. Rptr. 443); *Ahnert v.. Getty,* Superior Court, judicial district of New London at New London, Docket No. 537008 (April 4, 1997, Handy, J.).

In this count, the plaintiffs have alleged that the defendant's conduct in failing to cure the odor problems at the sewer plant constitutes a trespass because the "intolerable odors ... invade the Plaintiffs' Property." Thus, a cause of action in trespass has been adequately set forth for the purposes of withstanding a motion to strike.

*5 Again, the defendant has urged that it is entitled to governmental immunity as a second ground to strike this count. However, the doctrine of governmental immunity does not apply. In *Krozser v. New Haven,* 212 Conn. 415, 562 A.2d 1080 (1989), cert. denied, 493 U.S. 1036, 110 S.Ct. 757, 107 L.Ed.2d 774 (1990), our Supreme Court stated the following: "[s]overeign immunity does not bar suits against state officials acting in excess of their statutory authority ... In addition, the state cannot use sovereign immunity as a defense in an action for ... injunctive relief." *Id.,* at 421. "We have excepted ... injunctive relief from the sovereign immunity doctrine on the ground that a court may fashion these remedies in such a manner as to minimize disruption of government and to afford an opportunity for voluntary compliance with the judgment." (Citations omitted; internal quotation marks omitted.) *Pamela B. v. Ment,* 244 Conn. 296, 330, 709 A.2d 1089 (1998). Although framed in terms of sovereign immunity of the state, the same reasoning applies to governmental immunity of a municipality.

Furthermore, the Supreme Court noted that "[w]here ... [the activity] is such as necessarily results in a nuisance to abutting property owners, or is so obviously inadequate as necessarily to result in a direct trespass upon their property, the municipality cannot claim immunity, since such a result would constitute an appropriation of property without compensation." *Peterson v.*

*Oxford,* 189 Conn. 740, 748, 459 A.2d 100 (1983).
The complaint has sufficiently set forth a cause of action for trespass and governmental immunity is inapplicable. The motion to strike the fifth count is denied.

### *Sixth Count--Intentional Infliction of Emotional Distress*

The plaintiffs have alleged that the defendant's conduct was "recklesswilful, wanton," and an "extreme and outrageous departure from ordinary care" which resulted in their sustaining severe emotional distress, including "the enjoyment and well being of the minor children." The defendant claims that these allegations are insufficient to state a claim upon which relief may be granted and that it is entitled to governmental immunity.

In order to prevail on a claim for intentional infliction of emotional distress against the defendant, the plaintiff must allege four elements: "(1) that the actor intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of his or her conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Board of Education of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059 (2000).

In this case, the plaintiffs have sufficiently alleged all four elements of intentional infliction of emotional distress necessary to withstand a motion to strike. The plaintiffs do not merely assert legal conclusions not supported by any facts, as claimed by the defendant, but rather they made specific factual allegations required to state a claim upon which relief can be granted. Accordingly, the motion to strike this count is denied.

### *Seventh Count--Negligent Infliction of Emotional Distress*

*6 The plaintiffs have alleged in this count that the defendant breached its common law duty of reasonable care and its statutory duty under the environmental laws, as a result of which the plaintiffs claim to have suffered "severe, emotional distress" as well as "extreme anxiety."
The defendant contends that the plaintiffs are merely setting forth conclusions and not facts. The defendant also claims it is immune from liability because of its status as a municipality.
As explained by our Supreme Court in *Parsons v. United Technologies Corp.,* 243 Conn. 66, 88-89, 700 A.2d 655 (1997), in order to prevail on a claim for negligent infliction of emotional distress, the plaintiff must show that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm ..."
The motion to strike the seventh count is denied because the plaintiffs have sufficiently set forth a cause of action for negligent infliction of emotional distress.

### *Eighth Count--Injunction*

The plaintiffs seek a mandatory injunction in the eighth count ordering the defendant municipality to take immediate steps and repairs "to remediate the odor problem pending the equally necessary, permanent corrections."
The defendant argues that the plaintiffs have not adequately indicated that they are suffering irreparable harm. The town also claims that the DEP has exclusive jurisdiction over this controversy and this court would be "usurp(ing) the expertise and authority of the DEP" were it to get involved in this case. This claim could have been asserted in a motion to dismiss for lack of subject matter jurisdiction but was not.
In terms of the plaintiffs' application for an injunction, it is well established that a party seeking a

permanent injunction "has the burden of proving irreparable harm and lack of an adequate remedy at law ... The request for injunctive relief is addressed to the sound discretion of the trial court ... In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction ..." (Citations omitted; internal quotation marks omitted.) *Tomasso Brothers, Inc. v. October Twenty-Four, Inc.,* 230 Conn. 641, 648, 646 A.2d 133 (1994). "A decision to grant or deny an injunction must be compatible with the equities in the case." *Moore v. Serafin,* 163 Conn. 1, 6, 301 A .2d 238 (1972).

The plaintiffs have set forth a cause of action for an injunction by alleging that they "have no adequate remedy at law to force the immediate remedies available to obviate the obnoxious odors during the extensive and time consuming permanent remediation," or "to have the Defendant promptly and adequately remedy the defects at the Plant which are causing the release of obnoxious odors." If the plaintiffs prove one or more counts of their complaint, they should have available an injunction as a possible remedy. Accordingly, the motion to strike the eighth count is denied.

*Ninth Count--Unconstitutional Taking of Property*

*7 In this count, the plaintiffs allege that the defendant has taken their property without paying just compensation as required by the Connecticut constitution because the defendant has "substantially interfered" with the plaintiffs'   "right to the use and enjoyment of their lives and property to a substantial degree." The defendant claims that the plaintiffs'   property has not been "taken," because it is still being used as a residential dwelling and has not been rendered useless."

"We begin our analysis of this claim by setting forth the general, well established principles that govern the taking of real property by eminent domain. The fifth amendment to the United States constitution, as applied to the states through the due process clause of the fourteenth amendment ... provides that '  private property [shall not] be taken for public use, without just compensation.' U.S. Const., amend. V. Article first, § 11, of the Connecticut constitution similarly provides that '  [t]he property of no person shall be taken for public use, without just compensation therefor.'   " (Citations omitted; internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc. v. ATC Partnership,* 256 Conn. 813, 827-28, 776 A.2d 1068 (2001).

The plaintiffs have adequately pled a cause of action for the taking of property without compensation under the federal and state constitutions. See *Spitzer v. Waterbury,* 113 Conn. 84, 89, 154 A. 157 (1931) (referring to trespass to one'  s property by reason of municipal activities). "[S]uch a result would constitute an appropriation of property without compensation." *Peterson v. Oxford, supra,* 189 Conn. at 749.

In summary, the defendant'  s motion to strike is granted as to the fourth count, but is denied as to all of the other counts of the plaintiffs'   complaint.

So Ordered.

Conn.Super.,2002.

Giunta v. Town of Westport

2002 WL 1293918 (Conn.Super.), 32 Conn. L. Rptr. 232

END OF DOCUMENT

**CASE NO. 03-945- PLAINTIFFS' APPENDIX OF UNREPORTED CASES, EXHIBIT 12 GOLDBLUM v. THE PITTSON CO., No. CV 920126252S (Apr. 24, 1996)**

**IRVING S. GOLDBLUM ET AL. v. THE PITTSON CO. ET AL.**
**1996 Ct. Sup. 2895-ZZ, 16 CLR 512**
**No. CV 920126252S**
**Superior Court**
**Judicial District of Stamford**
**April 24, 1996**

MEMORANDUM FILED APRIL 24, 1996

   STEVENS, J.

   The plaintiffs, Irving S. Goldblum, Murray A. Goldblum, and Alex L. Goldblum, instituted
this action against The Pittson Co., Ultramar Petroleum, Inc., and Aminoil Development, Inc. on
August 10, 1992. The plaintiffs filed a third amended complaint dated November 15, 1993
alleging reimbursement costs pursuant to General Statutes § 22a-452 for petroleum hydrocarbon
contamination along an underground pipeline, which the plaintiffs allege was the result of the
defendants' or their corporate predecessors' negligent use of the pipeline. The defendants filed a
motion for summary judgment on October 31, 1995, on the ground that plaintiffs' claim is barred
by the statute of limitations. The plaintiffs filed an opposition to the motion for summary
judgment on December 12, 1995, and the defendants filed a reply memorandum.

   Practice Book § 384 provides that summary judgment shall be rendered if the pleadings,
affidavits and any other proof submitted show that there is no genuine issue as to any material
fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for
summary judgment, the trial court must view the evidence in the light most favorable to the
nonmoving party. Barrett v. Danbury Hospital, 232 Conn. 242, 250, 654 A.2d 748 (1995).
Summary judgment may be granted where an action was not commenced within the period of the
statute of limitations. Burns v. Hartford Hospital, 192 Conn. 451, 454, 472 A.2d 1257 (1984).

   The defendants state that there is no dispute that as of 1979, defendants had no ownership
interest in and were in no way involved with the property in question. The complaint was served
in August 1992. The defendants argue that the case is barred by General Statutes § 52-577 which
provides, "[n]o action CT Page 2895-AAA founded upon a tort shall be brought but within three
years from the date of the act or omission complained of."

   On the other hand, plaintiffs claim that this case is governed by General Statutes § 52-577c
which states that an action to recover damages for personal injury or property damages caused by
a hazardous chemical must be brought within two years from the date of the discovery of this
damage.[fn1] Plaintiffs claim that since they discovered the damage in 1991, the suit was timely
filed under § 52-577c.

   In rebuttal, defendants indicate that plaintiffs have brought suit under § 22a-452, and this
provision entitles plaintiff to receive "reimbursement" from any person for the costs expended to
mitigate the effects of hazardous waste contamination caused by this person's negligence.
Defendants insist that an action seeking "reimbursement" costs under § 22a-452 is not an action
seeking "damages for personal injury or property damage" under the § 52-577c statute of

limitations. According to defendants, the three-year limitation period of § 52-577 must apply to § 22a-452 reimbursement actions. Thus, the first issue presented is whether the limitation period of § 52-577 or § 52-577c controls the time period within which an action must be filed seeking to recover reimbursement and costs expended to clean up hazardous waste contamination.

As previously stated, General Statutes § 22a-452 (a) creates a civil action for reimbursement for reasonable costs spent for the containment, removal or mitigation of contamination caused by oil, petroleum, or chemical liquids or other hazardous wastes. A party is entitled to reimbursement from any person, firm or corporation if the pollution "resulted from the negligence or other actions of such person, firm or corporation." The statute does not contain a time limit for instituting an action, and "the legislative history on both Sections 22a-452 and 52-577c does not resolve exactly which statute of limitations to apply." Electroformers, Inc. v. Emhart Corporation, Superior Court, Judicial District of Danbury, Docket No. 297891 (January 29, 1993) (Fuller, J., 8 Conn. L. Rptr. 307). "[S]ince [General Statutes § 22a-452] does not have a limitation period for indemnification actions, Section 52-577 applies, unless the facts fit within the two-year statute of limitations for damages caused by exposure to a hazardous substance set forth in Section 52-577c." Id. See also Sharp v. Wyatt, 31 Conn. App. 824, 854-55, 627 A.2d 1347, aff'd, 230 Conn. 12, 644 A.2d 871 (1994) (holding that CT Page 2895-BBB in order to determine if § 52-577 or § 52-577c applies to the plaintiff's case, the trier of fact must determine if the facts of the case come within the definition of the word exposure as used in § 52-577c).

The defendant in Electroformers, like the defendant in the present action, argued that an indemnification action is not an action to recover for property damage. The court held that while there was a split of authority, "a majority view is that cost recovery actions are claims for damages." Electroformers Inc. v. Emhart Corporation, supra, citing Avondale Industries, Inc. v. Travelers Indemnity Co., 887 F.2d 1200, 1207 (2d Cir. 1989), cert. denied, 496 U.S. 906 (1990) (under insurance policy, cleanup costs are damages); Hays v. Mobil Oil Corporation, 930 F.2d 96 (1st Cir. 1991) (environmental cleanup costs, incurred in response to demands of government agencies, are `damages' when there has been a discharge of pollutants that has caused property damage . . . contamination of soil and groundwater by the release of hazardous material involves property damage (internal citations omitted)); Newcastle County v. Hartford Accident & Indemnity Co., 673 F. Sup. 1359, 1365 (D.Del. 1987). But see Mraz v. Canadian Universal Ins. Co., 804 F.2d 1325 (4th Cir. 1986); United States Fidelity & Guaranty v. Morrison Grain Co., 734 F. Sup. 437, 450 (D. Kan. 1990). aff'd, 999 F.2d 489 (10th Cir. 1993).

The defendants rely on Bell Power Systems, Inc. v. J.H. Hogan, Inc., Superior Court, Judicial District of Middlesex at Middletown, Docket No. 68637 (August 2, 1995) (Higgins, J.), to support their argument that § 52-577c does not apply to § 22a-452 "reimbursement" claims. A careful review of Bell Power indicates that defendants' reliance on this case is misplaced. After a trial, the court in Bell Power found that § 22a-452 was inapplicable because the plaintiff failed to show either that any possible contamination was caused by the defendant's negligence, or that a "release of a pollutant into the environment caused to the plaintiff any property damage by reason of exposure to said pollutant." Id. at 4-5. In the instant case, there has been no trial, and on a motion for summary judgement, this court cannot make any such factual findings concerning the applicability of § 22a-452 to the defendants' alleged conduct.

The defendants also urge the court to adopt the position taken in Doty v. Mucci, Superior Court, Judicial District of CT Page 2895-CCC Fairfield at Bridgeport, Docket No. 930305 (February 9, 1995) (Cocco, J.), that even if § 52-577c applies, the action would still have to be brought within the three-year limitation of § 52-577. However, the reasoning of Doty cannot be squared with the express language of § 52-577c which states that its provisions apply "[n]ot withstanding Sections 52-577 and 52-577a." See Murawski v. Warren, Superior Court. Judicial District of Windham, Docket No. 40176 (March 1, 1991) (Potter, J.).

As explained in Murawski, the legislative history of § 52-577c indicates that the purpose of this statute "was to extend the statute of limitations for suits to recover damages caused by toxic waste pollution." Id. at 5, quoting 27 S. Proc., Pt. 4, 1984 Sess., p. 1353. Thus, this court rejects defendants' positions and adopts the conclusion reached in Murawski that "in a case involving exposure to hazardous chemical substances, whether based on negligence or some other theory, the applicable statute of limitations is that of Connecticut General Statute Section 52-577c(b)." Id. at 7.

The issue becomes, therefore, whether the facts of the case fit within General Statutes § 52-577c(b). The defendant argues that petroleum hydrocarbons are not chemical substances within the meaning of § 52-577c. The statute provides that a hazardous chemical substance is a .' chemical substance or mixture for which there is a federal standard . . . generally intended to prevent, reduce or mitigate the risk of a disease or class or type of diseases to an individual or individuals resulting from exposure to such chemical substance or mixture." General Statutes § 52-577c(a)(3). Plaintiffs cite the Federal Water Pollution Control Act, 33 U.S.C. § 1321 (b)(1), and the regulations promulgated pursuant to the section, 40 C.F.R. § 110.6. 112. 1.4; and the Oil Pollution Act of 1990, 33 U.S.C. § 2702 (a). The Pollution Control Act indicates that its provisions cover "oil of any kind or in any form including but not limited to petroleum . . ." 33 U.S.C. § 1321 (a)(1). Because plaintiffs' complaint alleges that "petroleum hydrocarbons" contaminated the property, it clearly appears that the allegations are within General Statutes § 52-577c(b). To the extent that defendants nevertheless maintain that the petroleum contaminate at issue here is not in fact subject to a federal standard because of any specific characteristic of the contaminate and the scope of the federal regulation, a genuine issue of material fact exists which cannot be resolved by a summary judgment motion. CT Page 2895-DDD

The defendants last argue that the plaintiffs knew, or in reasonable exercise of care should have known of the contamination more than two years before commencing the suit. The plaintiffs submitted an affidavit of Murray A. Goldblum which states that he first learned of contamination on the property in 1991, and had no reason to believe there was contamination prior to 1991. (Affidavit of Murray A. Goldblum. 4, 8.) This question also raises a genuine issue of material fact about whether the suit was filed within the § 52-577c statute of limitations.

Therefore, for all of the foregoing reasons the defendants' motion for summary judgment is hereby denied.

[fn1] General Statutes § 52-577c(b) provides: "Notwithstanding the provisions of Sections 52-577 and 52-577a, no action to recover damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the

environment shall be brought but within two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered.

STEVENS, J.

END OF DOCUMENT