UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARENCE R. COLLINS, JR., et al. | : | 3:03-cv-945 (CFD) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| OLIN CORPORATION and the TOWN | : | |
| OF HAMDEN, | : | |
| | : | |
| Defendants. | : | November 24, 2003 |

---

## OLIN CORPORATION'S REPLY TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO ITS MOTION TO DISMISS

### TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY .................................................................. 1

ARGUMENT AND AUTHORITIES.................................................................. 2

    A.   The Doctrine of Primary Jurisdiction Requires Dismissal of Plaintiffs' Amended Complaint (Responding to Plaintiffs' Opposition Brief at pp. 39-44) ........................................... 2

    B.   Plaintiffs Have Failed to State a Negligence Claim Against Olin (Responding to Plaintiffs' Opposition Brief at pp. 4-10)............................. 5

    C.   Plaintiffs Have Failed to State a Claim for Reckless Conduct (Responding to Plaintiffs' Opposition Brief at pp. 13-14)........................... 8

    D.   Count VII Fails to State a Claim for Negligence Per Se

ORAL ARGUMENT REQUESTED

(Responding to Plaintiffs' Opposition Brief at pp. 14-19) ...................... 9

E.  Plaintiffs Have Failed to State a Claim for Either Negligent or
    Intentional Infliction of Emotional Distress (Responding to
    Plaintiffs' Opposition Brief at pp. 19-23) ................................ 12

F.  Plaintiffs Have Failed to State a Claim for Either Private or
    Public Nuisance (Responding to Plaintiffs' Opposition Brief,
    pp. 23-25; 27-31) ........................................................ 15

G.  Plaintiffs Have Failed to State a Claim for Abnormally Dangerous
    Activity (Responding to Plaintiffs' Opposition Brief, pp. 32-38) ......... 18

H.  Plaintiffs Have Failed to State a Claim for Reimbursement Under
    Conn. Gen. Stat. §22A-452 (Responding to Plaintiffs' Opposition
    Brief at pp. 38-39) ...................................................... 21

CONCLUSION ................................................................... 22

## **INTRODUCTION AND SUMMARY**

Plaintiffs' Opposition Brief oversteps even the most liberal interpretation of the standard for ruling on a motion to dismiss. "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Construction and General Lab v. City of Hartford*, 153 F.Supp.2d 156, 159 (D.Conn. 2001)(*quoting Leads v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996)). "Rule 12(b)(6) does not allow the substitution of conclusory statements 'for minimally sufficient factual allegations.'" *Whitaker v. Haynes Const. Co., Inc.*, 167 F.Supp.2d 251, 254 (D.Conn. 2001)(citations omitted). In many areas, Plaintiffs attempt to rely on assertions, made for the first time in their Opposition Brief, to avoid dismissal of their claims. The law does not permit that. *See, e.g., Huff v. West Haven Bd. Of Educ.*, 10 F.Supp.2d 117, 120 (D.Conn. 1998) (in ruling on a motion to dismiss "the Court shall consider only those facts that appear on the face of the complaint." citation omitted); *Mauro v. Southern New England Telecommunications*, 46 F.Supp.2d 181, 186 (D.Conn. 1999) (refusing to consider assertions, raised for the first time in opposition to summary judgment, which plaintiff failed to allege in his complaint).

Plaintiffs' Opposition Brief is loaded with new allegations, new assertions of fact and conclusory statements. One glaring example of this is Plaintiffs' new assertion that Olin and the Town of Hamden were involved in a "joint venture" under which "Hamden solicited owners of private properties in the Newhall Section of Hamden to allow industrial waste from Olin to be dumped as 'fill' onto their properties." *See, e.g.,* Plaintiffs' Opposition Brief, p.2. There was no such "joint venture" nor have Plaintiffs alleged any facts which would support the finding of any such "joint venture." Plaintiffs do not even attempt to argue that the legal requirements of a joint venture have been met. Plaintiffs simply throw out the argument that a joint venture existed in a

1

vain attempt to save some of their alleged causes of action. Any reference to a joint venture must be ignored and any of Plaintiffs' arguments which rely on the existence of a joint venture must be disregarded.[1]

As much of Plaintiffs' arguments are based on nothing more than bald assertions, new allegations of fact not contained in the Amended Complaint and conclusions of law, it is inescapable that the Court should dismiss Counts I, III, V, VII, IX, XI, XIII and XIV of Plaintiffs' Amended Complaint.

## ARGUMENT AND AUTHORITIES

### A. The Doctrine of Primary Jurisdiction Requires Dismissal of Count V of Plaintiffs' Amended Complaint (Responding to Plaintiffs' Opposition Brief at pp. 39-44)

In Count V, Plaintiffs ask the Court to take over responsibility for the investigation and remediation of their properties from the Connecticut Department of Environmental Protection (DEP). To save Count V, Plaintiffs rely exclusively on the *Martin v. Shell Oil Company*, 198 F.R.D. 580 (D.Conn. 2000) holding, while mischaracterizing Olin's primary jurisdiction argument. In doing so, Plaintiffs have twisted both Olin's primary jurisdiction argument and the *Martin* rationale in such a way that both are almost unrecognizable. Plaintiffs suggest that the facts and arguments of *Martin* are identical to the facts and arguments in this case. They are not.

The differences between this case and *Martin* are significant. *Martin's* analysis of the four factor test for primary jurisdiction focuses exclusively on whether the court would invoke the primary jurisdiction doctrine *to dismiss plaintiff's tort claims*. Other than mentioning that

---

[1] Another liberty that Plaintiffs take is their assertion that Olin's industrial waste "contained substances that were well-known poisons at all relevant times." *See*, Plaintiffs' Opposition Brief, p.2. While Olin disputes that this is true, even if it were, there is no allegation in Plaintiffs' Amended Complaint that Olin knew that its wastes contained "well-known poisons" or that Olin or others knew that such substances were in fact harmful at the time the waste was disposed.

2

injunctive relief was sought, the *Martin* court did not analyze any request for injunctive relief in making its decision.

Unlike the defendant in *Martin*, Olin does not rely on the primary jurisdiction argument to seek dismissal of any common law tort claims. *Martin* did not invoke the primary jurisdiction doctrine because the court believed that the common law claims that defendant sought to dismiss were all of a type commonly adjudicated by the courts and did not require extensive interpretation of agency regulations. *Martin*, 198 F.R.D. at 585. As such, the court did not believe that there was a risk of inconsistent rulings, because with the exception of the negligence per se claim, all of the claims raised in *Martin* "sound in private tort actions at common law, independent of any statutory standard." *Id.* at 586.

While *Martin* may support an argument that the primary jurisdiction doctrine should not be invoked to dismiss common law causes of action, it does not support an argument that the Court should step in the shoes of the DEP to order and monitor precisely the type of relief that is already in place in the Consent Order that DEP is enforcing. Unlike the defendant in *Martin*, Olin invokes the primary jurisdiction doctrine with respect to Plaintiffs' claims that plainly require the resolution of issues which have "been placed within the special competence of an administrative body"—i.e. the DEP. *Martin*, 198 F.R.D. at 585 (citation omitted). Unlike in *Martin*, Olin is not seeking to use the doctrine of primary jurisdiction in defense of Plaintiffs' claims for monetary damages. *See, e.g.*, *Martin*, 198 F.R.D. at 587 ("the [DEP] is charged with protecting the environment for the public's health and safety…It does not have the purpose of vindicating individual property rights such as those asserted by the plaintiffs in this case.").

Dismissing Count V under the primary jurisdiction doctrine is not only in line with the

3

underlying rationale and purpose of *Martin*, it is also consistent with the *Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Railway Co.*, 857 F.Supp. 838 (D.N.M. 1994) case cited in Olin's Memorandum in Support of its Motion to Dismiss Count V. *Schwartzman* is directly on point. Plaintiffs do not address the facts and rationale of *Schwartzman*, nor do they cite any case other than *Martin* in support of their position. Plaintiffs sole attempt to discredit the *Schwartzman* holding and rationale is to point out that it is a decision from the District Court for the District of New Mexico. *See* Plaintiffs' Opposition Brief, p. 43.

The court in *Martin* acknowledged that the *Schwartzman* holding and rationale would be appropriate under precisely the circumstances of this case. In discussing *Schwartzman*, *Martin* noted that invoking the primary jurisdiction doctrine would be appropriate where the relief sought is "in line with the responsibilities of a state agency of environmental protection, which is to protect the environment for the public's health and safety. *The Schwartzman court was especially cognizant of the fact that, if it ruled for the plaintiffs…it would have to fashion an investigation and remediation order that would essentially cover the same subject matter as a similar order issued by the state agency*." *Martin*, 198 F.R.D. at 587, fn. 9 (emphasis added).

As discussed in Olin's Memorandum, the relief sought in Count V involves precisely the type of technical and policy considerations that are within the DEP's expertise and discretion. In addition, there is a strong possibility of inconsistent rulings on issues related to Plaintiffs' request for injunctive relief in Count V. Finally, the DEP is already addressing the relief Plaintiffs seek in Count V. *See* Olin's Memorandum, pp. 15-17. Count V must be dismissed.

There is no need to stay Count V. Rather, the Court should dismiss Count V without prejudice. As *Martin* noted "[r]eferral of the issue to the administrative agency does not deprive

4

the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Martin*, 198 F.R.D. at 585 (*citing Reiter v. Cooper*, 507 U.S. 258, 268-69, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993)).

Plaintiffs suggest no reason why they would be prejudiced by a dismissal of Count V. Nor could there be any prejudice. The DEP process is well under way and has as its goal the investigation and remediation of the Public and Non-Public Properties located in Hamden. *See*, *e.g.*, *Far East Conference et al. v. United States et al.*, 342 U.S. 570, 577, 72 S.Ct. 492, 495-96, 96 L.Ed. 576 (1952) ("We believe that no purpose will here be served to hold the present action in abeyance in the District Court while the proceeding before the Board and subsequent judicial review or enforcement of its order are being pursued. A similar suit is easily initiated later, if appropriate.").

### B. Plaintiffs Have Failed To State A Negligence Claim Against Olin (Responding to Plaintiffs' Opposition Brief at pp. 4-10)

Plaintiffs' negligence claim hinges on the existence of a duty flowing from Olin to the Plaintiffs. In determining the existence of any such duty, it is essential to focus on Olin's knowledge and understanding at the time of its alleged activities in the Newhall Section of Hamden. Plaintiffs' Opposition Brief acknowledges this. *See*, Plaintiffs' Opposition Brief, p.6. Despite this, the conclusions Plaintiffs urge this Court to reach are neither supported by the law nor the facts alleged in this case.

As an initial matter, Plaintiffs' allegations do not support the conclusion they make that Olin knew, at the time Olin was utilizing the public landfills, that its industrial waste contained "well known poisons such as lead and arsenic." Plaintiffs' cite paragraphs 8, 23, 29 and 30 of

the Amended Complaint for this conclusion. However, the cited paragraphs merely allege that: Winchester was in the business of small arms and ammunition manufacturing (¶8); that Winchester began disposing of its industrial waste and ash at the Newhall Section in approximately 1915 (¶23)[2]; that in 2001 the USEPA conducted surficial soil sampling on 76 private properties in the Newhall Street Neighborhood Area and that over 25% of these samples contained lead concentrations which exceeded acceptable state standards for residential property soils (¶29 and 30).

Plaintiffs fail to allege (likely because they know they can not succeed in proving) that Olin knew, at the time the waste was disposed, that the waste was harmful. Absent that knowledge, there can be no duty for Olin to have breached.

Plaintiffs attempt to distinguish *Vaillancourt v. Town of Southington,* 2002 WL 1293053, (Conn.Super. 2002) on grounds that Plaintiffs have alleged that "Olin was aware that after each dump in the Newhall Section was closed for disposal, residential structures were constructed on the former dump sites." *See* Plaintiffs' Opposition Brief, p. 10. Even taking this statement as true for purposes of Olin's present motion, this allegation is not enough to distinguish *Vaillancourt* or to save Plaintiffs' negligence claim. *See, e.g., Accashian v. City of Danbury,* 1999 WL 30594, *3 (Conn. Super. 1999) ("depositing waste material at a municipal landfill does not lead the depositor to foresee either immediate or eventual mismanagement of those materials...").

---

[2]  As previously stated, Olin disputes that Winchester's activities and/or knowledge have anything to do with Olin's potential liability in this case. Olin is not the successor in interest to Winchester Repeating Arms Company and is not responsible for any activities undertaken by Winchester before 1932. While the parties are engaging in discovery on the allegations of successor liability, that issue in no way impedes the Court's ability to address the insufficiency of Plaintiffs negligence allegations of a duty owed by either Winchester or Olin to the Plaintiffs.

Under such circumstances, and consistent with the argument set forth in Olin's Motion to Dismiss Counts I, III and VII, pp. 4-9, Plaintiffs have failed to allege sufficient facts to establish that a reasonable person in Olin's shoes would have foreseen the harm of the general nature Plaintiffs now allege.

Although this analysis is dispositive of Plaintiffs' claim, the public policy analysis that Plaintiffs raise warrants a brief discussion. The issue here is whether under the fundamental policy of the law, Olin's responsibility should extend to cover Plaintiffs common law negligence claims. *R.K. Constructors, Inc. v. Fusco Corp.*, 231 Conn. 381, 386 (Conn. 1994) (citation omitted). While Plaintiffs point to Connecticut's environmental statutes as the relevant public policy to consider, this misses the point. The public policy at issue is not whether or not Connecticut wants to protect its natural resources and environment, but rather whether Connecticut wants to hold a defendant such as Olin monetarily responsible under a theory of negligence for its conduct fifty years or more in the past.

Connecticut courts have already rejected this theory, dismissing negligence claims arising from allegations similar to those of the Plaintiffs. *See, e.g., Vaillancourt*, 2002 WL 1293053, *4 ("As a matter of public policy, this court cannot impose upon [defendant] the duty to have anticipated such events decades ago, when [defendant] (like many others) simply used the landfill."); *Accashian*, 1999 WL 30594 at *3, ("it is not the public policy of this state to impose on entities disposing of wastes a duty to oversee and regulate the operation of the facilities where the wastes are accepted.").

This policy distinction makes perfect sense given the availability of CERCLA litigation to protect Connecticut's natural resources and environment regardless of when the activities

causing contamination took place.  It is the policy of CERCLA to hold a party responsible for its past actions, whether or not it knew at the time that the actions were harmful to the environment. Olin is taking responsibility for cleaning up the non-public properties in the Newhall Section of Hamden in order to ensure that Connecticut's natural resources and environment are protected. The statutes cited by Plaintiffs are aimed at present actions and protecting Connecticut from present day environmental contamination.  These statutes simply do not support a finding that in addition to Olin's CERCLA responsibility, Olin should be held to answer in monetary damages to Plaintiffs under common law tort theories.

Under these circumstances, and consistent with Olin's argument set forth in its Motion to Dismiss Counts I, III and VII, pp.4-9, Plaintiffs have not, and cannot, allege sufficient facts to support the existence of a duty flowing from Olin to the Plaintiffs.

### C. Plaintiffs Have Failed To State A Claim For Reckless Conduct (Responding to Plaintiffs' Opposition Brief at pp. 13-14)

Plaintiffs' Opposition Brief sheds no new light on Plaintiffs' purported reckless conduct claim.  Plaintiffs attempt to support their reckless conduct claim based on allegations, made for the first time in their Opposition Brief, that Olin and the Town of Hamden were involved in a "joint venture."  As already discussed, Plaintiffs offer no support for this allegation.  For this reason, as well as the reasons set forth at pages 9 through 13 of Olin's Motion to Dismiss Counts I, III and VII of Plaintiffs' Amended Complaint, Plaintiffs' reckless conduct claim must be dismissed.  In addition, Plaintiffs' prayer for punitive damages must be dismissed.  *See, e.g.*, *Warner v. Kedah Corp.*, 1995 WL 573828, *5 (Conn.Super. 1995) (granting motion to strike

punitive damages prayer for relief after dismissing reckless conduct claim).[3]

### D. Count VII Fails To State A Claim For Negligence Per Se (Responding to Plaintiffs' Opposition Brief at pp. 14-19)

As with Plaintiffs' negligence and reckless conduct claims, Plaintiffs cannot establish that

Olin owed Plaintiffs a duty of care in the negligence per se context. This alone warrants

dismissal of Count VII. Even if the Court were to find a duty owing to Plaintiffs under the

allegations of the Amended Complaint, Count VII still must fail because the statutes Plaintiffs

rely on (22a-15, 22a-16 and 22a-427) were not in existence at the time of Olin's alleged conduct.

Plaintiffs concede this point; they make no attempt to refute Olin's contention, supported by

Connecticut law, that the fact that the statutes were not in existence is fatal to Plaintiffs'

negligence per se claims. Finally, Plaintiffs have offered no reason why any violation of

Sections 22a-15, 22a-16 or 22a-427 should not be excused as argued in Olin's Memorandum, pp.

---

[3] Plaintiffs cite *Restatement (Third) of Torts: Products Liability, §2(c)*, comment m for the proposition that Olin is presumed to know the nature of its manufacturing processes. Plaintiffs' reliance on the Restatement is entirely misplaced. Comment m specifically refutes rather than supports Plaintiffs' position. *See, Restatement (Third) of Torts: Products Liability, §2(c), comment m* ("**plaintiff should bear the burden** of establishing that the risk in question was known or should have been known to the relevant manufacturing community. The harms that result from the unforeseeable risks—for example, in the human body's reaction to a new drug, medical device, or chemical—are not a basis for liability.")(emphasis added); *See also, Id.*, Illustration 15 (discussing the potential liability of a chemical adhesive manufacturer who was sued after information was developed that its product would aggravate the diabetic condition in diabetics and stating "it cannot be established that, at the time [the manufacturer's] product was distributed, special risks to diabetics were reasonably foreseeable …[The manufacturer] is not liable since the risks attendant to such product use were not reasonably foreseeable."). Plaintiffs offer no other support from Connecticut or otherwise supporting their alleged legal conclusion that Olin knew at the time of the dangers Plaintiffs now allege. The Massachusetts case cited by Plaintiffs, *Vasallo v. Baxter Healthcare Corp.*, 428 Mass 1 (1998) does not support Plaintiffs' contention either. Although Plaintiffs do not reference the portion of the opinion they rely on, *Vasallo* dealt with a manufacturer's knowledge in the context of a product defect and duty to warn under the implied warranty of merchantability. *Id.* at 922. *Vasallo* noted that Massachusetts was one of only four states that applied a hindsight analysis to the duty to warn and was thus in the minority in taking the position that a manufacturer is charged with a duty to warn of risks without regard to whether the manufacturer knew or reasonably should have known of the risks. *Id.* at 922, fn. 17 (the four states were Massachusetts, Hawaii, Pennsylvania and Washington). After setting out the state of the law in Massachusetts, and in the majority of states, the *Vasallo* court "revised" the law "to state that a defendant will not be held liable under an implied warranty of merchantability for failure to warn or provide instructions about risks that were not reasonably foreseeable at the time of sale or could not have been discovered by way of reasonable testing prior to marketing the product." *Id.* at 923.

17-19. This too warrants dismissal of Count VII.

Notwithstanding this, turning to the points Plaintiffs did attempt to address, any effort to predicate a negligence per se claim on Section 22a-427 of the Connecticut Water Pollution Control Act ("CWPCA") must fail. Olin recognized in its Memorandum in Support of its Motion to Dismiss Counts I, III and VII that that there is a split of authority in the lower courts of Connecticut regarding the use of the CWPCA as a basis for a negligence per se claim. Despite this split, the better reasoned approach holds that the CWPCA does not provide a basis for negligence per se claims. *See*, Olin's Memorandum, pp. 16-17; *see also*, *Augelli v. Matos*, 2003 WL 21958554, *4 (Conn.Super. 2003) (adopting the reasoning of the cases that have held that the CWPCA "does not support a private cause of action nor establish standards of care the violation of which is negligence per se" and citing *Connecticut Water Co. v. Thomaston*, 1996 WL 168051, as an "excellent analysis of the issue.").

The *Mirarchi* and *Goodrich* holdings Plaintiffs rely on for the proposition that Section 22a-427 of the CWPCA may provide the basis for a negligence per se claim were both decided by the same judge, on the same day, dealt with the same set of facts and defendant (but two different plaintiffs), and resulted in identical opinions. *See*, *Mirarchi v. Jennings*, 1997 WL 297734 (Conn. Super. 1997); *Goodrich v. Jennings*, 1997 WL 297732 (Conn.Super. 1997). No less than five other Superior Court judges and the District of Connecticut have disagreed with the *Mirarchi* and *Goodrich* conclusion and held that the CWPCA does not provide the basis for a negligence per se claim. *See, e.g.* Olin' Memorandum in Support of its Motion to Dismiss Counts I, III and VII, pp. 16-17 (citing cases holding the CWPCA does not provide the basis for a negligence per se claim). This Court should follow the better reasoned rationale and hold that

the CWPCA does not provide the basis for a negligence per se claim.

Next, Plaintiffs' Opposition Brief, for the first time, attempts to utilize provisions of CERCLA, 42 U.S.C.A. § 9601, et. seq., to provide a standard of care for Plaintiffs' negligence per se claim. This attempt fails. Plaintiffs did not plead CERCLA as a basis for imposing a duty upon Olin with respect to Count VII. Nor does any portion of Plaintiffs' Amended Complaint allege that Olin violated section 9603. CERCLA does not supply a standard of care sufficient to save Count VII. *See, Bernbach v. Timex Corp.*, 989 F.Supp. 403, 411 (D.Conn. 1996) (dismissing negligence per se claim purportedly based on reporting requirements of 42 U.S.C. § 9603(a) and § 9603(c) because plaintiffs' first amended complaint did not allege that defendant was a person in charge of a facility (§ 9603(a)) or was an owner or operator (§ 9603(c)).

Moreover, under no circumstances can Plaintiffs plead that Olin had any reporting obligations under 42 U.S.C. § 9603(c). § 9603(c) imposes notice obligations on "any person who owns or operates or who at the time of disposal owned or operated, or who accepted hazardous substances for transport and selected, a facility at which hazardous substances are or have been stored, treated, or disposed of…" Clearly, Olin did not own or operate the public dumps at issue. Nor did Olin accept hazardous substances for transport and then select a facility at which to dispose of such substances. Accordingly, § 9603(c) cannot provide the basis for a negligence per se claim against Olin. *See also, Middlebury Office Park Limited Partnership v. Time Corporation*, 1998 WL 351583, *3-4 (D.Conn. 1998) (dismissing a negligence per se claim purportedly based, at least in part, on § 9603 of CERCLA).[4] Anecdotally, it is worth noting that Olin has never been approached by the USEPA concerning any failures to provide notice with

---

[4] For the Court's convenience, a copy of the *Middlebury* decision is attached hereto behind Tab 1.

respect to disposal activities in Hamden.

      **E.**  **Plaintiffs Have Failed To State A Claim For Either Negligent Or Intentional Infliction of Emotional Distress (Responding to Plaintiffs' Opposition Brief at pp. 19-23)**

      In responding to a pleading it is fundamental that one can only respond to the claim as it is asserted. There can be no mistaking that Plaintiffs' have asserted nothing more than an intentional infliction of emotional distress claim. Plaintiffs' protestations to the contrary contained in their Opposition Brief do not alter the manner in which Count XI is pled. Any fair reading of Count XI leads to the unmistakable conclusion that Count XI is solely seeking damages for the intentional infliction of emotional distress. Count XI alleges: 1) "conduct that is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency"; 2) "Olin knew or was reckless in not knowing that its actions and omissions would inflict emotional distress on the plaintiffs and the members of the Class"; and 3) "Olin's actions and omissions have inflicted severe emotional distress on the plaintiffs..." Plaintiffs' Amended Complaint, p. 33. These allegations are a textbook attempt to plead the bare essentials of an intentional infliction of emotional distress claim. By no stretch do they plead the bare essentials of a negligent infliction of emotional distress claim.[5]

      While Plaintiffs' Opposition Brief cites numerous cases on negligent infliction of emotional distress, none of these cases support Plaintiffs' position that a court may analyze a claim not actually pled by a plaintiff.

_____

[5] To state a claim for negligent infliction of emotional distress a plaintiff must prove: 1) defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; 2) plaintiff's distress was foreseeable; 3) the emotional distress was severe enough that it might result in illness or bodily harm; and 4) the defendant's conduct was the cause of the plaintiff's distress. *Carrol v. Allstate Ins. Co., 262 Conn.,* 433, 444, 815 A.2d 119, 127 (Conn. 2003). Not only can Plaintiffs not prove these elements, Plaintiffs have not pled anything close to these elements.

However, assuming arguendo that Plaintiffs are deemed to have asserted a claim for negligent infliction of emotional distress, any such claim must be dismissed. *Kurzyna v. City of New Britain*, 2002 WL 1008450 (Conn. Super. 2002) is directly on point. In *Kurzyna*, defendant City of New Britain disposed of industrial sludge and other contaminants between 1951 and 1958 or 1959. *Id.* at *1. Defendant moved to dismiss plaintiff's negligent infliction of emotional distress claim for failure to sufficiently allege a cause of action for negligent infliction of emotional distress. *Id.* at *11. In *Kurzyna*, Plaintiff alleged that she suffered severe emotional distress, was forced to abandon her property and feared that the industrial sludge had harmed her property and her individually. *Id.* at *11. Despite these allegations, the court noted that because Connecticut law does not recognize a claim for negligent infliction of emotional distress based solely on damage to property, plaintiff could not recover based on her fear that the industrial sludge had harmed her property. *Id.* at *12. The court struck plaintiff's negligent infliction of emotional distress claim because, although plaintiff alleged that she suffered emotional distress and feared that the industrial sludge had harmed herself and her family, plaintiff failed to allege any facts supporting this claim. *Id.* at 12.[6]

*Morris v. Hartford Courant Co.*, 200 Conn. 676, 684 (Conn. 1986), a case cited by Plaintiffs, also strikes a negligent infliction of emotional distress claim because the plaintiff failed to allege that the emotional distress caused by the defendant's conduct exposed him to the risk of illness or bodily harm. *Id.* at 684. *See also, Vaillancourt*, 2002 WL 1293053, at *11-12

---

[6] While Plaintiffs cite the *Kurzyna* case in their intentional infliction of emotional distress argument, *Kurzyna* never dealt with an intentional infliction of emotional distress claim. In fact, the portion of the case cited by Plaintiffs was apparently only raised during a governmental immunity discussion. *Kurzyna,* 2002 WL 1008450 at *5. Further, any reliance on *Kurzyna* is especially irrelevant to Olin in that the alleged "reckless" conduct consisted of a municipality's dumping on plaintiff's property followed by the municipality's failure to inspect the property and allegedly granting, and then revoking, two building permits. *Id.* at *5.

(striking negligent infliction of emotional distress claim and noting that "[t]here is no authority for the claim that some twenty years after [defendant] last used the [landfill] for the disposal of substances that it did not know were hazardous, [defendant], had a common-law duty to...prevent [plaintiffs] from living or working in the area, or otherwise intervene in their situation.")[7]

Turning to the inadequacy of Plaintiffs' intentional infliction of emotional distress claim, as noted in Olin's Memorandum in Support of its Motion to Dismiss Count XI, Plaintiffs have not, and cannot, prove an intentional infliction of emotional distress claim. Despite Plaintiffs' implying otherwise, it is not Olin's, or Hamden's, burden to properly plead Plaintiffs' causes of action. Rather, it is Plaintiffs' burden to plead all elements, and provide all factual support, underlying their intentional infliction of emotional distress claim. Plaintiffs have failed to meet this burden.

"Courts in Connecticut have been reluctant to allow a claim for intentional infliction of emotional distress." *Whitaker v. Haynes Const. Co., Inc.*, 167 F.Supp.2d 251, 255 (D.Conn. 2001). The standard to demonstrate extreme and outrageous conduct is stringent. *Jones v. Chevrolet*, 166 F.Supp.2d 647, 651 (D.Conn. 2001). Connecticut law is perfectly clear, "[i]n order to state a cognizable [claim for intentional infliction of emotional distress], Plaintiff must not only allege each of the four elements, but also must allege facts sufficient to support them."

---

[7] Plaintiffs' reliance on *Voghel v. City of Waterbury*, 1999 WL 732984 (Conn. Super. Ct. 1999) is misplaced. *Voghel* dealt with a claim against the City of Waterbury for negligence in the maintenance of the City of Waterbury sanitary sewer system which caused a sewer backup that substantially damaged plaintiffs' home. The damage occurred when sewage entered the home through a bathroom sink, a toilet and a shower head. *Id.* at *1. One basis for the court's ruling was the admission that the City knew that storm water catch basins were improperly connected to a sanitary sewer line in violation of a then existing city sewer ordinance. *Id.* at *3. The Court also noted that the distress was manifested in one plaintiff's inability to re-enter the home for four months and headaches and crying associated with bad memories of the incident. Id. at *6. In the present case, no such distress has been alleged, nor has it been alleged that Olin knew at the time of its actions that its conduct could cause Plaintiffs any distress.

*Whitaker*, 167 F.Supp.2d at 254 ("Rule 12(b)(6) does not allow the substitution of conclusory statements 'for minimally sufficient factual allegations.'").

It is disingenuous to argue that Olin's act of doing exactly what it was encouraged by the State and Town to do, can somehow lead to a claim that Olin acted in such a way as to cause intentional infliction of emotional distress on the Plaintiffs.

After having provided, at best, nothing more than conclusory allegations of fact in their Amended Complaint, in a vain attempt to save this claim, Plaintiffs now argue that public policy and environmental and public health law require a finding that Olin's conduct was extreme and outrageous. This does not change the fact that Plaintiffs' Amended Complaint is devoid of any factual allegations regarding Olin's conduct that, at the time Olin was acting, would cause someone to exclaim that Olin's actions were "outrageous." This is fatal to Plaintiffs' intentional infliction of emotional distress claim. *See, e.g., Huff*, 166 F.Supp.2d at 123 (dismissing intentional infliction of emotional distress claim where plaintiffs' pleadings merely alleged that defendants' conduct was extreme and outrageous but were otherwise "devoid of any factual allegations regarding Defendants' conduct" and therefore did not sufficiently plead extreme and outrageous conduct); *Abate v. Circuit-Wise, Inc.*, 130 F.Supp.2d 341, 348 (D.Conn. 2001)(granting motion to dismiss because conclusory allegations did not identify any actions by the defendant done in a manner that was so egregious or oppressive as to rise to the level of extreme and outrageous conduct).

### F. Plaintiffs Have Failed To State A Claim For Either Private or Public Nuisance (Responding to Plaintiffs' Opposition Brief, pp. 23-25; 27-31)

Plaintiffs have a fatal problem with their nuisance claim and they know it. In a vain

attempt to save the claim, Plaintiffs state in their Opposition Brief that Olin and the Town of

Hamden engaged in a "joint venture." This is simply untrue and Plaintiffs know that, as well.

Why then do Plaintiffs argue a joint venture? To overcome the holding of *Vaillancourt v. Town*

*of Southington*, 2002 WL 1293053, which requires dismissal of the nuisance claims against

Olin, because Olin did not have the necessary control required by Connecticut law to establish

either a private or public nuisance.

In *Vaillancourt*, plaintiffs alleged that the Town of Southington operated and controlled a

landfill as a public refuse disposal facility. *Id.* at *6. Plaintiffs further alleged that defendant

Pratt & Whitney, along with others, used the landfill for disposal of wastes. Finally, plaintiffs

alleged that both the Town of Southington and Pratt & Whitney created a nuisance by permitting

harmful materials to spread onto and into plaintiffs' property in an unreasonable manner. *Id.* at

*6. Despite these allegations, which giving Plaintiffs the benefit of the doubt are the same

allegations in this case, the *Vaillancourt* court dismissed the nuisance claim against Pratt &

Whitney because control over the Southington landfill always rested with its owner and operator,

the Town of Southington. *Id.* at *6. As in *Vaillancourt*, Olin never had control over any landfill

on Plaintiffs' property, and therefore as a matter of law cannot be liable for a private nuisance.

*Id.*

Plaintiffs' argument that Olin controlled the source of the nuisance does not alter this

result. Under Plaintiffs' theory, a defendant who at the request of the State of Connecticut and

the local authorities disposed of industrial waste in town operated dumps, and after the dumping

occurred had nothing further to do with the dumps, would still be liable for a nuisance that did

not exist at the time of the defendant's actions. *Vaillancourt* addressed, and properly rejected,

such an argument. *See also*, *State v. Tippetts-Abbett-McCarthy-Stratton*, 204 Conn. 177, 184 (Conn. 1987) (noting that a municipality may be held liable for a nuisance caused by noxious smoke and gas emitting from a dump on property it controls, although the immediate cause of the offensive emissions was unauthorized dumping and burning by a third party. Citation omitted). As discussed in Olin's Memorandum, at pp. 5-7, Olin's lack of control over the landfills in the Town of Hamden mandates that Plaintiffs' public and private nuisance claims be dismissed.

Although Plaintiffs' public nuisance claim must be dismissed on the same grounds as the private nuisance claim, a further argument supports dismissal. Plaintiffs go to great lengths to suggest that the presence of hazardous substances on their individual properties somehow presents a public nuisance to all members of the public. Plaintiffs cite cases from Rhode Island, New York, New Hampshire and Indiana to support this position. *See* Plaintiffs' Opposition Brief, p. 28. What neither these cases nor Plaintiffs address, is the fact that Plaintiffs' claims focus on their individual rights to use and enjoy their properties – the focus of a private nuisance claim. *See*, Amended Complaint, ¶ 105; *Pestey v. Cushman*, 259 Conn. 345, 357, 788 A.2d 496, 505 (Conn. 2002) ("[p]rivate nuisance law... is concerned with conduct that interferes with an individual's private right to the use and enjoyment of his or her land.").

In discussing what is and what is not a public right, *Vernon Village, Inc. v. Gottier*, 755 F.Supp. 1142 (D.Conn. 1990) is instructive. In *Vernon*, a trailer park resident attempted to bring a public nuisance claim against defendants for allegedly releasing chemicals into the water supply of the trailer park. *Id.* at 1145-46. After noting that "a nuisance is 'public' only if it 'interfere[s] with those who come in contact with it in the exercise of a public right,'" the court

17

ruled that plaintiff failed to demonstrate that access to the drinking water from the defendant's water system was a right held by the general public. *Id.* at 1156 (holding that, at most, defendants' responsibility would be limited to the residents of the park because the public did not have a right to drink from the affected water supply—"it is a property right belonging solely to the residents alone.").

Plaintiffs have not alleged that the general public has been harmed; rather Plaintiffs' allegations focus on the named Plaintiffs as well as property owners located in the Newhall Section which Plaintiffs seek to represent. Plaintiffs' Amended Complaint, ¶105 ("Olin...has interfered with a common right of the plaintiffs and the Class to enjoy their properties."). Plaintiffs have not alleged, nor can they allege, that the general public has a right to the use and enjoyment of each plaintiff's, or prospective class member's, property. As such, Plaintiffs' allegations are insufficient to state a public nuisance claim. *See, e.g., Tippets,* 204 Conn. at 183 (in public nuisance claim plaintiff's burden includes proof that the condition or conduct complained of interfered with a right common to the general public).

### G. Plaintiffs Have Failed To State A Claim For Abnormally Dangerous Activity (Responding to Plaintiffs' Opposition Brief, pp. 32-38)

Plaintiffs' argument to save their strict liability claims would require this Court to do what even the Plaintiffs admit that the Connecticut Supreme Court and Appellate Court have not done. That is, to recognize the storage, use and disposal of hazardous waste as an ultrahazardous activity. Plaintiffs' sole support for this request is reference to Superior Court decisions discussing the issue. *See,* Plaintiffs' Opposition Brief, pp. 33-35. The Superior Court cases Plaintiffs cite were decided in 1995 (*Barnes v. General Electric Co.,* 1995 WL 447904

(Conn.Super. 1995), 1998 (*P.R.I.C.E. v. Keeney*, 1998 WL 417591 (Conn.Super. 1998); *Mather v. Birken Manufacturing Co.*, 1998 WL 920267 (Conn.Super. 1998)) and discussed in a Superior Court case in 2000 (*French Putnam LLC v. County Environmental Services*, 2000 WL 1172341 (Conn.Super. 2000)). Though ample time has passed since these rulings to allow either the Appellate Court or the Supreme Court to rule on these issues, neither has done so.  There is no reason for this Court to hold that the use, storage and disposal of hazardous waste constitutes an abnormally dangerous activity when the Appellate Court and Supreme Court have declined to do so.

The Connecticut District Court has been faced with this issue before.  In both *Arawana Mills Co. v. United Technologies Corp.*, 795 F.Supp. 1238, 1252 (D.Conn. 1992) and *Sealy Connecticut, Inc. v. Litton Industries, Inc.*, 989 F.Supp. 120 (D.Conn. 1997), the District Court concluded that handling, storing and disposing of hazardous wastes did not amount to an ultrahazardous or abnormally dangerous activity.  *Arawana Mills*, 795 F.Supp. at 1252; *Sealy*, 989 F.Supp. at 126-127.

Plaintiffs meekly try to distinguish the *Arawana Mills* holding.  *See*, Plaintiffs' Opposition Brief, p. 33-34.  Plaintiffs contend that there is a distinction between the storage and use of hazardous wastes and the disposal of hazardous wastes.[8]  The rationale of *Arawana Mills* applies as equally to the storage and use of hazardous wastes as it does to the disposal of

---

[8]  Plaintiffs mischaracterize the holding of *Skelton v. Chemical Leaman Tank Lines*, 1996 WL 278343 (Conn.Super.Ct. 1996).  Despite Plaintiffs' statement to the contrary, *Skelton* simply did not distinguish storage and use from actual disposal of toxic material.  *See*, Plaintiffs' Opposition Brief, p. 34; *Skelton*, 1996 WL 278343 at *3 (stating that "[i]f the claim is that the use and/or disposal of the material is the basis of the claim I do not believe a strict liability claim can be based on what in fact is a leak or escape of hazardous material due to negligent activity." citation omitted.  Further noting "the mere fact that a business or person stores toxic substances or even uses or disposes of such material does not establish a strict liability claim even if on occasion such material is spilled or released.").

hazardous wastes.  In holding that storage and use of hazardous wastes are not an ultrahazardous

activity, the *Arawana Mills* court stated "[s]uch activities are subject to extensive federal and

state regulation and I do not believe that the Connecticut Supreme Court would interpose an

expanding common law into such matters by imposing strict liability in every case in which a

plaintiff can prove that a defendant stored and used hazardous waste." *Arawana Mills*, 795

F.Supp. at 1252 (further concluding that plaintiff failed to state a claim for strict liability due to

insufficient allegations of fact); *Sealy*, 989 F.Supp. at 126 (*citing Arawana Mills*, 795 F.Supp. at

1252) (the great "weight of authority appears to be against extending strict liability to the

hazardous waste context.").

As in *Arawana Mills*, this Court should utilize the same rationale in ruling that the

Connecticut Supreme Court would not expand the narrowly-construed concept of ultrahazardous

or abnormally dangerous activity to the disposal of hazardous wastes in a landfill.

Even assuming arguendo that disposing of hazardous waste were considered an

abnormally dangerous activity, Count IX must still be dismissed because Plaintiffs do not contest

Olin's argument that because Olin's handling of hazardous materials was incidental to their

manufacturing business, there can be no liability for engaging in an unreasonably dangerous

activity. *See, e.g., Sealy*, 989 F.Supp. at 127 (citations omitted) (holding that defendants'

manufacturing processes and related practices in handling, storing and disposing of hazardous

wastes do not constitute an unreasonably dangerous activity giving rise to strict liability because

handling of hazardous wastes was only incidental to defendants' manufacturing activities).

Moreover, even if a strict liability claim were recognized under the circumstances,

Plaintiffs have failed to allege sufficient facts to state a claim.  For example, Plaintiffs have

failed to allege the inability to eliminate the risk of harm caused by the activity through the exercise of reasonable care or that the activity was conducted in a heavily populated area or otherwise inappropriate location. *See*, *P.R.I.C.E. v. Keeney*, 1998 WL 417591, *10 (Conn.Super. 1998); *Bernbach*, 989 F.Supp. at 408 (dismissing strict liability count where plaintiffs failed to allege any facts that would support a finding that the substances stored and disposed of were so inherently dangerous that the risk of probable injury may not be eliminated by the exercise of due care); *Vaillancourt*, 2002 WL 1293053 at *9 ("there simply is no basis for an argument that landfills will probably cause harm even where operated in accordance with appropriate operating procedures and regulations."); Olin's Memorandum in Support of its Motion to Dismiss Count IX, pp. 6-7. Moreover, Plaintiffs have failed to allege that Olin knew, at the time it was acting, that Olin's activities posed a "high degree of risk of harm." For these additional reasons, Count IX must be dismissed. *See*, *Vaillancourt*, 2002 WL 1293053 at *10) (holding strict liability doctrine inapplicable to a circumstance where an activity was not known to be dangerous at the time it was undertaken but is only alleged to have been dangerous years after the fact); Olin's Memorandum in Support of its Motion to Dismiss Count IX, pp. 7-8. [9]

### H. Plaintiffs Have Failed To State A Claim For Reimbursement Under Conn. Gen. Stat. §22A-452 (Responding to Plaintiffs' Opposition Brief at pp. 38-39)

In order to state a claim under Conn.Gen. Stat. 22a-452, Plaintiffs must allege that they have actually expended money to remediate alleged contamination. Olin's Memorandum in Support of its Motion to dismiss Count XIII applies Connecticut law to the facts of this case and reaches the indisputable conclusion that Count XIII must be dismissed. *See*, Olin's

---

[9] Plaintiffs' reliance on the *Barnes* decision is further undercut by the fact that the *Vaillancourt* decision appears to deal with the same set of facts, the same landfill and at least two of the same defendants. As *Vaillancourt* was decided in 2002, it is more persuasive than the *Barnes* decision, decided in 1995.

Memorandum in Support of Motion to Dismiss Count XIII, pp. 3-6.

Plaintiffs do not even address, much less try to distinguish, the legal or factual analysis contained in Olin's Memorandum. Instead Plaintiffs sidestep the issue. *See* Plaintiffs' Opposition Brief, pp. 38-39.

Plaintiffs' argument, in three steps, is straightforward and illogical. Step one: "investigation and cleanup costs" have been considered "damages" Step two: Plaintiffs have been damaged. Step three: because Plaintiffs have been damaged, they have incurred "investigation and cleanup costs." Plaintiffs argue this leap of logic even though they have not alleged that they have conducted a single specific action to contain, remove or otherwise mitigate the alleged contamination.[10]

Plaintiffs' attempt to save their 22A-452 claim is the perfect example of an attempt to substitute conculsory statements and inferences for "minimally sufficient factual allegations." Under such circumstances Count XIII must be dismissed. *See, Whitaker*, 167 F.Supp.2d at 254 (citations omitted) ("Rule 12(b)(6) does not allow the substitution of conclusory statements 'for minimally sufficient factual allegations.'").

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Olin's Motions to Dismiss and Memoranda In Support, Olin requests that the Court grant Olin's Motions to Dismiss Counts I, III, V, VII, IX, XI, XIII and XIV of Plaintiffs' Amended Complaint.

---

[10] The cases cited by Plaintiffs to support their argument offer no support. Simply because environmental cleanup costs have been classified as damages for purposes of determining the appropriate statute of limitations to apply (*Goldblum*, cited at p.38 of Plaintiffs' Opposition Brief) and for purposes of determining whether or not an insurer had a duty to defend and indemnify an insured for environmental cleanup costs (*Avondale*, cited at p. 39 of Plaintiffs' Opposition Brief), does not mean that these Plaintiffs have incurred the necessary cleanup costs to support their cause of action.

HUSCH & EPPENBERGER, LLC

By: *Michael H. Wetmore /sks*
    Michael H. Wetmore (ct24899)
    Joel B. Samson (ct24898)
    190 Carondelet Plaza, Suite 600
    St. Louis, Missouri 63105
    Telephone: 314-480-1500
    Fax: 314-480-1505
    michael.wetmore@husch.com
    joel.samson@husch.com

and

BROWN RUDNICK BERLACK ISRAELS LLP
    Sandra K. Davis
    185 Asylum St.; CityPlace I, 38th Floor
    Hartford, CT  06103
    Telephone: 860-509-6500
    Fax: 860-509-6501
    sdavis@brbilaw.com

    ***Attorneys for Defendant Olin Corporation***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 24th day of November, 2003, by first class mail, postage prepaid to:

David B. Zabel
Monte E. Frank
Cohen and Wolf, P.C.
115 Broad Street
Bridgeport, Connecticut 06604
Telephone: (203) 368-0211
Facsimile: (203) 394-9901

Ann M. Catino
Joseph G. Fortner, Jr.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Telephone:  (860) 522-6108
Facsimile: (860) 548-0006

and

Mark Roberts
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, MA  02114
Telephone: (617) 722-8222
Facsimile: (617) 720-2320

*Attorneys for Town of Hamden*

and

Neil T. Leifer
David C. Strouss
Thornton & Naumes L.L.P.
100 Summer Street, 30th Floor
Boston, MA 02110
Telephone: (617) 720-1333

*Attorneys for Plaintiff*

Sandra K. Davis

#40179629 v\1 - davissk□ - x6st01!.doc□ - 70042/5

24