C
Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

MIDDLEBURY OFFICE PARK LIMITED
PARTNERSHIP, Plaintiff
v.
TIMEX CORPORATION, a Delaware Corporation,
General Datacomm Industries, Inc., a
Delaware Corporation and Middlebury Park Road
Associates, a New York
partnership, jointly and severally, Defendants

No. 3:95-CV-2160 (EBB).

June 16, 1998.

RULING ON MOTION TO DISMISS OF
DEFENDANT GENERAL DATACOMM
INDUSTRIES, INC.

BURNS, Senior J.

INTRODUCTION

*1 Plaintiff Middlebury Office Park Limited Partnership ("MOP") instituted this action on October 6, 1995 against Defendants Middlebury Park Road Associates ("MPRA"), Timex Corporation ("Timex"), and General DataComm Industries, Inc., ("GDC") seeking damages and other relief related to contamination of MOP's property in Middlebury, Connecticut (the "Premises") with hazardous substances and wastes.

In the Motion presently before the Court, GDC has moved for the dismissal of Counts One, Five, Six, Seven and Eight on the grounds that these counts fail to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). GDC also moves, pursuant to Fed.R.Civ.P. 9(b), to dismiss Count Thirteen for failure to plead fraud with particularity.

STATEMENT OF FACTS

The Court summarizes only those facts believed necessary to an understanding of the issues in, and the decision rendered on, this Motion.

Beginning in or about 1943, Defendant Timex operated a manufacturing facility on the Premises (the "Facility"), which Premises was comprised of thirty acres out of a sixty-acre site owned by Timex (the "Timex Site"). Timex's manufacturing activities at the Premises included electroplating, metal finishing, and degreasing, using organic solvents.

In or about 1983, Timex conveyed the Premises containing the Facility to GDC, a Delaware corporation that designs and assembles computer components. GDC also owns and/or operates property adjoining the Premises.

In January, 1984, GDC leased back to Timex a 125,000-square foot portion of the Premises (the "Timex Sublease"). Timex continued its manufacturing operations at the Premises.

In March, 1984, GDC conveyed the Premises to Defendant MPR, after which MPR leased back the Premises to GDC (the "GDC Lease"). In November, 1985, MOP purchased the Premises from MPR, taking the Premises subject to the GDC Lease and the Timex Sublease. Also at that time, MPR's interest in the GDC Lease was assigned to MOP.

On February 14, 1994 residents neighboring the Premises brought a federal suit against, inter alia, Timex and MOP for alleged contamination of their properties resulting from the release of the hazardous wastes from, at, or about the Premises. In that action, the residents seek declaratory relief and their costs and damages under Sections 107 and 113 of CERCLA and compensatory and punitive damages under Connecticut common law relating to the alleged disposal and release of hazardous substances on property currently owned by MOP and previously owned and/or occupied by GDC, MPR and Timex.

Shortly after the commencement of the residents' suit, in or about April, 1994, Timex entered into a Consent Order with the Connecticut Department of Environmental Protection relating to sources of pollution at the entire Timex Site, including the Premises.

The Timex Site is divided into three parcels. The western parcel is the Premises currently owned by MOP. The northeastern and southeastern parcels are currently owned by Timex and GDC, respectively. In accordance with a Resource Conservation and Recovery Act Facility Investigation, four areas of concern have been identified for investigation at the Timex Site. Areas 1 and 3 are located on the Premises, Area 2 is located on the northeastern parcel owned by Timex, and Area 4 is located on the parcel owned by GDC.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**\*2** In the present action, Plaintiff alleges that Timex used a variety of hazardous substances in its manufacturing processes, thereby generating toxic, hazardous, and radioactive wastes at or in the vicinity of the Premises. Plaintiff further alleges that Timex improperly stored and disposed of these wastes on, or in the vicinity of, the Premises, which activities resulted in the contamination of the Premises.

Similarly, Plaintiff alleges that GDC has also generated, used, stored, released and discharged hazardous and toxic wastes at or in the vicinity of the Premises, as a result of its use thereof.

Finally, Plaintiff avers that GDC has always been obligated by its lease with MOP to ensure that the Premises remains in compliance with all laws, ordinances and regulations, including, but not limited to, all environmental matters. The lease is further alleged to preclude GDC from knowingly permitting others to engage in any activity on the Premises contrary to any law, ordinance, or regulations. Thus, Plaintiff asserts that GDC was obligated to ensure Timex's compliance with the law and failed to do so, in violation of its obligations under the MOP-GDC lease.

MOP also asserts in the present Complaint that, as a consequence of the residents' allegations, it has and may continue to incur environmental investigation, sampling, delineation, cleanup and removal costs in connection with hazardous substances at the Premises.

MOP seeks declarations that all Defendants be strictly, jointly and severally liable for all past, present and future environmental costs; that GDC is in default under and has breached its lease with MOP; that MOP may terminate the lease; and, further, that MOP has a right to defense and indemnification under the lease. MOP also seeks compensatory damages, punitive damages and attorney's fees.

LEGAL ANALYSIS
I. *The Standard of Review*

(A) *Federal Rule of Civil Procedure 12(b)(6)*

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir.1991), cert. denied, 504 U.S., 911 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990)(citing *Scheuer*, 416 U.S. at 232). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993).

II. *The Standard as Applied*

A. *The First Count*

**\*3** In the First Count of the Complaint, MOP seeks the necessary costs of response to the release or threat of release of hazardous substances at or from the Premises pursuant to Sections 101(20)(A), 107(a)(1), and 107(a)(2) of **CERCLA**. MOP further seeks contribution and/or cost recovery pursuant to Section 113(f) of **CERCLA**. GDC moves to dismiss the portion of this Count brought under Section 107(a), asserting that MOP lacks standing to bring such a claim. The Court disagrees.

In *The Companies for Fair Allocation v. Axil Corporation, et al.*, 853 F.Supp. 575 (D.Conn.1994), Judge Nevas extensively analyzed the interplay of Sections 107(a) and 113 in the context of the broad remedial provisions of CERCLA. In that case, as here, defendants claimed that because the plaintiff was a "potentially responsible party" within the meaning of CERCLA, the appropriate action was one for contribution under Section 113, which provides for several, rather than joint and several, liability, and not a claim for response costs under Section 107. Judge Nevas rejected such a contention. "[T]he § 107 liability provision, with its use of the term 'any other person' and its limited defenses to liability, implies that Congress intended the liability provision to sweep broadly." *Id.* at 579. Although Judge Nevas recognized that CERCLA is silent as to whether "any other person" includes other potentially responsible parties, he followed a persuasive line of authority which held that allowing potentially responsible parties to pursue Section 107 actions was consistent

with the broad scope of liability that Congress intended. *Id. and cases cited therein.*

This Court has examined the authority cited by GDC to the contrary, and finds that *Fair Allocation,* its predecessors and its progeny, represent the better reasoned analysis of the issue now before it. MOP has set forth a prima facie case for response costs under Section 107. Resultingly, the First Count states a claim upon which relief may be granted.

B. *The Fifth Count*

MOP's Fifth Count asserts that GDC was "negligent per se" because it violated the Connecticut Water Pollution Control Act ("WPCA"), Conn.Gen.Stat §§ 22a- 427, 22a-450, 22a-451 and 22a-454. MOP further asserts violations of **CERCLA,** including the National Contingency Plan and the specific provisions of Section 9603. MOP alleges that, as a result of the breach of these statutory duties, MOP suffered substantial money damages. GDC moves to dismiss this Count, asserting that no private cause of action exists under these statutes.

In support of its claim, GDC has directed the Court to a series of Connecticut cases which have persuasively held that no private cause of action exists under the WPCA. See *Phillips Andrews, Inc. v. Caron Brothers,* 1992 WL 67396 (Conn.Super.1992)(in dismissing plaintiff's **negligence per se** claim, the court held that the statutory provisions found in the WPCA [including those relied on by MOP] did not give rise to a private cause of action). Accord *Oink, Inc., et al. v. Ann Street Limited Partnership* 1994 WL 590629 (Conn.Super.1994)(same); *Michael v. Kenyon Oil Company, Inc.,* 4 CSCR 337 (March 22, 1989)(no private cause of action pursuant to WPCA Sections 22a- 427 and 22a-451 [relied on by MOP]; *Bristol Shopping Plaza, Inc. v. Vigilante Cleaners* (D.N. 34 40 98, Judicial district of Hartford-New Britain at Hartford, January 12, 1989)(no private cause of action under Section 22a- 451 [relied on by MOP] ).

*4 MOP has not provided the Court with any precedent to the contrary, nor has research revealed any such authority. Accordingly, MOP's **negligence per se** claim, alleging violations of Connecticut's WPCA, is dismissed.

Similarly, MOP has provided the court with no authority to counterbalance that of GDC's, which authority stands for the proposition that there exists no private cause of action for money damages for personal injury under either **CERCLA** or the Resource Conservation and Recovery Act of 1976 ("RCRA"), both alleged in the Fifth Count as a basis for a finding of **negligence per se.** See *325--343 E. 56th Street Corp. v. Mobil Oil Corp.,* 906 F.Supp. 669 (D.D.C.1995)(**negligence per se** claim dismissed because RCRA did not create private cause of action for money damages); *Polcha v. AT & T Nassau Metals Corp.,* 837 F.Supp. 94 (M.D.Pa.1993)(no private cause of action under **CERCLA** to recover damages for personal injuries suffered as a result of the violation of those statutes). The Court, having found no authority to the contrary, will follow the persuasive reasoning of its sister courts and dismisses the Fifth Count for this reason also. [FN1]

> FN1. In claiming that the particular statutory violations of CERCLA and the Connecticut Containment and Removal Cost Reimbursement Act, asserted in the First and Second Counts, are incorporated into the Fifth Count and may not be dismissed because private causes of action exist under those statutes, Plaintiff confuses permissible remedies with permissible causes of action. While these statutes certainly provide for private causes of action, those causes of action are limited to certain response, containment and removal costs, not money damages for alleged personal injury. Hence, the attempt to incorporate these statutory violations does not survive the dismissal of the Fifth Count.

C. *The Sixth Count*

In the Sixth Count of its Complaint, MOP purports to set forth a cause of action against GDC based on the tort of nuisance, asserting that GDC engaged in or permitted the release of hazardous substances at and/or in the vicinity of the Premises. Cplt. at ¶¶ 9, 91-94. In moving to dismiss this Count, GDC argues that MOP, as the owner of the Premises, lacks standing to assert a private nuisance claim against GDC. In addition, GDC contends that MOP's claim is barred by the doctrine of caveat emptor.

In Connecticut, the tort of nuisance is only applicable where a person is "making use of his own property so as to occasion unnecessary damage or annoyance to his neighbor." *Nicholson v. Connecticut Half-Way House, Inc.,* 153 Conn. 507, 510, 218 A.2d 383 (1966)(emphasis added). Thus, to state a claim for nuisance, Connecticut law "require[s] that the nuisance which is the subject of the plaintiff's suit

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

must be located on, or emanate from, a neighboring parcel of land." _Nielsen v. Sioux Tools, Inc._, 870 F.Supp. 435, 442 (D.Conn.1994)(emphasis added), quoting _Weihl v. Dictaphone Corp., Inc._, 1994 WL 16516 (Conn.Super.1994). Pursuant to this controlling authority, that portion of the Sixth Count which alleges contamination on the Premises itself must be dismissed, as MOP _owns_ the property on which the alleged nuisance exists. [FN2]

> FN2. Too, claims asserted by a landowner against a former owner of property are barred by the doctrine of caveat emptor unless they fall within two limited exceptions: first, the defects existing in the property were not discoverable upon reasonable inspection by the purchaser, and, second, the seller was chargeable with knowledge of the defects. _Masterson v. Atherton_, 149 Conn. 302, 307, 179 A.2d 592 (1962). Although the present Complaint alleges that GDC fraudulently concealed the true conditions of the Premises from MOP, nowhere in the Complaint is it alleged that MOP performed a pre-purchase reasonable inspection of the Premises, which inspection failed to disclose the alleged contamination.

However, those portions of the Sixth Count which allege nuisance from contamination located on or emanating from GDC's property abutting the Premises state a potentially viable claim for relief and will not be dismissed at this early stage of this litigation. Whether MOP will ultimately prevail is not an appropriate issue presently before this Court. The pertinent inquiry--whether MOP is entitled to offer evidence to support this claim--is answered in the affirmative. _Yale New Haven_, 727 F.Supp. at 786.

D. _The Seventh Count_

*5 The Seventh count of MOP's Complaint, brought in part against GDC, sounds in trespass. Under Connecticut law, the elements of trespass are: "(1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." _Abington Ltd. Partnership v. Talcott Mountain Science Center_, 43 Conn.Supp. 424, 427, 657 A.2d 732, 734 (Conn.Super.1994) citing _Avery v. Spicer_, 90 Conn. 576, 579, 98 A. 135 (1916). "Since trespass is a possessory action, it is incumbent on the plaintiff to prove possession, actual or constructive." _More v. Urbano_, 151 Conn. 381, 383, 198 A.2d 211 (1964). "Actual possession means actual and exclusive possession ... [i]f a plaintiff relies on constructive possession, and has alleged both title and possession in a complaint, a plaintiff must prove, in addition to title, the absence of actual and exclusive possession in another." _McCullough v. Waterfront Park Ass'n, Inc._, 32 Conn.App. 746, 749, 630 A.2d 1372, cert. denied 227 Conn. 933, 632 A.2d 707 (1993).

An application of these standards reveals the deficiencies of Plaintiff's trespass claim. Although MOP alleges title to the Premises, it does not--and clearly cannot--allege exclusive possession of the Premises in itself. In fact, its Complaint is the antithesis of such an assertion. In paragraphs 15, 49 and 57, MOP plainly disclaims exclusive possession ("MOP [was] assuming no risks of property ownership" ... "MOP has never occupied, operated or conducted activities at the Premises"). Thus, the Seventh Count fails as a matter of law and must be dismissed as to GDC.

E. _The Eighth Count_

Although the Eighth Count of MOP's Complaint is entitled "Intentional Misconduct", MOP asserts in its opposition to GDC's motion to dismiss this count that it is in actuality a recklessness claim.

> "Recklessness is a state of consciousness with reference to the consequences of one's acts. It is more than negligence, more than gross negligence. The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them."

_Dubay v. Irish_, 207 Conn. 518, 532, 542 A.2d 711 (1988).

A review of this Complaint, taken most favorably to Plaintiff, fails to reveal the explicit conduct which rises to this egregious level. "The Connecticut Supreme Court has consistently held that where a complaint alleges recklessness it must use explicit language that informs both the court and the defendant what conduct is relied upon." _Chromium Process Company v. Yankee Gas Service Company_, 1995 WL 404987 (Conn.Super.1995) (citations omitted). The Eighth Count is, accordingly, dismissed with leave to replead following the mandates of Connecticut law.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

F. *The Thirteenth Count*

**\*6** GDC has moved to dismiss the Thirteenth Count, entitled "Fraudulent Nondisclosure Against GDC and Timex", for failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b). GDC asserts that "the only allegation to support a claim of fraud is contained in paragraph 56 of the complaint, in which plaintiff contends that GDC 'knowingly' permitted the contamination to occur." GDC seemingly misses the crux of MOP's claim of fraudulent nondisclosure. In paragraphs 137-139 of the Complaint, MOP avers that GDC fraudulently failed to disclose the condition of the Premises, which fraudulent failure induced MOP to purchase the Premises and to grant a $3 million-dollar rent reduction to GDC. In order to establish the "strong inference" of fraud required in this Circuit, a party must allege facts to show that defendant had both the motive and opportunity to commit fraud. *Shields v. CityTrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994). The present Complaint, taken as a whole and in the light most favorable to MOP, sufficiently advises GDC of the claims of fraud, of the $3 million-dollar motive to commit fraud and, in the course of negotiations, the opportunity to do so.

The crucial factor to be considered in weighing the specificity required by Rule 9(b) is whether the complaint provides adequate information in order that a defendant may frame a response and defense thereto. *Union Carbide Corp. v. Montell N.V.*, 944 F.Supp. 1119 (S.D.N.Y.1996); *Future Tech Intern., Inc. v. Tae Il Media, Ltd.*, 944 F.Supp. 1538 (S.D.Fla.1996); *Protter v. Nathan's Famous Systems, Inc.*, 904 F.Supp. 101 (S.D.N.Y.1995). Applying this standard, the allegations of the Complaint, incorporated and made more precise in the Thirteenth Count, plead fraud with sufficient particularity.

## CONCLUSION

Defendant GDC's Motion to Dismiss [Doc. No. 41] is GRANTED IN PART AND DENIED IN PART. The Fifth Count of the Complaint is hereby dismissed, as no private causes of action exist under the statutes pleaded therein. That portion of the Sixth Count which alleges contamination at the Premises itself is hereby dismissed, as MOP owns the property, which ownership precludes a claim of nuisance. The Seventh Count is hereby dismissed, as MOP is not in exclusive possession of the Premises; hence, a cause of action in trespass will not lie. The Eight Count is dismissed with leave to replead its alleged recklessness theory.

SO ORDERED

1998 WL 351583, 1998 WL 351583 (D.Conn.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works