UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CLARENCE R. COLLINS, JR., et al          :          CIVIL ACTION
                                                             NO. 3:03CV945 (CFD)
V.                                                     :

OLIN CORPORATION, et al.                 :          NOVEMBER 24, 2003

### REPLY MEMORANDUM OF DEFENDANT
### TOWN OF HAMDEN IN FURTHER SUPPORT OF MOTION TO DISMISS

Defendant Town of Hamden ("Hamden") submits this Reply Memorandum in Further Support of its Motion to Dismiss, pursuant to Rule 12(b)(1),12(b)(6) and 12(h)(3) of the Federal Rules of Civil Procedure ("F.R.C.P."). In brief, their strident opposition notwithstanding, Hamden is entitled to summary disposition of Plaintiffs' claims. Not only does Plaintiffs' Memorandum of Law in Opposition to Motions to Dismiss Filed by Defendants Town of Hamden and Olin Corporation ("Mem. Opp.") rely upon assertions which are *not* contained in their Complaint, but Plaintiffs have not rebutted the strong showing in law, logic and public policy mandating that the challenged counts be dismissed. Plaintiffs' actual Amended Complaint – not their legal argument in their opposing memorandum – does not support arguments that Hamden was a "joint venturer" with Olin or that Hamden was somehow engaged in a proprietary act, and neither the facts nor logic supports gravamen of Plaintiffs' claim against Hamden – that it knowingly chose to poison future generations of Hamden residents. For these reasons, as well as those set forth herein, the Motion to Dismiss should be granted.

I.    **PLAINTIFFS' MEMORANDUM IS REPLEAT WITH UNPLEADED AND UNSUPPORTED ASSERTIONS WHICH SHOULD BE DISREGARDED.**

Even the most cursory review of Plaintiffs' Opposition Memorandum reveals that it is filled with assertions and arguments about facts, environmental history, toxicity, and the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

purported conduct of both defendants which are nowhere to be found in the Amended Complaint.  Although a more detailed examination could never fit within the page limitations of this brief,[1] Plaintiffs' Memorandum makes such unsupported (and false) assertions as that:

(a)    the Defendants were engaged in a joint venture (Mem. Opp., p. 23);
(b)    the waste disposed of in the Newhall Section contained substances well-known to be poisons at the time (Mem. Opp., p. 2);
(c)    "well documented" literature about the hazards of the materials in the fill existed at the time of the dumping (Mem. Opp., p. 10);
(d)    Hamden facilitated the disposal of Olin's toxic industrial waste "knowing houses were going to be built on the dumps" (Mem. Opp., p. 21);
(e)    the "indiscriminate large-scale dumping of hazardous materials in areas where residential development" was known or intended (Mem. Opp., p. 23); and
(f)    Hamden entered into a "joint venture" with Olin to solicit industrial waste so that the "unproductive" land could be converted into residential areas to allow it to collect building permit fees and expand its tax base (Mem. Opp., p. 47).

Neither these nor those listed in Att. A are supported by a *single* assertion (founded or not) in the Amended Complaint, and including these statements without a scintilla of support borders a violation of F.R.C.P. Rule 11.  *Schmitz v. Campbell-Mithun*, Inc., 1989 WL 81804, *4 (N.D. Ill. 1989) (Att. B).

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. Westpoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (*quoting Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991)).  Because Plaintiffs rely upon contentions which are neither contained in their Amended Complaint nor supported by any extrinsic evidence, all such contentions[2] – and the legal arguments which rely upon them – should be disregarded.  *See*

---

[1] A chart detailing the more egregious examples of Plaintiffs' unsupported or miscited assertions in their Opposing Memorandum is attached hereto as Attachment ("Att.") A.

[2] In that regard, Plaintiffs' counsel's mantra of an Olin/Hamden "joint venture" should be disregarded as being without a scintilla of support, either in the Amended Complaint or in cited fact.  Further, although Plaintiffs may derisively wish it otherwise, Hamden can, in fact, "seriously dispute that materials such as lead and arsenic were

-2-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

*Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*, 1986 WL 15663, FN 5 (D.Conn. 1986) (Att. B hereto). Given that to sustain multiple Counts, Plaintiffs do, in fact, rely upon such unsupported arguments of counsel, Hamden's Motion to Dismiss should be granted as to those counts.

## II.   NO COMPELLING REASON PRECLUDES DISMISSAL OF PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF.

### A.   Primary Jurisdiction Clearly Provides A Basis To Dismiss The Claims For Injunctive Relief Arising Under Counts V, VI and XV Against Hamden

Plaintiffs' reliance on *Martin v. Shell Oil Company*, 198 F.R.D. 580 (D.Conn. 2000) ignores the factual distinctions between that case and the circumstances presented here. Simply repetitively positing that "*Martin* is on point" (Mem. Opp., p. 43) actually misses the point, for this case is *not* "just like *Martin.*" First, Plaintiff argues (Mem. Opp., p. 41-42) that the court typically engages in "technical analysis" under other environmental laws. While courts have certainly adjudicated environmental claims arising under common law, CERCLA and RCRA, they rarely involve themselves in overseeing the investigation and remediation of a site involving multiple parties, historical contamination from a variety of sources, and over a fifty-year period. Plaintiffs cite to no case where the courts have exercised jurisdiction in a situation like the one presented here. *Martin* involved one responsible party defendant, one stream or source of contamination, and essentially one single, traceable and identifiable event. As the Amended Complaint sets forth here, multiple parties are involved and multiple potential sources of waste.

Second, the Plaintiffs completely sidestep the very real possibility of inconsistent rulings. In the Consent Order, the issues involving multiple parties are equally made clear but, ultimately, an agreement was reached whereby whatever contamination exists on each of the Plaintiffs'

---

known poisons," (Mem. Opp., p. 10), especially since plaintiffs cite no authority whatsoever for counsel's contentions (*see* Mem. Opp., p. 10).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

properties is addressed through a balanced allocation of responsibilities. Were the court to fashion a different remedy by ordering injunctive relief, the danger of inconsistent rulings is quite real. Whether a party admitted "liability" or "responsibility" for the waste was (and remains) not necessary to achieving the underlying goal – addressing the property in the Newhall Section. For the court to order Hamden to investigate or clean up Plaintiffs' properties undermines and rewrites the agreement that was reached, creates inconsistency, undermines the administrative process, runs afoul of the separation of powers and may cause serious adverse consequences.[3] Should the court exercise jurisdiction over the investigation and clean up, the careful balance and agreements in the Consent Order become meaningless to Hamden, and such a result is not equitable, principled or fair to Hamden and its taxpayers. In *Martin*, in contrast, Shell was obligated, solely and in the first place, to perform the investigation and remediation under its Consent Order; when it failed to do so, the court was compelled to step in. Hamden is not similarly obligated; Olin is. Thus, the court should not step in, unwind the Consent Order and order or otherwise compel Hamden to investigate and remediate the residential properties.[4]

Plaintiffs claim that they "were not parties to the administrative process and there is no indication that they had *any* opportunity to adequately litigate the entrance of the Consent Order" (Mem. Opp. p. 42) is patently misleading. While the Plaintiffs may not have technically been parties, they were well aware of the proceeding, their rights, and the negotiations over the Consent Order. Included as Attachment 4 and 5 to Hamden's Memorandum of Law in Support of Its Motion to Dismiss ("Hamden Mem.") are public records evidencing that Elizabeth Hayes

---

[3] For example, Hamden entered into the Consent Order in good faith expecting it would be obligated to address only Mill Rock Park (and, under different terms, Rochford Field). It expressly did not accept responsibility for the Newhall residential area.

[4] In the event Olin fails to perform its obligations under the Consent Order, DEP certainly has the authority to enforce it. The Plaintiffs, moreover, are not without recourse, as in that instance, they may institute a private attorney general action pursuant to C.G.S. § 22a-16 *but not against Hamden*.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(and the Newhall Coalition, among others) the status conferences, received telecopy transmittals of the summaries and were aware of the Consent Order negotiations. They were well aware of their rights as evidenced by the various requests to become "interested persons" as opposed to full parties. Indeed, the Newhall Coalition as represented by Elizabeth Hayes, a named plaintiff, and others, *specifically* petitioned the Commissioner of DEP on issues relating to the Order and met with the Commissioner on these issues *before* the Consent Order was made final on April 16, 2003. (Attachment 6 to Hamden Mem.). Given this, Plaintiffs are not entitled to undo the Consent Order when they had a forum – at the highest level -- to be heard. Were the court to give any credence to this backdoor challenge, which exalts the form that Plaintiffs were not listed as "parties," over the substance of the fact that they were, in fact, represented throughout the administrative proceedings, it would cause irreparable harm to the administrative process. These Plaintiffs are unlike those in *Martin*, and therefore, *Martin* is not on point.

Finally, dismissal of Plaintiffs' claims for injunctive relief is appropriate. The Consent Order identifies who will investigate and remediate the plaintiffs' properties: Olin (with DEP), not Hamden. The Court should not interfere with the Consent Order and the rights and obligations thereunder. To do otherwise, certainly creates a risk of inconsistent rulings and is highly prejudicial, inequitable and unjust to Hamden.

B.    *Burford* Abstention Does Apply To The Claims Against Hamden.

As the Plaintiffs recognize, *Burford* requires abstention "where there would be 'undue' federal interference." (Mem. Opp., p. 45 citing *Bethpage Lutheran Service, Inc. v. Weicker*, 965 F.2d 1239, 1247 (2d Cir. 1992)). As stated above, this court clearly would unduly interfere with the state's administrative process insofar as it is being asked by the Plaintiffs to order Hamden to investigate and remediate their properties, a task which the state has ordered be undertaken by

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Olin. The Consent Order clearly sets forth that this is Olin's obligation and not Hamden's. Therefore, any act by this federal court that would alter that balance and scheme would be, by its very nature, "undue federal interference." Moreover, in *Burford*, the Supreme Court clearly acknowledged that a federal court should restrain from exercising authority when a state regulatory scheme exists "because of scrupulous regard for the rightful independence of the state governments." *Burford*, 319 U.S. 315, 332-33 (1943)(citations omitted). In this case, the complex state administrative scheme designed to address contaminated properties and the administrative result reached should cause this court, as in *Burford*, to "stay its hand" out of "a sound respect for the independence of the judiciary." *Id.* at 334.

Plaintiffs argue that abstention should not apply because DEP is not a party to this proceeding, and cite *DMJ Assoc., L.L.C. v. Capusso*, 228 F.Supp. 2d 223 (E.D.N.Y 2002), to claim that the state agency must be a party and request abstention for it to be granted. That condition is not apparent in *Burford* or its progeny, and thus is not controlling. Moreover, grafting such a condition in this case misses the significant distinctions from *DMJ*: (a) *DMJ* involved a citizen suit arising under RCRA and a scenario where the courts have acknowledged that abstention may be inappropriate. *DMJ*, 228 F.Supp. at 230-31. No statutory framework similar to RCRA exists here to warrant abstention; and (b) unlike here, *DMJ* did not involve a fully executed Consent Order where all defendants were parties to the Consent Order. Consent Order SRD-128 speaks for itself and any agency interpretation of a binding legal agreement is unnecessary to determining that abstention is appropriate.

## III. THE PLAINTIFFS HAVE NOT ALLEGED OR SUPPORTED THEIR CLAIMS THAT HAMDEN ENGAGED IN PROPRIETARY ACTIVITIES.

Plaintiffs argue that Hamden focuses on singular acts to prove that it is entitled to governmental immunity and ignores the larger picture (Mem. Opp., p. 47). Hamden does focus

-6-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

on certain singular acts – because those acts are the basis for Plaintiffs' claims in the Amended

Complaint. Faced with this challenge and in a desperate attempt to claim that Hamden's acts

were proprietary, plaintiffs now argue that Hamden "entered into a joint venture with Olin over a

period of decades. . . so that Hamden's unproductive land could be converted into residential

areas which would allow it to collect building permits fees for hundreds of homes and expand its

tax base." (Mem. Opp., p 47). Notwithstanding the very important fact that the allegations in

the Amended Complaint do not suggest (a) a joint venture or (b) that Hamden did this to collect

building permit fees or expand its tax base, these claims border on the preposterous.

First, while calling Hamden a "joint venturer" may connote a financial relationship, such

nomenclature or labeling does not make it so. Plaintiffs are truly far afield from the Amended

Complaint (or the facts) when they suggest that Hamden profited from any relationship with Olin

and operated industrial waste landfills on its behalf. Second, Plaintiffs claim that Hamden

engaged in a "proprietary" act because of revenues received through building permits and tax

revenues is absurd, for the logical consequence of this argument turns local governments into

proprietary entities everytime they collect a fee or a tax. Such an argument is wholly flawed and

demonstrates an incredulous and fundamental misunderstanding of local governments.[5]

Governments collect fees and taxes for the administration of government. With those fees and

taxes, they provide services for their residents. With every residential development come

increased costs – extension of fire, police, school services, sewers, to name a few. Increased

revenues from an increase in the residential base creates increased costs; not "corporate gain."

Plaintiffs, moreover, cite to no legal authority to support this remarkable argument.

Plaintiffs did not and cannot make the argument that Hamden's alleged activities are

---

[5] Indeed, under Plaintiffs' theory, improvements in the police and fire departments would be "proprietary," for these would increase property values and therefore raise property taxes.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

proprietary in nature since courts have held that "the operation of a landfill 'must…be stamped a governmental function.'" *Little Joseph Realty, Inc. v. Town of Babylon*, 41 N.Y.2d 738, 742 (1977) (quoting *Nehrbas v. Incorp. Village of Lloyd Harbor*, 159 N.Y.S.2d 145, 147 (1957)). Furthermore, Plaintiffs' reliance on *Accashian v. City of Danbury*, 1999 WL 27223 (Conn. Super. Ct. 1999) and *Vaillancourt v. Town of Southington*, 2002 WL 1041381 (Conn. Super. Ct. 2002.) is misplaced. In those cases, the Court was faced with facts indicating a proprietary method of operation of the facilities at issue. *See Accashian* at *2-4; *Vaillancourt* at *3. Such is not the case here, for there is no allegation that Olin paid Hamden or contributed to the tax base through the alleged dumping activity. The Plaintiff does not allege, and there is nothing in the record to reflect, that Hamden received corporate gain or benefit, and thus, such activities were governmental, and not proprietary, acts. *See Elliott v. City of Waterbury, supra* at 414. Lacking an allegation that the alleged landfill operation was for profit, such a claim must be dismissed.

Similarly, plaintiffs reliance upon foreign state and federal decisions denying motions to dismiss, *see Albertson v. The City of Akron*, 1981 WL 3859 (Ohio App. 1981); *Gache v. Town of Harrison*, 813 F.Supp. 1037 (S.D.N.Y. 1993) is misguided, for in those cases, the plaintiffs demonstrated that proprietary nature of the operation, including that the defendants charged money. *See Albertson* at *3; *Gache,* 813 F.Supp. at 1051. Here, the Amended Complaint is devoid of any allegation that Hamden received any pecuniary benefit[6], and thus there is no claim that the operation of a municipal dump was a proprietary act. Given the inadequacy of the pleadings, this question is ripe for disposition now.

---

[6] Plaintiffs' exclusive focus is that Hamden received increased tax revenue once the properties were filled in. Additional tax revenue from individual owners (as opposed to a pecuniary benefit from Olin) hardly transforms Hamden's activities into a proprietary act. Plaintiffs also suggest that Hamden engaged in a proprietary act because it accepted waste from Olin, "a non-resident corporation." Mem. Opp., p. 49. This argument is contrary to the very clear allegation in the Amended Complaint that "[a]t all relevant times, Olin conducted business in New Haven, Connecticut *and Hamden*, Connecticut." Amended Compl. ¶ 5. Plaintiffs' arguments on this point should therefore be disregarded.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Based on the allegations in the Amended Complaint there is no possibility that Hamden's alleged activity was proprietary in nature. Thus, Hamden's motion to dismiss counts II, IV, VIII, X, and XII should be granted, as they are barred by C.G.S. § 52-577n.

## IV.    PLAINTIFFS' NEGLIGENCE PER SE CLAIM IS MERITLESS

Plaintiffs argue that their negligence per se claims (Count VIII as to Hamden) should be sustained because of purported violations of Connecticut statutes, as well as the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.*, ("CERCLA").    Apparently recognizing Hamden's well-urged arguments that the cited Connecticut statutes do not support such claims, *see* Hamden Mem., pp. 29-31, Plaintiffs *for the first time* argue that CERCLA is a basis for a negligence per se claim. Mem. Opp., pp. 17-19. Leaving aside that CERCLA is not cited as a basis for negligence per se in the Amended Complaint – a fact which alone precludes reliance upon that Federal statute – Plaintiffs efforts to salvage this claim using CERCLA falls on a simple fact:  they cite no authority holding that the section cited (42 U.S.C. § 9603(c)) can serve as the predicate for a negligence per se claim. Significantly, in an analogous context, in *City of Toledo v. Beazer Materials and Services, Inc.*, 833 F.Supp. 646, 661 (N.D. Ohio 1993), the court dismissed a citizen suit arising under CERCLA when it was premised upon a violation of 42 U.S.C. § 9603, because: (1) § 9603(c) imposes a one-time reporting requirement, the violation of which would occur on June 9, 1981[7] and (2) civil penalties for violations of § 9603(c) are not allowed. *Id.*; *see also Polcha v. AT&T*

---

[7] Plaintiffs argue that Hamden continues to violate § 9603(c) until the requisite notification is made, yet nowhere in the Amended Complaint do they suggest that Hamden failed to notify EPA that it owns or operates (or owned or operated) such a disposal facility. In fact, whether formal notification was made is irrelevant: given that the purpose of § 9603(c) is notice, even Plaintiffs admit (Amended Compl. ¶¶ 27-33) that EPA is aware of and has studied the area, and thus any technical compliance issues are the province of EPA and EPA alone. Plaintiffs reliance upon an EPA training manual (as opposed to case law) for support that the obligation to support is "lasting" is frivolous at best, given that this consultant-created manual includes a Disclaimer advising that "[it] is a training tool for Hotline specialists *and does not represent a statement of EPA policy*" (emphasis added) (Att. C hereto).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

*Nassau Metals Corp.*, 837 F. Supp. 94, 96 (M.D. Pa. 1993). Simply put, no private cause of action exists under § 9603(c) to recover damages for personal injuries resulting from a violation. *Polcha*, 837 F. Supp. at 96. Plaintiffs should not be allowed to back door an action for damages utilizing an alleged violation of § 9603(c) as a basis for negligence per se, when damages for such a violation clearly are not permitted through the front door. Thus, dismissal is proper.

## V.     PLAINTIFFS HAVE NOT ADEQUATELY PLEADED RECKLESSNESS.

Plaintiffs' unsupported rhetoric notwithstanding (Mem. Opp., 13-14 ), Count IV of their Amended Complaint simply fails to include allegations which could give rise to a claim for recklessness.  While their opposing memorandum includes assertions about the disposal of "known poisons" as being a basis for claiming recklessness, the Amended Complaint does not include any such allegations. More critically, the cases cited by Plaintiffs mandate dismissal, for in all three cases, the courts struck recklessness counts where, as here, the Plaintiff merely added adjectives connoting "recklessness" without including any new factual allegations supporting that assertion. *Warner v. Kedah Corp.*, 1995 WL 573828, \*4 (Conn. Super. Ct. 1995); *Vassallo v. Baxter Healthcare Corp.*, 428 Mass. 1 (1998); *Dubay v. Irish*, 207 Conn. 518, 533 (1988). Given that the only new "claims" cited in the Opposing Memorandum are assertions which are *not* in the Amended Complaint, Plaintiffs have not pleaded a recklessness count against Hamden, and dismissal of Count IV is required.

## VI.     PLAINTIFFS HAVE FAILED TO PLEAD A VALID CLAIM OF NEGLIGENCE.

Despite Plaintiffs' strenuous arguments that a duty existed on Hamden's part, more than fifty years before the Plaintiffs' injuries and decades before the enactment of laws and knowledge of environmental contamination, their caselaw fails to support such a view.  Indeed, Plaintiffs cite only to cases which confirm the central importance of foreseeability in imposing

-10-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

negligence.  *See* Mem. Opp., pp. 6-13.  Plaintiffs offer nothing by way of allegations that

Hamden knew its activity would ever be construed as deleterious, other than an entirely

*unsupported* contention in their brief that lead and arsenic were "well known poisons at the dawn

of the 20th century."  See Mem. Opp., p. 12.  "The existence of a legal duty of care entails a

determination of whether an ordinary person in the defendant's position, knowing what the

defendant knew or should have known, would anticipate that harm of the general nature suffered

was likely to result."  *Lodge v. Arett Sales Corp.,* 246 Conn. 563, 572 (1998).  Without any

allegations or extrinsic authority that Hamden would know or be expected to know of dangers

associated with the alleged activities, and with substantial proof to the contrary[8], Hamden cannot

be held liable for negligence.

    The Plaintiffs fail to cite any legal authority to support a finding that Hamden should be

held negligent in this context.  While the *Coburn* case, heavily relied upon by Plaintiffs, does

permit negligence claims based upon the general nature of a foreseeable harm, this was not

within the context of an environmental contamination claim.  *Coburn v. Lenox Homes, Inc.,* 186

Conn. 370 (1982).  It also did not address the situation where the harm was unknown and

reasonably unknowable at the time.  Plaintiffs' citation to *Cadlerock* is similarly misplaced, for

that court addressed the foreseeability of certain plaintiffs, not whether the danger itself could be

predicted.  *Cadlerock Properties v. Schilberg,* 2000 WL 268548 (Conn. Super. Ct. 2000).

---

[8] Lead and arsenic were not regulated until the latter part of the 20th century.  The earliest Federal regulations governing lead appear to be the Clean Air Act ("CAA") of 1970, Pub L. No. 91-604, 84 Stat. 1698-1700 (1970); *see* 42 U.S.C. § 1857f-6c (1970) (granting EPA authority to control or prohibit sale or manufacture of any fuel additive (lead)); *see also,* 40 C.F.R. Part 80 (1973) (regulating use and marketing of leaded gasoline).  While in 1943, the U.S. Public Health Service first established an arsenic drinking water standard for interstate carriers, *see* U.S. Public Health Service, *Public Health Service Report,* 58:69 (Jan. 15, 1943), it was not until 1975 that EPA regulated drinking water arsenic.  *See* Safe Drinking Water Act ("SDWA") of 1974 ( 42 U.S.C. §§ 300f – 300j-11).  Since then, these substances have been regulated through a variety of acts, including the Occupational Safety and Health Act, 29 U.S.C. §§ 651 *et seq.* (1970), the Lead Based Paint Poisoning and Prevention Act of 1971, 42 U.S.C. § 301; the Toxic Substances Control Act of 1976, 15 U.S.C. §§ 2601 *et seq.* (1976); the Federal Water Pollution Amendments of 1977 (a/k/a Clean Water Act), 33 U.S.C. § 1317(a)(1) (1977); and others.  Critically, however, all of these regulations occurred long after even Plaintiffs claim any dumping occurred.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Additionally, as expressed in detail in Hamden's initial Memorandum, the only foreseeable result of Hamden's conduct at the turn of the century was a *benefit*, not a harm, to its citizens. At all times, Hamden was acting only in the public interest by contributing to the health and welfare of its citizens. Not only was a harm not foreseeable, but it was not comprehensible at the time that Hamden's actions occurred.

Finally, "the doctrine of caveat emptor generally bars common law negligence claims." *ABB Industrial Systems v. Prime Technology, Inc.*, 120 F.3d 351; 360 (2d Cir. 1997) citing *Connecticut Resources Recovery Authority v. Refuse Gardens, Inc.*, 229 Conn. 455, 456-458 (1994). While Connecticut courts have carved out an exception when plaintiffs plead that they have conducted a reasonable investigation and defendants knew or should have known of the contamination, *Coastline Terminals of Connecticut v. USX Corporation,* 156 F.Supp.2d 203, 210 (D.Conn. 2001), for the reasons stated above, there is no such exception applicable here. Further, Plaintiffs have not pleaded or shown that they conducted a reasonable investigation of this site, much less that Hamden should have known of the contamination over fifty years ago. As such, even if a negligence claim were valid and a duty on Hamden's part could be found, the doctrine of caveat emptor would defeat the Plaintiffs' claim.

## VII.    PLAINTIFFS' NUISANCE CLAIM SHOULD BE DISMISSED.

Plaintiffs, obviously recognizing the lack of a viable nuisance claim against Hamden, now hope to transmogrify this lawsuit and this neighborhood into a "Love Canal." Relying upon inapplicable New York law, unpleaded and unsupported assertions, and conclusory arguments of counsel, Plaintiffs again seek to garb Hamden in Olin's cloak, ignoring that the very cases they cite mandate dismissal.

First, as is true in virtually all other portions of their brief, Plaintiffs make claims which

-12-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

are neither supported in the Amended Complaint nor are based upon any extrinsic evidence.[9]

Second, Plaintiffs misstate the law, for while citing *Pestey v. Cushman,* 259 Conn. 345 (2002),

they ignore that the court there cited authority requiring proof that the "defendant act[ ] with the

intent of interfering with the plaintiff's use and enjoyment of his or her property [and that] the

interference with the use and enjoyment of the land was of the kind intended," *Pestey,* 259 Conn.

at 358 (citing Prosser & Keeton, *Torts,* (5th ed. 1984) § 87, pp. 622-25).[10]  Plaintiffs here do not

and cannot allege that Hamden intended to interfere with these Plaintiffs use of their land, or that

this claimed interference "was of the kind intended."  They also ignore the court's admonition

that the plaintiff must show unreasonable interference, either intentional or as a result of the

defendant's negligence, *id.* at 361, and that they have failed to plead either to be the case.

Apparently recognizing these flaws, Plaintiffs argue that they may bring a public

nuisance claim, based upon a "joint venture to facilitate the disposal of toxic industrial waste"

which "unreasonably interferes with the public health and safety of residents of the Newhall

Section."  In doing so, Plaintiffs simply recloak their invalid private nuisance claim with the

word "public," ignoring that private and public nuisance "'bear little relationship to each other.'"

*U.S. v. Hooker Chemicals & Plastics Corp.,* 722 F. Supp. 960, 964 (W.D.N.Y. 1989).  They

further ignore that *Hooker Chemicals* (the "Love Canal" case) was a claim not against a

municipality, but against the entity that created and disposed of the allegedly toxic chemical

wastes, and then conveyed the property with full knowledge of – and indeed a recitation that –

---

[9] This includes arguing that Olin and Hamden engaged in "joint actions" (Mem. Opp., p. 23); that Hamden solicited owners "for the purpose of allowing industrial wastes containing hazardous substances to be disposed" (*id.,* p. 25); that Hamden and Olin "entered into a joint venture that lasted for decades" (*id.*); that the defendants "creat[ed] . . . toxic industrial waste dumps" (*id.,* p. 26); that Olin and Hamden's "joint venture [was] to facilitate the disposal of toxic industrial wastes in the Newhall Section" (*id.,* p. 27); and that Hamden and Olin acted "even more egregiously than the manufacturer in Love Canal" by continuing *their* "disposal practices for decades with knowledge that residences were being built on the land where it [sic] disposed of hazardous waste" (*id.,* p. 28).

[10] These authors further require proof that "the interference was substantial; and . . . the interference was unreasonable."  *Id.*

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the property contained "waste products resulting from the manufacturing of chemicals," 722 F. Supp. at 962, and that it was "undisputed" that Hooker Chemicals had deposited over 21,000 tons of chemical waste during its ownership of the property. *Id.* at 967. Plaintiffs further ignore that while in "Love Canal," the New York State Health Commissioner had "found that the conditions existing at the Love Canal landfill site constituted a 'public health nuisance' subject to abatement by the proper authorities," 722 F. Supp. at 967; in contrast there is not alleged to be – *and there has not been* – any such finding by any Connecticut agencies.

Moreover, there is no claim in the Amended Complaint that *Hamden* knowingly disposed of any toxic chemicals *on its own property*; indeed, Plaintiffs' claim is that at least in some instances, Hamden did not even own these properties. *See* Amended Complaint, ¶ 21. Lastly, not only is it true that Plaintiffs have failed to include allegations needed to state a public nuisance against this municipality, *see* Hamden Mem., pp. 37-38, but the Plaintiffs, a purported class of private landowners and residents, having chosen to seek individual damages and remedies for the purported diminished value of their real properties and their individual emotional distress, seek to vindicate private rights, not a "right common to the general public" (such as in the natural resources of the state), *see Keeney v. Old Saybrook,* 237 Conn. 135, 162-63 (1996); *Elliott v. Waterbury,* 245 Conn. 385, 421 (1998); and thus are by definition claiming private, not public, nuisance. For these reasons, and especially since a municipality cannot be liable for public nuisance where the conduct involves mere negligent nonfeasance, *Keeney,* 237 Conn. at 164, *Elliott,* 245 Conn. at 421, dismissal of all nuisance claims, private or public, is required.

## VIII. PLAINTIFFS' CLAIMS OF STRICT LIABILITY ARE NOT PROPER UNDER THE FACTS ALLEGED AND PRESENTED

Plaintiffs argue that as a matter of law, strict liability should apply to the landfills which,

-14-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

even according to their Amended Complaint, were not operated after the early 1950s.  Relying

on several cases[11] *decided by one judge* who held that the operation of a landfill can, in certain

circumstances, be an abnormally dangerous activity (and without truly distinguishing the

authority cited by Hamden in its moving memorandum[12]), Plaintiffs claim that this rule should

prevail over those cases cited by Hamden.  In doing so, however, they ignore that in each case

cited by Plaintiffs, the landfill was either operated during the period when the Plaintiffs were

exposed to the hazardous substances, or else it was operated during a timeframe when

environmental concerns had been heightened.[13]  Here, in contrast, disposal of Olin's waste in the

landfills at question ended by the 1950s.

Given this, the policies behind strict liability are inapplicable.  Plaintiffs' repeated

citations to the Restatement weigh heavily in favor of Hamden's arguments.  As noted by the

Plaintiffs, *Barnes* held that "it was common usage to dispose of commercial waste at a landfill at

the time of the case, as it was not clearly known that disposing of these wastes was an

abnormally dangerous activity."  Mem. Opp., p. 36; citing *Barnes*, at *6.  The court went on to

note that, because of this, it was not certain that the defendants' activities were "inappropriate."

*Id.*  The Plaintiffs appear to have conceded these Restatement factors to the Defendants.

Any alleged acceptance of Olin's waste occurred long before not only the institution of

litigation, but even long before it was believed that the conduct in question had any negative

impact on society.  Mem. Opp., p. 2.  To impose strict liability, as Plaintiffs seek, would mean to

impose norms of the last quarter of the 20th century upon conduct that occurred in the first half of

---

[11] *Barnes v. General Electric Co.*, et al., 1995 WL 447904, *5 (July 20, 1995) (Hennessy, J.) and *Mather v. Birken Manufacturing*, 1998 WL 920267 (Dec. 8, 1998) (Hennessey, J.).

[12] Plaintiffs' citation to *Caporale v. C.W. Blakeslee and Sons*, Inc., 149 Conn. 79 (1961) is inapposite, for that case involved blasting damage, not environmental claims.

[13] For instance, in *Barnes*, the Town of Southington owned and operated a landfill until 1967, a time after environmental awareness had long grown.  In contrast, even by Plaintiffs' own pleadings, the landfills in question in Hamden closed long before such awareness. *Barnes*, 1995 WL 447904, *5.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

that century, a rule that would not only impermissibly prejudice Hamden in this case but which would, if accepted, have broad-ranging negative ramifications on virtually all conduct over time. This court should not adopt a rule which would, potentially, subject persons, companies, and governmental bodies to liabilities which cannot even be predicted, but which may arise fifty years from now based upon new societal norms or newly discovered science.

The two central Restatement considerations (the existence of a high degree of risk and the likelihood of resulting harm) are easily resolved in Hamden's favor by the fact that Plaintiffs have not alleged that these "risks" were known or the harm foreseeable at the time of these activities. Plaintiffs' failure to cite authority supporting a retroactive application of modern environmental knowledge highlights these facts, and thus, under the Restatement, and *consistent* with the Plaintiffs' caselaw, Hamden is not strictly liable for an ultrahazardous activity.

## IX.   APPLICABLE STATUTES OF LIMITATIONS BAR THE PLAINTIFFS' CLAIMS.

In opposing dismissal, Plaintiffs chastise[14] Hamden for not citing to Conn. Gen. Stat. § 52-577c(b), which provides that the plaintiffs have "two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered." Presuming that this statute applies, *see* Def. Mem., p. 53, Plaintiffs' arguments that the statute examines "what a particular plaintiff knew or should have known at a particular time" (Mem. Opp., p. 52), and that the statute begins to run when "the plaintiffs became award of the contamination" (*id.* at 55) are, in fact, misguided. Instead, the proper inquiry is an objective one, and examines what a *reasonable person knew or should have known*. Thus, the statute of

---

[14] Hamden does not argue, as the plaintiffs claim (Mem. Opp., p. 56), "that the statue of limitations began to run at the moment the contamination occurred," but rather that each of the statutes of limitations bars the plaintiffs claims since the plaintiffs "were aware of or should have known about the alleged contamination long before this action was filed." *See* Hamden Mem., p. 39.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

limitations "period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry." *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704 (2d. Cir. 2002).

Plaintiffs have disposed of this issue by their own allegations. They allege that "in 2000 and early 2001," the United States Environmental Protection Agency ("USEPA") conducted studies which confirmed the presence of chemicals and wastes in the Newhall Section, allegedly from historical firearm and ammunition manufacturing operations. Amended Compl. ¶ 27. Further, they allege that "in or about April 2001, the USEPA conducted surficial soil sampling on 76 properties. . . for a variety of organic and inorganic contaminants." Amended Compl. ¶ 29. Therefore, at the very latest, a reasonable person living in that area knew or should have known of circumstances to put them on inquiry in early 2001. As this action was not filed until May 2, 2003, this is more than two years from the date when plaintiffs knew or should have known of the alleged contamination.[15]

Plaintiffs' efforts to distinguish *Bello v. Barden,* 180 F.Supp.2d 300 (D.Conn 2002) are unavailing, for just as the action in *Bello* was filed after the limitations period expired, so was the action in this case. Their reliance upon Massachusetts General Laws c. 21E to argue that the statute of limitations period began to run when the plaintiffs received test results (Mem. Opp., p. 54) ignores the plain language of § 52-577c(b), and is not supported by any case law in the Second Circuit or in this state. Yet, even indulging plaintiffs' analogy to Massachusetts law, that statute includes as its definition of "knowledge" that which a "person acting in a reasonably prudent and intelligent manner would have [known], but for that person's willful, knowing or

---

[15] Public Records confirm activities in the Newhall Area occurred more than two years prior to the filing of this lawsuit on May 2, 2003. A Press Release of January 9, 2001 announced that the DEP would begin sampling soil in the residential area near the Hamden Middle School. An informational meeting was announced for January 9, 2001 at a church in Newhall. According to a February 7, 2001 press release, another meeting was to be held the next day at the Hamden Middle School to report on the sampling activities in the residential area. (Copies of these public records are within Attachment D).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

negligent avoidance of learning about the facts or facts in question." Mass. Gen. Laws ch. 31f, §
14. Under that definition, plaintiffs acting in a reasonably prudent and intelligent manner clearly
should have known about the alleged contamination before May 2, 2001.

Given this, plaintiffs were indisputably aware of the alleged contamination long before
May 2, 2001. Given this, Counts II, IV, VIII, X and XII are each time-barred, and should be
dismissed pursuant to § 52-577c.

## X.    THE EMOTIONAL DISTRESS CLAIMS, HOWEVER COUCHED, MUST BE DISMISSED.

In opposing dismissal of Count XII, Plaintiffs chide Hamden for supposedly ignoring that
their claims involve not just intentional, but also negligent infliction of emotional distress. Mem.
Opp., pp. 19-20.   In doing so, they blame Hamden for their own sins, for Plaintiffs' Amended
Complaint falls so woefully short of adequately alleging negligent infliction of emotional distress
that Hamden logically concluded that Plaintiffs must have brought an *intentional* infliction of
emotional distress claim.   Connecticut courts have left no doubt that to properly allege a claim
for *negligent* infliction of emotional distress, "the plaintiff does have the burden of pleading and
establishing that 'the defendant should have realized that its conduct involved an unreasonable
risk of causing emotional distress and that the distress, if it were caused, might result in illness or
bodily harm.'" *Morris v. Hartford Courant Co.*, 200 Conn. 676, 683 (1986), *quoting Montinieri
v. Southern New England Tele. Co.*, 175 Conn. 337, 345 (1978).   As Count XII is devoid – as it
should be to comply with F.R.C.P. Rule 11 -- of allegations that Hamden knew or should have
known that the alleged conduct involved an *unreasonable* risk of causing emotional distress *and*
that Hamden should have realized that the distress risked causing illness or bodily harm
(compare Amended Compl., ¶¶ 98-99), if, as Plaintiffs now assert, this claim is one for negligent
infliction of emotional distress, the court must dismiss the count as failing to state a claim upon

-18-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

which relief can be granted.

Yet, were this not enough, courts in this State have held that a negligent infliction of emotional distress claim predominantly based on property damage is not legally cognizable in Connecticut. *Kurzyna v. City of New Britain*, 2002 WL 1008450 (Conn. Super. Ct. 2002), *see also DeLeo v. Reed*, 2000 WL 38451 (Conn. Super. Ct. 2000) (dismissing both negligent and intentional infliction of emotional distress claims despite allegations other than damage to property); *Hixon v. Eilers*, 2001 WL 219889 (Conn. Super. Ct. 2001) (dismissing both negligent and intentional infliction of emotional distress claims based on property damage and insufficient facts); *Early v. Derby Neck Library*, 2001 WL 1231856 (Conn. Super. Ct., 2001) (dismissing negligent infliction of emotional distress claim based primarily on damage to property).

Although plaintiffs are correct in claiming that no physical injury need be proven to establish a claim for negligent infliction of emotional distress, the distress claimed must be reasonably foreseeable. *See Voghel v. City of Waterbury*, 1999 WL 732984 (Conn. Super. Ct. 1999) (Vertefeuille, J.). Given that the alleged conduct occurred between 50 and 100 years ago, at a time when most of these plaintiffs probably were *not even born* and when the environmental law was not even in its infancy, it strains credulity to claim that Hamden could somehow have foreseen some "emotional distress" allegedly inflicted on these particular plaintiffs.

Plaintiffs cannot resuscitate this count, moreover, by transforming it into an intentional infliction of emotional distress claim given that the standard in Connecticut to demonstrate extreme and outrageous conduct is stringent. *See Jones v. Gem Chevrolet*, 166 F.Supp. 2d 647, 651 (D.Conn. 2001). "Liability has been found only where the conduct had been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Whitaker v. Haynes*

-19-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

*Construction Co, Inc.*, 167 F.Supp. 2d 251, 255 (D.Conn. 2001) *quoting* Prosser and Keeton, *Torts* (5th ed.1984) § 12, p. 60. Whether a defendant's conduct can be considered extreme and outrageous is initially a matter of law for the court to decide. *See id.* And, while Plaintiffs might wish it otherwise, there is no room for disagreement among "reasonable minds" that the Plaintiffs in this case have completely failed to demonstrate that Hamden's alleged activities were "extreme" or "outrageous" in any manner when they occurred. *See Appleton v. Stonington Bd. Of Ed.*, 254 Conn., 205, 211 ( 2000).

XI.    **CONCLUSION.**

For the foregoing reasons, and those set forth in Hamden's Motion and Supporting Memorandum, Hamden respectfully requests the court dismiss Plaintiffs' claims (Counts II, IV, VI, VIII, X, XII and XV) as the allegations against the Town in the Amended Complaint do not state claims upon which relief can be granted.

THE DEFENDANT
TOWN OF HAMDEN:

By _____
    Ann M. Catino
    Fed Bar No #ct02747
    Joseph G. Fortner, Jr.
    Fed Bar No. ct04602
    HALLORAN & SAGE LLP
    One Goodwin Square
    225 Asylum Street
    Hartford, CT 06103
    (860) 522-6103

-20-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

# CERTIFICATION

This is to certify that on this 24th day of November, 2003, I hereby mailed a copy of the

foregoing to:

<u>Counsel for Plaintiffs</u>

Monte E. Frank, Esq.
David B. Zabel, Esq.
Cohen and Wolf, P.C.
158 Deer Hill Avenue
Danbury, CT  06810

Mark Roberts, Esq.
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, MA  02114


Neil T. Leifer, Esq.
Michael A. Lesser, Esq.
Brad J. Mitchell, Esq.
David C. Strouss, Esq.
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA  02110

<u>Counsel for Olin Corporation</u>

Michael H. Wetmore, Esq.
Joel B. Samson, Esq.
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105

Sandra K. Davis, Esq.
Mark S. Baldwin, Esq.
Brown Rudnick Berlack Israels LLP
185 Asylum Street, 38th Floor
Hartford, CT  06103-3402


_____
Ann M. Catino

488610.1(HSFP)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105