DOCKET NO.: CV-03-0477328-S

CLARENCE R. COLLINS, JR., JENNIFER
AND PATRICK DONTFRAID, DONNA LEE
JOHNSON, LEONARDO MELENDEZ,
SONIA POWELL, DOROTHY WILLIAMS,
VALERIE LASSITER, MATTHEW AND
PHYLLIS ABRAHAM, HENRY L. BLUE,
JANIE CLEMONS, GWENDOLYN L.
COPPAGE, LOUIS CRAIG, RUTH B.
EATON, WILLIAM AND MAXINE JONES,
JOSEPHINE NEAL, COLLIN ROUSE,
CLIFFORD SENIOR AND ADRIENNE
ROUSE-SENIOR, RAYMOND SIMS, SR.
AND ELLECIA R. SIMS,
MARC PERRY, WILLIAM C. AND VENUS
D. WALKER, MORRIS AND MARY
DRAUGHN, CAROLYN SMITH,
ELIZABETH HAYES, ABDUL HAMID,
MURLINE WELLESLEY, EUGALYN
WILSON, CHARLENE P. WEBB, ELIAS
ROCHESTER AND MARUS WALTERS, for
themselves and on behalf of a class of similarly
situated property owners,

                                    Plaintiffs,

        v.

OLIN CORPORATION and the TOWN
OF HAMDEN,

                                    Defendants.

SUPERIOR COURT

JUDICIAL DISTRICT OF NEW
HAVEN

AT NEW HAVEN

3:03 CV 945 CFD

Judicial District of New Haven
SUPERIOR COURT
FILED

MAY 28 2003

CHIEF CLERK'S OFFICE

MAY 28, 2003

## AMENDED COMPLAINT

For their complaint, the Plaintiffs Clarence R. Collins, Jr., Jennifer and Patrick Dontfraid,

Donna Lee Johnson, Leonardo Melendez and Valerie Lassiter, Sonia Powell, Dorothy Williams,

1

The Clerk is ordered to docket the amended complaint and include it in the Court's file.   So ordered.

Christopher F. Droney
United States District Judge
2/3/04

Matthew and Phyllis Abraham, Henry L. Blue, Janie Clemons, Gwendolyn L. Coppage, Louis Craig, Ruth B. Eaton, William and Maxine Jones, Josephine Neal, Collin Rouse, Clifford Senior and Adrienne Rouse-Senior, Raymond Sims, Sr. Ellecia R. Sims, Marc Perry, William C. and Venus D. Walker, Morris and Mary Draughn, Carolyn Smith, Elizabeth Hayes, Abdul Hamid, Murline Wellesley, Eugalyn Wilson, Charlene P. Webb, Elias Rochester and Marus Walters make the following allegations, based upon personal knowledge as to the allegations pertaining to themselves, and based upon the investigation of counsel as to all other allegations:

## INTRODUCTORY STATEMENT

1.      The Plaintiffs bring this complaint, for themselves and on behalf of a class of similarly situated property owners in the Newhall area of Hamden, Connecticut seeking damages against Olin Corporation and the Town of Hamden for the diminution in the value of their properties, response costs, loss of use and enjoyment of their properties and emotional distress.

2.      The Plaintiffs also seek a mandatory injunction compelling Olin Corporation ("Olin") and the Town of Hamden ("Hamden") to conduct, on an expedited basis, any and all response actions necessary to investigate and remediate any and all contamination on their properties and/or the properties of the other members of the class and to cleanup and protect the groundwater and other natural resources.

<u>PARTIES</u>

3.    The named plaintiffs in this case are as follows:

    a.    Plaintiff Clarence R. Collins, Jr. is a resident of Connecticut with an address at 112 Bryden Terrace, Hamden, Connecticut;

    b.    Plaintiffs Jennifer and Patrick Dontfraid are residents of Connecticut with an address of 22 St. Mary Street, Hamden, Connecticut.  They also own real property at 28 St. Mary Street, Hamden, Connecticut;

    c.    Plaintiff Donna Lee Johnson is a resident of Connecticut with an address at 1071 Winchester Avenue, Hamden, Connecticut.

    d.    Plaintiffs Leonardo Melendez and Valerie Lassiter are residents of Connecticut with an address at 334 Augur Street, Hamden, Connecticut.

    e.    Plaintiff Sonia Powell is a resident of Connecticut with an address at 137 - 139 Shepard Street, Hamden, Connecticut.

    f.    Plaintiff Dorothy Williams is a resident of Connecticut with an address at 1067 Winchester Avenue, Hamden, Connecticut.

    g.    Plaintiffs Matthew and Phyllis Abraham are residents of Connecticut with an address at 39 St. Mary Street, Hamden, Connecticut.

    h.    Plaintiff Henry L. Blue is a resident of Connecticut with an address at 472 Shelton Avenue, Hamden, Connecticut.

    i.    Plaintiff Janie Clemons is a resident of Connecticut with an address at 90 Bryden Terrace, Hamden, Connecticut.

j.      Plaintiff Gwendolyn L. Coppage is a resident of Connecticut with an
        address at 610 Newhall Street, Hamden, Connecticut.

k.      Plaintiff Louise Craig is a resident of Connecticut with an address at 507
        Newhall Street, Hamden, Connecticut.

l.      Plaintiff Ruth B. Eaton is a resident of Connecticut with an address at 499
        Newhall Street, Hamden, Connecticut.

m.      Plaintiffs William and Maxine Jones are residents of Connecticut with an
        address at 1030 Winchester Avenue, Hamden, Connecticut.

n.      Plaintiff Josephine Neal is a resident of Connecticut with an address at 513
        Newhall Street, Hamden, Connecticut.

o.      Plaintiff Collin Rouse is a resident of Connecticut with an address at 18
        Marlboro Street, Hamden, Connecticut.

p.      Plaintiffs Clifford Senior and Adrienne Rouse-Senior are residents of
        Connecticut with an address at 26 Marlboro Street, Hamden, Connecticut.

q.      Plaintiffs Raymond Sims, Sr. and Ellecia R. Sims are residents of
        Connecticut with an address at 478 Newhall Street, Hamden, Connecticut.

r.      Plaintiff Marc Perry is a resident of Connecticut with an address at 46
        Wadsworth Street, Hamden, Connecticut.

s.      Plaintiffs William C. and Venus D. Walker are residents of Connecticut
        with an address at 618 Newhall Street, Hamden, Connecticut.

t.    Plaintiffs Morris and Mary Draughn are residents of Connecticut with an address at 25 Marlboro Street, Hamden, Connecticut.

u.    Plaintiff Carolyn Smith is a resident of Connecticut with an address at 14 St. Mary Street, Hamden, Connecticut.

v.    Plaintiff Elizabeth Hayes is a resident of Connecticut with an address at 357 Mill Rock Road, Hamden, Connecticut.

w.    Plaintiff Abdul Hamid is a resident of Connecticut with an address at 331 Augur Street, Hamden, Connecticut.

x.    Plaintiff Murline Wellesley is a resident of Connecticut with an address at 650 Newhall Street, Hamden, Connecticut.

y.    Plaintiff Eugalyn Wilson is a resident of Connecticut with an address at 132-134 Shepard Street, Hamden, Connecticut.

z.    Plaintiff Charlene P. Webb is a resident of Connecticut with an address at 1042 Winchester Ave., Hamden, Connecticut.

aa.    Plaintiff Elias Rochester is a resident of Connecticut with an address at 311 Morse Street, Hamden, Connecticut.

bb.    Plaintiff Marus Walters is a resident of Connecticut with an address at 136 Bryden Terrance, Hamden, Connecticut.

4.    Defendant Olin Corporation ("Olin") is a corporation organized under the laws of the State of Virginia, with a principal place of business in, Norwalk, Connecticut.

5.    At all relevant times, Olin conducted business in New Haven, Connecticut and Hamden, Connecticut.

6.    Defendant Town of Hamden is a municipal corporation authorized by the State of Connecticut with an address at 2372 Whitney Avenue, Hamden, Connecticut.

## OLIN CORPORATION'S HISTORY OF CONTAMINATION

7.      Olin is the successor in interest to Winchester Repeating Arms Company ("Winchester").

8.      Winchester was founded in New Haven, Connecticut in 1866 and was in the business of small arms and ammunition manufacturing.

9.      By 1872, the Winchester factory had grown until it covered an area of two acres and stepped into the manufacture of metallic cartridges.

10.     Winchester's business grew steadily and the New Haven plant expanded to cover over 80 acres of ground.

11.     In or around World War I, Winchester had expanded its activities to include the manufacture of tools as well as firearms and ammunition.

12.     Around 1919, Winchester expanded into other areas of manufacture and product distribution, going so far as to come close to having "retail" stores, putting the well known Winchester brand on everything from tools and sporting goods to house wares, such as batteries and refrigerators, and hardware items.

13.     In 1922, Winchester merged with Simmons Hardware Company. The new company was known as the Winchester-Simmons Company.

14.     In March 1929, the Simmons Hardware Company announced that it was reverting to its original status and the Winchester name would no longer appear in conjunction with Simmons Hardware.

15.    In 1892, Franklin W. Olin founded the Equitable Powder Company in Illinois. Equitable Powder Company is a predecessor of Olin and supplied blasting powder to Midwestern coal fields.

16.    In 1898, Equitable Powder Company expanded into small arms ammunition and Western Cartridge Company was formed.

17.    Western Cartridge Company is a predecessor of Olin.

18.    By 1931, Winchester was in bankruptcy, the assets were sold out of receivership and were subsequently purchased by John M. Olin's Western Cartridge Company.

19.    After the purchase of Winchester, Olin, d/b/a Western Cartridge Company (hereinafter "Olin") continued the operations of Winchester at a level sufficient to constitute a substantial continuity of business for liability purposes, including, upon information and belief:

        a)    Olin retained use of the Winchester name on all products manufactured and sold from the Winchester New Haven, Connecticut Plant ("Winchester Plant"), including utilizing the Winchester insignia on the products themselves. On its website, Olin, when describing its "Winchester Ammunition" business line, states that Winchester, founded in 1866, is one of the world's most widely recognized and respected brand names for ammunition;

        b)    Olin continued to use the Winchester cartridge packaging; for example, the blue and white Staynless Boxes containing red Winchester lettering across the top of the box remained unchanged from 1928 until 1937, except for the addition of the words "Non-Mercuric" in 1932;

c)      Olin's Western Cartridge plant was located in East Alton, Illinois. After the purchase of Winchester, Olin used the multi-acre Winchester Plant located in New Haven, Connecticut for manufacturing and production of the Winchester products;

d)      After the purchase of Winchester, Olin used the then existing inventories in its production and manufacturing at the former Winchester facilities in New Haven, Connecticut;

e)      Olin obtained all of the patents previously issued to Winchester and had the right to continue manufacturing under these patents;

f)      While in receivership, it was understood that one of the most important assets of Winchester was the design staff, including it's head, T.C. Johnson, who had been with Winchester over 50 years. To maintain this asset, the receiver continued the employment of Mr. Johnson and his staff. Mr. Johnson and his staff continued on in this capacity when Olin purchased Winchester's assets from the receiver;

g)      Olin proceeded with the manufacture of a stored-up accumulation of new gun models and ideas which had been developed by Mr. Johnson prior to its sale to Olin in 1931, including, for example, the hammerless .22 caliber slide-action repeater.

h)      Olin produced and distributed products which had been in existence prior to its purchase of Winchester, some which were unchanged after the purchase, for example the Model 21 double-barrel shotgun which was first introduced in the market on January 2, 1931, prior to Olin's purchase of Winchester. Due to meager advertising by Winchester, this model

had not sold well and Olin increased production and marketed the model, and continued in manufacture and distribution for many years;

i)    Olin produced and distributed Winchester products, all bearing the Winchester name, which were modified slightly and/or updated by Olin after its purchase of Winchester. For example:

1.    due to the then existing competition for 22 caliber rifles, Olin modified the stock, forearm design and mechanism for the Model 90 slide-action .22 hammer repeater and the rifle was introduced as the Model 62 in June 1932;

2.    the Model 1894 rifle was revised in 1925 by Winchester as the Winchester Model 55, and it was modified subsequently by Olin in 1933 as the Model 64; and

3.    the Model 54 was first announced by Winchester in 1925. Additional calibers were added to this product and in January 1937, the Winchester Model 70, manufactured and distributed by Olin, superseded the original Winchester Model 54;

j)    After the purchase of Winchester, Olin, having an office only in Illinois, served Winchester's customer base, utilizing the good will associated with the name Winchester;

k)    there was a continuity of general business operations, concomitant with Olin's utilization of the manufacturing and production plants of Winchester located in New Haven, Connecticut;

l)    During the receivership, Winchester employees had been retained to continue the operations of the company. After Winchester's purchase by Olin, these employees

and supervisors, including Mr. Johnson above, continued their employment under the corporate name of Olin for the production of Winchester products;

m)    there was a continuity of the assets from the old Winchester to the new Winchester/Olin; and

n)    After Olin's purchase of Winchester, Olin continued the production of other Winchester products, including, for example, the production of batteries bearing the Winchester name.

## DISPOSAL OF WASTES BY OLIN CORPORATION
## AND ITS PREDECESSORS

20.     Historically and continuing well into the mid to late 1900's, the State of Connecticut attempted to eliminate wetlands and low lying areas by encouraging the filling of wetlands and low lying areas.

21.     As early as 1915, Hamden solicited owners of properties containing wetlands and low lying areas to allow refuse to be dumped onto their properties. Hamden would operate dumps on these properties and when filled, the properties would be developed by their owners.

22.     Some time prior to 1917, Hamden established dumps in Hamden in the area bounded to the east and west by Wadsworth Street and St. Mary's Street and bounded to the north and south by Mill Rock Road and Goodrich Street. (this area is collectively referred to as "Newhall Section"). For a detailed delineation of the Newhall Section, please see Consent Order by and between the State of Connecticut v. Town of Hamden, South Central Connecticut Regional Water Authority, State Board of Education and Olin Corporation, Order No. SRD-128 ("Consent Order") and the map from the consent order which is affixed hereto as Exhibit A.

23.     Upon information and belief, Winchester began disposing of its industrial waste and ash at the Newhall Section in approximately 1915.

24.     Winchester and/or its successor, Olin, continued to dump ash and other industrial waste in Hamden run disposal facilities, and specifically at the Newhall Section, until its closure.

25.     Beginning in approximately 1915, portions of the privately owned property used by Hamden for disposal were developed into residential properties.

12

26.     Olin was aware that after each dump in the Newhall Section was closed for disposal, residential structures were constructed on the former dump sites.

## INVESTIGATIONS OF CONTAMINANTS
## BURIED IN THE NEWHALL STREET RESIDENTIAL NEIGHBORHOOD

27.     During the year 2000 and early 2001 the United States Environmental Protection Agency (USEPA) conducted studies that confirmed that chemicals and wastes from historical firearm and ammunition manufacturing operations had been disposed in former wetland areas bordering on residential areas in and around the Newhall Section of Hamden.

28.     Due to additional evidence that these filling activities had occurred in the Newhall Section which now serve as residential neighborhoods, the USEPA agreed to study these residential areas for the presence of contamination.

29.     In or about April 2001 the USEPA conducted surficial soil sampling on 76 private properties in the Newhall Street Neighborhood Area and analyzed these samples for a variety of organic and inorganic contaminants including but not limited to lead, arsenic, semi-volatile organic compounds (SVOCs) and polycyclic aromatic hydrocarbons (PAHs).

30.     Over 25% of these samples contained lead concentrations which exceeded acceptable state standards for residential property soils.

31.     Approximately 10% of the collected samples exceeded the "action level" developed by USEPA and the Connecticut Department of Environmental Protection ("CTDEP"); according to the CTDEP this concentration presents a threat of elevated lead levels in blood of children and/or adults which can lead to a variety of physical and cognitive impairments.

32.    Results of these analyses were sent to various individual property owners by letter dated May 29, 2001 or thereafter.

33.    USEPA carried out a "time-critical removal action" at 13 residential properties known to exceed the action level, removing soil down to 18 inches or greater and replacing it with clean fill.

34.    Materials uncovered during the excavation program included a number of waste materials including industrial materials related to firearms, ammunition and battery production.

35.    CTDEP sampled soils beneath the excavated layers on these residential surficial and collected deeper soil samples at over 20 additional properties which demonstrated widespread contamination and filling of industrial wastes throughout the area.

36.    A large number of the residential properties in the Newhall Section remain uncharacterized with no information concerning the nature or extent of waste or contamination in surficial and subsurface soils or groundwater, and the risks associated with that contamination.

37.    Elevated concentrations of these various hazardous constituents may lead to a variety of physical and cognitive ailments including nervous system dysfunction, renal problems, cancer and/or a variety of other deleterious conditions.

38.    In or about December 2002 consultants for Olin reported that analyses of this fill in the Newhall Section indicate the presence of elevated concentrations of metals in residential site soil (principally arsenic and lead), PAHs, and that groundwater quality and deeper soil deposits are largely uncharacterized.

## FACTS RELATING TO NAMED PLAINTIFFS

39.    Plaintiffs Clarence R. Collins, Jr., Jennifer and Patrick Dontfraid, Donna Lee Johnson, Leonardo Melendez and Valerie Lassiter, Sonia Powell, Dorothy Williams, Matthew and Phyllis Abraham, Henry L. Blue, Janie Clemons, Gwendolyn L. Coppage, Louis Craig, Ruth B. Eaton, William and Maxine Jones, Josephine Neal, Collin Rouse, Clifford Senior and Adrienne Rouse-Senior, Raymond Sims Sr. and Ellecia R. Sims, Marc Perry, William C. and Venus D. Walker, Morris and Mary Draughn, Carolyn Smith, Elizabeth Hayes, Abdul Hamid, Murline Wellesley, Eugalyn Wilson, Charlene P. Webb, Elias Rochester and Marus Walters are current and/or past owners of property contained within the Newhall Section.

       a.      Plaintiff Clarence R. Collins, Jr. is owner of property located at 112 Bryden Terrace, Hamden, Connecticut.

       b.      Plaintiffs Jennifer and Patrick Dontfraid are owners of property located at 22 & 28 St. Mary Street, Hamden, Connecticut.

       c.      Plaintiff Donna Lee Johnson is owner of property located at 1071 Winchester Avenue, Hamden, Connecticut.

       d.      Plaintiffs Leonardo Melendez and Valerie Lassiter are owners of property located at 334 Auger Street, Hamden, Connecticut.

       e.      Plaintiff Sonia Powell is owner of property located at 137 - 139 Shepard Street, Hamden, Connecticut.

       f.      Plaintiff Dorothy Williams is owner of property located at 1067 Winchester Avenue, Hamden, Connecticut.

g.      Plaintiffs Matthew and Phyllis Abraham are owners of property located at 39 St. Mary Street, Hamden, Connecticut.

h.      Plaintiff Henry L. Blue is the owner of the property located at 472 Shelton Avenue, Hamden, Connecticut.

i.      Plaintiff Janie Clemons is the owner of the property located at 90 Bryden Terrace, Hamden, Connecticut.

j.      Plaintiff Gwendolyn L. Coppage is the owner of the property located at 610 Newhall Street, Hamden, Connecticut.

k.      Plaintiff Louise Craig is the owner of the property located at 507 Newhall Street, Hamden, Connecticut.

l.      Plaintiff Ruth B. Eaton is the owner of the property located at 499 Newhall Street, Hamden, Connecticut.

m.      Plaintiffs William and Maxine Jones are owners of the property located at 1030 Winchester Avenue, Hamden, Connecticut.

n.      Plaintiff Josephine Neal is the owner of the property located at 513 Newhall Street, Hamden, Connecticut.

o.      Plaintiff Collin Rouse is the owner of the property located at 18 Marlboro Street, Hamden, Connecticut.

p.      Plaintiffs Clifford Senior and Adrienne Rouse-Senior are owners of the property located at 26 Marlboro Street, Hamden, Connecticut.

q.  Plaintiffs Raymond Sims, Sr. and Ellecia R. Sims are owners of the property located at 478 Newhall Street, Hamden, Connecticut.

r.  Plaintiff Marc Perry is the owner of the property located at 46 Wadsworth Street, Hamden, Connecticut.

s.  Plaintiffs William C. and Venus D. Walker are the owners of the property located at 618 Newhall Street, Hamden, Connecticut.

t.  Plaintiffs Morris and Mary Draughn are the owners of the property located at 25 Marlboro Street, Hamden, Connecticut.

u.  Plaintiff Carolyn Smith is the owner of the property located at 14 St. Mary Street, Hamden, Connecticut.

v.  Plaintiff Elizabeth Hayes is the owner of the property located at 357 Mill Rock Road, Hamden, Connecticut.

w.  Plaintiff Abdul Hamid is the owner of the property located at 331 Augur Street, Hamden, Connecticut.

x.  Plaintiff Murline Wellesley is the owner of the property located at 650 Newhall Street, Hamden, Connecticut.

y.  Plaintiff Eugalyn Wilson is the owner of the property located at 132-134 Shepard Street, Hamden, Connecticut.

z.  Plaintiff Charlene P. Webb is the owner of the property located at 1042 Winchester Ave., Hamden, Connecticut.

aa.    Plaintiff Elias Rochester is the owner of the property located at 311 Morse

Street, Hamden, Connecticut.

bb.    Plaintiff Marus Walters is the owner of the property located at 136 Bryden

Terrace, Hamden, Connecticut.

## THE PLAINTIFFS' CLASS ALLEGATIONS

40.     The plaintiffs bring this action as a class action pursuant to Sections 9-7 and 9-8 of the Connecticut Practice Book.

41.     The Class is made up of all persons (individual and corporate) who own real property in Hamden in the area referred to as the Newhall Section:

Newhall Street
Mill Rock Road
Harris Street
Remington Street
Augur Street
Morse Street
St. Mary Street
Shelton Ave.
Edwards Street
Butler Street
Marlboro Street
Shepard Street
Goodrich Street
Winchester Ave.
Newbury Street
North Sheffield Street
Wadsworth Street
Bryden Terrace

42.     The plaintiffs also seek to represent a Class consisting of all persons who own properties within the boundaries of the Site as defined in the Consent Order, whether or not their properties have been tested for the presence of contamination.

43.     The Class is so numerous that joinder of all members is impracticable.  The Class consists of more than 300 properties.

44.     The plaintiffs' claims are typical of the claims of the other members of the Class in that they, like all members of the Class, have suffered a diminution in the value of their property and severe emotional distress as a result of Olin's and Hamden's actions. The plaintiffs' claims are typical of the claims of the other members of the Class as they represent both properties that have been tested and found to be contaminated to varying degrees, including where time critical removal actions have occurred, and properties within the boundaries of the former landfill sites that Olin and/or Hamden to date have failed to test for the presence of contaminants.

45.     The plaintiffs will fairly and adequately protect the interests of the other members of the Class  and have retained counsel competent and experienced in environmental law.

46.     Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting solely individual members of the Class.  Among the common questions of law and fact are:

a.     Whether Olin's and Hamden's actions have caused a diminution in the value of the properties of the members of the Class;

b.     Whether Olin and Hamden owe a duty to the members of the Class to test their properties for the presence of contaminants or to reimburse them for the cost of testing;

c.     Whether the defendants have violated the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), Conn. Gen. Stat.

ch. 446k, et seq., or their common law obligations to the members of the Class;

d. Whether Olin and Hamden have interfered with the use and enjoyment of the properties of the members of the Class;

e. Whether Olin's and Hamden's actions have caused emotional distress to the members of the Class; and

f. Whether the members of the Class are entitled to an award of damages, response costs, injunctive relief, damages, and reimbursement of attorneys' fees and costs.

47. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and there will be no difficulty in the management of this litigation which will preclude its maintenance as a class action.

## COUNT I – Negligence
(as to Olin Corporation)

48.    Each of the allegations contained in Paragraphs 1 through 47 is incorporated herein by reference.

49.    Olin negligently disposed of and/or released hazardous substances in the Newhall Section of Hamden over the course of many years, negligently disposed of hazardous substances that have contaminated the soil and ground water flowing under the Newhall Section, knowing that the areas where dumping occurred would be used for residential development, and negligently failed for decades to warn residents of the Newhall Section of the hazards it had created.

50.    By its negligent acts and omissions described above, Olin has breached its duties to the plaintiffs and the Class.

51.    As a proximate result of Olin's negligent acts and omissions, the plaintiffs and the members of the Class have suffered damages, including damage to the value of their homes and properties, loss of use and enjoyment of their properties and severe emotional distress.

52.    Olin is liable for all direct and consequential damages suffered by the plaintiffs and the Class as a result of its negligent acts and omissions.

### COUNT II – Negligence
(as to Town of Hamden)

53.     Each of the allegations contained in Paragraphs 1 through 52 is incorporated herein by reference.

54.     Hamden negligently disposed of and/or released hazardous substances in the Newhall Section of Hamden over the course of many years, by:

    a.    operating landfills, knowing that the areas where dumping occurred would be used for residential development;

    b.    encouraging private property owners to operate landfills and accept Olin's industrial waste including hazardous substances and arranging for the disposal of Olin's industrial waste, resulting in the contamination of the soil and ground water flowing under the Newhall Section, knowing that the areas where dumping occurred would be used for residential development;

    c.    issuing building permits and certificates of occupancy for houses constructed on the former dumps when it knew or should have known that the Olin wastes placed in the former dumps were not suitable for the construction of residential properties; and

    d.    failing for decades to warn residents of the Newhall Section of the hazards it had created.

55.     By its negligent acts and omissions described above, Hamden has breached its duties to the plaintiffs and the Class.

56.     As a proximate result of Hamden's negligent acts and omissions, the plaintiffs and the members of the Class have suffered damages, including damage to the value of their homes and properties, loss of use and enjoyment of their properties and severe emotional distress.

57.     Hamden is liable for all direct and consequential damages suffered by the plaintiffs and the Class as a result of its negligent acts and omissions.

## COUNT III - Gross Negligence/Reckless Conduct
(as to Olin Corporation)

58. Each of the allegations contained in Paragraphs 1 through 57 is incorporated herein by reference.

59. Olin disposed of and/or released hazardous substances in the Newhall Section of Hamden over the course of many years, that has resulted in the contamination of the soil and ground water flowing under the Newhall Section, and failed to warn residents of the Newhall Section of the hazards it had created, all in a willful, wanton and reckless manner.

60. By its willful, wanton and reckless acts and omissions described above, Olin has breached its duties to the plaintiffs and the Class.

61. As a proximate result of Olin's willful, wanton and reckless acts and omissions, the plaintiffs and the members of the Class have suffered damages, including damage to the value of their homes and properties, loss of the use and enjoyment of their properties and severe emotional distress.

62. Olin is liable for all direct and consequential damages suffered by the plaintiffs and the Class as a result of its willful, wanton and reckless acts and omissions.

## COUNT IV - Gross Negligence/Reckless Conduct
(as to Town of Hamden)

63.    Each of the allegations contained in Paragraphs 1 through 62 is incorporated herein by reference.

64.    Hamden disposed of and/or released hazardous substances in the Newhall Section of Hamden over the course of many years, that has resulted in the contamination of the soil and ground water flowing under the Newhall Section, and failed to warn residents of the Newhall Section of the hazards it had created, all in a willful, wanton and reckless manner, and in disregard for health or safety.

65.    By its willful, wanton and reckless acts and omissions described above, Hamden has breached its duties to the plaintiffs and the Class.

66.    As a proximate result of Hamden's willful, wanton and reckless acts, the plaintiffs and the members of the Class have suffered damages, including damage to the value of their homes and properties, loss of the use and enjoyment of their properties and severe emotional distress.

67.    Hamden is liable for all direct and consequential damages suffered by the plaintiffs and the Class as a result of its willful, wanton and reckless acts.

### COUNT V - Violation of the Environmental Protection Act of 1971
(as to Olin Corporation)

68.     Each of the allegations contained in Paragraphs 1 through 67 is incorporated herein by reference.

69.     Olin disposed of and/or released hazardous substances in the Newhall Section of Hamden over the course of many years, which has resulted in the contamination and/or the threat of contamination to the ground water flowing under the Newhall Section and other natural resources.  Pursuant to Conn. Gen. Stat. §22a-15, the ground water and other natural resources are held in public trust and Conn. Gen. Stat. §22a-16 protects these resources from unreasonable pollution, impairment or destruction.

70.     The plaintiffs and the Class are entitled to a preliminary injunction and a permanent mandatory injunction pursuant to Conn. Gen. Stat. § 22a-18 ordering Olin to perform any and all response actions on an expedited basis that are necessary to protect and restore the ground water quality and other natural resources that have been or are threatened to be adversely impacted by Olin's disposal of hazardous substances in the Newhall Section of Hamden.

## COUNT VI - Violation of the Environmental Protection Act of 1971
(as to Town of Hamden)

71.     Each of the allegations contained in Paragraphs 1 through 70 is incorporated herein by reference.

72.     Hamden disposed of and/or released, and/or arranged for the disposal or release of hazardous substances in the Newhall Section of Hamden over the course of many years, which has resulted in the contamination and/or the threat of contamination to the ground water flowing under the Newhall Section and other natural resources. Pursuant to Conn. Gen. Stat. §22a-15, the ground water and other natural resources are held in public trust and Conn. Gen. Stat. §22a-16 protects these resources from unreasonable pollution, impairment or destruction.

73.     The plaintiffs and the Class are entitled to a preliminary injunction and a permanent mandatory injunction pursuant to Conn. Gen. Stat. § 22a-18 ordering Hamden to perform any and all response actions on an expedited basis that are necessary to protect and restore the ground water quality and other natural resources that have been or are threatened to be adversely impacted by Hamden's disposal of or arranging for the disposal of hazardous substances in the Newhall Section of Hamden.

## COUNT VII - Negligence Per Se
(as to Olin Corporation)

74.     Each of the allegations contained in Paragraphs 1 through 73 is incorporated herein by reference.

75.     Olin disposed of and/or released hazardous substances in the Newhall Section of Hamden over the course of many years, that has resulted in the contamination of the soil and ground water flowing under the Newhall Section, and failed to warn residents of the Newhall Section of the hazards it had created.

76.     Olin's actions and omissions constitute negligence per se, including the breach of the standard of care set forth in Conn. Gen. Stat. §§ 22a-15, 22a-16 and 22a-427, and as a result, plaintiffs and the members of the Class have suffered damages, including damage to the value of their homes and properties, loss of the use and enjoyment of their properties and severe emotional distress.

77.     Olin is liable for all direct and consequential damages suffered by the plaintiffs and the Class as a result of its per se negligence.

## COUNT VIII - Negligence Per Se
(as to Town of Hamden)

78.     Each of the allegations contained in Paragraphs 1 through 77 is incorporated herein by reference.

79.     Hamden disposed of and/or released hazardous substances in the Newhall Section of Hamden over the course of many years, that has resulted in the contamination of the soil and ground water flowing under the Newhall Section, and failed to warn residents of the Newhall Section of the hazards it had created.

80.     Hamden's actions and omissions constitute negligence per se, including the breach of the standard of care set forth in Conn. Gen. Stat. §§ 22a-15, 22a-16 and 22a-427, and as a result, plaintiffs and the members of the Class have suffered damages, including damage to the value of their homes and properties, loss of the use and enjoyment of their properties and severe emotional distress.

81.     Hamden is liable for all direct and consequential damages suffered by the plaintiffs and the Class as a result of its per se negligence.

## COUNT IX - Abnormally Dangerous Activity/Strict Liability
(as to Olin Corporation)

82.　Each of the allegations contained in Paragraphs 1 through 81 is incorporated herein by reference.

83.　Olin engaged in an abnormally dangerous activity when it handled, disposed of and/or released hazardous substances in its possession, custody and control.

84.　Olin knew, or should have known, that there was a high degree of risk associated with the handling, disposal and/or release of hazardous substances, including a risk of harm to the plaintiffs and the Class.

85.　As a proximate result of Olin's abnormally hazardous activity, the plaintiffs and the Class have suffered damages.

86.　Olin is liable for all harm to the plaintiffs and the Class resulting from its abnormally hazardous activity, including all direct and consequential damages and all other costs recoverable by law.

## COUNT X - Abnormally Dangerous Activity/Strict Liability
(as to Town of Hamden)

87.    Each of the allegations contained in Paragraphs 1 through 86 is incorporated herein by reference.

88.    Hamden engaged in an abnormally dangerous activity when it handled, disposed of and/or released hazardous substances in its possession, custody and control when it operated landfills in the Newhall section that accepted Olin's industrial waste, and when it facilitated the disposal of Olin's industrial into private dumps in the Newhall Section.

89.    Hamden knew, or should have known, that there was a high degree of risk associated with the handling, disposal and/or release of hazardous substances, particularly where it permitted the construction of houses on each successive dumps as it was filled, including a risk of harm to the plaintiffs and the Class.

90.    As a proximate result of Hamden's abnormally hazardous activity, the plaintiffs and the Class have suffered damages.

91.    Hamden is liable for all harm to the plaintiffs and the Class resulting from its abnormally hazardous activity, including all direct and consequential damages and all other costs recoverable by law.

## COUNT XI - Infliction of Emotional Distress
(as to Olin Corporation)

92.     Each of the allegations contained in Paragraphs 1 through 91 is incorporated herein by reference.

93.     The actions and omissions of Olin described above represent conduct that is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.

94.     Olin knew or was reckless in not knowing that its actions and omissions would inflict emotional distress on the plaintiffs and the members of the Class.

95.     Olin's actions and omissions have in fact inflicted severe emotional distress on the plaintiffs and the members of the Class, and Olin is liable to the plaintiffs and the members of the Class for all resulting damages.

## COUNT XII - Infliction of Emotional Distress
### (as to Town of Hamden)

96.    Each of the allegations contained in Paragraphs 1 through 95 is incorporated herein by reference.

97.    The actions and omissions of Hamden described above represent conduct that is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.

98.    Hamden knew or was reckless in not knowing that its actions and omissions would inflict emotional distress on the plaintiffs and the members of the Class.

99.    Hamden's actions and omissions have in fact inflicted severe emotional distress on the plaintiffs and the members of the Class, and Hamden is liable to the plaintiffs and the members of the Class for all resulting damages.

## COUNT XIII - Recovery Under Conn. Gen. Stat. § 22a-452
(as to Olin Corporation)

100.    Each of the allegations contained in Paragraphs 1 through 99 is incorporated herein by reference.

101.    Olin is the owner and operator of a site from which there has been a disposal and release of materials defined as hazardous waste under Conn. Gen. Stat. §22a-115(1), or is otherwise legally responsible for the releases from the site.

102.    Olin, directly or indirectly, also arranged for the transport and disposal of hazardous wastes from its site to the Newhall Section of Hamden.

103.    The plaintiffs and the Class have incurred damage as a result of Olin's disposal, release and threat of release of hazardous material and/or other action, and Olin is liable for all such damages incurred by the plaintiffs and the Class.

## COUNT XIV – Nuisance
(as to Olin Corporation)

104.    Each of the allegations contained in Paragraphs 1 through 103 is incorporated herein by reference.

105.    Olin, by its handling, disposal and release of hazardous substances, including metals, oil and PAH containing soil, has interfered unreasonably with a common right of the plaintiffs and the Class to enjoy their properties and has created a public and private nuisance.

106.    As a proximate result of the nuisance created by Olin, the plaintiffs and the Class have suffered damages, and Olin is liable for all such damages suffered by the plaintiffs and the Class.

107.    The plaintiffs and the Class are entitled to a preliminary injunction and a permanent mandatory injunction protecting them from the nuisance Olin has created, including in particular an order requiring Olin to test their properties for the presence of hazardous substances on an expedited testing program and remediation of the contaminants.

## COUNT XV – Nuisance
(as to Town of Hamden)

108.    Each of the allegations contained in Paragraphs 1 through 107 is incorporated herein by reference.

109.    Hamden, by its handling, disposal and release of hazardous substances, including metals, oil and PAH containing soil, has interfered unreasonably with a common right of the plaintiffs and the Class to enjoy their properties and has created a public and private nuisance.

110.    As a proximate result of the nuisance created by Hamden, the plaintiffs and the Class have suffered damages, and Hamden is liable for all such damages suffered by the plaintiffs and the Class.

111.    The plaintiffs and the Class are entitled to a preliminary injunction and a permanent mandatory injunction protecting them from the nuisance Hamden has created, including in particular an order requiring Hamden to test their properties for the presence of the contaminants.

### COUNT XVI - Recovery of Response Costs Under
### CERCLA §107 42 U.S.C. § 9607
(as to Olin Corporation)

112.    Each of the allegations contained in Paragraphs 1 through 111 is incorporated herein by reference.

113.    Olin is the owner of a facility from which hazardous substances were released, and Olin arranged for the transportation and/or disposal of hazardous substances.

114.    Olin disposed of substances defined as hazardous substances under 42 U.S.C. § 9601(14) and 40 CFR Part 302.4 in the Newhall Section of Hamden and such substances have contaminated the soil and ground water in the Newhall Section at levels exceeding maximum allowable contaminant levels.

115.    The plaintiffs and members of the Class are required to incur necessary response costs, consistent with the national contingency plan, including costs entailed in testing their properties for the presence of hazardous substances.

116.    Olin is liable to the plaintiffs and the members of the Class for the amount of the response costs required to be incurred by the plaintiffs and the members of the Class in testing their properties for the presence of hazardous substances.

<u>COUNT XVII - Recovery of Response Costs Under</u>
<u>CERCLA §107 42 U.S.C. § 9607</u>
(as to Town of Hamden)

117.    Each of the allegations contained in Paragraphs 1 through 116 is incorporated herein by reference.

118.    Hamden is the former owner of a facility from which hazardous substances were released, and Hamden arranged for the transportation and/or disposal of hazardous substances.

119.    Hamden disposed of substances defined as hazardous substances under 42 U.S.C. § 9601(14) and 40 CFR Part 302.4 in the Newhall Section of Hamden and such substances have contaminated the soil and ground water in the Newhall Section at levels exceeding maximum allowable contaminant levels.

120.    The plaintiffs and members of the Class are required to incur necessary response costs, consistent with the national contingency plan, including costs entailed in testing their properties for the presence of hazardous substances.

121.    Hamden is liable to the plaintiffs and the members of the Class for the amount of the response costs required to be incurred by the plaintiffs and the members of the Class in testing their properties for the presence of hazardous substances.

## REQUESTS FOR RELIEF

WHEREFORE, the Plaintiffs and the Class request the following relief:

A.     A preliminary injunction and a permanent mandatory injunction requiring Olin and Hamden to conduct, on an expedited basis, any and all response actions necessary to investigate and/or remediate the releases or threats of releases to the soil ground water and other natural resources in the Newhall Section of Hamden;

B.     An award of response costs to the Plaintiffs and those members of the Class who have or do incur response costs to investigate or remediate release of hazardous substances on their properties or to protect the ground water and/or other natural resources in the Newhall Section of Hamden;

C.     An award of all direct and consequential damages incurred by the Plaintiffs and the members of the Class as a result of Olin's and Hamden's negligence; creation of a nuisance; ultrahazardous activity; willful, wanton and reckless conduct; and infliction of emotional distress;

D.     An award to the Plaintiffs and the Class of all costs of litigation, including attorneys' fees and expert witness fees;

E.     An award of common law punitive damages.

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed First Class, postage prepaid, on this 28th day of May, 2003, to the following:

**Olin Corporation**:

c/o CT Corporation System
One Commercial Plaza
Hartford  06103,
*its Agent for Service*

**The Town of Hamden**:

Ann Catino
Halloran & Sage LLP
225 Asylum Street
Hartford, CT 06103-4303

_____
Monte Frank