IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARENCE R. COLLINS, JR., et al. for themselves and on behalf of a class of similarly situated property owners,<br>　　　　　　Plaintiffs,<br>v.<br><br>OLIN CORPORATION and THE TOWN OF HAMDEN,<br>　　　　　　Defendants. | :　CIVIL ACTION NO.<br>:　3:03-CV-945(CFD)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:　MARCH 9, 2004 |

## MOTION TO COMPEL DISCOVERY

The plaintiffs in the above-captioned case hereby move pursuant to Fed.R.Civ.P. 37(a) for an order to compel defendant Olin Corporation (hereinafter "Olin") to provide reasonable responses to Interrogatories nos. 1, 4, 5, 6, 7, 8, 11, 12, 13, 15, 17, 18, 19, 22, 24, 26, 27, Requests for Documents nos. 1, 2, 6, 7, 8, 9, 10, 14, 15, 16, 17 and Requests for Admissions nos. 15, 16, 17, 45, 46, 52, 53, 55, 56, 57, 58, 59, 60, 61, 70, 71, 73, 74, 75, 82, 83, 84, 86, 87, and 88 concerning the issue of Olin's liability as a successor in interest to the Winchester Repeating Arms Company (hereinafter "Winchester"). The grounds are set forth in the supporting memorandum of law.

　　　　　　　　　　　　　　THE PLAINTIFFS,

　　　　　　　　　　　　　　By_____
　　　　　　　　　　　　　　Neil T. Leifer, Esq. ct25262
　　　　　　　　　　　　　　nleifer@tenlaw.com
　　　　　　　　　　　　　　David C. Strouss, Esq.
　　　　　　　　　　　　　　dstrouss@tenlaw.com
　　　　　　　　　　　　　　Thornton & Naumes L.L.P
　　　　　　　　　　　　　　100 Summer Street, 30th Floor
　　　　　　　　　　　　　　Boston, Massachusetts 02110
　　　　　　　　　　　　　　Tele: (617) 720-1333
　　　　　　　　　　　　　　Fax: (617) 720-2445

Oral Argument Requested

David B. Zabel, Esq. ct01382
dzabel@cohenandwolf.com
Monte E. Frank, Esq. ct13666
mfrank@cohenandwolf.com
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, Connecticut 06604
Tele: (203) 368-0211
Fax:  (203) 394-9901


Mark Roberts, Esq.
mroberts@mcrobertsandroberts.com
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, Massachusetts 02114
Tele: (617) 722-8222
Fax:  (617) 720-2320


**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other by mail/hand or
*Fed Ex and First Class mail*
*Neil Leifer*

Oral Argument Requested

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARENCE R. COLLINS, JR., et al. for themselves and on behalf of a class of similarly situated property owners,<br>　　　　　　　　Plaintiffs,<br>v.<br><br>OLIN CORPORATION and THE TOWN OF HAMDEN,<br>　　　　　　　　Defendants. | CIVIL ACTION NO.<br>3:03-CV-945(CFD)<br><br><br><br><br><br><br><br>MARCH 9, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL**

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), the plaintiffs' respectfully move to compel defendant Olin Corporation (hereinafter "Olin") to provide complete and responsive discovery on the issue of successor liability.

**I. Introduction**

This is a civil action brought by residents of the Newhall section of Hamden, Connecticut arising from the contamination of their residential homes. As set forth in the Complaint, plaintiffs' homes are contaminated with various toxins that were generated by Olin and its predecessor, Winchester, at a manufacturing plant in New Haven and then dumped by Olin and its predecessor onto properties that were then developed for residential properties. The dumping and development occurred continuously from the early 1900s through the mid to late 1900s.

As set forth in the Complaint, plaintiffs allege that Olin became the legal successor to Winchester in 1931 and therefore has assumed any liabilities that Winchester had incurred as a result of its activities in Hamden. Olin has denied that it is the legal

Oral Argument Requested

1

successor to Winchester or that it assumed any of Winchester's liabilities when it acquired the assets of Winchester in 1931. Thus, a critical issue in this case is whether Olin is the legal successor to Winchester.

Early in this proceeding, Olin indicated that it would move for summary judgment on the issue of successor liability. In order to present the motion to the court on a full record, the parties agreed to conduct discovery concerning this issue. In November, 2003, plaintiffs served Olin with discovery requests relevant to that issue. (*See* Exhibit A, First Set of Interrogatories, Exhibit B, Request for Production of Documents and Exhibit C, Requests for Admissions). Each of these discovery requests was intended to obtain information relevant to the claim that Olin had succeeded to Winchester's liabilities for its activities in Hamden. In January 2004, counsel for plaintiffs and counsel for Olin conferred regarding Olin's request for additional time to respond to the discovery. At that time, plaintiffs' counsel discussed with Olin's counsel the specific theories upon which the allegation of successor liability is based. They can be characterized as (1) the "mere continuation" exception and (2) the "product line" exception to the rules regarding successor liability. The plaintiffs are seeking discovery on both theories because each can be applied to this case by application or extension of existing law.

**II.     It is for the court, not the defendant, to determine the legal sufficiency of plaintiffs' arguments. Therefore, plaintiffs are entitled to discovery on any matter relevant to the case.**

On February 9, 2004, after three extensions requested by Olin, Olin responded to the discovery requests, but refused to produce virtually any of the documents requested or to respond to virtually any of the interrogatories or request for admissions. (*See* Exhibit

Oral Argument Requested                                                                                                 2

D, Answers and Objections to Plaintiffs' First Set of Interrogatories, Exhibit E, Responses to Plaintiffs' Request for Production of Documents and Exhibit F, Responses to Plaintiffs' Requests for Admissions). Olin refused to provide any discovery pertinent to the "product line" theory of successor liability because it contends that the plaintiffs' claim on that basis is legally insufficient. Olin further refused to provide discovery pertinent to any of the factors bearing on the "mere continuation" exception other than the question of continuity of stockholders. While Olin cites some cases supporting its view that continuity of stockholders is essential to impose successor liability, there are other Connecticut cases which do not. *See Peglar v. Associates, Inc. v. Professional Indemnity Underwriters Corporation,* 2002 WL 1610037 (Conn.Super. June 19, 2002) ([n]ot every indicia [of "mere continuation" test] must be established, however, but the court should apply more of a balancing test"); *see also Water Pollution Control Authority,* 1992 WL 201922 (Conn.Super. Aug. 4, 1992) (absence of continuity of officers or board members was not fatal to establish successor liability against a municipality). Similarly, there is Connecticut law on the application of the product line exception to non product liability cases. *See Piaser v. Cohen,* 1997 WL 435841 (Conn.Super. July 21, 1997) (product line exception applied to a claim related to an employment matter).

The question of which theories of successor liability are applicable in this case is the very issue that is to be decided by the court on summary judgment after the completion of discovery. This motion to compel presents a very simple question: can a party refuse to produce discovery because it contends that the claim to which that discovery is clearly pertinent is legally insufficient? If the answer to that question is

Oral Argument Requested                                                                                         3

"yes," that would completely subvert the process of discovery, which is designed to provide the court with a full record for a determination of summary judgment. If Olin can arrogate to itself, as it has done by refusing to provide discovery, the power to determine what law applies in this case, and what facts are material to that law, then the plaintiffs are prevented from developing a record to show under their interpretation of the law that there are triable facts on the issue of successor liability. That is not Olin's role in this case; Olin is a party, not the judge.

"Parties may obtain discovery regarding *any matter*, not privileged, that is relevant to the claim or defense of any party ..." Fed.R.Civ.P. 26(b)(1). (emphasis added). The plaintiffs have claimed that Olin is the legal successor to Winchester. The plaintiffs have articulated two separate theories of successor liability and are entitled to obtain discovery on any matter that is relevant to them. "In ruling on questions of discovery, typically, courts do not determine the legal sufficiency of claims and defenses." *Chubb Integrated Systems Limited v. National Bank of Washington* 103 F.R.D. 52, 59 (D.D.C. 1984) (overruling objection to discovery based on legal sufficiency of a claim or defense). "The legal sufficiency of a claim or defense is appropriately challenged in a motion to strike, and a defense [or in this case a claim], until stricken is valid." *Id.;* see also *Apel v. Murphy,* 70 F.R.D. 651, 654 (D.R.I. 1976); *Maher v. Monahan,* 2000 WL 777877 (S.D.N.Y.); Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d §2008, Volume 8 ("[d]iscovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient.").

It is for this court, not Olin, to determine the legal sufficiency of plaintiffs' theories on successor liability, and that is precisely what the Case Management Order

Oral Argument Requested                                                                                           4

contemplates the Court will do in ruling on summary judgment <u>after</u> the parties complete discovery on the issue of successor liability. Accordingly, the plaintiffs respectfully request that the court strike Olin's General Objections objecting to producing discovery because it disputes the legal sufficiency of the plaintiffs' theories and order Olin to (a) answer those interrogatories to which it has objected to on the basis of General Objection 3, (b) produce documents which it has refused to produce on the basis of General Objection 3, and (c) respond to requests for admissions objected to on the basis of General Objection 1.[1]

The undersigned certifies pursuant to Fed.R.Civ.P. 37(a)(2)(B) that the undersigned has in good faith attempted to confer with Olin's attorney in an unsuccessful effort to secure the requested information without court action. Copies of correspondence between plaintiffs' and defendant's counsel with regards to this matter are attached. (*See* Exhibit G, plaintiffs' correspondence and Exhibit H, defendant's reply correspondence).

### III. Conclusion

For the reasons set forth above, the Plaintiffs respectfully request that this court grant their motion to compel discovery sought by plaintiffs concerning the issue of Olin's liability as a successor in interest to the Winchester Repeating Arms Company.

---

[1] Interrogatories Nos. 1, 4, 5, 6, 7, 8, 11, 12, 13, 15, 17, 18, 19, 22, 24, 26, and 27.
Responses to Plaintiffs' Request for Production of Documents Nos. 1, 2, 6, 7, 8, 9, 10, 14, 15, 16, and 17.
Responses to Plaintiffs' Requests for Admissions Nos. 15, 16, 17, 45, 46, 52, 53, 55, 56, 57, 58, 59, 60, 61, 70, 71, 73, 74, 75, 82, 83, 84, 86, 87, and 88.

Oral Argument Requested

THE PLAINTIFFS,

By /s/ *signature*
Neil T. Leifer, Esq. ct.25262
nleifer@tenlaw.com
David C. Strouss, Esq.
dstrouss@tenlaw.com
Thornton & Naumes L.L.P
100 Summer Street, 30th Floor
Boston, Massachusetts 02110
Tele: (617) 720-1333
Fax: (617) 720-2445


David B. Zabel, Esq. ct01382
dzabel@cohenandwolf.com
Monte E. Frank, Esq. ct13666
mfrank@cohenandwolf.com
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, Connecticut 06604
Tele: (203) 368-0211
Fax: (203) 394-9901


Mark Roberts, Esq.
mroberts@mcrobertsandroberts.com
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, Massachusetts 02114
Tele: (617) 722-8222
Fax: (617) 720-2320

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other by mail/hand on Fed Ex and First-Class Mail
*/s/ Neil T Leifer*

Oral Argument Requested

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARENCE R. COLLINS, JR., et al. : | CIVIL ACTION NO. |
| for themselves and on behalf of a class : | 3:03-CV-945(CFD) |
| of similarly situated property owners, : | |
|         Plaintiffs, : | |
| v. : | |
|     : | |
| OLIN CORPORATION and THE TOWN OF : | |
| HAMDEN, : | |
|         Defendants. : | MARCH 9, 2004 |

## AFFIDAVIT

The undersigned certifies pursuant to Fed.R.Civ.P. 37(a)(2)(B) that the undersigned has in good faith attempted to confer with Olin's attorney in an unsuccessful effort to secure the requested information without court action. Copies of correspondence between plaintiffs' and defendant's counsel with regards to this matter are attached. (*See* Exhibit G, plaintiffs' correspondence and Exhibit H, defendant's reply correspondence).

THE PLAINTIFFS,

By /s/ Neil Leifer
Neil T. Leifer, Esq. ct25262
nleifer@tenlaw.com
David C. Strouss, Esq.
dstrouss@tenlaw.com
Thornton & Naumes L.L.P
100 Summer Street, 30th Floor
Boston, Massachusetts 02110
Tele: (617) 720-1333
Fax: (617) 720-2445

Oral Argument Requested

David B. Zabel, Esq. ct01382
dzabel@cohenandwolf.com
Monte E. Frank, Esq. ct13666
mfrank@cohenandwolf.com
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, Connecticut 06604
Tele: (203) 368-0211
Fax: (203) 394-9901


Mark Roberts, Esq.
mroberts@mcrobertsandroberts.com
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, Massachusetts 02114
Tele: (617) 722-8222
Fax: (617) 720-2320

Oral Argument Requested

Page 1

2000 WL 777877
(Cite as: 2000 WL 777877 (S.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Stacey G. MAHER et al., Plaintiffs,
v.
Joseph MONAHAN et al., Defendants.

No. 98Civ.2319 (JGK)(MHD).

June 15, 2000.

MEMORANDUM & ORDER

DOLINGER, Magistrate J.

*1 Plaintiff Lloyd Thompson has moved for various forms of discovery from defendants. The focus of his efforts concerns a Police Department investigation of him for purported misconduct while employed as a Police Lieutenant assigned to the Staten Island Command. The specific allegations under investigation were that Thompson, who is an attorney, had violated provisions of the City Charter or Department rules by providing legal services to subordinates in his command and by hiring several of them to do work for him on a private basis. (See Decl. of Asst. Corporation Counsel Paul Aronson, dated May 24, 2000, at ¶¶ 3, 4; Amended/Suplemental Compl. of Lloyd Thompson at ¶¶ 88-94).

Plaintiff seeks a variety of relief on his motion. His initial motion papers sought (1) an order requiring defendants to produce 17 assertedly privileged pages of documents withheld from the investigative file compiled by the Department's Investigation and Evaluation Section (# 122S98), (2) a directive that Lt. Michael Zirpoli, who conducted the investigation, produce his investigative notes, (3) an order requiring Lt. Zirpoli to answer certain deposition questions concerning his discussions with counsel for the Department, (4) a requirement that the Department produce written legal opinions supplied to Lt. Zirpoli concerning the legal criteria governing his investigation of Lt. Thompson, (5) an order that the Department produce a file reflecting its investigation of a complaint by Lt. Thompson that other officers had engaged in conduct comparable to that of which he was accused, and (6) an authorization for plaintiff to depose defendants' trial counsel, Assistant Corporation Counsel Paul Aronson. Defendants have acceded to some of this relief and have resisted other aspects. We briefly address each in turn.

1. *The Withheld Documents from the Investigative File*

Defendants have withheld 17 pages of documents from the file of the investigation of Lt. Thompson on the basis of the attorney-client privilege. We have reviewed two declarations by defendants' counsel (Aronson Decl.; Ex Parte Decl. of Asst. Corporation Counsel Paul Aronson, dated May 24, 2000), an affidavit of Lt. Zirpoli (sworn to May 24, 2000), and the withheld documents (Ex Parte Aronson Decl., Exs. B-M). [FN1] Based on that review we conclude that the documents are in fact properly withheld.

> FN1. One of the attorney declarations was submitted *in camera*, as were the documents attached as exhibits.

All of these documents describe communications between attorneys and Lt. Zirpoli, and all reflect attorney advice, thus placing the communications squarely within the ambit of the privilege. See, e.g., *United States v. Richard Roe, Inc.*, 168 F.3d 69, 72 (2d Cir.1999); *United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir.1995). [FN2] Although plaintiff contends that defendants have waived the privilege by virtue of their assertion of a qualified-immunity defense (see Pl.'s Mem. at 3-4), they fail to satisfy the at-issue waiver standards. See, e.g., *Frontier Refining v. Gorman Rupp Co., Inc.*, 136 F.3d 695, 701 (10th Cir.1998) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975); *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir.1995), *Tribune Co. v. Purcigliotti*, 1998 WL 175933, at *2 (S.D.N.Y. Apr. 14, 1998)). Specifically, they do not demonstrate that the documents withheld are crucial to the immunity defense. See, e.g., *Tribune Co.*, 1998 WL 175933, at *2. Indeed, based on our review of the documents, we are satisfied that they are not, and indeed that they are only marginally relevant.

> FN2. Lt. Zirpoli was acting as a representative of the Department, which was the client.

2. *Lt. Zirpoli's Notes*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

The remaining category of relief that plaintiff currently seeks is the opportunity to depose the Assistant Corporation Counsel who has served as trial attorney for defendants since the inception of this lawsuit. The argument for this deposition rests on plaintiff's contention that defendants' trial counsel in fact was instrumental in arranging for the commencement of one of the two Department investigations of plaintiff. (Pl.'s Mem. at 7-11). As alleged in plaintiff's amended complaint, these investigations, which ultimately led to his resignation from the Department, were retaliation for his complaining about misconduct by senior departmental officials against his co-plaintiff Stacey Maher and against him and for his filing of this lawsuit. (Amended/Supplemental Compl. at ¶¶ 94, 132).

The documentation supplied to the court by both sides is consistent in indicating that one of the investigations in question was triggered by a communication from Assistant Corporation Counsel Paul Aronson to the chief legal officer of the Department, defendant George Grasso. (*See* Aronson Decl. at ¶ 6 & Ex. B (Nov. 18, 1998 Memorandum from Asst. Corporation Counsel Paul Aronson, to George Grasso, Esq.)). The parties appear to dispute the motivation for Mr. Aronson's communication, as well as its propriety. They also disagree as to whether plaintiff can prevail on a retaliation claim even if Mr. Aronson's actions were improperly motivated and not otherwise justified. [FN4]

FN4. Mr. Aronson is of course not a defendant here.

*4 We need not, however, address the ultimate merits of plaintiff's claim in order to assess the immediate discovery dispute. We start with the premise that the circumstances in which the Department chose to open and pursue this investigation of plaintiff are sufficiently pertinent to his retaliation claim as to justify their exploration in discovery. Moreover, that discovery cannot be blocked by the assertion that the claim is meritless, since Lt. Thompson's retaliation theory is adequately pled, has not been dismissed, and is not self-evidently pressed in bad faith. *See, e.g., Chubb Integrated Sys., Ltd. v. National Bank of Wash.*, 103 F.R.D. 52, 59 (D.D.C.1984) (in ruling on discovery matters, courts do not usually address legal sufficiency of claims).

There still remains the question of whether a deposition of opposing counsel has been justified. We conclude that, on the record before us, it has not.

We start with the general principle that attorney depositions are disfavored. The leading decision is *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir.1986), which suggested that depositions of opposing counsel should be permitted only if (1) no other means exist to obtain the sought-after information, (2) the information at issue is both relevant and not privileged, and (3) the information in question is crucial to the discovering party's trial preparation. *Id.* at 1327. *See, e.g., Bogan v. Northwestern Mut. Life Ins. Co.*, 152 F.R.D. 9, 14 (S.D.N.Y.1993). *See also* 7 J. Moore, *Moore's Federal Practice* § 30.03[5], 30-23-25 (3d ed.1999). The rationale for this conclusion, which has been favorably cited by the Second Circuit, *see, e.g., United States v. Yonkers Board of Ed.*, 946 F.2d 180, 185 (2d Cir.1991), is that depositions of counsel, even if limited to relevant and non-privileged information, are likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case. *See, e.g., Bogan*, 152 F.R.D. at 14.

Plaintiff's application fails to meet any of these criteria. First, he fails to identify with any specificity what information he would seek from Mr. Aronson in a deposition. This alone means that he cannot satisfy any of the requirements for obtaining such relief.

Second, even if we intuit that he would question the attorney as to what he said to Lt. Zirpoli and why he communicated the information in question to the Department, the result does not change. Mr. Aronson's personal motivation, whether high-minded, malicious or merely tactical, is inconsequential for plaintiff's claim. Aronson is not a defendant, and the only pertinent claims concern the motivation for the decisions of the named defendants, all of whom are officials of the Department, to pursue an investigation of Lt. Thompson and then to press charges against him.

As for the substance of Mr. Aronson's communications with the Department--that is, with Lt. Zirpoli and perhaps others--in connection with the opening of the investigation, plaintiff does not require the lawyer's testimony. If the attorney had discussions with any police official, plaintiff may depose that official to obtain the substance of the communications, to the extent that they are not privileged. Moreover, as we have suggested, we do not view that information, even if relevant and not privileged, as crucial to the plaintiff's retaliation claim. As noted, the reasons for the Department's decisions to pursue a case against the plaintiff are the key to the retaliation claim--not the reasons why their trial attorney communicated the information in question to the Department.

*CONCLUSION*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*5 For the reasons noted, the motion of Lt. Thompson to compel additional disclosure from defendants is granted only to the extent indicated, and is otherwise denied.

2000 WL 777877, 2000 WL 777877 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d  
(Cite as: 1997 WL 435841 (Conn.Super.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Burton PIASER  
v.  
Erwin P. COHEN et al.

No. CV 950149192S.

July 21, 1997.

TOBIN.

*1 The plaintiff, Burton Piaser, commenced this action against the defendants, Erwin Cohen and Periphex, Inc. (Periphex), to recover damages based upon the alleged breach of an employment agreement and other related claims. The plaintiff alleges that he entered into an employment agreement with Periphex, a privately held Connecticut corporation, on or about November 3, 1989, and that pursuant to an amendment to that agreement, Periphex agreed to provide the plaintiff with certain employment benefits, including a stock option plan. The plaintiff further alleges that Cohen, the president and sole shareholder of Periphex, sold Periphex on December 6, 1993, and that Periphex then incorporated in Massachusetts under the same name. Following the sale of Periphex Connecticut, the plaintiff claims that he continued in the employ of "Periphex Massachusetts" until his employment was terminated on or about September 15, 1994. From the date of the sale of Periphex through the date Periphex Massachusetts terminated the plaintiff's employment, the plaintiff claims that Periphex Massachusetts refused or neglected to provide the plaintiff with a stock option plan in violation of the terms of the employment agreement.

The defendant, Periphex Massachusetts, has filed a motion to strike (# 104) the plaintiff's claims against Periphex in counts I, III, V, VII, IX, XI and XIII of the complaint on the ground that the plaintiff failed to allege that an employment agreement ever existed between Periphex Massachusetts and the plaintiff. The defendant argues that because the employment agreement, which is the basis of the plaintiff's claim, was with Periphex Connecticut rather than Periphex Massachusetts, the complaint "misjoins" and fails to state a claim against Periphex Massachusetts. In support of this motion, the defendant submitted a memorandum of law, and the plaintiff filed a memorandum in opposition.

"The purpose of a motion to strike is to contest ... the legal sufficiency of the allegations of any complaint ... to state a claim upon which relief can be granted .... If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citation omitted; internal quotation marks omitted.) *Waters v. Autuori*, 236 Conn. 820, 825-26, 676 A.2d 357 (1996). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." *Novametrix Medical Systems, Inc. v. BOC Group, Inc.*, 224 Conn. 210, 215, 618 A.2d 25 (1992).

"Under the general rule, a corporation which purchases all the assets of another company does not become liable for the debts and liabilities of its predecessor unless: (1) the purchase agreement expressly or impliedly so provides; (2) there was a merger or consolidation of two of the firms; (3) the purchaser is a 'mere continuation' of the seller; or (4) the transaction is entered into fraudulently for the purpose of escaping liability." *Ricciardello v. J.W. Grant & Co.*, 717 F.Supp. 56, 57-58 (D.Conn.1989). The plaintiff argues that there is an issue of fact as to whether Periphex Massachusetts assumed the obligations attendant to the employment agreement as a result of the sale.

*2 In the present case, the plaintiff claims that he entered into an employment agreement with Periphex, the Connecticut corporation, and that the agreement entitled him to participate in a stock option plan. Although Periphex was sold and reincorporated in Massachusetts, it retained the same corporate name. In addition, the plaintiff alleges that he was retained as an employee of Periphex Massachusetts following the sale. The plaintiff now claims that Periphex Massachusetts refused to honor the terms of his employment agreement, specifically the provision entitling the plaintiff to a stock option plan.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1997 WL 435841 (Conn.Super.))

Page 2

Viewed in the light most favorable to the plaintiff, the above allegations are sufficient to support a claim that Periphex Massachusetts impliedly assumed the obligations of Periphex Connecticut under the plaintiff's employment agreement when it retained the plaintiff as an employee. "While no precise rule governs the finding of implied liability, ... the conduct or representations relied upon by the party asserting liability must indicate an intention on the part of the buyer to pay the debts of the seller ... The presence of such an intention depends on the facts and circumstances of each case." (Citation omitted.) *Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F.Supp. 834, 839 (S.D.N.Y.1977). "Such a finding can only be made after the facts have been fully developed at trial." *Id.*, 838. Furthermore, "[w]here the successor [corporation] may hold itself out as being the same by name of product, operation and sale, thereby receiving the benefit of past goodwill, it should likewise bear the burden of past operation." *Copperthite v. Pytlik*, Superior Court, judicial district of Middlesex, Docket No. 59053, (August 29, 1992, Arena, J.). Accordingly, the defendant's motion to strike is denied.

1997 WL 435841 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works