**EXHIBIT C**

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARENCE R. COLLINS, JR., et al. | : | CIVIL ACTION NO. 3:03 CV-945 (CFD) |
| V. | : | |
| OLIN CORPORATION, et al. | : | DECEMBER 9, 2003 |

### REQUESTS FOR ADMISSIONS

The plaintiffs request that the defendants Town of Hamden and Olin Corporation make the following admissions, in accordance with Fed. R. Civ. P. 36 and the following definitions:

A.  The "Consent Order" means Order No. SRD –128 between the State of Connecticut, the Town of Hamden, South Central Connecticut Regional Water Authority, State Board of Education, and Olin Corporation.

B.  The "Public Properties" means the properties known as the Hamden Middle School, Newhall Street School a/k/a Hamden Community Center, two Hamden Housing Authority properties on Morse Street, Rochford Field, Mill Rock Park a/k/a Rochford Field Annex and the sewage pump station located at 1099 Winchester Avenue, Hamden as defined in the Consent Order.

C.  The "Non-Public Properties" means certain privately owned properties in the vicinity of the Public Properties where wetland areas formerly existed or where waste materials were historically placed and identified on the map attached hereto as Exhibit B, and as defined in the Consent Order.

D.  The "Site" means the Public Properties and the Non-Public Properties as defined in the Consent Order

E.  The "Newhall Section" is defined in ¶22 of the Amended Complaint and in the Consent Order.

F.  "Olin" means the Olin Corporation and its predecessors.

G.  "Hamden" means the town of Hamden.

## REQUESTS TO ADMIT

1.    Attached hereto as Exhibit A is a genuine copy of the Consent Order.

      Response:

2.    On July 10, 2001 the Commissioner issued Order No. SRD-128 to the Respondents, requiring the respondents to investigate and remediate sources of pollution at the Site.

      Response:

3.    Olin and Hamden appealed from the issuance of the Order and a contested case proceeding commenced.

      Response:

4.    On February 13, 2003, Hamden signed the Consent Order.

      Response:

5.    On February 7, 2003, Olin signed the Consent Order.

      Response:

6.    On April 16, 2003, the Consent Order was accepted as a final decision in Order No. SRD-128.

      Response:

7.    In the early 1900s, Hamden solicited owners of properties containing wetlands and low lying areas to allow refuse to be dumped onto their property.

      Response:

8.   In the first half of the last century substantial portions of the Site contained wetlands and low lying areas.

     Response:

9.   From as early as 1915, Hamden solicited owners of properties containing wetlands and low lying areas to allow refuse to be dumped on them. In some instances Hamden would operate public dumps on these properties and when filled, the properties would be developed.

     Response:

10.  Some time prior to 1917, Hamden established dumps between Goodrich Street and Morse Street.

     Response:

11.  The dumps between Goodrich Street and Morse Street were closed some time after World War I.

     Response:

12.  Thereafter substantial areas where the dumps were located were developed for residential use.

     Response:

13.  During the mid-1920s to late-1930s Hamden established other public dumps in the area where Rochford Field and Mill Rock Park are currently located. These dumps were referred to as the Newhall Street Dump and the Mill Rock Dump.

     Response:

14. Prior to 1934, the New Haven Water Company entered into an agreement with Winchester Repeating Arms Company, which gave Winchester use of what is currently known as the Hamden Middle School Property for dumping purposes.

Response:

15. The Winchester Repeating Arms Company, a Connecticut corporation, was founded in 1866 in New Haven, Connecticut.

Response:

16. On or about February 7, 1929, Winchester Repeating Arms Company was renamed Winchester Manufacturing Company and was ordered by the United States District Court to reorganize with the Winchester Company. All assets were transferred to a newly formed corporation known as Winchester Repeating Arms Company of Delaware.

Response:

17. On January 22, 1931, the Winchester Repeating Arms Company of Delaware was put into receivership on a creditor's bill filed in the United States District Court in Connecticut.

Response:

18. In December of 1931, the assets of Winchester Repeating Arms Company of Delaware were sold out of receivership and were subsequently purchased by John M. Olin's Western Cartridge Company.

Response:

19.     Western Cartridge Company is a predecessor of Olin Corporation.

        Response:


20.     Since approximately 1933, Olin Corporation and its predecessors continued the
        practice of the Winchester Repeating Arms Company of dumping ash and other waste
        at the Hamden Middle School Property as fill with the permission of the New Haven
        Water Company.

        Response:


21.     Olin also used public dumps established by the Town of Hamden on Public and Non-
        Public Properties to discard ash and other manufacturing wastes that it generated at its
        New Haven plant on Winchester Avenue.

        Response:


22.     On March 29, 1950, the New Haven Water Company transferred the Hamden Middle
        School Property to the Town of Hamden.

        Response:


23.     On March 30, 1950, the Town of Hamden transferred the Hamden Middle School
        Property to the State of Connecticut for use as a regional technical training school.

        Response:


24.     From March 30, 1950 to February 24, 1954 the State of Connecticut owned the
        Hamden Middle School Property and thereafter it was conveyed back to the Town of
        Hamden.

        Response:

25.    Olin continued its practice of dumping at the Hamden Middle School Property until approximately 1957.

Response:

26.    Industrial waste including, but not limited to, batteries, empty ammunition shells, ash, slag and coal waste, as well as other industrial and household waste are buried throughout the Site in varying proportions and at various locations.

Response:

27.    Soils at the Site are polluted with metals, volatile organic compounds, semi volatile organic compounds, polychlorinated biphenyls (PCBs) and total petroleum hydrocarbons.

Response:

28.    Prior to filling, the areas of the Newhall Section that contained wetlands and low lying areas could not be developed with residential dwellings.

Response:

29.    After filling, the areas of the Newhall Section that previously contained wetlands and low lying areas were developed with residential dwellings.

Response:

30.    Hamden issued building permits for the construction of residential dwellings that were constructed in the Newhall Section.

Response:

31.    Hamden issued certificates of occupancy for the residential dwellings that were constructed in the Newhall Section.

Response:

32.    Hamden collected fees in connection with the issuance of building permits for the construction of residential dwellings that were constructed in the Newhall Section.

Response:

33.    Hamden levied real property taxes for the real property located in the Newhall Section.

Response:

34.    Hamden collected real property taxes in connection with real property located in the Newhall Section.

Response:

35.    The development of the residential dwellings in the Newhall Section increased Hamden's population and tax base.

Response:

36.    The development of the residential dwellings in the Newhall Section increased Hamden's tax revenues.

Response:

37.    Hamden allowed Olin to dispose of its industrial waste at the Site.

Response:

38.   Olin and Hamden cooperated in the disposal of Olin's industrial waste in the Newhall
      Section from 1915 until the 1950s.

      Response:

39.   Olin operated a factory or manufacturing facility in New Haven, Connecticut.

      Response:

40.   Since at least 1915 to the present, Olin has not operated a factory or manufacturing
      facility in Hamden.

      Response:

41.   Since at least 1915 to the present, Olin has not paid real property taxes in Hamden.

      Response:

42.   Olin Corporation ("Olin") is a Virginia corporation that was incorporated in 1892.

      Response:

43.   Western Cartridge Company was incorporated under Illinois law in 1898.

      Response:

44.     Winchester Repeating Arms Company of Maryland was incorporated under the laws of Maryland as a wholly-owned subsidiary of Western Cartridge Company until 1938 when it became a division of Western Cartridge Company.

Response:

45.     Winchester Repeating Arms Company of Delaware was incorporated in 1929.

Response:

46.     Winchester Repeating Arms Company of Connecticut was incorporated in 1866 and maintained its principal place of business in New Haven, Connecticut.

Response:

47.     In 1944 there was a corporate merger between Western Cartridge Company and Olin. As a result of the merger the new entity was called Olin Industries, Inc.

Response:

48.     Winchester Repeating Arms Company of Maryland became a division of Western Cartridge Company in 1938.

Response:

49.     Western Cartridge Company acquired all of the assets of Winchester Repeating Arms Company of Delaware in 1931.

Response:

50.    Western Cartridge Company transferred all of the assets of Winchester Repeating Arms Company of Delaware to Winchester Repeating Arms Company of Maryland in 1931.

     Response:

51.    Winchester Repeating Arms Company of Connecticut reorganized and transferred all of its assets to Winchester Repeating Arms Company of Delaware in 1931.

     Response:

52.    After 1944, Western Cartridge Company did not carry on any business activity.

     Response:

53.    After 1938, Winchester Repeating Arms Company of Maryland did not carry on any business activity.

     Response:

54.    After 1931, Winchester Repeating Arms Company of Delaware did not carry on any business activity.

     Response:

55.    After 1931, Winchester Repeating Arms Company of Connecticut did not carry on any business activity.

     Response:

56.    When Winchester Repeating Arms Company of Delaware acquired the assets of Winchester Repeating Arms Company of Connecticut in 1929, it also continued the product line of Winchester Repeating Arms Company of Connecticut.

Response:

57.     When Winchester Repeating Arms Company of Maryland acquired the assets of
        Winchester Repeating Arms Company of Delaware in 1931, it also continued the
        product line of Winchester Repeating Arms Company of Delaware.

        Response:

58.     When Winchester Repeating Arms Company of Maryland dissolved and became a
        division of Western Cartridge Company in 1938, Western Cartridge Company
        continued the product line of Winchester Repeating Arms Company of Maryland.

        Response:

59.     When Western Cartridge Company purchased the "Winchester" trademark from
        Winchester Repeating Arms Company of Delaware, it also began to manufacture and
        sell products under the "Winchester" trademark name.

        Response:

60.     Following the merger of Western Cartridge Company and Olin in 1944, Olin
        continued the product line of Western Cartridge Company.

        Response:

61.     Winchester Repeating Arms Company of Delaware acquired all of the assets of
        Winchester Repeating Arms Company of Connecticut in 1929.

        Response:

62.     Winchester Repeating Arms Company of Maryland acquired the all of the assets of
        Winchester Repeating Arms Company of Delaware in 1931.

63.     Western Cartridge Company acquired the assets of Winchester Repeating Arms
        Company of Maryland in 1938.

        Response:


64.     As a result of the merger between Western Cartridge Company and Olin in 1944, the
        new entity, Olin Industries, Inc., acquired the assets of Western Cartridge Company.

        Response:


65.     When Winchester Repeating Arms Company of Delaware acquired the assets of
        Winchester Repeating Arms Company of Connecticut in 1929, it also assumed the
        liabilities of Winchester Repeating Arms Company of Connecticut.

        Response:


66.     When Winchester Repeating Arms Company of Maryland acquired the assets of
        Winchester Repeating Arms Company of Delaware in 1931, it also assumed the
        liabilities of Winchester Repeating Arms Company of Delaware.

        Response:


67.     When Winchester Repeating Arms Company of Maryland dissolved and became a
        division of Western Cartridge Company in 1938, Western Cartridge Company
        assumed the liabilities of Winchester Repeating Arms Company of Maryland.

        Response:


68.     When Olin and Western Cartridge Company merged in 1944, Olin assumed the
        liabilities of Western Cartridge Company.

        Response:

69.     When Winchester Repeating Arms Company of Delaware acquired the assets of
        Winchester Repeating Arms Company of Connecticut in 1929, it also retained
        employees of Winchester Repeating Arms Company of Connecticut.

        Response:

70.     When Winchester Repeating Arms Company of Maryland acquired the assets of
        Winchester Repeating Arms Company of Delaware in 1931, it also retained
        employees of Winchester Repeating Arms Company of Delaware.

        Response:

71.     When Olin and Western Cartridge Company merged in 1944, Olin retained
        employees of Western Cartridge Company.

        Response:

72.     When Winchester Repeating Arms Company of Delaware acquired the assets of
        Winchester Repeating Arms Company of Connecticut in 1929, it also utilized the
        manufacturing processes of Winchester Repeating Arms Company of Connecticut.

        Response: Response:

73.     When Winchester Repeating Arms Company of Maryland acquired the assets of
        Winchester Repeating Arms Company of Delaware in 1931, it also utilized the
        manufacturing processes of Winchester Repeating Arms Company of Delaware.

        Response:

74.     When Winchester Repeating Arms Company of Maryland dissolved and became a
        division of Western Cartridge Company in 1938, Western Cartridge Company
        utilized the manufacturing processes of Winchester Repeating Arms Company of
        Maryland.

Response:


75.    When Olin and Western Cartridge Company merged in 1944, Olin utilized the
       manufacturing processes of Western Cartridge Company.

       Response:


76.    Winchester Repeating Arms Company of Connecticut disposed of industrial waste in
       the Newhall Section of Hamden.

       Response:


77.    When Winchester Repeating Arms Company of Delaware acquired the assets of
       Winchester Repeating Arms Company of Connecticut in 1929, it also disposed of
       industrial waste in the Newhall Section of Hamden.

       Response:


78.    When Winchester Repeating Arms Company of Maryland acquired the assets of
       Winchester Repeating Arms Company of Delaware in 1931, it also disposed of
       industrial waste in the Newhall Section of Hamden.

       Response:


79.    When Winchester Repeating Arms Company of Maryland dissolved and became a
       division of Western Cartridge Company in 1938, Western Cartridge Company
       disposed of industrial waste in the Newhall Section of Hamden.

       Response:

80.    When Olin and Western Cartridge Company merged in 1944, Olin disposed of
       industrial waste in the Newhall Section of Hamden.

       Response:

81.    When Winchester Repeating Arms Company of Delaware acquired the assets of
       Winchester Repeating Arms Company of Connecticut in 1929, it also utilized the
       customer base of Winchester Repeating Arms Company of Connecticut.

       Response:

82.    When Winchester Repeating Arms Company of Maryland acquired the assets of
       Winchester Repeating Arms Company of Delaware in 1931, it also utilized the
       customer base of Winchester Repeating Arms Company of Delaware.

       Response:

83.    When Winchester Repeating Arms Company of Maryland dissolved and became a
       division of Western Cartridge Company in 1938, Western Cartridge Company
       utilized the customer base of Winchester Repeating Arms Company of Maryland.

       Response:

84.    When Olin and Western Cartridge Company merged in 1944, Olin utilized the
       customer base of Western Cartridge Company.

       Response:

85.    When Winchester Repeating Arms Company of Delaware acquired the assets of
       Winchester Repeating Arms Company of Connecticut in 1929, it also retained
       management from Winchester Repeating Arms Company of Connecticut.

       Response:

86.    When Winchester Repeating Arms Company of Maryland acquired the assets of Winchester Repeating Arms Company of Delaware in 1931, it also retained management from Winchester Repeating Arms Company of Delaware.

       Response:

87.    When Winchester Repeating Arms Company of Maryland dissolved and became a division of Western Cartridge Company in 1938, Western Cartridge Company retained management from Winchester Repeating Arms Company of Maryland.

       Response:

88.    When Olin and Western Cartridge Company merged in 1944, Olin retained management from Western Cartridge Company.

       Response:

                         THE PLAINTIFFS,

                         By

                            David B. Zabel, Esq. ct01382
                            dzabel@cohenandwolf.com
                            Monte E. Frank, Esq. ct13666
                            mfrank@cohenandwolf.com
                            Cohen and Wolf, PC
                            1115 Broad Street
                            Bridgeport, Connecticut 06604
                            Tele:  (203) 368-0211
                            Fax:  (203) 394-9901

Mark Roberts, Esq.
mroberts@mcrobertsandroberts.com
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, Massachusetts 02114
Tele: (617) 722-8222
Fax:  (617) 720-2320

Neil T. Leifer, Esq.
nleifer@tenlaw.com
David C. Strouss, Esq.
dstrouss@tenlaw.com
Thornton & Naumes L.L.P
100 Summer Street, 30th Floor
Boston, Massachusetts 02110
Tele: (617) 720-1333
Fax:  (617) 720-2445

## CERTIFICATION OF SERVICE

I hereby certify that on the date hereof, a copy of the foregoing was served by first class U.S. mail, postage prepaid, upon all counsel and pro se parties of record, as follows:

Ann M. Catino, Esq.
Joseph G. Fortner, Jr., Esq.
Laurie R. Steinberg, Esq.
Brian D. Rich, Esq.
HALLORAN & SAGE LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Michael H. Wetmore, Esq.
Joel B. Samson, Esq.
HUSCH & EPPENBERGER, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

Sandra K. Davis, Esq.
Mark S. Baldwin, Esq.
BROWN RUDNICK BERLACK ISRAELS LLP
185 Asylum Street, 38th Floor
Hartford, CT 06103-3402

_____
Monte E. Frank