**EXHIBIT D**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CLARENCE R. COLLINS, JR., et al.,              :      CIVIL ACTION NO. 3:03 CV-945(CFD)
                                               :
V.                                             :
                                               :
OLIN CORPORATION, et al.,                      :
                                               :      February 9, 2004

## OLIN CORPORATION'S ANSWERS AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

COMES NOW defendant Olin Corporation ("Olin"), by and through its undersigned counsel, and for its answers and objections to plaintiffs' First Set of Interrogatories, states as follows:

### PRELIMINARY STATEMENT

1.  In responding to Plaintiffs' Interrogatories, either by written response or by the production of documents, Olin does not waive the right to challenge the relevance, materiality, and admissibility of the information or documents provided or to object to the use of such documents in any subsequent proceeding or trial in this action or any other action on any grounds that may be applicable.

2.  Discovery in this case is ongoing. Olin's answers to the interrogatories are based upon the information presently available to Olin. Olin fully reserves the right to supplement or amend these answers prior to trial as provided for by applicable law, rules and orders of the Court. Olin limits the obligation to supplement these answers to those imposed upon Olin by the Federal Rules of Civil Procedure and any orders of the Court.

3.  Olin objects to these interrogatories to the extent they seek information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

1709023.01

## **GENERAL OBJECTIONS**

1. Olin objects to Plaintiffs' instructions and definitions to the extent that they seek to impose obligations beyond those imposed by the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut. Olin further objects to Plaintiffs' instructions and definitions to the extent that they purport to require the disclosure of information that is the subject of the attorney-client or work product privileges.

2. Olin objects to the phrases "Corporate Predecessor" and "Alleged Corporate Predecessors" as vague and ambiguous and calling for a legal conclusion. The problem with the use of these phrases is compounded by the further reference to "Winchester Repeating Arms Company." As plaintiffs' discovery requests acknowledge, there were entities known as "Winchester Repeating Arms Company - Connecticut", "Winchester Repeating Arms Company - Delaware", and "Winchester Repeating Arms Company - Maryland."

3. Pursuant to the July 14, 2003 Scheduling Order (approved by the Court on October 14, 2003 and modified by consent of the parties in January 2004), discovery at this stage is limited to issues of class certification, governmental immunity and successor liability. Plaintiffs' written discovery requests directed to Olin seek information to support Plaintiffs' allegations that "Olin is the successor in interest to Winchester Repeating Arms Company." *See*, Plaintiffs' Amended Complaint, ¶ 7. Plaintiffs' allegations in support of this conclusion appear to focus on the "substantial continuity" test for successor liability. *See, e.g.*, Plaintiffs' Amended Complaint, ¶¶ 17 through 19 (listing the alleged reasons Western Cartridge Company continued the operations of Winchester "at a level sufficient to constitute a *substantial continuity* of business for liability purposes") (emphasis added).

To the extent Plaintiffs rely on the "substantial continuity" test for successor liability under their CERCLA count, that reliance has been rendered moot by the Second Circuit's recent opinion in *State of New York v. National Services Industries, Inc.*, No. 02-9227, 2003 U.S. App., LEXIS 25411 (2d Cir. Dec. 17, 2003). In *New York v. National Services Industries, Inc.*, the court held that the Supreme Court's decision in *United States v. Bestfoods*, 524 U.S. 51 (1998), required the Second Circuit to overturn a 1996 Second Circuit decision adopting the "substantial continuity" theory of successor liability. Instead, the Court held that a court must look to the state common law rules of successor liability.

Accordingly, and consistent with the *New York v. National Services Industries, Inc.* decision, Plaintiffs may only attempt to prove successor liability based on the Connecticut common law successor liability rules. Under the general rule in Connecticut, a corporation which purchases all the assets of another company does not become liable for the debts and liabilities of its predecessor unless: 1) the purchase agreement expressly or impliedly so provides; 2) there was a merger or consolidation of the two firms; 3) the purchaser is a 'mere continuation' of the seller; or 4) the transaction is entered into fraudulently for the purpose of escaping liability. *See, e.g., Ricciardello v. J.W. Grant & Co.*, 717 F.Supp. 56, 57-58 (D.Conn. 1989). With respect to "mere continuation," this exception focuses on a continuity of ownership between corporations involved in an asset purchase. *See, e.g., Pesce v. Overhead Door Corp.*, 1996 U.S. Dist. LEXIS 22244, at *11-12 (D.Conn. July 25, 1996) ("The focus of the [mere continuation] exception is not whether there is a continuation of the business, but rather the test is whether there is a continuation of the corporate identity of the seller. The key element in determining whether the corporate entity continues to exist is a determination of whether there is

a common identity of the officers, directors, and stockholders in both the selling and purchasing corporations.")

Winchester Repeating Arms Company of Delaware ("Winchester – Delaware") was put into receivership on a creditors' bill filed in United States District Court in Connecticut in 1931. Through a Court supervised auction, Winchester – Delaware's assets were sold to the highest bidders, two men named P.C. Beardslee and Ben-Fleming Sessel. These men subsequently transferred the assets that they acquired at the auction to Winchester Repeating Arms Company of Maryland ("Winchester – Maryland). There was no commonality of stockholders between Winchester – Delaware and Winchester – Maryland. Absent that commonality, there can be no "mere continuation" exception to the no successor liability rule in Connecticut.

In these proceedings, the only relevant transaction with respect to successor liability is what happened in and around 1931 when Winchester-Delaware's assets were sold as reflected in the Final Decree Confirming Sale and Directing Execution and Delivery of Deeds ("Final Decree Confirming Sale," a copy of which is being produced to Plaintiffs). The assets were purchased by two individuals, P.C. Beardslee and Ben-Fleming Sessel. Within a week of their December 15, 1931 purchase of the assets, Beardslee and Sessel "assigned, transferred and set over" all of their ownership of the acquired assets to Winchester Repeating Arms Company of Maryland, a wholly owned subsidiary of Western Cartridge Company (hereinafter "Winchester-Maryland"). If Winchester-Maryland is not the successor of Winchester-Delaware, Plaintiffs' successor liability allegations are at an end. As a result, any requests by Plaintiffs which seek information for transactions or time periods other than those related to the asset purchase in or around 1931 are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in these proceedings.

Finally, any reliance Plaintiffs place on the product line exception to the no-successor liability rule is misplaced. First, neither the Connecticut Supreme Court, nor any appellate court in Connecticut recognizes the product line exception to the no-successor liability rule. *See, e.g., Pesce*, 1998 U.S. Dist. LEXIS 20615 at *5 (declining to adopt the product line exception and stating that "no Connecticut appellate court had recognized the product line exception" and ruling that "it is this court's best judgment that the Connecticut Supreme Court would not extend the law to recognize this exception."). Second, no Connecticut Superior Court has applied the product line exception outside the context of a product liability claim – that is, a claim for personal injuries resulting from the continued manufacture of the type of product alleged to have caused injury. This is not a product liability case. It would be burdensome and oppressive to respond to the extensive discovery requests propounded by the Plaintiffs when there is no body of Connecticut case law that imposes successor liability on a product line exception basis on the facts of this case.

4.  Olin objects to the definition of "Olin" and "Olin Corporation" on the grounds that it mischaracterizes and inaccurately describes events involving the defendant in these proceedings. More accurately put, on December 31, 1944, "Olin Corporation" merged into the Western Cartridge Company, and the corporate name was changed to Olin Industries, Inc. On August 31, 1954, Olin Industries, Inc. merged with Mathieson Chemical Corporation, and the corporate name became Olin Mathieson Chemical Corporation. On September 1, 1969, Olin Mathieson Chemical Corporation changed its name to Olin Corporation, a defendant in this litigation.

5.  Olin objects to the definition for "Firearm products" as overbroad, vague and ambiguous. Olin further objects to the definition for "Firearm products" on the grounds that it is

not limited to the facts at issue in this litigation. "Firearm products" are not the subject of this litigation.

6.   Olin objects to the number of Interrogatories propounded by Plaintiffs in that Plaintiffs' Interrogatories exceed twenty-five in number.

## INTERROGATORIES

1.   Identify all assets and/or liabilities which were merged with or into "OLIN CORPORATION" by virtue of the merger between "OLIN CORPORATION" and "WESTERN CARTRIDGE COMPANY" in 1944.

**ANSWER:**   Olin objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3.

2.   Identify all assets and/or liabilities which were acquired by "WESTERN CARTRIDGE COMPANY", "WINCHESTER REPEATING ARMS COMPANY of MARYLAND" or "OLIN CORPORATION" by virtue of purchase of the assets of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" in 1931.

**ANSWER:**   Olin objects to this Interrogatory to the extent that it assumes that Olin Corporation was involved in the purchase of assets in 1931, which it was not. On December 15, 1931, Winchester Repeating Arms Company of Delaware's assets were sold as reflected in the Final Decree Confirming Sale and Directing Execution and Delivery of Deeds ("Final Decree Confirming Sale", a copy of which is being produced to Plaintiffs). The assets were purchased by two individuals, P.C. Beardslee and Ben-Fleming Sessel. Within a week after their purchase of the assets, Beardslee and Sessel "assigned, transferred and set over" all of their ownership of the acquired assets to Winchester Repeating Arms Company of Maryland, a wholly-owned subsidiary of Western Cartridge Company (hereinafter "Winchester-Maryland"). Subject to and without waiving this objection, Olin states that pursuant to Rule 33 of the Federal Rules of Civil Procedure, Olin will produce documents from which information responsive to this Interrogatory may be derived or ascertained. Specifically, Plaintiffs are directed to the Final Decree Confirming Sale and Directing Execution and Delivery of Deeds, dated December 22, 1931 (the "Final Decree Confirming Sale") and related documents.

3. Identify all assets and/or liabilities of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" which "WESTERN CARTRIDGE COMPANY" transferred to "WINCHESTER REPEATING ARMS COMPANY of MARYLAND" in 1931.

**ANSWER:** Olin objects to this Interrogatory to the extent that it assumes that Western Cartridge Company transferred assets of Winchester Repeating Arms Company of Deleware to Winchester Repeating Arms Company of Maryland. On December 15, 1931, Winchester Repeating Arms Company of Delaware's assets were sold as reflected in the Final Decree Confirming Sale and Directing Execution and Delivery of Deeds ("Final Decree Confirming Sale", a copy of which is being produced to Plaintiffs). The assets were purchased by two individuals, P.C. Beardslee and Ben-Fleming Sessel. Within a week after their purchase of the assets, Beardslee and Sessel "assigned, transferred and set over" all of their ownership of the acquired assets to Winchester Repeating Arms Company of Maryland, a wholly-owned subsidiary of Western Cartridge Company (hereinafter "Winchester-Maryland"). Subject to and without waiving this objection, Olin states that pursuant to Rule 33 of the Federal Rules of Civil Procedure, Olin will produce documents from which information with respect to the assets and liabilities subsequently acquired by Winchester Repeating Arms Company of Maryland ("Winchester-Maryland") may be derived or ascertained. Specifically, Plaintiffs are directed to the Final Decree Confirming Sale and related documents, the corporate minutes of Western Cartridge Company and deeds and related documents being produced.

4. Please describe any activities or action by "WESTERN CARTRIDGE COMPANY" and "WINCHESTER REPEATING ARMS COMPANY of MARYLAND" in 1938 which resulted in any change in the status of "WESTERN CARTRIDGE COMPANY" or "WINCHESTER REPEATING ARMS COMPANY of MARYLAND", including a dissolution.

**ANSWER:** Olin objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3.

5. Prior to the merger in 1944, identify by type and nature every asset and/or liability which was held by "WESTERN CARTRIDGE COMPANY" and transferred to "OLIN CORPORATION" by operation of merger.

**ANSWER:** Olin objects to this Interrogatory as irrelevant, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3.

6. Identify by type and nature every asset or liability which was held by "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" after the sale of assets to "WESTERN CARTRIDGE COMPANY" in 1931.

**ANSWER:** Olin objects to this Interrogatory as irrelevant, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3.

7. According to your corporate documents, or documents otherwise known to you or under your control, provide information describing the physical location, proof of any business activity, number and names of employees, job descriptions for employees, and the existence of any assets for "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" after 1931.

**ANSWER:** Olin objects to this Interrogatory as irrelevant, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3. Subject to and without waiving this objection, Olin states that it is not in possession of any documents, other than those in the public domain, involving Winchester Repeating Arms Company of Delaware.

8. Describe any business operations which were a change or addition to the current operations of "WESTERN CARTRIDGE COMPANY", "WINCHESTER REPEATING ARMS COMPANY of MARYLAND", or "OLIN CORPORATION" due to the asset or liability purchase of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" in 1931, including additions or changes to its customer base, product line, distribution system, research and development, and personnel.

**ANSWER:** Olin objects to this Interrogatory as irrelevant, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3.

9. Describe any advertisement, press announcement, or any other publication or promotional material announcing the transaction that occurred between "WINCHESTER

1709023.01                                 8

REPEATING ARMS COMPANY of DELAWARE" and "WESTERN CARTRIDGE COMPANY"; "WINCHESTER REPEATING ARMS COMPANY of MARYLAND"; or "OLIN CORPORATION" in 1931.

  **ANSWER:** Olin objects to this Interrogatory as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Olin further objects on the grounds that there was no transaction between Winchester – Delaware and any of the entities listed in this interrogatory. On December 15, 1931, Winchester Repeating Arms Company of Delaware's assets were sold as reflected in the Final Decree Confirming Sale and Directing Execution and Delivery of Deeds ("Final Decree Confirming Sale", a copy of which is being produced to Plaintiffs). The assets were purchased by two individuals, P.C. Beardslee and Ben-Fleming Sessel. Within a week after their purchase of the assets, Beardslee and Sessel "assigned, transferred and set over" all of their ownership of the acquired assets to Winchester Repeating Arms Company of Maryland, a wholly-owned subsidiary of Western Cartridge Company (hereinafter "Winchester-Maryland"). Subject to and without waiving these objections, Olin states that Olin has not been able to locate any such documents.

  10. State whether or not you contend that there is a policy of liability insurance covering you for damages which could result from an adverse judgment or consensual settlement of this action.

    1. If your answer is affirmative, state the name of the Insurer(s), the policy number(s), the effective date(s) of the policy(s), the policy limits and the deductible amounts.

    2. If insurance coverage is disputed, identify the carrier(s) and policy(s) which are the subject of dispute.

    3. Whether there is or has been litigation concerning coverage and identify the Court where the litigation was filed and all counsel and the results, if any.

  **ANSWER:** Olin objects to this Interrogatory on the grounds that unless and until Plaintiffs can establish the year or years in which their alleged damages were created or incurred, Olin cannot identify which policies may be required to provide coverage for an adverse judgment or consensual settlement of this action. Subject to and without waiving this objection, Olin states that from and after 1951 Olin was insured by Insurance Company of North America as well as additional excess carriers. Olin is currently involved in insurance coverage litigation with Insurance Company of North America as well as some of its excess carriers. This litigation is pending in New York and is captioned *Olin Corporation v. Insurance Company of North America, et al.*, No. 84 Civ.1968 (S.D.N.Y.).

11. Identify all former employees of "WESTERN CARTRIDGE COMPANY" and/or its operating divisions or subsidiaries, who were employed by "OLIN" or were officers of "OLIN" as of December 31, 1944.

**ANSWER:** Olin objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3.

12. Identify all former employees, officers or directors of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" who were subsequently employed by you, or your predecessor "WESTERN CARTRIDGE COMPANY" as of December 15, 1931.

**ANSWER:** Olin objects to this Interrogatory as irrelevant, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence with respect to employees. See General Objection No. 3. Olin further objects to this Interrogatory to the extent it assumes that Western Cartridge Company employed any employees, officers or directors of Winchester Repeating Arms Company of Delaware as of December 15, 1931. Subject to and without waiving this objection, and with respect to corporate officers or directors, Olin states that no corporate officers or directors of Winchester-Delaware were employed in those capacities by Western Cartridge Company.

13. Identify all former employees, officers or directors of "WINCHESTER REPEATING ARMS COMPANY of MARYLAND" who were subsequently employed by you, or your predecessor "WESTERN CARTRIDGE COMPANY" as of 1931.

**ANSWER:** Winchester – Maryland was a wholly owned subsidiary of Western Cartridge in December of 1931. Olin objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence with respect to employees. See General Objection No. 3.

14. State whether you have documents pertaining to the asset purchase of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" by "WESTERN CARTRIDGE COMPANY" in 1931. If so, please provide the location and custodian of records.

**ANSWER:** Olin objects to this Interrogatory to the extent it assumes that Western Cartridge Company purchased the assets of Winchester Repeating Arms Company of Delaware directly. See Olin's response to Request for Admission No. 18. Subject to and without waiving this objection, Olin states that pursuant to Rule 33 of the Federal Rules of Civil Procedure, Olin will produce documents from which information with respect to the asset purchase by Beardsley and Sissel and the subsequent transfer of those assets to Winchester – Maryland can be determined. Lorraine Miller is Olin's Custodian of Records.

15. State whether you have documents pertaining to the merger between "WESTERN CARTRIDGE COMPANY" and "OLIN CORPORATION" in 1944. If so, please provide the location and custodian of records.

**ANSWER:** Olin objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3.

16. State whether you have documents pertaining to the creation of "WINCHESTER REPEATING ARMS COMPANY of MARYLAND" as a division of "WESTERN CARTRIDGE COMPANY" in 1931. If so, please provide the location and custodian of records.

**ANSWER:** Olin objects to this Interrogatory on the grounds that it assumes that Winchester-Maryland was created as a division of Western Cartridge Company in 1931. Subject to and without waiving this objection, Olin states that pursuant to Rule 33 of the Federal Rules of Civil Procedure, Olin will produce documents from which the relationship between Winchester – Maryland and Western Cartridge in 1931 may be derived or ascertained.

17. State whether you have documents pertaining to the merger between "WINCHESTER REPEATING ARMS COMPANY of MARYLAND" by "WESTERN CARTRIDGE COMPANY" in 1938. If so, please provide the location and custodian of records.

**ANSWER:** Olin objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3.

18. State whether you have documents pertaining to the dissolution of "WINCHESTER REPEATING ARMS COMPANY of MARYLAND's" corporate existence in 1938. If so, please provide the location and custodian of records.

**ANSWER:** Olin objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3.

19. State whether you have documents pertaining [to] the purchase or sale of the Winchester trademark by "WESTERN CARTRIDGE COMPANY" and/or "OLIN CORPORATION". If so, please provide the location and custodian of records.

**ANSWER:** Olin objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3. Subject to and without waiving this objection, Olin states that the Winchester trademark was among the assets acquired through the U.S. District Court's Order Confirming Sale by Beardslee and Sessel and subsequently acquired by Winchester-Maryland, a wholly owned subsidiary of Western Cartridge Company. Plaintiffs are directed to the Final Decree Confirming Sale and related documents.

20. State whether you have documents which describe any business operations or the existence of any assets for "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" between 1931 until 1934. If so, where?

**ANSWER:** Olin states that it is not in possession of any documents, other than those in the public domain, involving Winchester Repeating Arms Company of Delaware.

21. State whether you have documents which describe any business operations or the existence of any assets for "WINCHESTER REPEATING ARMS COMPANY of MARYLAND" between 1931 to its dissolution in 1938. If so, where?

**ANSWER:** Olin objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Winchester-Maryland acquired those certain assets of Winchester-Delaware pursuant to the Final Decree Confirming Sale. The documents associated with the Final Decree Confirming Sale describe such assets.

22. Identify all shareholders of "WINCHESTER REPEATING ARMS COMPANY of MARYLAND" who were at any time shareholders of "WESTERN CARTRIDGE COMPANY" or "OLIN CORPORATION".

**ANSWER:** Olin objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3. Subject to and without waiving this objection, Olin states that Winchester-Maryland was a wholly owned subsidiary of Western Cartridge Company.

23. Identify all shareholders of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" who were at any time became shareholders of "WESTERN CARTRIDGE COMPANY" or "OLIN CORPORATION".

**ANSWER:** Western Cartridge Company merged into Olin in 1944. Olin is a publicly traded company. Although Olin has no direct knowledge, theoretically a shareholder of Winchester-Delaware could have acquired stock in Olin Corporation on a publicly traded stock exchange. Winchester-Delaware's assets were acquired at a public auction through the U.S. District Court in December 1931. No shareholder of Winchester-Delaware became a shareholder of Winchester-Maryland or Western Cartridge Company as a result of the asset purchase.

24. Identify all shareholders of "WESTERN CARTRIDGE COMPANY" who were or at any time became shareholders of "OLIN CORPORATION".

**ANSWER:** Olin objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3.

25. Identify all shareholders of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" who were at any time shareholders of "WINCHESTER REPEATING ARMS COMPANY of MARYLAND".

**ANSWER:** Winchester-Delaware's assets were acquired at a public auction through the U.S. District Court in December 1931. No shareholder of Winchester-Delaware became a shareholder of Winchester-Maryland as a result of the asset purchase.

26. Please identify the name of the person or persons who is in charge of, or who is custodian of any historical business records of "OLIN CORPORATION" including but not limited to, customer lists, vendor lists, sales lists, employees lists, purchasing invoices, historical advertising material, corporate archival or historical material and/or claim or litigation files.

**ANSWER:** Olin objects to this Interrogatory as overbroad, burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3.

27. Please describe the corporate history of "OLIN CORPORATION" including each name under which it or its predecessors in interest operated any activities.

**ANSWER:** Olin objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See General Objection No. 3.

28. For each person(s) answering these interrogatories or providing information used in the answering of these interrogatories, and/or signing these interrogatories, please state:

   1. The full name, business address and business telephone number if any;

   2. Their job title and their relationship to the defendant, and, specific interrogatories which they answered, assisted in answering, or for which they provided information.

**ANSWER:** Olin objects to this interrogatory on the grounds that it is overbroad, not reasonably calculated to lead to the discovery of admissible evidence and seeks information protected by the attorney-client privilege. Subject to and without waiving these objections, see certification page.

HUSCH & EPPENBERGER, LLC

By: _____
Michael H. Wetmore (ct24899)
Joel B. Samson (ct24898)
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone: 314-480-1500
Fax: 314-480-1505
michael.wetmore@husch.com
joel.samson@husch.com

and

BROWN RUDNICK BERLACK ISRAELS LLP
Sandra K. Davis
185 Asylum St.
CityPlace I, 38th Floor
Hartford, CT  06103
Telephone: 860-509-6500
Fax: 860-509-6501
sdavis@brbilaw.com

*Attorneys for Defendant Olin Corporation*

## **CERTIFICATION**

County of _____ )
                                  ) ss.
State of _____ )


      Before me, this _____ day of February, 2004, personally appeared _____, who being first duly sworn, did state that the forgoing Responses to Plaintiffs' First Set of Interrogatories are true and correct, based on the books and records of Olin Corporation.


                                                                  _____


Notary public: _____

My commission expires: _____

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this ___9th___ day of ___February___, 2004, by first class mail, postage prepaid to:

Neil T. Leifer, Esq.
David C. Strouss, Esq.
Thornton & Naumes L.L.P.
100 Summer Street, 30th Floor
Boston, Massachusetts 02110
Telephone: (617) 720-1333
Facsimile: (618) 720-2445

David B. Zabel, Esq.
Monte E. Frank, Esq.
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, Connecticut 06604
Telephone: (203) 368-0211
Facsimile: (203) 394-9901

Mark Roberts
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, MA 02114
Telephone: (617) 722-8222
Facsimile: (617) 720-2320

*Attorneys for Plaintiff*

Ann M. Catino
Lori Dibella
Joseph G. Fortner, Jr.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Telephone: (860) 522-6108
Facsimile: (860) 548-0006

*Attorneys for Town of Hamden*

_____

1709023.01                    17