# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CLARENCE R. COLLINS, JR., et al.,    :    CIVIL ACTION NO. 3:03 CV-945(CFD)

                                     :

V.                                :

                                     :

OLIN CORPORATION, et al.,        :

                                   :    March 23, 2004

## OLIN CORPORATION'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER

Defendant Olin Corporation ("Olin") respectfully submits this memorandum of law in support of its motion for the entry of a protective order limiting the scope of discovery that plaintiffs may inquire into during the course of discovery in this litigation, and in particular, during the upcoming deposition of Olin's 30(b)(6) representative.

### Introduction

Pursuant to the July 14, 2003 Scheduling Order (approved by the Court on October 14, 2003 and modified by consent of the parties in January 2004), discovery at this stage is limited to issues of class certification, governmental immunity and successor liability. Plaintiffs' discovery efforts directed to Olin seek information to support Plaintiffs' allegations that Olin is the successor in interest to Winchester Repeating Arms Company of Delaware ("Winchester-Delaware"). It is these discovery efforts, and the manner in which Plaintiffs have chosen to pursue this line of discovery, that has prompted Olin's Motion for Protective Order.

On March 24, 2004, Plaintiffs will depose Olin's corporate representative pursuant to a Rule 30(b)(6) Notice of Deposition. In the Notice of Deposition, Plaintiffs list 11 topics they seek to address during the deposition. Three of these topics have no bearing on the issue at hand—successor liability. Plaintiffs seek to establish Olin's liability as a successor on the basis of either the "mere continuation" exception or the "product line" exception to the general rule of no successor liability. However, Connecticut and federal courts have narrowly defined the scope of these exceptions. The topics sought to be inquired into clearly fall outside of these boundaries. To prepare a corporate representative on these topics, which deal with events that occurred more than seventy years ago, will not only be extremely burdensome but will be an utter waste of time given the law in Connecticut. Thus Plaintiffs should be precluded from embarking on a fishing expedition which is incapable of producing information that will have any bearing on the ultimate disposition of Plaintiffs' successor liability claim.

### Background

Plaintiffs seek to impose liability on Olin for environmental harm in the Town of Hamden resulting from pre-December 1931 waste disposal activities of Winchester-Delaware alleging that Olin is the successor in interest to Winchester-Delaware. Olin's connection with the Winchester-Delaware facility in New Haven began on December 22, 1931 when Winchester-Maryland, a wholly owned subsidiary of Western Cartridge Company (a predecessor of Olin),

2

purchased certain of Winchester-Delaware's assets out of a receivership then pending in the United States District Court for Connecticut in an arms-length, court-sponsored and court-approved transaction.

Plaintiffs served interrogatories, requests for production, requests for admission and a 30(b)(6) deposition notice upon Olin on the issue of successor liability. Olin served formal responses to Plaintiffs' interrogatories, requests for production and requests for admission on February 9, 2004. Each of Olin's discovery responses included a general objection addressing what Olin believes to be Plaintiffs' disingenuous attempt to harass and burden Olin with various discovery requests that, under Connecticut law, cannot possibly support any legal theory of successor liability (the "General Objections").

After serving its discovery responses and the referenced General Objections, Olin discussed this discovery issue with Plaintiffs and invited Plaintiffs to provide Olin with any legal support refuting Olin's position. See, Michael H. Wetmore's February 20, 2004 letter to Neil T. Leifer, attached hereto as Exhibit 1. On March 8, 2004, the parties confirmed that the Olin 30(b)(6) deposition would take place on March 24, 2004. Having received no response to Olin's February 20, 2004 letter or the position taken in Olin's General Objections, Olin's 30(b)(6) witness prepared for the upcoming deposition with the understanding that Olin would not be

testifying about topics to which Olin's General Objections apply—topics 5, 6 and 7 as stated in the February 20, 2004 letter.

On March 9, 2004, Plaintiffs filed a motion to compel Olin to provide responses to certain Interrogatories, Requests for Production and Requests for Admission that Olin had previously objected to consistent with Olin's General Objections.  For the first time, Plaintiffs offered a scant few cases they believe support their position.  Olin's response to Plaintiffs' Motion to Compel is due within the next two weeks.  Olin is in the process of preparing its Opposition to Plaintiffs' Motion to Compel and expects all discovery issues associated with successor liability to be resolved through that process.

Given this, Olin contacted Plaintiffs' counsel and suggested that the March 24, 2004 30(b)(6) deposition proceed on the eight topics to which Olin has not objected—topics 1 through 4 and 8 through 11.  With respect to the remaining three topics—5, 6 and 7—Olin once again informed Plaintiffs that Olin's General Objections are equally applicable to these three areas of inquiry.  Olin suggested that Olin's objection to topics 5, 6 and 7 be dealt with in connection with Plaintiffs' Motion to Compel as resolution of the issues raised therein will also resolve the issues surrounding Olin's 30(b)(6) deposition.  Plaintiffs rejected this approach.  Therefore, Olin was forced to file its Motion for Protective Order.

4

### Topics 5, 6 and 7

The objectionable topics contained in Plaintiffs' 30(b)(6) Notice of Deposition are as follows:

5.　The number and names of employees, job descriptions of employees, business activities, and identification of assets, if any, of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" between 1931 and 1934.

6.　The production, manufacture, and identity of any product line of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" which was continued by "WINCHESTER REPEATING ARMS COMPANY of MARYLAND," "WESTERN CARTRIDGE COMPANY" or "OLIN."

7.　The nature of the business operations, including any changes or additions to the product line, distribution system, research and development, personnel, customer base, and waste disposal practices of "WINCHESTER REPEATING ARMS COMPANY of MARYLAND," "WESTERN CARTRIDGE COMPANY" or "OLIN" as a result of the asset purchase of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" in 1931.

See Plaintiffs' 30(b)(6) Notice of Deposition, attached hereto as Exhibit 2.

### Argument

Rule 26(c)(4) of the Federal Rules of Civil Procedure provides, in relevant part:

Upon motion by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (4) that certain matters not

be inquired into, or that the scope of the disclosure or discovery be limited to certain matters.

Fed. R. Civ. P. 26(c)(4).  See also 8 Wright & Miller, Federal Practice & Procedure § 2040, at 519 ("Rule 26(c)(4) permits an order that certain matters not be inquired into, or that the scope of discovery be limited to certain matters").

It is clearly within the Court's authority to limit the scope of a deposition.  See Amherst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121, 126 (D. Conn. 1974) (court limited scope of deposition to exclude certain matters in absence of any argument showing their relevance); Carlson Cos. v. Sperry & Hutchinson Co., 374 F. Supp. 1080, 1088 (D. Minn. 1973) (holding court must weigh the discovery request with the hardship to the party from whom the discovery is sought when the request approaches "the outer bounds of relevance"); Rebel Oil Co. v. Atlantic Richfield Co., 133 F.R.D. 41, 45 (D. Nev. 1990) (restricting initial discovery to certain threshold issues, that if plaintiff could not establish, would render plaintiffs with no chance of ultimately prevailing on their theory of liability); Air King Prods. Co. v. Hazeltine Research, Inc., 10 F.R.D. 381, 383 (E.D.N.Y. 1950) (discovery limited to particular dispositive issue).

As the Eighth Circuit articulated, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 382 (8th Cir. 1992) (cited by Marchello v. Chase Manhattan Auto Fin. Corp.,

219 F.R.D. 217, 218 (D. Conn. 2004)). <u>See also</u> <u>Dolgow v. Anderson</u>, 53 F.R.D. 661, 663 (D.C.N.Y. 1971) (court has a duty in lengthy and complex cases where possibility of abuse is present to supervise and limit discovery to protect parties and witnesses from annoyance and excessive expense).

The <u>Rebel Oil</u> case is particularly instructive. In <u>Rebel Oil</u>, plaintiff contended that defendant executed a plan to monopolize the Las Vegas retail discount gasoline market. <u>Rebel Oil</u>, 133 F.R.D. at 42. Defendant sought a protective order limiting the scope of plaintiffs' discovery at the outset of the case to the threshold issue which defendant contended would dispose of the entire case—whether significant entry barriers exist in the Las Vegas gasoline market. <u>Id</u>. Defendant contended that if plaintiff could not meet the initial burden of establishing this threshold issue, all other discovery sought by plaintiff would be irrelevant and plaintiffs' legal theory would fail. <u>Id</u>. The court agreed and held that limiting initial discovery to the threshold issue would eliminate burdensome discovery "for those cases in which plaintiffs would have no chance of ultimately prevailing." <u>Id.</u> at 45.

For reasons already set forth in Olin's General Objections, as well as those discussed below, topics 5, 6 and 7 sought to be covered in the upcoming deposition have no possibility of

advancing Plaintiffs' successor liability argument and therefore the burdensome discovery Plaintiffs now seek must be limited.[1]

1.    General Rule of No Successor Liability

Under the general rule in Connecticut, a corporation which purchases all the assets of another company does not become liable for the debts and liabilities of its predecessor unless: 1) the purchase agreement expressly or impliedly so provides; 2) there was a merger or consolidation of the two firms; 3) the purchaser is a 'mere continuation' of the seller; or 4) the transaction is entered into fraudulently for the purpose of escaping liability. See, e.g., Ricciardello v. J.W. Grant & Co., 717 F.Supp. 56, 57-58 (D.Conn. 1989).

Plaintiffs admittedly seek to establish Olin's liability as a successor on the basis of either the "mere continuation" exception or the "product line" exception or both.  An examination of case law construing these two exceptions compels the conclusion that under the facts already known, Plaintiffs have no ability to establish either exception.

2.    The Mere Continuation Exception

The "mere continuation" exception focuses on a continuity of ownership between corporations involved in an asset purchase. See, e.g., Pesce v. Overhead Door Corp., 1996 U.S.

---

[1] Olin's Memorandum in Opposition to Plaintiffs' Motion for Protective Order, to be filed within the next two weeks, will further highlight Plaintiffs' inability to prevail on either the "mere continuation" or "product line" exception to the general rule of no successor liability.

Dist. LEXIS 22244, at *11-12 (D.Conn. July 25, 1996)[2]. As stated in <u>Pesce</u>, "[t]he focus of the [mere continuation] exception is not whether there is a continuation of the business, but rather the test is whether there is a continuation of the corporate identity of the seller. The key element in determining whether the corporate entity continues to exist is a determination of whether there is a common identity of the officers, directors, and stockholders in both the selling and purchasing corporations." None of the topics listed in Plaintiffs' 30(b)(6) Notice of Deposition address any of these topics. Therefore, Plaintiffs have no reason to inquire into topics 5, 6 or 7 on the basis of the "mere continuation" theory of successor liability.

As will be discussed more fully in Olin's Memorandum in Opposition to Plaintiffs' Motion Compel, nothing in Plaintiffs' Motion to Compel alters this analysis. Plaintiffs' reference to <u>Peglar & Associates v. Professional Indemnity Underwriters Corp.</u>, No. X05CV970160824S, 2002 WL 1610037 (Conn. Super. Ct. June 19, 2002), neither advances Plaintiffs' position nor contradicts Olin's position. In <u>Peglar</u>, after noting that given the facts of the case "no consideration of successor liability is necessary," in dicta the court stated that the mere continuation exception "in effect takes cognizance of what may be called de facto merger." <u>Peglar</u>, 2002 WL 1610037, at *7. <u>Cargo Partners AG v. Albatrans, Inc.</u>, 207 F.Supp.2d 86, 96 (S.D.N.Y. 2001), engaged in perhaps the most thorough analysis of the de facto merger

---

[2]      Copies of unreported cases are attached.

exception to date.   The <u>Cargo Partner</u> court found "no case (in New York or in other jurisdictions) in which a court has found a de facto merger without at least some degree of ownership continuity—except in the area of products liability...Outside of those areas, it appears, that in practice, ownership continuity has been essential to the finding of a de facto merger." <u>Id</u>. at 104.  Recently, the Second Circuit affirmed the decision.  <u>Cargo Partner AG v. Albatrans, Inc.</u>, 352 F.3d 41, 46 (2d Cir. 2003).  In dicta, the <u>Peglar</u> court applied several of the requirements of a de facto merger to the facts of the case and found there was no de facto merger.  <u>Peglar</u>, 2002 WL 1610037, at *7.  As such, the <u>Peglar</u> holding does not conflict with the <u>Cargo Partner</u> court's contention that no cases outside the product liability context have found a de facto merger without at least some degree of ownership continuity.

Nor is Plaintiffs' position advanced by their citation to <u>Water Pollution Control Auth. v. Comm'r of Labor</u>, No. CV 90 274144, 1992 WL 201922 (Conn. Super. Ct. Aug. 4, 1992) for the proposition that not every indicia of the mere continuation test must be established.   <u>Water Pollution</u> is clearly distinguishable – it does not even address ownership continuity because it applies the doctrine of successor liability to a municipal agency, not a private corporation.  1992 WL 201922, at *3.

Based on discovery already conducted, in the asset transaction at issue here there was no commonality of stockholders between Winchester-Delaware and Winchester-Maryland.

Winchester-Delaware was put into receivership on a creditors' bill filed in United States District Court in Connecticut in 1931. Through a Court supervised auction, Winchester-Delaware's assets were sold to the highest bidders, two men named P.C. Beardslee and Ben-Fleming Sessel. These men subsequently transferred the assets that they acquired at the auction to Winchester-Maryland. There was no commonality of stockholders between Winchester-Delaware and Winchester-Maryland. Absent that commonality, there can be no "mere continuation" exception to the no successor liability rule in Connecticut. Accordingly, plaintiffs' attempt to inquire into areas 5, 6 and 7 far exceeds the "outer bounds of relevance" as they cannot establish a threshold issue of successor liability.

    3.    <u>The Product Line Exception</u>

Any reliance Plaintiffs place on the product line exception to the no-successor liability rule is equally misplaced. First, neither the Connecticut Supreme Court, nor any appellate court in Connecticut recognizes the product line exception to the no-successor liability rule. <u>See</u>, <u>e.g.</u>, <u>Pesce</u>, 1998 U.S. Dist. LEXIS 20615 at *5 (declining to adopt the product line exception and stating that "no Connecticut appellate court had recognized the product line exception" and ruling that "it is this court's best judgment that the Connecticut Supreme Court would not extend the law to recognize this exception.").

11

In addition, no Connecticut Superior Court has applied the product line exception outside the context of a product liability claim – that is, a claim for personal injuries resulting from the continued manufacture of the type of product alleged to have caused injury. Courts in the limited jurisdictions that have adopted the product line exception have emphasized that the exception only applies to cases involving a defective product. See, e.g., Leo v. Kerr-McGee Chem. Corp., 37 F.3d 96, 100 (3d Cir. 1994) (declining to extend product line exception to toxic tort claim); United States v. Atlas Minerals and Chems., No. 91-5118, 1995 U.S. Dist. LEXIS 13097, at *255 (E.D. Pa. Aug. 22, 1995) (declining to extend product line exception to CERCLA action seeking to recover the costs of removing hazardous waste from a landfill); Ninth Ave. Remedial Group v. Allis-Chalmers Corp., No. 2:94-CV-331-RL, 1996 U.S. Dist. LEXIS 5670, at *27 n. 3 (N.D. Ind. Apr. 19, 1996) ("In all the cases reviewed, courts applied the product line exception only in product liability cases…"); Anderson v. City of Minnetonka, No. CV 3-90-312, 1993 U.S. Dist. LEXIS 4846, at *24 n. 6 (D. Minn. Jan. 27, 1993) (declining to extend product line exception to CERCLA action, noting, "The product line test has only been applied in products liability cases…[T]his test has not been applied in any environmental liability case."); Standard Equip., Inc. v. Boeing Co., No. C84-1129D, 1987 U.S. Dist. LEXIS 15137, at *17 (W.D. Wash. Nov. 20, 1987) (environmental contamination case in which court held there

was no indication of an intention to expand the product line exception to anything but strict products liability).

This is not a product liability case. It would be burdensome and oppressive to require Olin's corporate representative to testify regarding "product line" topics when there is no body of Connecticut case law that imposes successor liability on a product line exception under the facts of this case. Plaintiffs cite one unpublished Superior Court opinion, Piaser v. Cohen, No. CV 950149192S, 1997 WL 435841 (Conn. Super. Ct. July 21, 1997), to support their contention that Connecticut law applies the product line exception to non product liability cases. However, contrary to plaintiffs' assertion, Piaser, a breach of contract case, does not apply the product line exception. Instead, the Piaser court expressly cited the four traditional exceptions to the no successor liability rule set forth in Ricciardello and denied defendant's motion to strike upon a finding that defendant impliedly assumed the obligations of the selling corporation. Id. at *1-2. In dicta, the court merely quoted the product line exception language from Copperthite v. Pytlik, No. 59053, 1992 WL 209660 (Conn. Super. Ct. Aug. 25, 1992), a product liability action.

Discovery beyond the limited scope of the "mere continuation" and "product line" exceptions serves no purpose whatsoever. Plaintiffs seek to waste the time of all involved, including the Court, and impose unnecessary costs and extreme burdens upon Olin. Olin's representative could spend countless hours reviewing documents to learn of events occurring

some seventy years ago and then spend additional time answering questions and providing facts

regarding the suggested topics that, according to the case law, have absolutely no bearing on the

ultimate determination of whether Olin may be found liable as a successor.  Plaintiffs have not

cited, and cannot present, case law that establishes either exception to the general rule of no

successor liability and therefore the extremely burdensome discovery Plaintiffs seek will not aid

Plaintiffs.  Thus, it is well within the Court's power to limit the scope of discovery that plaintiffs

may inquire into during the course of discovery in this litigation.   Simply put, Plaintiffs cannot

be allowed to pursue discovery that has no bearing on their ability to prevail in this matter.  As

such, the Court should limit discovery to exclude the following topics of inquiry.

### A. Matter No. 5:  The number and names of employees, job descriptions of employees, business activities, and identification of assets, if any, of "Winchester Repeating Arms Company of Delaware" between 1931 and 1934.

This topic encompasses a wealth of information that cannot possibly further Plaintiffs'

successor liability argument.  To begin with, inquiring of employees, job descriptions, business

activities, and identification of assets of Winchester-Delaware between 1931 and 1934 does not

further Plaintiffs' theory under any possible argument.  Nor does this inquiry address the

threshold issue at hand—whether Winchester-Maryland has a continuity of ownership with

Winchester-Delaware.  Matter No. 5 is clearly beyond the scope of ownership continuity.  It is

overly broad, unduly burdensome and not reasonably calculated to lead the discovery of admissible evidence. Plaintiffs should be prevented from casting a wide net in the wrong ocean.

**B. Matter No. 6: The production, manufacture, and identity of any product line of "Winchester Repeating Arms Company of Delaware" which was continued by "Winchester Repeating Arms Company of Maryland," "Western Cartridge Company" or "Olin."**

The product line exception has not been extended beyond the product liability context. The present action is not a product liability action. Thus, Plaintiffs' inquiry into the production, manufacture, and identity of the continuation of Winchester-Delaware's product line is incapable of enabling Plaintiffs to prevail on their successor liability claim. Such inquiry is therefore irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**C. Matter No. 7: The nature of the business operations, including any changes or additions to the product line, distribution system, research and development, personnel, customer base, and waste disposal practices of "Winchester Repeating Arms Company of Maryland," "Western Cartridge Company" or "Olin" as a result of the asset purchase of "Winchester Repeating Arms Company of Delaware" in 1931.**

For the same reasons set forth in Section A and B, this topic of inquiry is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Questions regarding continuity of product line and business operations in general have no bearing on Plaintiffs' ability to prevail on their claim of successor liability. Thus, discovery must be limited in scope to preclude such inquiries.

15

Any discovery concerning the above subject matters could not possibly serve as the basis for a valid legally supportable claim by Plaintiffs and thus there is no legitimate basis for Plaintiffs to inquire into the above-referenced topics.   The Court should bar Plaintiffs from inquiring about such collateral matters during discovery in this case.

### Conclusion

For the foregoing reasons, Olin respectfully requests that the Court enter a protective order limiting the scope of discovery that Plaintiffs may inquire into during the course of discovery in this litigation, and in particular, during the upcoming deposition of Olin's Rule 30(b)(6) representative, and grant such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

HUSCH & EPPENBERGER, LLC

By: *Joel B. Samson /SWD*

Michael H. Wetmore (ct24899)
Joel B. Samson (ct24898)
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone: 314-480-1500
Fax: 314-480-1505
michael.wetmore@husch.com
joel.samson@husch.com

and

16

BROWN RUDNICK BERLACK ISRAELS LLP
Sandra K. Davis
185 Asylum St.
CityPlace I, 38th Floor
Hartford, CT 06103
Telephone: 860-509-6500
Fax: 860-509-6501
sdavis@brbilaw.com

*Attorneys for Defendant Olin Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 23rd day of March, 2004, by facsimile transmission and first class mail, postage prepaid to:

Neil T. Leifer, Esq.
David C. Strouss, Esq.
Thornton & Naumes L.L.P.
100 Summer Street, 30th Floor
Boston, Massachusetts  02110
Telephone:  (617) 720-1333
Facsimile:   (618) 720-2445

David B. Zabel, Esq.
Monte E. Frank, Esq.
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, Connecticut  06604
Telephone: (203) 368-0211
Facsimile: (203) 394-9901

Mark Roberts
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, MA  02114
Telephone: (617) 722-8222
Facsimile: (617) 720-2320
***Attorneys for Plaintiff***

18

Ann M. Catino
Lori Dibella
Joseph G. Fortner, Jr.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Telephone:  (860) 522-6108
Facsimile: (860) 548-0006

***Attorneys  for Town of Hamden***

Sandra K. Davis

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARENCE R. COLLINS, JR., et al., | : | CIVIL ACTION NO. 3:03 CV-945(CFD) |
| | : | |
| V. | : | |
| | : | |
| OLIN CORPORATION, et al., | : | |
| | : | March 23, 2004 |

Joel B. Samson, being duly sworn, hereby deposes and says:

1.   I am over the age of eighteen and believe in the obligations of an oath.

2.   I have personal knowledge of the foregoing.

3.   I am an attorney at Husch & Eppenberger, LLC, which represents Olin Corporation, in
the above captioned action.

4.   I make this affidavit in support of Olin's Motion for Protective Order Pursuant to Fed. R.
26(c)(4).

5.   I hereby certify that Michael H. Wetmore and I attempted to confer with counsel for the
Plaintiffs, Neil T. Leifer, in an effort in good faith to resolve by agreement the issues
raised by Olin's Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c)(7) and
have been unable to reach such an agreement.

_____

Subscribed and sworn to before me this 23rd day of March,
2004.

_____
Notary Public   Amy W. Griffin
My Commission Expires:

```
" NOTARY SEAL "
Amy W. Griffin, Notary Public
St. Louis County, State of Missouri
My Commission Expires 3/18/2005
```

1747813.01

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CLARENCE R. COLLINS, JR., et al.,    :     CIVIL ACTION NO. 3:03 CV-945(CFD)
                                 :

V.                               :

OLIN CORPORATION, et al.,         :

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby certifies that a true and accurate copy of the Affidavit of Joel B. Samson was forwarded this _____ day of _____, 2004, via facsimile to:

Neil T. Leifer, Esq.
David C. Strouss, Esq.
Thornton & Naumes L.L.P.
100 Summer Street, 30th Floor
Boston, Massachusetts  02110
Telephone:  (617) 720-1333
Facsimile:  (618) 720-2445

David B. Zabel, Esq.
Monte E. Frank, Esq.
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, Connecticut  06604
Telephone: (203) 368-0211
Facsimile: (203) 394-9901

Mark Roberts
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, MA  02114
Telephone: (617) 722-8222
Facsimile: (617) 720-2320

*Attorneys for Plaintiff*

Ann M. Catino
Lori Dibella
Joseph G. Fortner, Jr.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Telephone:  (860) 522-6108
Facsimile: (860) 548-0006

*Attorneys for Town of Hamden*

1747813.01

# Husch & Eppenberger, LLC

*Attorneys and Counselors at Law*

190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105-3441
314.480.1500
Fax 314.480.1505
www.husch.com

314.480.1841 direct dial
michael.wetmore@Husch.com

*Exhibit "1"*

February 20, 2004

Neil T. Leifer
Thornton, Early & Naumes
100 Summer Street, 30th Floor
Boston, MA 02110

Re:    Collins, et al. v. Olin Corporation and the Town of Hamden

Dear Neil:

I have your letter of February 13, 2004. It is not at all clear to us that plaintiffs' amended complaint can be read to allege successor liability on the basis of the "mere continuation" and "product line" exceptions to the Connecticut rule of no successor liability. Nonetheless, you are correct that we did discuss that the plaintiffs rely on those two exceptions as the basis for asserting Olin's liability for the pre-December 1931 activities of the Winchester Repeating Arms Company – Delaware.

Olin outlined in a general way its position on the successor liability issues in its objections to the plaintiffs' discovery requests, to which you refer in your February 13 letter. We provided some case law, though by no means attempted to provide an exhaustive list of the case law that supports Olin's position. We are not aware of Connecticut authority that would hold Olin liable as a successor under the "product line" exception on the facts that the plaintiffs have pled. Similarly, we are not aware of Connecticut authority that would hold Olin liable as a successor under the "mere continuation" exception in the absence of continuity of ownership.

Since the plaintiffs' legal theories have no support in Connecticut, we will continue to oppose the burdensome discovery that the plaintiffs have propounded. I would be happy to review case authority that you believe runs counter to what we have set out in Olin's objections, if you wish to provide that to me.

We have sent you close to 800 pages of documents and are prepared to produce a Rule 30(b)(6) witness to discuss those topics in your notice of deposition, other than

# Husch & Eppenberger, LLC

Neil T. Leifer
February 20, 2004
Page: 2

those in paragraphs 5, 6 and 7.  I have suggested March 23 or 24 for that deposition, in Hartford.  Please let me know if you wish to proceed with the deposition on one of those dates.

Very truly yours,

Michael H. Wetmore

cc:    Joe Fortner

*Exhibit 2* "I

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARENCE R. COLLINS, JR., et al.<br>for themselves and on behalf of a class<br>of similarly situated property owners,<br>Plaintiffs,<br><br>v.<br><br>OLIN CORPORATION and THE TOWN OF<br>HAMDEN,<br>Defendants. | CIVIL ACTION NO.<br>3:03-CV-945(CFD) |

## NOTICE OF DEPOSITION

To:   Michael H. Wetmore, Esq.
      Joel B. Samson, Esq.
      Husch & Eppenberger, LLC
      190 Carondelet Plaza, Suite 600
      St. Louis, Missouri 63105

      Brown Rudnick Berlack Israels LLP
      Sandra K. Davis, Esq.
      Mark S. Baldwin, Esq.
      185 Asylum St.
      Hartford, CT 06103

Please take notice that on **Thursday, January 8, 2004 at 10:00 a.m.** at the office of Cohen and Wolf, PC, 1115 Broad Street, Bridgeport, Connecticut, the plaintiffs in the above-entitled action will take deposition of **Olin Corporation,** by a person or persons to be designated pursuant to Fed.R.Civ.P 30(b)(6) **as having the most knowledge concerning matters listed in paragraphs 1 through 11 below,** upon oral examination, pursuant to Fed.R.Civ.P. 30, before an officer authorized by law to administer oaths.  Olin is requested to produce for inspection and copying at the deposition any documents in its possession, custody or control that are described in Exhibit A, attached hereto.

## DEFINITIONS

The terms "OLIN" or "OLIN CORPORATION" refer to that corporate entity which was formed under Virginia law, which merged with "WESTERN CARTRIDGE COMPANY" in 1944, and which changed its name to "OLIN INDUSTRIES, INC." in 1944 and which changed its name back to "OLIN CORPORATION" in 1969.  The terms "OLIN" and "OLIN CORPORATION" are meant to include, without limitation, all historical operating divisions, the parent corporation, all beneficially or wholly owned subsidiaries, and any re-named entities created by the corporate parent from the time of its legal

inception forward.

The term "Corporate Predecessors" or "alleged Corporate Predecessors" refers to the arms and ammunition manufacturing business formerly owned or operated by WESTERN CARTRIDGE COMPANY and/or WINCHESTER REPEATING ARMS COMPANY, and is intended to include all of the employees of WESTERN CARTRIDGE COMPANY and/or WINCHESTER REPEATING ARMS COMPANY and their duly authorized officers, agents, attorneys, physicians and any and all other consultants, contractors, individuals, firms, historical operating divisions, the parent corporation, all beneficially or wholly owned subsidiaries, and any re-named entities created by the corporate parent from the time of its legal inception forward.

"Asset" shall include, but is not limited to, all inventory, finished goods, work in progress, raw materials, trademarks, patents, machinery, motor vehicles, property leases, customer lists, accounts receivable, and ledgers.

(1) The nature and details regarding the merger or other transaction that took place between "OLIN" and "WESTERN CARTRIDGE COMPANY" on or around December 31, 1944

(2) The nature and details regarding the merger or other transaction that took place between "WESTERN CARTRIDGE COMPANY' and "WINCHESTER REPEATING ARMS COMPANY of MARYLAND" in 1938.

(3) The nature and details regarding the sale of assets or other transaction that took place between "WESTERN CARTRIDGE COMPANY' and "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" on or around December 15, 1931.

(4) The nature and details regarding the sale of assets or other transaction that took place between "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" and "WINCHESTER REPEATING ARMS COMPANY of MARYLAND" on or around December 15, 1931.

(5) The number and names of employees, job descriptions of employees, business activities, and identification of assets for "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" between 1931 and 1934.

(6) The production, manufacture, and identity of any product line of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" which was continued by "WINCHESTER REPEATING ARMS COMPANY of MARYLAND", "WESTERN CARTRIDGE COMPANY' or "OLIN".

(7) The nature of the business operations, including any changes or additions to the product line, distribution system, research and development, personnel, customer base, and waste disposal practices of ""WINCHESTER REPEATING ARMS COMPANY of MARYLAND", "WESTERN CARTRIDGE COMPANY" or "OLIN" as a result of the

asset purchase of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" in 1931.

(8) The location of corporate record books which contain records pertaining to the asset purchase of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" by "OLIN" or its corporate predecessors in 1931.

(9) Any assumption by "OLIN" for the liabilities for "WINCHESTER REPEATING ARMS COMPANY of DELAWARE".

(10) Any assumption by "OLIN" for the liabilities for "WINCHESTER REPEATING ARMS COMPANY of MARYLAND".

(11) Any assumption by "OLIN" for the liabilities for "WESTERN CARTRIDGE COMPANY".

Plaintiffs,
By their attorney

Neil T. Leifer
THORNTON & NAUMES
100 Summer Street, 30th Floor
Boston, MA 02110
(617)720-1333
nleifer@tenlaw.com

Dated: November 17, 2003

# EXHIBIT A

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.  Please provide copies of the annual financial reports of the following corporate entities, from the years 1931 through the present, inclusive. For those entities that were incorporated after 1931, this should be construed to request those reports which were issued or generated from the date of incorporation, forward:

    1.  "OLIN CORPORATION"
    2.  "OLIN INDUSTRIES, INC."
    3.  "OLIN MATHIESON CHEMICAL CORPORATION"
    4.  "WESTERN CARTRIDGE COMPANY"
    5.  "WINCHESTER REPEATING ARMS COMPANY OF DELAWARE"
    6.  "WINCHESTER REPEATING ARMS COMPANY OF MARYLAND"
    7.  "WINCHESTER REPEATING ARMS COMPANY OF CONNECTICUT"

2.  Produce a copy of any documents relating to the purchase, sale or licensing for use of the Winchester Trademark by "OLIN CORPORATION" and/or "WESTERN CARTRIDGE COMPANY".

3.  Produce a copy of any document relating to the corporate history of "WESTERN CARTRIDGE COMPANY".

4.  Produce a copy of any document relating to the corporate history of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE".

5.  Produce a copy of any document relating to the corporate history of "WINCHESTER REPEATING ARMS COMPANY of MARYLAND".

6.  Produce a copy of any document that indicates the sale of any firearm products under the Winchester trademark by "OLIN CORPORATION".

7.  Produce a copy of any document that indicates the sale of any firearm products under the Winchester trademark by "WESTERN CARTRIDGE COMPANY".

8.  Produce a copy of any document that indicates the sale of any firearm products under the Winchester trademark by "WINCHESTER REPEATING ARMS COMPANY of MARYLAND".

9.  Produce a copy of any document that indicates the sale of any firearm products under the

Winchester trademark by "WINCHESTER REPEATING ARMS COMPANY of DELAWARE".

10. Produce a copy of any and all transactional document constituting the merger agreement or its equivalent, between "WESTERN CARTRIDGE COMPANY" by "OLIN CORPORATION" in 1944.

11. Produce a copy of any and all transactional documents constituting the merger agreement or its equivalent, between "WESTERN CARTRIDGE COMPANY" and "WINCHESTER REPEATING ARMS COMPANY of MARYLAND".

12 .Produce a copy of any document memorializing or describing the acquisition of stock, assets, or liabilities of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" by "WESTERN CARRIAGE COMPANY".

13. Produce a copy of any document memorializing the transfer of stock, assets, or liabilities to "WINCHESTER REPEATING ARMS COMPANY of MARYLAND" by "WESTERN CARRIAGE COMPANY".

14. Produce a copy of any document which describes any aspect of the business of "WESTERN CARTRIDGE COMPANY" prior to its merger with "OLIN CORPORATION" in 1944 or any of its operating divisions or wholly owned subsidiaries.

15. Produce a copy of any document which describes any aspect of the business of "OLIN CORPORATION" or any of its corporate predecessors which discuss, analyze or survey the assets, liabilities, history or business of "REPEATING ARMS COMPANY of MARYLAND", "WESTERN CARTRIDGE COMPANY", and/or "REPEATING ARMS COMPANY of DELAWARE".

16. Produce a copy of any document, including agreements relating to the assumption of "WESTERN CARTRIDGE COMPANY" liabilities, indemnity agreements with third-parties, or other forms of transactional agreements which you contend, relieve, exonerate or indemnity "OLIN CORPORATION" from responsibility or liability for the debts or legal obligations of "WESTERN CARTRIDGE COMPANY", "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" and/or "WINCHESTER REPEATING ARMS COMPANY of MARYLAND".

17. Produce a copy of any document relating to the continuation of the business enterprise of "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" by "WINCHESTER REPEATING ARMS COMPANY of MARYLAND", "OLIN CORPORATION", or "WESTERN CARTRIDGE COMPANY", including use of the same distribution system, customer base, research and development, and product line.

18. Produce a copy of any document relating to any announcement to the public, including any press release, advertisement or promotional material related to the transaction that

occurred between "WINCHESTER REPEATING ARMS COMPANY of DELAWARE" and "WINCHESTER REPEATING ARMS COMPANY of MARYLAND", "OLIN CORPORATION", or "WESTERN CARTRIDGE COMPANY" in 1931.

19. Describe in general terms, any document requested herein which you are withholding as a result of a claim of attorney/client privilege or work product privilege.

## <u>CERTIFICATION</u>

I hereby certify that I, _____, am the _____ of Olin; that I

have read the foregoing answers to interrogatories and responses to requests for production of

documents; that I understand the answers and responses; and that the answers and responses are

true, accurate and complete.

_____

Sworn and subscribed to
before me this      day
of _____ 2003.

_____

Notary Public