> bounded to the east and west by Wadsworth Street and St. Mary's Street and bounded to the north and south by Mill Rock Road and Goodrich Street. (this area is collectively referred to as "Newhall Section"). Plaintiffs' Amended Complaint, ¶22 (citing the Consent Order No. SRD-128).

- Winchester and/or its successor, Olin, continued to dump ash and other industrial waste in Hamden run disposal facilities, and specifically at the Newhall Section, until its closure. Plaintiffs' Amended Complaint, ¶24.[2]

Second, as noted in *Vaillancourt*, at the time Olin allegedly disposed of and/or released hazardous substances, the term "hazardous waste" and "hazardous materials" had no particular meaning and laws defining "hazardous waste" and regulating disposal were not enacted until much later. *See, e.g., Vaillancourt*, 2002 WL 1293053, *2 n.1 (pointing to Conn.Gen.Stat. §22a-448(3) and Conn.Gen.Stat. §22a-115 in noting that definitions of "hazardous waste" and "hazardous materials" were not in place as of 1967, the last date of defendant's alleged use of the landfill); Conn.Gen.Stat. §22a-448(3) (1979 Public Acts No. 79-605) (definition of "hazardous waste," referring to definition under 1976 federal law); Conn.Gen.Stat. §22a-115 (1980 Public Acts No. 80-472) (same). Plaintiffs have not alleged that, at the time of Olin's activities, a then existing standard of care prohibited dumping or that any such dumping would violate any standard. Having failed to allege any standard of care prohibiting dumping at the time of Olin's alleged activities, Plaintiffs cannot assert that they were owed a duty by Olin not to dump. Without such a duty, there can be no negligence for Olin's actions.

---

[2] While Plaintiffs' allegations are to be taken as true for purposes of Olin's Motion to Dismiss, Olin disagrees with Plaintiffs' assertions of successor liability and specifically states that Olin is not the successor in interest to Winchester Repeating Arms Company ("Winchester") and is not responsible for any activities undertaken by Winchester before 1932, as alleged in Plaintiffs' Amended Complaint. Olin intends to move for summary judgment on the successor liability issue.

ST_LOUIS\#40175787 v1 - Olin/Memo form 1          7

It is not credible to argue that given what Olin knew, or should have known at the time, Olin could possibly anticipate the harm allegedly suffered by the Plaintiffs. *See e.g., Lodge*, 246 Conn. at 717 A.2d at 575 ("A defendant is not required to take precautions against hazards [that are] too remote to be reasonably foreseeable. Due care is always predicated on the existing circumstances." Citations omitted).

Moreover, as in *Vaillancourt*, not only could Olin not foresee the types of injury Plaintiffs now allege, Olin had no reason to foresee that the Town of Hamden would fail to operate, maintain, or close the public dumps properly.[3] Nor are there, or can there be, any allegations that Olin had any role in closing the public dumps or in the development of those areas afterwards. As in *Vaillancourt*, it would be against public policy to impose upon Olin the duty to have anticipated the course of events that followed Olin's use of the public dumps in the Newhall Section of Hamden. *See also, Accashian v. City of Danbury*, 1999 WL 30594, *3, 23 Conn. L. Rptr. 656 (Conn. Super. 1999) ("It is not the public policy of this state to impose on entities disposing of wastes a duty to oversee and regulate the operation of the facilities where the wastes are accepted.").[4] Accordingly, Olin cannot be said to have owed a duty of care to Plaintiffs and Count I of Plaintiffs' Amended Complaint should be dismissed. *See, also, Lodge*, 717 A.2d at 222 (no duty because harm was not foreseeable and policy weighs in favor of there being no legal responsibility under the circumstances).

---

[3] In fact, Plaintiffs make no specific allegations that the Town of Hamden failed to operate, maintain and close the public dumps properly.
[4] For the Court's convenience, a copy of the *Accashian* decision is attached behind Tab 2 to Olin's Appendix of Unreported Decisions filed contemporaneously herewith.

To the extent Count I can be construed to include claims that Olin had any common-law duty to the Plaintiffs arising or continuing after the public dumps were closed, such a claim is equally unavailing. As in *Vaillancout*, any attempt to base a claim of negligence on a failure to warn must fail. This follows because Olin had no common-law duty to the Plaintiffs in the first place and "[e]ven where a defendant initially may have been negligent in the performance of some act, the defendant generally has no continuing duty to warn." *Vaillancourt*, 2002 WL 1293053, *5 ("[c]ourts generally will not impose a continuing duty in negligence unless there is evidence of a special relationship between the parties.") (citations omitted); *Bartha v. Waterbury House Wrecking Co.*, 190 Conn. 8, 13, 459 A.2d 115 (1983) (no continuing duty of contractor to safeguard large hole left on construction site); *Sanborn v. Greenwald*, 39 Conn.App. 289, 297, 664 A.2d 803 (1995) (no continuing duty to warn of negligently prepared stipulation); *Nardi v. AA Elec. Sec. Eng'g, Inc.*, 32 Conn.App. 205, 213, 628 A.2d 991 (1993) (no continuing duty to warn of negligently installed phone jack). No special relationship existed between Olin and Plaintiffs. *See, e.g., Vaillancourt*, 2002 WL 1293053, *5 (listing doctor-patient relationship as only special relationship contemplated).

Count I must be dismissed because Plaintiffs have not, and cannot, establish that Olin owed Plaintiffs any duty arising out of conduct that occurred more than fifty years ago and was encouraged by State and local authorities.

### C. Count III Fails To State A Claim For Gross Negligence/Reckless Conduct

While it is clear that Plaintiffs' ordinary negligence claim in Count I must fail as a matter

of law, it is equally clear that Plaintiffs' gross negligence/reckless conduct claim alleged in Count III must also be dismissed.

### 1. Connecticut Does Not Recognize A Claim For Gross Negligence

To begin with, Plaintiffs' attempt to assert a "gross negligence" claim in Count III is a nonstarter as Connecticut courts do not recognize a cause of action for gross negligence under the facts of this case. "The Connecticut Supreme Court has held that gross negligence is not a separate cause of action. *Decker v. Roberts*, 125 Conn. 150, 157, 3 A.2d 855 (1939). No Connecticut appellate court opinion has questioned *Decker*, and no lower court has disregarded it, outside the bartender liability context." *Martin v. Shell Oil Co.*, 180 F.Supp.2d 313, 325 (D.Conn. 2002) (*citing Decker v. Roberts*, 125 Conn. 150, 157, 3 A.2d 855 (1939)) (granting summary judgment on gross negligence count).

### 2. Plaintiffs' Reckless Conduct Claim Is Insufficient As A Matter Of Law

Plaintiffs' couching Count III as a "reckless conduct" claim is equally deficient. First, Count III must fail for the same reason Count I fails to state a claim. Olin owed no duty to the Plaintiffs with respect to either Counts I or III. This alone warrants a dismissal of Count III. *See, e.g., Bello v. Barden Corp.*, 180 F.Supp.2d 300, 312 (D.Conn. 2002) ("In a claim for intentional or reckless misconduct, the plaintiff must allege that the defendant owed him or it a duty of care." *Citing Sheiman v. Lafayette Bank & Trust Co.*, 4 Conn.App. 39, 46, 492 A.2d 219 (1985)); *French Putnam LLC v. County Environmental Services*, 2000 WL 1172341, *12, 27 Conn. L. Rptr. 684 (Conn. Super. 2000) ("[t]o be legally sufficient, a count based on reckless and

wanton misconduct must, like an action in negligence, allege some duty running from the defendant to the plaintiff." *quoting Sheiman*, 4 Conn.App. at 46).[5]

Second, even if Plaintiffs were able to convince this Court that Olin in fact owed a duty to the Plaintiffs, Count III fails to state a claim because it does not contain any specific allegations which clearly inform the Court and Olin what reckless conduct Plaintiffs relies on in Count III.

Connecticut law is clear; reckless and wanton misconduct and negligence are separate and distinct causes of action that have their own respective essential elements. *Warner v. Kedah Corp.*, 1995 Lexis 2650, *9 (Conn. Super. 1995).[6] Under Connecticut law, to state a claim for intentional or reckless misconduct, a plaintiff must plead that the defendant's conduct was "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Bello*, 180 F.Supp.2d at 312 (*quoting Dubay*, 207 Conn. 518, 533, 542 A.2d at 719). It also must be alleged that these factors were known to exist at the time of the complained action. After all, the essence of negligence—and of unreasonable conduct—is the departure from a known and accepted standard of care. *See, e.g., Roy v. Friedman*, 147 Conn. 121, 124 157 A.2d 599 (Conn. 1960) ("Due care is always predicated on the existing circumstances." Citation omitted); *Warner*, 1995 Conn.Super. Lexis 2650, *12-13 (striking reckless misconduct claim in part because plaintiffs did not "specifically set forth

---

[5] For the Court's convenience, a copy of the *French Putnam* decision is attached behind Tab 3 to Olin's Appendix of Unreported Decisions filed contemporaneously herewith.
[6] For the Court's convenience, a copy of the *Warner* decision is attached behind Tab 4 to Olin's Appendix of Unreported Decisions filed contemporaneously herewith.

ST_LOUIS\#40175787 v1 - Olin/Memo form 1         11

factual allegations to support their claim that the defendants knew, or had sufficient facts before them to know, that their actions involved 'a serious danger to others,' and that, despite knowledge of this substantial risk, nonetheless proceeded to make a conscious choice to disregard said risk." Citation omitted). Plaintiffs and their counsel cannot in good faith make any allegations sufficient to support a reckless conduct claim.

Also, in asserting a claim for reckless conduct, a plaintiff needs to do more than simply restate its negligence claim. "A plaintiff cannot transform a negligence count into a count for willful and wanton misconduct merely by appending a string of adjectives to allegations that clearly sound in negligence." *Brown v. Branford*, 12 Conn. App. 106, 110, 529 A.2d 743 (1987) (citations omitted); *Bello*, 180 F.Supp.2d at 312 ("A plaintiff must allege something more than simple or even gross negligence." Citation omitted). *Warner*, 1995 Lexis 2650, *11 (*quoting Brown*, 12 Conn. App. at 110). Accordingly, any attempt to state a cause of action for reckless and wanton misconduct "should employ language explicit enough to clearly inform the court and opposing counsel that reckless misconduct is relied on." *Warner*, 1995 Lexis 2650, * 11 (*quoting Brock v. Waldron*, 127 Conn. 79, 81, 14 A.2d 713 (1940)); *Bello*, 180 F.Supp.2d at 312 ("Simply using the words 'intentional' and 'reckless' is not enough." Citations omitted).

Just as the plaintiffs in *Brown* and *Warner* failed to transform their negligence count into a claim for reckless misconduct, Plaintiffs here have failed to state a claim for reckless conduct in Count III. The allegations of Count III and Count I are nearly identical—i.e., that Olin disposed of and/or released hazardous substances in the Newhall Section of Hamden, that the

disposal resulted in contamination of the soil and ground water, and that Olin failed to warn residents of the Newhall Section of the hazards it created. Plaintiffs' Amended Complaint, ¶¶ 49, 50, 59 and 60. In discussing Olin's supposed breach of its alleged duties to the Plaintiffs, the only difference between Counts I and III is removal and replacement of the word "negligent" in Count I with the adjectives "willful, wanton and reckless" in Count III. Plaintiffs' Amended Complaint, ¶¶ 50 and 60. "At common law, the insertion of the word 'reckless' or 'recklessness' in a count otherwise stating a claim for negligence is insufficient to state a claim for recklessness." *Goodyear v. Ali*, 2003 WL 283836, *1 (Conn. Super. 2003) (striking common-law recklessness count and noting that "[a] specific allegation setting out the conduct that is claimed to be reckless or wanton must be made." *Id.* (*quoting Dumond v. Denehy*, 145 Conn. 88, 91, 139 A.2d 58 (1958)); *see also Brown*, 12 Conn.App. at 110 (injection of words such as "intentionally and knowingly" does not transform what would otherwise be a negligence claim into a claim for willful and wanton misconduct).[7]

Count III does not set forth factual allegations that would transform Count III into anything more than a simple negligence claim. Accordingly, Count III fails to state a claim against Olin for either gross negligence or reckless conduct and must be dismissed.

D. **Count VII Fails To State A Claim For Negligence Per Se**

In Count VII, Plaintiffs attempt to assert a negligence per se claim predicated on the standard of care set forth in Conn. Gen. Stat. §§ 22a-15, 22a-16 and 22a-427. Count VII fails to

---

[7] For the Court's convenience, a copy of the *Goodyear* decision is attached behind Tab 5 to Olin's Appendix of Unreported Decisions filed contemporaneously herewith.

state a claim because: 1) Plaintiffs cannot establish a duty owed by Olin to the Plaintiffs; 2) Sections 22a-15, 22a-16 and 22a-427 do not support Plaintiffs' negligence per se claim; and 3) even if Sections 22a-15, 22a-16 and 22a-427 did support such a claim, as a matter of law, Olin has a valid excuse or justification for its actions which precludes any such negligence per se claim.

        1.        Plaintiffs Cannot Establish That Olin Owed Plaintiffs A Duty Sufficient To Support A Negligence Per Se Claim

As with a claim for negligence, in order to prove a claim of negligence per se, Plaintiffs must establish duty, breach, proximate cause and damages. *Close, Jensen & Miller, P.C. v. Lomangino*, 51 Conn. App. 576, 588 (1999). When applicable, "[n]egligence per se operates to engraft a particular legislative standard onto the general standard of care imposed by traditional tort principles..." *Gore v. People's Savings Bank*, 235 Conn. 360, 376, 665 A.2d 1341 (Conn. 1995) (*quoting Wendland v. Ridgefield Construction Services, Inc.*, 184 Conn. 173, 178, 439 A.2d 954 (1981)). It is axiomatic however, that Olin must owe Plaintiffs a duty in order for Plaintiffs' negligence per se claim to be viable.

As with Plaintiffs' other negligence claims, Plaintiffs' negligence per se claim fails on the very first element: establishing a duty. As discussed in Section B, *supra*, Olin simply did not owe Plaintiffs any duty with respect to the allegations contained in Count VII. Plaintiffs attempt to use Sections 22a-15, 22a-16 or 22a-427 does not overcome this deficiency.

        2.        Sections 22a-15, 22a-16 and 22a-427 Cannot Form The Basis Of A

Negligence Per Se Claim Arising Out Of Any Conduct Of Olin Prior To
Enactment Of Such Statutes

It defies logic to contend that sections 22a-15, 22a-16 or 22a-427 can supply a standard of care for any activity Olin engaged in prior to the effective dates of these statutes. Cases discussing negligence per se claims do so in terms of whether an existing statute has been violated. See, *e.g.*, *Staudinger v. Barrett*, 208 Conn. 94, 103, 544 A.2d 164 (Conn. 1988) (court refused to rule on whether a negligence per se instruction was required where court was unable to determine whether the policy/statute alleged to provide negligence per se claim was actually adopted). The reason for this is that while negligence per se allows a plaintiff to invoke a statute to establish a duty of care, the claim still sounds in negligence and therefore whether a duty exists must be based on the then-existing circumstances. *See, e.g., Roy*, 147 Conn. at 124; *Vaillancourt*, 2002 WL at *1-2. Then-existing circumstances cannot possibly include a statute not yet in existence. A review of Connecticut case law has not uncovered a single case which predicates a negligence per se claim on a statute enacted after the conduct alleged to violate the statute occurred.

In fact, as will be discussed more fully in Subsection 4, courts routinely permit a defendant to avoid negligence per se liability upon proof of a valid excuse or justification for the defendant's conduct. *See, Restatement (Second) of Torts*, §288A (1965); *Gore*, 235 Conn. at 376-77 (adopting Restatement (Second) Torts, §288A rationale). One express "excuse" for an alleged violation is when a statute does not yet exist. In that situation it is plain that one "neither knows nor should know of the occasion for compliance." *Restatement (Second) of Torts*, §288A.

Clearly, if a statute has not yet been passed, there is no way for a defendant to "know" how to comply with such statute. Logic mandates that negligence per se claims not be predicated on statutes which were not in existence when the conduct allegedly giving rise to the claims occurred.

Olin's alleged conduct upon which Plaintiffs rely for their negligence per se claim occurred some fifty years ago. Sections 22a-15 and 22a-16 were not adopted until 1971, well after the alleged conduct occurred. *See*, Conn.Gen.Stat. §§22a-15 and 22a-16. Section 22a-427 was not adopted until 1958. *See*, Conn.Gen.Stat. §22a-427. Plaintiffs' attempt to predicate a negligence per se claim on these statutes must fail and Count VII must be dismissed.

        3.     <u>Section 22a-427 Cannot Form The Basis Of A Negligence Per Se Claim</u>

In addition, with respect to section 22a-427 of the Connecticut Water Pollution Control Act ("CWPCA"), as this court has previously recognized "[t]here is a split of authority in the lower courts of Connecticut regarding the propriety of negligence per se actions pursuant to CWPCA." *Martin*, 180 F.Supp.2d at 324. Cases holding that the CWPCA does not provide a basis for negligence per se claims are well reasoned and their rationale should be adopted as it was in *Bernbach v. Timex Corp.*, 989 F.Supp. 403 (D.Conn. 1996). The *Bernbach* court was "persuaded by the reasoning and the number of Connecticut cases....that indicate that the legislature did not intend to provide private parties with negligence per se actions for violation of the [WPCA]." *Bernbach*, 989 F.Supp. at 408 (*citing Connecticut Water*, 1996 WL at *1-4). In holding that the CWPCA cannot be the basis of a negligence per se claim, *Connecticut Water*

stated:

> The reasons for the reluctance of courts to adopt administrative regulations as standards for negligence per se is ...that pursuant to these acts administrative agencies manufacture complicated regulations covering broad areas of activity. It is one thing for a court to look at a particular statute or even regulation covering an isolated activity and determine that it should adopt the standard set forth in the statute or regulation as a per se negligence standard, it is quite another thing to have a court adopt a whole undefined body of administrative regulations such as alluded to in 22a-430 as a standard to be applied in negligence cases on a per se basis...

*Connecticut Water Co. v. Town of Thomaston*, 1996 WL 168051, *2, 16 Conn. L. Rptr. 213 (Conn. Super. 1996)[8]; *see also*, *Hartt v. Schwartz*, 1996 WL 434452, *8 (Conn. Super. 1996) (relying on reasons stated in *Connecticut Water* in holding that violations of the provisions of the Water Pollution Control Act cannot be used to form the basis of a negligence per se claim)[9]; *Reiser v. Island Transportation Company*, 2000 WL 675615, *3, 26 Conn. L. Rptr. 642 (Conn. Super. 2000) (holding that section 22a-427 does not support a claim of negligence per se and stating "[a]lthough they may serve as evidence of negligence, these statutes are part of a broad regulatory scheme and do not represent specific requirements, the violation of which constitutes negligence per se").[10]

In line with these cases and their underlying rationale, Plaintiffs cannot base their negligence per se claim on an alleged violation of §22a-427.

    4.    To The Extent The Court Allows Sections 22a-15, 22a-16 Or 22a-427 To

---

[8] For the Court's convenience, a copy of the *Connecticut Water Co.* decision is attached behind Tab 6 to Olin's Appendix of Unreported Decisions filed contemporaneously herewith.

[9] For the Court's convenience, a copy of the *Hartt* decision is attached behind Tab 7 to Olin's Appendix of Unreported Decisions filed contemporaneously herewith.

[10] For the Court's convenience, a copy of the *Reiser* decision is attached behind Tab 8 to Olin's Appendix of Unreported Decisions filed contemporaneously herewith.

Support A Negligence Per Se Claim, Olin Is Excused From Any Violations Of These Statutes

In cases involving negligence per se, a defendant such as Olin may avoid liability upon proof of a valid excuse or justification for their conduct. *Gore*, 235 Conn. at 376 (*citing* The Restatement (Second), Torts, §288A (1965)). Section 288A provides in part:

Excused Violations

(1)     An excused violation of a legislative enactment or an administrative regulation is not negligence.
(2)     Unless the enactment or regulation is construed not to permit such excuse, its violation is excused when …
        (b) he neither knows nor should know of the occasion for compliance.

Restatement (Second), Torts, §288A (1965)

As *Gore* noted "even if a defendant has contravened a statute the violation of which constitutes negligence per se, that defendant usually may avoid liability by showing that 'he neither knows nor should know of the occasion for compliance.' The commentary to the Restatement explains that '[w]here the actor neither knows nor should know of any occasion or necessity for action in compliance with the legislation or regulation, his violation of it will ordinarily be excused.'" *Gore*, 235 Conn. at 377 (citations omitted).

As previously discussed, when Olin was allegedly disposing of waste in the Newhall Section of Hamden, there was no statute in existence to prevent Olin from so acting. Not only was there no statute in place, but by Plaintiffs own admission, Olin was encouraged to dump in the Newhall Section of Hamden. Plaintiffs' Amended Complaint, ¶¶ 20 through 24. Under these circumstances, not only must any actions by Olin be considered to be excused in the

ST_LOUIS\#40175787 v1 - Olin/Memo form 1                 18

context of a negligence per se action, Olin certainly could not have known of any occasion to comply with nonexistent statutes that, once they were adopted, would be urged to create standards of care for Olin to follow.

## CONCLUSION

For the foregoing reasons, Olin requests that the Court grant Olin's Motion to Dismiss Counts I, III and VII of Plaintiffs' Amended Complaint.

HUSCH & EPPENBERGER, LLC

By: *Michael H. Wetmore/svs*
Michael H. Wetmore (ct24899)
Joel B. Samson (ct24898)
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone: 314-480-1500
Fax: 314-480-1505
michael.wetmore@husch.com
joel.samson@husch.com

and

BROWN RUDNICK BERLACK ISRAELS LLP
Sandra K. Davis
185 Asylum St.
CityPlace I, 38th Floor
Hartford, CT 06103
Telephone: 860-509-6500
Fax: 860-509-6501
sdavis@brbilaw.com

*Attorneys for Defendant Olin Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 1st day of August, 2003, by first class mail, postage prepaid to:

David B. Zabel
Monte E. Frank
Cohen and Wolf, P.C.
158 Deer Hill Avenue
Danbury, CT  06810
Telephone: (203) 792-2771
Facsimile: (203) 791-8149

and

Mark Roberts
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, MA  02114
Telephone: (617) 722-8222
Facsimile: (617) 720-2320

*Attorneys for Plaintiff*


Ann M. Catino
Lori Dibella
Joseph G. Fortner, Jr.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Telephone:  (860) 522-6108
Facsimile: (860) 548-0006

*Attorneys for Town of Hamden*

Sandra K. Davis