investigative activities is extensive. For example, Olin must notify the Commissioner at least six (6) business days prior to the installation of any monitoring wells, or the sampling of any soil or surface or ground water to permit the Commissioner or his staff to be present when those activities are performed. *See* ¶ B.3.c. If the approved scope of study does not fully characterize the extent of pollution at the site, then the Commissioner may require additional investigation in accordance with a supplemental plan and schedule. *See* ¶ B.3.d. Unless otherwise specified in writing by the Commissioner, the supplemental plan and schedule shall be submitted for review and approval on or before thirty (30) days after notice that such plan and schedule are required. *See* ¶ B.3.d.

Once Olin's Investigation is complete, the Consent Order requires Olin to submit for written approval a report describing its investigation, which must: (1) define the existing and potential extent of soil, surface water, and ground water pollution emanating from the site; (2) evaluate alternatives for remedial action in accordance with the standards set forth in Section 22a-133k of the Connecticut General Statutes; (3) state a detailed, expeditious schedule for performing each alternative; (4) list all permits and approvals that would be required for each alternative; (5) propose a preferred alternative with supporting justification; and (6) proposes a detailed remedial action plan and schedule to perform the remedial action. *See* ¶ B.3.e. This schedule must also include a schedule for applying for and obtaining all necessary permits and approvals. *See Id.*

With respect to Olin's remediation activities, on or before thirty (30) days after the

ST_LOUIS\#40175793 v1 - Olin / Memo 4                     6

Commissioner has approved a remedial action alternative, Olin must submit to the Commissioner for review and approval a plan for soil, surface water and ground water monitoring to determine the effectiveness of the remedial actions, as well as a schedule for performing the monitoring program. *See* ¶ B.3.f.

Olin must perform its monitoring program in accordance with the schedule approved by the Commissioner. *See* ¶ B.3.j.1. On a schedule determined by the Commissioner in writing, or, if no such schedule is established, on a quarterly basis beginning no later than ninety (90) days after initiation of the approved remedial actions, Olin must submit for the Commissioner's review and approval a report describing the results of its monitoring program during that quarter or reporting period. *See* ¶ B.3.j.2.

Olin must perform the remedial action in accordance with the approved plan and schedule. *See* ¶ B.3.i.1. On or before fifteen (15) days of completing the remedial action, Olin shall certify to the Commissioner (in writing) that the actions have been completed as approved. *See* ¶ B.3.i.2.

If the Commissioner determines that the approved remedial actions do not result in the prevention of soil, surface water and ground water pollution consistent with the Remediation Standard Regulations, Conn. Agencies Regs. §§ 22a-133k-1 to k-3, the Commissioner can order that additional remedial actions be performed in accordance with a supplemental plan and schedule approved in writing by the Commissioner. *See* ¶ B.3.k. Unless otherwise specified in writing by the Commissioner, the supplemental plan and schedule must be submitted on or

before thirty (30) days after notice from the Commissioner that the plan and schedule are required. *See Id.* Pursuant to a schedule established by the Commissioner, or if no schedule, on a quarterly basis beginning no later than ninety (90) days after the initiation of the approved remedial actions or supplemental remedial actions, Olin must submit for review and approval a report describing the results to date of the monitoring program to determine the effectiveness of the remedial actions. *See* ¶ B.3.K.1.

In addition, as the investigation and remediation progress, if the Commissioner determines that any submission submitted under the Consent Order is deficient, and does not approve it with conditions or modifications, it is deemed disapproved and Olin must resubmit it (corrected) within the timeframe specified by the Commissioner, or within thirty (30) days of the notice of the deficiencies if no timeframe is specified. *See* ¶ B.8.

Finally, within fifteen (15) days of the date Olin becomes aware of a change in information submitted to the Commissioner, Olin must submit updated information to the Commissioner. *See* ¶ B.19. In addition, in the event Olin becomes aware that it did not, or may not, comply or comply on time, with any requirement of the Order, Olin must immediately notify the DEP by telephone and must take reasonable steps to ensure that any noncompliance or delay is avoided or minimized. *See* ¶ B.24. Within five (5) days of the initial notice, Olin must submit in writing the date, time, and duration of the noncompliance and the reasons therefore, and dates by which compliance will be achieved. *See Id.* Olin must comply with any dates that may be approved in writing by the Commissioner. *See Id.*

Olin regrets the need to have spelled out in such detail the extent of the investigation and remediation that it has agreed to perform on the Non-Public Properties. We do so to emphasize what Olin and the DEP have already agreed will be done and to emphasize that what Plaintiffs want is for the Court to step into DEP shoes, presumably not just with respect to Olin, but for all the parties to the Consent Order.[3]

As is clear from these requirements, at each stage of the investigation and remediation, the Commissioner will be monitoring and approving work performed by Olin and the other parties to the Consent Order. In addition to the process described above, on or before the last day of March, June, September, and December of each year after the issuance of the Consent Order and continuing until all actions have been completed and approved, Olin is required to submit a progress report to the Commissioner describing the actions that Olin has taken to date to comply with the Consent Order. *See* ¶ B.5.

In addition to the monitoring role of the DEP, the Consent Order provides for public participation in the investigation and remediation process. Specifically, "[t]he Commissioner shall develop and implement a public participation plan to ensure public involvement in the investigation and clean up process." *See*, Consent Order, ¶B.4. The Consent Order also requires that Olin and the other parties to the Consent Order participate in implementing this public participation plan. *Id.* To this end, Olin originally set up a community advisory panel, which the DEP has since taken over. The DEP has hired a facilitator and recently held a meeting of the

---

[3] The Court will note that in the Consent Order the Commissioner has agreed, on behalf of the State of Connecticut, to pay 50% of the remediation costs at the Non-Public Properties. The Plaintiffs presumably also want the Court to supervise the State of Connecticut in its funding of its share of the remediation.

ST_LOUIS\#40175793 v1 - Olin / Memo 4                9

panel. At this meeting, Olin made a presentation of its original study results.

As described above, the path to a completed remediation of the Public and Non-Public Properties is well defined and is progressing rapidly. Nonetheless, the Plaintiffs want the Court to order the DEP to step aside and to substitute itself for the DEP in the intricate and detailed requirements of the Consent Order.

## ARGUMENT AND AUTHORITIES

Under the doctrine of primary jurisdiction, Count V of Plaintiffs' Amended Complaint should be dismissed. Primary jurisdiction "comes into play whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Martin v. Shell Oil Co.*, 198 F.R.D. 580, 585 (D.Conn. 2000) (*quoting Johnson v. Nyack Hospital*, 964 F.2d 116, 122 (2d Cir. 1992). The issue is not whether a federal court has jurisdiction over a cause of action, but rather whether in the court's discretion a cause of action should be dismissed so that the appropriate administrative agency, be it federal or state, may perform its function with respect to the cause of action at issue. *Id.* (*citing Reiter v. Cooper*, 507 U.S. 258, 268-69, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993)).

In applying the doctrine of primary jurisdiction, courts do not follow a fixed formula. Rather, "the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *U.S. v. Western Pacific Railroad Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 l.Ed.2d 126 (1956) (doctrine of

primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.") Four factors are usually considered in determining whether to apply the doctrine to the facts of a particular case. The four factors are: 1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; 2) whether the question at issue is particularly within the agency's discretion; 3) whether there exists a substantial danger of inconsistent rulings; and 4) whether a prior application to the agency has been made. *Martin*, 198 F.R.D. at 585 (citations omitted).

Although *Martin* sets forth the appropriate factors to consider in deciding whether to invoke the primary jurisdiction doctrine, the factual analysis of *Martin* is inapplicable to this case. In *Martin*, plaintiffs sought money damages for negligence, negligence per se, strict liability, gross negligence, private nuisance, trespass and fraud. *Martin*, 198 F.R.D. at 584-85. In addition to monetary damages, the plaintiffs also sought an order enjoining defendants from allowing continued migration of hazardous substances onto plaintiffs' properties and requiring defendants to connect plaintiffs to a potable water supply. *Id.* at 585. In response to plaintiffs' demands, the *Martin* defendants sought to have <u>all</u> of plaintiffs' claims dismissed under the primary jurisdiction doctrine.

Olin is not invoking the primary jurisdiction doctrine to dismiss Plaintiffs' Amended Complaint in its entirety. Rather, primary jurisdiction is invoked to dismiss those counts of Plaintiffs' Complaint which ask the Court to step in the shoes of DEP to order precisely the type

of relief that is already in place in the Consent Order that DEP is overseeing. Olin invokes the primary jurisdiction doctrine with respect to Plaintiffs' claims that so clearly require the resolution of issues which have "been placed within the special competence of an administrative body"—i.e. the DEP. A review of the factors set out in *Martin* establishes that Plaintiffs' Count V, which seeks injunctive relief based on alleged violations of The Environmental Protection Act of 1971, should be dismissed based on the primary jurisdiction doctrine.

*Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Railway* dealt with issues very similar to this. In *Schwartzman*, the court was asked to issue two forms of injunctive relief. One sought an order instructing the defendant to abate a public nuisance by investigating, containing, and remediating the soil and groundwater. The other sought an order enjoining defendants from further contaminating the groundwater. *Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Railway*, 857 F.Supp. 838, 841 (D.N.M. 1994). After analyzing factors similar to those set out in *Martin*, *Schwartzman* refused to order the injunctive relief sought and left the investigation and remediation in the capable hands of the EPA and New Mexico Department of the Environment. *Id.* at 844. This is precisely the result this Court should reach.

        1. <u>The Relief Sought by Plaintiffs Involves Technical And Policy Considerations Within The DEP's Field of Expertise And Is Within the DEP's Discretion</u>

The first and second factors set forth in Martin are "whether the question at issue is within the conventional expertise of judges or whether it involves technical or policy considerations within the agency's particular field of expertise" and "whether the question at

issue is particularly within the agency's discretion." *Martin*, 198 F.R.D. at 585. Plaintiffs' request that Olin be ordered "to perform any and all response actions on an expedited basis that are necessary to protect and restore the ground water quality and other natural resources that have been or are threatened to be adversely impacted by Olin's disposal of hazardous substances in the Newhall Section of Hamden," is squarely within the DEP's field of expertise and within the agency's discretion. In addition, the DEP has already procured Olin's commitment, through the Consent Order, to provide the very relief sought by Count V of Plaintiffs Amended Complaint.[4] Unlike in *Martin*, Count V of Plaintiffs' Amended Complaint does not merely implicate legal questions of duty, breach, trespass or the creation of a nuisance. *Martin*, 198 F.R.D. at 585 (evaluating factors based on whether or not the DEP would provide assistance in establishing Plaintiffs' legal theories for recovery of monetary damages). In fact, Count V does not seek monetary damages. Rather, Plaintiffs' Count V implicates the location of investigatory wells, interpretation of the results of the investigations, determining how to remedy any contamination discovered through the investigations and additional complex issues within the DEP's field of expertise and discretion.

In assessing theses issues, *Schwartzman* acknowledged that if plaintiff obtains the relief sought from the court:

> the Court would have to fashion an appropriate investigatory and remediation order. Such an order would have to specify the proper number and placement of monitoring wells, how deep the wells should be drilled, the adequacy of various proposed sampling methods, and

---

[4] It is important to note that DEP has the authority to enforce compliance with the Consent Order through the use of fines and penalties. Moreover, DEP can seek court intervention if necessary. *See, e.g.*, Consent Order, ¶B.12.

> other details of the investigation and cleanup effort. The Court would have to assess whether [defendant] has adequately investigated the groundwater contamination, or whether further investigation would be necessary; whether [defendant's] methods of remediation are adequate; what level of contamination is tolerable or acceptable; and a myriad other technical matters. Theoretically, the Court could receive extensive expert testimony, or appoint a special master, but such methods would represent a serious drain of judicial resources and would largely duplicate the present efforts of the EPA and the NMED. Evaluating the proper components of such a plan is best left to the EPA, a body that is far better suited to resolve such issues by reason of 'specialization, by insight gained through experience, and by more flexible procedure.'

*Schwartzman*, 857 F.Supp. at 842 (citation omitted).

Plaintiffs' implication that the DEP is not attempting to have the area investigated and remediated on an "expedited" basis is not only contrary to the purpose and goal of the DEP, it also presumes that this Court can achieve Plaintiffs' intended result more rapidly than the DEP. As described above, the DEP is already ensuring that Olin is taking the necessary steps – in a timely fashion – to investigate and remedy any contamination on the Non-Public Properties. This complicated process is being actively overseen by the DEP. Plaintiffs have not and cannot in good faith allege that the process can be sped up merely through an Order of court, which is all Plaintiffs seek in Count V.

Plaintiffs do not contend that the DEP is failing to properly oversee the investigation and remediation of the alleged contamination in the Newhall Section of Hamden, nor would such an allegation stand. Rather, Plaintiffs merely want Olin ordered to take the actions required by the Consent Order on an "expedited" basis. Courts that have considered precisely this argument reject the idea that the Court – rather than the state or federal agencies with longstanding expertise – will ensure a quicker or better investigation or remediation.

As the *Schwartzman* court noted "[i]f Plaintiff's ultimate goal is remediation of the site, this goal would be achieved faster and more efficiently through the joint efforts of the EPA and the NMED without interference from the Court." *Schwartzman*, 857 F.Supp. at 842. *See also, In Re Agent Orange Product Liability Litigation*, 475 F.Supp. 928, 932 (E.D.N.Y. 1979) (holding it "beyond dispute" that the requests for injunctive and declaratory relief at issue invoke the doctrine of primary jurisdiction because they raise matters within a comprehensive regulatory scheme under the supervision of the EPA.).

Practically speaking, if this Court were to issue an order requiring the investigation and remediation to take place on an "expedited basis," an extensive amount of the Court's time would be spent policing any such order. Doing so would entail at least an initial hearing, or hearings, on what constitutes an "expedited basis" and the prospect of repeated hearings to determine whether the "expedited basis" definition is being met at each stage of the investigation and remediation. The most efficient way to achieve remediation of the Public and Non-Public Properties is to allow the DEP to continue to oversee compliance with the Consent Order.

### 2. If The Court Grants Plaintiffs' Requested Relief, There Will Be A Substantial Danger Of Inconsistent Rulings

Turning to the third factor, as *Schwartzman* noted, "[o]ne purpose of the doctrine of primary jurisdiction is to promote uniformity and harmony in the regulatory sphere the agency is entrusted to govern." *Schwartzman*, 857 F.Supp. at 842 (citations omitted). As *Schwartzman* held, if this Court were to independently determine the appropriate investigatory and remediation plan, and the timetable for each, aspects of the Court's plan might contradict both the pending

investigation and future remediation required by the Consent Order as well as the DEP's monitoring efforts. *Id.* This would necessarily lead to potential conflicting obligations for Olin. One of the primary rationales for invoking the doctrine of primary jurisdiction is to avoid inconsistent judicial and administrative rulings. *See, e.g., MCI Communications Corp. v. American Telephone and Telegraph Co.*, 496 F.2d 214, 223 (3rd Cir. 1974).

A simple review of the Consent Order illuminates the complexity of issues and constant monitoring implicated by the investigation and remediation of the Newhall Section of Hamden. If Olin were required to report to both the Court and the DEP in performing its investigation and remediation of the Non-public properties, Olin would certainly be exposed to inconsistent deadlines and requirements. Moreover, only Olin and the Town of Hamden are before the Court in this matter. Two other parties to the Consent Order, the South Central Connecticut Regional Water Authority and the State Board of Education, are not parties to this proceeding. Therefore, any order of the Court commanding Olin or the Town of Hamden to do, or not do, a certain act, might not only be inconsistent with DEP requirements, but may also be inconsistent with the requirements and timing of the South Central Connecticut Regional Water Authority or the State Board of Education's obligations under the Consent Order. Any such court order might also conflict with the coordinated efforts contemplated by the Consent Order. As an example, the Consent Order provides that:

> "if environmentally appropriate and in compliance with the Remediation Standard Regulations and other state and federal laws, the parties performing the remediation of the Non-Public Properties may, after consultation with the Town and the South Central Connecticut Regional Water Authority, consolidate materials or waste from Non-Public

> Properties onto the Hamden Middle School Property portion of the Site ...Any remediation of the Hamden Middle School property or use of that property for the consolidation of materials or waste from the non-public properties shall be coordinated and timed so as not to interfere with the normal use and functioning of the Hamden Middle School property as a school."

Consent Order, ¶ B.1.d.

The best and most efficient way to complete the investigation and remediation of the Hamden area will be to leave monitoring and approval efforts in the capable hands of the DEP.

### 3. The Relief Sought By Plaintiffs Is Already Being Addressed By The DEP

In addressing the final factor, Plaintiffs cannot credibly argue that the DEP is not already well on its way to achieving the relief Plaintiffs seek in Count V. As previously discussed, Olin voluntarily, and before the Consent Order was agreed to, submitted a "Work Plan" and an "Initial Findings Report." The DEP has reviewed the Initial Findings Report and on June 10, 2003, requested that Olin develop a plan to conduct additional investigations for DEP's review and comment. As a result, pursuant to the Consent Order, Olin submitted an additional scope of study for a supplemental investigation of the Non-Public Properties portion of the site for DEP's review and written approval. On July 16, 2003, in compliance with its obligations under the Consent Order, Olin submitted a Supplemental Investigation Workplan for the Non-Public Properties Study Area. Olin is awaiting the Commissioner's approval of the recently submitted Workplan.[5]

Without a doubt, the process of investigating and remediating the Non-Public Properties

---

[5] As noted in footnote 2, all these documents are official public records of the DEP to which the Court can take judicial notice.

is well underway. Moreover, the process is being closely monitored by the DEP. As such, Count V is ripe for dismissal under the doctrine of primary jurisdiction. As *Martin* noted "the [DEP] is charged with protecting the environment for the public's health and safety…It does not have the purpose of vindicating individual property rights such as those asserted by the plaintiffs in this case." *Martin*, 198 F.R.D. at 587. Conversely, courts are charged with vindicating individual property rights such as any valid claims for negligence and nuisance. What the *Schwartzman* Court said is equally applicable here. "Courts refuse to defer jurisdiction if the plaintiff is seeking damages for injury to property or person, as this is the type of relief courts routinely consider; however if injunctive relief is called for, requiring scientific or technical expertise, the doctrine is more readily applicable." *Schwartzman*, 857 F.Supp. at 843 (citations omitted).

    Count V of Plaintiffs' Amended Complaint is precisely the type of relief which implicates the primary jurisdiction doctrine. Because the injunctive relief sought by Count V is already being addressed by the DEP, the doctrine of primary jurisdiction warrants a dismissal of Count V. *See, Schwartzman*, 857 F.Supp. at 842 ("It is axiomatic that the advisability of invoking primary jurisdiction is greatest where the issue is already before the agency.")(citations omitted); *Mississippi Power & Light Co. v. Pipe Line Co.*, 532 F.2d 412, 420 (5th Cir. 1976) ("The advisability of invoking primary jurisdiction is greatest when the issue is already before the agency.") (citations omitted).

## CONCLUSION

For the foregoing reasons, Olin requests that the Court grant Olin's Motion to Dismiss Count V of Plaintiffs' Amended Complaint.

HUSCH & EPPENBERGER, LLC

By: *Michael H. Wetmore/JBS*
Michael H. Wetmore (ct24899)
Joel B. Samson (ct24898)
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone: 314-480-1500
Fax: 314-480-1505
michael.wetmore@husch.com
joel.samson@husch.com

and

BROWN RUDNICK BERLACK ISRAELS LLP
Sandra K. Davis
185 Asylum St.
CityPlace I, 38th Floor
Hartford, CT 06103
Telephone: 860-509-6500
Fax: 860-509-6501
sdavis@brbilaw.com

*Attorneys for Defendant Olin Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 1st day of August, 2003, by first class mail, postage prepaid to:

David B. Zabel
Monte E. Frank
Cohen and Wolf, P.C.
158 Deer Hill Avenue
Danbury, CT 06810
Telephone: (203) 792-2771
Facsimile: (203) 791-8149

and

Mark Roberts
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, MA 02114
Telephone: (617) 722-8222
Facsimile: (617) 720-2320

*Attorneys for Plaintiff*


Ann M. Catino
Lori Dibella
Joseph G. Fortner, Jr.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Telephone: (860) 522-6108
Facsimile: (860) 548-0006

*Attorneys for Town of Hamden*

_____
Sandra K. Davis

**ORAL ARGUMENT REQUESTED**