# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARENCE R. COLLINS, JR., et al., | : | CIVIL ACTION NO. 3:03 CV-945(CFD) |
| | : | |
| V. | : | |
| | : | |
| OLIN CORPORATION, et al., | : | |
| | : | March 31, 2004 |

## OLIN CORPORATION'S MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Defendant Olin Corporation ("Olin") respectfully submits this memorandum in opposition to Plaintiffs' motion to compel discovery. For the reasons set forth below, Plaintiffs' motion to compel lacks legal merit and should be denied.

### Introduction

Pursuant to the July 14, 2003 Scheduling Order (approved by the Court on October 14, 2003 and modified by consent of the parties in January 2004), discovery at this stage is limited to issues of class certification, governmental immunity and successor liability. Plaintiffs' discovery efforts directed to Olin purportedly seek information to support Plaintiffs' allegations that Olin is the successor in interest to Winchester Repeating Arms Company of Delaware ("Winchester-Delaware"). However, the discovery requests at issue in Plaintiffs' motion to compel have absolutely no legal bearing on the issue at hand – successor liability.

**ORAL ARGUMENT REQUESTED**

Plaintiffs seek to establish Olin's liability as a successor on the basis of either the "mere continuation" exception or the "product line" exception to the general rule of no successor liability. However, Connecticut and federal courts have narrowly defined the scope of these exceptions. The interrogatories, document requests, and requests for admission at issue seek information that clearly falls outside of these boundaries. To respond to these discovery requests will not only be extremely burdensome but will be an utter waste of time given the substantive law of successor liability in Connecticut. Thus, Plaintiffs should be precluded from embarking on a fishing expedition which is incapable of producing information that will have any bearing on the ultimate disposition of Plaintiffs' successor liability claim.

### Background

As part of their claim against Olin, Plaintiffs seek to impose liability on Olin for environmental harm in the Town of Hamden resulting from pre-December 1931 waste disposal activities of an entity known as Winchester Repeating Arms Company, a <u>Delaware</u> corporation ("Winchester-Delaware"). Winchester Delaware operated a manufacturing facility in New Haven. Plaintiffs allege that Olin is the successor in interest to Winchester-Delaware. Olin's connection with the facility in New Haven began on December 22, 1931 when Winchester Repeating Arms Company, a <u>Maryland</u> corporation ("Winchester-Maryland") purchased certain of Winchester-Delaware's assets out of a receivership then pending in the United States District

Court for Connecticut, in an arms-length, court-sponsored and court-approved transaction. Winchester Maryland was a wholly owned subsidiary of Western Cartridge Company. Western Cartridge Company is a predecessor of Olin.

Plaintiffs served interrogatories, requests for production, requests for admission and a 30(b)(6) deposition notice upon Olin on the issue of successor liability.[1] Olin served formal responses to Plaintiffs' interrogatories, requests for production and requests for admission on February 9, 2004. Each of Olin's discovery responses included a detailed general objection addressing what Olin believes to be Plaintiffs' disingenuous attempt to harass and burden Olin with various discovery requests that, under Connecticut law, cannot possibly support any legal theory of successor liability (the "General Objections").

After serving its discovery responses and the referenced General Objections, Olin discussed this discovery issue with Plaintiffs and invited Plaintiffs to provide Olin with any legal support refuting Olin's position. See Michael H. Wetmore's February 20, 2004 letter to Neil T. Leifer, attached hereto as Exhibit 1. Olin received no response. Instead, on March 9, 2004, Plaintiffs filed a motion to compel Olin to provide responses to certain Interrogatories, Requests

---

[1]    On March 23, 2004, Olin filed a motion for entry of a protective order seeking to limit the scope of Olin's 30(b)(6) deposition on virtually the same grounds as set forth herein. The 30(b)(6) deposition took place on March 24, 2004 on eight of the eleven topic areas covered by the deposition notice.

3

for Production and Requests for Admission that Olin had previously objected to consistent with Olin's General Objections.

For reasons already set forth in Olin's General Objections, as well as those discussed in Olin's Memorandum in Support of its Motion for Protective Order (entry no. 71), the information sought in the discovery requests at issue has no possibility of advancing Plaintiffs' successor liability argument and therefore the burdensome discovery Plaintiffs now seek must be limited.

## **Argument**

Discovery is subject to the limitations set forth in Rule 26(b)(2) of the Federal Rules of Civil Procedure. Rule 26(b)(2) provides, in relevant part:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules...shall be limited by the court if it determines that:...(iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and *the importance of the proposed discovery in resolving the issues.*

Fed. R. Civ. P. 26(b)(2) (emphasis added).

It is clearly within the Court's authority to limit the scope of discovery. See Amherst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121, 126 (D. Conn. 1974) (court limited scope of deposition to exclude certain matters in absence of any argument showing their relevance); Carlson Cos. v. Sperry & Hutchinson Co., 374 F. Supp. 1080, 1088 (D. Minn. 1973) (holding

4

court must weigh the discovery request with the hardship to the party from whom the discovery is sought when the request approaches "the outer bounds of relevance"); Rebel Oil Co. v. Atl. Richfield Co., 133 F.R.D. 41, 45 (D. Nev. 1990) (restricting initial discovery to certain threshold issues, that if plaintiff could not establish, would render plaintiffs with no chance of ultimately prevailing on their theory of liability); Air King Prods. Co. v. Hazeltine Research, Inc., 10 F.R.D. 381, 383 (E.D.N.Y. 1950) (discovery limited to particular dispositive issue); Allied-Signal, Inc. v. Allegheny Ludlum Corp., 132 F.R.D. 134, 138 (D. Conn. 1990) (motion to compel production of copies of patent applications denied because a party may not challenge patentability before the threshold issue of priority is resolved).

Limiting discovery to a threshold issue is proper in a case that may be resolved upon summary judgment. Todd v. Merrell Dow Pharms., Inc., 942 F.2d 1173, 1178 (7th Cir. 1991) (holding district court properly limited scope of discovery for the first 75 days to the issue of causation). As the Eighth Circuit articulated, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) (cited by Marchello v. Chase Manhattan Auto Fin. Corp., 219 F.R.D. 217, 218 (D. Conn. 2004)). See also Dolgow v. Anderson, 53 F.R.D. 661, 663 (E.D.N.Y. 1971) (court has a duty in lengthy and complex cases where possibility of abuse is

present to supervise and limit discovery to protect parties and witnesses from annoyance and excessive expense).

  The <u>Rebel Oil</u> case is particularly instructive. In <u>Rebel Oil</u>, plaintiff contended that defendant executed a plan to monopolize the Las Vegas retail discount gasoline market. <u>Rebel Oil</u>, 133 F.R.D. at 42. Defendant sought a protective order limiting the scope of plaintiffs' discovery at the outset of the case to the threshold issue which defendant contended would dispose of the entire case – whether significant entry barriers exist in the Las Vegas gasoline market. <u>Id.</u> Defendant contended that if plaintiff could not meet the initial burden of establishing this threshold issue, all other discovery sought by plaintiff would be irrelevant and plaintiffs' legal theory would fail. <u>Id.</u> The court agreed and held that limiting initial discovery to the threshold issue would eliminate burdensome discovery "for those cases in which plaintiffs would have no chance of ultimately prevailing." <u>Id.</u> at 45.[2]

  Plaintiffs quote and emphasize Rule 26(b)(1) for the proposition that "Parties may obtain discovery regarding *any matter*, not privileged, that is relevant to the claim or defense of any party . . . ." <u>See</u>, Plaintiffs' Memorandum in Support of Motion to Compel, p.4 (emphasis added

---

[2] A case cited in Plaintiffs' Memorandum In Support also agrees with this proposition. In <u>Chubb Integrated Systems Limited v. Nat'l Bank of Washington</u>, 103 F.R.D. 52, 59 (D.D.C. 1984), the court recognized that in the proper case "[i]t is, of course, within the court's discretion to deny discovery related to a patently insubstantial claim, for example, where the claim or defense appears baseless and the discovery would work a hardship on the answering party." Citation omitted.

by plaintiffs). Plaintiffs' misguided attempt to broaden the scope of discovery by putting emphasis on the words "any matter" ignores the latter part of the very same sentence. The rule explicitly states that parties may only obtain discovery regarding matters that are "*relevant to the claim or defense of any party*." See also Wright & Miller Federal Practice & Procedure § 2008, at 99 ("Perhaps the single most important word in Rule 26(b)(1) is "relevant" for it is only relevant matter that may be the subject of discovery").

Relevance under Rule 26 "must be determined by *reference to the substantive law* which forms the basis of [the] claims and defenses." WLR Foods, Inc. v. Tyson Foods, Inc., 65 F.3d 1172, 1184 (4th Cir. 1995) (emphasis added). See also 6 Moore's Federal Practice, § 26.41[6][c] (Matthew Bender 3d ed.) ("A court's determination whether a discovery request is 'relevant to the claim or defense of any party' must look beyond the allegation of a claim or defense to the controlling substantive law").

In WLR Foods, defendant sought to discover the substantive content of recommendations made to the plaintiff's board of directors regarding the merger at issue. WLR Foods, 65 F.3d at 1177. The district court denied this discovery request pursuant to its finding that, under the applicable Virginia law, the information sought was not reasonably calculated to lead to the discovery of admissible evidence. Id. at 1183-4. The district court held that the Virginia Business Judgment Statute only required the directors to act in good faith. Id. at 1184. Thus, the

7

rationality of the decision ultimately reached by the board was irrelevant.  Id.  Accordingly, the district court permitted the defendant to inquire into the procedures the board followed during the investigation of the merger offer that indicated whether or not they were considering the offer in good faith, but did not allow defendant access to the actual substantive information that was used by the directors in making their decision.  Id.  The Fourth Circuit agreed, holding it was not an abuse of discretion to deny defendant permission to discover the substantive content of the recommendations made to the board.  Id. at 1185-6.  The court stated, "[w]hether a different person would have come to a different conclusion given the information that a director had before him is simply irrelevant to the determination of whether a director in Virginia has acted in good faith . . . Directors' actions in Virginia are not to be judged for their reasonableness, and we, like the district court, reject [defendant's] attempt to inject such a standard into Virginia law."  Id.

As set forth below, the controlling substantive law of successor liability dictates that Plaintiffs' discovery requests are "simply irrelevant" to a determination of Olin's successor liability.  Given this, as well as the extreme burden that will be placed on Olin if Olin is required to respond to the inquiries Plaintiffs are complaining about, it is clear Plaintiffs' motion to compel should be denied.

1.    General Rule of No Successor Liability

Under the general rule in Connecticut, a corporation that purchases all the assets of another company does not become liable for the debts and liabilities of its predecessor unless: 1) the purchase agreement expressly or impliedly so provides; 2) there was a merger or consolidation of the two firms; 3) the purchaser is a 'mere continuation' of the seller; or 4) the transaction is entered into fraudulently for the purpose of escaping liability. See, e.g., Ricciardello v. J.W. Grant & Co., 717 F. Supp. 56, 57-58 (D. Conn. 1989).

Plaintiffs admittedly seek to establish Olin's liability as a successor on the basis of either exception number three, the "mere continuation" exception, or an exception not recognized in Connecticut, the "product line" exception. An examination of case law construing these two exceptions compels the conclusion that under the facts already known, Plaintiffs have no ability to establish either exception.

2.    The Mere Continuation Exception

The "mere continuation" exception focuses on a continuity of ownership between the corporations involved in an asset purchase. See, e.g., Pesce v. Overhead Door Corp., 1996 U.S. Dist. LEXIS 22244, at *11-12 (D. Conn. July 25, 1996).[3] As stated in Pesce, "[t]he focus of the [mere continuation] exception is not whether there is a continuation of the business, but rather

---

[3] All unreported cases are attached to Olin's Amended Memorandum of Law in Support of Motion for Protective Order (entry no. 71).

9

the test is whether there is a continuation of the corporate identity of the seller.  The key element in determining whether the corporate entity continues to exist is a determination of whether there is a common identity of the officers, directors, and stockholders in both the selling and purchasing corporations."  Id. See also, Copperthite v. Pytlik, No. 59053, 1992 WL 209660, at *3 (Conn. Super. Ct. Aug. 25, 1992) (a mere continuation envisions "a common identity of directors, stockholders and the existence of only one corporation at the completion of the transfer.")

The mere continuation exception "in effect takes cognizance of what may be called de facto merger."  Peglar & Assocs., Inc. v. Professional Indem. Underwriters Corp., No. X05CV970160824S, 2002 Conn. Super. LEXIS 2103, at *19-20 (Conn. Super. Ct. June 19, 2002).  The court in Cargo Partner AG v. Albatrans, Inc., 207 F. Supp. 2d 86, 96 (S.D.N.Y. 2001), engaged in perhaps the most thorough analysis of the de facto merger exception to date.  The Cargo Partner court found "no case (in New York or in other jurisdictions) in which a court has found a de facto merger without at least some degree of ownership continuity – except in the area of products liability. . . . .  Outside of those areas, it appears that, in practice, ownership continuity has been essential to the finding of a de facto merger."  Id. at 104.  The Cargo Partner court cited numerous cases for the proposition that ownership continuity is essential to a finding of a de facto merger.  Recently, the Second Circuit affirmed the decision, stating, "[W]e are

confident that the doctrine of de facto merger in New York does not make a corporation that purchases assets liable for the seller's contract debts absent continuity of ownership." <u>Cargo Partner AG v. Albatrans, Inc.</u>, 352 F.3d 41, 46 (2d Cir. 2003).

None of the discovery requests to which Olin has objected based on the General Objections address the continuity of ownership issue with respect to Winchester-Delaware and Winchester-Maryland. Olin produced nearly 1000 pages of documents, most from the 1930s, that go directly to the identity of the officers, directors and shareholders of Winchester – Delaware (the pre-December 1931 entity) and Winchester – Maryland ( the post December 1931 entity)." Olin's Rule 30(b)(6) witness was deposed at length with respect to these documents, the December 1931 court approved transaction and the events that led to the transaction. Based on this discovery already conducted, in the asset transaction at issue here there was no commonality of stockholders between Winchester-Delaware and Winchester-Maryland. Winchester-Delaware was put into receivership on a creditors' bill filed in United States District Court in Connecticut in 1931. Through a Court supervised auction, Winchester-Delaware's assets were sold to the highest bidders, two men named P.C. Beardslee and Ben-Fleming Sessel. These men subsequently transferred the assets that they acquired at the auction to Winchester-Maryland. There was no commonality of stockholders between Winchester-Delaware and

11

Winchester-Maryland. Absent that commonality, there can be no "mere continuation" exception to the no successor liability rule in Connecticut.

Nothing in Plaintiffs' Motion to Compel alters this analysis. Plaintiffs' reference to Peglar & Associates v. Professional Indemnity Underwriters Corp., No. X05CV970160824S, 2002 WL 1610037 (Conn. Super. Ct. June 19, 2002), neither advances Plaintiffs' position nor contradicts Olin's position. In Peglar, after noting that given the facts of the case "no consideration of successor liability is necessary," in dicta the court stated that the mere continuation exception "in effect takes cognizance of what may be called de facto merger." Peglar, 2002 WL 1610037, at *7. In further dicta, the Peglar court applied several of the requirements of a de facto merger to the facts of the case and found there was no de facto merger. Peglar, 2002 WL 1610037, at *7. As such, the Peglar holding does not conflict with the Cargo Partner court's contention that no cases outside the product liability context have found a de facto merger without at least some degree of ownership continuity.

Nor is Plaintiffs' position advanced by their citation to Water Pollution Control Authority v. Commissioner of Labor, No. CV 90 274144, 1992 WL 201922 (Conn. Super. Ct. Aug. 4, 1992) for the proposition that not every indicia of the mere continuation test must be

established.[4]  Plaintiffs' reliance on <u>Water Pollution</u> is misplaced – it does not even address ownership continuity because it applies the doctrine of successor liability to a municipal agency, not a private corporation.  1992 WL 201922, at *3.  In fact, <u>Water Pollution</u> indirectly supports Olin's contention that ownership continuity is essential to a finding of "mere continuation."  By definition, municipal agencies are owned by the municipality in which they are located.  Thus, the <u>Water Pollution</u> court's finding that the Water Pollution Control Authority of the City of Bridgeport was a "mere continuation" of its predecessor, the Department of Public Works of the City of Bridgeport, is yet another weapon in Olin's arsenal of cases that dictate "mere continuation" cannot be proven absent a showing of ownership continuity.  Plaintiff has not provided any cases to the contrary.

Accordingly, plaintiffs' discovery requests at issue far exceed the "outer bounds of relevance" and cannot be saved by the "mere continuation" exception because Plaintiffs cannot establish a threshold issue of successor liability – continuity of ownership.

### 3. The Product Line Exception

Any reliance Plaintiffs place on the product line exception to the no-successor liability rule is equally misplaced.  First, neither the Connecticut Supreme Court, nor any appellate court

---

[4]    Without providing any analysis of the case, Plaintiffs cite <u>Water Pollution</u> for the proposition that "absence of continuity of officers or board members was not fatal to establish successor liability against a municipality."  However, Olin has never contended that continuity of officers or board members is essential to establish successor liability under the mere continuation exception.

in Connecticut recognizes the product line exception to the no-successor liability rule. See, e.g., Pesce, 1998 U.S. Dist. LEXIS 20615 at *5 (declining to adopt the product line exception and stating that "no Connecticut appellate court had recognized the product line exception" and ruling that "it is this court's best judgment that the Connecticut Supreme Court would not extend the law to recognize this exception.").

In addition, no Connecticut Superior Court has applied the product line exception outside the context of a product liability claim – that is, a claim for personal injuries resulting from the continued manufacture of the type of product alleged to have caused injury. Courts in the limited jurisdictions that have adopted the product line exception have emphasized that the exception only applies to cases involving a defective product. See, e.g., Leo v. Kerr-McGee Chem. Corp., 37 F.3d 96, 100 (3d Cir. 1994) (declining to extend product line exception to toxic tort claim); United States v. Atlas Minerals and Chems., No. 91-5118, 1995 U.S. Dist. LEXIS 13097, at *255 (E.D. Pa. Aug. 22, 1995) (declining to extend product line exception to CERCLA action seeking to recover the costs of removing hazardous waste from a landfill); Ninth Ave. Remedial Group v. Allis-Chalmers Corp., No. 2:94-CV-331-RL, 1996 U.S. Dist. LEXIS 5670, at *27 n. 3 (N.D. Ind. Apr. 19, 1996) ("In all the cases reviewed, courts applied the product line exception only in product liability cases…"); Anderson v. City of Minnetonka, No. CV 3-90-312, 1993 U.S. Dist. LEXIS 4846, at *24 n. 6 (D. Minn. Jan. 27, 1993) (declining to extend

product line exception to CERCLA action, noting, "The product line test has only been applied in products liability cases...[T]his test has not been applied in any environmental liability case."); Standard Equip., Inc. v. Boeing Co., No. C84-1129D, 1987 U.S. Dist. LEXIS 15137, at *17 (W.D. Wash. Nov. 20, 1987) (environmental contamination case in which court held there was no indication of an intention to expand the product line exception to anything but strict products liability); R.C.M. Exec. Gallery Corp. v. Rols Capitol Co., No. 93 Civ. 8571, 1997 U.S. Dist. LEXIS 565, at *16 n. 4 (S.D.N.Y. Jan. 18, 1997) (holding product line exception inapplicable in case alleging plaintiffs were charged usurious rate of interest on a loan made by defendants).

This is not a product liability case. It would be burdensome and oppressive to require Olin to respond to the discovery requests related to Olin's "product line" when there is no body of Connecticut case law that imposes successor liability on a product line exception under the facts of this case. Plaintiffs are only able to point to one unpublished Superior Court opinion, Piaser v. Cohen, No. CV 950149192S, 1997 WL 435841 (Conn. Super. Ct. July 21, 1997), to support their contention that Connecticut law applies the product line exception to non product liability cases. However, contrary to plaintiffs' assertion, Piaser, a breach of contract case, does not apply the product line exception. Instead, the Piaser court expressly cited the four traditional exceptions to the no successor liability rule set forth in Ricciardello and denied defendant's

motion to strike upon a finding that defendant impliedly assumed the obligations of the selling corporation. Id. at *1-2. In dicta, the court merely quoted the product line exception language from Copperthite v. Pytlik, No. 59053, 1992 WL 209660 (Conn. Super. Ct. Aug. 25, 1992), *a product liability action*. The court did not apply the product line exception to the facts of the case, nor did it undertake any analysis of the product line exception. Regardless, Plaintiffs' feeble attempt to convince the Court that Connecticut courts apply, or should apply, the product line exception to non-product liability cases stands in stark contrast to the wealth of cases holding otherwise.

> 4.    Specific Discovery Requests

Discovery beyond the limited scope of the "mere continuation" and "product line" exceptions serves no purpose whatsoever. Plaintiffs seek to waste the time of all involved, including the Court, and impose unnecessary costs and extreme burdens upon Olin. Olin could spend countless hours attempting to locate, reviewing and producing documents, answering interrogatories, and responding to requests for admissions regarding the suggested topics that, according to the case law, have absolutely no bearing on the ultimate determination of whether Olin may be found liable as a successor to Winchester-Delaware.

Plaintiffs have not cited, and cannot present, case law that establishes either exception to the general rule of no successor liability upon which they rely and therefore the extremely

burdensome discovery Plaintiffs seek will not aid Plaintiffs.  Thus, it is well within the Court's power to limit the scope of discovery that plaintiffs may inquire into during the course of discovery in this litigation.  Simply put, Plaintiffs cannot be allowed to pursue discovery that has no bearing on their ability to prevail in this matter.  As such, Plaintiffs' motion to compel should be denied and the Court should limit discovery to exclude the following categories of inquiry.

> A.     **Plaintiffs' requests seeking information unrelated to the continuity of ownership issue regarding Winchester-Delaware and Winchester-Maryland and/or relating to the product line exception to successor liability**

As explained above, the controlling substantive law of successor liability compels the conclusion that Plaintiffs' discovery requests are irrelevant and not likely to lead to the discovery of admissible evidence because they are incapable of assisting plaintiffs in proving their claim of successor liability.  To avoid this result, Plaintiffs suggest that if they do not receive responses to the requested discovery, then "Plaintiffs are prevented from developing a record to show under their interpretation of the law that there are triable facts on the issue of successor liability."  See Plaintiffs' Memorandum in Support of Motion to Compel, p. 4.  However, outside of boldly stating that the "mere continuation" exception and the "product line" exception to the rules regarding successor liability "can be applied to this case by application or extension of existing law," (Plaintiffs' Memorandum in Support, p. 2), Plaintiffs cannot point to a single case supporting this assertion, nor have they offered an explanation why the law should be "extended"

in this area.  In the face of this, Olin has presented established case law directly contradicting Plaintiffs' assertions as well as cases choosing not to "extend" this area of the law.

Under such circumstances, cases such as Amherst, Rebel Oil, Todd and WLR Foods, teach that without a possibility of succeeding on their successor liability argument under either the "mere continuation" or "product line" exceptions, Plaintiffs should not be allowed to force Olin to engage in the extremely burdensome act of providing responses to Plaintiffs' inquiries that go far beyond the threshold issues relevant to these proceedings.  Therefore, Plaintiffs' Motion to Compel responses to Interrogatory Nos. 6, 7, 8, 12, 13 and 26, Requests for Production Nos. 1, 6, 7, 8, 9 and 17, and Request for Admission Nos. 56, 57, 58, 59, 70, 73, 82 and 86, which deal with the "product line" exception and irrelevant portions of the "mere continuation" exception, must be denied.

**B.        Plaintiffs' requests seeking information unrelated to the Winchester-Delaware and Winchester-Maryland time period**

In addition to not having any bearing on this case from the standpoint of establishing either the "mere continuation" or "product line" exception to the successor liability rule, there are additional discovery requests sought by Plaintiffs that suffer from an additional layer of irrelevance.  Given the law in Connecticut, the only relevant transaction with respect to successor liability is what happened in and around 1931 when Winchester-Delaware's assets were sold as reflected in the Final Decree Confirming Sale and Directing Execution and Delivery of Deeds

("Final Decree Confirming Sale," a copy of which was produced to Plaintiffs). The assets were purchased by two individuals, P.C. Beardslee and Ben-Fleming Sessel. Within a week of their December 15, 1931 purchase of the assets, Beardslee and Sessel "assigned, transferred and set over" all of their ownership of the acquired assets to Winchester-Maryland. If Winchester-Maryland is not the successor of Winchester-Delaware, Plaintiffs' successor liability allegations are at an end. As a result, any requests by Plaintiffs which seek information for transactions or time periods other than those related to the asset purchase in or around 1931 are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in these proceedings. Specifically, there is no rational basis for allowing Plaintiffs to inquire into issues surrounding the 1944 merger between Western Cartridge Company and Olin (see, e.g., Interrogatory Nos. 1, 5, 11, 15) or the merger of Western Cartridge and Winchester-Maryland in 1938 (see, e.g., Interrogatory Nos. 4, 17 and 18).

Therefore, Plaintiffs' Motion to Compel responses to Interrogatory Nos. 1, 4, 5, 11, 15, 17, 18, 19, 22, 24 and 27, Requests for Production Nos. 2, 6, 7, 10, 14, 15 and 16, and Request for Admission Nos. 52, 53, 59, 60, 71, 74, 75, 83, 84, 87 and 88 must be denied for the additional reason that the listed requests have no temporal connection to any relevant inquiry in these proceedings.

### C.    Plaintiffs' requests for which Olin has already responded

Finally, Plaintiffs seek responses to inquiries to which Olin has already responded. In response to Interrogatory No. 22 and Request for Admission Nos. 15, 16, 17, 45, 46 and 61, without waiving Olin's General Objections, Olin provided responses to the extent Olin had knowledge to do so. This is all Olin can be asked to do. Therefore, Plaintiffs' motion to compel responses to Interrogatory No. 22 and Request for Admission Nos. 15, 16, 17, 45, 46 and 61 must be denied.

### D.    One example of irrelevant, overbroad, and burdensome nature of Plaintiffs' requests

Without going through each and every one of Plaintiffs' inquiries, looking at one line of inquiry drives home the irrelevant, overbroad and burdensome nature of Plaintiffs' requests. Plaintiffs' Request for Production of Documents Nos. 6, 7, 8, and 9 request "a copy of *any document* that indicates the sale of *any firearm products* under the Winchester trademark" by Olin (No. 6), Western Cartridge Company (No. 7), Winchester-Maryland (No. 8), and Winchester-Delaware (No. 9) over an indefinite time period and without regard for where in the country such product was made or where such sale occurred. As though this were not overbroad enough, Plaintiffs' definitions define "firearm products" as "any ammunition, gun, revolver, shotgun, handgun, rifle, pistol or any weapon requiring ammunition." Under Connecticut law, these inquiries cannot possibly further Plaintiffs' successor liability argument. In the absence of

a recognized product line exception in Connecticut, there is no relevance to any sales by either Winchester-Maryland or Winchester-Delaware.  In addition, sales by Olin and Western Cartridge are so remote in time to the transaction involving Winchester-Maryland and Winchester-Delaware that an inquiry into such sales cannot be seen as anything other than an attempt to harass, inconvenience and burden Olin.

### Conclusion

As a leading federal practice treatise explains, "The definition restricting 'relevant' discoverable evidence to that relating to the claims and defenses the parties have actually articulated, coupled with the redundant reminder in Rule 26(b)(1) that the courts should make certain that all discovery is conducted with the limitations of Rule 26(b)(2) in mind, is a clarion call for the courts to use their administrative authority to control discovery to eliminate those instances in which the parties stray far a field from the factual issues that are at the heart of their case and are verging on discovery abuse, rather than seeking a fair and just resolution of the case." 6 Moore's Federal Practice, § 26.41[6][c] (Matthew Bender 3d ed.).  The Court should answer this call in order to prevent Olin from being subjected to Plaintiffs' abusive, burdensome, and utterly irrelevant discovery requests.  Accordingly, for the reasons set forth herein, Plaintiffs' Motion to Compel should be denied.

Respectfully submitted,

HUSCH & EPPENBERGER, LLC

By: *Joel B. Samson /sms*

Michael H. Wetmore (ct24899)
Joel B. Samson (ct24898)
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone: 314-480-1500
Fax: 314-480-1505
michael.wetmore@husch.com
joel.samson@husch.com

and

BROWN RUDNICK BERLACK ISRAELS LLP
Sandra K. Davis
185 Asylum St.
CityPlace I, 38th Floor
Hartford, CT  06103
Telephone: 860-509-6500
Fax: 860-509-6501
sdavis@brbilaw.com

***Attorneys for Defendant Olin Corporation***

22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 31st day of March, 2004, by facsimile transmission and first class mail, postage prepaid to:

Neil T. Leifer, Esq.
David C. Strouss, Esq.
Thornton & Naumes L.L.P.
100 Summer Street, 30th Floor
Boston, Massachusetts 02110
Telephone: (617) 720-1333
Facsimile: (618) 720-2445

David B. Zabel, Esq.
Monte E. Frank, Esq.
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, Connecticut 06604
Telephone: (203) 368-0211
Facsimile: (203) 394-9901

Mark Roberts
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, MA 02114
Telephone: (617) 722-8222
Facsimile: (617) 720-2320

*Attorneys for Plaintiff*

23

Ann M. Catino
Lori Dibella
Joseph G. Fortner, Jr.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Telephone:  (860) 522-6108
Facsimile: (860) 548-0006

*Attorneys  for Town of Hamden*

Sandra K. Davis

# Husch & Eppenberger, LLC

*Attorneys and Counselors at Law*

190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105-3441
314.480.1500
Fax 314.480.1505
www.husch.com

314.480.1841 direct dial
michael.wetmore@Husch.com

*Exhibit "1"*

February 20, 2004

Neil T. Leifer
Thornton, Early & Naumes
100 Summer Street, 30th Floor
Boston, MA 02110

Re:    Collins, et al. v. Olin Corporation and the Town of Hamden

Dear Neil:

I have your letter of February 13, 2004. It is not at all clear to us that plaintiffs' amended complaint can be read to allege successor liability on the basis of the "mere continuation" and "product line" exceptions to the Connecticut rule of no successor liability. Nonetheless, you are correct that we did discuss that the plaintiffs rely on those two exceptions as the basis for asserting Olin's liability for the pre-December 1931 activities of the Winchester Repeating Arms Company – Delaware.

Olin outlined in a general way its position on the successor liability issues in its objections to the plaintiffs' discovery requests, to which you refer in your February 13 letter. We provided some case law, though by no means attempted to provide an exhaustive list of the case law that supports Olin's position. We are not aware of Connecticut authority that would hold Olin liable as a successor under the "product line" exception on the facts that the plaintiffs have pled. Similarly, we are not aware of Connecticut authority that would hold Olin liable as a successor under the "mere continuation" exception in the absence of continuity of ownership.

Since the plaintiffs' legal theories have no support in Connecticut, we will continue to oppose the burdensome discovery that the plaintiffs have propounded. I would be happy to review case authority that you believe runs counter to what we have set out in Olin's objections, if you wish to provide that to me.

We have sent you close to 800 pages of documents and are prepared to produce a Rule 30(b)(6) witness to discuss those topics in your notice of deposition, other than

# Husch & Eppenberger, LLC

Neil T. Leifer
February 20, 2004
Page: 2

those in paragraphs 5, 6 and 7.  I have suggested March 23 or 24 for that deposition, in
Hartford.  Please let me know if you wish to proceed with the deposition on one of those
dates.

Very truly yours,

Michael H. Wetmore

cc:     Joe Fortner

1716614.05