Westlaw.

Slip Copy                                                                                                    Page 1
(Cite as: 2004 WL 944543 (S.D.N.Y.))

H
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

Nigel NOBLE, on behalf of himself and all others
similarly situated, Plaintiff,
v.
93 UNIVERSITY PLACE CORPORATION, d/b/a
Healthy Pleasures, and Helene Burgess,
Defendants.

No. 02 Civ.1803(SAS).

May 3, 2004.

Karl J. Stoecker, New York, New York, for Plaintiff.

Roger J. Bernstein, New York, New York, for Defendant 93 University Place.

Shaffin A. Datoo, Clifton Budd & DeMaria, LLP, New York, New York, for Defendant Helene Burgess.

OPINION AND ORDER

SCHEINDLIN, J.

*1 Nigel Noble brings this action, on behalf of himself and all others similarly situated, against his former employer, 93 University Place Corp., d/b/a Healthy Pleasures ("Healthy Pleasures"), and its sole stockholder, Helene Burgess, alleging violations of New York Labor Law and the Fair Labor Standards Act ("FLSA"). [FN1] Noble now moves pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) for class certification of his state law overtime pay claim, defining the class as those Healthy Pleasures employees who worked more than forty hours per week and were denied overtime compensation. For the reasons set forth below, class certification is granted as to liability only.

FN1. 29 U.S.C. § 201 *et seq.*

I. FACTS

A. Procedural History

On March 6, 2002, Noble filed a Complaint alleging that defendants violated: (1) New York Labor Law section 740 by terminating him in retaliation for refusing to participate in and for complaining about the mislabeling of food; [FN2] (2) section 7(a)(1) of the FLSA by failing to pay overtime to Noble and other similarly situated employees; and (3) New York Labor Law section 160 and N.Y. Comp.Codes R. & Regs. tit. 12, § 142-2.2 ("section 142-2.2") by failing to compensate Noble and other similarly situated employees at one- and-one-half times the regular rate when those employees worked in excess of forty hours per week. [FN3]

FN2. This "Whistleblower Claim" is not brought on behalf of others similarly situated, as it pertains only to Noble.

FN3. *See* Complaint ("Compl.") ¶¶ 32-42.

With respect to his federal claim, Noble sent a notice to potential plaintiffs, informing them of their right under section 16(b) of the FLSA to "opt into" the FLSA action by returning consent forms on or before April 1, 2003. [FN4] As a result, Jose Alberto Nunez and Sonam Tashi Gurung timely submitted consent forms; and Eugene B. Rozario filed his consent after the deadline, on April 16, 2003. [FN5] Defendants then moved for summary judgment, which this Court denied in an Opinion and Order dated November 18, 2003. [FN6] Noble now seeks to certify a class claiming a violation of the state law requiring overtime pay.

FN4. Section 216(b) permits a case to be

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 944543 (S.D.N.Y.))

Page 2

brought as a collective action, or an action by "one or more employees for and in behalf of himself or themselves and other employees similarly situated," provided that each plaintiff "gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Certification is not necessary and the requirements of Rule 23 do not apply.

FN5. This motion does not address the implications, if any, of Rozario's failure to comport with the deadline set forth in the notification.

FN6. *Noble v. 93 Univ. Place Corp.*, No. 02 Civ. 1803, 2003 WL 22722958 (S.D.N.Y. Nov. 18, 2003). Defendants sought summary judgment as to Noble's state overtime pay claim because the overtime provisions do not cover employees acting in a bona fide executive capacity. Defendants argued that because of his managerial responsibilities and salary, Noble qualified as an executive. Summary judgment was denied because there were disputed issues of material fact regarding the scope of Noble's duties and thus his "exempt" status. *See id.* at *10.

B. Background

Healthy Pleasures is a New York corporation that owns and operates three retail stores in New York City specializing in the preparation and sale of "natural food." [FN7] On January 11, 2001, Noble was hired to work at Healthy Pleasures's 93 University Place location. [FN8] In the first week of his employment, Noble complained to his supervisor, Omar Bashar, that the store sold mislabeled food. [FN9] In particular, Noble complained that the labels of salad-bar items omitted ingredients and that the labels of non-salad-bar items listed ingredients that were not contained in the food. [FN10] Approximately eight months later, on August 30, 2001, Omar confronted Noble because he had been informed that Noble had instructed someone to throw away "perfectly good" chicken, which he found in the garbage. [FN11]

Omar then fired Noble and Noble filed this lawsuit.

FN7. Compl. ¶ 4. In his class certification papers, Noble now refers only to two retail stores, indicating that at least one of the Healthy Pleasures locations has closed since the commencement of this action. *See* Plaintiff's Reply Memorandum of Law in Further Support of His Motion for Class Action Certification ("Pl.Reply") at 3.

FN8. Compl. ¶¶ 3, 14.

FN9. *See* Defendants' Local Civil Rule 56.1 Statement ("Defs. 56 .1 Stmt.") ¶ 35.

FN10. *See id.* ¶¶ 36-37.

FN11. *Id.* ¶ 49; *see also id.* ¶¶ 40-41.

C. Class Certification Allegations

1. Potential Class Representatives

Noble asserts that both he and Nunez are qualified to serve as class representatives. Noble alleges that he agreed to work forty-eight hours per week for a flat salary, [FN12] but that he, like all "kitchen employees, and upon information and belief, all Healthy Pleasure[s] employees," was routinely required by Burgess to work "substantial amounts of overtime." [FN13] Specifically, Noble states that he was compelled to work ten hours each day, six days per week (sixty hours per week) but was not compensated for more than a forty-hour work week. [FN14]

FN12. Noble was hired at an annual salary of $45,000. *See id.* ¶ 3. After three months, Noble's salary was increased to $48,000. *See id.* ¶ 4.

FN13. Compl. ¶ 25.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 944543 (S.D.N.Y.))

Page 3

FN14. 1/18/02 Deposition of Nigel Noble ("Noble Dep.") at 6.

*2 Noble's position with Healthy Pleasures was that of "chef" in the "Kitchen Department." Defendants contend that he was hired as head chef and kitchen manager. [FN15] They maintain that in these positions, Noble was in charge of a kitchen staff of between ten to twenty employees, and that the cooks and dishwashers reported directly to him. [FN16] They further submit that Noble had a number of different duties relating to the smooth running of the entire kitchen, including: (1) scheduling kitchen employees; (2) ordering food for the kitchen; (3) keeping track of kitchen inventory; (4) planning the daily menu; (5) creating new dishes; (6) giving daily instructions and delegating work to the kitchen staff; (7) keeping track of the amount of food leaving the kitchen; (8) training new kitchen employees; (9) interviewing job applicants; and (10) acting as liaison between the Kitchen Department and Omar. [FN17] Additionally, defendants claim that they granted Noble the authority to hire, fire, and discipline employees, and that Noble had acted on this authority. [FN18] They also allege that Noble had authority to approve overtime. [FN19] They assert that Noble was a managerial employee, and, as such, that he was not entitled to overtime compensation under federal law.

FN15. Defs. 56.1 Stmt. ¶ 1.

FN16. *See id.* ¶¶ 7, 30, 33-34.

FN17. *See id.* ¶¶ 8-19.

FN18. *See id.* ¶¶ 20-26.

FN19. *See id.* ¶ 29.

Noble contends that he was not hired as head chef or kitchen manager, but simply as a chef responsible for cooking and preparing food for the store's salad bar. [FN20] He claims he had no supervisory authority over other employees, and that neither cooks nor dishwashers reported to him.

[FN21] As a chef, Noble maintains that he devoted 75 to 100 percent of his time to cooking. [FN22] Occasionally, however, Noble assisted with other tasks under the direction of Omar or other chefs, including: (1) re-arranging schedules that Omar had previously written up when other kitchen employees called in sick or failed to show up for work; (2) re-ordering commonly used kitchen supplies from the store's regular vendors; (3) collaborating with Burgess, Omar, and the other cooks on the daily menu; and (4) writing up the daily menu. [FN23] On a number of occasions, at Burgess's request, Noble spent a few hours explaining to new kitchen employees how certain dishes were prepared . [FN24] Noble denies that he was responsible for tracking kitchen inventory, or that he gave daily instructions or delegated work to kitchen staff. [FN25]

FN20. *See* Plaintiff's Counterstatement Pursuant to Local Rule 56 .1 ("Pl. 56.1 Stmt.") ¶ 1; 7/24/03 Affidavit of Nigel Noble ("Noble Aff.") ¶ 1.

FN21. *See* Noble Aff. ¶ 8.

FN22. *See id.* ¶ 2.

FN23. *See id.* ¶¶ 5-7.

FN24. *See id.* ¶ 9.

FN25. *See id.* ¶ 8.

Noble contends that Omar and Burgess retained control over the hiring and firing of kitchen employees and that he himself had no authority to hire or fire anyone, or recommend that anyone be hired or fired. [FN26] He claims that he rarely participated in the interview process and never hired anyone. [FN27] He also maintains that he never fired anyone and that Omar regularly handled employee terminations. [FN28] Further, he asserts that he never had the authority to approve overtime. [FN29] Following Noble's departure, Nunez, another Kitchen Department employee who was

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy  
(Cite as: 2004 WL 944543 (S.D.N.Y.))

Page 4

hired on March 5, 2001, appears to have assumed many of Noble's responsibilities, until his own termination in January 2002. [FN30]

FN26. *See id.* ¶ 9; Pl. 56.1 Stmt. ¶¶ 22-24, 26.

FN27. *See* Noble Aff. ¶ 9.

FN28. *See id.;* Pl. 56.1 Stmt. ¶ 25.

FN29. *See* Noble Aff. ¶ 5.

FN30. *See* 4/13/04 Letter to the Court from Karl J. Stoecker, counsel for Noble ("Stoecker 4/13 Ltr."). Specifically, Nunez asserts that "[a]fter Nigel left," his salary increased by $150 per week "[b]ecause [he] taking [*sic*] the job with the position that--Nigel's position." 3/11/03 Deposition of Jose Alberto Nunez ("Nunez Dep.") at 34, Ex. D to 1/26/04 Affirmation of Shaffin A. Datoo, Burgess's Counsel ("Datoo Aff."). When asked which "position" he was describing, Nunez responded "Cook, whatever have to be in the oven like chicken, turkey, meat, I do myself." *See id.*

2. Potential Class Members

*3 Noble describes the potential class members as "cooks, stock clerks, cashiers, dishwashers[,] and the like" who were required to work overtime, but not compensated for their additional labor in accordance with state law. [FN31] These employees are or were employed at Healthy Pleasures's "two delicatessen-style retail food stores." [FN32] Noble avers that "most [of these employees] are immigrants and many are undocumented aliens." [FN33] He submits that defendants employ "hundreds of individuals, such that given defendants' rapid employee turnover, there is [*sic*] in all likelihood several hundred class members for the more than six year period at issue here." [FN34] Noble further alleges that most of these potential class members are unlikely to "file individual suits because they lack adequate financial resources or access to counsel and fear reprisal from defendants." [FN35] Finally, Noble alleges the existence of the following common questions of law and fact: (1) "whether class members' [*sic*] worked in excess of forty (40) hours per week, [ (2) ] whether class members were paid overtime for each hour worked in excess of forty (40) hours per week; and [ (3) ] whether defendants' violations were willful." [FN36]

FN31. Pl. Reply at 3; Compl. ¶ 26.

FN32. *See* Pl. Reply at 3.

FN33. *Id.*

FN34. Plaintiff's Memorandum of Law in Support of the Motion for Class Action Certification ("Pl.Mem.") at 4; *see also* Compupay Payroll Records for 2000-02, Ex. A to Datoo Aff. Defendants dispute this allegation, citing payroll records indicating that Gurung, who worked in the Dairy Department, was compensated for the overtime hours that he worked. *See* Payroll Records, Ex. L to Defendants' Notice of Motion for Summary Judgment. Noble counters that unauthorized hours are not entered into the computer, nor are employees compensated for them. *See* Pl. Reply at 5 n. 3 (citing 2/12/03 Deposition of Bashar Omar, General Manager for Healthy Pleasures ("Omar Dep."), Ex. C to Declaration of Karl J. Stoecker in Support of Plaintiff's Motion for Class Certification ("Stoecker Decl.") at 58 and 2/26/03 Deposition of Maribel Garcia, Employee for Healthy Pleasures, Ex. D. to Stoecker Decl. at 14-16).

FN35. Compl. ¶ 28.

FN36. Pl. Mem. at 6.

II. APPLICABLE LAW

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 944543 (S.D.N.Y.))

Page 5

A. Legal Standard

Rule 23 sets forth the requirements for bringing and maintaining a class action in federal court. [FN37] " 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." ' [FN38] While this Circuit has "directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation," [FN39] a court may not grant certification unless it is satisfied, after " 'rigorous analysis," ' that the criteria set forth in Rule 23 are met. [FN40] Plaintiff bears the burden of establishing each requirement for class certification. [FN41]

FN37. *See* Fed.R.Civ.P. 23.

FN38. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir.2001) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)).

FN39. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y.1996) (citing *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208-09 (2d Cir.1972)).

FN40. *Dodge v. County of Orange*, 208 F.R.D. 79, 87 (S.D.N.Y.2002) (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 (1982)).

FN41. *See Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y.2000).

The district court must accept all of the allegations in the pleadings as true on a motion for class certification, and avoid conducting a preliminary inquiry into the merits. [FN42] Nonetheless, the decision whether to certify a class " 'may involve some considerations related to the factual and legal issues that comprise the plaintiff's cause of action." '

[FN43] Additionally, the presence of an affirmative defense should be considered in determining whether class certification is appropriate. [FN44]

FN42. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 478 n. 5 (S.D.N.Y.2002).

FN43. *Pecere*, 194 F.R.D. at 69 (quoting *D'Alauro v. GC Servs. Ltd.*, 168 F.R.D. 451, 454 (E.D.N.Y.1996)); *see also Daniels v. City of New York*, 198 F.R.D. 409, 413 n. 5 (S.D.N.Y.2001) (noting that the court need not rely on bare allegations but "may consider the range of proof necessary to support class certification").

FN44. *See Visa Check*, 280 F.3d at 138; *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir.2000); *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996) (explaining that "a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues").

B. Requirements for Class Certification

To be certified as a class under Rule 23, the moving party must satisfy all four requirements of subsection (a). Additionally, the movant must demonstrate that the class is "maintainable" as defined in subsection (b).

1. Rule 23(a)

Rule 23(a) permits one or more members of a class to sue as representative parties only if:
(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
*4 In addition, while " 'Rule 23(a) does not expressly require that a class be definite in order to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 944543 (S.D.N.Y.))

Page 6

be certified[,] a requirement that there be an identifiable class has been implied by the courts." ' [FN45] This requirement is often referred to as "ascertainability." [FN46]

> FN45. *Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y.2003) (quoting *Zapka v. Coca-Cola Co.*, No. 99 Civ. 8238, 2000 WL 1644539, at *2 (N.D.Ill. Oct. 27, 2000)).

> FN46. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 336 (S.D.N.Y.2002).

a. Implied Requirement of Ascertainability

To bridge the "wide gap" between an individual's claim and "the existence of a class of persons who ha[s] suffered the same injury as the individual," plaintiff must demonstrate the existence of an "aggrieved class." [FN47] Plaintiff must also demonstrate that the aggrieved class can be readily identified. [FN48] "A class's definition will be rejected when it 'requires addressing the central issue of liability in a case' and therefore the inquiry into whether a person is a class member 'essentially require[s] a mini-hearing on the merits of each [plaintiff's] case." ' [FN49] Class members need not be ascertained prior to certification, but must be ascertainable at some point in the case. [FN50]

> FN47. *Sheehan v. Purolater, Inc.*, 839 F.2d 99, 102 (2d Cir.1988) (denying class certification because plaintiff failed to establish proof of an aggrieved class).

> FN48. *See Simer v. Rios*, 661 F.2d 655, 669 (7th Cir.1981) (denying class certification because it would have been a "Sisyphean task" to identify those individuals with viable claims).

> FN49. *Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 55 (S.D.N.Y.2000).

> FN50. *See In re MTBE,* 209 F.R.D. at 337 (citation omitted).

b. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility of joinder, but rather difficulty or inconvenience of joinder." [FN51] Generally, a class composed of more than forty members satisfies the numerosity requirement. [FN52] Although a plaintiff need not present a precise calculation of the number of class members [FN53] and it is permissible for the court to rely on reasonable inferences drawn from available facts, [FN54] the movant " 'must show some evidence of or reasonably estimate the number of class members." ' [FN55] "Where the plaintiff's assertion of numerosity is [based on] pure speculation or bare allegations, the motion for class certification fails." [FN56]

> FN51. *In re Indep. Energy,* 210 F.R.D. at 479.

> FN52. *See Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y.1992).

> FN53. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993).

> FN54. *See McNeill v. New York Hous. Auth.*, 719 F.Supp. 233, 252 (S.D.N.Y.1989).

> FN55. *Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y.2001) (quoting *Pecere,* 194 F.R.D. at 69).

> FN56. *Id.*

c. Commonality

Commonality requires a showing that common

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 944543 (S.D.N.Y.))

Page 7

issues of fact or law affect all class members. [FN57] The commonality requirement may be met when individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct." [FN58] A single common question may be sufficient to satisfy the commonality requirement. [FN59] "The critical inquiry is whether the common questions are at the 'core' of the cause of action alleged." [FN60]

FN57. *See* Fed.R.Civ.P. 23(a)(2); *see also Trief*, 144 F.R.D. at 198.

FN58. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997).

FN59. *See German v. Federal Home Loan Mortgage Corp.*, 885 F.Supp. 537, 553 (S.D.N.Y.1995).

FN60. *D'Alauro*, 168 F.R.D. at 456; *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir.1987).

d. Typicality

A class representative's claims are "typical" under Rule 23(a)(3), where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove defendants' liability. [FN61] "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." [FN62]

FN61. *See Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir.2001).

FN62. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990) (citation omitted).

e. Adequacy of Representation

The movant must also show that the proposed action will fairly and adequately protect the interests of the class. [FN63] To do so, proposed class representatives must demonstrate that they have no interests that are antagonistic to the proposed class members. [FN64] In addition, courts have considered other factors, such as whether the putative representative is familiar with the action, whether he has abdicated control of the litigation to class counsel, [FN65] and whether he is of sufficient moral character to represent a class. [FN66]

FN63. *See* Fed.R.Civ.P. 23(a)(4); *Banyai v. Mazur*, 205 F.R.D. 160, 164 (S.D.N.Y.2002).

FN64. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992); *see also Robinson*, 267 F.3d at 170 (noting Rule 23(a)(4) requires an "absence of conflict" between the named representatives and the class members, as well as "vigorous prosecution").

FN65. *See* 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.21 [4] (3d ed.2003) (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec.*, 185 F.R.D. 172, 175-76 (S.D.N.Y.1999), *aff'd in part, vacated in part by Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir.2000)).

FN66. *See, e.g., Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir.1998).

2. Rule 23(b)(3)

a. Predominance

*5 "[T]o meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 944543 (S.D.N.Y.))

Page 8

issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." [FN67] The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." [FN68]

FN67. *Visa Check,* 280 F.3d at 36 (quotation marks and citation omitted).

FN68. *Moore v. Painwebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002).

This requirement is far more demanding than the commonality requirement of Rule 23(a). [FN69] Because Rule 23(b)(3) requires that common issues predominate, courts often deny certification where common issues of law are not present or where resolving the claims for relief would require individualized inquiries. [FN70] To that end, a court evaluating whether a movant has satisfied the requirements of Rule 23(b)(3) must examine both the claims and the defenses. But the fact that a defense " 'may arise and [ ] affect different class members differently does not compel a finding that individual issues predominate over common ones." ' [FN71] The relevant inquiry is "not whether a defense exists, but whether the common issues will predominate over the individual questions raised by that defense." [FN72]

FN69. *See Amchem Prods Inc. v. Windsor,* 521 U.S. 598, 623-624 (1997).

FN70. *See, e.g., Lewis Tree Serv., Inc. v. Lucent Techs. Inc.,* 211 F.R.D. 228, 235 (S.D.N.Y.2002); *In re MTBE,* 209 F.R.D. at 350.

FN71. *Visa Check,* 280 F.3d at 138 (quoting *Waste Mgmt.,* 208 F.3d at 296).

FN72. *Id.*

b. Superiority

The superiority question under Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication. The court should consider, inter alia, "the interest of the members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action." [FN73]

FN73. Fed.R.Civ.P. 23(b).

3. Rule 23(g) [FN74]

FN74. As noted in the Advisory Committee's Notes to the 2003 Amendments, "Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while [Rule 23(g) ] will guide the court in assessing proposed class counsel as part of the certification decision." Thus, adequacy of class counsel is now properly considered under Rule 23(g), rather than Rule 23(a)(4).

If certification is granted, Rule 23(g) provides that the court must appoint class counsel. To that end, the court *must* consider the following: "[ (1) ] the work counsel has done in identifying or investigating potential claims in the action, [ (2) ] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, [ (3) ] counsel's knowledge of the applicable law, and [ (4) ] the resources counsel will commit to representing the class." [FN75] The court *may* consider any "other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." [FN76]

FN75. Rule 23(g)(1)(C)(i); *see also Drexel Burnham Lambert Group,* 960 F.2d at 291 ("[C]lass counsel must be qualified, experienced and generally able to conduct the litigation.") (quotation marks and citation omitted).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 944543 (S.D.N.Y.))

Page 9

FN76. Rule 23(g)(1)(C)(ii).

C. New York Law

New York Labor Law provides for a six-year statute of limitations for wage claims. [FN77] One such wage claim relates to an employer's failure to properly compensate employees for time spent at work in excess of forty hours per week. [FN78] Specifically, section 142-2.2 provides, in relevant part:

FN77. N.Y. Labor Law § 198(3).

FN78. *See* N.Y. Labor Law § 160 (deeming eight hours to be a "legal day's work" for employees other than those specifically exempted, such as street surface or elevated railroad employees; or employees engaged in the operation of steam or electric surface, subway, or elevated railroads); N.Y. Comp.Codes R. & Regs. tit. 12, § 142-2.2; 29 U.S.C. § 207(2) (incorporated by reference in section 142-2.2).

An employer shall pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate in the manner and methods provided in and subject to the exemptions of section[ ] ... 13 of ... the [FLSA].... In addition, an employer shall pay employees subject to the exemptions of section 13 of the [FLSA] ... overtime at a wage rate of 1 1/2 times the basic minimum hourly rate.

*6 Under section 13(a)(1) of the FLSA, statutory protection is not extended to those employees "employed in a bona fide executive, administrative, or professional capacity." [FN79] The regulations promulgated by the Secretary of Labor pursuant to section 13(a)(1) define which employees qualify as "bona fide executives." Federal regulations, in turn, provide that employees earning $250 or more per week are "bona fide executives" if they satisfy the following requirements: (1) their "primary duty" must be managerial; and (2) they must regularly direct the work of two or more employees. [FN80]

FN79. 29 U.S.C. § 213(a). In the Second Circuit, "[e]xemptions to the FLSA are 'narrowly construed against the employers seeking to assert them.' " *Bilyou v. Dutchess Beer Distribs., Inc.,* 300 F.3d 217, 222 (2d Cir.2002) (quoting *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960)).

FN80. 29 C.F.R. § 541.1(f).

III. DISCUSSION

A. Certification of New York Wage Claims Generally

As a threshold matter, defendants argue that Noble's motion should be denied because "[c]ertification of [the] class would expand plaintiffs' Labor Law claim beyond the parameters authorized by the Legislature under New York law." [FN81] Specifically, defendants assert that because the statute under which Noble seeks relief provides for a penalty of liquidated damages, [FN82] section 901 of New York's Civil Practice Law and Rules ("C.P.L.R.") bars certification. [FN83] Although section 901 precludes the use of the class action mechanism where the underlying statute provides for a penalty, section 901 is not a *complete* bar to certification. Rather, courts have found that where the plaintiffs have "offer[ed] to waive any right to recover liquidated damages as a condition of being certified, New York law authorizes [certification]." [FN84] Because the right to liquidated damages has been waived, [FN85] section 901 does not preclude certification.

FN81. Defendants' Joint Memorandum of Law in Opposition to Plaintiff's Motion for Class Action Certification ("Def.Opp.") at 3.

FN82. There appears to be some disagreement over the identity of the statute upon which Noble's state law wage claim is premised. In his Complaint, Noble purports to bring his state law overtime claim pursuant to (New York Labor Law) section 160 and section 142-2.2; however, defendants argue that the Complaint "incorrectly allege[s] that Defendants'

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

failure to pay overtime violates New York Labor Law § 160. The correct sections governing failure to pay overtime wages are found in New York Labor Law §§ 650, *et seq.*.... [T]he specific section under which plaintiffs seek relief for alleged overtime violations is New York Labor Law § 663." Def. Opp. at 3 n. 1. As noted in the preceding section, *see supra* note 78, section 160 provides that a "legal day's work" shall be eight hours long. Section 663(1) states:

If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees as may be allowed by the court, and if such underpayment was willful, an additional amount as liquidated damages equal to twenty-five percent of the total of such underpayments found to be due him and any agreement between him and his employer to work for less than such wage shall be no defense to such action.

In the Reply Memorandum of Law, Noble appears to concede that the operative statute is section 663(1). *See* Pl. Reply at 1-2. Therefore, I will assume that Noble intended to bring this claim pursuant to section 663(1) and section 142-2.2.

FN83. *See* N.Y. C.P.L.R. § 901(b) (McKinney 2004) ("Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action."). Although the certification motion is governed by the requirements set forth under Rule 23, section 901(b) is arguably substantive and has been found to apply under similar circumstances by federal courts in this district. *See, e.g., Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 95 (S.D.N.Y.2001); *Dornberger v. Metropolitan Life Ins. Co.*, 182 F.R.D. 72 (S.D.N.Y.1998) ("Whereas this Court is bound by [Rule 23] in this action, the strictures of [section 901] do not contravene any federal rule. This situation does not warrant an invocation of the Supremacy Clause or a discussion of the overlapping scope of [section 901] and Rule 23. It would be patently unfair to allow a plaintiff an attempt at recovery in federal court for a state law claim that would be barred in state court.").

FN84. *Ansoumana*, 201 F.R.D. at 95; *see also id.* (citing cases). Defendants dispute this, citing *Foster v. Food Emporium*, No. 99 Civ. 3860, 2000 WL 1737858, at *3 (S.D.N.Y. Apr. 26, 2000) ("[Section] 901(b) provides that a plaintiff may not seek class-wide relief that includes statutorily prescribed liquidated or punitive damages unless the statute in questions [sic] explicitly authorizes its enforcement by class actions."). But defendants' reliance on *Foster* is misplaced. As the *Ansoumana* court explained, the correct rule is that articulated in *Pesantez*, *i.e.*, "[t]o the extent certain individuals may wish to pursue punitive claims ... which cannot be maintained in a class action (CPLR 901[b] ), they may opt out of the class action." *See Ansoumana*, 201 F.R.D. at 95 (quoting *Pesantez v. Boyle Envtl. Servs., Inc.*, 673 N.Y.S.2d 659, 660 (1st Dep't 1998), and rejecting the *Foster* rule as dicta).

FN85. *See* Pl. Reply at 13-14; 4/23/04 Affidavit of Jose Alberto Nunez ("Nunez Aff.") at ¶ 5.

B. Certification of Noble's State Wage Claim

1. Rule 23(a)

Whether Noble's state overtime pay claim is amenable to class certification depends first upon satisfaction of the requirements set forth in Rule 23(a). That is, in addition to showing that an identifiable class exists, Noble must demonstrate: (1) the class is so numerous that joinder is impracticable, (2) there are common questions of fact and law, (3) Noble's claim is typical of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

claims of other class members, and (4) Noble will fairly and adequately protect class interests.

a. Implied Requirement of Ascertainability

Defendants argue that the proposed class, which includes "all non-exempt employees who were not paid overtime compensation for each hour worked in excess of forty hours per week .... is not defined by the characteristics of an identifiable group." [FN86] They submit that "[i]f the Court were to certify [the] proposed class, it would be impossible to determine if an employee was a member of the class until there was an analysis of each employee's claim. This could result in a series of mini-trials for each employee...." [FN87] Noble counters by characterizing defendants' argument as "frivolous," noting that the Court "cannot consider or resolve the merits, and must assume, for purposes of the certification motion, that plaintiffs will prove their claims at trial." [FN88]

FN86. Def. Opp. at 6.

FN87. *Id.* at 7.

FN88. Pl. Reply at 2.

*7 The problem presented by these arguments is the tension between the proposed class definition and "a basic tenet of class certification [that] a court may not inquire into the merits of the case at the class certification stage." [FN89] However, certification is routinely granted where the proposed class definition relies in part on the consideration of defendants' alleged liability. [FN90] Were it otherwise, the benefits of the class action mechanism could be significantly undermined because plaintiffs seeking relief based upon a defendant's alleged unlawful *practice or policy* might be precluded from collectively bringing suit. Moreover, rejection of defendants' argument as to the inadequacy of Noble's class definition is consistent with this Circuit's liberal interpretation of the requirements of Rule 23.

FN89. *See Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 403 (E.D.Pa.1995) (finding proposed class definition "untenable" where class defined as "all residents and businesses who [ ] received unsolicited facsimile advertisements" because class membership was based on a determination of liability, potentially requiring mini-hearings on the merits of each individual's claim).

FN90. *See, e.g., Ansoumana,* 201 F.R.D. at 85 (certifying class where proposed definition included those persons "who were assigned by the Defendant labor agents to the Defendant supermarket and drugstore chains, who worked for such chains as delivery persons and/or dispatchers after January 13, 1994, and who were not paid minimum wages or overtime premium pay" in violation of state labor laws); *see also, e.g., People United for Children, Inc. v. City of New York,* 214 F.R.D. 252, 256 (S.D.N.Y.2003) (granting certification where class defined as "more than 1,000 African Americans who have already been harmed by defendants' discriminatory, otherwise unlawful, arbitrary and capricious enforcement of their aforementioned policy"); *Maneely v. City of Newburgh,* 208 F.R.D. 69, 74 (S.D.N.Y.2002) (granting certification where potential class consisted of several thousand pre-arraignment detainees or arrestees who were strip searched between 1998 and 2001, even though only some of these searches were unconstitutional). *See generally* 5 Moore et al., *supra* note 65, § 23.21[4][a] ("[A] class description that defines a class as having been damaged or injured by particular wrongful actions taken by the defendants can be adequate.").

b. Numerosity

Noble hypothesizes that there are "in all likelihood several hundred class members," [FN91] given the number of people that Healthy Pleasures has employed during the relevant six-year period. [FN92] That only three employees have opted-into the FLSA action casts doubt on Noble's claim regarding the estimated class size. However,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

because Noble has provided evidence tending to suggest that potential class members may have failed to join the FLSA collective action because they feared reprisal, particularly given their citizenship status, it is reasonable to believe that many employees fall within the ambit of the defined class. [FN93] The putative class, defined by Noble to include those employees who worked more than forty hours per week but were not paid overtime wages, appears to be sufficiently large such that joinder would "make litigation needlessly complicated and inefficient." [FN94]

FN91. Pl. Mem. at 4.

FN92. During his deposition, Omar indicated that he has 270 employees. See Omar Dep. at 9.

FN93. See Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 266-67 (D.Conn.2002) (finding numerosity requirement satisfied even though only twenty-two individuals had joined in the FLSA collective action).

FN94. Saddle Rock Partners Ltd. v. Hiatt, No. 96 Civ. 9474, 2000 WL 1182793, at *2 (S.D.N.Y. Aug. 21, 2000). Defendants contend that their payroll records undermine Noble's arguments because they reflect that all non-exempt employees were properly compensated for their overtime hours. See Def. Opp. at 10 (citing Vengurlekar v. Silverline Techs., Ltd., No. 02 Civ. 7724, 2003 WL 22801757 (S.D.N.Y. Nov. 24, 2003)). But, as Noble points out, these payroll records may not accurately reflect the hours worked by Healthy Pleasures's employees. See supra note 34; Pl. Reply at 7 ("Even a cursory perusal shows no payment of overtime to scores of employees. For example, the excerpt from the payroll records ... reveals that defendants failed to pay overtime, much less track hours worked, for thirteen kitchen employees at the 93 University Place Store for the pay period ending June 10, 2001."). Noble's bizarre inflation of thirteen to "scores" of employees notwithstanding, Omar's statement that kitchen employees typically worked sixty hours per week, see Omar Dep. at 67-68, is inconsistent with some of the payroll records submitted by defendants. Thus, because there is some dispute as to what these documents reveal, this action is distinguishable from Vengurlekar, where the documents produced in discovery clearly demonstrated that most of the potential class members were not entitled to any recovery. See Vengurlekar, 2003 WL 22801757, at *5.

c. Commonality

Despite defendants' arguments to the contrary, there are common questions of law and fact sufficient to satisfy Rule 23(a)(2). Based on Noble's allegations, there is substantial commonality among the proposed class members. During the relevant six-year period, each potential class member was employed by Healthy Pleasures to prepare or sell food, was required to work in excess of forty hours each week, and was not properly compensated for this additional labor. Although there are some differences among employees--i.e., responsibilities, hours worked, and salaries--these differences are relatively minor and relate primarily to the level of damages, if any, owing to each individual. [FN95] All potential class members are alleged to have been harmed by a common practice--defendants' failure to adequately compensate employees for overtime hours. The legal theory set forth in Noble's Complaint is common to all class members--that this alleged failure to pay overtime violates New York's labor law. Accordingly, the commonality requirement is satisfied.

FN95. See Ansoumana, 201 F.R.D. at 86 (finding that "[t]he differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled if and when liability is found").

d. Typicality

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy  
(Cite as: 2004 WL 944543 (S.D.N.Y.))

Page 13

As an initial matter, defendants assert, and Noble does not dispute, that because neither Gurung nor Rozario were produced for deposition, only Noble and Nunez are eligible to serve as potential class representatives. [FN96] Thus, only the claims of Noble and Nunez are evaluated with respect to the typicality requirement of Rule 23(a)(3). [FN97]

FN96. Def. Opp. at 11.

FN97. There is a question regarding Nunez's eligibility to serve as class representative, as he is not a named plaintiff for purposes of the state law overtime claim. Plaintiff's counsel argues that because Nunez "intervened and became a party plaintiff in the action by Consent form filed with the Court ... pursuant to Section 16(b) of the [FLSA]," he has standing to act as a class representative in this action." Stoecker 4/13 Ltr. But section 216 only grants qualifying individuals the right to opt into the *FLSA collective action.* Under this reasoning, it would appear that, by opting-in, Nunez, Gurung, and Rozario automatically joined in each of the claims asserted in Noble's Complaint, including the Whistleblower Claim. But this cannot be, as that claim relates only to Noble. Accordingly, this argument lacks merit.

That said, Nunez can serve as the class representative, even though he is not a named plaintiff. It is certainly rare for a class representative to be an individual other than a named plaintiff. Indeed, the phrases "named plaintiff" and "class representative" are often used interchangeably. *See, e.g., Caridad v. Metro-North Commuter R.R.,* 191 F.3d, 283, 293 (2d Cir.1999). But defendants have not identified, nor has a review of the case law revealed, a requirement that class representatives must sue individually. *See In re Telectronics Pacing Sys., Inc.,* 172 F.R.D. 271, 283 (S.D.Ohio 1997) ("While it seems unusual that a class representative has not sued individually, the Court finds no requirement in Rule 23 that they do so. There is no dispute that the proposed class representatives are members of the class. Generally class members can be passive and are not required to intervene in the class action.").

*8 Although Noble's claim arises from the same course of conduct as that of the other class members--Healthy Pleasures's requirement that its employees work overtime without compensation--resolution of his claim will depend on whether he is exempt from coverage under New York Labor Law. This, in turn, will require a fact-intensive inquiry into the scope of his responsibilities. Although unique defenses do not *necessarily* destroy typicality where, as here, the defense "threaten[s] to become the focus of the litigation," [FN98] the plaintiff cannot be considered "typical" of the class. [FN99]

FN98. *Baffa,* 222 F.3d at 59. That this inquiry "threatens" to become the "focus" of the litigation is evident from the fact that it was one of two bases for defendants' summary judgment motion.

FN99. Noble argues that "[t]he purpose of the typicality requirement is to insure that the class representatives do not have a substantial conflict between themselves and the other members of the class regarding the subject matter of the ligitation." Pl. Reply at 9-10. But the typicality requirement is not solely concerned with potential antagonism between the interests of the class representative and other class members. As the Second Circuit has explained, typicality is important because "where a putative class representative is subject to unique defenses," these defenses "threaten to become the focus of the litigation." *Baffa,* 222 F.3d at 59. Moreover, "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Gary Plastic Packaging Corp.,* 903 F.2d at 180.

Based on his deposition testimony, Nunez may also be exempt from coverage under state overtime law for part of the time he was employed by defendants.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

[FN100] However, unlike Noble, the parties do not dispute that Nunez was a non-exempt employee for at least a portion of his employment. Specifically, for approximately six months--from March 5, 2001 until August 29, 2001--Nunez worked in the Kitchen Department, apparently under Noble's supervision, [FN101] and it was only for the last four or five months of his employment that Nunez may have assumed managerial responsibilities. Because Nunez was non-exempt for at least six months, the "unique defense" relating to his exemption cannot be characterized as central to the litigation, but may only limit his recoverable damages to the initial six-month period. As such, it does not pose a danger of distraction sufficient to defeat typicality.

> FN100. Noble argues that Nunez's job description following Noble's departure, which he states was, "Cook, whatever have to be in oven like chicken, turkey, meat, I do myself," Nunez Dep. at 34, demonstrates that Nunez was a cook, not the head "chef," with its attendant managerial responsibilities. Noble further points to Nunez's later testimony, where he explained his job responsibilities as follows, "I prepare for [Noble]. Preparing everything, what he want to cook. He want this, this and this. Cut the chicken, whatever. What he want to cook, I prepare.... I cook when there nobody else work in the position of Nigel. I cook with him together." *Id.* at 56. These statements are obviously difficult to decipher. Nonetheless, in light of Nunez's salary increase upon Noble's termination, it cannot be said with certainty that Nunez was merely a cook following Noble's departure.

> FN101. *See* Stoecker 4/13 Ltr.

e. Adequacy of Representation

Plaintiff must also show that the proposed action will fairly and adequately protect the interests of the class by demonstrating that the interests of the putative class representatives are not antagonistic to the proposed class members. [FN102] There is no indication that Nunez has any interests that are antagonistic to the potential class members or that he lacks sufficient moral character to represent a class. [FN103]

> FN102. Because Noble is not typical of the class and cannot serve as the class representative, there is really no need to address his adequacy to serve as class representative. However, he would not be an adequate class representative for much the same reason that his claims are not typical. The existence of a defense unique to Noble that threatens to become the focus of the litigation renders Noble inadequate to serve as the class representative. His representation of the class may suffer if he is distracted by the presence of a unique defense. In addition, some courts have found that where, as here, a proffered representative has a claim against a defendant other than the class claim, a conflict of interest with the class may exist, rendering that person inadequate to represent the class. *See* 5 Moore et al., *supra* note 65, § 23.25[4][b][vii]. For these reasons, Noble fails to satisfy the adequacy requirement of Rule 23(a)(4).

> FN103. *See* Nunez Aff. ¶ 4.

There is some question as to whether he is familiar with the action and has the ability to "ensure vigorous prosecution of the litigation" by "at least minimally supervis[ing] class counsel." [FN104] But these concerns do not require a finding of inadequacy. *First,* although he has difficulty reading and speaking English, [FN105] Nunez has exhibited a basic understanding of the instant action, *i.e.,* that it involves overtime pay. Moreover, Nunez has prior experience testifying in court, which shows some familiarity with the legal system. [FN106] *Second,* even though Nunez arguably lacks the ability effectively to supervise class counsel, a rigid application of this requirement is inappropriate where, as here, the class comprises relatively low-skilled laborers. Such inflexibility runs counter to a principal objective of the class action mechanism--to facilitate recovery for those least

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 944543 (S.D.N.Y.))

Page 15

able to pursue an individual action. As such, Nunez is an adequate representative for the putative class. [FN107]

FN104. 5 Moore et al., *supra* note 65, § 23.25[4][c][i]-[ii].

FN105. A tenuous grasp of the English language is insufficient to render a putative class representative inadequate. *See, e.g., In re Crazy Eddie Sec. Litig.,* 135 F.R.D. 39, 41 (E.D.N.Y.1991). Moreover, limiting eligibility to serve as class representative by precluding those who lack formal education or facility with the English language would inappropriately curtail the availability of the class action mechanism to classes comprised primarily of those who are least able to protect their interests by bringing individual lawsuits.

FN106. *See* Nunez Dep. at 10, 13-14; Nunez Aff. ¶¶ 3-4.

FN107. Defendants assert that they were not "on notice" that Nunez intended to serve as a class representative. 4/14/04 Letter to the Court from Shaffin A. Datoo, defendants' counsel. But this argument is specious, given that defendants' actions strongly indicate that they *assumed* that Nunez could serve as the representative. *First,* in their opposition papers relating to the instant motion, defendants addressed the question of Nunez's ability to represent the class on the merits, arguing that because he is atypical, he is ineligible to be the representative. *See* Def. Opp. at 11-14. *Second,* the timing of defendants' argument militates against a finding of prejudice--it was only *after* the motion was fully briefed, when the Court queried whether Nunez was a named plaintiff to the state claim, that defendants contended that they lacked notice of Nunez's involvement in this action.
Moreover, defendants deposed Nunez for purposes of the summary judgment motion. At that time, defendants' counsel asked Nunez about his: educational background, *see* Nunez Dep. at 8-9; familiarity with this lawsuit, *see id.* at 10, 12-13, 46-47; prior involvement in other litigation, *see id.* at 13-14; current employment, *see id.* at 15; scope of his duties, hours worked, overtime pay received, and nature of employment arrangement at Healthy Pleasures, *see generally id.* at 18-57; and language and reading abilities, *see id.* at 42-43. Defendants' counsel also inquired as to the circumstances of Nunez's termination, *see id.* at 47-49, and the reason why Nunez and other employees never protested their alleged underpayment by defendants, *see id.* at 45-46.

2. Rule 23(b)(3)

a. Predominance

**\*9** Defendants argue that predominance is lacking because the determination of liability will depend on whether each employee: (1) is an exempt employee; (2) worked overtime hours for which compensation was not paid; and (3) "had an agreement with defendants to have their weekly salary include overtime compensation for all hours worked in excess of forty each week." [FN108] Additionally, defendants argue that the differences between the amount of damages to which each non-exempt employee is entitled defeats predominance. But defendants' argument fails because the issues that are subject to generalized proof predominate over those issues premised on individualized findings. Specifically, the class action is based on defendants' alleged policy of requiring employees to work overtime hours without adequate compensation. Thus, to prevail on the merits of this claim, plaintiffs must produce evidence that defendants implemented an illegal policy with respect to overtime pay. Indeed, the gravamen of the claim is that defendants engaged in a course of conduct that deprived employees of their right to overtime pay. Although determinations as to damages, exempt status, and alleged labor agreements will require individualized findings, common liability issues otherwise predominate. [FN109] As such, these individualized damages inquires do not bar certification. [FN110] However, it seems sensible to limit class certification at this

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                                                      Page 16
(Cite as: 2004 WL 944543 (S.D.N.Y.))

stage solely to the issue of liability. [FN111]

FN108. Def. Opp. at 22-23.

FN109. As for the alleged oral labor agreements, defendants' present only Omar's statement as evidentiary support. In his deposition, Omar states:
[Other than Mr. Noble, the employees in the kitchen were paid] hourly, but some were paid what we agreed with them, they wanted to get a set amount of money by the end of the week so I worked it out. We worked it backwards, where they work, the salary is worked out on forty hours regular time and the other twenty hours overtime, time and a half.... [T]hey were verbal agreements.... [T]hese are Spanish guys, you know, most of them are not from this country. I'm not dealing with IBM here, I am dealing with people from the kitchen.
Omar Dep. at 27-29. Based on this testimony, the number of employees who may have entered into oral agreements to be considered "salaried," rather than hourly, employees, is limited. At most, Omar described the agreements for *some* of the members of the Kitchen Department. But the Kitchen Department comprises only eight or ten people, and as such, the number of putative class members who agreed to this arrangement is minimal. Moreover, even for those employees who allegedly agreed to a "fixed salary," Omar himself noted that this arrangement *included* overtime pay. In other words, none of the employees waived their right to overtime pay, it was included in the agreed-upon weekly salary. If, as Noble avers, defendants had a policy of depriving its employees of overtime compensation, then this policy would also affect the employees paid under a weekly salary.

FN110. See *Bresson v. Thomson McKinnon Sec.*, 118 F.R.D. 339, 343 (S.D.N.Y.1988) (noting, in a case premised on defendant's course of conduct, that although "defendant [ ] claims that individual issues predominate because each class member's damages will differ .... given the fact that issues pertaining to liability are predominantly common, rather than individual, the fact of individual issues as to damages will not defeat the class. If necessary, the Court can order separate trials on the question of damages.").

FN111. See 5 Moore et al., *supra* note 65, § 23.46[2][a] ("[I]f common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied even if individual damages issues remain. Courts often bifurcate trials into liability and damages phases in order to sever common liability questions from individual damages issues.").

b. Superiority

A class action is superior to other available methods of fairly and efficiently adjudicating Noble's state law overtime claim. *First,* the proposed class members are "sufficiently numerous" and seem to possess relatively small claims "unworthy of individual adjudication due to the amount at issue." [FN112] *Second,* there is reason to believe that class members may fear reprisal and lack familiarity with the legal system, discouraging them from pursuing individual claims. [FN113] Thus, the superiority requirement is easily satisfied by the facts in this case.

FN112. *Dornberger,* 182 F.R.D. at 83.

FN113. There is no indication that the state law overtime claim is unmanageable as a class action under the specific factors set forth under Rule 23(b)(3). That is, class members do not appear to have a strong interest in controlling their own litigation and no other putative class members have filed lawsuits alleging violations of state law.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                                                    Page 17
(Cite as: 2004 WL 944543 (S.D.N.Y.))

3. Rule 23(g)

Noble proposes that his attorney, Karl Stoecker, serve as class counsel. Defendants counter that Stoecker is inadequate, primarily due to his failure to: (1) provide the information necessary to satisfy the requirements of Rule 23(g) and (2) discuss any of the requirements of Rule 23(b) in his class certification moving papers. [FN114] Stoecker, however, addressed these deficiencies in the Reply Memorandum of Law and accompanying exhibits.

> FN114. *See* Def. Opp. at 16. For instance, Stoecker did not provide the Court with "any information concerning any prior experience in handling class actions, complex litigation, and claims of the type asserted in this case." *Id.*

Pursuant to Rule 23(g), this Court has considered the work that Stoecker has done in identifying or investigating potential claims in this action. Stoecker has clearly conducted discovery to identify potential class members and, based on the evidence before the Court, has diligently prosecuted this action. As for his experience in handling class actions and other complex litigation, Stoecker has indicated that, since the founding of his practice four years ago, he has been "devoted primarily to representing employees in wage and hour class action litigation" and that, recently, he successfully litigated an employment case, obtaining a "substantial jury verdict." [FN115] Stoecker also appears to be familiar with the applicable law, and to possess the legal and financial resources necessary to represent the class. [FN116]

> FN115. Stoecker Decl. ¶¶ 11-12.

> FN116. *See* 4/23/04 Declaration of Karl Stoecker ¶¶ 3-4.

IV. CONCLUSION

*10 For the foregoing reasons, Noble's motion for certification is granted as to liability only. The Clerk of the Court is directed to close this motion [# 35]. A conference is scheduled for May 6, 2004 at 2:45 p.m. in Courtroom 15C.
   SO ORDERED:

2004 WL 944543 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works