Westlaw.

Not Reported in F.Supp.                                                                                             Page 1
(Cite as: 1995 WL 422067 (S.D.N.Y.))

▷
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Richard BECK, Maureen Beck, and Michael J.
Goldberg, individually and on behalf
of all other persons similarly situated, Plaintiffs,
v.
STATUS GAME CORPORATION; Irving Yaffa;
Lawrence J. Dunn, Jr.; William Lax;
and Blum Shapiro & Co., P.C., Defendants.

No. 89 Civ. 2923 (DNE).

July 14, 1995.

*OPINION & ORDER*

EDELSTEIN, District Judge:

*1 Plaintiffs brought the instant class actions, alleging various securities-fraud claims. Plaintiffs move, pursuant to Federal Rule of Civil Procedure ("Rule") 23, for certification of the following class:
   All individuals, partnerships, corporations and other entities who purchased or exchanged warrants and/or common stock of Status Game Corporation on or after April 28, 1986, those who held securities of Status Game Corporation after April 28, 1986, and who were damaged, but not including defendants, members of their families, their agents[,] employees or representatives.
(Plaintiffs' Memorandum at 2.) For the reasons discussed below, the motion is denied.

*BACKGROUND*

The following summary of the facts of this case is derived from the parties' respective papers and is not in dispute except where noted. In the instant action, the putative class representatives are Richard Beck and Maureen Beck, who are married, and Michael J. Goldberg ("Goldberg"). Richard Beck and Maureen Beck jointly purchased 600 shares of Status Game Corporation ("Status") common stock on May 21, 1986. (*See* Plaintiffs' Second Amended Complaint ¶ 4.) Goldberg made numerous purchases, totalling more than $200,000, of "old warrants, new warrants and shares of common stock of Status." *Id.* ¶ 5.

Defendants are Status Game Corporation; Irving Yaffa ("Yaffa"), Status's Chairman of the Board, President, Chief Executive Officer, and a Director of Status; Lawrence J. Dunn, Jr., a Director of Status; William Lax, a Director of Status; and Blum, Shapiro & Co., P.C. ("Blum Shapiro"), an accounting firm that did accounting work for Status. Status was a publicly traded company that principally engaged in the business of designing, manufacturing, and marketing coin-operated electronic video machines for the gaming industry and for the general amusement market.

This action arises from an alleged securities fraud, involving Status, the Status Directors, and Blum Shapiro. Plaintiffs allege that in April 1986, the Status Directors prepared a prospectus, "offering to sell common stock and New Warrants of Status in exchange for cash and Old Warrants of Status." (Plaintiffs' Memorandum at 4.) Plaintiffs allege that Blum Shapiro prepared the financial statements in this prospectus. *See id.* at 5. Plaintiffs contend that, although this prospectus stated that Status had operated at a profit for the nine months ending February 28, 1986, the prospectus "was false and misleading" because "Status had experienced losses in its amusement game manufacturing division during the quarter ending February 28, 1986." *Id.* at 6. Plaintiffs assert that they only became aware of these losses when Status released its "1987 Annual Report, which was disseminated after July 31, 1987." *Id.*

Plaintiffs further assert that the 1987 Annual Report was misleading because it stated that Status had incurred losses of only $2,949,880, when Status, in fact, had incurred losses of $5.5 million. *See id.* at 7. Plaintiffs claim that they only discovered the true extent of Status's losses when Status issued its 1988 Annual Report. *See id.*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.      Page 2
(Cite as: 1995 WL 422067 (S.D.N.Y.))

*2 Plaintiffs contend that the inaccuracies in the Prospectus and the 1987 Annual Report were part of "a scheme by Defendants, including Blum Shapiro, to fraudulently represent the financial condition and future prospects of Status ... in an effort to induce investors, such as Plaintiffs and the class they represent, to purchase ... securities of Defendant Status Game Corporation." (Plaintiffs' Reply Brief at 1.) Plaintiffs assert that they relied on defendants' misrepresentations and that they have suffered damages as a result of this reliance. Plaintiffs predicate the instant action on a number of fraud theories, including violation of Section 10(b) of the Securities Exchange Act of 1934, negligent release of inaccurate information, common law fraud, and violation of Section 12(2) of the Securities Act of 1933. (Plaintiffs' Second Amended Complaint ¶¶ 21-73.)

Plaintiffs move this Court, pursuant to Rule 23, to certify the class. Defendant Blum Shapiro, the only defendant to file a memorandum in opposition to plaintiffs' motion, contends that this Court should deny class certification because the claim of each of the three putative class representatives is not typical of the claims of other class members and because each is not an adequate class representative.

### DISCUSSION

In determining whether a class should be certified, a district court must analyze the factors set forth in Rule 23(a), which provides:
> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of fact or law common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Each of these requirements will be considered in turn.

#### A. Numerosity

Rule 23(a)(1) is satisfied if the district court finds "that the numerosity makes joinder of all class members 'impracticable.' " *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993). In the instant case, plaintiffs contend that joinder of all class members is impracticable because there are over 4,000 members of the class and these class members are scattered throughout the United States. (Plaintiffs' Memorandum at 9.) Plaintiffs point out that courts in this circuit have found that Rule 23's numerosity requirement has been satisfied in cases involving far fewer class members. *See id.* at 9. Further, defendants have not challenged plaintiffs' claim that the class is so numerous that joinder of all class members is impracticable. Accordingly, this Court finds that plaintiffs have satisfied Rule 23(a)(1).

#### B. Commonality

Under Rule 23(a)(2), a class may only be certified if "there are questions of fact or law common to the class." Fed.R.Civ.P. 23(a)(2). "The commonality requirement is satisfied where the questions of law or fact linking the class members are substantially related to the resolution of the litigation, even though the individuals are not identically situated." *In re Gulf Oil,* 112 F.R.D. 383, 386 (S.D.N.Y.1986); *see also Dura-Built Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y.1981) ("Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class, although not all questions of law or fact raised need be common.").
In the instant case, plaintiffs contend that there are several issues common to the class, including "whether certain of the defendants made ... material misstatements or omissions of fact ... in the prospectus," and "[w]hether the defendants engaged in acts, practices and a course of business which operated as a fraud and deceit upon the plaintiffs and the class." (Plaintiffs' Memorandum at 11.) Defendants do not challenge plaintiffs' assertion that Rule 23(a)(2)'s requirements have been met. Accordingly, this Court finds that plaintiffs have satisfied Rule 23(a)(2).

#### C. Typicality

*3 Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). This rule "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux,* 987 F.2d at 936 (citations omitted). Rule 23(a)(3) is designed to insure "that the claims of the representative party are similar enough to the claims of the class so that he will adequately represent them." 7A Charles A. Wright *et al., Federal*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Case 3:03-cv-00945-CFD    Document 91-3    Filed 05/20/2004    Page 3 of 6

Page 4 of 7

Not Reported in F.Supp.
(Cite as: 1995 WL 422067 (S.D.N.Y.))

Page 3

Practice and Procedure § 1764 (2d Ed.1986). A putative class representative's claims are not typical, however, if the representative "will be faced with unique defenses." *Landry v. Price Waterhouse*, 123 F.R.D. 474, 476 (S.D.N.Y.1989); *see also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990) ("class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation") (citations omitted), *cert. denied*, 498 U.S. 1025 (1991). A representative who faces a unique defense does not satisfy the typicality requirement because he "would be required to devote considerable time to rebut" the unique defense and would thereby prejudice other class members. *Landry*, 123 F.R.D. at 476.

In the instant case, Blum Shapiro contends that Goldberg faces a unique defense, and thus his claim is not typical of the claims of the class. Blum Shapiro contends that Goldberg did not base his decision to purchase Status stock on public information, but rather, he made his decision based on non-public information that he received from defendant Yaffa, the Chairman of the Board, President, Chief Executive Officer, and a Director of Status. (*See* Blum Shapiro's Memorandum at 12.) Blum Shapiro notes that Goldberg met with Yaffa face-to-face to discuss Status, and that Goldberg stated that he "left [the meeting] with a very forward feeling and decided this is the company we need to buy." (Affidavit of Michael J. Goldberg at 54, November 23, 1992.) Blum Shapiro also notes that after this meeting, Goldberg spoke with Mr. Yaffa on four or five other occasions, both in person and by telephone. *Id.* at 73.

In their reply brief, plaintiffs assert that Blum Shapiro incorrectly implies that the information that Goldberg received from Yaffa was " 'inside information' which was unavailable to the general public (or other class members)." (Plaintiffs' Reply at 11.) Moreover, plaintiffs contend that Goldberg relied "on a number of different factors in investing in Status," including the "financial information contained in the Prospectus and subsequent reports issued by Status Game during the class period." *Id.* at 12.

As previously discussed, a putative class representative's claims are not typical if the representative faces a unique defense. *See Landry*, 123 F.R.D. at 476. In *Landry*, seven putative class representatives moved for class certification in a securities fraud litigation. *See id.* at 474-75. The *Landry* defendants argued that "each of these plaintiffs is atypical because each purchased [the] stock based on non-public information." *Id.* at 475-76. This Court denied class certification because "[t]he fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members." *Id.* at 476. Moreover, this Court noted that regardless of whether the defenses in *Landry* were meritorious, the fact remained that each plaintiff "would be required to devote considerable time to rebut" the unique defenses and this allocation of plaintiffs' resources would "prejudice absent class members." *Id.* (citations omitted).

*4 In the instant case, Goldberg faces a unique defense that renders his claim atypical of other class members. Goldberg testified in deposition that he met privately with Yaffa, the Chairman of the Board, President, Chief Executive Officer, and a Director of Status, to discuss Status. Goldberg indicated that this meeting influenced his decision to buy Status stock, and he stated that he had four or five subsequent conversations with Yaffa. Based on these statements, Blum Shapiro argues that Goldberg did not rely on public information in making his decision to purchase Status. This defense obviously will be unique to Goldberg because plaintiffs make no claim that each of the 4,000 persons who owned Status stock met with a member of the Status Board or had several conversations with a Board member. Thus, Goldberg faces a unique defense that could become, as it has already, the subject of considerable litigation. *See Landry*, 123 F.R.D. at 476. If Goldberg served as a class representative, plaintiffs' counsel "would be required to devote considerable time to rebut" this unique defense, thereby prejudicing absent class members. *Id.*

Plaintiffs' claim that Goldberg did not receive inside information, but rather relied on public information, does not alter the fact that his claim is atypical. As this Court noted in *Landry*, it does not matter whether a unique defense ultimately will prove meritorious because the fact remains that Goldberg will "be required to devote considerable time to rebut" the unique defense. *Id.* at 476 (citations omitted); *see also id.* ("whether these

Not Reported in F.Supp.  
(Cite as: 1995 WL 422067 (S.D.N.Y.))

Page 4

defenses will be successful is of no matter").

Accordingly, this Court finds that Goldberg's claim is not typical of the claims of other class members, and thus, plaintiffs have failed to satisfy Rule 23(a)(3) regarding Goldberg. This Court need not decide whether plaintiffs have satisfied Rule 23(a)(3)'s typicality requirement regarding either Richard Beck or Maureen Beck because, for the reasons discussed below, this Court finds that they are not adequate class representatives.

### D. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Adequacy of representation depends on two factors. "First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." *In re: Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992) (quoting *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968)), *cert. denied,* 113 S.Ct. 1070 (1993). In addition, Rule 23(a)(4) requires that "the party is not simply lending his name to a suit controlled entirely by the class attorney." 7A Charles A. Wright *et al., Federal Practice and Procedure* § 1766 (2d Ed.1986).

Blum Shapiro claims that neither Richard Beck nor Maureen Beck is an adequate class representative because each has displayed an alarming lack of familiarity with the instant action. Blum Shapiro notes that Richard Beck stated in his deposition that the Status prospectus contained "a lot of jargon and things that I don't understand." (Deposition of Richard Beck at 25, October 30, 1992.) Richard Beck also stated that he was unsure who Blum Shapiro was or what it did. *See id.* at 48. Richard Beck also stated that he did not recall whether he had received any annual reports from Status. *See id.* at 56.

*5 Further, Blum Shapiro argues that Richard Beck apparently "was not even aware that he was a named plaintiff in this action" until two years after this action was filed. (Blum Shapiro's Memorandum at 17.) Richard Beck stated that he first consulted a lawyer about his investment in Status in 1991, (Deposition of Richard Beck at 66, October 30, 1992.), despite the fact that this suit was filed in his name in 1989. When reminded of the fact that this suit had been filed in 1989, Beck stated that he "guessed" he had consulted a lawyer in 1989. *Id.* However, Beck proceeded to testify that the lawyer he consulted in 1989 was a personal friend, who is not an attorney representing the class in this case. *See id.* at 67. Beck's testimony further indicates that he did not speak to a member of Beigel and Sandler, the firm that represents plaintiffs in this action, until 1991--two years after this action was filed. *See id.* 67-68.

Blum Shapiro argues that Maureen Beck also has displayed an alarming lack of familiarity with the instant action. At her deposition, Maureen Beck stated that she did not know: (1) how many shares of Status stock she and her husband had purchased; (2) that defendant Blum Shapiro is an accounting firm; (3) whether she had received any quarterly or annual reports from Status; or (4) whether Status's prospectus contained financial statements. (Deposition of Maureen Beck at 86, 88, 89-90, 83, October 30, 1992.) Moreover, Blum Shapiro points out that "Mrs. Beck never talked to anyone about being a plaintiff in this action, let alone a representative of a class, and she does not know how she came to be a plaintiff in this case." (Blum Shapiro's Memorandum at 17.) Blum Shapiro cites to the following deposition testimony:

Q: Okay. Other than your husband, did you talk to anyone else about your concern with the investment?  
A: No.  
Q: Did you ever talk to anyone about filing a lawsuit?  
A: No.  
....  
Q: How is it that you came to be a plaintiff in this case?  
A: Honestly? I don't know.  
Q: When was the first time that you learned that you were a plaintiff in the lawsuit?  
A: Months ago, but I don't--I really can't recall.

(Deposition of Maureen Beck at 93, October 30, 1992.) Blum Shapiro further notes that when Mrs. Beck was asked whether she wanted to be a plaintiff in this action, "she answered yes but only *after* her attorney improperly coached her with a lengthy objection." (Blum Shapiro's Memorandum at 18 (citing Deposition of Maureen Beck at 93-96, October 30, 1992).)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.  
(Cite as: 1995 WL 422067 (S.D.N.Y.))

Page 5

Plaintiffs claim that the Becks have sufficient knowledge of the facts of the instant case to act as class representatives. Plaintiffs note that the Becks do not have a conflict of interest with other class members. (See Plaintiffs' Reply Memorandum at 22.) Plaintiffs also assert that "[d]etailed knowledge on the part of non-lawyers of what acts might constitute a cause of action under Rule 10b-5 cannot be expected and is certainly not required of a class representative." Id. at 23. Plaintiffs argue that the Becks are adequate representatives because they "have demonstrated that they do have a basic knowledge of the facts of this case, that they are willing participants and have fully complied with discovery and that they intend to vigorously prosecute this action." Id. at 24. Yet, plaintiffs have not responded to the assertion that the Becks had no contact with plaintiffs' attorneys for the first two years of this litigation.

*6 As previously discussed, in analyzing whether a putative class representative is adequate, a court must determine whether the party is "simply lending his name to a suit controlled entirely by the class attorney." 7A Charles A. Wright et al., Federal Practice and Procedure § 1766 (2d Ed.1986). Courts have ruled that a putative class representative is inadequate when the putative representative has demonstrated lack of familiarity with the class-action suit. See Darvin v. International Harvester Co., 610 F.Supp. 255, 257 (S.D.N.Y.1985) (plaintiff's "uncertainty and inconsistency, which are characteristic of plaintiff's deposition testimony and which indicate plaintiff's unfamiliarity with the action, illustrate his inadequacy to act as class representative") (citations omitted); Weisman v. Darneille, 78 F.R.D. 669, 671 (S.D.N.Y.1978) ("Plaintiff's unfamiliarity with this suit also requires the denial of certification.") (citation omitted); Greenspan v. Brassler, 78 F.R.D. 130, 133-34 (S.D.N.Y.1978) ("Plaintiffs' limited personal knowledge of the facts underlying this suit, as well as their apparently superfluous role in this litigation to date, indicate their inadequacy as class representatives.") (citations omitted).

In Efros v. Nationwide Corp., 98 F.R.D. 703, 707 (S.D.Ohio 1983), the court ruled that a putative class representative was inadequate because she had given her attorneys "unfettered discretion" to conduct the litigation on her behalf. The Efros court was "greatly troubled by the fact that both the Complaint and the Amended Complaint were filed well before [the putative class representative] ever spoke with or retained any of the attorneys who are representing her in this case." Id. at 707. In addition, the motion for class certification in Efros was filed before the putative class representative "contacted or retained counsel." Id. at 707.

Similarly, in Weisman v. Darneille, 78 F.R.D. 669, 671 (S.D.N.Y.1978), a court in this district ruled that a putative class representative's unfamiliarity with the class-action suit rendered him inadequate where:

> Plaintiff did not meet with his counsel in the ten months between the filing of the complaint and the day preceding his deposition. He cannot describe his claim or name the defendants. He was not even certain that he had seen a copy of the complaint before his deposition.

As these cases demonstrate, a class is entitled to "an adequate representative, one who will check the otherwise unfettered discretion of counsel in prosecuting the suit." Id.; see also Greenspan, 78 F.R.D. at 133 (" 'The class is entitled to more than blind reliance upon even competent counsel by uninterested and inexperienced representatives.' ") (quoting In re: Goldchip Funding Co., 61 F.R.D. 592 (M.D.Pa.1974)).

Plaintiffs' assertion that the Becks are adequate class representatives is meritless. Plaintiffs have failed to appreciate that a class representative must exercise some control over the litigation in order to "check the otherwise unfettered discretion of counsel in prosecuting the suit." Weisman, 78 F.R.D. at 671; see also Greenspan, 78 F.R.D. at 133 (" 'An attorney who prosecutes a class action with unfettered discretion becomes, in fact, the representative of the class. This is an unacceptable situation because of the possible conflicts of interest involved.' ") (quoting In Re Goldchip Funding Co., 61 F.R.D. 582 (M.D.Pa.1974)). In the instant case, during the first two years of this litigation, the Becks obviously did nothing to check the unfettered discretion of plaintiffs' attorneys because the Becks did not even speak with these attorneys.

*7 This Court finds that the Becks are not adequate class representatives because of their lack of familiarity with this suit and the lack of control that they have exercised over their attorneys. [FN1] Richard Beck's deposition testimony indicates that he did not have any discussions with the attorneys in this case until two years after the complaint was

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
(Cite as: 1995 WL 422067 (S.D.N.Y.))

Page 6

filed. During these initial two years, plaintiffs' attorneys filed a complaint, an amended compliant, a second amended complaint, and the instant motion for class certification, [FN2] all without speaking to Richard Beck. Although Richard Beck has a rudimentary knowledge of some of the facts on which this class action is predicated, his complete lack of communication with his attorneys during the first two years of this litigation demonstrates that he has failed to "check the otherwise unfettered discretion of counsel in prosecuting [this] suit." *Weisman,* 78 F.R.D. at 671.

The problems with Maureen Beck are even more severe. Not only has she demonstrated a lack of understanding regarding some of the basic elements of this suit, but she stated in her deposition that she did not consult an attorney regarding filing this suit, and she did not know how she came to be a class representative in this suit. After reviewing Maureen Beck's deposition testimony, this Court finds that she is an inadequate class representative because she is unfamiliar with the facts of the case and she was unaware of this suit's existence or her role as a class representative.

Accordingly, plaintiffs' motion for class certification is denied.

SO ORDERED.

> FN1. Because this Court finds that the Becks are not adequate representatives this Court need not determine whether class counsel is " 'qualified, experienced and generally able' to conduct the litigation." *In re: Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992) (quoting *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968)), *cert. denied,* 113 S.Ct. 1070 (1993).

> FN2. After plaintiffs moved for class certification, defendants moved to dismiss this action, and the parties stipulated that defendants' time to file briefs in opposition to plaintiffs' class-certification motion would be extended until this Court ruled on defendants' motion to dismiss.

1995 WL 422067 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works