1998 WL 241279                                                                                                       Page 1
(Cite as: 1998 WL 241279 (S.D.N.Y.))

H
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Laborers Local 17 Health and Benefit Fund et al.,
On Behalf of Themselves and
All others Similarly Situated, Plaintiffs,
v.
PHILIP MORRIS, INC. et al., Defendants.
United Federation of Teachers Welfare Fund et al.,
On behalf of Themselves and
All Others Similarly Situated, Plaintiffs,
v.
PHILIP MORRIS, INC. et al., Defendants.

No. 97CIV.4550(SAS)(MHD),
97CIV.4676(SAS)(MHD).

May 12, 1998.

Perry Weitz, Esq., Arthur M. Luxenberg, Esq., Steven E. Fineman, Esq., Karen J. Mandel, Esq., Weitz & Luxenberg, P.C., New York.

Melvyn I. Weiss, Esq., David J. Bershad, Esq., Michael C. Spencer, Esq., Kenneth J. Vianale, Esq., Milberg Weiss Bershad Hynes & Lerach LLP, New York.

MEMORANDUM & ORDER

DOLINGER, Magistrate J.

*1 Plaintiffs, consisting of nine employee benefit trust funds, have filed these parallel class-action lawsuits to seek relief for purported fraud and other tortious conduct by the six principal domestic cigarette manufacturers and related defendants. [FN1] The gist of the case is found in the plaintiffs' assertion that, for many decades, defendants concealed crucial information about the dangers of cigarette smoking and other exposure to tobacco products, and that, as a result, the plaintiff funds and other, similarly situated funds were required to pay gargantuan medical benefits to treat tobacco-related illnesses suffered by fund beneficiaries. (*See* Compl. ¶¶ 1-8). The implication is that, had the pertinent information been disclosed, the funds would have undertaken different, and perhaps more aggressive, anti-smoking programs and perhaps other steps to limit such costs. The relevant injury, then, is to the "plaintiffs' infrastructure and financial stability." ( *Laborers Local 17 v. Philip Morris, Inc.*, March 25, 1998 Op. at 26).

   FN1. The claims encompass both common law torts, including fraud, and asserted violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The RICO claims are premised on an asserted pattern of wire or mail fraud. (*See* Plaintiffs' RICO Statement, dated Sept. 12, 1997, at 1-2).

The parties have commenced discovery that is directed to plaintiffs' recently filed motions for class certification. [FN2] Although merits discovery has not been stayed, it is the understanding of the parties, with the acquiescence of the court, that such discovery should be held in abeyance at present, at least until pending motions to remand a number of parallel suits have been disposed of by Judge Sotomayor.

   FN2. Plaintiffs seek certification under Fed.R.Civ.P. 23(b)(2) and (3).

At a discovery conference conducted on May 6, 1998, counsel for the parties presented a number of discovery issues, all but one of which the court disposed of on the record. The one exception pertains to defendants' request that we authorize them to conduct discovery of absent class members.

Defendants claim that such discovery, in the form of interrogatories, document requests and depositions, is necessary in order to permit them to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1998 WL 241279  
(Cite as: 1998 WL 241279 (S.D.N.Y.))

Page 2

explore the degree of commonality, or lack thereof, among class members on the issue of reliance and, apparently, the extent and nature of their injury. Defendants argue that such information is required to assist them in resisting the class certification motion, specifically with regard to the existence of common questions, the predominance of such questions and the typicality of the named plaintiffs' claims.

The courts have frequently noted the "inevitable tension in the discovery of nonrepresentative class members because of the conflict between 'the competing interests of the absent class members in remaining passive and the defendant in having the ability to ascertain necessary information for its defense.' " *Redmond v. Moody's Investor Service*, 1995 WL 276150, at *1 (S.D.N.Y. May 10, 1995) (quoting *Robertson v. National Basketball Ass'n*, 67 F.R.D. 691, 697 (S.D.N.Y.1975)). Such discovery is not *per se* unavailable, although it is generally disfavored and will therefore not be permitted unless (1) the defendant demonstrates a clear need for the information for trial of those aspects pertinent to the class claims, (2) the court is satisfied that the discovery requests are narrowly tailored to their purpose and (3) the discovery is not intended to, and will not, impose undue burdens on the absent class members. *See, e.g., Krueger v. New York Telephone Co.*, 163 F.R.D. 446, 450- 51 (S.D.N.Y.1995)(citing cases). The requirement of tailoring has also led a number of courts to deem document requests and interrogatories as preferable to depositions of class members. *See, e.g., Redmond*, 1995 WL 276150, at *1; *Krueger*, 163 F.R.D. at 452.

*2 In this case defendants argue that they need to explore the knowledge of individual class members as to smoking hazards during the pertinent period, the steps that those members took in reliance on that knowledge, and the extent to which they were misled by the alleged withholding of defendants' scientific data, that is, what the members did or failed to do because of their ignorance of the assertedly withheld information. All of this discovery is said to be needed in order to contest plaintiffs' class-action motion, presumably on the basis that the extent of each class member's knowledge and reliance is unique to that member, and hence that individual issues predominate over issues common to the purported class. Defendants also suggest that they may seek to contest the typicality of the named plaintiffs' claims.

In assessing defendants' assertion of need, we note that there are already nine named plaintiff funds from which defendants may obtain discovery of this nature. If, as appears altogether likely, each fund relied to a differing degree on the absence of the allegedly withheld information about the dangers of smoking, those differences may be apparent from discovery of those plaintiffs. We also note that, as defined by plaintiffs, the common issues on which they rely for certification are almost all concerned with the activities of the defendants rather than of the plaintiffs. (*See* Mem. in Supp. of Class Cert., dated March 16, 1998, at 5-6). This suggests that, insofar as relevant to the question of the predominance of common issues, there will not be much dispute between plaintiffs and defendants that the precise degree to which each class member relied will differ. [FN3]

> FN3. In fairness to defendants, however, at oral argument plaintiffs' counsel declined to concede that the precise form and extent of reliance varies among class members.

In response, defendants assert that the nine plaintiffs do not constitute a sufficiently large universe to develop the necessary data. Moreover, they may also be heard to argue that the extent of the difference in reliance among class members will be relevant in assessing both the appropriateness of class certification and the choice of the current class representatives as typical of the class.

Defendants' argument about the need for a larger universe for discovery purposes is made in conclusory terms and without any specifics or evidentiary grounding. Moreover, defendants seek both written discovery--interrogatories and document production--and a deposition campaign that, by defendants' terms, would yield as many as fifty depositions of absent class members [FN4], in addition to their planned discovery of the nine class representatives and others, [FN5] and they do so without concrete explanation for the size of this proposed expedition.

> FN4. Defendants have proposed taking discovery from as many as fifteen

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1998 WL 241279    Page 3
(Cite as: 1998 WL 241279 (S.D.N.Y.))

non-plaintiff members of the *Laborers* class and ten members of the *United Federation* class. Since their counsel asserted at oral argument that they seek depositions of both an administrator and a board member from each plan, they are asking in effect for as many as fifty depositions of non-party class members.

FN5. Defendants outlined a proposed general discovery plan for class certification in a March 31, 1998 letter to plaintiffs' counsel, and they have attached a copy to their May 6, 1998 motion papers as Exhibit E.

Despite the generality of defendants' presentation, it is not entirely unpersuasive. There is no question that plaintiffs allege conduct by defendants that was common to all of the plaintiffs, that is, the withholding of data and misrepresentations to the public at large. Nonetheless, the balance of the case concerns the class members' reactions to that conduct, and those responses are likely to have varied. If so, opposition to the certification motion will likely focus on both the degree of such variation and its significance for adjudicating plaintiffs' claims. It is also plausible that, in seeking to block certification, defendants will legitimately desire to delve into the typicality of the named plaintiffs' claims.

*3 Given this focus, the discovery related to the certification motion will also center on reliance issues and perhaps on the significant distinctions, if there be any, between the relevant circumstances of the nine plaintiffs and the other class members. In view of that conclusion, we cannot say that the interest of the defendants in obtaining some information pertinent to these matters from some of the non-plaintiff class members is unjustified [FN6] or reflective of any bad-faith motives. Moreover, since the class members here are not the typical members of a plaintiff class--individuals with small claims and presumably limited means--but rather are organized entities providing financial and other benefits to members of their constituencies under pre-existing collective bargaining agreements, there is less concern that some controlled discovery will be unduly burdensome or imperil the maintenance of the class. *See, e.g., Town of New Castle v. Yonkers Contracting Co. ., Inc.,* 1991 WL 159848, at *2 (S.D.N.Y. Aug.13, 1991); *Robertson,* 67 F.R.D. at 699.

FN6. I note that defendants' argument about typicality could be made in any case, and thus could be viewed as proving too much, since it would justify discovery of class members in virtually all cases. That said, we note that in many cases there will be little, if any, real question about the named plaintiffs' typicality, or else the facts pertinent to that question will be readily apparent from the face of the complaint or discovery directed solely to the named plaintiffs. That is not the case here, since the uniqueness of each fund's pertinent activities is neither self-evident nor likely to be learned solely from the plaintiff funds.

There does remain, however, a serious question as to the extent and scope of any discovery to be undertaken by the defendants. As noted, their current plans are both generally stated and seemingly very broad in scope. We are not prepared, at this stage and on the current record, to approve the extent of the discovery that they seek.

For present purposes, defendants may select a total of ten class members from the lists either already provided or soon to be provided by the plaintiffs, and may request documents from those members reflecting such matters as the nature of the class member's constituency (that is, the type of work done by the beneficiaries of the fund), the nature of the fund's activities that were purportedly affected by the defendants' alleged misconduct, and the degree and nature of the alleged effect, as well as any indication that the fund was already aware of the information purportedly withheld by defendants. Whether follow-up discovery from these members, particularly the use of narrative interrogatories or short depositions, will be permitted in preparation for opposing the class certification motion will depend on whether defendants can make a showing that specific further inquiry is warranted.

CONCLUSION

For the reasons noted, we approve a limited

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1998 WL 241279                                                                                        Page 4
(Cite as: 1998 WL 241279 (S.D.N.Y.))

document request by defendants directed to ten non-plaintiff members for the purpose of preparing to respond to the certification motion. Our analysis is limited to that purpose, and is not intended to suggest any views as to the propriety of discovery addressed to class members concerning the merits of the case.

SO ORDERED.

1998 WL 241279, 1998 WL 241279 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works