Exh. F

**Westlaw.**

Not Reported in F.Supp.                                                                                          Page 1
Fed. Sec. L. Rep. P 99,377
(Cite as: 1996 WL 689360 (S.D.N.Y.))

C

United States District Court, S.D. New York.

In re SAPIENS SECURITIES LITIGATION.
This Document Relates to All Actions.

No. 94 Civ. 3315 (RPP).

Nov. 27, 1996.

Berger & Montague, P.C. by Todd S. Collins, Philadelphia, PA, for Plaintiff.

Skadden, Arps, Slate, Meagher & Flom by Seth M. Schwartz, New York City, for Defendant Sapiens International Corp. N.V.

McGuire, Woods, Battle & Booth, L.L.P. by Stephen M. Colangelo, McLean, VA, for Defendant and Cross-Claimant John R.C. Porter.

OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

*1 On July 12, 1996, this Court preliminarily approved a Stipulation of Partial Settlement (the "Partial Settlement") dated as of June 26, 1996 submitted by counsel for the plaintiffs and counsel for the settling defendants (the "Settling Defendants") in this amended and consolidated class action litigation commenced on May 6, 1994.

The consolidated actions based on alleged violations of Sections 10(b) and 20 of the Securities Exchange Act of 1934, Rule 10b-5 of the Securities and Exchange Commission and the common law were brought on behalf of all purchasers of common stock of defendant Sapiens International Corporation, N.V. ("Sapiens") during the period March 5, 1993 through January 5, 1995 (the "class period"). [FN1] Sapiens is a Netherlands Antilles corporation with offices in Curacao, Netherlands Antilles. During the class period, Sapiens had approximately 12 million shares of common stock issued and outstanding.

FN1. Excluded from the class are directors and officers of Sapiens during the class period and members of their immediate families and legal representatives, heirs, successors and assigns.

The Settling Defendants are Sapiens and Ron Zuckerman ("Zuckerman") and Saul Shani ("Shani"), chief operating officer and chief executive officer, respectively, as well as directors and principal shareholders of Sapiens, during the class period; John R. C. Porter ("Porter"), a former director and principal of Sapiens is a non-settling defendant. Porter is alleged to have engaged in insider trading and to have been a controlling person of certain companies with which Sapiens engaged in sham business transactions during 1992 and 1993 and which materially overstated the company's financial results during the class period.

The Partial Settlement will result in the dismissal with prejudice of this litigation and the release of any and all claims of any nature or description that have been asserted by plaintiffs or the class members, or any of them, against the Settling Defendants and their affiliates, directors, officers and personal or legal representatives past or present (expressly excluding Porter) based upon or related to the purchase of Sapiens common stock by plaintiffs or settlement class members during the class period and the facts, acts or omissions that were or could have been alleged in this litigation. The Partial Settlement is conditioned upon entry of a final judgment and upon the settling parties obtaining an order from the Court barring the assertion of claims against the Settling Defendants by Porter, but will provide, in the event there is a verdict in the litigation against Porter, for a set-off credit, governed by the "proportionate liability of a defendant rule," to which Porter would be entitled by reason of this Partial Settlement by the Settling Defendants. The parties and Porter have agreed upon the language of the "bar order" presented to the Court.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.  
Fed. Sec. L. Rep. P 99,377  
**(Cite as: 1996 WL 689360 (S.D.N.Y.))**

Page 2

The complaint herein charges that the defendants were responsible for material misrepresentations and omissions in public documents with respect to Sapiens' financial results in 1992, 1993 and early 1994. In 1995, Sapiens restated its previously reported financial results for 1992 and 1993 and for the first two quarters of 1994. As a result, plaintiffs allege, the price of Sapiens common stock during the class period was artificially inflated. In particular, plaintiffs allege that certain transactions between Sapiens and companies of which defendant Porter was a controlling person were sham transactions and that Sapiens artificially inflated its operating results during the class period by the recording of revenue and income with respect to those sham transactions.

*2 Pursuant to the terms of the proposed Partial Settlement, the Settling Defendants agree to the payment of Eight Million Five Hundred Thousand Dollars ($8,500,000), composed of Three Million Dollars in cash; 554,017 shares of Sapiens common stock, having a present market value of $3,000,000; and 350,000 shares of a new class of Sapiens preferred stock, having a principal value of $10 per share and a liquidation value of $3,500,000, to be delivered to a Settlement Fund. [FN2] The Settlement Fund would be held by plaintiffs' counsel with the power to hold or sell the common and preferred shares, and distributions would be made pursuant to a Plan of Allocation. The Plan of Allocation requires that payment of any fees to class counsel be made coincident with the receipt of payments by members of the class in the same proportions that the fee award to plaintiffs' counsel bears to the total Settlement Fund, minus the award of counsel fees.

FN2. Although the settlement is comprised of common stock valued by plaintiffs at $2 million, there is some protection for the class members against a decline in price since the stipulation of settlement provides that additional shares will be issued to the class by Sapiens in the event the price has declined on December 1, 1996. There will be no reduction in the number of shares issued, however, if the price of the common shares rises by that date. With respect to the $3.5 million component of preferred stock which pays a dividend rate of 10% per annum, the class members are somewhat protected from an illiquid market by a requirement that Sapiens redeem the preferred stock within two years of issuance either by payment of cash or by issuance of common stock. Dividends on the preferred stock may also be made by issuing shares of common stock or by paying cash.

The proposed Plan of Allocation will recognize losses of class members based on the date of sale of those securities and the degree of relationship that loss bears to the public revelations of the Settling Defendants' conduct. For shares sold during the period March 5, 1992 through and including February 8, 1994, class members will be allowed 30% of their loss, including commissions on the purchase and sale of those shares. For shares sold during the period February 9, 1994 through and including January 5, 1995, class members will be allowed 100% of the market loss, including commissions on the purchase and sale of such shares. For shares held at the close of business on January 5, 1995, class members will be allowed 100% of the loss on such shares based on the amount paid for said shares including commissions and less the greater of $1.0625, the closing bid price of Sapiens common stock on January 5, 1995, or the amount realized from the sale of any such share after January 5, 1995.

This Plan of Allocation is designed to allocate (i) a greater portion of the net Settlement Fund to those claimants who sold at a time when the stock price decline could be directly attributed to revelation of facts that the plaintiffs claim the defendants had misrepresented or failed to disclose, and (ii) a lesser portion of the net Settlement Fund to those persons who sold while the market value of common shares was inflated but the degree of price decline could not be directly attributed to revelation of the conduct of the defendants charged in the complaint. The proposed differentiation between members of the class seems fair and equitable, particularly in view of the higher prices prevailing for Sapiens common stock from March 5, 1993 to February 8, 1994.

In accordance with this Court's order of July 13,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp. Page 3
Fed. Sec. L. Rep. P 99,377
(Cite as: 1996 WL 689360 (S.D.N.Y.))

1996, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, notices of the terms of the proposed settlement and of a September 6, 1996 hearing on those terms, as well as a proof of claim form, were mailed to over 7,000 identified members of the class. Publication giving notice of the terms of the proposed settlement and the September 6, 1993 hearing was made in *The Wall Street Journal.* At the September 6, 1996 hearing, there were no objections filed to the terms of the settlement, although one class member holding 500 shares of Sapiens common stock did opt out as a member of the class. The Notice of Settlement also gave notice of plaintiffs' counsel's request for an award of attorneys fees of up to one-third (1/3) of the Settlement Fund, plus litigation expenses and disbursements actually incurred, with interest on said sums to be earned at the same rate as earned by the Settlement Fund, and advised that plaintiffs' counsel could make application for incentive awards to the individual named plaintiffs of not more than $1,500 per individual named plaintiff representing the class.

*3 The class action was commenced on May 6, 1994 by a complaint which charged that the Settling Defendants had made materially false public statements, particularly to securities analysts, about Sapiens' operations and prospects, which allegedly artificially inflated the market price of its common stock between February 7, 1994 and May 4, 1994, in violation of Section 10(b)(5) of the Securities Exchange Act of 1934. Thereafter, on July 1, 1994, Sapiens announced it would restate its financials for 1992, 1993 and the first quarter of 1994. On August 15, 1994, plaintiffs filed a consolidated and amended complaint to include this event and joined as a defendant R. David Bursiek ("Bursiek"), the president of Sapiens' subsidiary based in the United States, and from April 1994 chief executive officer of Sapiens. A related action was also instituted by plaintiffs against Deloitte & Touche ("Deloitte"), Sapiens' auditors. [FN3]

>FN3. Subsequently, plaintiffs dismissed without prejudice their claims against Bursiek and Deloitte & Touche after discovery showed no liability on their part. Plaintiffs' counsel stated at the hearing on September 6, 1996 that subsequent discovery confirmed their conclusion of lack of liability of those erstwhile defendants.

The consolidated amended complaint charged not only that the defendants by their conduct had violated Section 10(b) of the Securities Exchange Act but also Section 20 of that Act and the common law of fraud and deceit.

On October 26, 1994 Sapiens announced that an audit committee of its board of directors was undertaking a review relative to the recognition of revenue from Sapiens' sales, as well as its license and distribution agreements with C3 and Telos and that a joint venture with Telos was being abandoned. On January 6, 1995, Sapiens announced the restatement of its audited financials for 1992, 1993 and the first two quarters of 1994. On February 16, 1995, plaintiffs filed a second consolidated and amended class action complaint to name Porter, a holder of 21% of Sapiens' common stock and a director of Sapiens until after June 4, 1993, as a defendant, and to charge that Sapiens engaged in sham transactions totaling $3.5 million in 1993 and $11.3 million in 1993 with companies controlled by Porter, [FN4] as a result of which the price of Sapiens common stock was artificially inflated during the period March 5, 1993 through January 5, 1995. As a consequence of these amendments, the class period was enlarged to encompass that period of time.

>FN4. The second consolidated and amended complaint also charged that Porter sold at least 1,189,956 shares of Sapiens common stock between April 15, 1993 and April 30, 1994.

DISCUSSION
A. Standard for Approval of Class Action Settlements

As protector of the members of the class, the Court has the responsibility for determining that a proposed settlement submitted for its approval is "fair, reasonable and adequate." *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982), *cert. denied,* 464 U.S. 818 (1983). In assessing whether a proposed settlement is "fair, reasonable and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
Fed. Sec. L. Rep. P 99,377
(Cite as: 1996 WL 689360 (S.D.N.Y.))

Page 4

adequate," the Court must evaluate the substantive terms of the settlement to ensure that they are reasonable in light of the Court's "intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Id.* at 74 (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968)). In aid of its assessment, the Court should also examine the "negotiating process by which the settlement was reached" to determine that "the compromise [is] the result of arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Id.* (citation omitted).

*4 Among the factors the Second Circuit has held proper for a Court to consider in assessing the fairness, reasonableness, and adequacy of a proposed settlement are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted). Accordingly, the plaintiffs' claims and the probability of their success will be examined in light of these factors.

B. The Stage of the Proceedings [FN5]

> FN5. The first *Grinnell* factor, the complexity, expense and likely duration of the litigation, is complicated by the fact that it was only towards the end of settlement discussions with the Settling Defendants that plaintiffs were finally able to serve Porter, which will add to the complexity, expense and duration of the litigation. The second *Grinnell* factor

favors approval, as there has been no objection to the settlement by any class member.

Plaintiffs' counsel has diligently pursued discovery, obtained substantial document discovery, and taken depositions of officials of Deloitte and Sapiens, as well as the audit committee, including Adi Raviv, a member of the Special Investigative Committee of Sapiens' Board of Directors who resigned during the course of the investigation; Kenneth Bialkin, Esq., a member of Sapiens' Board; Alan Lonbom, Deloitte's engagement partner in charge of Sapiens audits; and third parties C3 and Telos, companies licensed by Sapiens and controlled by defendant Porter. Plaintiffs' counsel is very experienced in conducting class action securities claims, and the Court has confidence that the requisite discovery has taken place for experienced counsel to assess the risks of litigation and negotiate a settlement for the class members. [FN6]

> FN6. Defendants deposed all six of the representative plaintiffs.

C. The Risks of Establishing Liability and Damages

There is a risk inherent in plaintiffs proceeding to trial in this litigation. The plaintiffs' primary claim, that the Settling Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, requires a finding of fraud by the defendants. Here, the Settling Defendants have strenuously defended, claiming that no fraud was committed because, they maintain, they took action through their auditors to restate their financials as soon as it become clear that the company's prospects were not as rosy as earlier predicted. They maintain that the restatement of the financials came about solely as a result of rethinking by Deloitte & Touche, and that the so-called sham transactions were actually negotiated at arms-length by two major law firms, one representing C-3 and Telos and one representing Sapiens. As for the false projections published in *Barron's,* the Settling Defendants maintain that they never issued the projections, and the projections were a misstatement in the press. In other words, they did not participate in those projections and, thus, they could not have the

Not Reported in F.Supp.
Fed. Sec. L. Rep. P 99,377
**(Cite as: 1996 WL 689360 (S.D.N.Y.))**

Page 5

required scienter. [FN7] Under this state of the evidence there is always the possibility that the jury would not attribute the false financials and the false statements to Sapiens' management and that plaintiffs will not prevail at trial.

> FN7. By order of October 31, 1996, plaintiffs' counsel were required to disclose the insider sales directly and indirectly attributed to the individual Settling Defendants and to provide the court with an estimate of the best possible recovery of damages on behalf of the class. Defendants were ordered to state the amounts contributed to the Settlement Fund by the individual Settling Defendants and to provide a statement of financial assets of those defendants.

**\*5** Plaintiffs' counsel maintains that the settlement is a fair one because the evidence supporting the fraud claim based on the published false projections is circumstantial, and is not as strong as the claim based on restated financials, for which plaintiffs' counsel maintains Porter is primarily responsible, and as a seller of $11 million of Sapiens stock during 1993, should have assets to pay a judgment.

D. The Ability of Defendants to Withstand a Greater Judgment

Plaintiffs' counsel also points out that it took into consideration in arriving at the Partial Settlement that Sapiens' directors and officers' insurance was limited to the amount of $3 million, that the insurer was vigorously contesting coverage, and that Sapiens' assets were limited and it faced continuing financial difficulties and liquidity problems. Since the preliminary approval of the Partial Settlement on June 26, 1996, a decision of the Supreme Court, New York County, has determined the insurer has no liability. [FN8] Lastly, plaintiffs' counsel states that the individual Settling Defendants have been indemnified by Sapiens, and reside in Israel with their assets were located outside the United States under circumstances rendering collection on any judgment difficult.

> FN8. See *Reliance Nat'l Ins. Co. v. Sapiens Int'l Corp.*, No. 124912/95 (Sup. Ct. N.Y. Sept. 11, 1996). Defendants' response to the Court's order of October 31, 1996 informed the Court that the decision of the Supreme Court is being appealed, and that Sapiens has indemnified the individual Settling Defendants to the fullest extent permitted by its Articles of Incorporation under Netherlands Antilles law. Responding to an order dated November 13, 1996, the defendants further explained the scope of this indemnification.

Plaintiffs' counsel filed copies of Sapiens' Form 6K Report with the Securities and Exchange Commission ("SEC") on August 12, 1996, as well as Sapiens' Form 20-F for the year ending December 31, 1995 which was filed with the SEC on July 1, 1996, to support its conclusions with respect to Sapiens' financial condition. From review of those financial statements and consideration of the other litigation faced by Sapiens, namely, the noteholder class action it is defending and the insurance coverage litigation, the range of cash proposed in the Partial Settlement seems fair. Plaintiffs' counsel has also filed an expanded and revised affidavit of plaintiffs' investment banking expert, Frank Spewock, senior vice president of Howard Lawson & Co., investment bankers, as well as that firm's resume, in support of that firm's valuation of the settlement securities. This affidavit and the material attached supports the valuations of the settlement securities upon which plaintiffs' counsel relies.

The Court's order dated October 31, 1996, required disclosure of the contributions to the Partial Settlement proposed to be made by each defendant and the value of their assets. The responses were filed under seal. The sole contribution to the settlement by the individual defendants was their rights to the insurance coverage. The net assets of each individual Settling Defendant are approximately $2 million. [FN9]

> FN9. By order of November 13, 1996, the individual Settling Defendants were ordered to amplify their statements of funds and assets, and the parties were ordered to provide legal authority to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
Fed. Sec. L. Rep. P 99,377
(Cite as: 1996 WL 689360 (S.D.N.Y.))

Page 6

support a bar order and release when a Settling Defendant was not making any contribution to the Settlement Fund. It is not within the District Court's supervisory responsibility to allocate the financial contributions to be made by the defendants but only to approve or not approve the settlement set before it. *In re Warner Communications Sec. Litig.,* 798 F.2d 35, 37 (2d Cir. 1986).

E. The Range of Reasonableness of the Settlement Funds

Although the stock of Sapiens did reach a high of $25 or $26 a share during the class period in late 1993, it declined rapidly after February 8, 1994. It declined to as low as $4 1/4 by July 1, 1994 and marginally thereafter until October 20, 1994, when the announcement that the financials would be restated was made. The stock then dropped to $2 7/8 and, finally, to $1.0625 a share on January 5, 1995. The damages to the class are estimated by plaintiffs to be over $33 million. The Settlement Fund is about 25% of that figure. However, comparison of the amount of the Settlement Fund to the best possible damage award does not appear to be realistic. The financial condition of Sapiens appears to be such that an extension of this litigation, in addition to the noteholder and insurance litigation in which Sapiens is involved, may well reduce the funds available to the class members to less than the Settlement Fund if settlement continues to be delayed. It seems unlikely that the defendants can withstand a greater judgment, and the attendant costs of further litigation by the Settling Defendants and plaintiffs does not seem to be a wise course under the circumstances. In short, in view of the damages which might be awarded, the Partial Settlement offered appears to be no golden egg, but, more importantly, it would be a mistake to continue to bleed the goose that has agreed to lay it.

*6 In view of the experience and competence of class counsel and in view of all the documentary evidence submitted, the Partial Settlement is found to be adequate, fair and reasonable to the members of the class.

F. Attorneys' Fees

Class counsel for plaintiffs have submitted a joint application for an award of legal fees for all plaintiffs' counsel of one-third of the Settlement Fund, plus reimbursement of expenses and fees totaling $304,539.88. No class member has voiced any objection to this application.

In May 1994, plaintiffs' counsel filed four class action suits following an announcement that Sapiens would suffer a net operating loss for the first quarter of 1994. On July 12, 1994, plaintiffs moved to consolidate; on August 15, 1994, they filed the consolidated and amended complaint; and on February 16, 1995 they filed the second consolidated and amended complaint. A related action was brought against Deloitte & Touche. Following negotiations, plaintiffs voluntarily dropped their claims against Deloitte & Touche and defendant Bursiek in return for a tolling agreement and cooperation with plaintiffs' discovery. Despite exhaustive efforts, plaintiffs' counsel was unable to serve defendant Porter, a British subject, until April 24, 1996, due to his lack of cooperation and extensive travels.

The first motion for class certification filed on September 24, 1994 became mooted by subsequent events and a revised motion for class certification was filed on March 22, 1995. The Settling Defendants demanded extensive discovery and filed a motion to compel discovery of the class representatives which the Court granted on December 13, 1995. Thereafter, the defendants took the depositions of the representative plaintiffs. The plaintiffs and the Settling Defendants resolved their differences over class certification only as a result of the Partial Settlement and contingent upon the consummation of the Partial Settlement. On July 9, 1996, the Court granted conditional class certification as to the Settling Defendants only. As to defendant Porter, the plaintiffs' motion for class certification is still pending.

The plaintiffs' counsel has conducted an independent investigation and, at the same time, pursued party and non-party discovery, have reviewed tens of thousands of pages of documents, and have established a system of document identification and retrieval to aid in analyzing the strengths and weaknesses of plaintiffs' case. Accounting experts were retained to aid in the review of the relevant accounting documents.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
Fed. Sec. L. Rep. P 99,377
(Cite as: 1996 WL 689360 (S.D.N.Y.))

Page 7

Thereafter, plaintiffs' counsel deposed defendants and third parties.

Following the Court's referral of this case for mediation on April 26, 1995, the parties' counsel engaged in mediation sessions. Although the mediation sessions were unsuccessful, the parties recommenced negotiating a settlement in February 1996, and after extended and complex negotiations, the parties reached an agreement in principle. The amounts of expenses, including experts' fees and charges, incurred by plaintiffs' counsel have been reviewed and are approved as reasonable and appropriate.

*7 With respect to the fees for counsel, the Court takes into account the fact that there are significant financial risks to any plaintiffs' counsel undertaking such litigation. Not only were the costs advanced significant, but the undertaking involved a determination to make a significant investment of time over an extended period without compensation in the hope that counsel's preliminary assessment of the facts would result in a favorable outcome. In this case, over two years have been involved in that effort and, in the meantime, rent, salaries and other overhead items have continued to accrue. Furthermore, as cited in plaintiffs' papers, securities class actions can be lost. There are numerous cases in which juries have awarded no damages.

Under these circumstances, it is certainly in the public interest to have experienced and able counsel willing to commit the enormous financial resources and legal talent necessary to make defendants realize (1) that dilatory tactics are not going to prevail, and (2) that a less than fair and adequate resolution for class members will not be allowed when such class members have, in fact, been wronged by defendants' conduct.

Nevertheless, and regardless of the lack of opposition to the application of plaintiffs' counsel for an award in the neighborhood of $2.8 million, plus expenses of $304,539.88 from a total settlement valued at $8.5 million, the Court has an obligation to make its own determination of a reasonable fee for plaintiffs' counsel.

In this case the lodestar attorneys' fees, i.e., regular time charges for attorney time for all plaintiffs' counsel, amount to $1,170,291.25, of which $476,466.75 was attributed to lead counsel, Berger & Montague. In recent years, the lodestar method has been criticized in favor of the percentage of recovery approach. In re Agent Orange Prod. Liab. Litig., 611 F. Supp. 1296, 1306 (E.D.N.Y. 1985), aff'd in part and rev'd in part, 818 F.2d 226 (2d Cir. 1987). Nevertheless, the lodestar amount is useful in testing the propriety of an award based on the percentage of recovery. In re Ames Dep't Stores, Inc. Debenture Litig., 835 F. Supp. 147, 149-50 (S.D.N.Y. 1993). At the hearing, the Court made specific inquiry as to the necessity of the fees incurred by each firm making an application and received specific assurance that each of those firms was tightly supervised and controlled by lead counsel so as to minimize and avoid any unnecessary duplication of time and effort.

"[T]his is not a case where plaintiffs' counsel can be cast as jackals to the government's lion, arriving on the scene after some enforcement or administrative agency has made the kill." In re Gulf Oil/Cities Serv. Tender Offer Litig., 142 F.R.D. 588, 597 (S.D.N.Y. 1992). Thus, an award of 15% of the Settlement Fund would not be sufficient in view of the greater risk undertaken by plaintiffs' counsel here as opposed to cases where the liability issues have been all but predetermined by prior litigation. See, e.g., In re Solomon Inc. Sec. Litig., 1994 WL 265917 at *14-15 (S.D.N.Y. 1994). On the other hand, plaintiffs' counsel appear to have been aided by Deloitte's insistence on a restatement of Sapiens' financials and by the audit committee's investigation in that connection. Accordingly, the Court finds that an award of one quarter of the amount of the Settlement fund, $2,125,000, is fair and adequate compensation for plaintiffs' counsel, plus $304,539.88 awarded for expenses and expert fees.

*8 The Court has also reviewed the application of plaintiffs' counsel for incentive fees of $1,500 for each of the plaintiffs. Each plaintiff was deposed in this action in connection with the motion for class certification. After the hearing, plaintiffs' counsel supplemented its papers to show that each incentive fee was compensatory for the time which each of the plaintiffs was required to devote to the matter. One plaintiff, The Lawrence Fund, was deposed twice; accordingly, $2,000 was requested to be paid to that representative to compensate for its executive's lost time in conducting this action.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.  
Fed. Sec. L. Rep. P 99,377  
(Cite as: 1996 WL 689360 (S.D.N.Y.))

Page 8

However, the increased amount will not be approved since the class was given no notice of this increased application. In view of the supplementary material submitted, incentive awards would be consistent with the intent of the Securities Litigation Reform Act of 1995. The incentive awards of $1,500 for each plaintiff as requested are approved.

### Conclusion

Having considered all the *Grinnell* factors, the proposed Partial Settlement is found to be adequate, fair and reasonable on behalf of the members of the class, and it is therefore approved on behalf of the Settling Defendants. Class counsel are awarded a fee of one quarter of the Settlement Fund, as well as expert fees and expenses incurred in this action. Class representative plaintiffs are awarded $1,500 each.

IT IS SO ORDERED.

1996 WL 689360 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,377

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works