UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARENCE R. COLLINS, JR., JENNIFER AND PATRICK DONTFRAID, DONNA LEE JOHNSON, LEONARDO MELENDEZ, SONIA POWELL, DOROTHY WILLIAMS, VALERIE LASSITER, MATTHEW AND PHYLLIS ABRAHAM, HENRY L. BLUE, JANIE CLEMONS, GWENDOLYN L. COPPAGE, LOUIS CRAIG, RUTH B. EATON, WILLIAM AND MAXINE JONES, JOSEPHINE NEAL, COLLIN ROUSE, CLIFFORD SENIOR AND ADRIENNE ROUSE-SENIOR, RAYMOND SIMS, SR. AND ELLECIA R. SIMS, MARC PERRY, WILLIAM C. AND VENUS D. WALKER, MORRIS AND MARY DRAUGHN, CAROLYN SMITH, ELIZABETH HAYES, ABDUL HAMID, MURLINE WELLESLEY, EUGALYN WILSON, CHARLENE O. WEBB, ELIAS ROCHESTER AND MARUS WALTERS, for themselves and on behalf of a class similarly situated property owners,<br>    *Plaintiffs*,<br>v.<br><br>OLIN CORPORATION and the TOWN OF HAMDEN,<br>    *Defendants*. | : 3:03-cv-945 (CFD)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: NOVEMBER 30, 2004 |

**DEFENDANT OLIN CORPORATION'S LOCAL RULE 56(a)(1) STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR <u>PARTIAL SUMMARY JUDGMENT</u>**

COMES NOW Defendant Olin Corporation ("Olin") and pursuant to Local Rule 56(a)(1) of the Local Rules of Civil Procedure for the District of Connecticut, hereby sets forth the

following material, undisputed facts in support of Defendant Olin's Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure:

1. In February of 1929, Winchester Repeating Arms Company, a Connecticut corporation (hereafter "Winchester-Connecticut") was reorganized with its companion company, The Winchester Company, by transferring all of its assets to a newly formed corporation, Winchester Repeating Arms Company of Delaware (hereafter "Winchester-Delaware"). *See Final Decree of Foreclosure and Sale*, November 10, 1931, *Chase National Bank of New York v. Winchester Repeating Arms Company, et al.*, In Equity, Consolidated Cause No. 2131 (U.S.D.C. Conn.) (attached hereto as Exhibit A) (hereafter "Final Decree"), at page 3, ¶4; page 4, ¶8; pages 19-20, ¶¶ 7-8.[1]

2. When financial conditions worsened, a creditors' bill was filed against Winchester-Delaware in the United States District Court for the District of Connecticut. *See* Final Decree, Exhibit A, at pp. 7-8, ¶¶ 2-4. The Court appointed receivers for Winchester-Delaware. With the Court's approval, Winchester-Delaware's creditors established a Reorganization Committee to propose a plan for the sale of Winchester-Delaware's assets and to solicit bidders for the sale. *See* Final Decree, Exhibit A, at pp. 70-71, ¶¶ 1-3.

3. On November 3, 1931, the Winchester Reorganization Committee submitted a plan to the Court, which the Court approved in its Final Decree of November 10, 1931. *See*

---

[1] In the Final Decree and the subsequent Decree Confirming, Winchester-Connecticut is referred to as "the Connecticut Company," and Winchester-Delaware is referred to as "the Delaware Company."

Final Decree, Exhibit A, pp. 70-71, ¶¶ 1-3. In approving the Plan, the Court found that the continued receivership of Winchester-Delaware would not produce sufficient revenue to pay its debts, and further found that:

> the assets of the Delaware company [Winchester-Delaware] are not and will not be of sufficient value to meet its matured liabilities or its liabilities as they mature or accrue and its property . . . [the assets of Winchester-Delaware] should be administered and sold and the net proceeds thereof distributed in the manner herein stated.

Final Decree, Exhibit A, at p. 72, ¶¶ 1-2.

    4.    The Court decreed that all of the property of Winchester-Delaware (but not its stock) be sold free of any liens and claims, and that the proceeds of the sale be applied to the payment of Winchester-Delaware's debts. *See* Final Decree, Exhibit A, at pp. 74-76, 102-103. As part of its Final Decree, the Court entered the following injunction, which expressly provided that the assets to be acquired at the Court sponsored and approved sale – including the Winchester facility in New Haven – would be taken free of any claims or liabilities:

> All creditors and stockholders of, and ***claimants against, the Delaware Company [Winchester-Delaware] and/or the Connecticut Company [Winchester-Connecticut]***, including . . . all persons claiming by, through or under the Delaware Company and/or the Connecticut Company, their respective creditors and stockholders, ***are hereby severally and respectively perpetually enjoined from prosecuting against the Receivers or the Purchaser*** of any of the property directed to be sold by this decree, or against any nominee or assignee or grantee of such Purchaser, or against any party to the above entitled Consolidated Cause or Constituent Causes or any thereof, or against any person or persons, corporation or corporations, claiming by, under or through them, or any of them, or against any of the property sold pursuant to this decree, ***any suit or proceeding arising out of, or based on, any obligation or liability of the Delaware Company and/or the Connecticut Company, or otherwise to impose liability upon the Purchaser***, or upon any nominee or assignee or grantee of the Purchaser, or upon any party to any of the above-entitled Causes, or upon any person or persons,

> corporation or corporations, claiming by, under or through them, or any of them, or upon any property sold pursuant to this decree, ***in respect of any claim against the Delaware Company and/or the Connecticut Company.***

Final Decree, Exhibit A, at p. 97 (emphasis added).

5. Further, the Final Decree expressly "barred and foreclosed" "all claims and demands" by all creditors of Winchester-Delaware which were not filed as of the date of the Final Decree, except for "any clams which may accrue after the entry of this decree, and/or, which may thereafter be proved *nunc pro tunc* by permission of this Court." *See* Final Decree, Exhibit A, p. 96.

6. On December 15, 1931, Winchester-Delaware's assets were sold as contemplated by the Final Decree. *See Decree Confirming Sale and Directing Execution and Delivery of Deeds*, December 22, 1931, *Chase National Bank of New York, Trustee v. Winchester Repeating Arms Company, et al.*, Equity Consolidated Cause No. 2131 (U.S.D.C. Conn.) (attached hereto as <u>Exhibit B</u>) (hereafter "Decree Confirming"), at pp. 3-5, ¶¶ 2-5.

7. On December 15, 1931, all of Winchester Delaware's assets (including the Winchester facility in New Haven) were sold at a public sale, pursuant to the Final Decree. *See* Decree Confirming, Exhibit B, at pp. 4-5, ¶ 5. The purchasers of Winchester-Delaware's property at the public sale were two individuals, P. C. Beardslee and Ben-Fleming Sessel, whose bid of $4,000,000 was the highest bid for the property at the public sale. *See* Decree Confirming, Exhibit B, at pp. 4-5, ¶ 5. Beardslee and Sessel's successful bid as joint tenants was made pursuant to the Final Decree and the Reorganization Committee's plan. *See* Decree Confirming, Exhibit B, at pp. 3-5, ¶¶ 2-7.

8. Within a week after their purchase of Winchester-Delaware's assets, Beardslee and Sessel "assigned, transferred and set over" all of their ownership of the acquired assets to Winchester Repeating Arms Company of Maryland (hereafter "Winchester-Maryland") , a wholly owned subsidiary of Western Cartridge Company. *See* Decree Confirming, Exhibit B, at p. 5, ¶ 8; Olin Corporation's Responses to Plaintiffs' Requests for Admissions (attached hereto as Exhibit C) (hereafter "Olin's RFA Responses"), ¶ 18.

9. A week after the sale of the Winchester-Delaware assets, the Court entered its Decree Confirming of December 22, 1931. In its Decree Confirming, the Court found that the Reorganization Committee's plan was fair and equitable, confirmed the sale of Winchester-Delaware's assets to Winchester-Maryland pursuant to the plan, and ordered, among other things, delivery of the necessary transfer documents to Winchester-Maryland. *See* Decree Confirming, Exhibit B, at pp. 6-23.

10. The Court entered a further injunction in its Decree Confirming, mirroring what it had done in its Final Decree, barring any claims against the purchasers at the asset sale or their successors and assigns, arising in any respect from the acquired assets. The language of this injunction is, in pertinent part, identical to the language of the earlier injunction, except that it names the actual purchasers and their successors and assigns:

> FIFTEENTH: All creditors and stockholders of, and ***claimants against, the Delaware Company [Winchester-Delaware] and/or the Connecticut Company [Winchester-Connecticut]***, including . . . all persons claiming by, through or under the Delaware Company and/or the Connecticut Company, their respective creditors and stockholders, ***are hereby severally and respectively perpetually enjoined from prosecuting against the Receivers or against said P. C. Beardslee and Ben-Fleming Sessel . . . or against the Maryland Company [Winchester-***

> *Maryland], its successors or assigns*... any suit or proceeding arising out of or based on any obligation or liability of the Delaware Company, and/or the Connecticut Company, *or otherwise to impose liability upon the said P.C. Beardslee and Ben-Fleming Sessel . . . or upon [Winchester-Maryland], its successor or assigns . . . in respect of any claim against the Delaware Company and/or the Connecticut Company.*

Decree Confirming, Exhibit B, at pp. 23-24 (emphasis added).

11. The Decree Confirming does *not* contain any language similar to that in the Final Decree which would allow any creditors to file claims which accrue after the entry of the decree. *See* Decree Confirming, Exhibit B. Accordingly, all claims by all creditors were barred and enjoined as of the date of the Decree Confirming. *See* Decree Confirming, Exhibit B, at p. 23.

12. Beardslee and Sessel, and through them Winchester-Maryland and Western Cartridge, acquired only assets at the Court sponsored sale. Neither Winchester-Maryland nor Western Cartridge purchased or acquired any of the stock of Winchester-Delaware. *See* Olin's RFA Responses, ¶ 49; Deposition of Johnnie Jackson, taken on March 24, 2004 (relevant portions of which are attached hereto as Exhibit D) (hereafter "Jackson Deposition I"), pp. 48-49.

13. Although Western Cartridge, or its wholly owned subsidiary Winchester-Maryland, continued to operate the Winchester New Haven facility that it acquired at the December 1931 asset sale, the types of products manufactured by Winchester-Maryland varied from those made by Winchester-Delaware prior to December 1931. *See,* Jackson Deposition I, Exhibit D, pp. 70-75; Deposition of Johnnie Jackson, taken on November 9, 2004 (relevant portions of which are attached hereto as Exhibit E) (hereafter "Jackson Deposition II"), pp. 83-

84.

14. In addition, while Winchester-Maryland continued to manufacture firearms under the Winchester brand name, and employed some former employees of Winchester-Delaware, Winchester-Maryland brought in new management and new officers and directors. *See*, Jackson Deposition I, Exhibit D, pp. 97-98; Jackson Deposition II, Exhibit E, pp. 19-23.

15. No officers or directors of Winchester-Delaware became officers or directors of Western Cartridge. *See* Olin Corporation's Supplemental Answers to Plaintiffs' First Set of Interrogatories (attached hereto as Exhibit F) (hereafter "Olin's Supplemental Interrogatory Responses"), ¶ 12.

16. Moreover, no director of Winchester-Delaware became a director of Winchester-Maryland. *See*, Secretary of State Documents for Winchester-Delaware and Winchester-Maryland (attached hereto as Exhibit G) (hereafter "Secretary of State Documents").

17. Edwin Pugsley was a director of Winchester-Delaware as of December 1929 and a Vice President of Winchester-Delaware as of December 23, 1930. *See*, Secretary of State Documents, Exhibit G.

18. Edwin Pugsley was never a director of Winchester-Maryland. Edwin Pugsley served as one of Winchester-Maryland's Vice Presidents and was the only officer of Winchester-Delaware who served as an officer of Winchester-Maryland. *See*, Secretary of State Documents, Exhibit G.

19. No shareholder of Winchester-Delaware became a shareholder of Winchester-Maryland or Western Cartridge as a result of the asset purchase. *See*, Olin Corporation's

Answers to Plaintiffs' First Set of Interrogatories (attached hereto as <u>Exhibit H</u>) (hereafter "Olin's Interrogatory Responses"), ¶¶ 23 and 25.

20.    Western Cartridge's, or its wholly owned subsidiary Winchester-Maryland's, operations at the New Haven facility continued until December 31, 1944, when Western Cartridge merged with Olin Corporation. Jackson Deposition I, Exhibit D, pp. 33-34, 70. After the 1944 merger the corporate name was changed to Olin Industries, Inc. *See*, Olin's RFA Responses, Exhibit C, ¶ 47; Jackson Deposition I, Exhibit D, pp. 33-34, 36. Olin Industries, Inc. is the predecessor of Defendant Olin Corporation.

21.    After the sale of its assets, the original Winchester-Delaware continued is corporate existence until January 1935, when the Governor of Delaware voided its charter. *See*, Letter dated August 27, 1984, from Delaware Department of State (attached hereto as <u>Exhibit I</u>).

22.    Winchester-Delaware's activities in Hamden, including Winchester-Delaware's waste disposal activities, began well before Winchester-Maryland acquired the assets of Winchester-Delaware in December, 1931. In their Amended Complaint, Plaintiffs allege that "Winchester began disposing of its industrial waste and ash at the Newhall Section in approximately 1915." *See* Amended Complaint, ¶ 23.

Respectfully Submitted,

OLIN CORPORATION

By: *Michael H. Wetmore/SKD*
Michael H. Wetmore
Joel B. Samson (ct24898)
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone: 314-480-1500
Fax: 314-480-1505
michael.wetmore@husch.com
joel.samson@husch.com

and

By: *Sandra K. Davis*
Sandra K. Davis (ct020175)
Brown Rudnick Berlack Israels LLP
185 Asylum St.
CityPlace I, 38th Floor
Hartford, CT 06103
Telephone: 860-509-6500
Fax: 860-509-6501
sdavis@brownrudnick.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was forwarded this 30th day of November, 2004, by first class mail, postage prepaid to:

Neil T. Leifer, Esq.
David C. Strouss, Esq.
Thornton & Naumes L.L.P.
100 Summer Street, 30th Floor
Boston, Massachusetts 02110
Telephone: (617) 720-1333
Facsimile: (618) 720-2445

David B. Zabel, Esq.
Monte E. Frank, Esq.
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, Connecticut 06604
Telephone: (203) 368-0211
Facsimile: (203) 394-9901

Mark Roberts, Esq.
Andrew A. Rainer, Esq.
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, MA 02114
Telephone: (617) 722-8222
Facsimile: (617) 720-2320

*Attorneys for Plaintiffs*

Ann M. Catino
Lori Dibella
Joseph G. Fortner, Jr.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Telephone: (860) 522-6108
Facsimile: (860) 548-0006

*Attorneys for Town of Hamden*

/Sandra K. Davis/

#40189081 v\1 - davissk - x#3d01!.doc - 70042/5