UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CLARENCE R. COLLINS, JR., et al.          :     CIVIL ACTION NO. 3:03-cv-945 (CFD)
               Plaintiffs,          :
                        :
                        :
v.          :
                        :
OLIN CORPORATION, et al.          :
           Defendants.          :     DECEMBER 15, 2004

## DEFENDANT TOWN OF HAMDEN'S LOCAL RULE 56(a)(1) STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Rule 56(a)(1) of the Local Rules of Civil Procedure for the District of Connecticut, the Defendant, Town of Hamden ("Hamden"), submits the following statement of material undisputed facts in support of Defendant Hamden's Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

1.    The Town, through its Health Officer, sought to abate nuisances and the spread of disease in Hamden since, at least, 1886. *See 1886 Town of Hamden Annual Report (Report of Health Officers) attached hereto as Exhibit 1, pp. 26-27.*

2.    During the late 1880s – 1895, the Town was concerned about and sought to abate the nuisance caused by garbage and pig sties. *See 1886-1895 Town of Hamden Annual Report (Report of Health Officers) attached hereto as Exhibits 1-7.*

3.    In 1895, the Town Health Officer established rules relating to "Complaints of Nuisances," which included two regulations concerning garbage. *See 1895 Town of Hamden Annual Report (Report of Health Officers) attached hereto as Exhibit 7, pp. 24 & 26.* These regulations prohibited persons from accumulating decomposing and decaying food (meat, fish, vegetables) in or around dwellings and businesses and prohibited individuals from throwing, dumping or depositing garbage, decaying animal or vegetables upon any vacant lot, highway, public place, brood, pond or spring. *Id., p. 26.* These types of wastes are referred to as garbage as opposed to refuse. *Partial Deposition Transcript of Deborah Motycka Downie (July 9, 2004) ("Downie Transcript"). Exhibit 61, p. 36-37.*

4.    Garbage from New Haven went to pig sties in Hamden. *See 1899 Town of Hamden Annual Report (Report of Health Officers) attached hereto as Exhibit 8, p. 40.* The Health Officer received complaints relating to a standing nuisance arising from the pig sty in the Highwood District for several years at the turn of the last century. *See 1899-1903 Town of Hamden Annual Reports (Report of Health Officers) attached hereto as Exhibits 8-12.* From approximately 1903-1909, licenses were issued to cart garbage into or through the Town. *See 1903-1909 Town of Hamden Annual Reports (Reports of Health Officers) attached hereto as Exhibits 12-18.*

5.    Because Hamden was a farming community, the greater part of its own waste was used as fertilizer. *See 1899 Town of Hamden Annual Report (Report of Health Officers) attached hereto as Exhibit 8, p. 41.*

6.    In or about 1912, the Town began an experimental program of garbage collection for certain of its residents whereby the collected garbage went to the pigs at the Town Farm (a prison). *See 1912 Town of Hamden Annual Report (Report of Health Officers) attached hereto as Exhibit 21, pp. 34-35.* Garbage collection in the Town expanded through 1950. *See 1912-1950 Town of Hamden Annual Reports (Report of Health Officers and Public Works) attached hereto as Exhibit 21-50.*

7.    In 1912 and 1913, the Town suffered a moderate epidemic of typhoid fever in the Highwood District. Typhoid is a result of flies, which are attracted to, among other things, garbage and rotting vegetables. *See 1912 Town of Hamden Annual Reports (Report of Health Officers) attached hereto as Exhibit 21, p. 34. See 1913 Town of Hamden Annual Reports (Report of Health Officers) attached hereto as Exhibit 22, pp. 39-40.*

8.    No fees were charged for garbage licenses or collection. *See 1903-1950 Town of Hamden Annual Reports (Reports of Treasurer and Health Officers) attached hereto as Exhibits 12-59. Affidavit of Robert V. Cappelletti, CPA ("Cappelletti Affidavit"), attached hereto as Exhibit 60, ¶ 11.* In 1913, the Town Health Officer reports that financially, garbage "collection is not a great success but it certainly is from a sanitary one." *See 1913 Town of Hamden Annual Report (Report of Health Officers) attached hereto as Exhibit 22, p. 40.*

9.    The Town did not profit from the collection or disposal of garbage. *Cappelletti Affidavit, Exhibit 60, ¶ 10.A.*

10.   Mosquito breeding places in Hamden existed since approximately 1912. *See 1912 Town of Hamden Annual Report (Report of Health Officers) attached hereto as Exhibit 21, p. 35.*

2

11.  Beginning in approximately 1913, steps were taken toward abolishing some of the mosquito breeding places in the Town.  *See 1913 Town of Hamden Annual Report (Report of Health Officers) attached hereto as Exhibit 22, p. 40.*  Swamps near Newhall Street, Auger Street and Putnam Avenue were to be drained an opened to sunlight in or about this time.  *Id.*

12.  In 1914 and 1915, the Town struggled with the mosquito problem.  *See 1914 Town of Hamden Annual Report (Report of Health Officers) attached hereto as Exhibit 23, p. 43; 1915 Town of Hamden Annual Report (Report of Health Officers) attached hereto as Exhibit 24, pp. 36-37.*  In 1915, the Health Officer was concerned with the spread of malaria from mosquitoes and stated: "[p]erhaps there is no one subject that confronts the people of the Town of Hamden with so much vital interest as the subject of the elimination of the mosquito nuisance."  *See 1915 Town of Hamden Annual Report (Report of Health Officers) attached hereto as Exhibit 24, p. 36.*  The Health Officer recommended that the Town's residents prevent the standing accumulation of water on their properties.  *Id., p. 37.*  Favorite breeding places for mosquitoes are rain water pools, barrels, tin cans, kettles, choked gutters and other similar places.  *Id.*  In 1915, in furtherance of preventing stagnant accumulations of water in these receptacles, the Health Officer also proposed to establish in various sections of town public dumping places that would be under the control of Town officials.  *Id.*

13.  The New Haven Water Company and Winchester Repeating Arms drained a large tract of land and, when completed, the largest single malarial-breeding swamp in the Town was to be eliminated.  *See 1916 Town of Hamden Annual Report (Report of Health Officers) attached hereto as Exhibit 25, p. 37.*  In 1916, a "very bad breeding place on the corner of St. Mary and Morse Streets" was nearly filled in.  *Id.*

14.  Mosquitoes continued to plague the residents of Hamden in the 1930s through approximately 1942.  *See 1930-1942 Town of Hamden Annual Reports (Report of Health Officers & Department of Public Works) attached hereto as Exhibits 39-51.*  In the mid-1930s, mosquito breeding places were studied and oiled.  *See 1936-1938 Town of Hamden Annual Reports (Report of Health Officers) attached hereto as Exhibits 45-47; excerpts from the Minutes of the Board of Health (1931-1939) ("Health Minutes") attached hereto as Exhibit 65.*  By 1942, the known mosquito breeding districts were reduced from six to two, through filling and draining operations.  *See 1942 Town of Hamden Annual Reports (Report of Department of Public Works) attached hereto as Exhibit 51.*

15.  The Town expended funds for the abatement of mosquito nuisances in 1929, 1937-1941. *See Cappelletti Affidavit, Exhibit 60, ¶ 15.* It did not receive any revenue for this public service. *Id.*

16.  The Town did not profit from the abatement of mosquito nuisance. *See Cappelletti Affidavit, Exhibit 60, ¶ 20.A.*

17.  At various times, the Health Officer recognized that the Town did not collect refuse and that a more modern method for collection and disposal of garbage and refuse was needed in the Town. *See 1916-17, 1924-25, 1927 & 1931 Town of Hamden Annual Reports (Reports of Health Officers) attached hereto as Exhibit 25-26, 33-34, 36 & 40.*

18.  In 1934, all persons carting rubbish and ash in the Town were to obtain a permit. *See 1934 Town of Hamden Annual Reports (Report of the Board of Health) attached hereto as Exhibit 43, p. 24.*

19.  The Boards of Finance provide detailed descriptions of the various revenue sources and no revenues were projected by the Boards of Finance for dump permits. *See 1934-50 Town of Hamden Annual Reports (Reports of Boards of Finance) attached hereto as Exhibit 43-59; Cappelletti Affidavit, Exhibit 60, ¶¶ 9 & 12; Downie Transcript, Exhibit 61, pp. 31-33, 68 and 70- 74.*

20.  No fees were collected or charged for dump permits. *Cappelletti Affidavit, Exhibit 60, ¶ 12; Downie Transcript, Exhibit 60, pp. 31-33, 68 & 70-74.*

21.  The Town did not profit from the issuance of dump permits or control of dump related activities. *See Cappelletti Affidavit, Exhibit 60, ¶ 20.A.*

22.  Prior to October 1, 1937, to the extent garbage and dumps were regulated at all by the Town, these activities were generally under the authority of the Health Inspector as these waste materials posed a nuisance to the public's safety and health. *See 1886-1936 Town of Hamden Annual Reports (Reports of Health Officers and the Board of Health) attached hereto as Exhibits 1-45.*

23.  In 1917, three public dumps were identified by the Health Officer, including one on Highwood on Shelton Avenue, between Goodrich and Morse Streets. *See 1917 Town of Hamden Annual Reports (Report of Health Officers) attached hereto as Exhibit 26, p. 36.* Permissible wastes included rubbish, tin cans; impermissible wastes included garbage, carcasses of dead animals, decaying vegetables. *Id.*

24.     Throughout the years, a number of dumps are identified as dumps, private dumps and public dumps; however, no distinction can be generally drawn as to whether the "dumps" or "public dumps" referred to are publicly operated and maintained or, simply, a location where the public dumped. *See Downie Transcript, Exhibit 61, p. 41.*

25.     At times, the Health Officer would inspect both the public and private dumps to check on nuisances. *Health Minutes, Exhibit 65.* Caretakers were also employed at times by the Town to look after some of the dumps. *Id.  See Downie Transcript, Exhibit 61, pp. 70, 93, 133 & 135.*

26.     As of October 1, 1937, dumps were generally under the supervision of the Town Department of Public Works. *See 1938 Town of Hamden Annual Reports (Report of the Board of Health) attached hereto as Exhibit 47, p. 22.* Under the supervision of the Department of Public Works, caretakers were also employed to look after some of the dumps. *Downie Transcript, Exhibit 61, p. 133.*

27.     By 1942, the only dump remaining in Hamden for the townspeople is the Arch Street dump. *See 1942 Town of Hamden Annual Reports (Report of Department of Public Works) attached hereto as Exhibit 51, p. 27.*

28.     In 1934, in the Newhall Section, the largest area of swamps and wetlands was the site of the future Hamden Middle School and land to the east of Winchester Avenue and north of Morse Street. *See 1934 Aerial Photograph attached hereto as Exhibit 62.*

29.     On the streets lying south of Morse Street and north of Goodrich Street, bounded to the west by St. Mary's and the east by Winchester Avenue, a number of houses had been developed. *See 1934 Aerial Photograph, Exhibit 62; Development History Map (Downie Transcript, Exhibit 10), attached hereto as Exhibit 63.*

30.     Houses in the Newhall Section were developed at various times and dates, including but not limited to 1920, 1924, 1929, 1930, 1936 and throughout the 1940s and 1950s. *Development History Map (Downie Transcript, Exhibit 10), Exhibit 63.*

31.     The Town began realizing revenue from the issuance of Building Permits in 1914. *Cappelletti Affidavit, Exhibit 60, ¶ 14.*

32.     The collection of building permit fees is not done with the expectation that a profit will be generated. *Cappelletti Affidavit, Exhibit 60, ¶¶ 18 & 19.*

33.     The Town did not profit from the issuance of building permits and certificates of occupancy. *Cappelletti Affidavit, Exhibit 60, ¶ 20.A.*

34.    Winchester Repeating Arms or Olin deposited fill and ash materials at certain properties within the boundaries established under the Consent Order.  *See 1947 Town of Hamden Annual Report (Board of Selectman) attached hereto as Exhibit 56, p. 25; Health Minutes, Exhibit 65 (February 1940-1941); Downie Transcript, Exhibit 61, pp. 45-46, 103-107 & 138-142.*

35.    No evidence exists to suggest that the Town and Winchester Repeating Arms (or Olin) were joint venturers as the Town did not receive any revenue from Winchester or Olin associated with dump permits, dump related activities, garbage collection or disposal or any matters related to the operation and maintenance of dumps in the Town.  *Cappelletti Affidavit, Exhibit 60, ¶ 16; 1901-1925 Town of Hamden Annual Report (Treasurer's Reports) attached hereto as Exhibits 10-34; 1908-1950 Town of Hamden Annual Reports (Boards of Finance) attached hereto as Exhibits 17-59.*

36.    The only revenue received from Winchester Repeating Arms (or Olin), with the exception of property taxes for the properties the company owned in Hamden, from 1901-1950 was $200.00 in 1909.  *See 1909 Town of Hamden Annual Reports (Treasurer's Report) attached hereto as Exhibit 18, p. 26.*

37.    The Town did not profit from the collection of revenue or income associated with Winchester or Olin. *Cappelletti Affidavit, Exhibit 60, ¶ 20.A.*

THE DEFENDANT,
TOWN OF HAMDEN

By _____

Ann M. Catino
Federal Bar #ct02747
Joseph G. Fortner, Jr.
Federal Bar #ct04602
HALLORAN & SAGE LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
(860) 522-6103
Its Attorneys

## CERTIFICATION

This is to certify that on this 15th day of December, 2004, I hereby mailed a copy of the foregoing to:

Monte E. Frank, Esq.
David B. Zabel, Esq.
Alison K. Clark, Esq.
Cohen & Wolf, P.C.
158 Deer Hill Avenue
Danbury, CT 06810

Mark Roberts, Esq.
Andrew Rainer, Esq.
Jennifer A. Currie, Esq.
McRoberts & Roberts, LLP
101 Merrimac Street
Boston, MA 02114

Neil T. Leifer, Esq.
Michael A. Lesser, Esq.
Brad J. Mitchell, Esq.
David C. Strouss, Esq.
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Michael H. Wetmore, Esq.
Joel B. Sampson, Esq.
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

Sandra K. Davis, Esq.
Mark S. Baldwin, Esq.
Brown Rudnick Berlack Israels LLP
185 Asylum Street, 38th Floor

Ann M. Catino

628090_1.DOC

7