UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARENCE R. COLLINS, JR., ET AL., for themselves and on behalf of a class of similarly situated property owners,<br>         Plaintiffs,<br><br>v.<br><br>OLIN CORPORATION and the TOWN OF HAMDEN,<br>         Defendants. | CIVIL ACTION NO.: 3:03-945 (CFD)<br><br><br><br><br><br><br><br>MARCH 9, 2005 |

**PLAINTIFFS' LOCAL RULE 56(a)(2)
STATEMENT OF FACTS AND FACTS IN DISPUTE**

   Pursuant to Local Rule 56(a)(2), the plaintiffs ("Plaintiffs") hereby submit this Statement in conjunction with their Opposition to Town of Hamden's Motion for Summary Judgment dated March 9, 2005.

**I.  Response to Defendant Town of Hamden's "Local Rule 56(a)(1) Statement of Material Undisputed Facts in Support of Defendant's Motion for Partial Summary Judgment."**

   1.  Agreed that in 1886 the Health Officer reported on the general health of the Town of Hamden for the previous year and offered solutions to attempt to abate certain health conditions. *See 1886 Town of Hamden Annual Report, Report of Health Officer, attached as Exhibit 1*.

   2.  Agreed in part. Plaintiffs disagree with Defendant's characterization of the Town's concern and abatement efforts regarding the nuisance caused by garbage and pig sties as occurring throughout the late 1880s-1895. During some years in this time period, Hamden Health Officer Reports make no mention of nuisances caused by garbage or pig sties. *See 1891 Town of Hamden Annual Report, Report of Health Officer, p. 26-28, attached as Exhibit 2; 1892 Town of Hamden Annual Report, Report of Health Officer, p. 28-29, attached as Exhibit 3*.

   3.  Agreed.

4. Agreed that in 1899, garbage from New Haven went to pig sties in Hamden. *See 1899 Town of Hamden Annual Report, Report of Health Officer, attached as Exhibit 4.* Agreed that the Hamden Health Officer received complaints relating to a standing nuisance arising from the pig sty in the Highwood District from 1899-1903. *See 1899-1903 Town of Hamden Annual Reports, Report of Health Officer, attached as Exhibits 4-8.* Agreed that from approximately 1903-1909, licenses were issued to cart garbage into or through the Town of Hamden. *See 1903-1909 Town of Hamden Annual Reports, Report of Health Officer, attached as Exhibits 8-14.*

5. Agreed that the 1899 Town of Hamden Annual Report notes that, because Hamden was a farming community, the greater part of "its own waste" was used as fertilizer. *See 1899 Town of Hamden Annual Report, Report of Health Officer, attached as Exhibit 4.*

6. Agreed.

7. Agreed that in 1912 and 1913, the Health Officer reported that the Town of Hamden suffered a moderate epidemic of typhoid fever in the Highwood District of Hamden. Agreed that in 1913, the Hamden Health Officer believed that typhoid was the result of flies, which were attracted to, among other things, garbage and rotting vegetables. *See 1912 Town of Hamden Annual Report, Report of Health Officer, attached as Exhibit 15; 1913 Town of Hamden Annual Report, Report of Health Officer, attached as Exhibit 16.*

8. Agreed that the 1903-1950 Town of Hamden Annual Reports do not reflect any fees charged for garbage licenses or collection. *See 1903-1950 Town of Hamden Annual Reports, Reports of Treasurer and Health Officer, attached as Exhibits 8-55.*

9. Disagreed. Filling of low lying areas in Hamden allowed the Town to create usable land out of former swamplands, increasing the property values in the area. The Town converted acres of unusable land into hundreds of homes, a school and a park. *See 1938 Public Health Survey of Hamden, by Department of Public Health, Yale University School of Medicine, p. 38 ("1938 Public Health Survey"), attached as Exhibit 56; Deposition of Deborah Motycka Downie (July 9, 2004)("Downie Transcript"), p. 50, attached as Exhibit 57.*

10. Agreed that a mosquito breeding place existed in the Town of Hamden in 1912. *See 1912 Town of Hamden Annual Report, Report of Health Officer, attached as Exhibit 15.*

11. Agreed that in 1913, the Town of Hamden Health Officer reported that steps were being taken toward abolishing some of the mosquito breeding places. Agreed that in 1913, the Town of Hamden Health Officer reported that swamps near Newhall Street, Auger Street and Putnam Street were to be drained and open to sunlight. *See 1913 Town of Hamden Annual Report, Report of Health Officer, attached as Exhibit 16.*

12. Agreed in part. Plaintiffs disagree with Defendant's characterization of the Town as having "struggled with the mosquito problem" in 1914 and 1915. In 1914, the Health Officer reported that "some advance" was being made with the mosquito nuisance. *See 1914 Town of Hamden Annual Report, Report of Health Officer, p. 43, attached as Exhibit 19.* In addition, in 1915 the Health Officer noted that "[m]uch can be done to improve the conditions on ones own

2

premises." *See 1915 Town of Hamden Annual Report, Report of Health Officer, p. 37, attached as Exhibit 20.* To this end, the Health Officer recommended that private citizens prevent the accumulation of stagnant water in rain water pools, barrels, tin cans, kettles, choked gutters and other similar places on their properties. *Id.*

13. Agreed that in 1916, the New Haven Water Company and Winchester Repeating Arms drained a large tract of land that, when completed, would eliminate the largest single malarial-breeding swamp grounds in the Town of Hamden. Agreed that in 1916, a "very bad breeding place on the corner of St. Mary and Morse Streets" was nearly filled in. *See 1916 Town of Hamden Annual Report, Report of Health Officers, attached as Exhibit 21.*

14. Agreed in part. Plaintiffs disagree with Defendant's contention that mosquitoes "plagued the residents of Hamden in the 1930s through approximately 1942." In the evidence submitted by the Town in support of this assertion, no mention is made of mosquitoes in the Annual Reports for 1929, 1930, 1931, 1932, 1933, 1934, 1935 or 1939. This failure to mention mosquitoes at all shows that the mosquito nuisance is not the plague the Town now attempts to characterize it as. *See 1929 Town of Hamden Annual Report, attached as Exhibit 34; 1930 Town of Hamden Annual Report, attached as Exhibit 35; 1931 Town of Hamden Annual Report, attached as Exhibit 36; 1932 Town of Hamden Annual Report, attached as Exhibit 37; 1933 Town of Hamden Annual Report, attached as Exhibit 38; 1934 Town of Hamden Annual Report, attached as Exhibit 39; 1935 Town of Hamden Annual Report, attached as Exhibit 40; 1939 Town of Hamden Annual Report, attached as Exhibit 44.*

15. Agreed that the Town expended funds for the oiling of mosquito areas in 1929, 1937-1941. Agreed that the Town did not directly receive any money for oiling. No evidence has been offered showing that the Town of Hamden expended funds for the abatement of 'mosquito nuisance' except for the above years.

16. Agreed in part. Agree that the Town of Hamden did not profit from certain measures used to abate mosquito areas, such as oiling. However, the filling of low lying areas in Hamden allowed the Town of Hamden to convert acres of unusable land into hundreds of homes, a school and a park, increasing the tax base and increasing the property values in the area. *See 1938 Public Health Survey, Exhibit 56 at p. 38; Downie Transcript, Exhibit 57 at p. 50.*

17. Agreed that in 1916-1917, 1924-1925, 1927 and 1931 the Hamden Health Officer recognized that the Town of Hamden did not collect refuse and that a more modern method for collection and disposal of garbage and refuse was needed in the Town.

18. Agreed.

19. Agreed.

20. Agreed that the documentary evidence indicates that the Town of Hamden did not collect or charge fees for dumping permits. *See Robert V. Cappelletti Affidavit, ¶ 12, attached as Exhibit 58; Downie Transcript, Exhibit 57 at pp.31-33, 68 and 70-74.*

3

21. Disagree. Please see Plaintiffs' response to #16 above.

22. Agreed in part. Agree that, prior to October 1, 1937, garbage and dumps were generally under the authority of the Hamden Health Officer. Disagree with Defendant's assertion that this authority only existed "to the extent garbage and dumps were regulated at all." Prior to 1937, the Hamden Health Officer maintained regulatory authority over garbage and dumps in Hamden. In 1895, the Hamden Health Officer established regulations related to garbage disposal. *See 1895 Town of Hamden Annual Report, Report of Health Officer, p. 24 and 26, attached as Exhibit 59*. In 1917, the Town of Hamden established three public dumps and the Hamden Health Officer listed permissible wastes that may be dumped by residents as well as impermissible wastes. *See 1917 Town of Hamden Annual Reports, Report of Health Officer, p. 36, attached as Exhibit 22*. Finally, in 1934, the Town required that all persons carting rubbish and ash in the Town were to obtain a permit. *See 1934 Town of Hamden Annual Reports, Report of Board of Health, p. 24, attached as Exhibit 39*.

23. Agreed.

24. Disagree. In 1917, the Hamden Health Officer identified three dumps by location, noting permissible wastes that may be dumped and expressing restrictions on dumping after dark. *See 1917 Town of Hamden Annual Reports, Report of Health Officer, p. 36, Exhibit 22*. In addition, by 1942, the Department of Public Works reported that the only dump remaining in Hamden for the townspeople was the Arch Street dump. *See 1942 Town of Hamden Annual Reports, Report of Department of Public Works, p. 27, Exhibit 47*. These delineations indicate the distinction that may be drawn between locations where the public dumped and specific public dumps maintained by the Town of Hamden.

25. Agreed.

26. Agreed.

27. Agreed.

28. Agreed that some areas in the Newhall Section of Hamden consisted of swamps and wetlands in 1934.

29. Agreed that, by 1934, aerial photographs show that houses had been developed on the streets lying south of Morse Street and north of Goodrich Street, bounded to the west by St. Mary's and east by Winchester Avenue.

30. Agreed.

31. Agreed.

32. Agreed in part. Agree that the collection of building permit fees may not

4

currently be done with the expectation that a profit will be generated. However, the affidavit submitted by the Town of Hamden in support of this proposition does not, nor cannot, speak to the expectations of the Town of Hamden for practices occurring over sixty years ago.

33. Disagreed. The filling of low lying areas in Hamden allowed the Town of Hamden to convert acres of unusable land into hundreds of homes, a school and a park, increasing the tax base and increasing the property values in the area. *See 1938 Public Health Survey, Exhibit 56 at p. 38; Downie Transcript, Exhibit 57 at p. 50.*

34. Agreed.

35. Disagreed. Though the Town of Hamden may not have directly received any money from Winchester Repeating Arms or Olin, Winchester Repeating Arms/Olin's depositing of fill and ash materials in the Newhall Section of Hamden allowed the Town of Hamden to create usable residential property out of former swamplands, increasing the tax base and increasing the property values in the area. *See 1938 Public Health Survey, Exhibit 56 at p. 38; 1947 Town of Hamden Annual Report, Board of Selectman, p. 25, attached as Exhibit 52; Downie Transcript, Exhibit 57 at pp. 45-46, 50, 103-107 & 138-142.*

36. Plaintiffs agree that the Town received $200.00 from Olin in 1909, excluding property taxes for the properties the company owned in Hamden from 1901-1950. However, the Town received benefits other than money from Winchester Repeating Arms and Olin and profited therefrom. Please see Plaintiffs' response to #35 above.

37. Disagree. Please see Plaintiffs' response to #35 above.

**II.   Material Facts As To Which There Are Genuine Issues to be Tried**

1. **Whether the Town allowed the Winchester Repeating Arms Company ("Winchester") to dump its industrial waste in the Newhall Section for 40 years solely in order to control mosquitoes, in light of the facts that:**

    a.  As early as 1913, the Hamden Health Officer reported that the mosquitoes could be combated by individuals ridding their homes of rain barrels and other pools of stagnant water. *See 1913 Town of Hamden Annual Report, Report of Health Officer, p. 40, attached as Exhibit 16.*

    b.  In many years, filling was not done to address concerns about mosquitoes. Instead, in these years, areas of concern were simply oiled, which entailed spraying the area with kerosene or light fuel oil. *Hamden Board of Health Minutes, July 3, 1936, attached as Exhibit 68; Hamden Board of Health Minutes, September 4, 1936, attached as Exhibit 69; Hamden Board of Health Minutes, October 2, 1936, attached as Exhibit 70; Hamden Board of Health Minutes, June 11, 1937, attached as Exhibit 71; Hamden Board of Health, Report of Health Officer, July, 1938, attached as Exhibit 72.*

5

    c.    Mosquitoes were of such little concern during the 1930s that most years they received no mention in Hamden's Annual Report.  *See 1929 Town of Hamden Annual Report, attached as Exhibit 34; 1930 Town of Hamden Annual Report, attached as Exhibit 35; 1931 Town of Hamden Annual Report, attached as Exhibit 36; 1932 Town of Hamden Annual Report, attached as Exhibit 37; 1933 Town of Hamden Annual Report, attached as Exhibit 38; 1934 Town of Hamden Annual Report, attached as Exhibit 39; 1935 Town of Hamden Annual Report, attached as Exhibit 40; 1939 Town of Hamden Annual Report, attached as Exhibit 44.*

2. **Whether the Town was responsible for the creation and maintenance of dumps in the Newhall Section, in light of the facts that:**

   a.  Prior to 1900, the Newhall Section of Hamden consisted largely of streams and associated wetlands. *See Deposition of Deborah Motycka Downie (July 9, 2004)("Downie Transcript") p. 44-45, attached as Exhibit 57*

   b.  As early as 1915, the Town of Hamden solicited owners of properties containing low lying areas to allow refuse to be dumped onto their properties. *See Notice in New Haven Register, July 15, 1915, attached as Exhibit 60; Notice in New Haven Register, April 30, 1916, attached as Exhibit 61.* Hamden residents wishing to have property filled were also given permission by the Town of Hamden to have private refuse dumps. *See Hamden Board of Health Minutes, May 6, 1932, attached as Exhibit 62.*

   c.  By 1917, three public refuse dumps had been established by the Town. *See 1917 Town of Hamden Annual Reports, Report of Health Officer, p. 36, attached as Exhibit 22.*

   d.  Beginning October 1, 1934, the Hamden Board of Health took over the supervision and expense of all dumps, including the wages of caretakers. *See Hamden Board of Health Minutes, June 1, 1934, attached as Exhibit 66; Downie Transcript, Exhibit 57 at p. 93.*

3. **Whether the Town's operation of the Newhall dumps was a governmental or proprietary function, in light of the facts that:**

   a.  In 1917, the Town allowed Winchester, a for-profit, out of town company to dump its industrial waste there. *See Reported Areas of Filling or Dumping Map, attached as Exhibit 63; Downie Transcript, Exhibit 57 at pp. 13-14, 40-41, 45-46, 103-107, 138-142.* Winchester Repeating Arms filled swampy areas on the east side of Newhall Street between Mill Rock Road and Morse Street, as well as a 4-acre of marshy ground on the west side of Newhall Street, between Goodrich, Marlboro and Butler Streets

6

    with ash and other materials during World War I.  *See Reported Areas of Filling or Dumping Map, <u>Exhibit 63</u>; Map from Backyard Nature Man, Book One: My Boyhood to Manhood Years in Old Highwood Village, Anthony V. Cosenza, III, dated 1993, attached as <u>Exhibit 64</u>.*

b.  The public dumps in Hamden were not simply confined to garbage and refuse from Hamden residents.  In 1934, the Town of Hamden issued permits to truckers to dump out-of-town refuse in Hamden.  *See Hamden Board of Health Minutes, July 6, 1934, attached as <u>Exhibit 65</u>; Downie Transcript, <u>Exhibit 57</u> at pp. 35-36.*  Asphalt scrapings from the City of New Haven were also dumped in the Newhall Section.  *See Downie Transcript, <u>Exhibit 57</u> at pp. 40-42.*

c.  As early as 1925, the Town of Hamden was aware of the development potential of filled areas.  In 1925, the Hamden Health Officer noted that dumps "can be located on waste land, swamps, etc. thereby eliminating mosquito breeding places and creating play-ground and public parks, much needed in this community." *See 1925 Hamden Annual Report, attached as <u>Exhibit 30</u>.*

d.  The Town's awareness of the development potential of filled areas continued in the 1930s.  In 1937, real estate men approached the Town of Hamden to ask that the Newhall Street dump be closed so that property in the area could be developed for building purposes.  *See Hamden Board of Health Minutes, January 8, 1937, attached as <u>Exhibit 73</u>.*

e.  The Town of Hamden did not utilize only town-owned land as dumping grounds.  In or about 1937, the Town of Hamden negotiated with at least one private party for permission to use their property as a dump.  *See Hamden Board of Health Minutes, January 8, 1937, <u>Exhibit 73</u>.*

f.  In 1938, the Hamden Board of Health believed that creating a recreational area on top of the Newhall Street dump added greatly to the land value in the area.  *See 1938 Public Health Survey, <u>Exhibit 56</u> at p. 38;  Downie Transcript, <u>Exhibit 57</u> at p. 50.*

g.  Residential development of the Newhall Section began in the early 1920s, and continued through the 1950s.  *See Residential Development Map, attached as <u>Exhibit 77</u>.*

h.  Aerial photographs taken of the Newhall Section in 1934 show that the area where Bryden Terrace now exists was occupied by wetlands, into which two 'lobes' of apparent fill material extended.  *See 1934 Aerial Photograph, attached as <u>Exhibit 78</u>; Residential Development Map, <u>Exhibit 77</u>.*

7

      i.      The filling of low lying areas in Hamden allowed the Town of Hamden to create usable residential property out of former swamplands, increasing the tax base and increasing the property values in the area. *See 1938 Public Health Survey,* Exhibit 56 *at p. 38; Downie Transcript,* Exhibit 57 *at p. 50.*

**4.**    **Whether the Town's actions in allowing Winchester to dump its toxic industrial waste in the Newhall Section and then issuing building permits to build on top of the toxic waste were positive actions taken in reckless disregard for health and safety, in light of the facts that:**

    a.    The toxicity of lead and arsenic were well-known in the early 20th century. *See Affidavit of James D. Sargent, M.D. ('Sargent Affidavit'),* attached as Exhibit 74.

    b.    In the late 1800s, the production of lead shot had been identified as an industry resulting in the lead poisoning of workers. *See Sargent Affidavit,* Exhibit 74 *at 6.* In 1891, known symptoms of lead poisoning included colic, abdominal pain, vomiting, constipation, anemia, the blue line on gums, and alteration of menstrual function and miscarriage in women. *Id. at 7.*

    c.    In the early 1900s, the risks associated with arsenic were generally known. *See Sargent Affidavit,* Exhibit 74 *at 10-11.* In industry, arsenic was used in the process of producing lead bird shot, a component of shotgun ammunition. *Id. at 11.* Symptoms of arsenic poisoning were known by the 19th century, and included vomiting, severe muscle cramping and convulsions, resulting in death. *Id.*

    d.    The Town of Hamden was aware of the materials being dumped in the Newhall Section of Hamden by Winchester Arms and Olin Corporation. In 1940, approximately 130 Hamden residents living in the Newhall Section presented a petition to the Hamden Board of Health asking that something be done about the Winchester Arms and other dumps around the Newhall Street School. Fine cinders from the dumps were being blown into the school. The Health Officer spoke with the superintendent of power and maintenance of the Winchester plant and the dumping of cinders continued, at a greater distance from the school. *See Hamden Board of Health, Report of Health Officer, February, 1940,* attached as Exhibit 79; *Hamden Board of Health Minutes, March 1, 1940,* attached as Exhibit 75. Similar problems pervaded during 1941, when the Winchester maintenance people agreed to wet material down before it was taken to the dump. *Hamden Board of Health Minutes, March 7, 1941,* attached as Exhibit 76.

THE PLAINTIFFS,


By_____
        David B. Zabel, Esq. ct01382
        dzabel@cohenandwolf.com
        Monte E. Frank, Esq. ct13666
        mfrank@cohenandwolf.com
        Alison Clark, Esq. ct25761
        aclark@cohenandwolf.com
        Cohen and Wolf, PC
        1115 Broad Street
        Bridgeport, Connecticut 06604
        Tele:  (203) 368-0211
        Fax:   (203) 394-9901

        Mark Roberts, Esq.
        mroberts@mcrobertslaw.com
        Andrew Rainer, Esq.
        arainer@mcrobertslaw.com
        Jennifer Currie, Esq.
        jcurrie@mcrobertslaw.com
        McRoberts, Roberts & Rainer, L.L.P.
        53 State Street
        Boston, Massachusetts 02109
        Tele: (617) 722-8222
        Fax:  (617) 720-2320

        Neil T. Leifer, Esq.
        nleifer@tenlaw.com
        David C. Strouss, Esq.
        dstrouss@tenlaw.com
        Brad J. Mitchell, Esq.
        bmitchell@tenlaw.com
        Thornton & Naumes L.L.P
        100 Summer Street, 30th Floor
        Boston, Massachusetts 02110
        Tele: (617) 720-1333
        Fax:  (617) 720-2445

# CERTIFICATION

This is to certify that a copy of the foregoing was mailed First Class, postage prepaid, on this 9th day of March, 2005, to the following:

**Olin Corporation**:

Sandra K. Davis, Esq.
Mark S. Baldwin, Esq.
Brown Rudnick Berlack Israels, LLP
185 Asylum Street, 38th Floor
Hartford, CT 06103-3402

Michael Wetmore, Esq.
Joel Samson, Esq.
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

**The Town of Hamden:**

Ann Catino, Esq.
Joseph G. Fortner, Jr., Esq.
Thomas Blatchley, Esq.
Halloran & Sage LLP
225 Asylum Street
Hartford, CT 06103-4303

                                             Alison K. Clark