UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARENCE R. COLLINS, JR., et al., | : | CIVIL ACTION NO. 3:03 CV-945(CFD) |
| | : | |
| V. | : | |
| | : | |
| OLIN CORPORATION, et al., | : | |
| | : | April 15, 2005 |

**OLIN CORPORATION'S REPLY TO PLAINTIFFS' LOCAL RULE 56(a)(2)
RESPONSE TO DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT AND
STATEMENT OF MATERIAL FACTS IN DISPUTE**

COMES NOW Defendant Olin Corporation ("Olin") and for its Reply to Plaintiffs' Local Rule 56(a)(2) Response To Defendants' Local Rule 56(a)(1) Statement And Statement Of Material Facts In Dispute ("Plaintiffs' Statement"), states as follows:

**RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN DISPUTE**

1. Denied. Defendant Olin states that none of the alleged facts set forth in Paragraph 1 of Plaintiffs' Statement are material to the issues raised in Olin's Motion for Partial Summary Judgment. Olin further states that Plaintiffs' allegation that Winchester-Maryland employed almost all of Winchester-Delaware's 2500 employees is not supported by any admissible evidence, in that the newspaper article attached as Exhibit 17 to Plaintiffs' Statement is inadmissible hearsay, and thus does not warrant any responsive evidence. *See* Fed.R.Civ.P. 56(e); Local Rule 56(a)(3); *see also* FRE 801, 802; *Tyson v. Willauer*, 290 F. Supp.2d 278, fn 5 (D. Conn. 2003); *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 746(2nd Cir. 1998). For further response, Olin admits that Winchester-Maryland employed some former employees of Winchester-Delaware. *See* Defendant Olin Corporation's Local Rule 56(a)(1) Olin's Statement of Material Undisputed Facts in Support of Defendant's Motion for Partial Summary Judgment ("Olin's Statement"), at ¶ 14 and Exhibits D-E thereto.

2030081v1.doc

2. Denied. Defendant Olin states that none of the alleged facts set forth in Paragraph 2 of Plaintiffs' Statement are material to the issues raised in Olin's Motion for Partial Summary Judgment. Further, Olin denies that there was a continuity of management, because Winchester-Maryland brought in new management and new officers and directors. *See* Olin's Statement, ¶ 14, and Exhibits D-E thereto. For further response, Olin states as follows:

    a. Denied. Exhibit 19 to Plaintiffs' Statement describes an "Operating Committee" of former Winchester-Delaware employees who were appointed to aid in the transition. It does not support the proposition that these persons assumed management roles in the new corporation. Edwin Pugsley – the only officer of Winchester-Delaware at the time of the asset purchase who served as an officer of Winchester-Maryland – described the change in management teams at the time of the asset purchase: "The purchase of the company by the Olin interest brought a breath of life to the institution and brought to Winchester many things. First of all was the end of management by people who were not familiar or sympathetic with the gun and ammunition business. It brought to the company the very able and astute business management of the Olin group." *See* <u>Winchester: The Gun that Won The West</u>, *Epilogue*, by Edwin Pugsley, attached to Plaintiffs' Statement as Exhibit 13, at p. 379.

    b. Admitted. Olin further states that Mr. Pugsley was never a director of Winchester-Maryland, and he was the only officer of Winchester-Delaware who served as an officer of Winchester-Maryland. *See* Olin's Statement, at ¶ 18, and Exhibit G thereto.

  c.  Denied. Neither R.C. Swanton nor Edgar W. Taft was an officer or director of Winchester-Delaware or its subsidiaries as of the date of the December 15, 1931 asset sale.

  Swanton was President of Winchester-Delaware from February 6, 1929 to Feb. 8, 1929, and Director of Winchester-Delaware from February 5, 1929 to February 8, 1929. *See* Exhibit 24 to Plaintiffs' Statement. Notably, Winchester-Delaware was organized on February 5, 1929 (*see* Final Decree, attached to Plaintiffs' Statement as Exhibit 4, at p. 3), and Swanton evidently served in a transitional role as President and Director of Winchester-Delaware for the three (3) days following its organization. Swanton did not hold any further positions with Winchester-Delaware until *after* the asset sale, when he became Secretary and Director of Winchester-Delaware on May 13, 1932. *See* Exhibit 24 to Plaintiffs' Statement. Swanton was Assistant Treasurer of Whirldry Corporation September 9, 1926 to August 28, 1928, and Director of Whirldry Corporation September 9, 1926 to October 21, 1926. He did not become an officer of Whirldry Corporation again until after the asset sale, when he became Secretary on December 29, 1931 and Director on July 22, 1932. *Id.* Swanton was Vice President of Winchester Retail Stores from November 26, 1923 to May 27, 1924, and Director from November 22, 1923 to May 27, 1924. He did not become an officer or director of Winchester Retail Stores again until after the asset sale, when he became Secretary and Director on February 15, 1932. *Id.*

  Likewise, Taft was Vice President of Winchester-Delaware from February 6, 1929 to February 8, 1929, and Director of Winchester-Delaware from February 5, 1929 to February 8, 1929. *See id.* Notably, Winchester-Delaware was organized on February

5, 1929 (*see* Final Decree, attached to Plaintiffs' Statement as Exhibit 4, at p. 3), and Taft evidently served in a transitional role as Vice President and Director of Winchester-Delaware for the three (3) days following its organization. Taft did not hold any further positions with Winchester- Delaware until *after* the asset sale, when he became Assistant Treasurer and Director of Winchester-Delaware on May 13, 1932. *See* Exhibit 24 to Plaintiffs' Statement. Taft was not an officer or director of Whirldry Corporation prior to the asset sale. He became Assistant Treasurer and Assistant Secretary of Whirldry on December 29, 1931 and Director on July 22, 1932. *Id.* Taft was Assistant Treasurer of Winchester Retail Stores from September 6, 1924 to May 26, 1926. He did not become an officer or director of Winchester Retail Stores again until after the asset sale, when he became Assistant Secretary, Assistant Treasurer, and Director on February 15, 1932. *Id.*

3.  Denied. Defendant Olin states that none of the alleged facts set forth in Paragraph 3 of Plaintiffs' Statement are material to the issues raised in Olin's Motion for Partial Summary Judgment. Moreover, Plaintiffs' allegations with respect to continuity of general business operations involving "no radical changes" are not supported by any admissible evidence, in that the newspaper article attached as Exhibit 17[1] to Plaintiffs' Statement of Material Facts is inadmissible hearsay, and thus does not warrant any responsive evidence. *See* Fed.R.Civ.P. 56(e); Local Rule 56(a)(3); *see also* FRE 801, 802; *Tyson v. Willauer*, 290 F. Supp.2d 278, fn 5 (D. Conn. 2003); *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 746(2nd Cir. 1998). For further response, Olin states that the types of products manufactured by Winchester-Maryland varied from those made by Winchester-Delaware. *See* Olin's Statement, ¶ 13, and Exhibits D-E thereto. *See also* Paragraph 4(b) and (d), *infra*.

---

[1] While Plaintiffs cite to Exhibit 16 in Paragraph 3 of Plaintiffs' Statement, this appears to be an error, because the "no radical change" quote appears in Exhibit 17, *not* Exhibit 16.

4. Denied. *See* Olin's Statement, at ¶ 13, and Exhibits D-E thereto. Defendant Olin further states that none of the alleged facts set forth in Paragraph 4 of Plaintiffs' Statement are material to the issues raised in Olin's Motion for Partial Summary Judgment.

For further response, Olin states as follows:

a. Admitted in part. Defendant further states that John M. Olin worked with T.C. Johnson to appraise and assess Johnson's firearm models and ideas and that John Olin "introduce[d] a number of revolutionary ideas [John Olin] had in mind" with respect to Johnson's models. *See Winchester: The Gun that Won The West*, Epilogue, by Edwin Pugsley, attached to Plaintiffs' Statement as Exhibit 13, at p. 380. *See also* Deposition of Johnnie Jackson, taken on March 24, 2004 (relevant portions of which are attached to Olin's Statement as Exhibit D thereto) ("Jackson Depo. I"), at p. 73-75 (Johnson "did make himself available to Mr. Olin, and they did spend some time together" so that the Olins took Johnson's ideas "to the next level").

b. Admitted in part. Olin admits that Winchester-Maryland continued manufacturing and selling some products that had been manufactured and sold by Winchester-Delaware. However, Winchester-Maryland discontinued some of the product lines previously produced by Winchester-Delaware. *See Winchester: The Gun that Won The West,* Epilogue, by Edwin Pugsley, attached to Plaintiffs' Statement as Exhibit 13, at p. 380-90 (describing Winchester-Delaware products that Winchester-Maryland discontinued and new product lines that Winchester-Maryland developed. For example, the new management discontinued certain radiator tubes and radiators, tools, and cutlery; introduced brass specialties; and introduced several new models of firearms and discontinued previous Winchester models); Olin's Statement of Facts, ¶ 13; Jackson

Depo. I, attached to Olin's Statement as Exhibit D, at p. 72 ("the products manufactured changed dramatically right from the beginning"); Deposition of Johnnie Jackson, taken on November 9, 2004, attached to Olin's Statement of Facts at Exhibit E ("Jackson Depo. II"), p. 83-84.

    c.    Admitted. For further response, Olin states that Western Cartridge Company was in the business of manufacturing ammunition, and the manufacture of firearms was a natural extension of that business and a means of "vertical integration," for the purpose of "preserving and keeping prosperous their ammunition business" and ensuring "a source of outlet for their ammunition products." *See* Jackson Depo. I, attached to Plaintiffs' Statement as Exhibit 6, at p. 40. For several years prior to the asset purchase, Western Cartridge and the Olin family had "contemplated the purchase of various firearms companies and had even considered the possibility of developing a line of firearms of their own." *See* Winchester: The Gun that Won The West, Epilogue, by Edwin Pugsley, attached to Plaintiffs' Statement as Exhibit 13, at p. 377; Jackson Depo. I, attached to Plaintiffs' Statement as Exhibit 6, at p. 40.

    d.    Olin objects to this alleged statement of fact as vague and ambiguous with respect to the use of the term "popular gun lines." Defendant is unable to determine which gun lines are considered "popular," and thus cannot determine how many of Winchester-Delaware's "popular gun lines" were continued under Winchester-Maryland. Subject to and without waiving this objection, Olin states as follows: Olin admits that at least twenty of Winchester-Delaware's gun lines were continued immediately after Winchester-Maryland acquired the assets in 1931, but states that numerous of these gun lines – which Winchester-Delaware had marketed and sold for many years – were

discontinued shortly after Winchester-Maryland acquired the assets. *See* Exhibit 13 to Plaintiffs' Statement of Facts, at p. 423-446. For example, Model 1886 rifle, which Winchester-Delaware had marketed since 1894, was discontinued in 1935; Model 1890 Rifle, which Winchester-Delaware had marketed since 1892, was discontinued in 1934; Model 1892 carbine, which Winchester-Delaware had marketed since 1892, was discontinued in 1941; Model 1892 rifle, which Winchester-Delaware had marketed since 1893, was discontinued in 1934; model 1894 rifle, which Winchester-Delaware had marketed since 1894, was discontinued in 1936; model 1894 rifle, take down, which Winchester-Delaware had marketed since 1894, was discontinued in 1936; model 1895 carbine, which Winchester-Delaware had marketed since 1895, was discontinued in 1934; model 1895 rifle, which Winchester-Delaware had marketed since 1896, was discontinued in 1934; model 1903 rifle, which Winchester-Delaware had marketed since 1904, was discontinued in 1932; model 1906 rifle, which Winchester-Delaware had marketed since 1906, was discontinued in 1934; model 1910 self loading rifle, which Winchester-Delaware had marketed since 1910, was discontinued in 1936; model 41 shotgun, which Winchester-Delaware had marketed since 1920, was discontinued in 1934; model 53 rifle, which Winchester-Delaware had marketed since 1924, was discontinued in 1934; model 55 rifle, which Winchester-Delaware had marketed since 1924, was discontinued in 1932; model 54 rifle, which Winchester-Delaware had marketed since 1925, was discontinued in 1936; model 57 rifle, which Winchester-Delaware had marketed since 1926, was discontinued in 1936. *Id.*

Further, Winchester-Maryland introduced many of its own new gun lines, beginning shortly after the asset purchase. *See* Exhibit 13 to Plaintiffs' Statement of

Facts, at p. 380-390, 438-442; Exhibit 14 to Plaintiffs' Statement of Facts (showing at least 30 models of guns first manufactured in the years 1931-1936); Jackson Depo. I, Exhibit D to Olin's Statement of Facts, at p. 72-75.

5. Denied. Defendant Olin states that none of the alleged facts set forth in Paragraph 5 of Plaintiffs' Statement are material to the issues raised in Olin's Motion for Partial Summary Judgment.

For further response, Olin states as follows:

a. Denied. For further response, Olin states that Paragraph 5(a) of Plaintiffs' Statement does not comply with the requirement in Local Rule 56(a)(3) that all allegations be "followed by a specific citation to . . . evidence that would be admissible at trial," in that the "'specific citation' obligation of this Local Rule requires counsel and pro se parties to cite to . . . specific pages when citing to . . . documents longer than a single page in length." In Paragraph 5(a) of Plaintiffs' Statement, Plaintiffs simply cite to "Exhibit 3," which is a 60-page document. Defendants do not know which page(s) or section(s) of this lengthy document Plaintiffs rely upon in support of the allegations in Paragraph 5(a), and thus are unable to respond to same.

b. Denied. The Final Decree gives the as-yet undetermined purchaser the right to decide whether or not it will assume or adopt Winchester-Delaware's contracts. *See* Final Decree, Exhibit 4 to Plaintiffs' Statement, at Article XX ("Disavowal of Contracts"), p. 104. The Decree Confirming (which Plaintiffs cite in Paragraph 5(b) of Plaintiffs' Statement) is silent on this point. *See* Decree Confirming, Exhibit 3 to Plaintiffs' Statement. The only reference to an assumption of liability for Winchester-Delaware's contracts in the Decree Confirming is a provision that Winchester-Maryland

agrees to assume the liabilities and contracts entered into by the *receivers* of Winchester-Delaware. *See* Decree Confirming, Exhibit 3 to Plaintiffs' Statement, at p. 17, 38, referring to Final Decree, Article XV (A) and (B).

In fact, the terms of the asset purchase agreement specifically provided that Western Cartridge would not agree to assume Winchester-Delaware's liabilities: "The property and assets to be purchased hereunder shall be delivered free from all liabilities, other than current liabilities of the Receivers." *See* Exhibit 27 to Plaintiffs' Statement, at p. 2, ¶ 5.

  c. Denied. Defendant denies that an executory option to purchase the business of the United States Cartridge Company in the future is an "obligation of Winchester-Delaware necessary for the uninterrupted continuation of business operations," (*see* Plaintiffs' Statement, ¶ 5), especially where Winchester-Maryland did not exercise this option until five years after the asset purchase.

  6. Denied. Defendant Olin states that none of the allegations set forth in Paragraph 6 of Plaintiffs' Statement are material to the issues raised in Olin's Motion for Partial Summary Judgment. As explained in Olin's Motion for Partial Summary Judgment and Memorandum in Support, and in Olin's Reply thereto, whether Winchester-Maryland benefited from "good will" is not a factor to be considered in either the de facto merger or mere continuation exception, and the product line exception does not apply to this case, as a matter of law.

  7. Denied. Defendant Olin states that none of the allegations set forth in Paragraph 7 of Plaintiffs' Statement are material to the issues raised in Olin's Motion for Partial Summary Judgment.

For further response, Olin states as follows:

      a.    Admitted.

      b.    Admitted in part. Defendant states that Plaintiffs' allegations in Paragraph 7(b) are not supported by any admissible evidence, in that the newspaper article attached as Exhibit 17 to Plaintiffs' Statement is inadmissible hearsay, and thus does not warrant any responsive evidence. *See* Fed.R.Civ.P. 56(e); Local Rule 56(a)(3); *see also* FRE 801, 802; *Tyson v. Willauer*, 290 F. Supp.2d 278, fn 5 (D. Conn. 2003); *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 746(2nd Cir. 1998). Defendant admits that a month after the sale Winchester-Maryland wrote to jobbers promoting the Winchester products, but further states that in this same letter to jobbers Winchester-Maryland specifically informed the jobbers that there were "new owners of this Company" and asked the jobbers for "your continued support and cooperation in carrying out the policies of this Company in the sale of Winchester arms." *See* Exhibit 10 to Plaintiffs' Statement of Facts.

      c.    Admitted.

      d.    Admitted.

      e.    Admitted in part, denied in part. Defendant admits that Olin issued a release on "Famous Winchester Developments" that described the release of Winchester guns beginning in 1866 and continuing through releases in 1966, but Defendant denies the remaining allegations of Paragraph 7(e). Specifically, Olin denies that the release "moves directly from the 'famous model 21' released in 1931 to 'the Model 42' released in 1933." To the contrary, in the document to which Plaintiffs refers, the release of the "famous model 21" in 1931 is marked with a footnote which states, "All developments

after 1931 were engineered in conjunction with the Western Cartridge Company, later the Winchester-Western Division." *See* Exhibit 29 to Plaintiffs' Statement, at 001078.

  f. Admitted, except that Olin states that the underlining added in the quote in Paragraph 7(f) of Plaintiffs' Statement was added by Plaintiffs.

8. Denied.

For further response, Olin states as follows:

  a. Admitted in part, denied in part. Defendant admits that Winchester-Delaware's creditors received $4.8 million in Western Cartridge stock in exchange for their release on their rights to Winchester-Delaware's assets. *See* Decree Confirming, Exhibit 3; Jackson Depo. I, attached to Olin's Statement as Exhibit D, at p. 49. However, Olin denies that Winchester-Delaware's Mortgage Bondholders and Debenture holders were owners of Winchester-Delaware, or that the facts alleged in Paragraph 8(a) of Plaintiffs' Statement demonstrate "continuity of ownership." At the time of the asset purchase, Winchester-Delaware shares had no value, and Winchester-Delaware's shareholders did not receive any stock in Western Cartridge or Winchester-Maryland. *See* Jackson Depo. I, attached to Olin's Statement as Exhibit D, at p. 49; Final Report and Statement of Account of the Reorganization Committee and Application for Discharge, attached to Plaintiffs' Statement as Exhibit 18 thereto, at p. 2-4. *See also Tracey v. Winchester Repeating Arms Co.*, 745 F. Supp. 1099 (E.D. Penn. 1990), *aff'd*, 928 F.2d 397 (3rd Cir. 1991) (finding that "There is no such continuity of stock ownership in this case. The transfer of WCC stock to WRAC-Del. in payment for the assets of WRAC-Del. was used exclusively to satisfy WRAC-Del.'s creditors. The total amounts paid were insufficient to compensate WRAC-Del.'s creditors fully and the payments were

made pursuant to judicial approval. Plaintiffs have identified no facts which demonstrate that WCC stock was transferred to WRAC-Del.'s shareholders through the asset purchase. Nor were any sums of cash transferred to WRAC-Del.'s shareholders. *See Decree Confirming,* at 15. The stockholders of WRAC-Del. did not, therefore, become stockholders of WCC as a result of the asset sale.").[2]

    b.    Admitted in part, denied in part. Defendant admits that Kidder Peabody owned some shares in Winchester-Delaware prior to the asset purchase, but denies that it was a "significant" shareholder. *See* Exhibit 25 to Plaintiffs' Statement (as of the date of the asset purchase, Mercantile Securities Corp. owned 89% of Winchester-Delaware's common shares). Defendant admits that Kidder Peabody was a bondholder of Winchester-Delaware. Defendant further denies that Kidder Peabody obtained stock of Western Cartridge in exchange for or in consideration for its stock in Winchester-Delaware. Rather, any stock that Kidder Peabody owned in Winchester-Delaware was valueless, and Kidder Peabody obtained Western Cartridge stock as payment for the debt owed it by Winchester-Delaware, in its capacity as a creditor of Winchester-Delaware. *See* Paragraph 8(a), *supra*.

    c.    Defendant admits that as part of its purchase of all of Winchester-Delaware's assets, Winchester-Maryland acquired the stock that Winchester-Delaware owned in its wholly-owned subsidiaries. However, Defendant denies that this fact has any bearing whatsoever on the "continuity of ownership" question, because stock in Winchester-Delaware's subsidiaries is <u>not</u> the stock of Winchester-Delaware in the sense of an ownership share of Winchester-Delaware. Rather, the stock of Winchester-

---

[2] The *Tracey* Court used "WCC" to refer to Western Cartridge; and WRAC-Del to refer to Winchester-Delaware. *See* 745 F. Supp. at 1101-1102.

Delaware's subsidiaries is properly viewed as an asset of Winchester-Delaware, properly included in a sale of all of Winchester-Delaware's assets.

9. Defendant admits that Winchester-Maryland acquired all of the assets of Winchester-Delaware, which included "all property of every kind, character and description, real, personal and/or mixed," of Winchester-Delaware, and that "Said property shall include (without limiting the generality of the foregoing description) all the business, good will, including the corporate name or names, patents, trade names, trade marks, bills and accounts receivable, choses in action and cash . . ." *See* Decree Confirming, attached to Plaintiffs' Statement as Exhibit 3, at p. 39. In fact, Plaintiffs have admitted that "the 'assets' entailed 'all property of every kind, character and description, . . . all the business, good will, including the corporate name or names, patents, trade names, trade marks, bills and accounts receivable, choses in action and cash' of Winchester-Delaware was purchased." *See* Plaintiffs' Local Rule 56(a) Response to Defendants' Local Rule 56(a)(1) Statement, Responses to Defendant Olin's Statement of Undisputed Facts, at ¶ 3. The property described in Exhibit 3 to Plaintiffs' Statement is all "assets" of Winchester-Delaware, and Plaintiffs offer no legal or factual support for their novel assertion that the purchase of the enumerated property is anything other than "an asset purchase."

Respectfully Submitted,

HUSCH & EPPENBERGER, LLC

By: /s/ Joel B. Samson

Michael H. Wetmore (ct24899)
Joel B. Samson (ct24898)
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone: 314-480-1500
Fax: 314-480-1505
michael.wetmore@huscch.com
joel.samson@husch.com

<mark>

<mark>and

BROWN RUDNICK BERLACK ISRAELS LLP
Mark Baldwin
185 Asylum St.
CityPlace I, 38th Floor
Hartford, CT 06103
Telephone: 860-509-6500
Fax: 860-509-6501
mbaldwin@brbilaw.com

***Attorneys for Defendant Olin Corporation***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 15th day of April 2005, by facsimile transmission and first class mail, postage prepaid to:

Neil T. Leifer, Esq.
David C. Strouss, Esq.
Allyson S. Hauck, Esq.
Thornton & Naumes L.L.P.
100 Summer Street, 30th Floor
Boston, Massachusetts 02110
Telephone: (617) 720-1333
Facsimile: (618) 720-2445
nleifer@tenlaw.com
dstrouss@tenlaw.com
aHauck@tenlaw.com

Monte E. Frank, Esq.
Cohen and Wolf, PC
158 Deer Hill Avenue
Danbury, CT 06810
Telephone: (203) 367-6202
Facsimile: (203) 791-8149
mfrank@cohenandwolf.com

David B. Zabel, Esq.
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, Connecticut 06604
Telephone: (203) 368-0211
Facsimile: (203) 394-9901
dzabel@cohenandwolf.com
mfrank@cohenandwolf.com

Mark Roberts, Esq.
Andrew A. Rainer, Esq.
Jennifer Currie, Esq.
McRoberts, Roberts & Rainer, LLP
101 Merrimac Street
Boston, MA 02114
Telephone: (617) 722-8222
Facsimile: (617) 720-2320
mroberts@mcrobertslaw.com
arainer@mcrobertslaw.com
jcurrie@mcrobertslaw.com

*Attorneys for Plaintiff*

Ann M. Catino, Esq.
Lori Dibella, Esq.
Joseph G. Fortner, Jr., Esq.
Thomas C. Blatchley, Esq.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Telephone: (860) 522-6103
Facsimile: (860) 548-0006
catino@halloran-sage.com
dibella@halloran-sage.com
fortner@halloran-sage.com

*Attorneys for Town of Hamden*