UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARENCE R. COLLINS, JR., et al., : | CIVIL ACTION NO. 3:03 CV-945(CFD) |
| : | |
| V. : | |
| : | |
| OLIN CORPORATION, et al., : | |
| : | April 15, 2005 |

**OLIN CORPORATION'S MEMORANDUM OF LAW IN REPLY TO
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO OLIN'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs focus their opposition on whether or not Winchester-Maryland, and/or Western Cartridge, continued Winchester-Delaware's "business." This is the wrong focus. When the proper legal standards are applied, the result is clear: Olin has no liability for the acts of Winchester-Delaware alleged in Plaintiffs' Amended Complaint, all of which occurred prior to December 22, 1931. Nothing in Plaintiffs' Opposition alters this conclusion.

I.  **Olin is Not Liable For Winchester Delaware's Activities
    Under The Doctrine of No- Successor Liability.**

Under the well-established rule of no-successor liability, "a corporation which purchases all the assets of another company does not become liable for the debts and liabilities of its predecessor." *Ricciardello v. J.W. Grant & Co.*, 717 F. Supp. 56, 49 (D. Conn. 1989). None of the four recognized exceptions to the rule apply in this case. In fact, Plaintiffs only argue that two of these exceptions, the de facto merger and mere continuation exceptions, apply. Neither does.

A.  **There Was No "De Facto" Merger or "Mere Continuation."**

The focus of the "de facto" merger and "mere continuation" exceptions "is ***not whether there is a continuation of the business***, but rather the test is ***whether there is a continuation of the corporate identity*** of the seller." *Pesce v. Overhead Door Corp.*, 1996 U.S. Dist. LEXIS

22244, at *12-13 (D. Conn., July 25, 1996) (emphasis added); *National Grange Mutual Ins. Co. v. Montgomery Elevator*, 1994 WL 547747 at * 4 (Conn. Super. Ct., Sept. 22, 1994). "A continuation envisions a common identity of directors, stockholders and the existence of only one corporation at the completion of the transfer. What it accomplishes is something in the nature of ***a corporate reorganization rather than a mere sale***." *Pesce*, 1996 U.S. Dist. LEXIS at * 11-12; *Copperthite v. Pytlik*, No. 59053, 1992 WL 209660, at *3 (Conn. Super. Ct. Aug. 25, 1992) (same). *See also Cargo Partner AG v. Albatrans, Inc.*, 207 F. Supp.2d 86 (S.D.N.Y. 2001), *aff'd*, 352 F.3d 41 (2nd Cir. 2003) ("The 'mere continuation' exception refers to a continuation of the selling *corporation* in a different form, and not merely to a continuation of the seller's business. It applies where a purported asset sale is in effect a form of corporate reorganization.")

The essence of these exceptions – and a necessary prerequisite to holding that these exceptions apply – is a finding of continuity of ownership. *See Ricciardello*, 717 F. Supp. at 58 ("The merger exception does not apply to this case because plaintiff has not established either a continuity of stockholders or an inadequacy of consideration"); *Pesce,* 1996 U.S. Dist. LEXIS 22244, at *11-13. All four of the factors identified in *Ricciardello* must be met before a court will find that a de facto merger has occurred. *See Ricciardello*, 717 F. Supp. at 58 (citing *Arnold Graphics Indus., Inc. v. Independent Agent Center*, 775 F.2d 38, 42 (2nd Cir. 1985)); *see also Cargo Partner*, 207 F. Supp.2d at 97 (under *Arnold*, all four factors "must" be present for the de facto merger exception to apply). While Plaintiffs allege that these four factors are merely part of a "balancing test," *see* Plaintiffs' Opposition at pp. 12-13, Plaintiffs cannot identify a single

case in which any court has found that the de facto merger or mere continuation exception applied without a finding of continuity of ownership.[1] As the Court in *Cargo Partner* explained:

> A holding that "not all of these factors are needed" – and that ownership continuity is optional, rather than required – would, in addition to conflicting with the Second Circuit's decision in *Arnold,* also be in conflict with . . . (b) the original basis of the de facto merger exception (i.e., the inequity of the seller's shareholders retaining their interest in the transferred assets while cutting off the higher-priority claims of creditors), (c) numerous holdings, by courts within the Second Circuit and in various other jurisdictions, stating that a de facto merger requires ownership continuity . . .

*Cargo Partner*, 207 F. Supp.2d at 105.

In this case, the undisputed facts show that Winchester-Maryland purchased the assets of Winchester-Delaware through an arms-length transaction that was not a "corporate reorganization." Winchester-Maryland did not acquire any of Winchester-Delaware's stock.[2] Plaintiffs concede that the shareholders of Winchester-Delaware did not acquire any of Winchester-Maryland's stock and that all of the consideration for the sale went to Winchester-Delaware's *creditors*. The Winchester-Delaware shareholders – whose shares of stocks had no value whatsoever, due to Winchester-Delaware's bankruptcy – received nothing. *See*, Plaintiffs' Opposition, pp. 8-9.[3] In *Tracey v. Winchester Repeating Arms Co.*, 745 F. Supp. 1099 (E.D.

---

[1] None of the cases cited in Plaintiffs' Opposition, pp. 12-13, so hold. In *Peglar*, the Court held that there was no de facto merger and no successor liability. 2002 WL 1610037 at * 7. In *National Grange*, the Court explained that "the key element in determining whether the corporate entity continues to exist is a determination of whether there is a common identity of the officers, directors, and stockholders," and the court declined to find successor liability, because "there was no continuity of ownership or management." 1994 WL 547747 at * 4. In *Water Pollution Control*, the court applied the mere continuation exception, but only after finding that there was a continuity of ownership, in that the City of Bridgeton retained "ultimate financial responsibility" for the Water Pollution Control Authority both before and after the acquisition. 1992 WL 201922 at * 3.

[2] While Plaintiffs assert that Winchester-Maryland acquired the stock of Winchester-Delaware's *subsidiaries*, this is not the stock of Winchester-Delaware in the sense of an ownership share of Winchester-Delaware. Rather, the stock of Winchester-Delaware's subsidiaries is properly viewed as an asset of Winchester-Delaware, properly included in a sale of all of Winchester-Delaware's assets.

[3] While Plaintiffs place great significance on the fact that the *creditors* of Winchester-Delaware acquired Western Cartridge stock, the creditors of a company cannot be equated with its shareholders.

Penn. 1990), the Court examined the same asset purchase, and determined that Olin cannot be held liable for the activities of Winchester-Delaware under the de facto merger or mere continuation exceptions, because "[t]here is no such continuity of stock ownership in this case." *Id.* at 1100. The Court explained, "[t]he continuity of shareholder element requires that the shareholders of the predecessor corporation become shareholders of the successor corporation as a result of the sale. The facts of this case demonstrate that because the [Western Cartridge] stock was used to satisfy the debts of [Winchester-Delaware], no such continuity of shareholders ensued from the asset purchase." 745 F. Supp. at 1100-11 & fn.19.

The rationale behind the successor-liability doctrine – to address the situation where shareholders transfer their interest in an indebted corporation to a new corporation, such that the shareholders retain their interest but creditors of the former corporation have no remedy – is simply not present in this case:

> In all of these cases, the pattern is virtually identical: a corporation which is solvent (or if technically insolvent, at least some assets to pay its creditors), transfers its assets in a collusive transaction to another entity in which these same shareholders end up with an equity interest, now unencumbered. The transaction is structured so that the selling corporation is either not paid at all, or is paid with stock which is issued directly to its shareholders. The intended result in all cases is the same, to permit the owners of the selling corporation to avoid paying creditors without losing control of their business. It is this intended result which the successor liability exceptions prevent.

*National Gypsum Co. v. Continental Brands Corp.*, 895 F.Supp. 328, 337-38 (D.Mass. 1995).

---

Plaintiffs assert no legal support for their novel argument that there is an identity of shareholders when the selling corporation's *creditors,* but not its shareholders, receive shares of the buyer's stock. Moreover, while Plaintiffs assert that Kidder Peabody & Company owned stock of Winchester-Delaware before the purchase and of Western Cartridge after the purchase, Kidder Peabody did not receive shares of Western Cartridge in exchange for its Winchester-Delaware stock – rather it received shares of Western Cartridge in its capacity as a creditor of Winchester-Delaware, as payment for the debt owed. By Plaintiffs' own admission, Kidder Peabody received nothing as a result of its status as a former shareholder of Winchester-Delaware.

Here, it is undisputed that Winchester-Delaware was insolvent, its stock valueless. Winchester-Delaware shareholders received nothing in the acquisition. *See* Plaintiffs' Opposition, p. 4, 9. The entire purpose of the transaction was not to defraud creditors but the opposite – to provide consideration with which to pay creditors. As such, neither the elements nor the purpose of the exceptions to the no-successor liability rule apply in this case.

Plaintiffs argue at length that there was a continuation of Winchester-Delaware's *business*. However, any time a company purchases all of the assets of another company, many of the aspects of the day-to-day business will necessarily remain the same. The general no-successor liability rule is addressed to just this situation: the purchase of another company's assets and the continuation of its business activities does <u>not</u> render the purchaser liable for the predecessor company's actions. Rather, the "mere continuation" and "de facto merger" exceptions to the no-successor liability rule address the situation where the purchase of a corporation's assets is more than a sale – where it is a "corporate reorganization." *Pesce*, 1996 U.S. Dist. LEXIS at * 11-12; *Copperthite,* 1992 WL 209660, at *3. Plaintiffs' argument that Winchester-Maryland was a continuation of Winchester-Delaware just because it continued to manufacture firearms at the Winchester-Delaware plant, using some of the same former employees and business name, would completely eviscerate the general rule of no successor liability, and make the exceptions swallow the rule.

Winchester-Maryland brought in an entirely new slate of officers, directors, and management personnel after the asset sale. In Plaintiffs' Opposition, Plaintiffs mention a handful of persons who they allege were management personnel in both companies. Alleging a slight overlap among a handful of people who survived the asset purchase falls far short of alleging "a ***common identity*** of the officers, directors, and stockholders in both the selling and

purchasing corporations." *Pesce*, 1996 U.S. Dist. LEXIS 22244, at *12-13 (emphasis added); *National Grange*, 1994 WL 547747 at * 4.

Further, Western Cartridge was not a shell corporation organized solely for the purpose of purchasing Winchester-Delaware's stocks.[4] To the contrary, Western Cartridge was a longstanding corporation, with vast experience in the firearms business. Western Cartridge manufactured firearm ammunition, and its owners wanted to expand into the manufacturer of firearms as a natural means of "vertical integration," to ensure that there was "a source of outlet for their ammunition products." *See* Jackson Depo. at 40:5-18. The fact that Western Cartridge acquired assets of Winchester-Delaware as a natural extension of the business in which it had engaged for many years shows that this was not a type of corporate "reorganization" but a mere purchase of assets. *See Peglar & Assocs., Inc. v. Professional Indemnity Underwriters Corp.*, 2002 WL 1610037 at * 7 (Conn. Super., June 19, 2002) (buyer was not a "mere continuation" of seller where buyer "was already an established name in the same business" as seller before the purchase and "the arms length transaction constituted an expansion of its already existing" business); *Ricciardello*, 717 F. Supp. at 58 ("because [purchaser] operated its own securities business prior to the transfer of assets, it was not formed for the purpose of reorganizing" seller); *Copperthite*, 1992 WL 209660 at *3.

None of Plaintiffs' factual allegations change the conclusion that there was not a continuation of identity of Winchester-Delaware. Plaintiffs rely heavily on a newspaper article from 1931 in which the author claims that there was not a "ripple of change." *See* Exhibit 17 to Plaintiffs' Statement of Facts, and Plaintiffs' Opposition at pp. 1-3, 9, 14). This newspaper article is inadmissible hearsay, and thus cannot be considered as evidence in opposition to Olin's

---

[4] Western Cartridge did establish a wholly-owned subsidiary, Winchester-Maryland, for the purposes of structuring this sale. However, Western Cartridge has never argued that it is not liable for Winchester-Maryland's liabilities.

Motion for Partial Summary Judgment.[5] Even if it were admissible, the article does not support the argument that there was no "change" in ownership or management. Rather, the article appears to assure the people of New Haven that the plant will continue operating and the plant workers will not lose their jobs. As Olin explained, "the labor force was here, local, and they used the labor force that was available." *See* Jackson Depo. at 100:8-9. That a corporation that purchases a manufacturing plant and retains its low-level employees, who live locally and have experience at the plant, has no bearing on the continuity of ownership question. *See National Grange*, 1994 WL 547747 at * 4.

Plaintiffs also put great weight on their allegation that Winchester-Maryland purchased Winchester-Delaware's "goodwill" and utilized its business name. *See* Plaintiffs' Opposition, pp. 2-4, 10, 15). Once again, this allegation has no bearing on whether there was a continuation of ownership among the two entities. While Courts have cited goodwill in connection with the so-called "product line" exception – a test which, Olin has shown, is inapplicable in this case – the alleged purchase of goodwill is not a factor considered by courts in connection with the mere continuation or de facto merger exception.

Plaintiffs' argument that Winchester-Delaware was "nothing more than a corporate shell" after the transaction is similarly misplaced. *See* Plaintiffs' Opposition, p. 20. Winchester-Delaware remained intact as a separate corporation until 1935, when the Governor of Delaware voided its charter. Where the selling corporation continues to exist, there can be no successor liability – regardless of the extent of the selling corporation's business after the sale. *See Peglar*,

---

[5] *See Tyson v. Willauer*, 290 F. Supp.2d 278, fn 5 (D. Conn. 2003) (newspaper articles offered to show the truth of the matters asserted therein are hearsay and inadmissible under FRE Rule 801(c), and thus are not properly considered in opposition to a motion for summary judgment); *see also Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 746(2nd Cir. 1998) ("On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial.")

2002 WL 1610037 at * 7 (no successor liability where seller "ceased engaging in any business activities except to accept payments due under the sale"); *Cargo Partner*, 207 F. Supp.2d at 95 & fn. 10 (the mere continuation rule "requires actual dissolution of the seller . . . An allegation that the seller has become a mere shell is not sufficient").

In sum, because there was no continuity of the corporate entity of Winchester-Delaware, the de facto merger and mere continuation exceptions do not apply, and under the no-successor liability rule Olin is not liable for the actions of Winchester-Delaware.

### B. The Product Line Exception Is Not Applicable

Olin cannot be liable for the activities of Winchester-Delaware under the "product-line" exception. Neither the Connecticut Supreme Court nor any appellate court of Connecticut has ever adopted the product line exception, and the U.S. District Court for the District of Connecticut expressly found that "the Connecticut Supreme Court would not extend the law to recognize this exception." *Pesce v. Overhead Door Corp.*, 1998 U.S. Dist. LEXIS 20665 at * 5 (D. Conn., November 18, 1998). All of the cases cited in Plaintiffs' Opposition which purport to create this new rule of law are lower court cases, which have never been approved by any appellate court in Connecticut, much less the Connecticut Supreme Court. The majority of courts to have considered this exception have declined to apply it. *See Pesce*, 1998 U.S. Dist. LEXIS 20665 at * 10 ("The overwhelming majority of state courts have expressly declined to endorse this theory of liability"). The Court should decline to create a new rule of law which has never received sanction from any Connecticut appellate court.

Those states which have adopted the product line exception have uniformly limited its reach to the product liability context. No Connecticut court has ever applied the product line exception outside of the product liability context. Plaintiffs claim that one unpublished Superior

Court opinion, *Piaser v. Cohen*, No. CV 950149192S, 1997 WL 435841 (Conn. Super. Ct. July 21, 1997), applied the product line exception to non-product liability cases. *Piaser*, a lawsuit for breach of an employment agreement, does *not* apply the product line exception. In *Piaser*, the court expressly cited the four traditional exceptions to the no successor liability rule set forth in *Ricciardello* and denied defendant's motion to strike upon a finding that defendant impliedly assumed the obligations of the selling corporation. *Id.* at *1-2. In dicta, the court merely quoted the product line exception language from *Copperthite v. Pytlik*, No. 59053, 1992 WL 209660 (Conn. Super. Ct. Aug. 25, 1992), ***a product liability action***. The court did not apply the product line exception to the facts of the case, nor did it undertake any analysis of the product line exception. Plaintiffs also allege that *Water Pollution Control Authority v. Commissioner of Labor,* 1992 WL 201922, applies the doctrine of successor liability to the environmental area – but *Water Pollution* does not even discuss, much less apply, the product line exception.

While Plaintiffs cite *Pastorick v. Lyn-Lad Truck Racks, Inc.*, 1999 WL 608674 (Conn. Super. Aug. 3, 1999) for the proposition that "policy reasons" support the application of the product line exception, the very excerpt quoted by Plaintiffs demonstrates that the policy behind the product rule is to compensate "an injured consumer" through principles of "strict liability." *Pastorick*, 1999 WL 608674 at * 2, quoted in Plaintiffs' Opposition, at p. 26. *Ramirez*, on which Plaintiffs rely, is also limited to strict liability for ***"injuries resulting from defective products."*** *Ramirez*, 431 A.2d at 822 (emphasis added).

In their response, Plaintiffs can only cite to a line of cases from New Jersey, which depart from this uniform rule. The New Jersey cases are not binding upon this Court and should not be followed, especially when they depart from the rule followed by every other state which applies the product line exception – including California, the state that created the product line

exception. *See Ray v. Alad Corporation*, 560 P.2d 3, 8 (Cal. 1977).

Therefore, as a matter of law, the product line exception simply does not apply to this case. As such, Plaintiffs' argument that the elements of the product line exception have been met, and the facts they allege in support of this argument, are irrelevant. Accordingly, there are no material facts in dispute, and this Court can determine the applicability of this exception as a matter of law on summary judgment.

## II. Plaintiffs' Lawsuit Is Foreclosed By the District Court's Injunctions.

The court's injunction in the Decree Confirming, which was entered *after* the Final Decree, contains no exception for claims accruing after the date of the Decree. *See* Olin's Memorandum, p. 8; Decree Confirming, Exhibit B to Olin's Statement of Facts, at p. 23-24. The Decree Confirming, which was entered at a later point in time, is controlling.

Plaintiffs' argue, without authority, that the language in the Decree Confirming is "limited to claimants, creditors and stockholders as of 1931." *See* Plaintiffs' Opposition, p. 30. The release in the Decree Confirming is not limited to any specific type of creditor, but extends to all future claimants.[6]

Plaintiffs' final argument – that the sale of assets occurred in a bankruptcy proceeding and should not have a per se preclusive effect on future claims against Olin – is misplaced. It relies on a series of cases under the current Bankruptcy Code. The 1931 asset sale occurred under the previous Bankruptcy Act, with a different set of rules and provisions.

## CONCLUSION

For the foregoing reasons, as well as those set forth In Olin's Memorandum, Olin

---

[6] The Court in *Tracey* held that the injunction in the *Final Decree* did not bar plaintiff's claims because "The *Final Decree* specifically exempts from the injunction 'any claims which may accrue after the entry of this decree." 745 F. Supp. at 1103 (emphasis added). The Court in *Tracey* failed to even consider the language of the Decree Confirming and, as such, should not be followed on this point.

respectfully requests that the Court enter an order that Olin is not liable, as a matter of law, for any waste disposed by Winchester-Delaware prior to December 22, 1931.

Respectfully Submitted,

HUSCH & EPPENBERGER, LLC

By: _____
Michael H. Wetmore (ct24899)
Joel B. Samson (ct24898)
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone: 314-480-1500
Fax: 314-480-1505
michael.wetmore@huscch.com
joel.samson@husch.com

and

BROWN RUDNICK BERLACK ISRAELS LLP
Mark Baldwin
185 Asylum St.
CityPlace I, 38th Floor
Hartford, CT  06103
Telephone: 860-509-6500
Fax: 860-509-6501
mbaldwin@brbilaw.com

*Attorneys for Defendant Olin Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 15th day of April 2005, by facsimile transmission and first class mail, postage prepaid to:

Neil T. Leifer, Esq.
David C. Strouss, Esq.
Allyson S. Hauck, Esq.
Thornton & Naumes L.L.P.
100 Summer Street, 30th Floor
Boston, Massachusetts  02110
Telephone:  (617) 720-1333
Facsimile:   (618) 720-2445
nleifer@tenlaw.com
dstrouss@tenlaw.com
aHauck@tenlaw.com

Monte E. Frank, Esq.
Cohen and Wolf, PC
158 Deer Hill Avenue
Danbury, CT  06810
Telephone: (203) 367-6202
Facsimile:  (203) 791-8149
mfrank@cohenandwolf.com

David B. Zabel, Esq.
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, Connecticut  06604
Telephone: (203) 368-0211
Facsimile: (203) 394-9901
dzabel@cohenandwolf.com
mfrank@cohenandwolf.com

Mark Roberts, Esq.
Andrew A. Rainer, Esq.
Jennifer Currie, Esq.
McRoberts, Roberts & Rainer, LLP
101 Merrimac Street
Boston, MA  02114
Telephone: (617) 722-8222
Facsimile: (617) 720-2320
mroberts@mcrobertslaw.com
arainer@mcrobertslaw.com
jcurrie@mcrobertslaw.com

*Attorneys for Plaintiff*

Ann M. Catino, Esq.
Lori Dibella, Esq.
Joseph G. Fortner, Jr., Esq.
Thomas C. Blatchley, Esq.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Telephone:  (860) 522-6103
Facsimile:   (860) 548-0006
catino@halloran-sage.com
dibella@halloran-sage.com
fortner@halloran-sage.com

*Attorneys for Town of Hamden*