UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARENCE R. COLLINS, JR., et al | : | 3:03-CV-945 (CFD) |
| | : | |
| Plaintiffs, | : | |
| VS. | : | |
| | : | |
| OLIN CORPORATION, et al | : | |
| | : | |
| Defendants | : | DECEMBER 1, 2006 |

### PLAINTIFFS' SUPPLEMENTAL MEMORANDUM ON OLIN CORPORATION'S MOTIONS TO DISMISS

By Order dated November 13, 2006, the Court accorded the parties an opportunity to submit supplemental memoranda concerning whether the Court's decision of February 28, 2006 to dismiss claims in this case against defendant Town of Hamden (the "Town" or "Hamden") should affect the resolution of motions to dismiss filed by defendant Olin Corporation ("Olin"). As set forth in their letter to the Court of November 6, 2006, the Plaintiffs believe that Olin is situated differently -- factually and legally -- from the Town, and that the Court was therefore justified in denying all of Olin's motions to dismiss on September 1, 2006 (Document #179).

The Plaintiffs fully briefed Olin's motion to dismiss in the fall of 2003, and rely upon the briefs submitted at that time. In this memorandum, they set forth reasons why the Court's conclusions as to the claims against the Town do not apply to the claims against Olin, and also direct the Court to more recent case authorities that support the denial of Olin's motions to dismiss. Plaintiffs' causes of action are addressed one at a time.[1]

---

[1] Plaintiffs do not separately discuss here their claims for negligence against Olin, because the Court's decision as to the Town of Hamden dismissed the negligence claims against the Town *solely* because of sovereign immunity, which is inapplicable to Olin. (Document #163, at 2.)

1

**I.    Nuisance**

In its February 28, 2006 Ruling on Defendant Town of Hamden's Motion to Dismiss and Motion for Partial Summary Judgment (the "Hamden Decision"), the Court found that Plaintiffs' claims for public and private nuisance could not lie against the Town, and granted the Town's motion to dismiss those claims (Document #163, at 27-28). Olin argues that the reasons underlying the dismissal of the nuisance claims against the Town apply with equal force to the nuisance claims against Olin, and that therefore the claims against Olin should also be dismissed. In fact, however, the factual and legal basis for dismissing the nuisance claims against the Town do *not* apply to Olin.[2]

In its November 2, 2006 letter to the Court, Olin did not distinguish between public and private nuisance. However, the Court recognized that distinction in its February 28, 2006 Ruling, and that distinction is well founded in Connecticut law. *Pestey* v. *Cushman*, 259 Conn. 345, 355, 788 A.2d 496 (2002). Plaintiffs will therefore discuss the claims separately.

A.  Public Nuisance.

The Court's ruling that Plaintiffs did not assert a viable claim of *public* nuisance against the Town was based on Connecticut law that a nuisance claim against a municipality "contains at least two additional requirements" not required for a nuisance claim against a non-municipal entity like Olin – the nuisance must be created intentionally and by some positive act of the municipality. *Elliot* v. *City of Waterbury*, 245 Conn. 385, 421, 715 A.2d 27 (1998); *Keeney* v. *Old Saybrook*, 237 Conn. 135, 164, 676 A.2d 795 (1996).  This Court dismissed Plaintiffs' public nuisance claim against Hamden because it found that Plaintiffs "failed to allege that

---

[2] The Court dismissed the claims against the Town only after a lengthy analysis of disputed legal principles. Given the different legal and factual position of Olin, and the required presumption in favor of the non-moving party on a motion to dismiss, the Court was warranted in reaching a different conclusion as to Olin.

2

Hamden permitted the dumping of industrial waste for the purpose of causing a nuisance or with the knowledge or substantial certainty that one would result from its conduct." (Document 163, at 29). This holding was based specifically on the additional requirements of nuisance applicable to municipalities. With respect to a non-municipal entity like Olin, however, there was and is no requirement that the Plaintiffs allege intentional conduct, and thus this is not grounds for dismissal of the Plaintiffs' nuisance claims against Olin.

Olin argues that the Plaintiffs' public nuisance claims against it should still be dismissed because the nuisance about which the Plaintiffs complain did not originate on a nearby property (different from their own). With respect to the Plaintiffs' claim of public nuisance, however, there has *never* been a requirement that the nuisance emanate from a nearby property. Unlike a private nuisance, a public nuisance is "an obstruction to public rights, that is, the rights enjoyed by citizens as part of the public." *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 131-132 (Conn. 2001). Because it interferes with public health and safety (and not just a nearby private property), pollution is the paradigm of public nuisance. *Id.*, *quoting Nolan v. New Britain*, 69 Conn. 668, 678 (1897); *see also* Restatement (Second) Torts, § 821B(2). Indeed, it has been repeatedly held that the disposal of hazardous waste into the environment that unreasonably interferes with a plaintiff's comfort and safety is a public nuisance. *State v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir.1985); *B&D Molded Products, Inc. v. Vitek Research Corp.*, 1998 WL 551943 (Conn. Super. Aug. 17, 1998) (Corradino, J.); *Lewis v. General Electric Co.*, 37 F.Supp.2d 55, 61 (D. Mass. 1999); *Corvello v. New England Gas Company, Inc.*, 05-cv-0021-T (D.R.I. Nov. 3, 2006) (copy attached).[3] In this case, the Plaintiffs have alleged that Olin's

---

[3] As discussed in greater detail below, the facts of these last two cases -- one from Massachusetts and one from Rhode Island -- are directly analogous to the facts of this case. In both cases, corporate defendants disposed of contaminated fill for many years in and around the properties of the plaintiffs, who purchased the properties many

3

disposal of hazardous waste on and around their properties in the Newhall section unreasonably interfered with their comfort and safety, Amended Complaint ¶31, 35, 37, 38, 105, and thus, the Court was warranted in holding that the Plaintiffs have properly stated a claim for public nuisance against Olin.

> B.  Private Nuisance.

The Court was also warranted in reaching a different conclusion concerning the Plaintiffs' claims for private nuisance against Olin than it reached for the Town.  This is because the facts alleged against Olin in the Amended Complaint differ from the facts alleged against the Town.  In particular, the Plaintiffs did not allege in the Amended Complaint that the Town owned a nearby property that was the source of the contamination that harmed them.  (Document #163, at 32.)  By contrast, the Amended Complaint *did* make such an allegation against Olin. The Amended Complaint alleged that Olin owned a nearby facility, just down Winchester Avenue in New Haven, which generated the contaminated waste that was deposited in the Newhall section.  Amended Complaint ¶¶ 8, 34, 102.  It was this contamination, originating from Olin's property, not from the Plaintiffs' own properties, that created the private nuisance of which the Plaintiffs complain.

Unlike the Town which neither generated nor controlled the conditions creating the nuisance, but contributed to the private nuisance by permitting the disposal of Olin's waste in the Newhall section of Hamden, Olin owned and operated the instrumentality of harm on a nearby parcel -- the Winchester facility in nearby New Haven-- from which the nuisance emanated. Although the Plaintiffs did not allege, and indeed could not have alleged, that the Town "is in

---

years later, and who alleged that the contamination interfered with their comfort and safety.  In both cases, the court found that these facts gave rise to claims for public nuisance.

4

control of a neighboring piece of land from which the alleged nuisance is emanating," this claim was and is made against Olin.

The Amended Complaint plainly alleges that Olin generated and set into motion the waste from activities at the nearby Winchester facility and disposed of it in the Newhall section of Hamden. The offending materials found their way to the Newhall section by trucks. This method of entering the Plaintiffs' property, as opposed to through a pipeline, through the air, or by some other means of dispersal, is a distinction without a difference. There is no reason why dispersal through trucking cannot satisfy this requirement of nuisance. Indeed, the District of Massachusetts denied a motion to dismiss a similar claim for private nuisance in *Lewis v. General Electric Company*, 254 F. Supp. 2d 55 (D. Mass. 2003), in circumstances indistinguishable from the case at bar. In *Lewis*, fill contaminated with PCBs was trucked from the General Electric facility to other properties throughout Pittsfield, Massachusetts.[4] As in *Lewis,* the waste in question emanated from a nearby piece of land controlled by the defendant, which was then was trucked to and disposed on residential property in the plaintiff's neighborhood. For the same reasons that the Court sustained the claim for private nuisance in *Lewis*, this Court should also sustain the claim for private nuisance against Olin. Olin owned a nearby property that produced the waste that was spread in the Newhall neighborhood, and contaminated it.

---

[4] In the case of *Corvello* v. *New England Gas Company, et al*, CA No. 05-221T (November 3, 2006), discussed below, the District of Rhode Island dismissed a claim for private nuisance because it found that trucking hazardous material from the defendant's property did not constitute an allegation that the contamination was caused by the use of that property. However, the *Corvello* court had no difficulty finding that defendant's actions did constitute a public nuisance, because public nuisance consists of a "wrong against the community" that goes beyond property borders. *Id.* at 17.

**II.     Abnormally Dangerous Activity**

As the Court noted in the Hamden Decision, Connecticut courts generally look to the Restatement of Torts and apply the following six factors set forth in Section 520 in assessing whether an activity is ultrahazardous:

   (a) existence of a high degree of risk of some harm to the person, land or chattels of another;

   (b) likelihood that the harm that results from it will be great;

   (c) inability to eliminate the risk by the exercise of reasonable care;

   (d) extent to which the activity is not a matter of common usage;

   (e) inappropriateness of the activity to the place where it carried on; and

   (f) extent to which its value to the community is outweighed by it dangerous attributes.

"Any one of those factors is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand it is not necessary that each of them be present, especially if others weigh heavily." (Document #163, at 48, *quoting Green v. Ensign-Bickford Co.*, 25 Conn. App. 479, 486 (1991))

In the Hamden Decision, the Court discussed three of the Restatement factors that guided its decision to allow the Town's motion to dismiss on the Plaintiffs' strict liability claim against it. Those three factors do *not* apply to Olin as they did to the Town. This is because, most significantly, Olin, not the Town, generated the hazardous waste at issue and knew of waste's hazardous constituents. *See* Amended Complaint, ¶¶ 23-24, and 102.

The first Restatement factor analyzed in the Hamden Decision was the "existence of a high degree of risk of some harm to the person, land or chattels of another." The Court noted this factor has been interpreted to require that the risk of the activity must have been known at the time it was undertaken. Applying this rule to the Town, the Court found that there was no

6

allegation that the Town knew in the first half of the twentieth century that Olin's hazardous waste would probably cause harm to future homeowners. (Document #163, at 50-51.) However, Olin, as the generator of the hazardous waste, had reason to know that toxins like lead and arsenic were in the waste, and thus that there was "a high degree of risk of some harm to the person, land or chattels of others."[5] *See* Amended Complaint, ¶ 84; *Interfaith Community Organization v. Honeywell International, Inc.*, 263 F.Supp.2d 796, 852 (D.N.J. 2003) (listing a series of cases in which companies' knowledge of injuries from exposure to chemicals their employees were handling was held to support the imposition of strict liability when those chemicals became part of contaminated fill).

Second, Olin and the Town were differently situated with respect to the "inability to eliminate the risk by the exercise of reasonable care." The Town could have completely forbidden the disposal of Olin's hazardous waste within its borders. However, Olin had to dispose of the waste somewhere. Although it certainly could have reduced the risks, Olin had no ability to *eliminate* the risks associated with this waste. *See State v. Ventron*, 468 A.2d 150, 160 (N.J. 1983) (holding that the person who has toxic waste to dispose carries an "unavoidable risk of harm" and the work must be "carried on at his peril, rather than at the expense of the innocent person who suffers harm as a result of it"), *citing* Restatement (Second) Torts, § 520, comment h; *Schwartzman, Inc. v. Atchison, Topeka & Sante Fe Railway, Co.*, 842 F.Supp. 475, 478 (D.N.M. 1993) (chemical by-products and toxic

---

[5] As posited in the *Affidavit of James D. Sargent, M.D. in Support of Plaintiffs' Opposition to Defendant Town of Hamden's Motion for Partial Summary Judgment*, the toxic effects of lead and arsenic exposure to humans was known in the first half of the twentieth century. Although the Sargent Affidavit is not before the Court on a motion to dismiss, the Court is required, on such a motion, to draw all inferences in favor of the non-moving party. Plaintiffs ask the Court to infer, consistent with the Sargent Affidavit, that the risks of dumping lead and arsenic were known to Olin at the time of the dumping at issue here. At a minimum, if there is a factual question about this, this is not an issue that should be decided on a motion to dismiss.

wastes resulting from wood treatment and preservation operations presented risks that could not have been eliminated by reasonable care).

Finally, Olin and the Town were differently situated with respect to the appropriateness of the hazardous waste disposal to the place where it was carried on. The Plaintiffs have alleged that both Olin and the Town knew that the place where the disposal occurred (the Newhall neighborhood) was being developed for residential purposes, and that the neighborhood became increasingly residential over the period of the dumping. *See* Amended Complaint, ¶¶ 21 and 26. However, Olin, unlike the Town, knew of the toxicity of the waste being disposed, and therefore that the waste was inappropriate for the place where it was being put. *See* Amended Complaint, ¶ 84. In *Jersey City Redevelopment Authority v. PPG Industries, Inc*., a New Jersey federal district court case, the court held the defendant PPG Industries strictly liable for generating fill containing hazardous waste that was then utilized in residential areas. 1987 WL 54410, *6 (D.N.J. Sept. 3, 1987) (Sarokin, J.). In analyzing the "inappropriate to the place where it was carried on" Restatement factor, the court considered it significant that the defendant knew the hazardous nature of its fill and that it was foreseeable to the defendant that the fill would be utilized in residential areas. *See also Interfaith Community Organization v. Honeywell International, Inc.*, 263 F.Supp.2d 796, 852 (D.N.J. 2003) (to the same effect, and noting the defendant's knowledge of health hazards in the first half of the twentieth century). Similarly, in this case, Olin knew at the time that the fill it was disposing of was hazardous and that it was being disposed of in a place that was being gradually built with houses.

All three of these factors apply differently to Olin than to the Town and support the imposition of strict liability on Olin. Indeed, if the Court is in any doubt, the Plaintiffs are entitled, at a minimum, to present these issues on a full factual record, after the completion of

discovery. *See Corvello v. New England Gas Co., Inc.*, 05-CV-00221-T (D.R.I. Nov. 3, 2006) (copy attached) (denying dismissal of strict liability claims arising from the disposal of contaminated fill until the development of the factual record as to "exactly what dangers the substances pose, whether that danger was recognizable at the time of the disposition and whether the danger could have been eliminated by the exercise of reasonable care"); *Lutz v. Chromatex, Inc.*, 718 F.Supp. 413, 430 (M.D. Pa. 1989) (decision as to whether storage, generation and disposal of hazardous waste constitutes an ultrahazardous activity better left for summary judgment motion following the development of a more complete record). Dismissal is not warranted under Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Weiss v. Witcott*, 966 F.2d 109, 112 (2d Cir. 1992).

### III.    Infliction of Emotional Distress

The Court dismissed the Plaintiffs' claims for infliction of emotional distress against the Town, finding that the Town could not have known that the dumping of waste in the Newhall section was likely to lead to the Plaintiffs' emotional distress and was not "extreme and outrageous." (Document #163, at 34-35.) The same was not and is not true for Olin. The contaminated waste in question originated with Olin, not the Town. Amended Complaint ¶¶ 23, 24, 102. Because the waste was Olin's, Olin, unlike the Town, *did* have reason to know that toxins like lead and arsenic were in the waste, and that dumping such waste on property that was being developed could jeopardize future property owners. *Id.*, ¶¶ 25, 26, 38.

Thus, unlike the Town, Olin could have known that its dumping of highly toxic waste in the Newhall section would lead to the emotional distress of future landowners. Also, knowing that its waste was toxic, and knowing that the land on which the waste was being dumped was

9

being developed with private homes, Olin, unlike the Town, may fairly be said to have engaged in outrageous conduct. Applying the test set out in *Appleton v. Board of Education*, 254 Conn. 205, 210-11 (2000), telling an "average member" of the Newhall community that Olin knowingly placed toxic waste on property in the neighborhood that it knew was being developed for homes would certainly lead that person to exclaim, "Outrageous!"

On this claim, as with the claim of strict liability, if the Court is in doubt as to what Olin knew and when, the claim is best resolved on a full factual record, after the completion of discovery.

### IV.     Connecticut Environmental Protection Act Claims

In the Hamden Decision (Document #163, at 16-17), the Court dismissed the Plaintiffs' claims against the Town for injunctive relief under the Connecticut Environmental Protection Act ("CEPA"), on the grounds that the Connecticut Department of Environmental Protection ("DEP") has primary jurisdiction over the relief sought by those claims. In reaching this conclusion, the Court noted that it had discretion to either hold those claims in abeyance pending the work of the DEP or to dismiss them without prejudice. Olin argues that the claims against it under the CEPA should be dismissed, as they were against the Town. There are several reasons why that is not so.

First of all, under the Consent Decree entered into by DEP with respect to the Newhall neighborhood, it is *Olin*, not the Town, that bears primary responsibility for investigation and remediation of the private properties in that neighborhood, including the properties of the Plaintiffs. *See* Consent Decree, attached to Amended Complaint, at 15. The fact that Olin, not the Town, has this responsibility provides an important reason why the Court should hold the

claims against Olin open, as opposed to dismissing them without prejudice, as was done with the Town.

Another relevant distinction between Olin and the Town relates to timing. Unlike the situation presented three years ago (when the motions to dismiss were filed), and even unlike the situation presented in February of this year (when the Court issued the Hamden Decision), the DEP is on the verge now of issuing a decision concerning the clean-up plan to be implemented for the Plaintiffs and the Newhall neighborhood. The Commissioner of DEP issued a recommended decision on August 17, 2006, and the comment period on that recommended decision closed on November 13, 2006. *See* [http://www.newhallinfo.org/latestdevelopments.html](http://www.newhallinfo.org/latestdevelopments.html). If any issues are to be raised about the cleanup that Olin proposes to do in Newhall, those issues will be raised shortly. There would be little point to dismiss the CEPA claims now without prejudice, only to have them reasserted in a matter of weeks.

Third, the plaintiffs continue to have claims for damages against Olin under the Connecticut hazardous waste law, Conn. Gen. Stat. §22a-452, that the Plaintiffs did and do not have against the Town. The Court has also ruled that the Plaintiffs may pursue common law claims against Olin, whereas it has dismissed all of the Plaintiffs' common law claims against the Town. The fact that Olin, unlike the Town, otherwise remains a defendant to this suit provides a substantial reason why the Court did and should deal differently with the claims for injunctive relief against Olin.

Staying the claims against Olin, as opposed to dismissing them, is also consistent with the most recent case authority on the subject. *See Liss v. Milford Partners*, 2005 Conn. Super. LEXIS 1106, Superior Court of Connecticut, Judicial District of Tolland, Complex Litigation

11

Docket at Rockville (April 22, 2005) (Sferrazza, J.). In *Liss v. Milford Partners*, the defendants moved to dismiss the plaintiff's CEPA claim, urging the court to apply the doctrine of primary jurisdiction. *Id.* at *1-3. The Court found the doctrine applicable and stayed the proceedings on the CEPA claim pending completion of the DEP's action, but did not dismiss the claim. *Id.* at *4-5.

Whether it holds the claims for injunctive relief against Olin fully open or in abeyance pending further action by DEP, there is no reason why the Court should dismiss these claims, given Olin's responsibility for remediation under the Consent Decree, given the imminence of a remedy decision, and given the pendency of the other claims against Olin.

V.    **The Most Analogous Caselaw**

Even if this Court were to change its decision of September 1 and dismiss some of the Plaintiffs' claims against Olin, the Plaintiffs urge the Court to follow the decisions in the most closely analogous cases and sustain Plaintiffs' claims for negligence, nuisance and strict liability. Two cases, one from the U.S. District Court in Rhode Island, and one from the U.S. District Court in Massachusetts, involved residential properties that were contaminated many years ago when fill containing hazardous substances was trucked there.

In the first case, *Corvello v. New England Gas Co., Inc.*, 05-CV-00221-T (D.R.I. Nov. 3, 2006)(copy attached), a group of 60 residential property owners claimed that fill containing hazardous coal gasification waste, produced by the defendant New England Gas Co., was trucked to and deposited on their properties approximately 50 years ago. The multi-count complaint asserted claims for negligence, gross negligence, violation of R.I. General Laws § 23-19.1-22 (the Rhode Island environmental cleanup statute), strict liability, infliction of emotional distress, private nuisance, and public nuisance. *Id.* at 2. Like Olin, New England Gas Co.

12

moved to dismiss all of the plaintiffs' claims. The *Corvello* court analyzed each claim and allowed the plaintiffs' negligence, state cleanup statute, strict liability, and public nuisance claims to survive the defendants' motion to dismiss.

In upholding the plaintiffs' public nuisance claim, the court ruled that the trucking of contaminated fill from the defendant's plant to the plaintiffs' neighborhood constituted "a wrong against the community" that "interfered with a right common to the general public" and that the plaintiff property owners suffered "special damages" -- namely, property damage or loss of use and enjoyment of their properties. *Id.* at p. 17-20. The Court also denied the motion to dismiss the plaintiffs' strict liability claims, holding that the plaintiffs were entitled to develop the facts as to "exactly what dangers the [hazardous] substances pose, whether the danger was recognizable at the time of disposition and whether the danger could have been eliminated by the exercise of reasonable care." *Id.* at p. 12-13.

In *Lewis v. General Electric Co.*, 37 F.Supp.2d 55, 57 (D.Mass. 1999), a residential property owner brought suit against General Electric, alleging that the company had, for many years, deposited fill contaminated with PCBs in the area of the plaintiff's home. As here, the plaintiff brought claims for negligence, strict liability, state statutory law, and public and private nuisance. Acting on the defendant's motion to dismiss, the Court sustained the plaintiff's public and private nuisance claims. *Id.* at 61. The Court held that General Electric's contamination of the area near the plaintiff's home constituted an interference with public health and the environment, and the plaintiff's inability to sell her property represented special damage. *Id.* Likewise, the Court sustained the plaintiff's private nuisance claim, holding that the contamination of the neighborhood constituted an interference with the plaintiff's use and

enjoyment of her land, because her property value was diminished and she feared for her children's health and safety. *Id.*

Encompassed in both decisions is a recognition of the situation faced by an innocent property owner, who comes to learn that his or her property was filled years ago with hazardous material and who, through no fault of his or her own, must now deal with a contaminated property, an intrusive clean-up, and a loss in property value. Weighed against the situation of that innocent landowner is the situation of a corporation that, for many years, profited from the inexpensive dumping of its most toxic materials, and now is being asked to bear the external costs imposed on others. The law must provide a remedy for that innocent landowner, and as the *Corvello* and *Lewis* courts recognized, that remedy lies in the form of common law claims for negligence, nuisance and strict liability. The Plaintiffs here are entitled to nothing less.

**Conclusion**

In its ruling of September 1, 2006, the Court properly denied all of Olin's motions to dismiss.[6] The Plaintiffs respectfully request that the Court let that decision stand, and allow them to complete discovery on their claims against Olin.

                THE PLAINTIFFS

By   /s/ Andrew Rainer
    Mark Roberts, Esq.
    mroberts@mcrobertslaw.com
    Andrew Rainer, Esq.
    Federal Bar #ct25938
    a.rainer@mcrobertslaw.com
    McRoberts, Roberts & Rainer LLP
    53 State Street
    Boston, Massachusetts 02109
    Tele: (617) 722-8222
    Fax:  (617) 720-2320

    Monte E. Frank, Esq. ct13666
    mfrank@cohenandwolf.com
    Adam Blank
    ablank@cohenandwolf.com
    Cohen and Wolf, PC
    1115 Broad Street
    Bridgeport, Connecticut 06604
    Tele:  (203) 368-0211
    Fax:   (203) 394-9901

---

[6] As Plaintiffs pointed out in their November 6, 2006 Letter to the Court, Local Rule 7(c) gave Olin 10 days to move to reconsider that decision. It did not do so and instead asked the Court to reconsider these issues almost two months later.

                                Neil T. Leifer, Esq.
                                nleifer@tenlaw.com
                                David C. Strouss, Esq.
                                dstrouss@tenlaw.com
                                Thornton & Naumes L.L.P
                                100 Summer Street, 30th Floor
                                Boston, Massachusetts 02110
                                Tele: (617) 720-1333
                                Fax:  (617) 720-2445


## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 1st day of December, 2006, a copy of the foregoing was served electronically and by first class U.S. mail, postage prepaid, upon all counsel of record, as follows:


Michael H. Wetmore, Esq.
Joel B. Samson, Esq.
Husch & Eppenberger, LLC
190 Carondelet Plz Ste 600
Saint Louis MO 63105-3433

Sandra K. Davis, Esq.
Mark S. Baldwin, Esq.
Brown Rudnick Berlack Israels LLP
185 Asylum St Fl 38
Hartford CT 06103-3408

Ann M. Catino, Esq.
Joseph Fortner, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103


                                /s/ Andrew Rainer
                                Andrew Rainer