UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CLARENCE R. COLLINS, JR., et al,  :  3:03-CV-945 (CFD)
:
                Plaintiffs,  :
VS.  :
:
OLIN CORPORATION, et al,  :
:
                Defendants,  :

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF OLIN CORPORATION'S MOTION(S) TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

COMES NOW Defendant Olin Corporation, by and through its undersigned attorneys, and pursuant to this Court's docket order dated November 13, 2006, hereby submits this Supplemental Memorandum addressing "the applicability of the Court's ruling on the Town's motion to dismiss to Olin's motions to dismiss." See Nov. 13, 2006 Docket Order (Doc #188).

### Introduction

The Court's prior rulings on Hamden's motion to dismiss (Doc #163) are equally applicable to Olin's motion to dismiss[1] with perhaps one exception – public nuisance – which is discussed in more detail below. The reason is because the Court's prior rulings of law are not dependent on the status of Hamden as the Defendant or based on an exclusive argument raised by Hamden. Indeed, Hamden and Olin set forth similar if not identical arguments in their respective motions to dismiss Plaintiffs' claims for injunctive relief, strict liability, emotional distress and private nuisance. With respect to these counts, the Court made specific findings based on the insufficiency of the Plaintiffs' allegations or general legal principles such as the

---

[1] Although Olin filed separate motions addressing different counts within the Amended Complaint ("Complaint"), for ease of reference Olin refers to its motions as a single motion to dismiss.

2524695.01

primary jurisdiction doctrine. Specifically, the Court determined that: (1) the Plaintiffs' claims of injunctive relief properly lie before the Connecticut Department of Environmental Protection (the "DEP") pursuant to the primary jurisdiction doctrine (Doc #163, p. 13-17), (2) Plaintiffs' allegations regarding the handling, disposal and/or release of hazardous materials fail to state a claim for strict liability (Doc #163, p. 23-26), (3) Plaintiffs fail to state a claim for private nuisance because any alleged nuisance emanates from Plaintiffs' own properties and not a neighboring piece of land over which Defendants control (Doc #163, p. 31-32), and (4) Plaintiffs' allegations for emotional distress "set forth only a claim for intentional infliction of emotional distress" which fails because extreme and outrageous conduct has not and cannot be established (Doc #163, p. 33-35).

Plaintiffs claim that these rulings are inapplicable to Olin's motion to dismiss because (1) the Court previously denied Olin's motion and any reconsideration of such decision is late and/or improper, and (2) a different result on Olin's motion to dismiss is justified. (Doc #187, p. 1-2). Neither is true.

Plaintiffs' first argument is nothing but a hyper-technical reading of the Court's prior rulings on Olin's motion to dismiss (Doc #139 and #179, respectively) in an attempt to avoid the explicit findings of the Court which are dually applicable to both Defendants. Olin does not believe that the Court reached Olin's motion with respect to Plaintiffs' injunctive relief, strict liability, emotional distress and nuisance claims because if it had, it would have ruled in the same manner as it did on Hamden's motion. To suggest otherwise, as Plaintiffs do, is to advocate for the rendering of inconsistent opinions. Olin does not believe this Court intended such a result, as the avoidance of inconsistent rulings was the very basis for the Court's reliance on the primary jurisdiction doctrine and decision to dismiss Plaintiffs' injunctive claims. (Doc. #163, p. 14).

Olin believes that if the Court *did* reach Olin's arguments on these claims and denied them, such ruling was inadvertent and the interests of justice warrant revisiting such opinion. And contrary to Plaintiffs' argument, revising or modifying any earlier denial of Olin's motion is neither untimely nor improper, as revisiting an interlocutory order is clearly within the Court's discretion pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and the law of the case doctrine.  See Grace v. Rosenstock, 228 F.3d 40, 51 (2nd Cir. 2000) ("All interlocutory orders remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims to which they pertain.") (citing, among others, U.S. v. LoRusso, 695 F.2d 45, 53 (2nd Cir.1982) ("whether the case *sub judice* be civil or criminal[,] so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so" (internal quotation marks omitted)), cert. denied, 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983)).

Plaintiffs' second argument – that a different result or standard should apply to Olin – not only ignores the Court's explicit rulings,[2] but turns on their head the doctrines of the law of the case and issue preclusion.  The Court determined certain issues as a matter of law – *e.g.*, that primary jurisdiction applied and that Plaintiffs failed to state cognizable claims under Connecticut law.  These findings – thoughtfully and meticulously set out by the Court – represent the law of the case and govern this litigation.  If these legal rulings do not apply to Olin with equal force, as Plaintiffs contend, fairness principles such as the uniformity and consistency of opinions are thwarted.  For instance, Plaintiffs' request that the Court's prior ruling not apply to Olin results in the DEP's resolution of the Plaintiffs' injunctive relief claims against Hamden

---

[2] For instance, the Court clearly and unambiguously includes Olin in its discussion and analysis of application of the primary jurisdiction doctrine, as more fully discussed in Section A of this Memorandum.

2524695.01                                  3

while this Court resolves the same claims against Olin. Plaintiffs' approach of a dual standard or differing result between the Defendants creates inconsistent rulings in this case, which is not and cannot be "justified," and is a result the Court explicitly stated it wants to avoid.

Plaintiffs' second argument also fails because the Court's findings do not support application of a different result for each Defendant. Unlike the Court's ruling on the public nuisance claim (Doc #163, p. 27-29), <u>none</u> of the findings mentioned above is dependant on whether the claim is made against Olin or Hamden.[3] Because Plaintiffs' allegations against Hamden are identical to the allegations against Olin, the Court's prior findings are equally applicable to Olin.

## Argument

The doctrine of the law of the case "posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." Aramony v. United Way of Am., 254 F.3d 403, 410 (2nd Cir. 2001) (citation omitted). "Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication. Id. (citation omitted). Underlying the doctrine are policy considerations such as favoring putting an end to litigation, saving judicial time, and bringing certainty to legal relations. Rezzonico v. H&R Block, Inc., 182 F.3d 144, 148 (2nd Cir. 1999) (citing Comm'r v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948)).

The doctrine is similar to issue preclusion "in that it limits relitigation of an issue once it has been decided." Id. And similar to the law of the case doctrine, Connecticut law allows for

---

[3] The Court granted Hamden's motion to dismiss the public nuisance claim because Plaintiffs failed to allege at least one of two additional requirements for a public nuisance claim against a municipality, *i.e.* intent. (Doc #163, p. 27-29). Although this particular finding cannot be applied to Olin, Olin believes that Plaintiffs' public nuisance claim against it nonetheless fails for the reasons set forth in the Court's prior ruling regarding the private nuisance claim, discussed in more detail below.

the application of issue preclusion, or collateral estoppel, in the same case. Miller v. Weinstein, 2004 WL 1245760 at *2 (Conn. Super. May 18, 2004) (citing CFM of CT, Inc. v. Chowdhury, 239 Conn. 375, 397 (1996)). In other words, once an issue has been determined as a matter of law in the case, this ruling should be given conclusive effect throughout the rest of the litigation. Id.

### A. Injunctive Relief/Violation of Environmental Protection Act of 1971 (Count V)

Plaintiffs' allegations against Olin for injunctive relief match nearly word for word their allegations against Hamden for injunctive relief. (Complaint, p. 27-28).[4] Hamden argued that Plaintiffs' injunctive relief claim should be dismissed under the doctrine of primary jurisdiction. (Doc #34, p. 7-16). Olin made the same argument in its motion to dismiss. (Doc #73-2, p. 10-18). The Court agreed with Hamden's argument, dismissing Plaintiffs' claim.

That the primary jurisdiction doctrine applies to Plaintiffs' injunctive relief claims is a rule of law decided by the Court and it should continue to govern in this case. Nothing in the Court's opinion suggests that it intended to distinguish between the two Defendants for purposes of application of the doctrine. Indeed, the Court's opinion explicitly and repeatedly refers to *both* Defendants:

- The plaintiffs seek a broad injunction that would require "*Olin and Hamden* to conduct, on an expedited basis, any and all response actions necessary…" (Doc #163, p. 13);

- [I]f this Court were to issue the broad injunction sought by the plaintiffs, it could create a situation where *Hamden and Olin* may be substantially complying with their obligations under the consent order, and thus free from the threat of injunction or penalty from the DEP, yet *they* may also need to conduct additional or different remedial actions on those same assigned pieces of property pursuant to an injunction issued by this Court….there is no doubt that the issuance of the requested injunction could lead to inconsistent rulings, a situation sought to be avoided by the doctrine of primary jurisdiction. (Doc #163, p. 14);

---

[4] The only difference is inconsequential, *i.e.* Plaintiffs allege that instead of merely disposing or releasing waste into the landfills, Hamden also or alternatively "arranged for" the disposal or release of waste. (Complaint, p. 27-28).

- The *defendants* already are bound by the consent order....Moreover, the obligations placed on the *defendants* by the consent order do not appear to be limited in nature....Consequently, given those factors, the Court finds dismissal without prejudice is the proper disposition of the plaintiffs' request*s* for injunctive relief. (Doc #163, p. 17).

Plaintiffs' argument that a different standard or result should apply to Olin ignores the Court's clear and unambiguous inclusion of Olin in its analysis of the primary jurisdiction doctrine. By explicit terms, or at the very least by necessary implication, the Court previously recognized that there was no "justified" reason for treating Olin differently on this issue. Plaintiffs' suggestion that a different result for Olin now is warranted contradicts the Court's explicit findings above and the reasoning behind them – the avoidance of inconsistent rulings. (Doc #163, p. 14). Unlike Plaintiffs, Olin believes the Court made a rule of law – that the primary jurisdiction doctrine bars the Plaintiffs' injunctive claims – which applies with equal force to dismiss Plaintiffs' injunctive claims against Olin.

### B. Strict Liability (Count IX)

Like their injunctive relief claim, Plaintiffs' allegations of strict liability against Olin are nearly identical to their allegations against Hamden.[5] Hamden and Olin both argued that Plaintiffs' allegations failed to state a claim for strict liability under Connecticut law. The Court agreed, and the legal finding on this issue is equally applicable to Olin.

Specifically, the Court determined that Plaintiffs failed to satisfy the elements of a strict liability claim as set forth in the Restatement of Torts § 520. (Doc #163, p. 23-26). The Court found that Plaintiffs' boilerplate allegations failed to establish the "known risk" aspect of a cause

---

[5] If anything, Plaintiffs' allegations against Hamden are *more specific* than those against Olin. For instance, Plaintiffs allege Hamden knew of the risk of harm associated with its activities because it permitted construction of homes on each successive dump as it was filled. (Complaint, p. 31-32). Such allegations against Olin are noticeably absent.

of action for strict liability and that Plaintiffs' claim was completely devoid of any allegations of the inability to eliminate the risk by the exercise of reasonable care. (Doc #163, p. 24).

Because Plaintiffs' allegations against each Defendant are the same, these findings apply to Olin's motion. Indeed, if Plaintiffs' *more specific* allegations concerning Hamden's knowledge of risk are insufficient to state a cause of action, then by necessary implication Plaintiffs failed to state a cause of action against Olin. Moreover, the Court looked to the consent order from the DEP – which applies to *both* Hamden and Olin – and determined that the landfills were an appropriate activity, and given the understanding at the time, their value to the community was outweighed by their harmful potential. (Doc #163, p. 25). Such finding applies equally to Olin.

At bottom, the Court's finding on Plaintiffs' strict liability claim has everything to do with the insufficiency of Plaintiffs' allegations and nothing to do with a difference between the Defendants or a particular argument made by Hamden. Plaintiffs fail to state a claim for strict liability under Connecticut law, period. The Court's ruling on Hamden's motion applies equally to Olin's motion and therefore Plaintiffs' abnormally dangerous activity/strict liability claim against Olin should be dismissed.

### C. Infliction of Emotional Distress (Count XI)

The allegations in Plaintiffs' emotional distress claim against Olin match word for word their allegations against Hamden. (Complaint, p. 33-34). Based on these allegations, the Court held that Plaintiffs "set forth only a claim for intentional infliction of emotional distress." (Doc #163, p. 33). Nothing in the Court's opinion evidences intent to treat differently Plaintiffs' identical allegations against Olin. Because the Court's finding is based solely on the allegations in Plaintiffs' Complaint and not on anything Defendant-specific, it represents a legal ruling that

necessarily governs the entire litigation. Thus, Count XI against Olin must be limited to an intentional infliction of emotional distress claim.

The Court also determined that Plaintiffs' intentional infliction of emotional distress claim failed because Plaintiffs failed to satisfy the first and second elements – (1) intent to inflict emotional distress and (2) extreme and outrageous conduct. (Doc #163, p. 34). These findings apply equally to Olin.

Plaintiffs argue that a different result for Olin should apply because the waste at issue originated from Olin, not Hamden and therefore "unlike [Hamden], Olin *did* have reason to know that toxins like lead and arsenic were in the waste, and that dumping such waste on property that was being developed could jeopardize future property owners." (Doc #187, p. 2) (Emphasis in original). This argument fails for two reasons. First, the argument improperly incorporates new factual allegations not within the Complaint itself and therefore provides no basis to defeat a motion based on the Complaint.[6] Second, it ignores the Court's reasoning behind its finding.

The Court determined that Plaintiffs failed to establish Hamden's intent to inflict emotional distress because "the Plaintiffs were not living at the landfill sites at the time of the dumping; indeed, the area was not developed and their residences were not constructed until after the dumping on that property was long completed." (Doc #163, p. 34). The Court's decision was not in any way dependant on Hamden's knowledge of whether the waste contained lead or arsenic. Rather, the Court's finding was dependant on the fact that Hamden did not and

---

[6] This issue was extensively briefed in the Reply Memoranda filed by both Defendants and will not be repeated here. (Doc #59 and #61). It is sufficient to note the Court found, as a matter of law, that Plaintiffs' allegations and evidence do not show that it was commonly known at the time of the operation of the Newhall landfills that the presence of either lead or arsenic in landfill material posed any health or safety threat to those who later developed or occupied the land. (Doc #163, p. 52).

2524695.01                            8

could not have known that its actions would cause *these* Plaintiffs – who developed and/or purchased homes on the property several years after its actions – emotional harm. The same is true of Olin, and the Court's prior finding applies to Olin. The Court's finding that Plaintiffs failed to allege or establish extreme and outrageous conduct also applies with equal force to Olin because there is no difference between the Plaintiffs' allegations against Hamden and Olin regarding this element. For these reasons, Plaintiffs' emotional distress claim against Olin should be dismissed.

### D. Nuisance (Count XIV)

The allegations against Olin for nuisance match nearly word for word the allegations against Hamden for nuisance. (Complaint, p. 36-37).[7] The Court determined that Plaintiffs failed to state a claim for private nuisance because they did not allege Hamden controlled a neighboring piece of land from which the nuisance emanates. (Doc #163, p. 32).[8] This is a ruling based on the insufficiency of Plaintiffs' pleading, not the status of either Defendant. Because Plaintiffs' allegations for nuisance are identical between the two Defendants, particularly the lack of any allegations about control over a neighboring piece of property from which the nuisance emanates, the Court's ruling is applicable to both Defendants. To suggest

---

[7] The only difference is that while Plaintiffs ask Hamden to test their properties for the presence of hazardous contaminants, they ask Olin to test their properties for the presence of hazardous substances "on an expedited testing program and [for] remediation of the contaminants." (Amended Complaint, p. 36-37). Although the different wording is curious, it does not affect the sufficiency of Plaintiffs' nuisance claim, because it only goes to the relief requested – an injunction – and the not the requisite elements of Plaintiffs' claim.

[8] Although the Court determined that Plaintiffs' private nuisance claim against Hamden also failed due to Plaintiffs' failure to allege intent, the Court held that Plaintiffs' failure to allege control over the property emanating the nuisance was a separate, independent reason Plaintiffs' private nuisance claim failed. (Doc #163, p. 30-32).

2524695.01                                    9

otherwise, as Plaintiffs do, is to ignore the law of the case doctrine and promote inconsistent rulings. Thus, Plaintiffs' private nuisance claim against Olin should be dismissed.

As noted by Plaintiffs, the Court denied Plaintiffs' public nuisance claim against Hamden because of two additional elements required to plead such a claim against a municipality. (Doc #187, p. 2). Olin recognizes that such finding does not apply to Olin as it is not a municipality. However, the Court's finding on the private nuisance claim, *i.e.* that it failed because the Plaintiffs failed to allege control over a neighboring property from which the nuisance allegedly emanates, is applicable to Plaintiffs' public nuisance claim against Olin because this is a necessary element of both a public and private nuisance claim. Shukis v. Bd. of Ed., 2006 WL 853182 at *3 (Conn. Super. March 15, 2006). (*See also* Doc #77 and #59, p. 15-18 and authorities cited therein.)

In Shukis, the court struck as failing to state a cause of action the plaintiff's private *and* public nuisance claims because he failed to allege that the defendant was in control of the property that created the nuisance. The court explained that for each cause of action, the plaintiff "must allege and prove that the defendant had control of the property in question." Id. at *4.

Pursuant to Connecticut law, control over the property creating or emanating the nuisance is a required element to both a private and public nuisance claim. The Court ruled as a matter of law that Plaintiffs failed to plead control of property from which the nuisance is emanating in their nuisance claim. (Doc #163, p. 32). Because Plaintiffs fail to plead this necessary element of both a private and public claim, both nuisance claims against Olin, to the extent both are pleaded within Count XIV, must be dismissed.

### Conclusion

WHEREFORE, for all of the foregoing reasons, Olin Corporation respectfully requests this Court to dismiss Counts V, IX, XI and XIV of Plaintiffs' Amended Petition.

Respectfully Submitted,

HUSCH & EPPENBERGER, LLC


By:  /s/ Michael H. Wetmore
    Michael H. Wetmore (ct24899)
    Joel B. Samson (ct24898)
    190 Carondelet Plaza, Suite 600
    St. Louis, Missouri 63105
    Telephone: 314-480-1500
    Fax: 314-480-1505
    michael.wetmore@husch.com
    joel.samson@husch.com

and

BROWN RUDNICK BERLACK ISRAELS LLP
    Mark Baldwin
    185 Asylum St.
    CityPlace I, 38th Floor
    Hartford, CT  06103
    Telephone: 860-509-6500
    Fax: 860-509-6501
    mbaldwin@brbilaw.com

*Attorneys for Defendant Olin Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the attorneys of record registered for the Court's ECF system (as reflected by the email addresses shown below) or by mailing the same, first class mail, postage prepaid, to the non-participants in the Court's ECF system, on this 1st day of December, 2006.

| | |
|---|---|
| Neil T. Leifer, Esq.<br>Brad J. Mitchell, Esq.<br>Thornton & Naumes L.L.P.<br>100 Summer Street, 30th Floor<br>Boston, Massachusetts  02110<br>Telephone:  (617) 720-1333<br>Facsimile:   (618) 720-2445<br>nleifer@tenlaw.com<br>bmitchell@tenlaw.com<br><br>Monte E. Frank, Esq.<br>Cohen and Wolf, PC<br>158 Deer Hill Avenue<br>Danbury, CT  06810<br>Telephone: (203) 367-6202<br>Facsimile: (203) 791-8149<br>mfrank@cohenandwolf.com<br><br>Alison K. Clark, Esq.<br>David B. Zabel, Esq.<br>Perry R. Goodman, Esq.<br>Cohen and Wolf, PC<br>1115 Broad Street<br>Bridgeport, Connecticut  06604<br>Telephone: (203) 368-0211<br>Facsimile: (203) 394-9901<br>aclark@cohenandwolf.com<br>dzabel@cohenandwolf.com<br>pgoodman@cohenandwolf.com | Mark Roberts, Esq.<br>Andrew A. Rainer, Esq.<br>McRoberts , Roberts & Rainer, LLP<br>53 State St.<br>Boston, MA  02114<br>Telephone: (617) 722-8222<br>Facsimile: (617) 720-2320<br>mroberts@mcrobertslaw.com<br>arainer@mcrobertslaw.com<br><br>*Attorneys for Plaintiff*<br><br>Ann M. Catino, Esq.<br>Joseph G. Fortner, Jr., Esq.<br>Thomas C. Blatchley, Esq.<br>Halloran & Sage LLP<br>One Goodwin Square<br>225 Asylum Street<br>Hartford, CT  06103<br>Telephone:  (860) 522-6103<br>Facsimile:   (860) 548-0006<br>catino@halloran-sage.com<br>fortner@halloran-sage.com<br>blatchley@halloran-sage.com<br><br><br>*Attorneys  for Town of Hamden* |

　　　　　　　　　　　　　　　　　　　　/s/ Michael H. Wetmore

2524695.01