UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARENCE R. COLLINS, JR., et al.<br><br>Plaintiffs,<br><br>v.<br><br>OLIN CORPORATION<br>Defendant. | CIVIL ACTION NO. 3-03-945 (CFD)<br><br><br><br>December 20, 2006 |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF
SECOND AMENDED MOTION FOR CLASS CERTIFICATION

Plaintiffs ask that this Court grant class certification, under Rule 23 of the Federal Rules

of Civil Procedure, to allow the efficient and equitable litigation of this case. The case arises,

from the contamination of the soil and groundwater of dozens of properties in the Newhall

neighborhood of Hamden, Connecticut with lead, arsenic, polyaromatic hydrocarbons and semi-

volatile organic compounds. The contamination was brought to the Newhall neighborhood after

1931 by defendant Olin Corporation, and before 1931 by the Winchester Repeating Arms

Company (whose assets Olin acquired), with the permission and involvement of the Town of

Hamden (the "Town" or "Hamden"). Plaintiffs seek damages against Olin for the diminution in

the value of their properties, the loss of use and enjoyment of their properties, and emotional

distress. Plaintiffs also seek a declaration that Olin is responsible for any response costs the

plaintiffs must incur to address any contamination on their properties, and, if necessary, an

injunction requiring the complete remediation of their properties and restoration of the

environment.

I.     **FACTUAL BACKGROUND**

    A.     **History of Contamination**

From 1866 to 1931, the Winchester Repeating Arms Company ("Winchester") operated a plant in New Haven – down Winchester Avenue from the Newhall section of Hamden—in which it manufactured guns, ammunition, batteries, and a number of other items.  In 1931, Winchester was in receivership and all of its assets and ongoing manufacturing operations were purchased by Western Cartridge Company, the predecessor to Olin Corporation.  After the purchase of Winchester, Olin continued the operations of Winchester including manufacturing Winchester guns and ammunition.  These operations produced a substantial quantity of industrial waste containing hazardous substances, including lead, arsenic, semi-volatile organic compounds (SVOCs) and polyaromatic hydrocarbons (PAHs).

The Town of Hamden paved the way for Winchester, and then Olin, to dispose of this industrial waste in the Newhall neighborhood.  As early as 1915, the Town solicited owners of private properties containing wetlands and low lying areas to allow industrial waste from the Winchester plant in New Haven to be dumped onto their properties.  The Town operated dumps on these properties and, when the dumps were filled, the properties were developed with residential dwellings, increasing Hamden's population and tax base.  Olin continued to dump industrial waste containing hazardous substances at dumps in the Newhall Section of Hamden until the disposal sites were closed to further dumping in the 1950's.

Beginning in approximately 1920, portions of the privately owned property used by Olin for disposal were developed into residential properties.  Olin was aware that after each dump in the Newhall Section was closed for disposal, residential structures were constructed on the

former dumpsites.  At the time Olin was generating the waste it sent to the Newhall Section, there was also available and verified scientific data indicating that lead and arsenic, the primary constituents of the waste, were harmful to humans and the environment.

### B.    Investigations of Contaminants Buried in the Newhall Neighborhood

During 2000 and early 2001, the United States Environmental Protection Agency ("USEPA") conducted studies that discovered that wastes including hazardous substances from historical firearm, ammunition and battery manufacturing operations had been disposed of on publically owned lands that border the residential areas in the Newhall Section of Hamden.

In or about April 2001, the USEPA conducted surficial soil sampling on 76 private properties in the Newhall Section of Hamden and analyzed these samples for a variety of organic and inorganic contaminants including but not limited to lead, arsenic, semi-volatile organic compounds (SVOCs) and polyaromatic hydrocarbons (PAHs).  All of the Properties tested in the Newhall Section were found to be similarly affected by similar types of hazardous substances.

Results of these analyses were sent to various individual property owners by letter dated May 29, 2001 or shortly thereafter.  USEPA carried out a "time-critical removal action" at some of the residential properties, removing soil down to 18 inches or greater and replacing it with clean fill.  During the excavation program, waste materials related to Olin's firearms, ammunition and battery production were found throughout the Contaminated Area.  Connecticut Department of Environmental Protection ("CTDEP") sampled soils beneath the excavated layers on these residential properties and collected deeper soil samples at over 20 additional properties which demonstrated widespread contamination and filling with the same types of Olin industrial wastes throughout the Contaminated Area.

In or about December 2002, consultants for Olin reported that analyses of fill in the Newhall Section of Hamden consistently contained concentrations of the same types of hazardous substances, including but not limited to lead, arsenic, semi-volatile organic compounds (SVOCs) and polyaromatic hydrocarbons (PAHs). Similar results were found on additional private properties in tests conducted by Olin and by CTDEP during the years since 2002.

### C.     Facts Relating to Named Plaintiffs

Plaintiffs Clarence R. Collins, Jr., Jennifer and Patrick Dontfraid, Donna Lee Johnson, Leonardo Melendez, Sonia Powell, Dorothy Williams, Matthew and Phyllis Abraham, Henry L. Blue, Janie Clemons, Louise Craig, Ruth B. Eaton, William and Maxine Jones, Herman Bershtein, Executor of the Estate of Josephine Neal, Clifford Senior and Adrienne Rouse-Senior, Raymond Sims, Sr. and Ellecia R. Sims, Marc Perry, Venus D. Walker, Morris and Mary Draughn, Carolyn Smith, Elizabeth Hayes, Abdul Hamid, Eugalyn Wilson, Charlene P. Webb, Elias Rochester and Marcia Walters are all persons who own real property within the Newhall neighborhood and who have suffered damages or who have or will incur response costs as a result of Olin's disposal of contaminated fill in their neighborhood after 1931.

## II.     PLAINTIFFS' PROPOSED CLASS AND SUBCLASS DEFINITIONS

The proposed Class, the members of which are listed in Exhibit A, consists of all persons who own property in the Newhall neighborhood of Hamden who have, as a result of Olin Corporation's disposal of contaminated fill in that neighborhood since 1931, suffered damages, including the loss in value of property, the loss of use or enjoyment of property, or emotional distress, or who have or will incur response costs. Excluded from the Class are government entities, the defendant, and defendant's affiliates, parents and subsidiaries.

The first proposed Subclass (the "Contaminated Properties Subclass"), the members of which are listed in Exhibit B, consists of all members of the Class who have suffered damages as a result of Olin Corporation's disposal of contaminated fill on their property or properties since 1931.

The second proposed Subclass (the "Stigma Subclass") consists of all members of the Class who are not members of the Contaminated Properties Subclass, but who have suffered damages as a result of their properties' proximity to the Contaminated Properties Subclass.

The third proposed Subclass (the "Response Cost Subclass"), the members of which are listed in Exhibit C, consists of all members of the Class who have or will incur response costs in order to address residual contamination on their properties.

## III.    RULE 23(a) PREREQUISITES

The purpose of Rule 23 of the Federal Rules of Civil Procedure is the efficient resolution of the claims or liabilities of many individuals in a single action, the elimination of repetitious litigation and possibly inconsistent adjudications involving common questions, related events, or requests for similar relief, and the establishment of an effective procedure for those whose economic position is such that it is unrealistic to expect them to seek to vindicate their rights in separate lawsuits. 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1754 at 49 (2d ed/ 1986). *See generally* Schwarzer, Structuring Multiclaim Litigation: Should Rule 23 Be Revised: 1996 Mich. L. Rev. 1250, 1250-1255.

In cases like this, Rule 23 "provides a means of vindicating the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." B. Kaplan, A Prefatory Note, 10 B.C. Indus. & Com. L. Rev. 497, 497 (1969). Moreover, class actions serve an important function in our system of justice. They allow Plaintiff's to "vindicate

the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." <u>Deposit Guaranty. National Bank v. Roper, 445 U.S. 326, 338 (1980)</u>.

Rule 23 must be liberally interpreted and read to favor maintenance of class actions. <u>King v. Kansas Southern Ind.</u>, 519 F.2d 20, 25-26 (7th Cir. 1975). Additionally, when ruling upon a motion for class certification, the court is not to rule on the merits of the case. <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156,177-78 (1974); <u>Retired Chicago Police Ass'n v. City of Chicago,</u> 7 F.3d 584, 598 (7th Cir.1993); *see also* <u>Anderson v. City of Albuquerque,</u> 690 F.2d796, 799 (10th Cir. 1982) (district court abused its discretion by denying class certification based on an inquiry into the merits of the case). As one court noted:

> Although the parties have submitted a great deal of factual material, and defendants argued the facts of the case at length, there are relatively few facts that are crucial to class certification. Essentially, the facts can be subdivided into two categories: Those relating to class definition (that is, evidence that something occurred to distinguish the members of the class from the general public), and to class size.

<u>Boggs v. Divested Atomic Corp.</u>, 141 F.R.D. 58, 60 (S.D.Ohio 1991).

Class actions promote the objectives of judicial economy, make complex cases manageable and conserve the resources of the parties. In the sections that follow, Plaintiffs will demonstrate that Plaintiffs' proposed Class satisfies all of the procedural requirements of Federal Rules 23(a) and Rule 23(b)(3), as well as the policy considerations underlying those rules, making class certification appropriate.

1.    <u>Rule 23(a)(1) -- Numerosity</u>

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." To satisfy Rule 23(a)(1)'s requirements,

the proponent must show that the class is so numerous that joinder is impracticable. The party

seeking certification of a class must only demonstrate that the size of the class defined makes

joinder impracticable, not impossible. O'Connor v. Boeing North American, Inc., 184 F.R.D.

311, 319 (C.D.Cal. 1998).

While there is no predetermined number of Plaintiffs necessary for class certification,

courts have generally found a class sufficiently numerous when it comprises 40 or more

members. See, Martin v. Shell Oil Company, 198 F.R.D. 580, 590 (D.Conn. 2000), citing

Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993); see also Ansari v. New York University,

179 F.R.D. 112, 114 (S.D.N.Y. 1988). As shown by the lists of addresses contained in Exhibits

A, B and C, the Plaintiffs' proposed Class includes the owners of hundreds of properties, and the

proposed Subclasses include many dozens of property owners. These numbers clearly fall within

the numerosity standard enumerated by the United States District Court for the District of

Connecticut in the Martin case and the cases cited therein.

Certification of this Class would aid in the desire for judicial economy and conserve the

resources of the parties. As stated earlier, there are owners of more than 300 properties within

the area of the proposed Class. It is foreseeable that many of them will either join this action or

bring additional claims in this Court if a Class is not certified. Certification of this Class would

eliminate expanding this lawsuit to the point the litigation becomes unmanageable and overly

costly and time consuming for the Court and all of the members of the Class. It also will avoid

the need to adjudicate multiple lawsuits involving these same common issues of law and fact.

Also related to the numerosity factor is whether the proposed class definition is "precise,

objective, and presently ascertainable." Manual for Complex Litigation, Third Section 30.14, at

217 (1995). A class will be found to exist if the description of the class is definite enough that it

is administratively feasible for the court to ascertain whether an individual is a member. <u>See</u> <u>Aiken v. Obledo</u>, 442 F.Supp. 628 (E.D.Cal. 1977). Here, the plaintiffs have listed the address of every property proposed to be included in the proposed Class and Subclasses, and therefore the requirement that the class be ascertainable is readily met.

Indeed, it is well established that a class can be defined by geography. <u>See e.g.</u> <u>Boggs</u>, 141 F.R.D. at 60 (class certified – defined as persons within six miles of boundaries of plant that released hazardous materials); <u>Yslava v. Hughes Aircraft Co.</u>, 845 F.Supp. 705, 712 (D.Ariz. 1993) (class certified – defined based upon geographic areas in which plaintiffs lived and went to school where defendant supplied contaminated drinking water); <u>Cook v. Rockwell Int'l Corp.</u>, 151 F.R.D. 378, 382 (D.Col. 1993) (class certified – defined by geographic boundaries based on dose or exposure contours of radioactive and non-radioactive materials); <u>Reilly v. Gould, Inc.</u>, 965 F.Supp. 588, 596 (M.D.Pa. 1997) (definable class existed based on geographic boundaries that established class members, but ultimately granting defendant's motion to dismiss class action); <u>O'Connor</u>, 184 F.R.D. at 327. Here, Plaintiffs' proposed Class clearly meets established criteria for definition by geography.

In short, the requirement of numerosity, and the related requirement of ascertainability are readily met in this case.

2.    <u>Rule 23(a)(2) - Commonality</u>

According to Rule 23(a)(2), a class action is maintainable only if "there are questions of law or fact common to the class." However, not every issue in the case must be common to all class members. The fact that individual issues remain "after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." <u>Sterling v. Velsicol Chemical Corp.</u>, 855 F.2d 1188, 1197 (6th Cir. 1988).

Rather, there must be some issue involved that is common to the entire class and relief must "turn on questions of law applicable in the same manner to each member of the class." Califano, 442 U.S. at 700, 99 S.Ct. 2545, 61 L.Ed.2d. 176; General Tel. Co. v. Falcon, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Class certification is appropriate where common issues of fact or law are of sufficient importance to the class that the court is convinced that the most efficient method of determining the rights of the parties is through a class action. See e.g. O'Connor, 184 F.R.D. at 330. This requirement has often found to be met when a defendant has engaged in some standardized conduct toward the proposed class members. Chandler v. Southwest Jeep-Eagle, Inc., 162 F.R.D. 302, 307 (N.D.Ill.1995) (citing Franklin v. City of Chicago, 102 F.R.D. 944, 949-950 (N.D.Ill.1984)).

Plaintiffs here allege that a single course of conduct by Olin resulted in the disposal of hazardous substances in a specific geographic area giving rise to the damages experienced by all of the proposed members of the Class. The following is a non-exclusive list of questions of law and fact common to the Plaintiffs and all members of the Class:

   *   Whether defendant Olin is liable to the Plaintiffs and all members of the Class and Subclasses for its course of conduct in disposing of industrial wastes containing hazardous substances in the Newhall Section;

   *   Whether defendant's activities in the Newhall Section breached a duty owed to the Plaintiffs and all members of the Class and Subclasses;

   *   Whether the defendant's disposal of contaminated wastes in the Newhall Section constitutes an ultrahazardous activity and whether defendant should be held strictly liable for those activities;

   *   Whether defendant's activities have interfered with the use and enjoyment

of the properties of the Plaintiffs and all members of the Class and

Subclasses;

\*     Whether Olin is liable to the Plaintiffs and the members of the Class and

Response Cost Subclass pursuant to the strict liability provisions of the

Comprehensive Environmental Response, Compensation and Liability

Act, 42 U.S.C. 9607 ("CERCLA") or Conn. Gen. Stat § 22a-452.

All of these questions of law and fact are common to all members of the proposed Class,

and therefore, the requirement of commonality is met in this case.  See, e.g., Boggs, 141 F.R.D.

at 64; In re Asbestos School Litig., 104 F.R.D. 422, 429 (E.D.Pa. 1984), aff'd (re Rule 23(a) in

part rev'd in part, 789 F.2d 996 (3rd Cir. 1986) (finding that class satisfied the commonality

prerequisite because elements of defendants breach of legal duties "can be established by

common proof, which, although it may be complex does not vary from class-member school to

class-member school."); Mejdreck v. Lockformer Co., No. 01 C 6107, 2002 WL 1838141, at \*6-

7 (N.D. Ill. 2002), aff'd sub nom. Mejdrech v. Met-Coil Systems Corp., 319 F.3d 910 (7th Cir.

2003)(finding that common questions of law or fact will predominate when there is a common

course of conduct that leads to injury of all the proposed class members); Olden v. LaFarge, 203

F.R.D. 254 (D. Mich. 2001), aff'd, 383 F.3d 495 (6th Cir. 2004).

While there may be differences among the claims of Class members, this does not defeat

commonality.  The claims of the Plaintiffs need not be identical, so long as there is a "common

nucleus of operative fact." Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992).   Where, as

here, the defendant has engaged in some standardized conduct towards the proposed class

members, the commonality prong of Rule 23(a)(2) has been met.  See Chandler, 162 F.R.D. at

307; Johns v. DeLeonardis, 145 F.R.D. 480, 483 (N.D.Ill.1992) ("Where the defendant engages

in a single course of conduct that results in injury to the class as a whole, a common core of

operative facts is usually present."); <u>Olden v. LaFarge</u>, 383 F.3d 495, 508-509 (6th Cir.

2004)(commonality is not defeated by differences in damages among class members).

      3.    <u>Rule 23(a)(3) – Typicality</u>

Under Rule 23(a)(3), the court may certify a class action where "the claims or defenses of

the representative parties are typical of the claims or defenses of the class."  The typicality

prerequisite may be met "even though varying fact patterns support the claims or defenses of

individual class members or there is a disparity in the damages by the representative parties and

the other members of the class."  <u>Wright, Miller & Kane</u> § 1764, at 235-41.  This requirement is

intended to ensure that plaintiffs with claims common to other class members will have their

own self-interest in advancing the litigation, and in doing so, will also advance the interests of

the other members of the class.  <u>See e.g.</u> <u>In re Telectronics Pacing Systems, Inc.</u>, 168 F.R.D. 203

(S.D.Ohio 1996).  While class representatives' claims need not be identical to those of absent

class members, the class representatives must "possess the same interest and suffer the same

injury as the class members."  <u>General Tel. Co.</u> 457 U.S. at 156, 102 S.Ct. 2364, 72 L.Ed.2d 740.

<u>See also</u> <u>Abelson v. Strong</u>, Fed. Sec. L. Rep. (CCH) ¶93,365 (D.Mass. July 30, 1987);

<u>California Rural Legal Assistance v. Legal Services Corp.</u>, 917 F.2d 1171, 1175 (9th Cir. 1990)

(Rule 23 does not require that named plaintiffs be identically situated with all other class

members, it is enough if their situations share a common issue of law or fact);  <u>Weinberger v.</u>

<u>Jackson</u>, 102 F.R.D. 839, 844 (N.D. Cal. 1984) (typicality requirement should be loosely

construed).

The party seeking class certification will satisfy Rule 23(a)(3)'s typicality requirement if

the representatives' claims stem from the same event or course of conduct as other class

members' claims and are based on the same legal theory as the absent members. See Rosario v. Livaditis, 963 F.2d 1013, 1019 (7th Cir. 1992); In re United Energy Corp., 122 F.R.D. 251, 256 (C.D.Cal. 1988). The named Plaintiffs' claims against the Olin stem from the same events and course of conduct as other class members' claims and are based on the same legal theories as the absent members. In addition, the named class representatives "possess the same interest and suffer the same injury as the class members." All of the named Plaintiffs own property in the Newhall Section of Hamden where the defendant disposed industrial wastes containing hazardous substances, and all have suffered damages as a result of the contamination.

     While some of the facts related to these class members differ, these differences do not destroy commonality of the class or the ability of the Plaintiffs to act as Class representatives. Class certification is not defeated merely because "facts fluctuate over the class period and vary as to individual claimants" if there are common questions as to "liability or as to the cause or impact of the tortuous action." Yslava, 845 F.R.D. at 429. See also DeBoer v. Mellon Mortgage Co., 64 F.3d 1171 (8th Cir. 1995) (finding commonality in class action against bank for over escrowing accounts despite fact that individuals with different mortgage contracts will have different claims of differing strengths). In addition, while damages may vary for each individual class member, relief for the class turns on the significant common "questions of law applicable in the same manner to each member of the class." General Tel. Co. 457 U.S. at 155, 102 S.Ct. 2364, 72 L.Ed.2d 740. See e.g. Weinberger v. Thornton, 114 F.R.D. 599, 603 (S.D.Cal. 1986 ("Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."); O'Connor, 184 F.R.D. at 334 ( "…[A]t this stage of the litigation, Plaintiffs need not provide proof of contamination, CERCLA

responses costs, or diminution in value to their property as these issues relate to the *merits* of the Representatives' claims, not to their *typicality*." (emphasis in original)).

In this proposed class, the class representatives' claims are based on the same legal theories as the claims brought on behalf of the Class, including negligence, nuisance, abnormally dangerous activity, liability under the Environmental Protection Act of 1971, liability pursuant to Conn. Gen. Stat. 22a-452, and CERCLA liability.  The proposed class representatives will advance the interests of the individual class members because all of the proposed representatives own property in the area where the defendant disposed of hazardous substances, and have suffered loss of use and enjoyment of their properties, a diminution in property value, and emotional distress as a result of the defendant's conduct.  The proposed Class representatives' claims for damages do not conflict with other Class members' claims for similar damages.

4.    Rule 23(a)(4) - Adequacy of Representation

Rule 23(a)(4) provides that certification of a action is only appropriate where "the representative parties will fairly and adequately protect the interests of the class."  The adequacy of representation requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent."  Amchem Products, Inc. v. Windsor, 251 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).  The Ninth Circuit has held that representation is "adequate" where counsel for the class is qualified and competent, the representatives' interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive.  In re Northern Dist. Of Cal., Dalkon Shield IUD Prod. Liab. Litig., 693 F.2d 847, 855 (9th Cir. 1982); Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978). "Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  Wright, Miller & Kane § 1768 at 326-27.

As stated in the previous section, the proposed Class representatives' claims are based on the same legal theories as the claims brought on behalf of the Class. To the extent there are differences in the precise type of relief available to certain Class members, Plaintiffs have dealt with this through the three Subclasses proposed. Thus, the proposed class representatives' interests are not, in any way, antagonistic to the interests of absent class members.

In addition, the law firms representing the Class are qualified and competent to advance the litigation. Cohen & Wolf is a general practice Connecticut law firm with substantial experience in complex environmental and land use litigation. McRoberts, Roberts & Rainer, LLP is a firm that specializes in environmental law, and has specific expertise in representing communities that have been contaminated by hazardous substances, and has litigated dozens of suits seeking redress for damages arising from the contamination of soil and ground water of property caused by disposal and migration of hazardous substances. The firm also has experience in class action litigation. Thornton & Naumes, LLP is a Massachusetts firm with extensive national experience in toxic and mass torts and complex litigation. In addition, lawyers at Thornton & Naumes have previously represented plaintiffs in groundwater and soil contamination cases.

## IV.    RULE 23(b) REQUIREMENTS

Having satisfied Rule 23(a)'s four prerequisites, Plaintiffs now demonstrate that the Class satisfies the requirements of at least one of Rule 23(b)'s sections making class certification appropriate. A Rule 23(b)(3) class action, as a procedural device, was designed not solely as a means for assuring legal assistance in the vindication of small claims but also to achieve the economies of time, effort and expense. See e.g. Hernandez v. Motor Vessel Skyward, 61 F.R.D. 558 (S.D.Fla. 1973), aff'd without opinion, 507 F.2d 1278 (5th Cir. 1975).

A class action may be maintained under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate," and if "a class action is superior to other available methods." Plaintiffs are able to establish both predominance of common issues and superiority of the class action and therefore, certification of the class under Rule 23(b)(3) is appropriate.

1.    Predominance of Common Issues

Under Rule 23(b)(3) the predominance question tests whether proposed class is sufficiently cohesive to warrant adjudication by representation. Amchem Products, Inc., 251 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689. In other words, the class members must share a "common nucleus of operative facts." Esplin v. Hirschi, 402 F.2d 94, 99 (10th Cir. 1968). See also Joseph v. General Motors Corp, 109 F.R.D. 635, 641 (D.Colo. 1986). This requires the court to balance concerns regarding issues common to the class as a whole with questions affecting individual class members, In Re Dalkon Shield 693 F.2d. at 856, while keeping in mind that:

> The common questions need not be dispositive of the entire action. In other words, "predominate" should not be automatically equated with "determinative" or "significant." Therefore, when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.

7A Charles A. Wright et al., Federal Practice & Procedure § 1778 at 528 (1986). "[I]mplicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

As set forth in detail in Section III. 2 (discussing "commonality"), there are numerous factual and legal issues that are common to all members of the proposed Class. A finding of commonality ordinarily satisfies a finding of predomination. Heastie v. Community Bank, 125 F.R.D. 669, 677 (N.D. Ill. 1989).

In this case, the common question of whether Olin contaminated the area in question is not only shared by all proposed Class members, but predominates over any differences between the individual properties. This is the reason numerous courts have certified classes in cases of environmental contamination. See Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir.1988) (finding that a contamination case arises out of a single course of conduct by the defendants and class certification is therefore proper); Mejdreck v. Lockformer Co., No. 01 C 6107, 2002 WL 1838141, at *6-7 (N.D. Ill. 2002), aff'd sub nom. Mejdrech v. Met-Coil Systems Corp., 319 F.3d 910 (7th Cir. 2003)(finding that common questions of law or fact will predominate when there is a common course of conduct that leads to injury of all the proposed class members); Olden v. LaFarge, 203 F.R.D. 254 (D. Mich. 2001), aff'd, 383 F.3d 495 (6th Cir. 2004).

Moreover, Plaintiffs will establish on a class-wide basis the manner in which Olin contaminated the Newhall neighborhood. This will be established through expert testimony concerning the nature of Olin's waste disposal practices and the characteristics of the hazardous substances that were dumped. This method of proof will involve answering questions that will not differ with each class member's claims, such as what were the hazardous substances the defendant released, what was the mechanism of release, as well as the common questions relating to defendants' liability outlined in the analysis regarding commonality. "These common issues represent the core of [P]laintiffs' action against [D]efendants and therefore predominate

Plaintiffs' claims." <u>Cook</u>, 151 F.R.D. at 389 (to the extent that the claim of each plaintiff depends upon proof concerning these common issues, it would serve no purpose to force multiple trials to hear the same evidence and decide the same issues). <u>See also</u> <u>Bates v. Tenco Svcs., Inc.</u>, 132 F.R.D. 160 (D.S.C. 1990) (class action was superior because common questions including the cause of the contamination and the defendant's liability predominated over individual questions of proximate cause and damages for each plaintiff); <u>Yslava</u>, 845 F.Supp. at 713 (common issues predominated because factual and legal issues relating to the defendant's liability did not differ between the plaintiffs, and thus certification was appropriate); <u>Boggs</u>, 141 F.R.D. at 67 (rejecting defendant's argument that individualized nature of plaintiffs' claims made certification improper and finding that common issues of liability, including nature of the emissions, history of the plant, and the kinds of remedies to address actual and future emissions overwhelmed individualized issues).

In addition, Plaintiffs will present expert testimony to explain how Plaintiffs' claims of diminution in value of their property may be proven on a class-wide basis. Plaintiffs intend to prove this via expert testimony utilizing a hedonic price model based upon multiple regression analysis and/or other statistical methods of establishing diminution of property damage on an area-wide basis. Utilizing these tools, property valuation experts are able to assess the loss of property values on an area-wide basis despite the fact that the Contamination Area contains properties of differing types and sizes. This model can account for differences in concentrations of contamination, property type, and communities by including different factors as variables in the models, enabling the expert to analyze property depreciation for an entire environmentally-affected community. The differences in concentrations of contamination and between property types can be resolved by segregating property types into categories within the model. These

exact methods were utilized in the case of <u>O'Connor v. Boeing North American, Inc.</u>, 184 F.R.D. 311 (C.D.Calif. 1998), a case in which past and present residents who lived near a nuclear testing facility brought an action against owners and operators of the facilities based on the alleged release of radioactive contaminants and/or hazardous non-radioactive substances from the facility.  <u>Id.</u>  One of the issues addressed by the Court was whether individual proximate cause questions would overshadow common questions relating to the defendants' liability for the release of contaminants.  The Plaintiffs adequately addressed the Court's concern by utilizing expert testimony identical to that detailed above, and establishing on a class-wide basis the extent to which the community surrounding the nuclear facility had been exposed to the defendants' releases of contaminants.  <u>Id.</u> at 340.

      2.    <u>Superiority of Class Action</u>

A class action is superior to alternative forms of adjudication where "class-wide litigation of common issues will reduce litigation costs and promote greater judicial efficiency.  <u>Valentino</u>, 97 F.3d at 1234.  In assessing this factor, the Court must also consider issues such as

-     the interest of members of the class in individually controlling the prosecution or defense of separate actions;

-     the extent and nature of any litigation concerning the controversy already commenced by or against members of the class

-     the desirability or undesirability of concentrating the litigation of the claims in the particular forum

-     the difficulties likely to be encountered in the management of the class action. 23(b)(3).

Here, all of these factors favor certification. To Plaintiffs' knowledge, there are no other cases that have been brought by property owners in the Newhall section concerning the contamination by Olin, despite the passage of several years since the contamination became known. There is, therefore, no one with a separate interest in controlling the prosecution of these claims, nor another forum litigating these claims.

There are many advantages in concentrating the litigation of these claims in a single forum. As noted above, proof of core issues, including Olin's liability for the disposal of industrial wastes containing hazardous substances, the type and concentrations of hazardous substances that were released, and whether defendant's activities have adversely impacted the property values within the Newhall neighborhood will be identical for the Plaintiffs and members of the Class, such that "class-wide litigation of [these] issues will reduce litigation costs and promote greater efficiency." Valentino, 97 F.3d at 1234, Cook, 151 F.R.D. at 388.

With respect to manageability, the case will be far more manageable as a class action than as a consolidated case with dozens, if not hundreds, of plaintiffs. Olin has already deposed the named plaintiffs here, at considerable length. Should trial of the case await depositions of dozens of other people? As to the trial itself, can one imagine the length of time that would be entailed in hearing testimony from dozens or hundreds of plaintiffs, as contrasted to the time involved in hearing from class representatives? As outlined above, the trial of this case as a class action could encompass not only issues of liability, but even issues of damages based on expert testimony using economic modeling. Plaintiffs respectfully submit that this case will be far more manageable as a class action than as a consolidated case with dozens or hundreds of plaintiffs.

V.     **CONCLUSION**

For all of the foregoing reasons, the Plaintiffs respectfully request that the Court order

that this case proceed as a class action, certify the Plaintiffs' proposed Classes and Subclasses,

appoint the Plaintiffs to act as Class Representatives and Plaintiffs' Counsel to act as Class

Counsel, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,


By   /s/ Andrew Rainer
      Mark Roberts, Esq.  ct25062
      mroberts@mcrobertslaw.com
      Andrew Rainer, Esq. ct25938
      arainer@mcrobertslaw.com
      McRoberts, Roberts & Rainer LLP
      53 State Street
      Boston, Massachusetts 02109
      Tele: (617) 722-8222
      Fax:  (617) 720-2320

      David B. Zabel, Esq. ct01382
      dzabel@cohenandwolf.com
      Monte E. Frank, Esq. ct13666
      mfrank@cohenandwolf.com
      Cohen and Wolf, PC
      1115 Broad Street
      Bridgeport, Connecticut 06604
      Tele:  (203) 368-0211
      Fax:   (203) 394-9901

      Neil T. Leifer, Esq.
      nleifer@tenlaw.com
      David C. Strouss, Esq.
      dstrouss@tenlaw.com
      Thornton & Naumes L.L.P
      100 Summer Street, 30th Floor
      Boston, Massachusetts 02110
      Tele: (617) 720-1333
      Fax:  (617) 720-2445

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of December, 2006, a copy of the foregoing was served electronically and by first class U.S. mail, postage prepaid, upon all counsel of record, as follows:

Michael H. Wetmore, Esq.
Joel B. Samson, Esq.
Husch & Eppenberger, LLC
190 Carondelet Plz Ste 600
Saint Louis MO 63105-3433

Mark S. Baldwin, Esq.
Brown Rudnick Berlack Israels LLP
185 Asylum St Fl 38
Hartford CT 06103-3408

Ann M. Catino, Esq.
Joseph Fortner, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103


/s/ Andrew Rainer
Andrew Rainer