UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

* * * * * * * * * * * * * * * *
                                      *   CIVIL ACTION NO.
CLARENCE R. COLLINS, JR., ET AL       *   303CV945(CFD)
         PLAINTIFFS,                  *
                                      *
VS.                                   *
                                      *
OLIN CORPORATION, ET AL.,             *
         DEFENDANTS.                  *
                                      *
* * * * * * * * * * * * * * * *

COPY

DEPOSITION OF: MATTHEW ABRAHAM
DATE TAKEN: JANUARY 5, 2005
LOCATION: HALLORAN & SAGE
          225 Asylum Street
          Hartford, Connecticut  06103


Reporter: KATHLEEN S. NORTON, RPR, LSR #105
     BRANDON SMITH REPORTING SERVICE, LLC
          44 Capitol Avenue
          Hartford, CT  06106
          Tel:  (860) 549-1850
          Fax:  (860) 549-1537

1   people are asking versus what they are getting for
2   houses in your area?
3       A   No, I don't.
4       Q   Now, do you assert there has been a
5   diminution in the value of your property?
6       A   I think so.
7       Q   And can you tell me why you believe that?
8       A   With this contamination going around.
9       Q   Any other reason?
10      A   And the school is moving out which falls
11  back to the contamination.
12      Q   Anything else?
13      A   Not to my knowledge.
14      Q   Now, you mentioned contamination going
15  around. Can you describe what you mean by that?
16      A   Yes. Our properties are contaminated and
17  it's all within the area.
18      Q   You're talking about the residential
19  properties are contaminated?
20      A   Residential, commercial, the school.
21      Q   How do you know commercial properties are
22  contaminated?
23      A   Well, I refer to the school as a
24  commercial property.
25      Q   So other than the school and the

Page 80

1    residential properties are you aware of any other
2    properties that are contaminated?
3        A    Not to my knowledge.
4        Q    And you believe the fact that the school
5    property is contaminated affects your property
6    values?
7        A    Yes, if they move the school out.
8        Q    If they don't move the school out, do you
9    believe your property values have been affected by
10   contamination on the school property?
11       A    Not only the school property but it's my
12   property. It's on my property, too.
13       Q    Well, I'm just asking about the school
14   property, though.
15       A    It affects the whole community. It
16   doesn't affect only the school.
17       Q    Have you put a dollar figure on how much
18   you think your property has decreased?
19       A    I think probably around 45,000, close. I
20   just --
21       Q    How do you arrive at this 45,000?
22       A    I just picked the number. I would say
23   about 25 percent.
24       Q    How long did it take you to come up with
25   the $45,000 figure?

Page 105

1   Do you know if you read about this or knew about

2   this, that Olin was eyed in the Hamden pollution

3   case?

4       A    Definitely not.

5       Q    How can you say you definitely knew that

6   they weren't?

7            MS. CLARK:  Objection to form.

8   BY MR. SAMSON:

9       Q    What's your basis for saying you

10  definitely didn't know about the contents of this

11  article or this type of story in December of 2000?

12      A    I didn't read this article.

13      Q    You know for sure that you didn't read

14  this article?

15      A    I just said it.

16      Q    Okay.  And beyond having read the article,

17  were you aware in December of 2000 that Olin was

18  eyed in the Hamden pollution case?

19      A    No.

20      Q    And how can you be sure you didn't know?

21      A    I didn't know, sir.

22      Q    But you don't recall when you became aware

23  of Olin's involvement; is that correct?

24      A    Correct.

25      Q    Do you know when you became aware of the

Page 106

1   Town of Hamden's involvement?
2       A   No.
3       Q   Do you know if you were subscribing to the
4   New Haven Register during this December 2000 time
5   frame?
6       A   I don't know.
7       Q   Do you have any way of determining when
8   you, in fact, subscribed to the New Haven Register?
9       A   No.
10      Q   During the times you didn't subscribe to
11  the New Haven Register, would you still pick it up
12  or buy it at the store and read it?
13      A   Yes.
14      Q   And how often would you do that?
15      A   Once a week, twice a week.
16      Q   And during what period of time did you
17  read the New Haven Register once or twice a week?
18      A   There was no special time.
19      Q   Have you been doing it consistently since
20  you moved in, in 1998?
21      A   Yes.  '92.
22      Q   When you were in other parts of the area,
23  in New Haven?
24      A   Correct.
25      Q   So you've been reading the New Haven

1   Register once or twice a week since 1992?
2       A   Correct.
3       Q   And do you recall all the articles that
4   you have read out of that paper?
5       A   No, I don't.
6       Q   But you recall reading about environmental
7   contamination issues in the area, correct?
8       A   At some point.
9       Q   You just don't remember when that point
10  was?
11      A   It wasn't 2000. I don't recall the date.
12      Q   So you don't think you ever saw a story
13  about environmental contamination before December
14  of 2000?
15      A   Absolutely correct.
16      Q   And how can you be sure about that if you
17  don't remember what articles you have or haven't
18  read?
19      A   I don't recall, sir, the dates before
20  2000 -- of 2000.
21      Q   Have you conducted any environmental
22  testing of your property?
23      A   Not personally.
24      Q   Have you asked for any environmental
25  testing of your property?

Collins vs Olin Corp.

1-5-2005                                                      Matthew Abraham

Page 139

1    Q    And it sounded like you're talking about
2  other meetings as well.  How many other meetings do
3  you think you've been to?
4    A    I don't recall a number, sir.
5    Q    More than ten?
6    A    I don't recall a number, sir.
7    Q    All right.
8         MR. SAMSON:  Why don't we take a
9         break now, if that's all right.  Take five
10        or ten minutes.
11        MS. CATINO:  Sure.  Okay.
12        (A recess was taken from
13        3:01 p.m. to 3:20 p.m.)
14 BY MR. SAMSON:
15   Q    Mr. Abraham, do you have any involvement
16 with the Newhall Coalition?
17   A    No.  No more than -- no more than I meet
18 with them when they are having stuff about the
19 contamination.
20   Q    Now, you have mentioned the New Haven
21 Coalition as well?
22   A    Newhall Coalition.
23   Q    When you say New Haven, it's really
24 Newhall?
25   A    If I did.

Brandon Smith Reporting

40d267e4-32b7-45db-91fa-30622506a6ca

Collins vs Olin Corp.

1-5-2005                                                          Matthew Abraham

Page 140

```
 1        Q    I'm trying to make sure there isn't two
 2   different entities.
 3        A    If I did, it's Newhall.
 4        Q    Okay.  Are you a member of the Newhall
 5   Coalition?
 6        A    No.
 7        Q    Were you at all involved in its formation?
 8        A    No.
 9        Q    Do you know when the Newhall Coalition was
10   formed?
11        A    No.
12        Q    Have you paid any money to the Newhall
13   Coalition?
14        A    Not one penny.
15        Q    Do you intend to give any money to the
16   Newhall Coalition?
17        A    No.
18        Q    Do you know if your wife has given any
19   money to the Newhall Coalition?
20        A    Definitely not.
21        Q    So you have indicated attending Newhall
22   Coalition meetings; is that correct?
23        A    Yes.
24        Q    And do you recall how many Newhall
25   Coalition meetings you have attended?
```

Brandon Smith Reporting

40d267e4-32b7-45db-91fa-30622506a6ca

Case 3:03-cv-00945-CFD   Document 211-4   Filed 05/10/2007   Page 9 of 9
Collins vs Olin Corp.

1-5-2005                                                      Matthew Abraham

Page 230

# CERTIFICATE OF REPORTER

I, Kathleen S. Norton, a Registered Professional Reporter/Commissioner within and for the State of Connecticut, do hereby certify that I took the deposition of MATTHEW ABRAHAM, on January 5, 2005, who was by me duly sworn to testify to the truth and nothing but the truth; that he was thereupon carefully examined upon his oath and his examination reduced to writing under my direction by means of Computer Assisted Transcription, and that this deposition is a true record of the testimony given by the witness.

I further certify that I am neither attorney nor counsel for, nor related to, nor employed by any of the parties to the action in which this deposition is taken and further that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially interested in the outcome of the action.

IN WITNESS THEREOF, I have hereunto set my hand January 21, 2005.

*Kathleen Sweeney Norton*
_____

Kathleen S. Norton

Notary Public   License No. 00105
My commission expires:  7-31-07