UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CLARENCE R. COLLINS, JR., et al

                Plaintiff

v.

OLIN CORPORATION,

                Defendant

### EXPERT REPORT OF CHRISTOPHER K. KERIN, MAI, CCIM

1. I am a real estate professional with 20 years of experience in the State of Connecticut. I am a Connecticut Real Estate Broker (License No. 750623) and a Connecticut Certified General Appraiser (No. 329). My training and experience is described in the "Outline of Qualifications, Education, And Experience of Christopher K. Kerin," copy annexed hereto as Exhibit A, which includes a list of cases in which I have testified as an expert either at deposition or at trial within the last four years.

2. I have been engaged by Plaintiffs' counsel to render an expert opinion regarding the effects on property values as a result of contamination in the Newhall section of Hamden, Connecticut, and am being paid at the rate of $200 per hour.

3. It is my understanding that the Plaintiffs have submitted a motion to the United States District Court, District of Connecticut, for Class Certification. The proposed Class consists of all persons who own property in the Newhall neighborhood of Hamden, Connecticut who, as a result of disposal of contaminated fill in that neighborhood, have suffered damages,

including the loss in property value. The Class is subdivided into three Subclasses, outlined as follows:

    a) "Contaminated Properties Subclass" consists of all persons who have suffered damages as a result of Olin Corporation's disposal of contaminated fill on their property or properties since 1931.

    b) "Stigma Subclass" consists of all members of the Class who are not members of the Contaminated Properties Subclass, who have suffered damages as a result of their properties' proximity to the Contaminated Properties Subclass.

    c) "Response Cost Subclass" consists of all members of the Class who have or will incur response costs in order to address residual contamination on their properties. It is my understanding that these are properties on which the Department of Environmental Protection currently anticipates leaving contaminants in soils below four feet and requiring Environmental Land Use Restrictions, and that residents would have to pay out of their own pockets to clean up the remaining contamination.

4. In connection with the study of the Newhall neighborhood, the following steps have been taken:

    a) Conducted exterior inspections of the homes in the Newhall neighborhood in Hamden, Connecticut, and mapped out the neighborhood (Exhibit B).

    b) Reviewed environmental reports for the Newhall neighborhood including the "ASTM Phase I Environmental Site Assessment" prepared by Haley & Aldrich, Inc., and the "Proposed Remedy Selection Plan, Newhall Street

Neighborhood Remediation Project, Hamden, Connecticut" prepared by the State of Connecticut Department of Environmental Protection (DEP).

c)   Examined the Consent Order issued by the State of Connecticut DEP.

d)   Reviewed the Plaintiff's Motions for Class Certification.

e)   Studied the newhallinfo.org website, including maps, documents, timeline of important dates and events, and news stories covering the contamination. There have been over 100 news stories covering the contamination in the Newhall neighborhood appearing on television (WFSB-Channel 3, WVIT-Channel 30, WTNH-Channel 8), in the print media (New York Times, Hartford Courant, New Haven Register, New Haven Advocate, Yale Daily News, The Hamden Journal, and Hamden Chronicle) and online.

f)   Researched Environmental Land Use Restrictions (ELUR) in Connecticut. Discussions with the DEP indicate that, while ELUR's have been around in Connecticut for around 11 years, most are for commercial and industrial properties. Properties classified as residential are either playing fields or multifamily land. To date, there have been no recorded ELUR's for single family properties in Connecticut. There is some experience with such land use restrictions on single family properties in Massachusetts, and I have conferred with Emmet Logue, MAI, CRE for the purpose of obtaining more information about the historical effects on value of these restrictions.

g)   Analyzed residential sales data reported by the Multiple Listing Service (MLS) from 2001 to present for both the Newhall neighborhood and the town of Hamden, including six properties listed in the "Contaminated Properties

Subclass" sold between 1/1/03 and 3/1/07. The relative market values of these homes were compared to sales of similar homes located remote from the Newhall neighborhood.

5.      Based upon investigation and analysis in accordance with professional standards, it is my opinion that the discovery of contaminated fill has had a negative impact on property values in the Newhall neighborhood. Sales data exhibits clear signs of loss in property value associated with location in the Newhall neighborhood. I believe, to a reasonable degree of professional certainty, that all properties in the proposed Class of properties will suffer a loss in value due to the contamination in the neighborhood. The precise amount of loss will depend on a number of factors, including in particular what final remedy is selected by the Connecticut Department of Environmental Protection.

6.      The loss in property value due to contamination in the Newhall neighborhood will likely increase during the construction phase of remediation, which is anticipated to take several years. During construction, the neighborhood will experience noise, truck traffic and construction activities. Some residents will also need to be relocated during this period. Air particulate monitoring and dust suppression will be required to minimize construction impacts.

7.      The loss in property value will also likely increase if residual levels of contaminants are left on a large number of properties and Environmental Land Use Restrictions are placed on the deeds to properties. This is because, in part, there is a considerable inventory of similar houses available for sale in other neighborhoods that will not carry residual levels of contaminants or restrictions. There is risk associated with the purchase of a contaminated property, and a discount to market value would be necessary to entice a buyer to purchase a contaminated property vs. the purchase of a comparable property that is not contaminated.

8. Among the reasons for the loss in value of properties in the Newhall neighborhood is the stigmatizing effect of contamination. Stigma is defined by the *Dictionary of Real Estate Appraisal, Fourth Edition*, published by the Appraisal Institute as "An adverse public perception regarding a property; the identification of a property with some type of opprobrium (environmental contamination, a grisly crime), which exacts a penalty on the marketability of a property and hence its value." The purchaser of a property in the Newhall neighborhood would require an incentive to reflect the risks associated with the future condition of the property. The residential properties in the Newhall neighborhood are readily substituted, and properties with many substitutes experience the most stigma. Contamination may increase the marketing time for neighborhood residences and make it more difficult or costly to obtain mortgage financing. There is the risk of being relocated during the construction phase of remediation, as well as the loss of quiet enjoyment due to construction noise and truck traffic. All of these factors have a downward impact on market value. For properties burdened with an ELUR, the recorded instrument would highlight the subject's contamination problem to any prospective purchaser and have a negative impact on value. After remediation of the subject property, the loss in value due to stigma will decrease, but not disappear. After the neighborhood remediation is complete, it will likely be more difficult to locate a buyer for the property, as there is the public perception in the marketplace that properties with a history of contamination are less desirable. As time progresses, the risk associated with the contamination problem is reduced, and the loss in value due to stigma lessens.

10. It is also my opinion, to a reasonable degree of professional certainty, that all the properties in the "Contaminated Properties Subclass" will suffer a distinct loss in value as a result of the disposal of contaminated fill directly on or next to them. An analysis of sales to

date in the "Contaminated Properties Subclass" indicates that these properties have already suffered a loss in property value. The final, precise amount of loss will depend, among other things, on the final remedy selected by the Department of Environmental Protection, whether residual contamination is left on these properties, and whether they are burdened, as currently planned, with Environmental Land Use Restrictions.

11.     In conclusion, there is an underlying stigma in the Newhall neighborhood resulting from the discovery of contaminated fill, which has a negative impact on property values. The style and price range of residences in this neighborhood are typical of the market and are readily substituted in other areas of Hamden, which necessitates a discount to market value to attract buyers. In addition to the underlying neighborhood stigma, properties with contaminated fill directly on them suffer further loss in value due to increased ownership risks. Of these contaminated properties, the properties left with residual contamination after remediation and an Environmental Land Use Restriction filed on the land records would be expected to suffer the greatest loss in value.

Dated this 23rd day of March, 2007

_____
Christopher K. Kerin, MAI, CCIM

# OUTLINE OF QUALIFICATIONS, EDUCATION, AND EXPERIENCE OF CHRISTOPHER KERIN

## BIOGRAPHICAL DATA

Chris has an advanced level of expertise in real estate investment and valuation, having earned the elite CCIM and MAI designations. He has over twenty years of experience advising leading state, national and international firms active in the Connecticut real estate market. Chris is a member of the Appraisal Institute, CCIM Institute, and International Council of Shopping Centers. He is licensed in Connecticut as a real estate broker, certified general appraiser, and municipal revaluation supervisor. Graduating from the University of Connecticut with a degree in finance and concentration in real estate and urban economic studies, Chris' post-graduate work includes study in eminent domain, ad valorem taxation, and environmental risk.

## PROFESSIONAL AFFILIATIONS

Appraisal Institute – MAI Designation, Certificate No. 10693
CCIM Institute – CCIM Designation, Certificate No. 8949
Connecticut Office of Policy and Management – Certified to Perform Revaluation Functions for Land/Residential/Commercial/Industrial/Supervisor - Certificate No. 790
Member - National Association of Realtors
Member - International Council of Shopping Centers
Member – International Real Estate Federation
Connecticut Broker License No. 750623
Connecticut Certified General Appraiser No. 329

## EDUCATION AND TRAINING

University of Connecticut, B.S. Degree, Business Administration, May, 1989, Finance, Real Estate and Urban Economic Studies, Cum Laude

Completed numerous courses and seminars offered by the Appraisal Institute, CCIM Institute, National Association of Realtors, University of Connecticut, as well as other real estate institutions, including the following:

- Environmental Risk and Real Estate
- GIS Applications for Real Estate
- Evaluating Commercial Construction
- Affordable Housing Valuation
- Eminent Domain Valuation
- Principals of Income Property Appraisal
- Standards of Professional Practice
- Valuing Local Retail Properties
- Case Studies in Real Estate Valuation
- Tax-Deferred 1031 Property Exchange
- The Appraiser as an Expert Witness
- Ethics in Real Estate
- Real Estate Finance
- Principles of Real Estate

## QUALIFICATIONS OF CHRISTOPHER KERIN (Continued)

### LECTURER

Chris has taught real estate appraisal courses and seminars for local Connecticut organizations including the Connecticut Bar Association, New Haven Bar Association, Connecticut Association of Assessing Officers, Litchfield Area Assessor's Association, and the Roxbury Land Trust.

### EXPERT WITNESS BACKGROUND

Qualified as expert real estate witness appraising in Federal Court and in State Courts in Fairfield, Hartford, Litchfield and New Haven Counties.

### EMPLOYMENT

| | |
|---|---|
| 4/04 - Present: | Member of Kerin & Fazio LLC, Fairfield, CT |
| 1/06 - Present: | Member of Total Valuation Services, Waterbury, CT |
| 11/95 - 4/04: | President of Kerin Commercial Real Estate, Bridgeport, CT |
| 2/99 - 1/01: | Executive Vice President, Wilson Commercial Real Estate, Wilton, CT |
| 11/95 - 2/99: | Executive Vice President, New England Land Company, Greenwich, CT |
| 5/89 - 11/95: | Lesher-Glendinning & Company, Inc., Ridgefield, CT |
| 11/85 - 2/87: | Coldwell Banker Commercial Real Estate, Stamford, CT |

### REFERENCE OF WORKING EXPERIENCE

Individuals, attorneys, corporations, municipalities and State Agencies, including: U.S. Department of the Interior, Connecticut Department of Transportation, The Connecticut Light and Power Company, Resolution Trust Corporation (RTC), Chase Manhattan Bank, Chemical Bank, First Union Bank, Fairfield County Bank, Burger King, Pizza Hut of America, Mobil Oil Corporation, Marriott Corporation, Skanska (U.S.A.), Inc., Stamford Hospital, W & M Properties, A.D. Phelps, Inc., etc.

## REPRESENTATIVE CLIENT LIST

| | |
|---|---|
| Albert D. Phelps | United States Department of Interior |
| Archon Financial | Connecticut Department of Public Works |
| Ashforth Properties | Connecticut Department of Transportation |
| Belgravia Capital Corporation | Connecticut Development Authority |
| Berkshire Corporate Park | Connecticut Light and Power Company |
| Burger King | Connecticut Resources Recovery Authority |
| D'Addario Industries | Federal Deposit Insurance Corporation |
| Enterprise Rent-A-Car | ISO New England |
| Heller Real Estate Financial Services | Diocese of Bridgeport |
| Hoffman Brothers | Nature Conservancy |
| IBM Corporation | Resolution Trust Corporation |
| Marriott Corporation | Trust for Public Land |
| Mobil Oil Corporation | Town of Brookfield |
| Pizza Hut of America | Town of Darien |
| Skanska (U.S.A.), Inc. | Town of Hamden |
| Stamford Hospital | Town of Greenwich |
| Stop & Shop Supermarket Co. | Town of New Canaan |
| Texaco | Town of Newtown |
| The Prudential Mortgage Capital Co. | Town of North Branford |
| W & M Properties of Connecticut | Town of Redding |
| Abate & Fox | Town of Ridgefield |
| Albert, Ward & Johnson | Town of Southbury |
| Cacace, Tusch & Santagata | Town of Weston |
| Church & Church | Bank of Darien |
| Cohen & Wolfe | Bayerische Vereinsbank AG (New York) |
| Cummings & Lockwood | Chase Manhattan Bank |
| Curtis, Brinckerhoff & Barrett | East Bank |
| Day, Berry & Howard | Chemical Bank |
| Ivey, Barnum & O'Mara | European American Bank |
| Lovejoy and Rimer | NewMil Bank |
| Owens, Schine & Nicola | Newtown Savings Bank |
| Pepe & Hazard | Ridgefield Bank |
| Pinney, Payne, Van Lenten, Dillman | Union Savings Bank |
| Pullman & Comley | Webster Bank |
| Tierney, Zullo, Flaherty and Murphy | Westport Bank & Trust |
| Wise & Wise | Wilton Bank |

## REPRESENTATIVE ASSIGNMENT LIST

| PROPERTY | CITY | PROPERTY TYPE | SIZE |
|---|---|---|---|
| Merritt Seven | Norwalk, CT | Office | 1,000,000+ S.F. |
| Stamford Plaza | Stamford, CT | Office | 950,000 S.F. |
| Kettletown Road | Southbury, CT | Office | 850,000 S.F. |
| Greenwich Office Park | Greenwich, CT | Office | 430,000 S.F. |
| Canterbury Green | Stamford, CT | Office/Apartment | 350,000 S.F. |
| 2 Steamboat Road | Greenwich, CT | Office | 290,000 S.F. |
| Crystal Mall | Waterford, CT | Regional Mall | 1,000,000+ S.F. |
| Summer & Bedford | Stamford, CT | Shopping Center | 400,000 S.F. |
| 955 Ferry Boulevard | Stratford, CT | Shopping Center | 190,000 S.F. |
| Sand Hill Plaza | Newtown, CT | Shopping Center | 160,000 S.F. |
| 6900 Main Street | Stratford, CT | Industrial | 1,900,000 S.F. |
| 500 Main Street | Stratford, CT | Industrial | 1,550,000 S.F. |
| Housatonic Avenue | Bridgeport, CT | Industrial | 680,000 S.F. |
| Reserve & Maxim Roads | Hartford, CT | Power Plant | 400,000 S.F. |
| 97 Newberry Road | East Windsor, CT | Industrial | 280,000 S.F. |
| 901 Ethan Allen Hwy | Ridgefield, CT | Industrial | 200,000 S.F. |
| 607 Bantam Road | Litchfield, CT | Industrial | 150,000 S.F. |
| Heritage Village | Southbury, CT | Senior Housing | 2,580 Units |
| Redding Road | Redding, CT | Senior Housing | 382 Units |
| Sand Pit Road | Danbury, CT | Senior Housing | 345 Units |
| Palmer & Havemeyer | Stamford, CT | Senior Housing | 287 Units |
| 1165 King Street | Greenwich, CT | Senior Housing | 210 Units |
| Newbury Commons | Stamford, CT | 260 Unit Apartment | 330,000 S.F. |
| The Classic | Stamford, CT | 144 Unit Apartment | 230,000 S.F. |
| Black Rock Turnpike | Easton/Weston, CT | Residential Land | 730 Acres |
| Heritage at East Lyme | East Lyme, CT | Residential Land | 340 Acres |
| Route 202 | Washington, CT | Residential Land | 280 Acres |
| Good Hill Farm | Roxbury, CT | Residential Land | 240 Acres |
| Old Farm Hill | Newtown, CT | Residential Land | 150 Acres |
| Sail Harbour Club | Sherman, CT | Waterfront Land | 130 Acres |
| Indian Mill Road | Greenwich, CT | Residential Land | 110 Acres |
| High School Lane | Darien, CT | High School | 340,000 S.F. |
| Unquowa Road | Fairfield, CT | Middle & High School | 490,000 S.F. |
| 660 Morehouse Road | Easton, CT | Elementary School | 77,000 S.F. |
| 377 North Wilton Road | Wilton, CT | Elementary School | 70,000 S.F. |

## COURT CASES AND DEPOSITIONS OF CHRISTOPHER KERIN
## DURING THE PAST FOUR YEARS

| Date | Court Case | Property Identification |
|---|---|---|
| 3/21/06 | Danbury Superior Court<br>Hoyt et al v. DOT | 40 & 64 Laurel Hill Road<br>Brookfield, Connecticut |
| 3/1/06 | Supreme Court of the State of New York<br>Petition for Asset Sale Approval | Japanese Educational Institute<br>270 Lake Avenue, Greenwich, CT |
| 11/15/05 | Waterbury Superior Court<br>Brookside at Middlebury v. Middlebury | Brookside at Middlebury<br>Christian Road, Middlebury, CT |
| 11/10/05 | United States Bankruptcy Court<br>Newtown v. Homesteads at Newtown | The Homesteads at Newtown<br>Mount Pleasant Road, Newtown, CT |
| 11/2/05 | Stamford Superior Court<br>John Paul v. DOT | 436 Danbury Road<br>Wilton, Connecticut |
| 10/4/05 | Bridgeport Superior Court<br>Steiner v. Fairfield | Duck Farm Estates<br>Duck Farm Road, Fairfield, CT |
| 8/11/05 | New Britain Superior Court<br>Cedar Heights v. Stratford | Cedar Heights Condominium<br>446 & 556 Hollister Street, Stratford, CT |
| 3/4/05 | Waterbury Superior Court<br>Sheraton Hotel v. Waterbury | Sheraton Waterbury Hotel<br>3580 East Main Street, Waterbury, CT |
| 1/25/05 | Milford Superior Court<br>Saranor Apartments v. Milford | Saranor Apartments, Milford, CT |
| 2/6/04 | Deposition<br>Roton Point v. Norwalk | 15 Pine Point Road, Norwalk, CT |
| 1/21/04 | Danbury Superior Court<br>Eureka V LLC v. Ridgefield | 616 Bennetts Farm Road, Ridgefield, CT |
| 12/2/03 | Stamford Superior Court<br>Prudential v. Norwalk | Prudential Financial Center<br>32 Weed Avenue, Norwalk, CT |
| 10/23/03 | New Britain Superior Court<br>400 Long Beach LP v. Stratford | 400 Long Beach Boulevard, Stratford, CT |

| 10/9/03 | New Britain Superior Court Tuttle Judd v. Southbury | Tuttle Road, Judd Road, and Strongtown Road, Southbury, CT |

