```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF CONNECTICUT
 2

 3
                         No. 3:03-CV-945(CFD)
 4

 5   CLARENCE COLLINS, JR., ET AL

 6   VS                            ORIGINAL

 7   OLIN CORPORATION

 8

 9       Deposition of:  SHANNON WINDISCH POCIU, taken

10   pursuant to Rule 30 of the Federal Rules of Civil

11   Procedure before Barbara L. Murphy, Licensed Shorthand

12   Reporter, License No. 305 and Notary Public within and

13   for the state of Connecticut, held at the offices of

14   Brown, Rudnick, Berlack, Israels, 185 Asylum Street,

15   Hartford, Connecticut on April 25, 2007 commencing at

16   9:10 a.m.
```

DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE
MADISON, CT 06443
(203)245-9583
(203)245-2760

STAMFORD          HARTFORD          NEW HAVEN

**DEL VECCHIO REPORTING SERVICES, LLC**

1  Shepard Street, do you recall?
2      A.  Yes.
3      Q.  Am I correct that this is at least an
4  example of one property where based on specific
5  testing conducted on behalf of the DEP it was
6  determined that while there was arsenic and lead
7  present there, it did not appear to be related to
8  historic filling, correct?
9              MR. RAINER:  Objection.
10             THE WITNESS:  Yes.
11 BY MR. PRAISS:
12     Q.  Am I correct that the DEP determined that,
13 in fact, there were the possibility that, you know,
14 this wasn't necessarily an isolated case but there
15 could be other instances where the presence of lead
16 was due to lead paint or potentially arsenic was
17 present due to use of pesticides by homeowners?
18             MR. RAINER:  Objection.
19             THE WITNESS:  Yes.  I have to state my
20 misspeaking earlier was we were looking at documents
21 in the timeframe 2001 and I was thinking about what
22 our -- what the department's ideas were at that time
23 but yes.
24 BY MR. PRAISS:
25     Q.  But my question clearly we're looking at a

1  document in 2003 here and I'm going based -- at the
2  present time sitting here today the DEP based on
3  testing at Sonia Powell's house or potentially other
4  residences recognizes that the mere fact you have lead
5  or arsenic present in a place, doesn't necessarily
6  mean it originated from the landfill but it could have
7  come from other sources such as pesticides or lead
8  paint?
9            MR. RAINER:  Objection.
10           THE WITNESS:  Yes, that's true.
11  BY MR. PRAISS:
12     Q.   Now, real quick.  Does the name Michael
13  Hopkins ring a bell with you at all?
14     A.   Yes.
15     Q.   I'll represent to you that he is -- purports
16  to be -- submitted an expert report on behalf of the
17  plaintiffs in this case and my only question is what
18  dealings, if any, did you have with Mr. Hopkins?
19     A.   I believe he's a consultant with ECS that
20  submitted comments on Olin's investigation reports or
21  it -- also potentially on -- actually I don't know.
22           I'm trying to remember if he submitted a
23  public comment in regards to the department's proposed
24  plan for the remediation of the neighborhood.  But I
25  believe he had submitted or comments were submitted

1  wells. Federal and state Superfund depending on if
2  that site was relevant.
3        So I had just been, geez, I'd been
4  working under Tom RisCassi, my supervisor, for only a
5  couple of months before the Newhall site came up.
6  Does that clarify a little bit?
7     Q.   Yes. Thank you. And after the Newhall site
8  came up, you've indicated you were assigned to work on
9  it; is that right?
10    A.   Yes, that's correct.
11    Q.   And have worked on it ever since?
12    A.   Yes, that's true.
13    Q.   And throughout that period which -- -- well,
14  let's try to figure out when it started.
15        You said you had only been under Tom
16  RisCassi for only a few months.
17        Do you recall when that was?
18    A.   I believe our reorganization was sometime in
19  the summer of 2000. And we became aware of the Middle
20  School problem in the fall of 2000. So from that time
21  forward until recently I was the primary project
22  manager on the site.
23    Q.   Primary project manager?
24    A.   Yes.
25    Q.   And could you estimate a percentage of your

1  time since the fall of 2000 that has been spent
2  associated with the Hamden site?
3      A.   At least 90 percent if not more.
4      Q.   Ninety percent or more.  Okay.  Now, what do
5  you recall you first became aware of with respect to
6  the Middle School?
7      A.   You're asking when we became aware of the
8  problem?
9      Q.   I guess you used the word problem so why
10 don't you tell me what you mean by that?
11     A.   The existence of a contamination problem.
12     Q.   At the Middle School?
13     A.   At the Middle School.
14     Q.   So what did you learn about contamination at
15 the Middle School when you first heard about it, if
16 you recall?
17     A.   Well, I recall that my supervisor had
18 received a press call wanting to know what was DEP
19 doing about the contamination at Hamden Middle School
20 and the site was not currently on our radar screen.
21          And I was asked to look in our public
22 records room to see what information we had on the
23 site.
24          And I started with one red file folder
25 about an inch thick and that's what I learned about

```
 1                  C E R T I F I C A T E
 2         I hereby certify that I am a Notary Public, in
 3   and for the state of Connecticut, duly commissioned
 4   and qualified to administer oaths.
 5         I further certify that the deponent named in
 6   the foregoing deposition was by me duly sworn, and
 7   thereupon testified as appeared in the foregoing
 8   deposition; that said deposition was taken by me
 9   stenographically in the presence of counsel and
10   reduced to typewriting under my direction, and the
11   foregoing is a true and accurate transcript of the
12   testimony.
13         I further certify that I am neither of counsel
14   nor attorney to either of the parties to said suit,
15   nor am I an employee of either party to said suit, nor
16   of either counsel in said suit, nor am I interested in
17   the outcome of said cause.
18         Witness my hand and seal as Notary Public this
19   1st day of May, 2007.
20
21
22
23                    Barbara L. Murphy, LSR
                      Notary Public
24
25   My Commission Expires:
     June 30, 2007
```

**DEL VECCHIO REPORTING SERVICES, LLC**

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF CONNECTICUT
 2

 3   VOLUME II

 4
                                  No. 3:03-CV-945(CFD)
 5

 6   CLARENCE COLLINS, JR., ET AL

 7   VS                              ORIGINAL

 8   OLIN CORPORATION

 9

10         Deposition of: SHANNON WINDISCH POCIU, taken

11   pursuant to Rule 30 of the Federal Rules of Civil

12   Procedure before Barbara L. Murphy, Licensed Shorthand

13   Reporter, License No. 305 and Notary Public within and

14   for the state of Connecticut, held at the offices of

15   Brown, Rudnick, Berlack, Israels, 185 Asylum Street,

16   Hartford, Connecticut on April 26, 2007 commencing at

17   9:10 a.m.

18

19

20

21
              DEL VECCHIO REPORTING SERVICES, LLC
22             PROFESSIONAL SHORTHAND REPORTERS
                       117 RANDI DRIVE
23                   MADISON, CT 06443
                       (203)245-9583
24                     (203)245-2760

25   STAMFORD          HARTFORD              NEW HAVEN
```

**DEL VECCHIO REPORTING SERVICES, LLC**

```
 1                Do you recall that?
 2        A.   Yes.
 3        Q.   Would you agree with me that through the
 4   course of the DEP's investigation into the site it
 5   determined that there were contaminants, different
 6   types of contaminants throughout the site, first of
 7   all, correct?
 8        A.   Yes.
 9        Q.   And am I correct that the DEP determined
10   that the contaminants originated from potentially
11   different sources, correct?
12        A.   Yes.
13        Q.   Am I correct that the DEP determined that
14   some of contaminants originated from an industrial
15   waste, correct?
16        A.   Yes.
17        Q.   And with respect to the industrial waste the
18   DEP determined that it originated from potentially
19   different companies, not just Olin, correct?
20             MR. RAINER:   Objection.
21             THE WITNESS:   We were open to that
22   possibility, however, we did not receive any evidence
23   that any other company disposed of materials and
24   certainly in as large of quantities as Winchester
25   likely did.
```

BY MR. PRAISS:

    Q.   Okay. Am I correct you discovered instances where there were contaminants from household waste?

    A.   Yes.

    Q.   And am I correct that the DEP identified instances where contaminants were from lead paint?

    A.   Yes.

    Q.   Am I correct the DEP determined there were instances where contaminants were from pesticide use?

    A.   Yes, I believe so.

    Q.   And am I correct that one would have to go and look at data specific for each particular property to evaluate to what extent any contaminants in that property originated from any one of these potential sources?

    MR. RAINER:  Objection.

    THE WITNESS:  Yes.

    MR. PRAISS:  I think I have no further questions.

    MR. RAINER:  I need to just follow-up on Exhibit 521.

RECROSS EXAMINATION BY MR. RAINER

    Q.   First of all, you don't know, do you, whether -- well, here is the question.

    Do you know whether this

C E R T I F I C A T E

I hereby certify that I am a Notary Public, in and for the state of Connecticut, duly commissioned and qualified to administer oaths.

I further certify that the deponent named in the foregoing deposition was by me duly sworn, and thereupon testified as appeared in the foregoing deposition; that said deposition was taken by me stenographically in the presence of counsel and reduced to typewriting under my direction, and the foregoing is a true and accurate transcript of the testimony.

I further certify that I am neither of counsel nor attorney to either of the parties to said suit, nor am I an employee of either party to said suit, nor of either counsel in said suit, nor am I interested in the outcome of said cause.

Witness my hand and seal as Notary Public this 1st day of May, 2007.

Barbara L. Murphy, LSR
Notary Public

My Commission Expires:
June 30, 2007

**DEL VECCHIO REPORTING SERVICES, LLC**