

COPY

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARENCE R. COLLINS, JR., et al. | : | CIVIL ACTION NO. 3:03 CV-945 (CFD) |
| | : | |
| V. | : | |
| | : | |
| OLIN CORPORATION, et al. | : | NOVEMBER 15, 2003 |

### RESPONSES OF ELIAS ROCHESTER
### RE: FIRST SET OF INTERROGATORIES BY
### OLIN CORPORATION REGARDING CLASS CERTIFICATION ISSUES

The following responses to interrogatories are made subject to Plaintiffs' Consolidated

Objections to Olin Corporation's First Sets of Interrogatories Regarding Class Certification Issues,

which are hereby incorporated by reference as if the same were set forth fully herein.

1.    State whether You are the owner of the Property; and if so:

Objection.   Without waiving the foregoing objections, this Plaintiff responds as

follows related to the time periods during which Plaintiff has owned the Property:

a.    Identify all other persons with any ownership interest in the Property;

Please see response to Interrogatory No. 6.

b.    State the date on which You acquired Your ownership interest in the

Property, the person or entity from whom You acquired such interest, and the

purchase price or consideration paid for the Property;

February 2003.

$165,000.00.



DEFENDANT'S
EXHIBIT NO. 87
FOR IDENTIFICATION
DATE 2/10/04 rc RPTR.
PENGAD 800-631-6989

e.      State whether prior to the purchase of the Property or at any time after Your purchase of the property, You performed (either personally or by retaining another to perform) any inspection, appraisal, or evaluation and when; and

This Plaintiff cannot recall.  Any information in Plaintiff's possession related to the purchase of the Property will be produced in response to Defendant's First Request for Production of Documents.

f.      State whether You have attempted to sell or offered to sell the Property, and if so, state the date(s) on which such attempts or offers have been made, the offering or asking price for the Property and, if You used a real estate agent or broker, the name and address of the agent or broker.

Plaintiff has made no attempts to sell or offer to sell the Property.

2.      State the date the Property was developed and the date the home located on the Property was built.

Objection.  Without waiving the foregoing objections, this Plaintiff responds as follows related to the time periods during which Plaintiff has owned the Property:

Plaintiff bought the Property with the house already built.

3.      Identify the address of each of Your places of residence from 1990 to the present, and if you currently reside on the Property, please state whether You have any intention of moving from the Property in the next five years.

Objection.  Without waiving the foregoing objections, this Plaintiff responds as follows related to the time periods during which Plaintiff has owned the Property:

Please see answer to Interrogatory No. 1.

2

4.    State whether You have children, and if so, state how many children, each ones age and where each child went to school from 1990 to the present.

Asia Rochester, born June 2003.

5.    Identify all persons who to Your knowledge have resided at the Property at any time, and for each such person, state the date(s) or period(s) during which he or she has resided at the Property.

Objection.  Without waiving the foregoing objections, this Plaintiff responds as follows related to the time periods during which Plaintiff has owned the Property:

Linda Waters has resided at the property from February 2003 until present.

Angel Rivera has resided at the property from February 2003 until present.

Olivia Swain has resided at the property from February 2003 until present.

6.    Identify all persons who to Your knowledge have had at any time an ownership interest in the Property, and for each such person, state the nature of his or her ownership interest, the date he or she acquired such ownership interest, the date he or she transferred such ownership interest, and the consideration paid for such transfer.

Objection.    Without waiving the foregoing objections, this Plaintiff responds as follows related to the time periods during which Plaintiff has owned the Property:

Elias Rochester is the current owner of the Property.  He acquired an ownership interest in the Property in 2003 and has not transferred their ownership interest to date.

7.    State the amount and basis for Your claim that the value of the Property has been diminished by virtue of the acts or omissions of Olin, and identify all documents supporting, substantiating, or concerning that claim.

Objection.  Without waiving the foregoing objection, and in addition to any expert opinions Plaintiffs may provide at a later date pursuant to the Federal Rules of Civil Procedure, this Plaintiff responds as follows:

Historically and continuing well into the mid to late 1900's, the State of Connecticut attempted to eliminate wetlands and low lying areas by encouraging the filling of these areas.  As early as 1915, Hamden solicited owners of properties containing wetlands and low lying areas to allow refuse to be dumped onto their properties.  Hamden would operate dumps on these properties and when filled, the properties would be developed by their owners.  Some time prior to 1917, Hamden established a dump in the areas of Plaintiff's Property.  Winchester, with the approval of the Town of Hamden, began disposing of its industrial waste and ash in this and surrounding areas sometime after 1915.  Winchester and/or its successor, Olin, continued to dump ash and other industrial waste on Plaintiff's Property and surrounding properties in Hamden until the disposal facilities were closed and residential properties were built on top of the facilities.  Beginning in approximately 1915, portions of the privately owned property used by Hamden for disposal were developed into residential properties.   The Town of Hamden and Olin were aware that after each of these dumps was closed for disposal, residential structures were constructed on the former dump sites.

During the year 2000 and early 2001 the United States Environmental Protection Agency (USEPA) conducted studies that confirmed that chemicals and wastes from historical firearm and ammunition manufacturing operations had been disposed in former wetland areas bordering on residential areas in and around the Newhall Section of Hamden.  Due to additional evidence that these filling activities had occurred in the area of Plaintiff's Property and surrounding Plaintiff's

4

Property which now serve as residential neighborhoods, the USEPA agreed to study these residential areas for the presence of contamination.

In or about April 2001 the USEPA conducted surficial soil sampling on 76 private properties in the Newhall Street Neighborhood Area and analyzed these samples for a variety of organic and inorganic contaminants including but not limited to lead, arsenic, semi-volatile organic compounds (SVOCs) and polycyclic aromatic hydrocarbons (PAHs). Over 25% of these samples contained lead concentrations which exceeded acceptable state standards for residential property soils. Approximately 10% of the collected samples exceeded the "action level" developed by USEPA and the Connecticut Department of Environmental Protection ("CTDEP"); according to the CTDEP this concentration presents a threat of elevated lead levels in blood of children and/or adults which can lead to a variety of physical and cognitive impairments.

Results of these analyses were sent to various individual property owners by letter dated May 29, 2001 or thereafter. USEPA carried out a "time-critical removal action" at 13 residential properties known to exceed the action level, removing soil down to 18 inches or greater and replacing it with clean fill. Materials uncovered during the excavation program included a number of waste materials including industrial materials related to firearms, ammunition and battery production. CTDEP sampled soils beneath the excavated layers on these residential surficial and collected deeper soil samples at over 20 additional properties which demonstrated widespread contamination and filling of industrial wastes throughout the area. A large number of the residential properties in the Newhall Section remain uncharacterized with no information concerning the nature or extent of waste or contamination in surficial and subsurface soils or groundwater, and the risks associated with that contamination. Elevated concentrations of these various hazardous constituents

may lead to a variety of physical and cognitive ailments including nervous system dysfunction, renal problems, cancer and/or a variety of other deleterious conditions. In or about December 2002 consultants for Olin reported that analyses of this fill in and around the Plaintiff's Property indicate the presence of elevated concentrations of metals in residential site soil (principally arsenic and lead), PAHs, and that groundwater quality and deeper soil deposits are largely uncharacterized.

This Plaintiff will produce all documents in his possession related to the valuation of his Property (please see response to Defendant's First Request for Production of Documents).

8.     Identify by object, nature, location, and the date it was discovered by You or any other persons all wastes, contaminants, or adverse environmental conditions which You claim to be present at the property, as referred to in the Amended Complaint.

Objection. Without waiving the foregoing objection, and in addition to any expert opinions Plaintiffs may provide at a later date pursuant to the Federal Rules of Civil Procedure, this Plaintiff responds as follows:

Plaintiff has not personally performed any environmental testing with respect to the Property. The Plaintiff's property is designated in the Affidavit of Michael Hopkins, affixed to Plaintiffs' Motion for Class Certification, as being within the area which is believed to have been contaminated by Olin and Hamden's dumping of waste containing hazardous substances. To the best of Plaintiff's knowledge, Olin and/or the Connecticut Department of Environmental Protection has performed or is intending to perform environmental testing on the Property. In addition, the United States Environmental Protection Agency may have performed testing on Plaintiff's Property. Any information related to governmental testing performed on Plaintiff's Property can be obtained by the Defendant from the governmental entity performing such testing.

6

In addition, please see response to Interrogatory No. 7.

9.     Describe in detail the "severe emotional distress" which You claim You have
sustained as a result of the acts or omissions of Olin as referred to in the Amended Complaint, and
for all such "severe emotional distress," identify all persons, including doctors, psychiatrists,
psychologists, counselors, other mental health professionals, advisers, or other persons whom You
have consulted or who have provided treatment to You with respect to such "severe emotional
distress."

Objection. Without waiving the foregoing objection and in addition to any expert
opinions Plaintiffs may provide at a later date pursuant to the Federal Rules of Civil Procedure, this
Plaintiff responds as follows:

Pursuant to the literature, individuals forced to deal with contamination on their
property frequently suffer from symptoms of stress which can range from generalized stress
conditions to specific psychological disorders including Generalized Anxiety Disorder and/or Post
Traumatic Stress Disorder.  The symptoms can include, but are not limited to the following:

1)     recurrent and intrusive distressing recollections of the contamination including
images thoughts or perceptions;

2)     recurrent distressing dreams of the contamination;

3)     intense psychological distress at exposure to internal or external cues that
symbolize or resemble an aspect of the contamination or its affect on their lives

4)     efforts to avoid thoughts feelings or conversations associated with the
contamination;

5)      efforts to avoid activities places or people that arouse recollections or discussions of the contamination;

6)      inability to recall an important aspects of the contamination;

7)      markedly diminished interest or participation in significant activities;

8)      feeling of detachment or estrangement from others;

9)      restricted range of affect;

10)     a sense of a foreshortened future;

11)     difficulty falling or staying asleep;

12)     irritability or outbursts of anger;

13)     difficulty concentrating;

14)     hypervigilence;

15)     exaggerated startled response;

16)     the disturbance causes clinically significant stress or impairment in social occupational or other important areas of functioning;

17)     excessive anxiety and worry;

18)     difficulty controlling anxiety and the worry;

19)     restlessness or feeling keyed up or on edge;

20)     easily fatigued;

21)     difficulty concentrating or mind going blank;

22)     irritability;

23)     muscle tension;

24)    sleep disturbance, difficulty falling asleep or staying awake or restless

unsatisfying sleep.

With respect to emotional distress, the contamination on Plaintiff's Property has substantially

affected Plaintiff's day-to-day life, emotional well being, family interactions and social interactions.

Although to date Mr. Rochester has not consulted a medical doctor to specifically discuss the

impact he has felt due to the contamination, he is aware of his change in emotional and mental well

being on a daily basis.  Mr. Rochester, without the assistance of a trained medical professional,

recognizes that due to the contamination existing on his Property, he has experienced symptoms of

irritability, worry over day to day matters, pessimism about the future, low self-esteem, loss of

interest and/or decreased participation in significant activities, fatigue or low energy, difficulty

falling or staying asleep; restless, unsatisfying sleep and difficulty concentrating or mind going

blank.

In addition, please see answer to Interrogatory No. 7.  Discovery is ongoing in this action.

Plaintiff reserves the right to supplement this response in accordance with the Federal Rules of Civil

Procedure.

10.    State whether You, or any other persons, have performed any soil testing with respect

to the Property or any alleged conditions at the Property, and if so, identify the person(s) or entities

who performed such testing, state the date(s) of such testing, the results of such testing, and who

paid for such testing.

Objection.  Without waiving the foregoing objections, and in addition to any expert

opinions Plaintiffs may provide at a later date pursuant to the Federal Rules of Civil Procedure, this

Plaintiff responds as follows:

9

Plaintiff has not personally performed any environmental testing with respect to the Property. The Plaintiff's property is designated in the Affidavit of Michael Hopkins, affixed to Plaintiffs' Motion for Class Certification, as being within the area which is believed to have been contaminated by Olin and Hamden's dumping of waste containing hazardous substances, therefore, to the best of Plaintiff's knowledge, Olin and/or the Connecticut Department of Environmental Protection has performed or is intending to perform environmental testing on the Property. In addition, the United States Environmental Protection Agency may have performed testing on Plaintiff's Property. Any information related to governmental testing performed on Plaintiff's Property can be obtained by the Defendant from the governmental entity performing such testing.

In addition, please see response to Interrogatory No. 7.

11.     State the manner by which You claim the acts or omissions of Olin have interfered with Your use or enjoyment of the Property, as alleged in the Amended Complaint, including the date(s) of such interference, all facts substantiating or supporting Your claims of such interference, and the identification of all witnesses who will support or substantiating such claims.

Objection. Without waiving the foregoing objection and in addition to any expert opinions Plaintiffs may provide at a later date pursuant to the Federal Rules of Civil Procedure, this Plaintiff responds as follows:

Due to the contamination on Plaintiff's Property, Plaintiff no longer plants or tends to a garden in his yard. For years, Plaintiff and his family had a vegetable garden on this Property where they grew vegetables. Further, the Plaintiff had maintained mature pear trees on the Property and can no longer enjoy this activity.

This list is not intended to be exclusive, and as Plaintiff becomes aware of further impacts caused by the contamination, Plaintiff reserves the right to supplement this answer. In addition, please see answer to Interrogatory No. 7 and Plaintiffs' Amended Complaint. Plaintiff reserves the right to supplement this answer, if necessary, in conformance with the Federal Rules of Civil Procedure and/or any orders of the Court.

12.    To the extent not previously described, identify and describe in detail any damages You claim to have been caused or contributed to by Olin, by virtue of any of the acts or omissions alleged in the Amended Complaint, and identify all documents and persons supporting such claims of damages.

Objection. Without waiving the foregoing objection and in addition to any expert opinions Plaintiffs may provide at a later date pursuant to the Federal Rules of Civil Procedure, this Plaintiff responds as follows:

See responses to Interrogatory No. 5, 6, 7, 9, 10 and Plaintiffs' Amended Complaint. Discovery in this case is ongoing. Plaintiff reserves the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

13.    Identify and describe all communications between You, on the one hand, and any other member or any representatives of the Proposed Class or of residents of the Newhall Section, on the other, which concern or relate to, in whole or in part, any of the allegations in the Amended Complaint.

Objection.   Without waiving the foregoing objections, this Plaintiff responds as follows:

This Plaintiff has spoken to numerous neighbors about the neighborhood contamination. Plaintiff cannot possibly recall specific details with respect to each and every conversation or communication. Generally, these conversations related to environmental testing of Plaintiff's Property and the contamination in the neighborhood and its effects.

14.     State whether You have attended any hearings, meetings, proceedings, or other gatherings with respect to the environmental conditions or relief requested, as alleged in the Amended Complaint, and if so, state the date(s) of each hearing, meeting, proceeding, or gathering attended by You, identify the other persons present at each such event, and describe the substance of all communications at such event.

Objection.     Without waving the foregoing objections, this Plaintiff responds as follows:

This Plaintiff has attended numerous neighborhood meetings related to the Property contamination. Plaintiff cannot possibly recall specific details with respect to each and every meeting attended. Generally, these meetings provided information with respect to environmental testing of Plaintiff's Property and the contamination in the neighborhood and its effects.

15.     State whether You have attended any hearings, meetings, proceedings, gatherings, or have otherwise participated in, the DEP Process that is overseeing the investigation and remediation of the Newhall Section, and if so, state the date(s) of each hearing, meeting, proceeding, gathering attended by You or other participation, identify the other persons present at each such event, and describe the substance of all communications at such event.

Objection.     Without waving the foregoing objections, this Plaintiff responds as follows:

12

This Plaintiff has attended numerous neighborhood meetings related to the Property contamination.  Plaintiff cannot possibly recall specific details with respect to each and every meeting attended.  Generally, these meetings provided information with respect to environmental testing of Plaintiff's Property and the contamination in the neighborhood and its effects.

16.    State the manner by which You will fairly and adequately protect the interests of the other members of the Class, as alleged in the Amended Complaint.

Objection pending.

17.    Describe by date, location, and project or task, all construction, demolition, renovation, landscaping, or other work (other than regular, periodic homeowner maintenance) performed by or for You at the Property, and if such work was performed by persons other than You, identify the person(s) or entity(s) performing such work or tasks.

Objection.  Without waiving the foregoing objections, this Plaintiff responds as follows:

Mr. Rochester is in the process of renovating the basement and has erected a fence.

18.    State the type of fuel You use to heat Your home, how long You have used this fuel and, if this is not the original fuel, what type of fuel was the original fuel and state the date of the conversion to the current fuel.

Objection.  Without waiving forgoing objections, this Plaintiff responds as follows:

Mr. Rochester currently uses gas to heat the home on his Property.

19.    State whether You have subscribed to a newspaper(s) from 1990 to the present and, if so, identify each such newspaper and state the time period between which You have so subscribed.

Objection.

13

20.     State the name of the bank; lender or other financing institution that provided Your original financing or refinancing (i.e., second mortgage, home equity loan, home equity line of credit) for Your house, the address of all such institutions and the dates of such financing.

Objection.  Without waiving forgoing objections, this Plaintiff responds as follows: The original mortgage was through Ameriquest Mortgage.

21.     Describe in detail how You came to be a named Plaintiff in the Action.

Objection pending.

22.     State the amount of money and time You expect to spend prosecuting the Action.

Objection pending.

THE PLAINTIFF,


By_____
    David B. Zabel, Esq. ct01382
    dzabel@cohenandwolf.com
    Monte E. Frank, Esq. ct13666
    mfrank@cohenandwolf.com
    Cohen and Wolf, PC
    1115 Broad Street
    Bridgeport, Connecticut 06604
    Tele:  (203) 368-0211
    Fax:  (203) 394-9901

    Mark Roberts, Esq.
    mroberts@mcrobertsandroberts.com
    McRoberts & Roberts, LLP
    101 Merrimac Street
    Boston, Massachusetts 02114
    Tele: (617) 722-8222
    Fax: (617) 720-2320

    Neil T. Leifer, Esq.
    nleifer@tenlaw.com
    David C. Strouss, Esq.
    dstrouss@tenlaw.com
    Brad J. Mitchell, Esq.
    bmitchell@tenlaw.com
    Thornton & Naumes L.L.P
    100 Summer Street, 30th Floor
    Boston, Massachusetts 02110
    Tele: (617) 720-1333
    Fax:  (617) 720-2445

## CERTIFICATION OF SERVICE

I hereby certify that on the 20th of November, 2003, a copy of the foregoing was served by

first class U.S. mail, postage prepaid, upon all counsel and pro se parties of record, as follows:

Ann M. Catino, Esq.
Joseph G. Fortner, Jr., Esq.
Laurie R. Steinberg, Esq.
Brian D. Rich, Esq.
HALLORAN & SAGE LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Michael H. Wetmore, Esq.
Joel B. Samson, Esq.
HUSCH & EPPENBERGER, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

Sandra K. Davis, Esq.
Mark S. Baldwin, Esq.
BROWN RUDNICK BERLACK ISRAELS LLP
185 Asylum Street, 38th Floor
Hartford, CT 06103-3402


_____
Brad J. Mitchell