

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CLARENCE R. COLLINS, JR., et al.　　：　　CIVIL ACTION NO. 3:03 CV-945 (CFD)

　　　　　　　　　　　　　　　　　：

V.　　　　　　　　　　　　　　　　：

　　　　　　　　　　　　　　　　　：

OLIN CORPORATION, et al.　　　　　：　　NOVEMBER 19, 2003

### RESPONSES OF RUTH B. EATON
### RE: FIRST SET OF INTERROGATORIES BY
### TOWN OF HAMDEN REGARDING CLASS ACTION ISSUES

The following responses to interrogatories are made subject to the Plaintiffs' Consolidated

Objections to the First Set of Interrogatories by Town of Hamden Regarding Class Action Issues,

which are hereby incorporated by reference as if the same were set forth fully herein.

### INTERROGATORIES

1. State Your full name, all other names by which You have been known, Your date of

birth, and Your Social Security number.

　　Objection.  Without waiving the foregoing objection, these Plaintiffs respond as

follows:

　　　Donald Bray Eaton - Date of Birth – October 17, 1945

　　　Ruth Broadmax Eaton - Date of Birth October 28, 1951

2. State whether You are an owner of the Property, and if so:

　　Objection.  Without waiving the foregoing objection, these Plaintiffs respond as

follows related to the time periods during which these Plaintiffs have owned the Property:

　　　a.  Identify all other persons with any ownership interest in the Property;

DEFENDANT'S
EXHIBIT
35
12-2-04 KSN

Please see response to Interrogatory No. 4.

b.  State the date on which You acquired Your ownership interest in the Property;

Mr. and Mrs. Eaton purchased their property in August 1981

c.  Identify the person from whom You acquired the Property;

Mr. and Mrs. Eaton purchased their home from Ruth Nelson.

d.  Identify the real estate broker and agency who served as the agent for the Property;

The agency used by Mr. and Mrs. Eaton was the Wellman Fisher Realty Company.  The Plaintiffs do not recall the name of the broker.  Any information in the Plaintiffs' possession related to their purchase of the property will be produced in response to the Defendant's First Request For Production of Documents.

e.  State the purchase price or consideration paid for the Property;

$63,000

f.  State whether prior to purchase of the Property or at any time after Your purchase of the Property, You performed (either personally or by retaining another to perform) any inspection, appraisal, or evaluation of the Property, and if so, identify who performed such inspection, appraisal or evaluation and when; and

Mr. and Mrs. Eaton recall that a home inspection was performed prior to purchasing the property, but they do not recall the identity of the inspector nor have they retained any reports or documentation of that inspection.

2

g.  State whether You have attempted to sell or offered to sell the Property, and if so, state the date(s) on which such attempts or offers have been made, the offering or asking price for the Property and, if You used a real estate agent or broker, the name and address of the agent or broker.

Plaintiffs have made no attempts to sell or offer to sell the Property.

3.  Identify all persons who to Your knowledge have resided at the Property at any time, and for each such person, state the date(s) or period(s) during which he or she has resided at the Property.

Objection.  Without waiving the foregoing objections, these Plaintiffs respond as follows related to the periods during which these Plaintiffs have owned the Property:

Mr. and Mrs. Eaton are unaware of how long the previous owner, Ruth Nelson, resided at the property.  Plaintiffs and their three children have all resided continuously at the property since purchase and/or their birth.  Plaintiffs' children include Christopher M. Eaton -- born Nov. 26, 1982; Devin C. Eaton – born January 9, 1990 and Rebecca Ariel Eaton – born May 29, 1991.

4.  Identify all persons who to Your knowledge have had at any time an ownership interest in the Property, and for each such person, state the nature of his or her ownership interest, the date he or she acquired such ownership interest, the date he or she transferred such ownership interest, and the consideration paid for such transfer.

Objection.  Without waiving the foregoing objections, these Plaintiffs respond as follows related to the time periods during which these Plaintiffs have owned the Property:  Donald and Ruth Eaton are the current owners of the Property.  They acquired an ownership interest in the Property in 1981 and have not transferred that ownership interest to date.

3

5. State the amount and basis for Your claim that the value of the Property has been diminished by virtue of the acts or omissions of the Town, and identify all documents supporting, substantiating, or concerning that claim.

Objection. Without waiving the foregoing objection, and in addition to any expert opinions Plaintiffs may provide at a later date pursuant to the Federal Rules of Civil Procedure, this Plaintiff responds as follows:

Historically and continuing well into the mid to late 1900's, the State of Connecticut attempted to eliminate wetlands and low lying areas by encouraging the filling of these areas. As early as 1915, Hamden solicited owners of properties containing wetlands and low lying areas to allow refuse to be dumped onto their properties. Hamden would operate dumps on these properties and when filled, the properties would be developed by their owners. Some time prior to 1917, Hamden established a dump in the areas of Plaintiffs' Property. Winchester, with the approval of the Town of Hamden, began disposing of its industrial waste and ash in this and surrounding areas sometime after 1915. Winchester and/or its successor, Olin, continued to dump ash and other industrial waste on Plaintiffs' Property and surrounding properties in Hamden until the disposal facilities were closed and residential properties were built on top of the facilities. Beginning in approximately 1915, portions of the privately owned property used by Hamden for disposal were developed into residential properties. The Town of Hamden and Olin were aware that after each of these dumps was closed for disposal, residential structures were constructed on the former dump sites.

During the year 2000 and early 2001 the United States Environmental Protection Agency (USEPA) conducted studies that confirmed that chemicals and wastes from historical firearm and

ammunition manufacturing operations had been disposed in former wetland areas bordering on residential areas in and around the Newhall Section of Hamden. Due to additional evidence that these filling activities had occurred in the area of Plaintiff's Property and surrounding Plaintiffs' Property which now serve as residential neighborhoods, the USEPA agreed to study these residential areas for the presence of contamination.

In or about April 2001 the USEPA conducted surficial soil sampling on 76 private properties in the Newhall Street Neighborhood Area and analyzed these samples for a variety of organic and inorganic contaminants including but not limited to lead, arsenic, semi-volatile organic compounds (SVOCs) and polycyclic aromatic hydrocarbons (PAHs). Over 25% of these samples contained lead concentrations which exceeded acceptable state standards for residential property soils. Approximately 10% of the collected samples exceeded the "action level" developed by USEPA and the Connecticut Department of Environmental Protection ("CTDEP"); according to the CTDEP this concentration presents a threat of elevated lead levels in blood of children and/or adults which can lead to a variety of physical and cognitive impairments.

Results of these analyses were sent to various individual property owners by letter dated May 29, 2001 or thereafter. USEPA carried out a "time-critical removal action" at 13 residential properties known to exceed the action level, removing soil down to 18 inches or greater and replacing it with clean fill. Materials uncovered during the excavation program included a number of waste materials including industrial materials related to firearms, ammunition and battery production. CTDEP sampled soils beneath the excavated layers on these residential surficial and collected deeper soil samples at over 20 additional properties which demonstrated widespread contamination and filling of industrial wastes throughout the area. A large number of the residential

properties in the Newhall Section remain uncharacterized with no information concerning the nature or extent of waste or contamination in surficial and subsurface soils or groundwater, and the risks associated with that contamination. Elevated concentrations of these various hazardous constituents may lead to a variety of physical and cognitive ailments including nervous system dysfunction, renal problems, cancer and/or a variety of other deleterious conditions. In or about December 2002 consultants for Olin reported that analyses of this fill in and around the Plaintiff's Property indicate the presence of elevated concentrations of metals in residential site soil (principally arsenic and lead), PAHs, and that groundwater quality and deeper soil deposits are largely uncharacterized.

Plaintiffs will produce all documents in their possession related to the valuation of his Property (please see this Plaintiffs' response to Defendant's First Request for Production of Documents).

6. Identify by object, nature, location, and the date it was discovered by You or any other persons all wastes, contaminants, or adverse environmental conditions which you claim to be present at the Property, as referred to in the Amended Complaint.

Objection. Without waiving the foregoing objection, and in addition to any expert opinions Plaintiffs may provide at a later date pursuant to the Federal Rules of Civil Procedure, these Plaintiffs respond as follows:

Plaintiffs have not personally performed any environmental testing with respect to the Property. The Plaintiffs' property is designated in the Affidavit of Michael Hopkins, affixed to Plaintiffs' Motion for Class Certification, as being within the area which is believed to have been contaminated by Olin and Hamden's dumping of waste containing hazardous substances. To the best of Plaintiffs' knowledge, Olin and/or the Connecticut Department of Environmental Protection

has performed or is intending to perform environmental testing on the Property. In addition, the

United States Environmental Protection Agency may have performed testing on Plaintiffs' Property.

Any information related to governmental testing performed on Plaintiffs' Property can be obtained

by the Defendant from the governmental entity performing such testing.

In addition, please see response to Interrogatory No. 5.

7. Describe in detail the "severe emotional distress" which You claim you have

sustained as a result of the acts or omissions of the Town as referred to in the Amended Complaint,

and for all such "severe emotional distress," identify all persons, including doctors, psychiatrists,

psychologists, counselors, other mental health professionals, advisers, or other persons whom You

have consulted or who have provided treatment to You with respect to such "severe emotional

distress."

Objection. Without waiving the foregoing objection and in addition to any expert

opinions Plaintiffs may provide at a later date pursuant to the Federal Rules of Civil Procedure, this

Plaintiff responds as follows:

Pursuant to the literature, individuals forced to deal with contamination on their

property frequently suffer from symptoms of stress which can range from generalized stress

conditions to specific psychological disorders including Generalized Anxiety Disorder and/or Post

Traumatic Stress Disorder. The symptoms can include, but are not limited to the following:

1)     recurrent and intrusive distressing recollections of the contamination including

images thoughts or perceptions;

2)     recurrent distressing dreams of the contamination;

7

3)      intense psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the contamination or its affect on their lives

4)      efforts to avoid thoughts feelings or conversations associated with the contamination;

5)      efforts to avoid activities places or people that arouse recollections or discussions of the contamination;

6)      inability to recall an important aspects of the contamination;

7)      markedly diminished interest or participation in significant activities;

8)      feeling of detachment or estrangement from others;

9)      restricted range of affect;

10)     a sense of a foreshortened future;

11)     difficulty falling or staying asleep;

12)     irritability or outbursts of anger;

13)     difficulty concentrating;

14)     hypervigilence;

15)     exaggerated startled response;

16)     the disturbance causes clinically significant stress or impairment in social occupational or other important areas of functioning;

17)     excessive anxiety and worry;

18)     difficulty controlling anxiety and the worry;

19)     restlessness or feeling keyed up or on edge;

20)     easily fatigued;

21)    difficulty concentrating or mind going blank;

22)    irritability;

23)    muscle tension;

24)    sleep disturbance, difficulty falling asleep or staying awake or restless unsatisfying sleep.

With respect to emotional distress, the contamination on Plaintiffs' Property has substantially affected Plaintiffs' day to day life, emotional well being, family interactions and social interactions. Although to date Mr. and Mrs. Eaton have not consulted a medical doctor to specifically discuss the impact they has felt due to the contamination, they are aware of a change in their emotional and mental well being on a daily basis. Mr. and Mrs. Eaton, without the assistance of a trained medical professional recognize that due to the contamination existing on his Property, they have experienced symptoms of irritability, muscle tension, fatigue or low energy and difficulty concentrating or mind going blank.

Although the Connecticut Department of Environmental Protection has worked to test and identify all contaminants on the property, Plaintiffs are still are not sure if the interior or outdoor air is safe. Because of the continued settlement problem, they fear contaminants can be released into the air. In addition, there is always the chance of the settlement problems creating other major problems. For example, Plaintiffs believe that settlement may put a lot of pressure on pipes located within the house and cause them to burst. Problems of this nature would cause extreme home damage requiring expensive repairs. Additionally, these problems could result in contamination of drinking water at the property. Plaintiffs are likewise concerned that several neighbors have

experienced cancer-related deaths in their household and there is no evidence that they or their children are not out of danger from the known and unknown contaminants.

While the contamination issue has not caused the family to seek medical help, concerns and impacts that the contamination has had on Plaintiffs' life style include a) reluctance to invite friends over because of the effects of the settling on the house; large cracks in the living room become the focal point for visitors; the children are too embarrassed to invite their friends over to visit or even spend the night; and potential visitors express concern over safety;, Plaintiffs are concerned about the children playing outside or even performing lawn maintenance; the family is anxious to leave the house because of the effects of the settling on the house; and there is concern that toxins are still being released into the air from the settling.

In addition, please see answer to Interrogatory No. 5. Discovery is ongoing in this action. Plaintiffs reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

8. To the extent not identified in response to the preceding Interrogatory, identify all health care providers (including mental health professionals) whom You have seen for any reason since January 1, 1995.

Objection. Without waiving the foregoing objections, these Plaintiffs state as follows: Please see any mental health care providers listed in answer to Interrogatory No. 7. Plaintiff reserves the right to supplement this answer, if required, in conformance with the Federal Rules of Civil Procedure and/or any orders of the Court.

9. State whether You, or any other persons, have performed any soil testing with respect to the Property or any alleged conditions at the Property, and if so, identify the person(s) or entities who performed such testing, state the date(s) of such testing, and state the results of such testing.

Objection. Without waiving the foregoing objections, and in addition to any expert opinions Plaintiffs may provide at a later date pursuant to the Federal Rules of Civil Procedure, these Plaintiffs respond as follows:

Plaintiffs have not personally performed any environmental testing with respect to the Property. The Plaintiffs' property is designated in the Affidavit of Michael Hopkins, affixed to Plaintiffs' Motion for Class Certification, as being within the area which is believed to have been contaminated by Olin and Hamden's dumping of waste containing hazardous substances, therefore, to the best of Plaintiffs' knowledge, Olin and/or the Connecticut Department of Environmental Protection has performed or is intending to perform environmental testing on the Property. In addition, the United States Environmental Protection Agency may have performed testing on Plaintiffs' Property. Any information related to governmental testing performed on Plaintiffs' Property can be obtained by the Defendant from the governmental entity performing such testing.

In addition, please see response to Interrogatory No. 5.

10. State the manner by which You claim the acts or omissions of the Town have interfered with your use or enjoyment of the Property, as alleged in the Amended Complaint, including the date(s) of such interference, all facts substantiating or supporting your claims of such interference, and the identification of all witnesses who will support or substantiating such claims.

Objection. Without waiving the foregoing objection and in addition to any expert opinions Plaintiffs may provide at a later date pursuant to the Federal Rules of Civil Procedure, these Plaintiffs respond as follows:

Due to the contamination on Plaintiffs' Property, Plaintiffs no longer sits in their yard, no longer has family outings such as barbecues and no longer plays games such as horseshoes, volleyball or badminton in their yard due to the contamination. Plaintiffs do not entertain in the yard anymore and this has affected the amount of time that family and friends visit Plaintiffs' home. General maintenance on the property has been limited. There is a pervading concern about physical injury to the building occupants which has had a substantial impact on a broad range of day to day activities including sleep, ability to relax, manifestations of tension, etc.

This list is not intended to be exclusive, and as Plaintiffs become aware of further impacts caused by the contamination, Plaintiffs reserve the right to supplement this answer. In addition, please see answer to Interrogatory No. 5 and Plaintiffs' Amended Complaint. Plaintiffs reserve the right to supplement this answer, if necessary, in conformance with the Federal Rules of Civil Procedure and/or any orders of the Court.

11. To the extent not previously described, identify and describe in detail any damages You claim to have been caused or contributed to by the Town, by virtue of any of the acts or omissions alleged in the Amended Complaint, and identify all documents and persons supporting such claims of damages.

Objection. Without waiving the foregoing objection and in addition to any expert opinions Plaintiffs may provide at a later date pursuant to the Federal Rules of Civil Procedure, these Plaintiffs respond as follows:

See responses to Interrogatory No. 5, 6, 7, 9, 10 and Plaintiffs' Amended Complaint. Discovery in this case is ongoing. Plaintiffs reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

12. Identify and describe all communications between You, on the one hand, and any other members or any representatives of the Proposed Class or of residents of the Newhall Section, on the other, which concern or relate to, in whole or in part, any of the allegations in the Amended Complaint.

Objection. Without waving the foregoing objections, these Plaintiffs respond as follows:

Plaintiffs have spoken to numerous neighbors about the neighborhood contamination. Plaintiff cannot possibly recall specific details with respect to each and every conversation or communication. Generally, these conversations related to environmental testing of Plaintiffs' Property and the contamination in the neighborhood and its effects.

13. State whether You have attended any hearings, meetings, proceedings, or other gatherings with respect to the environmental conditions or relief requested, as alleged in the Amended Complaint, and if so, state the date(s) of each hearing, meeting, proceeding, or gathering attended by You, identify the other persons present at each such event, and describe the substance of all communications at such event.

Objection. Without waving the foregoing objections, these Plaintiffs respond as follows:

Plaintiffs have attended numerous neighborhood meetings related to the Property contamination. Plaintiffs cannot possibly recall specific details with respect to each and every

meeting attended. Generally, these meetings provided information with respect to environmental testing of Plaintiffs' Property and the contamination in the neighborhood and its effects.

14. State the manner by which You will fairly and adequately protect the interests of other members of the Class, as alleged in the Amended Complaint.

Objection pending.

15. Describe by date, location, and project or task, all construction, demolition, renovation, landscaping, or other work (other than regular, periodic homeowner maintenance) performed by or for You at the Property, and if such work was performed by persons other than you, identify the person(s) or entity(s) performing such work or tasks.

Objection. Without waiving the foregoing objections, these Plaintiffs respond as follows:

In approximately 1986 a new roof was installed. In approximately 1988, Mr. and Mrs. Eaton contracted to have the yard landscaped and re-planted in grass to address substantial storm damage.

16. State the type of fuel You use to heat Your home, how long You have used this fuel and, if this is not the original fuel, what type of fuel was the original fuel and state the date of the conversion to the current fuel.

Objection. Without waiving forgoing objections, these Plaintiffs respond as follows: When Mr. and Mrs. Eaton purchased the Property it was heated with oil and continues to be so to this day.

17. State the name of the bank, lender or other financing institution that provided Your original financing or any refinancing (i.e., second mortgage, home equity loan, home equity line of credit) for Your house, the address of all such institutions and the dates of such financing.

14

Objection.  Without waiving forgoing objections, these Plaintiffs respond as follows:

I.      Original Financial Institution - Dale Funding Corporation
        Date of Finance                 August, 1981

II.     Refinancing Institution  -  Dale Funding Corporation
        Date of Refinancing      1983

III.    Refinancing Institution  -  Globe Mortgage Company
                                     110 Main Street
                                     Hackensack, NJ 07602
        Date of Refinancing      July 14, 1986

IV.     Second Mortgage  -  Security Pacific Mortgage Company
        Date of Second Mortgage - 1987

V.      First Mortgage acquired by another lender
        Globe Mortgage Company to Mellon Mortgage Company,
                                     Pittsburgh, PA
                                     1989

VI.     First Mortgage acquired by another lender
        Mellon Mortgage Company to Chase Manhattan Mortgage Company, P. O. Box 24696,
        Columbus, OH 43224-0696, 1995