# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CLARENCE C. COLLINS. JR., et al.,     :
         Plaintiffs,         :     Civil Action No. 3:03-CV-945 (CFD)
                    :
v.                       :
                    :
OLIN CORPORATION,       :
         Defendant.       :

## RULING ON PLAINTIFFS' THIRD AMENDED MOTION FOR CLASS CERTIFICATION

This case arises from waste allegedly deposited by the defendant Olin Corporation ("Olin") in public landfills maintained by the Town of Hamden. The plaintiffs, because of the discovery of contamination in the Newhall neighborhood of Hamden, seek damages against Olin for the diminution in value of their properties, the loss of use and enjoyment of their properties, and emotional distress, as well as coverage by Olin of any response costs incurred to address contamination on the affected properties. The plaintiffs ask the Court to certify a class under Fed. R. Civ. P. 23(b), and several subclasses of property owners from the Newhall neighborhood.

## I.      Background[1]

The defendant Olin Corporation is a Virginia corporation with headquarters in Missouri. Olin purchased Winchester Repeating Arms Company, a firearms and munitions manufacturer located in New Haven, in 1931.[2] Olin continued Winchester's practice of disposing of industrial

---

[1] The following allegations are taken from the plaintiffs' Second Amended Complaint, and will be referred to herein as "complaint."

[2] This Court granted Olin's motion for summary judgment as to the actions of Winchester Repeating Arms Company. Therefore, Olin is currently liable only for events that took place after 1931. See Collins v. Olin Corp., 434 F. Supp. 2d 97, 107 (D. Conn. 2006).

waste from its New Haven plant in dumps run by the Town of Hamden, including those in its Newhall neighborhood, until the dumps were closed in the 1950s. It is alleged that at the time Olin was disposing of this industrial waste, the available scientific data showed that lead and arsenic, which made up the majority of Olin's waste, were harmful to people and to the environment. It is also claimed that it was impossible at the time for Olin to safely store or dispose of the waste, and that Olin was aware of the fact that after each dump in the Newhall neighborhood was closed, residences were constructed on the former dump sites.

In 2000 and 2001, the United States Environmental Protection Agency ("USEPA") conducted studies that confirmed that chemicals and wastes from historical firearms and munitions manufacturing had been disposed in the residential areas in the Newhall neighborhood. The USEPA subsequently conducted surficial soil sampling on many properties in the Newhall neighborhood and analyzed the samples for industrial byproducts and contaminants such as lead, arsenic, semi-volatile organic compounds, and polycyclic aromatic hyrdocarbons. Many properties were contaminated, and some had lead concentrations exceeding the "action level" for lead concentration in human blood. In December 2002, consultants for Olin reported that analyses of fill in the Newhall section consistently indicated the presence of elevated concentrations of hazardous substances. Such elevated concentrations may lead to various physical and cognitive ailments including nervous system dysfunction, renal problems, and cancer.

The plaintiffs' complaint states claims against Olin for negligence, gross negligence, negligence per se, abnormally dangerous activity, infliction of emotional distress, public and private nuisance, for recovery of response costs under Conn. Gen. Stat. 22a-452, and for recovery

of response costs under the Contaminated Environmental Response, Compensation, and Liability Act ("CERCLA").[3] They seek an award of all direct and consequential damages incurred by the members of the various proposed classes as a result of Olin's negligence, creation of a nuisance, abnormally dangerous activity, willful and reckless conduct, and infliction of emotional distress. Additionally, they seek a declaratory judgment that Olin is responsible for the response costs the plaintiffs have incurred or will incur to redress residual contamination on their properties, and a preliminary and mandatory injunction requiring Olin to conduct all necessary response actions to remediate the release of hazardous substances in the soil. Plaintiffs also seek litigation costs, including attorneys' fees and expert witness fees, and punitive damages.

The plaintiffs' proposed class consists of all persons who own property in the Newhall neighborhood who have suffered injury as a result of Olin's alleged disposal of contaminated fill in that neighborhood. The proposed subclasses include: (1) the Contaminated Properties Subclass, which would include all of the members of the class onto which Olin disposed contaminate fill after it purchased Winchester in 1931; (2) the Stigma Subclass, which would include all members of the class who own real property in the Newhall neighborhood onto which Olin did not dispose of industrial waste, but who have suffered injury as a result of the proximity to the Contaminated Properties Subclass; and (3) the Response Cost Subclass, which would

---

[3]On January 10, 2007, this Court dismissed the plaintiffs' claim under Connecticut's Environmental Protection Act (Conn. Gen. Stat. 22a-15, 16, 17), without prejudice.

The Town of Hamden was originally a defendant in this action. However, all counts against it have been dismissed except for one claim under CERCLA for response costs. See Collins v. Olin Corp., 418 F. Supp.2d 34, 66 (D. Conn. 2006) (dismissing or granting summary judgment as to all counts against the Town of Hamden except Count XVI). The Second Amended Complaint sets forth no allegations against Hamden.

include members of the class who own property in the Newhall neighborhood who have or will incur response costs in order to redress residual contamination.[4]

## II.    Standard of Review

To certify a class, the district court must determine through "rigorous analysis," Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982), that the plaintiffs have met each of the requirements of Fed. R. Civ. P. 23, and in doing so, may make factual and legal inquiries as necessary.  In re Initial Public Offerings Securities Litig., 471 F.3d 24, 41 (2d Cir. 2006).  Rule 23(a) states four prerequisites for class certification: one or more members of a class may sue or be sued on behalf of all class members if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P 23(a).

In addition, when a plaintiff seeks certification under Rule 23(b)(3), the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P 23(b)(3).  In determining whether the plaintiffs have shown predominance and superiority, the court should consider (A) the interest of the class members in individually controlling the prosecution or

---

[4]The claims made by each subclass differ.  The claims for negligence and gross negligence, public and private nuisance, abnormally dangerous activity, and intentional infliction of emotional distress are made by the Contaminated Properties Subclass and Stigma Subclass, but not the Response Cost Subclass.  Conversely, the claims under CERCLA and the Connecticut statutes are made by the Response Cost Subclass, but not the Contaminated Properties Subclass and the Stigma Subclass.

defense of separate actions, (B) the extent of any litigation concerning the controversy already commenced by or against class members, and (C) the difficulties likely to be encountered in the management of a class action.  See Fed. R. Civ. P 23(b)(3).

The court may determine an issue on the merits if it is necessary to decide whether the Rule 23 requirements have been met, but the inquiry should not extend to such an extent that the class certification proceedings turn "into a protracted mini-trial of substantial portions of the underlying litigation."  In re Initial Public Offerings Securities Litig., 471 F.3d at 41.  A judge must receive enough evidence to determine that each Rule 23 requirement has been met.  Id.  In addition, "a district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit."  Id. at 42.  This assessment can be done even if the requirement is identical to an issue on the merits.  Id.

## III.    Discussion

Olin argues that the predominance requirement cannot be met because individual issues predominate with respect to the plaintiffs' claims for infliction of emotional distress, nuisance, negligence, and damages.  Olin also argues that a class action is not the superior method of adjudicating this controversy.  Although Olin concedes that the plaintiffs' proposed class meets the 23(a) requirements, the Court will address each of them, and then turn to the disputed issues of predominance and superiority.

### A.    Numerosity

The standard for numerosity under Rule 23(a)(1) is whether the class is so numerous that

joinder of all members is impracticable.  While there is no predetermined number of plaintiffs

necessary to certify a class, courts generally have found a class consisting of 40 or more members

to be sufficient.  See Martin v. Shell Oil Co., 198 F.R.D. 580, 590, citing Robidoux v. Celani,

987 F.2d 931, 936 (2d Cir. 1993).  An estimate based on speculation is insufficient.  Deflumer v.

Overton, 176 F.R.D. 55, 58-59 (N.D.N.Y. 1997).  In this case, the plaintiffs' proposed class

includes the owners of more than 300 properties, shown in address lists submitted by the

plaintiffs.  See Pl.'s Ex. A, B, C.  Each Subclass also consists of well over 40 members.

Many courts have certified classes defined by geography, as the class here is defined by

the contours of the Newhall neighborhood.  See, e.g., Cook v. Rockwell Int'l Corp., 151 F.R.D.

378, 382 (D. Colo. 1993); Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 60 (S.D. Ohio 1991).

Joinder of this number of claims could be unmanageable and costly.  The court thus finds, and

Olin concedes, that the proposed class is sufficiently numerous to meet this requirement.

### B.    Commonality

Under Rule 23(a)(2), a class action is maintainable if there are common questions of law

or fact.  Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001).  This

requirement, unlike the predominance requirement of Rule 23(b)(3), does not mandate that these

issues overshadow potential individual issues, but only that common questions do exist.  See

Moore v. Painewebber, Inc., 306 F.3d 1247 (2d Cir. 2002).  The plaintiffs have alleged common

questions of fact pertaining to the course of conduct of Olin allegedly leading to the

contamination of their properties.  In addition, the plaintiffs have presented common issues of

law pertaining whether Olin is liable, under various legal theories, to the plaintiffs in the various

subclasses for this alleged course of conduct and its consequences.  The court thus finds, and

Olin concedes, that the plaintiffs have met the commonality requirement.

      **C.**   **Typicality**

The typicality requirement of Rule 23(a)(3) mandates that "the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Robinson v. Metro-N. Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001). Here, each subclass of plaintiffs is represented by multiple plaintiffs, all of whom have been deposed and own property identified as within the contaminated area or one of the subclass areas.[5] Each claim damages arising from Olin's contamination of the Newhall neighborhood, including loss of property value, emotional distress, and loss of use and enjoyment of their properties. The named representatives have similar experiences regarding the discovery of the contamination in their neighborhood as the members of the class and subclasses that they seek to represent. Olin does not contest any of these facts and concedes that the plaintiffs have satisfied the typicality requirement.

      **D.**   **Adequacy of Representation**

Adequacy of representation means that the class representatives "will fairly and adequately protect the interests of the class." Denney v. Deutsche Bank AG, 443 F.3d 253, 267 (2d Cir. 2006) (internal quotation marks omitted). In determining whether the adequacy requirement has been met, the court considers "whether (1) the plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are

---

[5]Two of the originally named plaintiffs, William Jones and Clifford Senior, were not deposed, but both have agreed to dismiss their claims and no longer seek to represent the class or subclasses.

qualified, experienced and able to conduct the litigation." Baffa v. Donaldson, Lufkin & Jenrette

Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000). This inquiry is meant to identify any conflicts of

interest between the named plaintiffs and the remainder of the class they seek to represent.

Anchem Products v. Windor, 521 U.S. 591, 625 (1997). Here, no such conflicts of interest have

been identified between the plaintiffs, and the plaintiffs have retained competent counsel

specializing in environmental law. The court thus finds, and Olin concedes, that the plaintiffs

have met this requirement.

          **E.    Predominance of Common Issues**

          To qualify for class treatment, the proposed class must meet the requirement of

predominance, meaning that "the questions of law or fact common to the members of the class

predominate over any questions affecting only individual members." Fed. R.3 Civ. P. 23(b)(3).

The predominance requirement, which is highly disputed here, together with the requirement of

"superiority," ensures that the class will be certified only when it would "achieve economies of

time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated,

without sacrificing  procedural fairness or bringing about other undesirable results." Amchem,

521 U.S. at 615 (citations and internal quotation marks omitted). The predominance requirement

is met if "resolution of some of the legal or factual questions that qualify each class member's

case as a genuine controversy can be achieved through generalized proof, and if these particular

issues are more substantial than the issues subject only to individualized proof." Moore v.

Painewebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002) (citations omitted). "If there are

genuinely common issues . . . identical across all the claimants, issues moreover the accuracy of

which is unlikely to be advanced by repeated proceedings, then it makes good sense, especially

when the class is large, to resolve these issues in one fell-swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings." In re Methyl Tertiary Butyl Ether (MBTE) Products Liability Litig., 241 F.R.D. 435, 448 (S.D.N.Y. 2007) (quoting Mejdrech v. Met-Coil Systems Corp., 319 F.3d 910, 911 (7th Cir. 2003)).

Generally, certification is granted in a tort case where there is a "demonstrated cohesiveness of the class due to shared experience that is confined in time and place and produces similar effects." Presbyterian Church of Sudan v. Talisman Energy Inc., 226 F.R.D. 456, 477 (S.D.N.Y. 2005). Olin contends that because this case involves a mass environmental tort, class certification is inappropriate. The commentary following Rule 23(b)(3) cautions against certification in mass tort cases. See Advisory Committee Notes on 1966 Revision of Rule 23(b)(3) ("A mass accident resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways."). Some courts have denied certification in such mass tort actions. See, e.g.; LaBauve v. Olin Corp., 23 F.R.D. 632, 673 (S.D. Ala. 2005); Martin v. Shell Oil Co., 198 F.R.D. 580, 592 (D. Conn. 2000).

However, the Supreme Court has made clear that certain mass tort cases are appropriate for class certification, stating "mass tort cases arising from a common cause or disaster may, depending on the circumstances, satisfy the predominance requirement." Anchem, 521 U.S. at 625. Many courts have certified classes in situations involving chemical seepage onto adjoining property. See Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1144 (8th Cir. 1999) (pollution to property resulting from underground oil seepage from petroleum refinery); Sterling v. Velsicol

Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988) (chemically contaminated water from landfill

affecting residents of nearby properties); Olden v. LaFarge Corp., 203 F.R.D. 254, 271 (E.D.

Mich. 2001) (property damage caused by toxic pollutants arising from cement manufacturing

plant), aff'd, 383 F.3d 495, 508-10 (6th Cir. 2004); Cook v. Rockwell Int'l Corp., 151 F.R.D. 378,

388 (D. Colo. 1993) (property damage from radioactive and non-radioactive substances leaked

into ground); Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 67 (S.D. Ohio 1991) (property

damage in area surrounding uranium plant);  Wehner v. Syntex Corp., 117 F.R.D. 641, 643 (N.D.

Cal. 1987) (property damage caused by dioxin manufacturer).

Olin argues that individual issues predominate over common issues of fact and law

because issues of causation, damages, and application of the defense of statute of limitations

likely require individualized proof.  The plaintiffs assert that despite the possibility that

individualized proof will be necessary for certain aspects of their claims, the common issues

regarding Olin's course of conduct and its legal effect on the plaintiffs still predominate over any

individual issues.  The common issues cited include those pertaining to the elements of the

claims of negligence and gross negligence, strict liability for engaging in an abnormally

dangerous activity, infliction of emotional distress, public and private nuisance, claims under

Conn. Gen. Stat. § 22a-452, and claims under CERCLA (42 U.S.C. § 9607).[6]

---

[6]The common issues identified by the plaintiffs as to negligence are: (1) Whether Olin
disposed of its industrial waste containing lead, arsenic, and polyaromatic hydrocarbons in the
Newhall neighborhood, and in particular on the Properties of the Contaminated Properties
Subclass; (2) whether Olin knew that the areas where this waste was dumped were expected to be
developed with residences; (3) whether and to what extent Olin knew the materials it disposed of
were hazardous; (4) whether Olin's actions in disposing of those hazardous materials in soil
expected to be developed with residences constituted a breach of the standard of care; (5)
whether Olin's actions in disposing of the hazardous materials in such areas constituted wanton,
willful or reckless conduct; (6) whether Olin's actions in disposing of the hazardous materials in

Olin argues that the element of causation in the plaintiffs' claims of infliction of

emotional distress, negligence, and nuisance will require individualized proof.    However,

individual issues of causation do not preclude class certification.   See <u>Bates v. Tenco Services,</u>

---

such areas constituted negligence per se; and (7) whether Olin had a duty to warn residents of the hazards of its wastes.

The common issues identified by the plaintiffs as to abnormally dangerous activity are: (1) whether Olin engaged in ultrahazardous and abnormally dangerous activities when it handled, disposed of and released hazardous substances including lead and arsenic; (2) whether Olin knew of should have known that there was a high degree of risk associated with handling and disposing of such hazardous substances; (3) whether at the time Olin knew or should have known the hazardous substances were harmful to humans and the environment; and (4) whether at the time it was disposing of the substances, Olin knew or should have known that the hazardous substances would cause harm to future landowners.

The common issues identified by the plaintiffs as to infliction of emotional distress are: (1) whether Olin's actions in disposing of its industrial waste in the Newhall neighborhood were extreme and outrageous in character; and (2) whether Olin knew or was reckless in not knowing that its actions and omissions would inflict emotional distress on that neighborhood.

For public nuisance, the common issue identified is whether Olin unreasonably interfered with public health, safety, peace, comfort, or the convenience of the public by its handling and disposal of hazardous industrial waste, thereby causing a public nuisance.  For private nuisance, the common issue identified is whether Olin, by its handling, disposal of, and release of hazardous substances, emanating from its own nearby property, in the Newhall neighborhood, unreasonably interfered with the use and enjoyment of private properties in that neighborhood.

As for the claim under Conn. Gen. Stat. § 22a-452, the common issues identified by the plaintiffs are: (1) whether Olin was the owner or operator of a site from which there has been a disposal and release of materials defined as hazardous waste under Conn. Gen. Stat. § 22a-115(1), or is otherwise legally responsible for the releases from that site; (2) whether Olin, directly or indirectly, arranged for the transport and disposal of hazardous wastes from its nearby site to the Newhall neighborhood; and (3) whether Olin will remove all hazardous wastes that it deposited in the Newhall neighborhood, or whether instead the residents of that neighborhood will have to incur costs for the containment, removal, and/or mitigation of such hazardous waste.

As to the CERCLA claim under 42 U.S.C. § 9607, the common issues identified are: (1) whether Olin disposed of or arranged for disposal of substances defined as hazardous substances under 42 U.S.C. § 9601(14) and 40 CFR Part 302.4 in the Newhall neighborhood; (2) whether Olin's hazardous substances have contaminated the soil and ground water in the Newhall neighborhood at levels exceeding maximum allowable contaminant levels; and (3) whether Olin will remove all such substances or whether instead the residents of the Newhall neighborhood will be required to incur response costs, including costs entailed in removing residual contamination.

-11-

Inc., 132 F.R.D. 160, 163-64 (D.S.C. 1990) ("Individual offers of proof of proximate cause and damages for each plaintiff will become an inevitable necessity; however, these individual questions of proof will arise whether the suit proceeds individually or as a class action"). As for the negligence claims, although the element of causation may require more individualized proof, the proof as to the other elements of negligence will be class-wide.[7]  In fact, Olin's entire course of conduct and knowledge of its potential hazards is a common issue to the class, which courts have found to be sufficient even in cases where there are multiple possible sources of contamination.[8]  See Watson v. Shell Oil Co., 979 F.2d 1014 (5th Cir. 1992) (certifying class with common issues as to liability despite existence of individual issues of causation)  Bentley v. Honeywell Int'l., Inc., 223 F.R.D. 471, 481 (S.D. Ohio 2004) ("the existence of multiple sources of contamination over a period of time is not a per se bar to class certification in cases such as this one. . .The key issue is the alleged conduct engaged in by Defendants");  Ludwig v. Pinkerton North American, Inc., 2003 WL 22478842 at *5 (N.D. Ill. 2003) (certifying class where common course of conduct and common nucleus of operative fact existed as to contamination, although there were multiple sources,  manners, and levels of contamination);  Wehner, 117 F.R.D. at 645 (certifying class where common questions existed as to whether the

_____

[7]In addition, with respect to the Stigma Subclass, the cause of the contamination need not be proved, because the basis of their claims is not contamination on their specific properties but contamination in the neighborhood as a whole.

[8]Olin argues that the testimony of its experts and admissions made by plaintiffs' expert shows that causation cannot be established to a reasonable degree of scientific certainty. Regardless whether the expert testimony establishes that causation actually cannot be proved on a class-wide basis, the Court need not weigh this evidence at this stage, since common issues pertaining to Olin's course of conduct predominate over any individual issues here.  Moreover, Plaintiffs dispute Olin's argument concerning their expert.

defendants were negligent in the manufacture, transportation, and distribution of hazardous chemical, and individual issues included amount of damages each plaintiff sustained and the issue of causation as to each plaintiff).  In fact, if Olin's conduct is found to be a substantial factor in the contamination of the properties, Olin's conduct can still be the legal cause even if other sources of contamination exist.[9]  See Tufariello v. Long Island R. Co., 458 F.3d 80, 87 (2d Cir. 2006); Restatement (Second) of Torts § 431(a) (1965).

Regarding the intentional infliction of emotional distress claim, Olin argues that an inquiry into each plaintiff's mental health and other potential causes of emotional distress will need to be conducted in order to determine if Olin's actions are indeed the proximate cause. However, the plaintiffs point out that this inquiry can easily be done in conjunction with the inquiry into the actual damages sustained by each plaintiff.  Furthermore, the remaining elements of an intentional infliction of emotional distress claim, such as the intent of Olin and whether Olin knew its conduct was likely to cause distress, and whether Olin's conduct was extreme and outrageous, can be made on a class-wide basis.

With regard to the nuisance claim, the defendants argue that individual issues predominate with respect to the unreasonable interference requirement.  However, like the claims described above, the other elements of the nuisance claims are class-wide issues, and whether the interference was unreasonable or not can also be readily addressed at the damages phase.

––––––––––––––––––––

[9]In addition, because the industrial waste was allegedly disposed of directly on the properties in the contaminated properties' subclass, there will not be any questions of how groundwater moved, which was a concern in some cases cited by Olin in which causation was found to be an individual issue.  See, e.g. Martin, 198 F.R.D. at 592.  Here, if the plaintiffs can establish the geographic area in which Olin did dispose of its industrial waste, then a separate inquiry into proximate cause for each plaintiff might not even be required as to the contamination and property damage.

The defendant further argues that individual issues predominate with regard to the statute of limitations, because the dates on which particular plaintiffs became aware of the contamination vary.  However, Olin itself has argued that all of the plaintiffs' claims should be dismissed because they are time-barred, which implies that this is actually a common issue.[10] See Ludwig, 2003 WL 22478842 at *3 (rejecting possibility of defenses as bar to class certification); In re Agent Orange Product Liability Litig., 818 F.2d 145, 166-67 (2d Cir. 1987) (citing commonality of military contractor defense as one reason to certify class).  Furthermore, even if some of the plaintiffs' claims are found not to be timely, courts have been reluctant to deny class action status because affirmative defenses might be available against different class members as long as the defenses do not overshadow the primary claims.[11]  See In re Visa Check/Mastermoney Antitrust Litig., 280 F.3d 124, 138 (2d Cir. 2001) ("the fact that a defense may arise and may affect different class members differently does not compel a finding that

---

[10]Olin cites the Second Circuit's decision in Initial Public Offering, which vacated and remanded a decision to certify a class in the securities litigation context, as support for their statute of limitations argument.  However, the statute of limitations defense was not at issue in that case, only the knowledge of the plaintiffs as it related to an element of their own claim.  471 F.3d at 43-44.  The individual knowledge issue was only one of several problems cited in the court's predominance inquiry.  See id. at 42-45.  In addition, here, it was the defendant itself, rather than the plaintiffs, who asserted the defense was common to the class in its motion for summary judgment.  The plaintiffs only responded to the defendant's argument.  Thus, the Court does not find the reasoning in Initial Public Offering with regard to the plaintiff's knowledge to be binding in the current case.

[11]As the defendant points out, in Visa Check the Second Circuit also stated "the question for purposes of determining predominance is not whether a defense exists, but whether the common issues will predominate over the individual issues raised by that defense."  280 F.3d at 138.  Here, consistent with the defendant's factual allegations in its summary judgment brief, there are many factual issues that will pertain to the entire class, such as when certain information became publicly available.  Since the statue of limitations begins to run for at least some of the claims when the plaintiffs knew or should have known that they were potentially harmed, this public information is relevant to the claims on a class-wide basis.

individual issues predominate over common ones"); Olden, 203 F.R.D. at 254; Lorber v. Beebe, 407 F. Supp. 279, 294 (S.D.N.Y. 1975).

Finally, the defendant argues that individual issues of damages among class members outweigh the predominance of common issues. However, courts have repeatedly stated that differences in the amount and recoverability of damages do not defeat predominance. See Sterling, 855 F.2d 1188, 1197 (6th Cir. 1988) ("no matter how individualized the issue of damages may be, these issues may be reserved for individual treatment"); Mejdreck v. Lockformer Co., 2002 WL 1838141 (N.D. Ill. 2002), aff'd, 319 F.3d 910, 911-12 (7th Cir. 2003) ("it is very common for Rule 23(b) class actions to involve differing damage awards for different class members"). For example, in Visa Check, the Second Circuit found that individual damages issues should not preclude class certification, and named several devices courts can use to manage the damages phase of the lawsuit, including: "(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class. 280 F.3d at 139, 141. Thus, the Second Circuit has endorsed the practice of undertaking individual damages inquiries in class actions.

**F.    Superiority**

Finally, the plaintiffs must show that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). A class action is superior where "class-wide litigation of common issues will reduce litigation costs and

promote greater [judicial] efficiency." <u>Valentino v. Carter-Wallace</u>, 97 F.3d 1227, 1234 (9th Cir.

1996).  The defendant argues that because of the individualized proof required, a class action

would result in "hundreds or thousands of individual mini-trials on complex causation and

damages issues, while the only benefit of a class would be that the ruling of several common, but

not particularly daunting issues, would be made applicable to the entire class."  Def.'s Opp. At

35-36, <u>quoting</u> <u>Thomas v. FAG Bearings Corp.</u>, 846 F. Supp. 1400, 1404-05 (W.D. Mo. 1994).

However, in this case, the common issues to be determined are indeed daunting issues pertaining

to Olin's alleged course of conduct, knowledge, and intent throughout the industrial waste

disposal process.  The extent of the area contaminated, the nature of the contaminants, and the

general nature of the harms potentially caused by these contaminants will also be determined on a

class-wide basis.  It would waste judicial resources and cause potential conflicts in precedent if

each plaintiff was forced to litigate these issues in separate actions.  <u>See</u> <u>In re MBTE Products</u>

<u>Litig.</u>, 241 F.R.D. at 449-50 ("trying each individual plaintiff's action separately would only lead

to wasteful repetition").

      The case will be manageable as a class action because all of the class members reside in

one neighborhood within Connecticut, and the entire alleged course of action by the defendant

took place in Connecticut as well.  "It is not a case in which, because class members are scattered

around the country and proceeding under the laws of different states, determination of class-wide

issues would require the judge to create a composite legal standard that is the positive law of no

jurisdiction. . . All the class members are residents of the same state and are proceeding under the

same federal and state laws." <u>Mejdrech v. Met-Coil Systems Corp.</u>, 319 F.3d 910, *912 (7th Cir.

2003) (internal citations omitted).

**IV.    Conclusion**

For the reasons given above, the Court finds that the plaintiffs have met all of the requirements for class certification under Federal Rule 23(a) and (b).  The plaintiffs' third amended motion for class certification [Dkt. # 204] is granted in its entirety, including the Class and three Subclasses identified in the motion.

SO ORDERED this   21   day of February 2008, at Hartford, Connecticut.

   /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**