IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARENCE COLLINS, JR., et al | ) | |
| | ) | 3:03-CV-945 (CFD) |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| OLIN CORPORATION | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

**OLIN CORPORATION'S MOTION FOR CLARIFICATION REGARDING RULING
ON PLAINTIFFS' THIRD AMENDED MOTION FOR CLASS CERTIFICATION**

COMES NOW Defendant Olin Corporation ("Olin") and respectfully files this motion

seeking clarification regarding the Court's February 21, 2008 Ruling on Plaintiffs' Third

Amended Motion for Class Certification (hereinafter, "Ruling").  In support of this motion, Olin

states as follows:

> **A)** **The Court's Ruling Appears To Contemplate A Bifurcated Trial:  A First
> Phase Addressing Certain Discrete Common Issues To Be Followed With A
> Second Phase Addressing Various Individual Issues.**

In the Ruling, the Court granted Plaintiffs' Third Amended Motion for Class Certification

"in its entirety."  Ruling at 17.  At the same time, the Ruling does not appear to certify all issues

presented by Plaintiffs' Third Amended Complaint for class treatment.  Instead, the Ruling

appears to contemplate a bifurcated trial, with the first phase addressing certain discrete common

issues, to be followed with a second phase addressing various individual issues relating to each

class member.

1

Specifically, the Court stated that the common issues to be determined (presumably in the first phase) include:

> Olin's alleged course of conduct, knowledge, and intent throughout the industrial waste disposal process. The extent of the area contaminated, the nature of the contaminants, and the general nature of the harms potentially caused by these contaminants will also be determined on a class-wide basis.

Ruling at 16. *See also id.* at 13 ("the intent of Olin and whether Olin knew its conduct was likely to cause distress, and whether Olin's conduct was extreme and outrageous, can be made on a class-wide basis").

At the same time, the Court's Ruling suggests that many other issues will be addressed in a second phase, because they entail individual issues. For example, the Court appears to recognize that:

- "inquiry into each plaintiff's mental health and other potential causes of emotion distress will need to be conducted in order to determine if Olin's actions are indeed the proximate cause";

- "whether the interference was unreasonable or not can also be readily addressed at the damages phase"; and

- "undertaking individual damages inquiries."

Ruling at 13 and 15.

**B)    Clarification Is Necessary To Avoid Any Possible 7th Amendment Issues And To Assist The Parties In Preparing For The First Common Issues Trial.**

Olin respectfully requests that the Court provide clarification concerning precisely which discrete common issues will be addressed in the phase one trial, and what individual issues will be addressed in the anticipated phase two trial.

First, clarification is necessary to avoid any possible 7th Amendment issues.  In *Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999), the Second Circuit noted that under Rule 42(b), this Court has discretion to "order a separate trial of any claim … or issue."  *Id.* at 268.  In addition, the Second Circuit noted that under Rule 23(c)(4)(A), an action, when appropriate, may be brought or maintained as a class action with respect to particular issues.  *Id.*  "In all cases," however, the Second Circuit emphasized that the:

> Seventh Amendment right to trial by jury must be observed.  **At bottom, issues may be divided and tried separately, but a given issue may not be tried by different, successive juries**.  *See Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 537-38 (1958); *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931) ("Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303-04 (7th Cir. 1995) (granting mandamus directing district judge to decertify class action).

186 F.3d at 268 (emphasis added).  Thus, it is critical that any individual issues to be addressed in the first phase common issues trial must be "so distinct and separable" from those to be presented later in the second phase individual issues trial.

Second, clarification is necessary to assist the parties to prepare for the first phase common issues trial.  Specifically, the parties need to know exactly which issues will be addressed in the first phase common issues trial so that they can complete any additional discovery relating to those discrete issues.

**C)    Proposed Common And Individual Issues To Be Addressed In The First And Second Phase Trials, Respectively.**

To assist the Court in evaluating this motion, Olin respectfully submits the following proposed common and individual issues to be addressed in the first and second phase trials, respectively:

**1)    Common Issues To Be Addressed In First Phase[1]**

- What was Olin's general course of conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s?

- What was the general nature of the waste disposed of by Olin into the Newhall landfill during the 1930s and early 1940s?

- What was Olin's knowledge during the 1930s and early 1940s concerning the general nature of the harms potentially caused by Olin's disposal of waste (which included lead and arsenic) into the Newhall landfill?

- What was the custom and practice during the 1930s and early 1940s with respect to the disposal of the kinds of waste that Olin generated and disposed of in the Newhall landfill?

- What was the state of  industry knowledge during the 1930s and early 1940s concerning the general nature of the harms potentially caused by Olin's disposal of waste (which included lead and arsenic) into the Newhall landfill?

- [Negligence Claim] Did Olin owe Plaintiffs a duty during the 1930s and early 1940s when Olin disposed of waste into the Newhall landfill?

---

[1] Olin believes that many of these common issues may be the subject of a motion for summary judgment.  Indeed, some of the common issues listed above (such as the existence of a duty, or whether Olin engaged in an abnormally dangerous activity) are threshold questions of law for the Court to resolve.

- [Negligence Claim] Did Olin breach any duty (based on a then applicable standard of care) by disposing of waste into the Newhall landfill during the 1930s and early 1940s?

- [Gross Negligence/Reckless Conduct Claim] Was Olin's conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger was apparent?

- [Negligence Per Se Claim] Did Olin breach any duty (based on a then applicable legislative standard) by disposing of waste into the Newhall landfill during the 1930s and early 1940s?

- [Public Nuisance]  Did Olin's conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s have a natural tendency to create a danger and inflict injury upon person or property and, if so, was the danger created by Olin's conduct a continuing one?

- [Public Nuisance]  Was Olin's conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s unreasonable or unlawful?

- [Abnormally Dangerous Activity]  Does Olin's conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s constitute an abnormally dangerous activity?

- [Infliction of Emotional Distress]  Did Olin intend to inflict emotional distress, or did Olin know or should Olin have known that emotional distress was a likely result of its conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s?

- Was Olin's conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s extreme and outrageous?

## 2)     Individual Issues To Be Addressed In Second Phase

- To what extent, if any, was Olin's conduct in disposing of waste into the ground during the 1930s and early 1940s the proximate cause of each plaintiff's alleged emotional distress?

- To what extent, if any, was Olin's conduct in disposing of waste into the ground during the 1930s and early 1940s the proximate cause of each plaintiff's alleged loss of use and enjoyment of their property?

- To what extent, if any, was Olin's conduct in disposing of waste into the ground during the 1930s and early 1940s the proximate cause of each plaintiff's alleged diminution in the value of their property?

- To what extent, if any, did Olin's conduct in disposing of waste into the ground during the 1930s and early 1940s cause each plaintiff to allegedly expend monies to contain, remove or mitigate waste disposed of by Olin?

- To what extent, if any, did Olin's conduct in disposing of waste into the ground during the 1930s and early 1940s cause each plaintiff to allegedly incur response costs that were necessary and consistent with the National Contingency Plan set up by CERCLA?

- To what extent, if any, did Olin's conduct in disposing of waste into the ground during the 1930s and early 1940s cause each plaintiff to suffer damages, and the amounts of any such damages?

WHEREFORE, Olin respectfully requests that the Court grant its motion for clarification, and grant such other relief as the Court deems just and proper.

Respectfully submitted,

HUSCH BLACKWELL SANDERS, LLP

By: */s/ Joel B. Samson*
    Michael H. Wetmore (ct24899)
    Joel B. Samson (ct24898)
    Omri E. Praiss (ECF registration pending)
    190 Carondelet Plaza, Suite 600
    St. Louis, Missouri 63105
    Telephone: 314-480-1500

Fax: 314-480-1505
michael.wetmore@husch.com
joel.samson@husch.com
omri.praiss@husch.com

and

BROWN RUDNICK BERLACK ISRAELS LLP
Mark S. Baldwin, Esq.
185 Asylum St.
CityPlace I, 38th Floor
Hartford, CT  06103
Telephone: 860-509-6500
Fax: 860-509-6501
mbaldwin@brownrudnick.com

*Attorneys for Defendant Olin Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the attorneys of record registered for the Court's ECF system (as reflected by the email addresses shown below) or by mailing the same, first class mail, postage prepaid, to the non-participants in the Court's ECF system, on this 3rd day of April, 2008.

| | |
|---|---|
| Neil T. Leifer, Esq.<br>Brad J. Mitchell, Esq.<br>Thornton & Naumes L.L.P.<br>100 Summer Street, 30th Floor<br>Boston, Massachusetts 02110<br>Telephone: (617) 720-1333<br>Facsimile: (617) 720-2445<br>nleifer@tenlaw.com<br>bmitchell@tenlaw.com<br><br>Monte E. Frank, Esq.<br>Cohen and Wolf, PC<br>158 Deer Hill Avenue<br>Danbury, CT 06810<br>Telephone: (203) 367-6202<br>Facsimile: (203) 791-8149<br>mfrank@cohenandwolf.com<br><br>David B. Zabel, Esq.<br>Cohen and Wolf, PC<br>1115 Broad Street<br>Bridgeport, Connecticut 06604<br>Telephone: (203) 368-0211<br>Facsimile: (203) 394-9901<br>aclark@cohenandwolf.com<br>dzabel@cohenandwolf.com<br>pgoodman@cohenandwolf.com | Mark Roberts, Esq.<br>Andrew A. Rainer, Esq.<br>McRoberts , Roberts & Rainer, LLP<br>53 State St.<br>Boston, MA 02114<br>Telephone: (617) 722-8222<br>Facsimile: (617) 720-2320<br>mroberts@mcrobertslaw.com<br>arainer@mcrobertslaw.com<br><br>***Attorneys for Plaintiff*** |

_____/s/ Carrie Hartnett_____