UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARENCE R. COLLINS, JR., et al | : | 3:03-CV-945 (CFD) |
| | : | |
| Plaintiffs, | : | |
| VS. | : | |
| | : | |
| OLIN CORPORATION, et al | : | |
| | : | |
| Defendants | : | |

**DEFENDANT OLIN CORPORATION'S MOTION
FOR ENTRY OF REVISED SCHEDULING ORDER**

Pursuant to the Court's Order, dated April 15, 2008, Defendant Olin Corporation ("Olin") hereby files this motion for entry of the following proposed revised scheduling order. In support of this motion and Olin's proposed revised scheduling order, Olin states as follows:

**Introduction**

On April 30, 2008, Plaintiffs provided Olin with a draft joint motion to modify the scheduling order in this case. The following day, Olin advised Plaintiffs that their proposed revised scheduling order was not acceptable. In particular, under Plaintiffs' proposed revised scheduling order, "[t]he First Phase would involve issues relating to Olin's **liability** for the alleged environmental contamination at the Class member's properties." (emphasis added). *See* Plaintiffs' Motion for Modification of Scheduling Order at p. 2.

Olin advised Plaintiffs that this language was problematic and unacceptable, because it was not clear what issues and evidence Plaintiffs contemplated would be encompassed with the scope of the phrase "Olin's liability." Specifically, Olin explained that the term "liability" encompassed issues relating to duty as well as causation, leaving only damages for the Plaintiffs' proposed Second Phase. Assuming that is what Plaintiffs intend (which they failed to clarify),

Olin explained that such an approach ignores the fact that there remain many <u>individual</u> issues relating to causation in this case. Indeed, this Court previously recognized this critical point. For example, in ruling on Plaintiffs' motion for class certification, this Court noted that:

- "inquiry into each plaintiff's mental health and other potential causes of emotion distress will need to be conducted in order to determine if Olin's actions are indeed the proximate cause"; and

- "whether the interference was unreasonable or not can also be readily addressed at the damages phase."

Ruling at 13.[1]

Thus, it follows that to determine Olin's "liability" (separate from damages) will require an individualized analysis with respect to various issues relating to each plaintiff, including, but not limited to, whether Olin's alleged conduct was the proximate cause of each plaintiff's emotional distress, and whether Olin's alleged interference was unreasonable with respect to each plaintiff. As a result, Plaintiffs' proposed revised scheduling order would require the parties to depose <u>all</u> plaintiffs during the First Phase discovery, in order to be in a position to present evidence with respect to each plaintiff during the First Phase trial. Clearly, this approach is highly inefficient. Moreover, Plaintiffs' proposed revised scheduling order would likely result in a violation of Olin's 7th Amendment rights.

Accordingly, Olin respectfully submits that the Court should adopt the following proposed revised scheduling order, which would address and resolve all remaining issues in this case in an orderly and efficient manner.

---

[1] As the Court noted in its class certification ruling, Plaintiffs also recognize this point: "Regarding the intentional infliction of emotional distress claim, Olin argues that an inquiry into each plaintiff's mental health and other potential causes of emotional distress will need to be conducted in order to determine if Olin's actions are indeed the proximate cause. **However, the plaintiffs point out that this inquiry can easily be done in conjunction with the inquiry into the actual damages sustained by each plaintiff**." Ruling at 13 (emphasis added).

**Proposed Revised Discovery Schedule**

**I)    Phase I Discovery/Trial**

During the first phase, the Parties would complete any remaining fact discovery as well as expert discovery necessary for the Parties to address the following common issues by summary judgment and, to the extent necessary, by a first trial:

- What was Olin's general course of conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s?

- What was the general nature of the waste disposed of by Olin into the Newhall landfill during the 1930s and early 1940s?

- What was Olin's knowledge during the 1930s and early 1940s concerning the general nature of the harms potentially caused by Olin's disposal of waste (which included lead and arsenic) into the Newhall landfill?

- What was the custom and practice during the 1930s and early 1940s with respect to the disposal of the kinds of waste that Olin generated and disposed of in the Newhall landfill?

- What was the state of industry knowledge during the 1930s and early 1940s concerning the general nature of the harms potentially caused by Olin's disposal of waste (which included lead and arsenic) into the Newhall landfill?

- [Negligence Claim] Did Olin owe Plaintiffs a duty during the 1930s and early 1940s when Olin disposed of waste into the Newhall landfill?

- [Negligence Claim] Did Olin breach any duty (based on a then applicable standard of care) by disposing of waste into the Newhall landfill during the 1930s and early 1940s?

- [Gross Negligence/Reckless Conduct Claim] Was Olin's conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger was apparent?

- [Negligence Per Se Claim] Did Olin breach any duty (based on a then applicable legislative standard) by disposing of waste into the Newhall landfill during the 1930s and early 1940s?

- [Public Nuisance]  Did Olin's conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s have a natural tendency to create a danger and inflict injury upon person or property and, if so, was the danger created by Olin's conduct a continuing one?

- [Public Nuisance]  Was Olin's conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s unreasonable or unlawful?

- [Abnormally Dangerous Activity]  Does Olin's conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s constitute an abnormally dangerous activity?

- [Infliction of Emotional Distress]  Did Olin intend to inflict emotional distress, or did Olin know or should Olin have known that emotional distress was a likely result of its conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s?

- Was Olin's conduct in disposing of waste into the Newhall landfill during the 1930s and early 1940s extreme and outrageous?

At the completion of Phase I fact and expert discovery addressing these common issues, Olin anticipates filing certain motions for summary judgment.  In particular, some of the foregoing common issues (such as the existence of a duty, or whether Olin engaged in an abnormally dangerous activity) are threshold questions of law for the Court to resolve.

Subject to the Court's ruling on Olin's motions for summary judgment, the parties would proceed to the first trial.  During this trial, the Court (jury) would address and resolve any remaining common issues from the foregoing list.

Olin proposes the following schedule with respect to Phase I Discovery/Trial:

a. Fact discovery shall be completed by October 31, 2008;

b. Expert discovery shall be completed by March 31, 2009;

- Plaintiffs to make required disclosure of experts and expert reports by December 1, 2008;

- Plaintiffs' expert to be deposed by January 15, 2009;

- Olin to make required disclosure of experts and expert reports by February 16, 2009;

- Olin's expert to be deposed by March 31, 2009.

c. Motions for Summary Judgment:

- Motions for Summary Judgment filed by May 15, 2009;

- Oppositions to Motions for Summary Judgment filed by June 15, 2009; and

- Reply to Motions for Summary Judgment filed by July 15, 2009.

d. First Trial to be scheduled in late 2009.

At the completion of this first trial, the Parties will know to what extent, if any, Plaintiffs state viable claims for negligence, gross negligence/reckless conduct, negligence per se, private and public nuisance, abnormally dangerous activity/strict liability, and intentional infliction of emotional distress.

**II)    Phase II Discovery/Trial**

At the completion of the Phase I Discovery/Trial, with respect to Plaintiffs' remaining claims, the parties would then proceed to complete any necessary fact/expert discovery with respect to the following individual issues:

- To what extent, if any, was Olin's conduct in disposing of waste into the ground during the 1930s and early 1940s the proximate cause of each plaintiff's alleged emotional distress?

- To what extent, if any, was Olin's conduct in disposing of waste into the ground during the 1930s and early 1940s the proximate cause of each plaintiff's alleged loss of use and enjoyment of their property?

- To what extent, if any, was Olin's conduct in disposing of waste into the ground during the 1930s and early 1940s the proximate cause of each plaintiff's alleged diminution in the value of their property?

- To what extent, if any, did Olin's conduct in disposing of waste into the ground during the 1930s and early 1940s cause each plaintiff to allegedly expend monies to contain, remove or mitigate waste disposed of by Olin?

- To what extent, if any, did Olin's conduct in disposing of waste into the ground during the 1930s and early 1940s cause each plaintiff to allegedly incur response costs that were necessary and consistent with the National Contingency Plan set up by CERCLA?

- To what extent, if any, did Olin's conduct in disposing of waste into the ground during the 1930s and early 1940s cause each plaintiff to suffer damages, and the amounts of any such damages?

Depending on the number of plaintiffs that remain in this litigation (based on the Court's ruling on Olin's motions for summary judgment, including the pending motion for summary judgment based on statute of limitations), the parties could then pursue discovery and a trial concerning the foregoing individual issues with respect to a mutually agreeable number of bellwether plaintiffs.

Olin believes that the foregoing bifurcated discovery/trial approach is the most efficient approach to complete all remaining discovery. Moreover, this bifurcated discovery/trial approach would avoid any possible 7th Amendment or due process issues.

WHEREFORE, Olin respectfully requests the Court enter a Revised Scheduling Order based on the proposed discovery/trial schedule as set forth herein.

Respectfully submitted,

HUSCH BLACKWELL SANDERS, LLP

By: */s/ Joel B. Samson*
　　Michael H. Wetmore (ct24899)
　　Joel B. Samson (ct24898)
　　Omri E. Praiss (ECF registration pending)
　　190 Carondelet Plaza, Suite 600
　　St. Louis, Missouri 63105
　　Telephone: 314-480-1500
　　Fax: 314-480-1505
　　michael.wetmore@husch.com
　　joel.samson@husch.com
　　omri.praiss@husch.com

and

BROWN RUDNICK BERLACK ISRAELS LLP
　　Mark S. Baldwin, Esq.
　　185 Asylum St.
　　CityPlace I, 38th Floor
　　Hartford, CT  06103
　　Telephone: 860-509-6500
　　Fax: 860-509-6501
　　mbaldwin@brownrudnick.com

　　*Attorneys for Defendant Olin Corporation*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the attorneys of record registered for the Court's ECF system (as reflected by the email addresses shown below) or by mailing the same, first class mail, postage prepaid, to the non-participants in the Court's ECF system, on this 2nd day of May, 2008.

| | |
|---|---|
| Neil T. Leifer, Esq.<br>Brad J. Mitchell, Esq.<br>Thornton & Naumes L.L.P.<br>100 Summer Street, 30th Floor<br>Boston, Massachusetts 02110<br>Telephone: (617) 720-1333<br>Facsimile: (617) 720-2445<br>nleifer@tenlaw.com<br>bmitchell@tenlaw.com<br><br>Monte E. Frank, Esq.<br>Cohen and Wolf, PC<br>158 Deer Hill Avenue<br>Danbury, CT 06810<br>Telephone: (203) 367-6202<br>Facsimile: (203) 791-8149<br>mfrank@cohenandwolf.com<br><br>David B. Zabel, Esq.<br>Cohen and Wolf, PC<br>1115 Broad Street<br>Bridgeport, Connecticut 06604<br>Telephone: (203) 368-0211<br>Facsimile: (203) 394-9901<br>aclark@cohenandwolf.com<br>dzabel@cohenandwolf.com<br>pgoodman@cohenandwolf.com | Mark Roberts, Esq.<br>McRoberts, Roberts & Rainer, LLP<br>53 State St.<br>Boston, MA 02114<br>Telephone: (617) 722-8222<br>Facsimile: (617) 720-2320<br>mroberts@mcrobertslaw.com<br><br>*Attorneys for Plaintiff* |

                                    */s/ Carrie Hartnett*