# EXHIBIT G




# STATE OF CONNECTICUT
## DEPARTMENT OF ENVIRONMENTAL PROTECTION

*IN THE MATTER OF*                    :        *ORDER NO. SRD-128*


*TOWN OF HAMDEN, ET AL*              :        *APRIL 16, 2003*

### FINAL DECISION

The parties have agreed to resolve the appeal of the above-captioned order by issuance of the attached *Consent Order*. The parties have signed the *Order* and, where required, have confirmed the completion of all necessary reviews and assents to this agreement.


By my signature, I issue the *Consent Order* as my *Final Decision* in this matter.


4/16/03
_____
Date

_____
Janice B. Deshais, Hearing Officer

```
STATE OF CONNECTICUT            :  ORDER NO. SRD-128
                                :
        VS.                     :
                                :
TOWN OF HAMDEN, SOUTH CENTRAL   :
CONNECTICUT REGIONAL WATER      :
AUTHORITY, STATE BOARD OF       :
EDUCATION, AND OLIN CORPORATION :
```

## CONSENT ORDER

A.   The Commissioner of the Department of Environmental Protection ("the Commissioner"), for the purposes of this consent order only, finds:

(The Proceedings)

1.   On July 10, 2001 the Commissioner issued Order No. SRD-128 to the Town of Hamden, South Central Connecticut Regional Water Authority, State Board of Education and Olin Corporation (collectively, the "Respondents"; individually, a "Respondent") requiring Respondents to investigate and remediate sources of pollution on a Site which consisted of those properties known as the Hamden Middle School, Newhall Street School/also known as Hamden Community Center,

two Hamden Housing Authority properties on Morse Street, Rochford Field, Mill Rock Park/also known as Rochford Field Annex and the sewage pump station located at 1099 Winchester Avenue, Hamden ("the Public Properties") and certain privately owned properties in the vicinity of the Public Properties, where wetland areas formerly existed or where waste materials were historically placed and identified on the map attached hereto as Exhibit 1 ("the Non-Public Properties"). Together the Public Properties and the Non-Public Properties are referred to herein as the Site.

2. All Respondents appealed from the issuance of Order No. SRD-128 and a contested case proceeding commenced.

3. During the course of the contested case proceeding, investigations of the Public Properties were performed on a voluntary basis by respondents Town of Hamden and South Central Connecticut Regional Water Authority, and an investigation of the Non-Public Properties was performed by respondent Olin

2

Corporation on a voluntary basis. Additionally, prior to and after the commencement of the contested case proceeding, the Connecticut Department of Environmental Protection conducted an investigation of the Public Properties and the Non-Public Properties and the United States Environmental Protection Agency conducted an investigation and performed an emergency removal action on certain Public and Non-Public Properties. Substantial amounts of historic and technical information resulted from these investigations which will be included in these findings.

(The History of the Site)

4. Historically, and continuing well into the mid to late 1900s, it was a well accepted and customary practice throughout the state to eliminate wetlands and low lying areas which were considered to be mosquito breading areas in order to protect the public from the ills of mosquito borne diseases (e.g., malaria, yellow fever). To that end, public health

officials encouraged the filling of wetlands and low lying areas to protect the public health and safety.

5.  In the first half of the last century substantial portions of this Site contained wetlands and low lying areas.

6.  From as early as 1915, Hamden public health officials solicited owners of such properties containing wetlands and low lying areas to allow refuse to be dumped on these properties.  In some instances the town would operate public dumps on these properties and when filled and the public health concerns eliminated, the properties would be developed by their owners.

7.  Review of historic records shows that some time prior to 1917 the Town of Hamden had established public dumps between Goodrich Street and Morse Street, an area located in the western portion of the Non-Public Properties.

8.   The exact dates when the public dumps between Goodrich Street and Morse Street   were closed is unknown,   although one record indicates that it was closed some time after World War I.    Additionally, substantial areas of this portion of the Site were developed  by the mid 1920s and 1930s.

9.   Historic records also show that the Town of Hamden established other public dumps in the area of the Site where Rochford Field and Mill Rock Park are currently located.    From at least the mid 1920s to late 1930s two dumps were established in this area and were referred to as the Newhall Street Dump and the Mill Rock Dump.    It appears that the Newhall Street Dump closed and Rochford Field was established on at least part of that dump in the late 1930s. The Mill Rock Dump was active until at least 1939  and portions of it were developed as a park in the early 1940s.

10. By way of a series of real estate transfers between 1936 and 1939, the town acquired the

5

properties which are now Rochford Field, Mill Rock Park, and the sewage pump station.

11. By deeds dated July 17, 1900 and December 12, 1924, the New Haven Water Company, the predecessor of the present South Central Connecticut Regional Water Authority, acquired the properties currently known as the Hamden Middle School Property, a portion of the Hamden Community Center and two properties known as 249-251 Morse Street and 253-255 Morse Street (and identified on the map attached hereto as Exhibit 2).

12. Sometime prior to 1934, the New Haven Water Company entered into an agreement with Winchester Repeating Arms Company whereby Winchester Repeating Arms Company was given use of what is currently known as the Hamden Middle School Property for dumping purposes.

13. The Winchester Repeating Arms Company, a Connecticut corporation located in New Haven, Connecticut, was formed in 1866. The company manufactured, among other things, firearms, ammunition

and dry cell batteries at its facility located on Winchester Avenue in New Haven.

14. On or about February 7, 1929 Winchester Repeating Arms Company was renamed Winchester Manufacturing Company and by order of the United States District Court for the District of Connecticut was reorganized with The Winchester Company, and all its assets were transferred to a newly formed corporation known as Winchester Repeating Arms Company of Delaware. Winchester Repeating Arms Company of Delaware was put into receivership on January 22, 1931 on a creditor's bill filed in the United States District Court for the District of Connecticut. In December 1931, the assets of Winchester Repeating Arms Company of Delaware, pursuant to a Final Decree of the Court, were auctioned and purchased by two individuals, P.D. Beardslee and Ben Flemming Sessel. Beardslee and Sessel transferred all their interest in Winchester Repeating Arms Company of Delaware to Winchester Repeating Arms Company of Maryland. Winchester Repeating Arms Company of Maryland operated the New

7

Haven facility from 1932 until 1938 when it dissolved and its assets were transferred to Western Cartridge Company which subsequently became known as Respondent Olin Corporation.

15. From at least 1933 respondent Olin Corporation and its predecessors continued the practice of the Winchester Repeating Arms Company of dumping ash and other waste at the Hamden Middle School Property as fill with the permission of the New Haven Water Company.

16. Respondent Olin also used public dumps established by the Town of Hamden on the Public and Non-Public Properties to discard ash and other manufacturing wastes generated at its plant on Winchester Avenue in New Haven.

17. On March 29, 1950, the New Haven Water Company transferred the Hamden Middle School Property to the Town of Hamden.

18. On March 30, 1950, the Town of Hamden transferred the Hamden Middle School Property to the State of Connecticut for use as the site for a regional technical training school.

19. The State of Connecticut owned the Hamden Middle School Property from March 30, 1950 to February 24, 1954, when this property was conveyed back to the Town of Hamden by the Treasurer of the State of Connecticut because the State Board of Education found the property to be unsuitable for a regional technical training school because of expensive foundation costs.

20. Dumping at the Hamden Middle School Property by respondent Olin continued until at least 1957 and aerial photographs of the site show that during the time that the State Board of Education had supervision and control of this property, the area of fill activity on this property increased.

(Waste on the Site)

21. Investigations of the Site reveal that industrial waste including, but not limited to, batteries, empty ammunition shells, ash, slag and coal waste, as well as other industrial and household waste are buried throughout the Site in varying proportions and at various locations.

22. Soils at the Site are polluted with metals, volatile organic compounds, semi volatile organic compounds, polychlorinated biphenyls (PCBs) and total petroleum hydrocarbons.

23. In accordance with the directives of the Connecticut Supreme Court in <u>Connecticut Building Wrecking Company v. Carothers</u>, 218 Conn. 580 (1991), any final decision of this agency must consider the issues of combined or alternative causation and joint and several liability and, if a reasonable basis for apportionment of liability is presented by responsible parties, liability must be apportioned.

24. Based on the current status of Connecticut law, it is possible that respondents Olin Corporation,

South Central Connecticut Regional Water Authority, Town of Hamden and State Board of Education would, in some portion, be held responsible to perform the investigation and remediation of the Hamden Middle School Property.

25. Based on the current status of Connecticut law, it is possible that respondents Olin Corporation and the Town of Hamden would, in some portion, be held responsible to perform the investigation and remediation of Rochford Field, Mill Rock Park and the sewage pump station.

26. Based on the current status of Connecticut law, it is possible that respondent Town of Hamden would have no legal responsibility to perform the investigation and remediation of the Non-Public Properties because under Conn. Gen. Stat. § 22a-432 and § 22a-433 a municipality can only be held responsible for the investigation and remediation of polluted property that it owns.

11

27.  Based on the current status of Connecticut law, it is possible that respondent South Central Connecticut Regional Water Authority would be held responsible to perform the investigation and remediation of Public Properties presently owned by the Hamden Housing Authority at 249-251 and 253-255 Morse Street.

28.  Based on the current status of Connecticut law, it is possible that respondent Olin Corporation would be held responsible to perform the investigation and remediation of only those portions of the Non-Public Properties that were filled with waste from the Winchester facility in New Haven after January 1932, the date when Winchester Repeating Arms of Maryland, the predecessor to respondent Olin Corporation, began operations at the Winchester facility in New Haven.

29.  Approximately two-thirds of the Non-Public Properties were filled and/or developed prior to 1932, during which time Olin Corporation and its predecessor did not operate the Winchester facility in New Haven.

12

30. Although other state enforcement vehicles are available to the Commissioner that may require respondent Town of Hamden to perform the investigation and remediation of a substantial portion of the Non-Public Properties, use of other enforcement vehicles by the Commissioner would cause severe financial hardship to the Town and citizens of Hamden.

31. Therefore, without making admission of fact or law with respect to any matter asserted herein, the Respondents and the Commissioner agree for purposes of settlement to allocate the responsibility to investigate and remediate the Site in accordance with this consent order.

B. With the agreement of the Respondents, the Commissioner, acting under Sections 22a-6, 22a-424, 22a-425, 22a-427, 22a-432 and 22a-433 of the Connecticut General Statutes, orders Respondents as follows:

1.

    a. Olin Corporation shall perform all investigations that the Commissioner deems

necessary to determine the extent and degree of pollution of the Non-Public Properties and perform the remediation of the Non-Public Properties, in accordance with the Regulations of Connecticut State Agencies ("RCSA"), Sections 22a-133k-1 to k-3 ("Remediation Standard Regulations"). The performance of such remediation is subject to the terms of this paragraph. Olin Corporation and the Commissioner, on behalf of the public parties, shall share the cost of the remediation of the Non-Public Properties on a 50/50 basis. Should any remedial action require the acquisition of any Non-Public Properties pursuant to Conn. Gen. Stat. § 22a-25, title to such properties will be held solely in the name of the State of Connecticut. The Commissioner and Olin shall evaluate potential sites for the consolidation of materials as part of the remedial action plan for the Non-Public Properties. Upon request, the Town shall assist to the extent practicable in

14

the identification and utilization of such potential sites.

b.    Town of Hamden shall pay for and perform the investigation and remediation of Mill Rock Park and the sewage pump station.

c.    Town of Hamden shall perform, subject to the terms of this paragraph, the investigation and remediation of Rochford Field.    The Commissioner and the Town of Hamden, together, will seek funds from the State of Connecticut for the investigation and remediation of Rochford Field.

d.    South Central Connecticut Regional Water Authority shall perform the investigation and remediation of the Hamden Middle School Property, a portion of the Newhall Street School/Hamden Community Center formerly owned by the South Central Connecticut Regional Water Authority and 249-251 Morse Street and 253-255 Morse Street. Furthermore, if environmentally appropriate and

in compliance with the Remediation Standard Regulations and other state and federal laws, the parties performing the remediation of the Non-Public Properties may, after consultation with the Town and the South Central Connecticut Regional Water Authority, consolidate materials or waste from Non-Public Properties onto the Hamden Middle School Property portion of the Site at no cost; provided however, that the final elevation, including the South Central Connecticut Regional Water Authority cap, shall be at or below the elevation of the Morse Street properties (approximately elevation 62). The Town in its discretion may allow for a higher elevation. Any remediation of the Hamden Middle School property or use of that property for the consolidation of materials or waste from the Non-Public Properties shall be coordinated and timed so as not to interfere with the normal use and functioning of the Hamden Middle School property as a school. Any additional remedial costs to be

16

incurred by the South Central Connecticut Regional Water Authority attributable to the placement of materials or waste from the Non-Public Properties on the Hamden Middle School portion of the Site will be borne equally by the parties paying for the remediation of the Non-Public Properties.

e.   Any responsibility of the State Board of Education for investigation and remediation of the Site, which may be attributed to its ownership, supervision and control of a portion of the Site, shall be deemed satisfied by the payment of state funds for the remediation of the Site.

2.  Respondent Town of Hamden has retained Haley & Aldrich, Inc. as its consultant to prepare documents and oversee actions required by this consent order. Respondent South Central Connecticut Regional Water Authority has retained Leggette, Brashears & Graham, Inc. as its consultant to prepare documents and

17

oversee actions required by this consent order.
Respondent Olin Corporation has retained Malcolm
Pirnie, Inc. as its consultant to prepare documents
and oversee actions required by this consent order.
Each Respondent shall continue to retain its
consultant or other qualified consultants acceptable
to the Commissioner until this consent order is fully
complied with. Within ten days after a Respondent
retains any consultant other than that listed herein,
such Respondent shall (i) notify the Commissioner in
writing of the identity of such other consultant and
(ii) shall submit to the Commissioner a description of
a consultant's education, experience and training
which is relevant to the work required by this consent
order within ten days after a request for such a
description. Nothing in this paragraph shall preclude
the Commissioner from finding a previously acceptable
consultant unacceptable.

3.   a.   The Commissioner acknowledges that
          Respondents Town of Hamden, South Central
          Connecticut Regional Water Authority and Olin

18

Corporation have previously submitted to the Commissioner scopes of study and written reports, listed on Exhibit 3, which summarize the results of remedial investigations of portions of the Site performed by Respondents. If the Commissioner determines that any such written report is incomplete in any respect or does not fully characterize the extent and degree of soil, surface water and ground water pollution to the satisfaction of the Commissioner, on or before 30 days after receiving written notice of the incomplete nature of such written reports, the Respondent that submitted such report shall submit a scope of study for supplemental investigation for the Commissioner's review and written approval in accordance with paragraph B.3.b.

b. <u>Scope of Study</u>. If the Commissioner determines that any specific written report referenced in paragraph B.3.a. is unacceptable or incomplete, the Respondent that submitted such

19

report shall submit for the Commissioner's review and written approval a scope of study for the supplemental investigation of such Respondent's specific portions of the Site determined by the Commissioner to be incompletely characterized by previous investigations conducted by such Respondent. Such study shall include, at a minimum:

(1)  A plan to further determine the extent and degree of soil, surface water and ground water pollution resulting from the disposal of waste materials at the Site;

(2)  the proposed locations and depths of ground water monitoring wells and soil and surface water sampling;

(3)  a proposed sampling and analytical program, including at least the parameters to be tested, sampling and analytical methods, and quality

20

assurance and quality control procedures; and

(4) a schedule for conducting the investigation required by this paragraph of the consent order. The schedule shall also include a date by which the report required by paragraph B.3.f. of this consent order will be submitted to the Commissioner.

c.   Performance of Investigation.

(1) Each Respondent shall perform the investigation and other actions specified in the approved scope of study for that portion of the Site for which such Respondent is responsible in accordance with the approved scope of study and the approved schedule.

(2) Each Respondent shall notify the Commissioner in writing of the date and time of installation of monitoring

21

wells and of each soil and water sampling event undertaken by such Respondent at least six business days prior to such installation or sampling.

d.  <u>Supplemental Plan and Investigation</u>.  If a Respondent's investigation(s) carried out under paragraph B.3.a. or approved scope of study does not fully characterize the extent and degree of soil, surface water and ground water pollution to the satisfaction of the Commissioner, additional investigation shall be performed by such Respondent in accordance with a supplemental plan and schedule approved in writing by the Commissioner. Unless otherwise specified in writing by the Commissioner, the supplemental plan and schedule shall be submitted for the Commissioner's review and written approval on or before 30 days after notice from the Commissioner that they are required. Each Respondent shall notify the

22

Commissioner in writing of the date and time of installation of monitoring wells and of each soil and water sampling event undertaken by such Respondent at least six business days prior to such installation or sampling.

e.   <u>Investigation Report and Remedial Action Plan</u>. In accordance with the schedule approved by the Commissioner pursuant to paragraph B.3.b. of this consent order, each Respondent shall submit for the Commissioner's review and written approval a comprehensive and thorough report which describes in detail the investigation performed by such Respondent pursuant to paragraphs B.3.a., B.3.c. and B.3.d. of this consent order, and which:

(1)  defines the existing and potential extent and degree of soil, surface water and ground water pollution which

23

is on, is emanating from or has emanated from that portion of the Site for which such Respondent is responsible;

(2) evaluates the alternatives for remedial actions to abate such pollution in accordance with the standards adopted pursuant to section 22a-133k of the Connecticut General Statutes. This evaluation shall include, but not be limited to, any alternative specified by the Commissioner;

(3) states in detail the most expeditious schedule for performing each alternative;

(4) lists all permits and approvals required for each alternative, including, but not limited to any permits required under sections 22a-32, 22a-42a, 22a-342, 22a-361, 22a-368 or

24

22a-430 of the Connecticut General
Statutes;

(5) proposes a preferred alternative with
supporting justification therefor; and

(6) proposes a detailed remedial action
plan and schedule to perform the
preferred remedial actions. The
schedule required by this paragraph
shall also include a schedule for
applying for and obtaining all permits
and approvals required for such
remedial actions.

f.    Submission of Monitoring Plan.  On or before
30 days after the Commissioner has approved
a remedial action alternative, each
Respondent shall submit for the
Commissioner's review and written approval:

(1) a plan for soil, surface water and
ground water monitoring to determine

25

the degree to which the approved remedial actions have been effective; and

(2) a schedule for performing the approved monitoring program.

g. <u>Permits</u>.

(1) On or before 30 days after the Commissioner has approved a remedial action plan, pursuant to paragraph B.3.e. of this consent order, or in accordance with an alternate schedule approved by the Commissioner, each Respondent shall apply for all permits that are necessary for such Respondent to carry out such Respondent's remedial action approved by the Commissioner.

(2) Each Respondent shall ensure that such applications submitted by such Respondent are complete and shall

26

diligently pursue the issuance of such permits. Should the Commissioner request additional information, as part of the permit review and evaluation process, such information shall be submitted on or before 30 days of receiving a written request from the Commissioner.

h. Notice. On or before 10 days after receipt of any required permit or approval, each Respondent shall submit to the Commissioner notice of receiving such permit or approval, and shall, upon the Commissioner's written request, submit a copy of such permit.

i. Performance of remedial actions.

(1) Each Respondent shall perform the approved remedial actions for the portion of the Site for which it is responsible in accordance with the plan and schedule approved pursuant to

27

paragraph B.3.e.(6) of this consent order.

(2)  On or before 15 days of completing such remedial actions, each Respondent shall certify to the Commissioner in writing that such Respondent's actions have been completed as approved.

j.  Monitoring.

(1)  Each Respondent shall perform its monitoring program approved pursuant to paragraph B.3.f. of this consent order to determine the effectiveness of the remedial actions.    Such monitoring shall be conducted in accordance with the schedule approved pursuant to paragraph B.3.f. of this consent order.

(2)  On a schedule established by the Commissioner in writing, or, if no such schedule is established, on a quarterly

28

basis beginning no later than 90 days after initiation of the approved remedial actions, each Respondent shall submit for the Commissioner's review and written approval a report describing the results of its monitoring program during that quarter or reporting period.

k. <u>Additional remedial actions, measures and reporting</u>. If the approved remedial actions conducted by a Respondent on that portion of the Site for which it is responsible do not result in the prevention and abatement of soil, surface water and ground water pollution consistent with the Remediation Standard Regulations to the satisfaction of the Commissioner, additional remedial actions, including measures for monitoring and reporting on the effectiveness of those actions, shall be performed by that Respondent in accordance with a supplemental

29

plan and schedule approved in writing by the Commissioner. Unless otherwise specified in writing by the Commissioner, the supplemental plan and schedule shall be submitted for the Commissioner's review and written approval on or before 30 days after notice from the Commissioner that such plan and schedule are required.

(1) On a schedule established by the Commissioner or, if no such schedule is established, on a quarterly basis beginning no later than ninety days after initiation of the approved remedial actions or, as applicable, supplemental remedial actions, each Respondent shall submit for the Commissioner's review and written approval a report describing the results to date of such Respondent's monitoring program to determine the effectiveness of its remedial actions.

30

(2)   A  Respondent  may  request  that  the
Commissioner  approve,  in  writing,
revisions  to  any  document  approved
hereunder  in  order  to  make  such
document consistent with law or for any
other appropriate reason.

4.   <u>Public Participation</u>.

The  Commissioner  shall  develop  and  implement  a
public  participation  plan  to  ensure  public
involvement  in  the  investigation  and  clean  up
process.   Each  Respondent  responsible  for  the
investigation  and  remediation  of  a  portion  of  the
Site  shall  participate  in  implementing  the  plan.
Respondent  the  Town  of  Hamden  shall  provide  in
kind  services,  including,  but  not  limited  to,  the
use  of  public  facilities  for  meetings  and  the
waiver  of  any  fees  charged  for  the  investigation
and  remediation  to  be  performed  in  public  rights-
of-way.

31

5.    <u>Progress reports.</u>    On or before the last day of March, June, September, and December of each year after issuance of this consent order and continuing until all actions required by this consent order have been completed as approved and to the Commissioner's satisfaction, each Respondent, excluding the State Board of Education, shall submit a progress report to the Commissioner describing the actions which such Respondent has taken to date to comply with this Consent Order.

6.    <u>Full compliance</u>.    A Respondent shall not be considered in full compliance with this consent order until all actions required by this consent order to be undertaken by such Respondent have been completed as approved and to the Commissioner's satisfaction.

7.    <u>Sampling and sample analyses.</u>    All sample analyses that are required by this consent order and all reporting of such sample analyses shall

be conducted by a laboratory certified by the Connecticut Department of Public Health to conduct such analyses. All sampling and sample analyses performed under this consent order shall be performed in accordance with procedures specified or approved in writing by the Commissioner, or, if no such procedures have been specified or approved, in accordance with EPA document SW-846. Unless otherwise specified by the Commissioner in writing, the value of each parameter shall be reported to the maximum level of precision and accuracy specified in the applicable protocol, and if no such level is specified, to the Analytical Detection Limit, as defined in RCSA Section 22a-133k-1(a)(1).

8.   <u>Approvals</u>.   Each Respondent shall use best efforts to submit to the Commissioner all such Respondent's documents required by this consent order in a complete and approvable form. If the Commissioner notifies a Respondent that such Respondent's document or other action is

33

deficient, and does not approve it with conditions or modifications, it is deemed disapproved, and such Respondent shall correct the deficiencies and resubmit it within the time specified by the Commissioner or, if no time is specified by the Commissioner, within 30 days of the Commissioner's notice of deficiencies. In approving any document or other action under this consent order, the Commissioner may approve the document or other action as submitted or performed or with such conditions or modifications as the Commissioner deems necessary to carry out the purposes of this order. Nothing in this paragraph shall excuse noncompliance or delay.

9.    <u>Definitions</u>. As used in this consent order, "Commissioner" means the Commissioner or a representative of the Commissioner.

10.   <u>Dates</u>. The date of submission to the Commissioner of any document required by this

34

consent order shall be the date such document is received by the Commissioner.  The date of any notice by the Commissioner under this consent order, including but not limited to notice of approval or disapproval of any document or other action, shall be the date such notice is deposited in the U.S. mail or is personally delivered, whichever is earlier.  Except as otherwise specified in this consent order, the word "day" as used in this order means calendar day.  Any document or action which is required by this consent order to be submitted or performed by a date which falls on a Saturday, Sunday or a Connecticut or federal holiday shall be submitted or performed by the next day which is not a Saturday, Sunday or Connecticut or federal holiday.

11. <u>Certification of documents</u>. Any document, including but not limited to any notice, which is required to be submitted to the Commissioner under this consent order shall be signed by the

· 35

Respondent responsible for submitting such document or notice or, if such Respondent is not an individual, by such Respondent's chief executive officer or a duly authorized representative of such officer, as those terms are defined in §22a-430-3(b)(2) of the Regulations of Connecticut State Agencies, and by the individual(s) responsible for actually preparing such document, and Respondent or Respondent's chief executive officer or duly authorized representative and each such individual shall certify in writing as follows:

> "I have personally examined and am familiar with the information submitted in this document and all attachments thereto, and I certify, based on reasonable investigation, including my inquiry of those individuals responsible for obtaining the information, that the submitted information is true, accurate and complete to the best of my knowledge and belief. I understand that any false statement made in the submitted information is punishable as a criminal offense under §53a-157b of the Connecticut General Statutes and any other applicable law."

36

12. <u>Noncompliance</u>.  This consent order is a final order of the Commissioner with respect to the matters addressed herein, and is nonappealable and immediately enforceable.  Any Respondent's failure to comply with this consent order may subject such Respondent to an injunction and penalties.

13. <u>False Statements</u>.  Any false statement in any information submitted pursuant to this consent order is punishable as a criminal offense under §53a-157b of the Connecticut General Statutes and any other applicable law.

14. <u>Notice of transfer; liability of Respondents</u>.  Until the Town of Hamden has fully complied with its responsibilities under this consent order, it shall notify the Commissioner in writing no later than 15 days after transferring all or any portion of the Public Properties, which is the subject of this consent order.  The Town of Hamden's obligations under this consent order

37

shall not be affected by the passage of title to any property to any other person or municipality.

15. <u>Commissioner's powers.</u>    Nothing in this consent order shall affect the Commissioner's authority to institute any proceeding or take any other action to prevent or abate violations of law, prevent or abate pollution, recover natural resource damages, and to impose penalties for violations of law, including but not limited to those described in this consent order. If at any time the Commissioner determines that the actions taken by any Respondent pursuant to this consent order has not successfully corrected all violations, fully characterized the extent or degree of any pollution, or successfully abated or prevented any pollution on or emanating from that portion of the Site for which such Respondent is responsible, the Commissioner may institute any proceeding to require such Respondent to undertake further investigation or further action to prevent or abate pollution.

16. <u>Respondents' obligations under law.</u>   Nothing in
    this consent order shall relieve any Respondent
    of other obligations under applicable federal,
    state and local law.

17. <u>No assurance by Commissioner.</u>   No provision of
    this consent order and no action or inaction by
    the Commissioner shall be construed to constitute
    an assurance by the Commissioner that the actions
    taken by Respondents pursuant to this consent
    order will result in compliance.

18. <u>Access to site</u>.   Any representative of the
    Department of Environmental Protection may enter
    the Public Property portion of the Site without
    prior notice for the purposes of monitoring and
    enforcing the actions required or allowed by this
    consent order.   If any portion of the Site, or
    any other property where access is needed to
    implement this consent order, is owned or
    controlled by persons other than any of the
    Respondents, such Respondent needing such access

39

shall use best efforts to secure access to the Site from such persons for such Respondent and the State.   If Respondent is unable to secure such access after use of best efforts, the Commissioner shall use his authority to compel access for such Respondent and the State.

19.   <u>Notice to Commissioner of changes.</u>   Within 15 days of the date a Respondent becomes aware of a change in any information submitted to the Commissioner under this consent order, or that any such information was inaccurate or misleading or that any relevant information was omitted, Such Respondent shall submit the correct or omitted information to the Commissioner.

20.   <u>No effect on rights of other persons.</u>   This consent order neither creates nor affects any rights of persons that are not parties to this consent order.

21.   <u>Commissioner's Covenants Not to Sue.</u>   In consideration of the actions that will be

40

performed by each Respondent, excluding the State Board of Education, and except as specifically provided in paragraph B.22, the Commissioner covenants not to sue or take administrative action against Respondents for past response costs incurred by the Commissioner at the Site, future response costs to be incurred by the Commissioner at the Site, and past disposal activities described in Paragraph A.

22. <u>Reservation of Rights.</u>  The covenant not to sue set forth above does not pertain to any matters other than those expressly specified in paragraph B.21.  The Commissioner reserves, and this consent order is without prejudice to, all rights against Respondents with respect to other matters, including but not limited to the following:

a. Claims based on a failure by any of the Respondents to meet a requirement of this consent order;

41

    b.    Claims based on maintaining or creating a source of pollution outside of the Site; and

    c.    Liability for maintaining or creating a source of pollution at the Site in the future.

23.    <u>Respondents' Release.</u>    Each Respondent hereby releases the other Respondents and the Commissioner, including any department or agency of the State of Connecticut, from any and all liability, claims, or causes of action related to the investigation of the Site by the Commissioner or any Respondent, and upon the Commissioner obtaining sufficient funds for the remediation which the Commissioner agrees to fund pursuant to this consent order, each Respondent releases the other Respondents and the Commissioner, including any department or agency of the State of Connecticut, from any and all liability, claims, or causes of action related to the remediation.

24.  <u>Notification of noncompliance.</u>  In the event that any Respondent becomes aware that it did not or may not comply, or did not or may not comply on time, with any requirement of this consent order or of any document required hereunder, such Respondent shall immediately notify by telephone the individual identified in the next paragraph and shall take all reasonable steps to ensure that any noncompliance or delay is avoided or, if unavoidable, is minimized to the greatest extent possible. Within five (5) days of the initial notice, such Respondent shall submit in writing the date, time, and duration of the noncompliance and the reasons for the noncompliance or delay and propose, for the review and written approval of the Commissioner, dates by which compliance will be achieved, and such Respondent shall comply with any dates which may be approved in writing by the Commissioner. Notification by such Respondent shall not excuse noncompliance or delay, and the Commissioner's approval of any compliance dates proposed shall not excuse noncompliance or delay unless specifically so stated by the Commissioner in writing.

43

25. <u>Submission of documents.</u>  Any document required to be submitted to the Commissioner under this consent order shall, unless otherwise specified in writing by the Commissioner, be directed to:

Ms. Shannon Windisch
Department of Environmental Protection
Bureau of Water Management
Permitting, Enforcement and Remediation Division
79 Elm Street
Hartford, Connecticut  06106-5127

Respondents consent to the issuance of this consent order without further notice.  With the exception of the Town of Hamden and the South Central Connecticut Regional Water Authority, each of the undersigned certifies that he is fully authorized to enter into this consent order and to legally bind the Respondent to the terms and conditions of the consent order. This consent order does not become a legally enforceable instrument nor is it effective as to the Respondents or the Commissioner unless and until it is approved by the Legislative Council of the Town of Hamden and the governing authority of the South Central Connecticut Regional Water Authority.

44

RESPONDENTS

BY: _____
The Honorable Carl Amento
Mayor of Hamden
For the Town of Hamden

February 13, 2003
_____
         Date


BY: _____
David Silverstone
Chief Executive Officer
For the South Central Connecticut Regional Water
Authority

_____
         Date


BY: _____
Theodore S. Sergi
Commissioner of Education
For the State Board of Education

_____
         Date


BY: _____
Curt Richards
Vice President
For Olin Corporation

_____
         Date


45

RESPONDENTS

BY: _____
     The Honorable Carl Amento
     Mayor of Hamden
     For the Town of Hamden


     _____
        Date


BY: _____
     David Silverstone
     Chief Executive Officer
     For the South Central Connecticut Regional Water
     Authority

     _____
        Date


BY: _____
     Theodore S. Sergi
     Commissioner of Education
     For the State Board of Education


     _____
        Date


BY: _____
     Curt Richards
     Vice President
     For Olin Corporation


     _____
        Date

45

RESPONDENTS

BY:   _____
      The Honorable Carl Amento
      Mayor of Hamden
      For the Town of Hamden

      _____
      Date


BY:   _____
      David Silverstone
      Chief Executive Officer
      For the South Central Connecticut Regional Water
      Authority

      _____
      Date


BY:   *Theodore S. Sergi* (signature)
      Theodore S. Sergi
      Commissioner of Education
      For the State Board of Education

      **02/06/2003**
      Date


BY:   _____
      Curt Richards
      Vice President
      For Olin Corporation

      _____
      Date


                              45

RESPONDENTS

BY: _____
    The Honorable Carl Amento
    Mayor of Hamden
    For the Town of Hamden


    _____
          Date


BY: _____
    David Silverstone
    Chief Executive Officer
    For the South Central Connecticut Regional Water
    Authority


    _____
          Date


BY: _____
    Theodore S. Sergi
    Commissioner of Education
    For the State Board of Education


    _____
          Date


BY: *Curt M Richards*_____
    Curt Richards
    Vice President              *Doyl A Cl*
    For Olin Corporation

    __2/7/03_____
          Date

45

Department of Environmental Protection

BY: _____
       Arthur J. Rocque, Jr.
       Commissioner

       *February 12, 2003*
       Date

This consent order is accepted as a final decision in Order No.
SRD-128 pursuant to RCSA § 22a-3a-6(1)(2)


       _____
       Janice B. Deshais
       Hearing Officer

       _____
       Date


ORDER NO. SRD-128
DISCHARGE CODE H
TOWN OF HAMDEN
LAND RECORDS


46





LEGEND

1900: NEW HAVEN WATER COMPANY ACQUIRES PARCEL FROM CONTINENTAL TRUST COMPANY. PARCEL IS SHOWN ON MAP AS AREA 1, AREA 3 AND AREA 4.

1924: TOWN OF HAMDEN ACQUIRES 1.4 ACRE PARCEL FROM NEW HAVEN WATER COMPANY. PARCEL IS SHOWN ON MAP AS AREA 1.

1924: NEW HAVEN WATER COMPANY ACQUIRES APPROXIMATE 1 ACRE PARCEL FROM TOWN OF HAMDEN. PARCEL IS SHOWN ON MAP AS AREA 2.

1947: TOWN OF HAMDEN ACQUIRES APPROXIMATE 6.2 ACRE PARCEL FROM NEW HAVEN WATER COMPANY. PARCEL IS SHOWN ON MAP AS AREA 3.

1950: TOWN OF HAMDEN ACQUIRES 16.4 ACRE PARCEL FROM NEW HAVEN WATER COMPANY. PARCEL IS SHOWN ON MAP AS AREA 4 AND AREA 2.

O:\DWGS\CCHM\S2003\Property-Ownership.dwg, Plate1, 2/7/2003 1:26:37 PM, Drafting.pc3

SCALE IN FEET
0       200'

## HAMDEN MIDDLE SCHOOL AND ATHLETIC FIELD

### HISTORY OF PROPRTY OWNERSHIP

| DATE | REVISED | PREPARED BY: |
|------|---------|--------------|
|      |         | LEGGETTE, BRASHEARS & GRAHAM, INC. |
|      |         | Professional Ground-Water and Environmental Engineering Services |
|      |         | 126 Monroe Turnpike |
|      |         | Trumbull, CT 06611 |
|      |         | (203) 452-3100 |

| DRAWN: | MRV | CHECKED: | MM | DATE: | 2/7/03 | FIGURE: | 1 |



**Exhibit 3**

**List of scopes of study and written reports previously submitted by Respondents
Town of Hamden, South Central Connecticut Regional Water Authority and
Olin Corporation to pursuant to paragraph B.3.a. of Consent Order No. SRD-128**

Town of Hamden:

- "Report on ASTM Phase I Environmental Site Assessment, Hamden Middle School and Surrounding Newhall Street Neighborhood, Hamden, Connecticut," dated January 2002, revised December 2002, 2 volumes, prepared by Haley & Aldrich, Inc. for the Town of Hamden.

- "Underground Storage Tank Investigation Work Plan, Hamden Middle School and Community Center, Hamden, Connecticut," dated July 2002, prepared by Haley & Aldrich, Inc. for the Town of Hamden.

- "Report on Phase II Underground Storage Tank Investigation, Hamden Middle School and Community Center, Hamden, Connecticut," dated November 2000, prepared by Haley & Aldrich, Inc. for the Town of Hamden.

- "Report on Oversight of U.S. EPA Remedial Activities, Newhall Neighborhood, Hamden, Connecticut", dated November 2002, prepared by Haley & Aldrich, Inc. for the Town of Hamden.

- "Report on Phase II and III Environmental Investigations, Rochford Field and Mill Rock Park, Hamden, Connecticut," dated December 2002, prepared by Haley & Aldrich, Inc. for the Town of Hamden.

- "Report on Test Pit Investigations, Hamden Middle School, Rochford Field & Mill Rock Park, Hamden, Connecticut," dated December 2002, prepared by Haley & Aldrich, Inc. for the Town of Hamden.

- "Report on Oversight of Leggette, Brashears & Graham, Inc., Malcolm Pirnie, and GZA GeoEnvironmental Investigation Activities, Newhall Neighborhood, Hamden, Connecticut," dated December 2002, prepared by Haley & Aldrich, Inc. for Halloran & Sage on behalf of the Town of Hamden.

South Central Connecticut Regional Water Authority:

- "Work Plan, Former New Haven Water Company Property, Hamden, Connecticut," dated July 11, 2002, prepared by Leggette, Brashears & Graham, Inc. for the South Central Connecticut Regional Water Authority.

- "Work Plan, Former New Haven Water Company Property, Hamden, Connecticut," revised August 19, 2002, prepared by Leggette, Brashears & Graham, Inc. for the South Central Connecticut Regional Water Authority.

- "Phase III Environmental Site Investigation, Former New Haven Water Company Property, Hamden, Connecticut," dated December 2002, 5 volumes, prepared by Leggette, Brashears & Graham, Inc. for the South Central Connecticut Regional Water Authority.

<u>Olin Corporation:</u>

- "Initial Investigation Work Plan, Newhall Street Residential Area, Hamden, Connecticut," dated March 2002, revised July 2002, prepared by Malcolm Pirnie, Inc. for Olin Corporation.

- "Initial Investigation Findings Report, Newhall Street Residential Area, Hamden, Connecticut," dated December 2002, 2 volumes, prepared by Malcolm Pirnie, Inc. for Olin Corporation.



LEGEND

1900:  NEW HAVEN WATER COMPANY ACQUIRES PARCEL FROM CONTINENTAL TRUST COMPANY. PARCEL IS SHOWN ON MAP AS AREA 1, AREA 3 AND AREA 4.

1924:  TOWN OF HAMDEN ACQUIRES 1.4 ACRE PARCEL FROM NEW HAVEN WATER COMPANY. PARCEL IS SHOWN ON MAP AS AREA 1.

1924:  NEW HAVEN WATER COMPANY ACQUIRES APPROXIMATE 1 ACRE PARCEL FROM TOWN OF HAMDEN. PARCEL IS SHOWN ON MAP AS AREA 2.

1947:  TOWN OF HAMDEN ACQUIRES APPROXIMATE 6.2 ACRE PARCEL FROM NEW HAVEN WATER COMPANY. PARCEL IS SHOWN ON MAP AS AREA 3.

1950:  TOWN OF HAMDEN ACQUIRES 16.4 ACRE PARCEL FROM NEW HAVEN WATER COMPANY. PARCEL IS SHOWN ON MAP AS AREA 4 AND AREA 2.



N

0        200
SCALE IN FEET

| | | PREPARED BY: | **HAMDEN MIDDLE SCHOOL** |
|---|---|---|---|

**HAMDEN MIDDLE SCHOOL
AND
ATHLETIC FIELD**

HISTORY OF PROPERTY OWNERSHIP

| DATE | REVISED | PREPARED BY: | **LEGGETTE, BRASHEARS & GRAHAM, INC.** |
|---|---|---|---|
| | | | Professional Ground-Water and Environmental Engineering Services |
| | | | 126 Monroe Turnpike |
| | | | Trumbull, CT 06611 |
| | | | (203) 452-3100 |
| DRAWN: | NRV | CHECKED: MM | DATE: 2/7/03 | FIGURE: 1 |

O:\DWG\SCCHMS\2003\Property-Ownership.dwg  Plate1, 2/7/2003 1:28:37 PM, Drafting pc3

