UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CLARENCE R. COLLINS, JR., et al** | : | 3:03-CV-945 (CFD) |
| | : | |
| **Plaintiffs,** | : | |
| VS. | : | |
| | : | |
| **OLIN CORPORATION** | : | |
| | : | |
| **Defendant.** | : | MAY 12, 2008 |

**PLAINTIFFS' LOCAL RULE 56(a)(2)
RESPONSE TO DEFENDANT'S STATEMENT OF FACTS
AND DISPUTED ISSUES OF MATERIAL FACT**

Pursuant to Local Rule 56(a)(2), the Plaintiffs hereby submit this Statement in conjunction with their Opposition to Defendant Olin Corporation's Partial Motion for Summary Judgment Based on Statute of Limitations.

I. **Response to Defendant Olin Corporation's Local Rule 56(a)(1) Statement of Material Undisputed Facts in Support of Motion for Partial Summary Judgment Based on Statute of Limitations**

1. Admitted, except as to the ambiguous term "confirmed."

2. Admitted in part. Denied as to Olin's characterization that there was a "great deal of publicity concerning the discovery of hazardous substances at the Hamden Middle School." Rather, there were newspaper articles concerning the presence of hazardous substances at the Hamden Middle School. See *Olin's Statement of Material Facts* Tabs 32 and 25. Nor does the Affidavit of Christopher Kerin (*Olin's Statement of Material Facts* Tab 54) reference the "discovery" of contamination or the Hamden Middle School, in particular.

3. Admitted that Mayor Amento sent the letter to local residents, which letter speaks for itself.

4. Admitted.

5. Admitted.

6. Admitted except that Joseph Frasier served as president and Elizabeth Hayes served as vice president of the Newhall Coalition until June 2003 when Mr. Frasier moved from Hamden. See Exhibit D at p. 9.

7. Admitted in part. Denied as to Olin's characterization that the document published by the Quinnipiack Valley Health District ("QVHD") answered questions raised by local residents. The document states that it was "prepared to update residents on the activities at the Hamden Middle School." See *Olin's Statement of Material Facts* Tab 40. Denied as to the admissibility of the document in that no witness testified as to who created the document or on what information it was based.

8. Admitted.

9. Admitted in part. Denied as to Olin's quoting of the QHVD document, dated December 26, 2000. See *Olin's Statement of Material Facts* Tab 40. Also denied as to Olin's characterization that similar information was provided in a 1/16/01 QVHD publication (Tab 41) and QVHD's website. See Tab 36. Also denied as to the contents of the document. Shannon Pociu testified that, as late as April 2001, "[o]ne could deduce that contamination was underlaying [residential] properties but we did not have actual physical evidence or chemical evidence to prove it." See Exhibit C at p. 189.

10. Admitted that DEP issued the letter dated November 28, 2000, and that Olin accurately quoted the letter.

11.     Admitted that Olin correctly quoted Shannon Pociu's deposition testimony. Denied in that Ms. Pociu also testified that, as of July 3, 2001, CTDEP was still gathering information concerning Olin's responsibility for the contamination at the Hamden Middle School, surrounding parks and private residential properties in the Newhall Neighborhood. Exhibit C at p. 276-277. Also denied in that Olin consistently disputed responsibility for actions of the former Winchester Repeating Arms Company. See Exhibit G at pp. 12-13.

12.     Admitted as to the quoted text. Denied in that the article also states that "some historical accounts show town government might have operated the dump for a time," and that Mayor Amento was quoted, "[u]nfortunately, we may be sharing that (ultimate wrongdoers) title." See *Olin's Statement of Material Facts* Tab 21. Also denied in that, it was not until July 10, 2001 that CTDEP designated Olin as a responsible party for contamination in the Newhall Neighborhood. See Exhibit G at p. 1.

13.     Admitted in part. Denied in that Joseph Frasier testified that the meeting was in January *or February* 2001 at the DEP and that, at that time, it was unknown whether Olin was a potentially responsible party. See Exhibit D at pp. 57-58 (emphasis added).

14.     Admitted.

15.     Admitted in part. Denied in that the meeting was held to address the health concerns associated with having children attend the Hamden Middle School as a result of the discovery of environmental contamination there. See *Olin's Statement of Material Facts* Tab 27.

16.     Admitted that attorneys from Cummings & Lockwood attended a meeting at the Christian Tabernacle Church in Hamden. Denied in that Mr. Frasier did not recall the date of the

meeting, and was not sure if attorneys from the firm of Koskoff, Koskoff & Bieder were present at the meeting.  See Exhibit D at p. 60.

17.     Admitted in that Joseph Frasier testified that representatives of the law firms of Cummings & Lockwood were present at the January 2001 public meeting at the Christian Tabernacle Church, and residents sought legal advice from Cummings & Lockwood at that meeting.  Denied in that Mr. Frasier testified that he did not recall when attorneys from Cummings & Lockwood responded to the residents' questions.  See *Olin's Statement of Material Facts* Tab 7 at pp. 61-66.

18.     Admitted.

19.     Admitted.

20.     Admitted.

21.     Admitted.

22.     Admitted.

23.     Admitted.

24.     Admitted in that Shannon Pociu of the DEP provided Joe Frasier (Newhall Coalition), Curt Leng (Mayor's Office), Alberta Mendenhall (Hamden Legislative Council), Ann Altman (Hamden Legislative Council), Alida Begina (Superintendent of Schools), Lisa Norwood (Principal, Hamden Middle School), Wanda Williams-McCormack (Connecticut Education Association), Brian Toal (Department of Public Health), and Leslie Balch (QVHD) a Memorandum summarizing the soil sampling conducted between December 27 and 29, 2000 at Rochford Field, Rochford Field Annex and Newhall Street School by the CTDEP.  Denied in that Olin characterizes these data as "publicly-available."  The Memorandum states that these results are being furnished to the *distribution list in the interim while the DEP prepares a report*

*documenting site activities that contain data analysis.* See *Olin's Statement of Material Facts* Tab 47 (emphasis added).

    25.    Admitted.

    26.    Admitted.

    27.    Admitted.

    28.    Admitted in part. Denied to the extent that the statement infers that *all* data CTDEP obtained was available for immediate review by the public. Shannon Pociu testified that the data contained in Deposition Exhibits 511, 512 and 513 was available for review by January 31, 2001. See *Olin's Statement of Material Facts* Tab 20 at pp. 37-38. Ms. Pociu testified that the USEPA had confidentiality agreements with the private residence property owners concerning their soil data. See Exhibit C at 206-207. Additionally, she testified that on certain occasions, CTDEP withheld data from the public until an entire set of data was compiled and properly analyzed. See Exhibit C at pp. 314, 336.

    29.    Admitted in part. Denied in that Olin's contention goes beyond what was written in Shannon Pociu's notes. Shannon Pociu's notes read that Kim Wantek requested copies of CTDEP sampling data related to Rochford Field in February 2001, and Ms. Wantek's request was approved. See *Olin's Statement of Material Facts* Tab 43.

    30.    Admitted.

    31.    Admitted in part. Denied as to the statement that the CTDEP, by February 2001, had "determined" that ash/fill material was present at several locations in the public rights-of-way in the Newhall Neighborhood. Shannon Pociu testified that CTDEP had "evidence" of ash/fill material present in the public rights-of-way. See *Olin's Statement of Material Facts* Tab 20 at p. 50. However, Shannon Pociu testified that the CTDEP did not confirm to the public that

5

contamination was found in the public rights-of-way until April 10, 2001. See *Olin's Statement of Material Facts* Tab 20 at pp. 63-64.

    32.    Admitted.

    33.    Denied as this is not a statement of fact but rather a characterization.

    34.    Admitted.

    35.    Admitted.

    36.    Admitted in that Shannon Pociu testified that a "substantial part" of that public Rights-of-Way sampling laboratory results were received by April 8, 2001 and CTDEP was willing to share the results with the public. See *Olin's Statement of Material Facts* Tab 20 at pp. 334-336. Denied in that Shannon Pociu testified that the CTDEP did not confirm to the public that contamination was found in the public rights-of-way until April 10, 2001. See *Olin's Statement of Material Facts* Tab 20 at pp. 63-64.

    37.    Admitted in that Shannon Pociu testified that as of April 10, 2001, anybody from the public could have made a request to obtain underlying data that CTDEP compiled in support of the conclusions that in Deposition Exhibit 30. See *Olin's Statement of Material Facts* Tab 23. Denied in that Ms. Pociu testified that on certain occasions, the CTDEP withheld data from the public until an entire set of data was compiled and properly analyzed. See Exhibit C at pp. 314, 336.

    38.    Admitted to the extent that Shannon Pociu's notes indicate that Kim Wantek called DEP requesting any new available sampling results on the following dates: 2/26/01, 3/13/01, 3/16/01, 3/26/01, and 4/9/01. See *Olin's Statement of Material Facts* Tab 43 at Bates # 80, 95, 101-102, 112, and 119. Olin does not cite to any admissible evidence to support the inference that Ms. Wantek accessed or copied the data.

39. Admitted.

40. Admitted.

41. Admitted.

42. Admitted.

43. Admitted.

44. Admitted.

45. Admitted in part that the letter (Tab 52) was sent by the CTDEP to the USEPA. Denied in that the letter was an intra-agency communication, the purpose of which was not to summarize the status of the CTDEP's investigation, but to obtain approval for funding. *Olin's Statement of Material Facts*, Tab 52 ("The Permitting, Enforcement and Remediation Division of the Department of Environmental Protection (the"DEP") is requesting approval from the U.S. EPA to conduct a limited Phase III/Remedial Action Plan Brownsfields Targeted Site Assessment (Phase III/RAP) at the subject site using funding provided under our Multi-Site Cooperative Agreement (MSCA).") Also denied in that Shannon Pociu, the CTDEP engineer who oversaw the investigation of the Newhall Neighborhood for many years, testified that, with respect to the April 18, 2001 letter, the CTDEP "did not actually have any concrete data collected from individual properties." See Exhibit C at pp. 223-224, 324-325. Ms Pociu further testified that, while the CTDEP "strongly suspected there was waste underlying the residential properties . . . we did not have actual physical evidence or chemical evidence to prove it." Id. at pp. 187-89.

46. Admitted in that Shannon Pociu testified that the CTDEP's April 18, 2001 letter was a public record available at the CTDEP as of that date. See *Olin's Statement of Material Facts* Tab 20 at p. 348. Denied in that there is no evidence that this intra-agency funding communication was in fact ever made available to anyone else (besides the USEPA).

47. Admitted in part. Plaintiffs agree that Olin correctly quoted an excerpt of the letter. Denied in that the letter did not identify which residential properties had contamination, the extent of the contamination, or which entity caused the contamination. See *Olin's Statement of Material Facts* Tab 52; see also Plaintiffs' Response No. 46.

48. Admitted in that Olin correctly quoted Shannon Pociu's deposition testimony. Denied in that Shannon Pociu also testified with respect to the April 18, 2001 letter, that CTDEP "did not actually have any concrete data collected from individual properties." See Exhibit C at pp. 223-224, 324-325. Shannon Pociu also testified to the following:

> Q. So as of April 23, 2001, you didn't know what homes had evidence of contamination, true?
>
> A. Probably not….
>
>    ….
>
> Q. …And is it fair to say that EPA controlled the process whereby the results of EPA sampling was provided to people?
>
> A. Yes.

See Exhibit C at p. 208.

49. Admitted in that Olin correctly quoted Shannon Pociu's deposition testimony. See *Olin's Statement of Material Facts* Tab 20 at p. 99. Denied in that there is no evidence that this intra-agency funding communication was in fact ever made available to anyone else (besides USEPA). Also denied in that the letter did not identify which residential properties had contamination, the extent of the contamination, or which entity caused the contamination. See *Olin's Statement of Material Facts* Tab 52; see also Plaintiffs' Response No. 46.

50. Admitted that Olin quoted the article, but denied as to the relevance or admissibility of the double hearsay.

51. Admitted in that Olin correctly quoted Joseph Frasier's letter to Mayor Amento, dated April 18, 2001. Denied in that, Mr. Frasier also testified that:

> Q. …Isn't true by that by that date [April 18, 2001] you believed there was no question that the Newhall neighborhood was contaminated?
>
> Mr. Rainer: Objection. You may answer.
>
> A. No.
>
> Q. You didn't believe that?
>
> A. No.
>
> Q. Isn't it true that by April 18, 2001, you believed that contamination affected the lives of residents in many ways, including stress of unknown potential health problems, and a drastic reduction in property value?
>
> Mr. Rainer: Objection. You may answer.
>
> A. Based upon what was reported to us, of course there was a *concern*.

See Exhibit D at p. 134 (emphasis added).

52. Admitted in that Olin correctly quoted the Hamden Chronicle article, dated April 18, 2001. Denied in that Mr. Frasier testified that he was not accurately quoted. See Exhibit D at pp. 142-143.

53. Admitted in that Olin correctly quoted Shannon Pociu's deposition testimony. See *Olin's Statement of Material Facts* Tab 20 at pp. 105-106. Denied in that Ms. Pociu testified in this passage over objection, and also denied for the reasons stated in Plaintiffs' Responses Nos. 45-49.

54.     Admitted in that Olin correctly quoted Shannon Pociu's deposition testimony. See *Olin's Statement of Material Facts* Tab 20 at pp. 336-341. Denied in that Ms. Pociu testified in this passage over objection, and also denied for the reasons stated in Plaintiffs' Responses Nos. 45-49.

55.     Admitted in part that the orange areas correspond with the area designated by plaintiff's expert as the properties falling within the Contaminated Properties Subclass, and that certain of the areas shown in red had been tested on or before April 18, 2001 and found to have contaminated soil. See *Olin's Statement of Material Facts* Tabs 44-46. Denied in that the areas shown in red cover the entire property of the Hamden Middle School, Rochford Field, and Millrock Park, the entire area of which was not tested. Id. Also denied in that, as of April 18, 2001, the CTDEP did not have "concrete data" showing that *any* residential property was contaminated, and that the USEPA had only just begun its testing. See Exhibit C at pp. 187-89; Exhibit E (stating that the USEPA testing on residential properties began on April 16, 2001).

## II.     Material Facts as to Which There are Genuine Issues to Be Tried

1. When the Contaminated Properties Subclass members knew or reasonably should have known that hazardous substances were present at residential properties within the Newhall Neighborhood causing them damage, including:

   a.     When the CTDEP first had concrete data from private residential properties. See Exhibit C at pp. 187-189, 223-224, 324-325 (stating that the CTDEP did not have concrete information on April 10, 2001 or April 18, 2001).

   b.     When the USEPA began soil testing. See Exhibit E and *Olin's Statement of Material Facts* Tab 30 (stating the USEPA's plan to begin residential sampling in mid-April,

stating that it would take several weeks to complete, and stating that the USEPA would share the results of sampling with individual property owners first, and would meet with property owners to explain the data).

    c.   When the USEPA provided individual private residential property owners with results of soil sampling showing contamination. See Exhibits B(2)-(5) (affidavits of residents stating when they first received results of contamination, and copies letters from the USEPA to residents providing results).

    d.   When the CTDEP and the USEPA made their findings public, and provided explanations to residents of the raw data. See Exhibit F (agenda of public meeting of June 27, 2001 summarizing data results and reciting efforts to explain data to residents).

2. When the Contaminated Properties Subclass members and the Stigma Subclass members knew or reasonably should have known who was responsible for the hazardous substances present within the Newhall Neighborhood causing them damage, including:

    a.   Whether in January of 2001 the CTDEP had determined that Olin was a responsible party. See Exhibit C at p. 176 (stating that the CTDEP was only beginning review 200 boxes of documents).

    b.   Whether the CTDEP told residents that it was the entity responsible for identifying the parties who were responsible for the contamination in the Newhall Neighborhood. See Exhibit C at p. 186 (stating that the CTDEP told residents in April 2001 that its investigation of responsible parties was continuing); see also *Olin's Statement of Material Facts* Tabs 22, 23 and 39.

    c.  When Olin was definitively identified as a responsible party for the contamination in the residential areas.  <u>See</u> Exhibit G at p. 1 (citing unilateral order issued by the CTDEP to Olin on July 10, 2001).

  3.  Whether the Stigma Subclass suffered a separate, distinct and additional harm when regulatory authorities confirmed the existence of contamination at private residential properties within the Newhall Neighborhood.  <u>See</u> Exhibit H at p. 3-4 (stating that it did).

                Respectfully submitted,

                PLAINTIFFS

          By  <u>/s/ Monte E. Frank</u>
                David B. Zabel, Esq. ct01382
                dzabel@cohenandwolf.com
                Monte E. Frank, Esq. ct13666
                mfrank@cohenandwolf.com
                Cohen and Wolf, PC
                1115 Broad Street
                Bridgeport, Connecticut 06604
                Tele:  (203) 368-0211
                Fax:   (203) 394-9901

                Mark Roberts, Esq.  ct25062
                mroberts@mcrobertslaw.com
                McRoberts, Roberts & Rainer LLP
                53 State Street
                Boston, Massachusetts 02109
                Tele: (617) 722-8222
                Fax:  (617) 720-2320

        Neil T. Leifer, Esq.
        nleifer@tenlaw.com
        David C. Strouss, Esq.
        dstrouss@tenlaw.com
        Kristen Marquis Fritz, Esq. (phv02624)
        kfritz@tenlaw.com
        Thornton & Naumes L.L.P
        100 Summer Street, 30th Floor
        Boston, Massachusetts 02110
        Tele: (617) 720-1333
        Fax:  (617) 720-2445

Dated: May 12, 2008

**CERTIFICATION OF SERVICE**

I hereby certify that on May 12, 2008, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

    */s/ Monte E. Frank*