IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARENCE COLLINS, JR., et al, | ) | |
| | ) | 3:03-CV-945 (CFD) |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| OLIN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY MEMORANDUM IN SUPPORT OF OLIN CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON STATUTE OF LIMITATIONS

Defendant Olin Corporation ("Olin") respectfully submits this reply memorandum in support of its motion for partial summary judgment based on statute of limitations.

## INTRODUCTION

Plaintiffs' response to Olin's motion conclusively establishes that this matter is ripe for summary judgment based on the statute of limitations. In their Local Rule 56(a)(2) Response to Defendant's Statement of Facts ( "56(a)(2) Response"), Plaintiffs admit the following key facts:

- That on December 30, 2000, the *New Haven Register* ran an article titled "**Olin eyed in Hamden pollution case**" which stated, in relevant part, that "Olin Corp., a Norwalk manufacturing company, has emerged as a player in the Hamden Middle School contamination controversy because it may have dumped industrial waste on school property before the structure was built;"

- That Shannon Windisch Pociu of the DEP testified that "[b]y January 31, 2001, the **DEP's publicly-available files 'included information indicating that Winchester had previously deposited waste in the area;'**"

- That "[b]y February 8, 2001, the DEP 'shared with the public' information that contamination had been found at Rochford Field, the Rochford Field Annex and the Newhall Street School;"

- That by April 10, 2001, the DEP had "confirmed to the public" that:

  o Contamination was "**present**" at Mill Rock Park;

- o  Contamination was "**present**" at Rochford Field;
- o  Contamination was "**found**" in the public rights-of-way; and

- That the public rights-of-way "are basically 'the sidewalks and the streets' in front of the residences in the Newhall neighborhood, and thus, are located '**in very close proximity**' to the residential properties."[1]

In addition, Plaintiffs also admit that by April 2001, the law firm of Cummings & Lockwood (including attorney Bill Narwold and paralegal Kim Wantek) was acting on behalf of residents of the Newhall Neighborhood in investigating issues relating to the discovery of contamination in the Newhall Neighborhood. Specifically, in their 56(a)(2) Response, Plaintiffs admit that:

- During January or February 2001, Bill Narwold met with representatives from the Newhall Neighborhood, the DEP and Olin to address various issues, including "Olin's potential role with respect to the contamination that had been found at the Hamden Middle School;"

- During January 2001, Bill Narwold attended a meeting with residents of the Newhall Neighborhood to address "concerns" relating to "the discovery of environmental contamination" at the Hamden Middle School;

- During the January 2001 meeting, "**residents sought legal advice from Cummings & Lockwood at that meeting**;"

- Shortly after the January 2001 meeting, the law firm of Cummings & Lockwood prepared and sent a questionnaire to local residents. Plaintiffs "**rely on the attorney-client privilege as grounds for not producing the questionnaire**;"

- During February 2001, Kim Wantek requested copies of DEP sampling data, and her "request was approved;" and

- By April 8, 2001, the DEP had received a "substantial part" of the public rights-of-way sampling laboratory results. Furthermore, the DEP was "willing to share such data with 'Kim Wantek or anybody else from the public.'"[2]

Based on the foregoing admissions, it follows that claims by the Stigma Subclass are time-barred because *before* May 1, 2001, they knew, or reasonably should have known, that their

---

[1] *See* Dkt. # 210; 56(a)(2) Response at Nos. 11, 12, 32, 40 and 43 (emphasis added).

[2] *Id.* at Nos. 13, 15-19, 29, and 36 (emphasis added).

alleged damages were caused or contributed to by hazardous waste allegedly disposed of by Olin

in the Newhall Neighborhood, including in particular, in the public rights-of-way located in "very

close proximity" to their properties.

In addition, claims by the Contaminated Properties Subclass are also time-barred because

*before* May 1, 2001, they knew, or reasonably should have known, that the DEP no longer

suspected, but rather had "**determined**," that contamination allegedly deposited by Olin in the

former landfill extended into "several residential properties" in the Newhall Neighborhood.[3]   This

information was publicly available, including to Plaintiffs and attorneys from the law firm of

Cummings & Lockwood who were acting on behalf of residents in the Newhall Neighborhood.

## ARGUMENT

I.    **The Court Should Estop Plaintiffs From Arguing That Olin's Statute Of Limitations Defense Presents A Question Of Fact Concerning When Plaintiffs Knew, Or Reasonably Should Have Known, That Their Damages Were Caused Or Contributed To By Hazardous Substances Allegedly Disposed Of By Olin.**

Plaintiffs are improperly trying to have their "cake and eat it, too" by taking inconsistent

positions with respect to Olin's statute of limitations defense.  In support of their motion for class

certification, Plaintiffs previously argued that "the Court must consider whether the **commonality of**

**the statute of limitations defense in and of itself supports class certification**." (Dkt. #221 at 18)

(emphasis added).  This Court expressly relied on the foregoing argument and the authorities cited

by Plaintiffs in granting class certification.  (Dkt. # 232 at 14).  In so doing, the Court stated:

> Here, consistent with the defendant's factual allegations in its summary judgment
> brief, there are many factual issues that will pertain to the entire class, such as when
> certain information became publicly available.  **Since the statute of limitations**
> **begins to run for at least some of the claims when the plaintiffs knew or should**
> **have known that they were potentially harmed, <u>this public information is**
> **relevant to the claims on a class-wide basis</u>**.

*Id.* at 14, n. 11 (emphasis added).

_____

[3] *Id.* at No. 47 (emphasis added).

Having prevailed on class certification, Plaintiffs are now improperly trying to take an inconsistent position in an attempt to defeat Olin's motion for summary judgment. Specifically, Plaintiffs argue that:

> At its very core, Olin's motion presents questions of fact which must be resolved by the jury. **The issue before the Court is the date that the Plaintiffs knew, or reasonably should have known, that their properties were damaged and that Olin caused that damage**.

Opp. at 18 (emphasis added). *See also id.* at 36-37 ("In the case at bar, the question of when the Plaintiffs knew or reasonably should have known, in the exercise of reasonable care, of the damage to their properties is a question of fact that should be resolved by the jury.")

Under the doctrine of judicial estoppel, the Court should estop Plaintiffs from raising any such argument. As explained by the Supreme Court,

> '[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position...' This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citations omitted). *See also Simon v. Safelite Glass Corp.*, 128 F.3d 68, 71-73 (2d Cir. 1997) (plaintiffs judicially estopped from "taking a position contrary to a position taken in an earlier proceeding").

As in *Simon*, "[a]ll the preconditions for the application of judicial estoppel are present in this case." 128 F.3d at 73. First, as set forth above, Plaintiffs' position in opposing Olin's motion for summary judgment based on statute of limitations is clearly inconsistent with their prior position in support of class certification. Second, Plaintiffs succeeded in getting this Court to accept their earlier position in granting class certification. Thus, to protect judicial integrity, the Court should estop Plaintiffs from arguing that the accrual date for the statute of limitations is a

question of fact that requires an individualized analysis.[4]

II.    **The Court Should Grant Summary Judgment With Respect To The Stigma Subclass Because Before May 1, 2001, Members Of This Subclass Knew, Or Reasonably Should Have Known, That Their Alleged Damages Were Caused Or Contributed To By Hazardous Substances Allegedly Disposed Of By Olin In The Newhall Neighborhood, Including In Particular, In The Public Rights-Of-Way Located In Very Close Proximity To Their Properties.**

In its opening brief, Olin established that claims by the Stigma Subclass are time-barred because before May 1, 2001, they knew, or reasonably should have known, that their alleged damages were caused or contributed to by hazardous waste allegedly disposed of by Olin. Olin addressed the legal argument with respect to this aspect of its motion for summary judgment first. Yet, Plaintiffs address this issue only in the last three pages of their opposition. Opp. at 37-39. Plaintiffs' attempt to evade this issue is to no avail.

Olin's argument is straight forward. The Stigma Subclass consists of "all members of the Class who are not members of the Contaminated Properties Subclass, who have suffered damages as a result of their properties' **proximity** to the Contaminated Properties Subclass." Dkt. # 204 at 1 (emphasis added). In other words, members of the Stigma Subclass allege that they have suffered damages because their properties are located in "proximity" to other residential properties in the Newhall Neighborhood where contamination was found to be present. It is undisputed, however, that properties owned by members of the Stigma Subclass are also:

- located in **proximity** to the Hamden Middle School and the surrounding parks where contamination was discovered *before* April 18, 2001; and
- located in **very close proximity** to the public rights-of-way located throughout the Newhall Neighborhood where contamination was also discovered *before* April 18, 2001.

Thus, it follows that claims by the Stigma Subclass are time-barred.

---

[4] The affidavits submitted by a handful of individual plaintiffs (Opp. at Exs. B1-B5) highlight some of the individual issues that Plaintiffs are now improperly relying on in their opposition to Olin's motion for summary judgment. In any event, as set forth herein, none of these purported individual issues preclude the entry of summary judgment based on the statute of limitations.

Two unequivocal admissions made by Plaintiffs in responding to Olin's motion for summary judgment make this point crystal clear. First, Plaintiffs admit that Shannon Windisch Pociu of the Connecticut DEP testified that by April 10, 2001, the DEP had "confirmed" to the public that contamination was "**present**" at Mill Rock Park, Rochford Field, and in the public rights-of-way located throughout the Newhall Neighborhood.[5] Second, Plaintiffs admit that the public rights-of-way "are basically 'the sidewalks and the streets' in front of the residences in the Newhall neighborhood, and thus, are located '**in very close proximity**' to the residential properties."[6]

In light of these admissions, Plaintiffs are forced to make two strained arguments in an attempt to avoid summary judgment. As explained below, both arguments lack merit – factually and legally.

Plaintiffs first argue that members of the Stigma Subclass "did not know, nor should they have known, that Olin was the entity responsible for the environmental contamination at the Hamden Middle School and surrounding parks in the Newhall Neighborhood as of May 2, 2001." Opp. at 38. In support, Plaintiffs claim that (1) as of May 2, 2001, the DEP was still "investigating which entity was responsible for the contamination;" and (2) the DEP did not make that determination until July 10, 2001. *Id.*

Testimony by Shannon Windisch Pociu directly refutes this claim. The following excerpts are particularly instructive:

> Q. Putting aside what you did or didn't tell him, if I understand correctly **DEP's files as of at least in January 31, 2001 included information indicating that Winchester had previously deposited waste in that area, correct?**
> A. **Yes.**
> Q. And that information again would have been available to the public, correct?
> A. Yes.
> ....

---

[5] *See* Dkt. # 210; 56(a)(2) Response at No. 43 (emphasis added).

[6] *Id.* at No. 40 (emphasis added).

Q. And am I right that in the beginning of 2001 you made a point of trying to seek information from people in the community about the potential responsibility of Olin?

A. Yes or any other possible responsible party. **The information that I had seen through my own file review up to that point indicated that most of the waste likely came from the former Winchester factory**. There was certainly a possibility that others may have disposed in the neighborhood as well but we had no record of that. So certainly if people came forward with information, you know, we would follow-up on it.

....

Q. Who as of April 16, 2001 was the DEP looking at as potential RPs [responsible parties] for the site?

A. Again a little fuzzy on the dates but knowing the dates and knowing that we were in the process of drafting an administrative order, we were looking at the town of Hamden, **we were looking at Olin Corporation**, the Regional Water Authority and possibly the State Board of Education. I'm not sure at what point we –

....

Q. Did the DEP have records available to it that it believed supported its position that the parties that you just mentioned were potentially responsible parties for the contamination at the site?

A. I believe so.

...

Q. Any records that the DEP had that's related to potential waste deposited by Winchester, am I correct that would have been made available to the public?

Mr. Rainer: Objection.

A. Yes. That would have been in our public files, that information.[7]

The foregoing excerpts establish that by April 2001, the DEP had records that indicated that Olin had deposited waste in the Newhall neighborhood, and based on this *publicly-available* information the DEP believed that Olin was a responsible party. As a result, the fact that the DEP continued to investigate to what extent "other" parties may have also deposited waste in the area, or the fact that the DEP waited until July 10, 2001 to formally issue an Order against Olin and a handful of other potentially responsible parties is irrelevant for purposes of resolving the narrow statute of limitations issue presented in this case.

With respect to that issue, the *only* relevant question is when residents of the Newhall Neighborhood (both Stigma Subclass and Contaminated Properties Subclass) knew or reasonably should have known that Olin had allegedly deposited waste in the Newhall Neighborhood. Based

---

[7] *See* Tab 20a; Shannon Windisch Pociu Depo. at 34, 127-29 and 273 (emphasis added).

on the foregoing undisputed evidence, it is crystal clear that such information was readily available to Plaintiffs as well as attorneys from the law firm of Cummings & Lockwood who were acting on behalf of residents of the Newhall Neighborhood before May 1, 2001. As a result, claims by the Stigma Subclass are time-barred.[8]

Plaintiffs argue that there needed to be certainty, at least by DEP, of who was responsible for the waste disposal before the statute of limitations could begin to run. This is not the law. In *Bello v. Barden Corp.*, 180 F. Supp.2d 300 (D. Conn. 2002), plaintiffs made an argument strikingly similar to what Plaintiffs argue here. There, plaintiffs argued that their claims were not time-barred because "they were not aware of the identities of the defendant and the others who delivered hazardous substances" until the "EPA provided a list of their names" in 2000 and 2001. *Id.* at 311. The court rejected this claim because the undisputed facts established that the plaintiff "was aware by no later" than 1998 of:

> both the fact that **there was cause for concern** because of the storage of hazardous substances at the property and **of at least <u>one means</u> by which the plaintiffs could have obtained those names, i.e., obtaining them from the DEP.**

*Id.* (emphasis added). *See also Village of Milford v. K-H Holding Corp.*, 390 F.3d 926, 932 (6th Cir. 2004) ("But the discovery rule does not permit a party to await certainty. To toll the limitations period because a prospective defendant denies its liability, or because the plaintiff lacks absolute certainty as to the tortfeasor's identity, would circumvent the purpose of the statute of limitations.")

Here, Plaintiffs knew by April 2001 that waste was deposited "in close proximity" to their homes and that Winchester was identified as one of the potential parties who deposited that waste.

---

[8] Notably, Plaintiffs' opposition fails to address the key role played by the law firm of Cummings & Lockwood *before* May 1, 2001: meeting with representatives of Olin, advising residents in the Newhall Neighborhood (pursuant to an attorney-client relationship) and requesting data from the DEP while investigating issues relating to the discovery of contamination in the Newhall Neighborhood.

Indeed, here, as in *Bello* and *Village of Milford*, Plaintiffs do not dispute that before May 1, 2001, there was "a cause for concern" based on the discovery of contamination in the Newhall Neighborhood. Also, before May 1, 2001 Plaintiffs knew or reasonably should have known (from newspaper articles and information gathered by DEP and available to attorneys from Cummings & Lockwood) that the DEP had records indicating that Olin had deposited waste in the Newhall Neighborhood and that based on such publicly available records, the DEP considered Olin to be a potentially responsible party, along with only a handful of other parties. In fact, it is undisputed that during January or February 2001, Bill Narwold (of the law firm of Cummings & Lockwood) met with representatives from the Newhall Neighborhood, the DEP and Olin to address various issues, including Olin's potential role with respect to the contamination that had been found in the Newhall Neighborhood. In addition, Plaintiffs also admit that before May 1, 2001, attorneys acting on behalf of residents of the Newhall Neighborhood were contacting the DEP to obtain data and other information relating to the discovery of contamination in the Newhall Neighborhood.

This is not a case of "mere suspicion" unsupported by publicly available and publicly published information. The Stigma Subclass members knew or reasonably should have known the information that triggered the running of the statute of limitations no later than May 1, 2001.

Plaintiffs' second argument is equally unavailing. Plaintiffs rely on a new affidavit submitted by their real estate expert (Mr. Kerin) to argue that claims by the Stigma Subclass are not time-barred because they experienced "a separate, distinct and additional harm" when regulatory authorities publicly confirmed that contamination was present at private residential properties in the Newhall Neighborhood. Opp. at 38. According to Mr. Kerin, "this separate, distinct and additional harm was a reduction in property value as a result of their properties' **proximity** to the contaminated private residential properties within the Newhall Neighborhood." *Id.* (emphasis added). This argument lacks merit for several reasons.

First, Mr. Kerin previously testified that the discovery of contamination at the Hamden Middle School and the surrounding parks "adversely impacted the value of properties in the Newhall neighborhood."[9]  At the same time, Mr. Kerin made no attempt to distinguish between damages allegedly sustained by having contamination discovered in the Newhall Neighborhood located in "close proximity" to Plaintiffs' properties (i.e., the Hamden Middle School and surrounding parks) versus damages allegedly sustained by having contamination discovered "in **very** close proximity" (i.e., the public rights-of-way) to Plaintiffs' properties, and for good reason. There is no rational basis to distinguish between these two forms of alleged damages.

Indeed, Plaintiffs' argument is contradicted by the undisputed fact that by April 18, 2001, the DEP had determined and disclosed to the public that contamination was present in the public rights-of-way – which are located in "**very close proximity**" to private properties throughout the Newhall Neighborhood.  As a result, it is factually misleading to argue that members of the Stigma Subclass suffered a "separate, distinct and additional harm" when they learned that contamination was present at one of their neighbor's properties, since by April 18, 2001 they already knew (or should have known) that contamination was present in the public rights-of-way located in very close proximity to their properties, which would require significant remediation throughout the Newhall Neighborhood.  But for the presence of a sidewalk, the public rights-of-way would in fact be "their neighbors" properties.

Second, Plaintiffs' argument that some second, separate and distinct injury occurred is contrary to the law.  While any alleged injury suffered by members of the Stigma Subclass due to the discovery of contamination at private properties (versus the streets and public rights-of-way) arguably may have increased the **magnitude** of their alleged damages, it did not result in a "separate, distinct" injury.  On this point, the law is clear.  See, e.g., Eno Farms Coop. Assoc. v.

---

[9] See Tab 55; Christopher K. Kerin Depo. at 35.

*Corp. for Indep. Living*, 2007 WL 3308016 at * 8 (D. Conn. Nov. 5, 2007) ("The Second Circuit, however, has made clear that allegations of 'new and independent' injuries cannot depend on injuries that are derivative of the core injury sustained."); *BellSouth Telecommunications, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 614 (2d Cir. 1996) ("BellSouth's contention that it suffered two separate and distinct injuries - economic injury arising from the disappointing performance of the Monokote product prior to 1992, and actionable property damage thenceforth – is artificial and unsustainable in light of the undisputed facts. The widespread contamination documented in 1992 was a further manifestation of the previously discovered asbestos contamination, not a second injury.")[10]

Third, the Court should reject Plaintiffs' argument because Mr. Kerin has never identified - - either in his original expert report or in his new affidavit -- a specific methodology that purports to distinguish and determine the amount of alleged diminution in property values due to the discovery of contamination at the Hamden Middle School, surrounding parks and the public rights-of-way located throughout the Newhall Neighborhood *versus* the amount of alleged diminution in property values due to the discovery of contamination on private properties in the Newhall Neighborhood. Instead, Mr. Kerin's new opinions are simply conclusory and speculative assertions that are insufficient to defeat Olin's well-taken motion for summary judgment. Indeed, the Second Circuit has held that a genuine issue of fact "cannot be established by mere speculation or idiosyncratic opinion, even if the opinion is held by one who qualifies as an expert." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 187, 193 (2d Cir. 1987), *cert. denied*, 487 U.S. 1234

---

[10] Courts applying Connecticut law have likewise held that labeling continuous or exacerbated injuries as "separate and distinct" cannot be used to extend the statute of limitations. *See Dennis v. ICI, Inc.*, 957 F. Supp. 376, 380 (D. Conn. 1997) (finding that discovery of an additional injury resulting from the same source as an earlier known injury "is not a 'separate and distinct' injury for statute of limitations purposes"); *Burns v. Hartford Hosp.*, 472 A.2d 1257, 1261 (Conn. 1984) (affirming summary judgment and finding that the statute of limitations begins to run "when a party suffers some form of actionable harm. The harm need not have reached its fullest manifestation before the statute begins to run.").

(1988). *See also Raskin v. The Wyatt Co.*, 125 F.3d 55, 66-67 (2d Cir. 1997) (court affirmed

summary judgment, finding an expert report of no probative value "is not a talisman against

summary judgment"); *Stepak v. Aetna Life and Cas. Co.*, 1992 WL 858045 at * 16-17 (D. Conn.

Aug. 29, 1994) (court relied on *Agent Orange* decision in granting summary judgment because

expert's affidavit was "full of assertion but empty of facts and reasons").[11]

Thus, for all these reasons, the Court should find that claims by members of the Stigma

Subclass are time-barred.

**III.    The Court Should Grant Summary Judgment With Respect To The Contaminated
Properties Subclass Because Before May 1, 2001, Members Of This Subclass Knew,
Or Reasonably Should Have Known, That The DEP Had Determined That
Contamination Allegedly Disposed Of By Olin In The Former Landfill Extended Into
Several Residential Properties.**

In its opening brief, Olin established that claims by the Contaminated Properties Subclass

are also time-barred because before May 1, 2001, members of this subclass knew, or reasonably

should have known, that the DEP had determined that contamination allegedly disposed of by Olin

in the former landfill extended into several residential properties. *See* Dkt. # 209 at 25-38.  In

support, Olin relied, among other things, on an April 18, 2001 letter from the DEP to the EPA

which stated in relevant part:

---

[11] Many other federal courts have held that "a party cannot defeat a well-founded motion for summary judgment simply by submitting an expert's 'naked opinions.'" *The Gleason Works v. Oerlikon Geartec. AG*, 141 F. Supp.2d 334, 341 (W.D.N.Y. 2001) (citing *Weigel v. Target Stores*, 122 F.3d 461, 469 (7th Cir. 1997) ("An expert who supplies nothing but the bottom line supplies nothing of value to the judicial process, and his 'naked opinion' does not preclude summary judgment.... To put this differently, an expert's opinion based on 'unsupported assumptions' and 'theoretical conclusions' is no bar to summary judgment."). *See also Eckelkamp v. Beste*, 315 F.3d 863, 868 (8th Cir. 2002) (affirming summary judgment and finding summary judgment appropriate "if an expert opinion is fundamentally unsupported and therefore of no assistance to the trier of fact"); *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993) (affirming summary judgment and holding that "in order to defeat a motion for summary judgment an expert opinion must be more than conclusory assertion about ultimate legal issues"); *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989) (affirming summary judgment and finding that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process"); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (affirming summary judgment and holding that "a party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations").

> Recent investigations by the DEP have allowed the addition of several contiguous areas to the former industrial and municipal landfill previously believed to be comprised of only Newhall Street Field and the Hamden Middle School properties located west of Newhall Street. **The DEP has now determined that the former landfill area also includes** Rochford Field, Mill Rock Park and **several residential properties**.

*See* Dkt. # 213 at Tab 52 (emphasis added). Consistent with the foregoing highlighted statement, Shannon Windisch Pociu unequivocally testified that by April 18, 2001, the DEP no longer suspected, but rather, had "determined" (based on "data previously collected") that contamination had extended into several residential properties in the Newhall Neighborhood.[12] Moreover, Mrs. Pociu testified that this information was "publicly available" to Plaintiffs and attorneys from the law firm of Cummings & Lockwood who were acting on behalf of residents from the Newhall Neighborhood.[13]

In response, Plaintiffs raise several arguments, each of which lacks merit. First, Plaintiffs once again argue that they "did not know, nor reasonably should have known, that Olin caused the contamination until well after May 2, 2001." Opp. at 31-32. This argument misses the mark because, as explained above, here, as in *Bello* and *Village of Milford*, it is undisputed that before May 1, 2001, Plaintiffs knew or reasonably should have known from newspaper articles and information gathered by DEP and available to Plaintiffs and attorneys from Cummings & Lockwood that the DEP had records indicating that Olin had deposited waste in the Newhall Neighborhood and that based on such publicly available records, the DEP considered Olin to be a potentially responsible party, along with only a handful of other parties.

Second, Plaintiffs argue that the DEP "did not have any data at the time to support its contention about residential properties." Opp. at 29. This argument ignores the undisputed facts which demonstrate that based on "data previously collected," by April 18, 2001 the DEP had

---

[12] *See* Tab 20; Shannon Windisch Pociu Depo. at 337-39 (emphasis added).

"determined" that contamination extended to "several residential properties" in the Newhall Neighborhood.[14] This determination (not "contention") was publicly available to Plaintiffs and attorneys from the law firm of Cummings & Lockwood.

Third, Plaintiffs argue that there is no evidence that the April 18, 2001 letter from the DEP to the EPA was "disseminated to the public." Opp. at 29. This argument ignores the relevant standard. Specifically, the issue presented by Olin's motion focuses on what members of the Contaminated Subclass knew, or <u>reasonably should have known</u>, before May 1, 2001. Thus, regardless whether the DEP's letter was disseminated to the public, the undisputed facts demonstrate that before May 1, 2001, Plaintiffs reasonably should have known that the DEP had "determined" that waste deposited in the former landfill extended into several residential properties in the Newhall Neighborhood. Indeed, Plaintiffs and/or attorneys from the law firm of Cummings & Lockwood who were representing residents from the Newhall Neighborhood simply had to contact the DEP between April 18, 2001 and May 1, 2001 (as they had done many times before) and they would have readily learned this information.

Fourth, Plaintiffs argue that Olin's position is "premised on the notion that the Plaintiffs should have conducted and paid for their own environmental investigation." Opp. at 29. This claim completely distorts Olin's position which is based on a fundamentally different premise. Namely, to determine when the statute of limitations accrued it is inappropriate to wait until the precise date when each plaintiff actually found out that contamination was present on his/her property. Indeed, if this were the relevant standard, then the statute of limitations would not have run for some plaintiffs until *after* this litigation was filed and their properties were sampled by

---

[13] *Id.* at 340-41 and 348.

[14] *Id.* at 337-41 and 348 (emphasis added).

Olin, clearly an absurd result.[15]

Instead, the statute of limitations for the Contaminated Properties Subclass accrued before May 1, 2001 because by that date it is undisputed that Plaintiffs knew, or <u>reasonably should have known</u>, that contamination was present throughout the Newhall Neighborhood, including on the public rights-of-way located in very close proximity to their properties as well as on several residential properties. Indeed, as this Court emphasized in *Staehr v. Hartford Financial Servs.*, 460 F. Supp.2d 329 (D. Conn. 2006), "the 'cumulative effect' of the publicly available documents should have suggested to a reasonable" Plaintiff that contamination allegedly disposed of by Olin was present throughout the Newhall Neighborhood. *Id.* at 339. It is what a reasonably diligent plaintiff would have learned that governs, not what a plaintiff awaiting certainty ultimately discovers. Moreover, since Plaintiffs were clearly put on a "duty of inquiry," this Court "will impute knowledge of what [Plaintiffs] in the exercise of reasonable diligence, should have discovered concerning" the presence of contamination in the Newhall Neighborhood. *Id.* at 339-40.

Finally, the cases cited by Plaintiffs are readily distinguishable.

1) *Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176 (2d Cir. 2002), *cert. denied*, 538 U.S. 998 (2003).[16] In *Freier*, the court concluded that plaintiffs' "mere suspicion" that there was a "provable link" between their cancer and contamination was insufficient to trigger the statute of limitations. *Id.* at 205-10. In contrast, by April 18, 2001, it is undisputed that the DEP had disclosed to residents that contamination was "present" throughout the Newhall Neighborhood, including the public rights-of-way. In addition, the DEP had "determined" that contamination extended into several residential properties in the Newhall Neighborhood. Since Plaintiffs' claims

---

[15] *See, e.g., LaBauve v. Olin Corp.*, 231 F.R.D. 632, 660 (S.D. Ala. 2005) ("For plaintiffs to assert that, as a matter of law, they neither knew nor reasonably should have known the factual bases for their claims until six months after they filed a detailed 30-page, 12-count lawsuit is absurd.").

[16] Olin discussed *Freier* at pp. 33-37 of its opening brief, Dkt # 209.

are premised on the *presence* of contamination in the Newhall Neighborhood, by April 18, 2001 any suspicion about this issue had been eliminated.

     2) *Lessord v. General Electric Co.*, 258 F. Supp.2d 209 (W.D.N.Y. 2002). In *Lessord*, the court denied GE's motion for summary judgment based on statute of limitations because "it was not until 2000 at the earliest that there was solid evidence that the GE Site was a **possible source** of the contamination." *Id.* at 217 (emphasis added). In contrast, it is undisputed that by April 2001, the DEP had records that indicated that Olin had deposited waste in the Newhall neighborhood, and based on this *publicly-available* information the DEP believed that Olin was a responsible party.

     3) *Taygeta Corp. v. Varian Assocs., Inc.*, 763 N.E.2d 1053 (Mass. 2002). In *Taygeta*, the court held that under the Massachusetts Oil and Hazardous Material Release Prevention Act, plaintiff's claims did not accrue until it "gained actual knowledge" of the contamination "when it received completed test results." *Id.* at 1062. This holding is irrelevant because it is limited to a specific state statute that has no application in this case. Moreover, in *American Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP*, 273 F. Supp.2d 155 (D. Mass. 2003), the court distinguished *Taygeta* and held that plaintiff's claims for property damage were time-barred because:

> It is of no consequence that AF&F did not know the exact source of the contamination when it purchased the property. **Once a party has notice of an injury or harm, 'his cause of action is no longer inherently unknowable,' and he is obliged to investigate with due diligence to discover the scientific and legal sources 'whether the theory of causation is supportable and whether it supports a legal claim.'**

273 F. Supp.2d at 159 (citations omitted) (emphasis added).

     The same holds true here. Plaintiffs' claims are time-barred because it is undisputed that before May 1, 2001, they were put on inquiry notice of an injury or harm based on the discovery of contamination throughout the Newhall Neighborhood. Before May 1, 2001, Plaintiffs' claims were "no longer unknowable" because Plaintiffs were obliged to exercise reasonable diligence in

the discovery of actionable harm in light of the information available to Plaintiffs. We know now that Plaintiffs did just that. They (or some of them) retained the Cummings & Lockwood law firm to investigate and pursue their claims. One assumes that had Plaintiffs and/or attorneys from the law firm of Cummings & Lockwood "investigate[d] with due diligence" they would have readily learned (to the extent they did not know) that by April 18, 2001, the DEP had determined that the contamination extended beyond the Middle School and the surrounding parks into the *residential* areas in the Newhall Neighborhood, including the public rights-of-way and several private properties – facts sufficient to support Plaintiffs' legal claims. To the extent that Plaintiffs did not exercise reasonable diligence, Plaintiffs are nonetheless imputed with the knowledge of what Plaintiffs, in the exercise of reasonable diligence, should have discovered concerning the presence of contamination in the Newhall Neighborhood. Put another way, prior to May 1, 2001, Plaintiffs knew, or should have known, that there was contamination on residential properties that was allegedly disposed of by Olin.

Plaintiffs failed to file suit until after the statute of limitations had run, despite knowledge of the waste disposal in their neighborhood and knowledge of one of the parties allegedly responsible for the waste disposal. Their claims are time barred.

## CONCLUSION

For the foregoing reasons, Olin respectfully requests that the Court grant partial summary judgment with respect to all claims by the Stigma Subclass and the Contaminated Properties Subclass, and grant such other relief as the Court deems just and proper.

Respectfully submitted,

HUSCH BLACKWELL SANDERS LLP

By: /s/ *Michael H. Wetmore*
    Michael H. Wetmore (ct24899)
    Joel B. Samson (ct24898)
    Omri E. Praiss (ECF registration pending)
    190 Carondelet Plaza, Suite 600
    St. Louis, Missouri 63105
    Telephone: 314-480-1500
    Fax: 314-480-1505
    michael.wetmore@huschblackwell.com
    joel.samson@huschblackwell.com
    omri.praiss@huschblackwell.com

and

BROWN RUDNICK BERLACK ISRAELS LLP
    Mark S. Baldwin, Esq.
    185 Asylum St.
    CityPlace I, 38th Floor
    Hartford, CT 06103
    Telephone: 860-509-6500
    Fax: 860-509-6501
    mbaldwin@brownrudnick.com

*Attorneys for Defendant Olin Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the attorneys of record registered for the Court's ECF system (as reflected by the email addresses shown below) or by mailing the same, first class mail, postage prepaid, to the non-participants in the Court's ECF system, on this 12th day of June, 2008.

| | |
|---|---|
| Neil T. Leifer, Esq.<br>Brad J. Mitchell, Esq.<br>Thornton & Naumes L.L.P.<br>100 Summer Street, 30th Floor<br>Boston, Massachusetts 02110<br>Telephone: (617) 720-1333<br>Facsimile: (617) 720-2445<br>nleifer@tenlaw.com<br>bmitchell@tenlaw.com<br><br>Monte E. Frank, Esq.<br>Austin D. Kim, Esq.<br>Cohen and Wolf, PC<br>158 Deer Hill Avenue<br>Danbury, CT 06810<br>Telephone: (203) 367-6202<br>Facsimile: (203) 791-8149<br>mfrank@cohenandwolf.com<br><br>David B. Zabel, Esq.<br>Cohen and Wolf, PC<br>1115 Broad Street<br>Bridgeport, Connecticut 06604<br>Telephone: (203) 368-0211<br>Facsimile: (203) 394-9901<br>aclark@cohenandwolf.com<br>dzabel@cohenandwolf.com<br>pgoodman@cohenandwolf.com | Mark Roberts, Esq.<br>McRoberts , Roberts & Rainer, LLP<br>53 State St.<br>Boston, MA 02114<br>Telephone: (617) 722-8222<br>Facsimile: (617) 720-2320<br>mroberts@mcrobertslaw.com<br>arainer@mcrobertslaw.com<br><br>***Attorneys for Plaintiff*** |

/s/ Carrie Hartnett

19

2976893