**Westlaw.**

2008 WL 2441051      Page 1
--- F.Supp.2d ----, 2008 WL 2441051 (CIT)
**(Cite as: 2008 WL 2441051 (CIT))**

Only the Westlaw citation is currently available.

United States Court of
International Trade.
AUTO ALLIANCE INTERNATIONAL, INC.,
Plaintiff,
v.
UNITED STATES, Defendant.
**Slip Op. 08-70.**
**Court No. 05-00596.**

June 18, 2008.

**Background:** Plaintiff brought action challenging denial by United States Customs and Border Protection of plaintiff's protest to liquidation of certain entries of automotive components and to appraised value of automotive components included in protested entries. Plaintiff moved to compel deposition of counsel for Customs based on declaration submitted in opposition to plaintiff's motion to strike certain other declarations. Plaintiff also moved to re-open deposition of defense witness, and Customs cross-moved for protective order.

**Holdings:** The Court of International Trade, Wallach, J., held that:
(1) plaintiff did not make required showing even under more permissive test for deposing opposing counsel, and
(2) plaintiff would be permitted to re-depose Customs' regulatory auditor assigned to plaintiff's case, subject to limitations.
 Ordered accordingly.

**[1] Customs Duties** ⚜84(5)

114k84(5)  Most Cited Cases
That proposed deponent is an attorney, or even an attorney for a party to the suit, is not an absolute bar to taking his or her deposition; however, while deposing opposing counsel is not absolutely prohibited, information protected under either the attorney-client privilege or the work-product doctrine does not lose the benefits of such protection merely because the deposition of opposing counsel is authorized. U.S.Ct.Int.Trade Rules 26(b)(3), 26(b)(5)(A), 28 U.S.C.A.

**[2] Customs Duties** ⚜84(5)

114k84(5)  Most Cited Cases
Under *Shelton* test, a party can depose opposing counsel only if three conditions are met: (1) no other means exist to obtain the sought-after discovery, (2) the information to be obtained is both relevant and not privileged, and (3) the information is crucial to the deposing party's preparation of its case.

**[3] Customs Duties** ⚜84(5)

114k84(5)  Most Cited Cases
Plaintiff in action challenging denial by United States Customs and Border Protection of protest to liquidation of certain entries of automotive components and to appraised value of automotive components included in protested entries did not make required showing even under permissive test for deposing opposing counsel, given that plaintiff demonstrated no need to depose Customs' counsel, but instead sought to obtain information protected by attorney-client privilege and work product doctrine, that opposing counsel did not waive such privileges in filing declaration which identified new legal theories developed by opposing counsel, and that opposing counsel did not interject himself as fact witness by submitting declaration.

**[4] Customs Duties** ⚜84(5)

114k84(5)  Most Cited Cases
While attorney's factual work product may be discoverable upon a showing of substantial need and undue hardship, opinion work product is afforded greater, nearly absolute, protection.

**[5] Customs Duties** ⚜84(5)

114k84(5)  Most Cited Cases
Plaintiff seeking to depose opposing counsel in action challenging denial by United States Customs and Border Protection of plaintiff's protest to liquidation of certain entries of automotive components and to appraised value of automotive components included in protested entries could not satisfy requirements of *Shelton* test for deposing opposing counsel, even if plaintiff could show that it had no other means to obtain information it sought, which included



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

information on relevance and impact of opposing counsel's conversations with defense witnesses and "late" development of new legal theories in case, given that plaintiff could not demonstrate relevance of that information nor opposing counsel's waiver of attorney-client and work product privileges.

**[6] Customs Duties** ⚖️**84(5)**
114k84(5)   Most Cited Cases
Plaintiff in action challenging denial by United States Customs and Border Protection of plaintiff's protest to liquidation of certain entries of automotive components and to appraised value of automotive components included in protested entries could re-depose Customs' regulatory auditor assigned to plaintiff's case, given that Customs had not yet introduced, at time of auditor's first deposition, new legal and factual theories raised in summary judgment affidavits, but scope of deposition would be limited to new issues introduced since first deposition, rationale underlying auditor's assertion that he lacked sufficient expertise to testify about new defense, and old issues to the extent implicated by information arising after first deposition. U.S.Ct.Int.Trade Rule 30(a)(2)(B), 28 U.S.C.A.

Katten Muchin Rosenman LLP (Bruce J. Casino); and Office of the General Counsel, Ford Motor Company (Paulsen Vandevert), for Plaintiff AutoAlliance International, Inc.

Gregory G. Katsas, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Barbara S. Williams, Attorney-in-Charge, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Saul Davis); and Yelena Slepak, Office the Assistant Chief Counsel, International Trade and Litigation, Bureau of Customs and Border Protection, of Counsel, for Defendant United States.

Before: Wallach, Judge.

*OPINION*

WALLACH, Judge.

# I
# INTRODUCTION

*1 Plaintiff AutoAlliance International, Inc. moves the court to compel the deposition of Saul Davis, counsel for Defendant United States Customs and Border Protection ("Customs"), based on a declaration he submitted in opposition to Plaintiff's Motion to Strike the Declarations of Eugene J. Donohue and William J. Lynch. Memorandum in Opposition to Plaintiff's Motion to Strike Statement, Declaration of Saul Davis ("Davis Declaration"). Because the information Plaintiff seeks to obtain from Mr. Davis is protected by the attorney-client privilege and the work-product doctrine, AutoAlliance International, Inc.'s Motion to Compel the Deposition of Saul Davis is, at the least, premature, and hereby denied.

Plaintiff also moves this court to re-open the deposition of Defense witness Ernest Wolney on the ground that his initial deposition was conducted prior to Defendant's assertion of new legal theories in the Davis Declaration. AutoAlliance International, Inc.'s Motion to Reopen the Deposition of Ernest Wolney is granted in part. Defendant has cross-moved for a protective order; the cross-motion is denied as moot.

# II
# BACKGROUND

In the underlying action, Plaintiff challenges Customs' denial of its protest to the liquidation of certain entries of automotive components and to the appraised value of the automotive components included in the protested entries. Complaint ¶ 1. After discovery ended, Plaintiff filed its Motion for Summary Judgment. Defendant responded by filing a memorandum in opposition as well as a Cross-Motion for Summary Judgment. In support of its Cross-Motion, Defendant attached the declarations of Eugene J. Donohue, Assistant Field Director for Customs' New York Field Office of Regulatory Audit, and William J. Lynch, Auditor-in-Charge for Customs' Office of Regulatory Audit.

Plaintiff moved to strike these declarations, and asserted that Defendant had never identified Messrs. Donohue and Lynch as individuals with potentially discoverable information or otherwise expressed an intent to use their testimony, as required by USCIT R.26(a)(1). Plaintiff's Motion to Strike the Declarations of Eugene J. Donohue and William J. Lynch ("Plaintiff's Motion to Strike") at 4. In opposing this motion, Defendant submitted the Davis Declaration in which he stated that he needed the testimony of Messrs. Lynch and Donohue to support new defense theories he had developed. Davis Declaration ¶¶ 2-3, 7-8. After reviewing all of the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

pleadings and papers on file, and holding both in-court and telephonic status conferences with the parties, the court denied Plaintiff's Motion to Strike. In its Order denying the motion, the court re-opened discovery for a period of 120 days and authorized Plaintiff to re-file its Motion for Summary Judgment at the end of that period.

Subsequently, Plaintiff served Defendant with notices of deposition for the two new declarants, Messrs. Donohue and Lynch. Memorandum of Law in Support of AutoAlliance International, Inc.'s Motion to (A) Compel the Deposition of Saul Davis, and (B) Reopen the Deposition of Ernest Wolney ("Plaintiff's Motion to Compel") at 1-2. Plaintiff also served notices of deposition for Defendant's counsel, Mr. Davis, as well as for the Customs Regulatory Auditor previously deposed by Plaintiff, Mr. Wolney. *Id.* at 2.

*2 Defendant took the position that Plaintiff's request did not meet "any of the criteria for a deposition of trial counsel" and informed Plaintiff that it would oppose the deposition of Mr. Davis if Plaintiff did not withdraw its notice. *Id.* Ex. D, Letter from Saul Davis to Bruce Casino (November 21, 2007). Moreover, Defendant rejected Plaintiff's assertion that the attorney-client and work-product privileges were waived by Mr. Davis' declaration. *Id.* Ex. E, Letter from Saul Davis to Bruce Casino (December 11, 2007). Defendant characterized the Davis Declaration as "purely procedural" in nature; according to Defendant, it could not be read to have waived any privileges, it merely discussed the fact that Mr. Davis was seeking the assistance of Customs regarding two defenses he was developing. *Id.* Ex. E.

Defendant also took the position that Plaintiff's notice of deposition of Mr. Wolney was improper, as it violated the prohibition on deposing a party more than once without leave of the court. *Id.* Ex. B, Letter from Saul Davis to Bruce Casino (November 29, 2007) (citing USCIT R.30(a)(2)(B)). Defendant informed Plaintiff that it could not agree to the request to re-depose Mr. Wolney, especially without limitation, and advised Plaintiff to seek the court's permission. *Id.* Ex. C, E-mail from Saul Davis to Bruce Casino (December 5, 2007).

### III
### DISCUSSION

The Rules of this court provide the starting point for analysis. However, given the similarity between this court's discovery rules and the parallel rules in the Federal Rules of Civil Procedure, the jurisprudence of other circuits is a valuable interpretative tool. [FN1]

### A
### Plaintiff's Motion to Compel the Deposition of Defendant's Counsel is Denied Because the Information Plaintiff Seeks is Protected by the Attorney-Client Privilege and the Work-Product Doctrine

[1] A party "may obtain discovery regarding any matter *not privileged,* that is relevant" unless otherwise limited by court order. USCIT R.26(b)(1) (emphasis added). Further, a party may take the deposition of "any person" without seeking leave of the court, USCIT R.30(a)(1), subject to certain exceptions not relevant here. "The fact that the proposed deponent is an attorney, or even an attorney for a party to the suit, is not an absolute bar to taking his or her deposition...." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure: Civil 2d* § 2102 (2d ed.1994). However, while deposing opposing counsel is not absolutely prohibited, the Rules of this court do establish that information protected under either the attorney-client privilege or the work-product doctrine does not lose the benefits of such protection merely because the deposition of opposing counsel is authorized. *See* USCIT R.26(b)(3) (providing that a party seeking to obtain discovery of information protected under the work-product doctrine must demonstrate (1) substantial need for the materials, (2) inability to obtain the substantial equivalent of the materials by other means without incurring undue hardship); USCIT R.26(b)(5)(A) (placing the burden upon the party asserting privilege).

*3 Courts have expressed a range of views regarding the practice of taking attorney depositions. Compare Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327-28 (8th Cir.1986) ("We view the increasing practice of taking opposing counsel's deposition as a negative development ... that should be employed only in limited circumstances.") *with* Gould Inc. v. Mitsui Mining & Smelting Co., Ltd., 825 F.2d 676, 680 n. 2 (2d Cir.1987) ("The disfavor in which the tactic of seeking discovery from adversary counsel is generally regarded ... is not a

talisman for the resolution of all controversies of this nature.").

[2] Defendant contends that *Shelton* provides the appropriate analytical inquiry. Defendant's Opposition to Plaintiff's Motion to Compel and Cross-Motion for a Protective Order ("Defendant's Opposition") at 15-18; *see also* Plaintiff's Motion to Compel Ex. D. Under the *Shelton* test, a party can depose opposing counsel only if three conditions are met: (1) no other means exist to obtain the sought after discovery, (2) the information to be obtained is both relevant and not privileged, and (3) the information is crucial to the deposing party's preparation of its case. *Shelton*, 805 F.2d at 1327.

In contrast, Plaintiff advocates a more "flexible" approach to evaluating the propriety of requests to depose opposing counsel, as articulated in dicta contained in *In re Subpoena issued to Dennis Friedman*, 350 F.3d 65, 71-72 (2d Cir.2003). Plaintiff's Motion to Compel at 6-8. In that opinion, which was ultimately dismissed as moot because the attorney consented to the deposition, the court expressed its view that all relevant factors and considerations should be evaluated "to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Friedman*, 350 F.3d at 72. Those factors might include: (1) the need to depose the attorney, (2) the attorney's role in connection with the matter on which discovery is sought and also with the pending litigation, (3) the risk of encountering privilege or work-product issues, and (4) the extent of discovery already conducted. *Id.*

Purporting to apply these factors, Plaintiff concludes that it should be permitted to depose Defendant's counsel "with respect to all matters referenced and discussed in [the Davis Declaration]." Plaintiff's Motion to Compel at 7. In support of this conclusion, Plaintiff asserts that Defendant's counsel "interjected himself into this case as a fact witness" by filing the Davis Declaration, thereby waiving the "privilege issue." *Id.* at 7-8. According to Plaintiff, Mr. Davis's status as a "fact witness," coupled with his alleged waiver of the protections of both the attorney-client privilege and the work-product doctrine, "justify allowing the noticed deposition to proceed." *Id.*

Plaintiff makes two alternative arguments. First, Plaintiff argues that applying the *Shelton* test will lead to the same result: the deposition of Defendant's counsel. *Id.* at 6 n. 1. In Plaintiff's assessment, all three factors of *Shelton* are met: (1) there is no other means to obtain the information related to the Davis Declaration, (2) Mr. Davis has waived privilege, and (3) the information sought is crucial to Plaintiff's ability "to understand Customs' alleged new facts and theories and the weight they were given within Customs." *Id.* Plaintiff's second alternative argument is that even if Mr. Davis had not waived the privilege, the "mere risk that otherwise good faith questions posed at an attorney's deposition may provoke ... privilege objections ... is not itself grounds for prohibiting the deposition to go forward at the outset." *Id.* at 7 n. 2.

*4 [3][4] Plaintiff has not made the required showing, even under the more permissive test for deposing opposing counsel articulated in *Friedman*. First, Plaintiff has demonstrated no need to depose Defendant's counsel. Instead, Plaintiff seeks to determine the "relevance and impact" of his conversations with Defendant's witnesses and also to "better understand why [the new legal theories] were only raised at the eleventh hour." *Id.* at 4. Plaintiff has, in its own words, expressed its desire to obtain information protected by both the attorney-client privilege, i.e. the conversations between counsel and witnesses for Defendant, and the work-product doctrine, i.e. "the facts [Mr. Davis] believes support his two legal theories and the reactions and analysis of [Messrs. Lynch and Donohue] to Mr. Davis' new theories." [FN2] *Id.* Contrary to Plaintiff's assertion, however, Defendant did not waive the protection afforded under either the attorney-client privilege or the work-product doctrine when it submitted the Davis Declaration. The Davis Declaration informed the court of the existence of new legal theories developed by Defendant's counsel; it did not, in any way, discuss the content of those theories or the substance of the conversations between Defendant's counsel and its witnesses, Messrs. Lynch and Donohue. Finally, Plaintiff incorrectly concludes that Mr. Davis "interjected himself as a fact witness" in the underlying action when he submitted the Davis Declaration to the court. *See* Plaintiff's Motion to Compel at 4. Mr. Davis did not represent that he had personal knowledge of any of the facts, or that he had in any way participated in the events, giving rise to the underlying case.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

[5] Plaintiff's alternative arguments also fail. While Plaintiff may satisfy the first condition of the *Shelton* test, i.e. that no other means exist to obtain the information it seeks, it can neither demonstrate the relevance of that information nor the waiver of the otherwise applicable privileges. Further, Plaintiff can not convince this court that the information it seeks is crucial to its preparation of its case against Defendant. This renders Plaintiff's suggestion that the court not proscribe the deposition of Defendant's counsel based on the "mere risk" that privilege issues may arise during the course of the deposition irrelevant.

**B**
**Plaintiff's Motion to Re-open the Deposition of Defendant's Witness is Granted on a Limited Basis**

[6] Unless the parties stipulate otherwise, a party must seek leave to depose a person more than once in a given case. USCIT R.30(a)(2)(B). However, courts frequently grant such leave when "new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition." *Vincent v. Mortman*, No. 3:04 CV 491(JBA), 2006 U.S. Dist. LEXIS 11213 at *4-*5, 2006 WL 726680 (D.Conn. March 17, 2006) (quoting *Keck v. Union Bank of Switz.*, No. 94 Civ. 4912(AGS)(JCF), 1997 U.S. Dist. LEXIS 10578, at *1, 1997 WL 411931 (S.D.N.Y. July 22, 1997)); *see also Zamora v. D'Arrigo Bro. Co. of Cal.*, No. C04-00047 JW, 2006 U.S. Dist. LEXIS 83106 at *4-*5 (N.D.Cal. November 7, 2006); *Collins v. Int'l Dairy Queen*, 189 F.R.D. 496, 498 (M.D. Georgia 1999).

*5 Plaintiff asserts that at the time of Mr. Wolney's deposition, Defendant had not yet introduced the new legal and factual theories it raised in the affidavits of Messrs. Lynch and Donohue, and that these new theories "would implicate much of Wolney's prior testimony." Plaintiff's Motion to Compel at 3, 12. Plaintiff further argues that Mr. Wolney's statement that he did not feel qualified to address Defendant's new theories, in light of his position as the Customs' Regulatory Auditor assigned to the Plaintiff's case over a period of several years, raised questions regarding the accuracy and completeness of the testimony he offered at deposition. *Id.* at 3-4. Defendant did not flatly oppose Plaintiff's request to re-depose Mr. Wolney. *Id.* Ex. C. Rather, Defendant sought to limit the scope of the questioning to only those new issues raised since Mr. Wolney's first deposition. *Id.* Ex. G, Letter from Bruce Casino to Saul Davis (December 3, 2007), at 2. Plaintiff contends that it "cannot reasonably or responsibly agree to such a limitation," Plaintiff's Motion to Compel at 12, even though the cases it cites to support its request to re-open the deposition of Mr. Wolney are consistent with such a limitation. *See id.* at 11-12 (citing *Vincent*, 2006 U.S. Dist. LEXIS 11213 at *4-*5, 2006 WL 726680).

Plaintiff will be permitted to re-depose Mr. Wolney. However, the scope of the deposition is limited to: (1) the new issues introduced since Mr. Wolney's first deposition, (2) the rationale underlying Mr. Wolney's assertion that he did not possess sufficient expertise to testify about Mr. Davis' new defenses, and (3) old issues to the extent that they are implicated by information that arose after Mr. Wolney was first deposed.

**C**
**Defendant's Cross-Motion for a Protective Order is Denied as Moot**

This court is vested with the authority to prohibit certain discovery, or to regulate the method by which it is obtained, where "justice requires [it] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." USCIT R.26(c). A party seeking such a protective order must submit to the court a motion, accompanied by a certification that he has, in good faith, attempted to resolve the disputed discovery request without court action. *Id.*

Defendant did not submit the required certification. In any case, a protective order is unnecessary, as Plaintiff's Motion to (A) Compel the Deposition of Saul Davis is DENIED, and (B) Reopen the Deposition of Ernest Wolney has been GRANTED with specific limitation.

**IV**
**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion is DENIED with respect to Defendant's counsel, Saul Davis, and GRANTED on a limited basis with respect to Defendant's witness, Ernest Wolney; further, Defendant's Cross-Motion is DENIED.

FN1. *See* USCIT R.1 ("The court may

refer for guidance to the rules of other courts."); *Zenith Radio Corp. v. United States,* 10 CIT 529, 530 n. 7, 643 F.Supp. 1133 (1986) (noting that it is "particularly helpful" to consider precedent from other circuits).

FN2. The term "work product" is used to refer to "materials obtained or prepared ... with an eye toward litigation." *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *see also* USCIT R.26(b)(3). It is often divided into two distinct categories: (1) factual work product and (2) "opinion" work product, which is the result of "mental processes such as plans, strategies, tactics, and impressions, whether memorialized in writing or not." *In re Seagate Technology, L.L.C.,* 497 F.3d 1360, 1375 (Fed.Cir.2007). This distinction is significant because, while factual work product might be discoverable upon a showing of substantial need and undue hardship, opinion work product is "afforded greater, nearly absolute protection." *Id.* (citing USCIT R.26(b)(3)).

--- F.Supp.2d ----, 2008 WL 2441051 (CIT)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**Westlaw.**

Slip Copy                                                                                                                  Page 1
Slip Copy, 2007 WL 735773 (D.Conn.)
**2007 WL 735773 (D.Conn.)**

HCalderon v. Symeon
D.Conn.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
Marty CALDERON
v.
Jeff SYMEON, West Marine, Inc., Boat/US, Inc., St Paul Travelers Ins. Inc., Phoenix Ins. Co., David M. Ford.
**Civ. No. 3:06CV1130 (AHN).**

Feb. 2, 2007.

Marty Calderon, Norwalk, CT, pro se.
Albert Zakarian, Day Pitney LLP, Hartford, CT, for Jeff Symeon, West Marine, Inc., Boat/US, Inc.
Jeffrey Allan Fritz, Day Pitney LLP, Hartford, CT, for Jeff Symeon, West Marine, Inc., Boat/US, Inc., St. Paul Travelers Ins., Inc., Phoenix Ins. Co., David M. Ford.
Matthew G. Conway, Conway & Stoughton, Hartford, CT, for St. Paul Travelers Ins., Inc., Phoenix Ins. Co., David M. Ford.

*RULING ON PLAINTIFF'S MOTIONS FOR PROTECTIVE ORDER[Doc. # 43, 47]*

HOLLY B. FITZSIMMONS, United States Magistrate Judge.
*1 Pending are plaintiff's motions for a protective order preventing defendants from continuing her deposition. **[Doc. # 43, 47]**. Defendants oppose the motion. Oral argument was held on January 26, 2007.

Rule 30(d)(2) of the Federal Rules of Civil Procedure provides that, "[u]nless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day or seven hours."Fed.R.Civ.P. 30(d)(2). Moreover, "[t]he court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination."*Id.*

On December 8, 2006, plaintiff's deposition was begun, lasting four (4) hours and fifty-one (51) minutes. Defendants first point out that they did not use the full seven hours of examination as permitted by Fed.R.Civ.P. 30(d)(2) & (3), so the continuance of plaintiff's deposition is permitted under the federal rules. The Court agrees. Defendant has two (2) hours and nine (9) minutes remaining under Rule 30(d)(2).

Defendants now seek an additional full day or seven (7) hours to depose plaintiff, contending that at the December deposition, "[p]laintiff was largely uncooperative, interruptive and non-responsive-providing excessive narrative and filibuster rather than concise, responsive answers."[Doc.# 57 at 4]. Defendants also reserve the right to ask for more deposition time, in excess of seven (7) hours, should plaintiff continue to be uncooperative or should other circumstances warrant. In short, defendants argue that the December deposition was "unproductive" and "a waste of time." Defendants asked the Court to advise plaintiff of her obligation to provide concise responsive answers. Defendants also argue that the length and breadth of plaintiff's Amended Complaint, consisting of almost twenty (20) causes of action, warrants even more time than the Federal Rules initially permit for a fair examination of plaintiff. Finally, defendants argue that plaintiff has not shown that defendants conducted her examination in bad faith, or in any manner as unreasonably to annoy, embarrass, or oppress her" that would warrant the Court to limit, terminate or deny the resumption of her deposition. *See*Fed.R.Civ.P. 30(d)(4).

Accordingly, the question before the Court is whether to order an extension of the time for examination of plaintiff beyond the time remaining. "A party seeking a court order to extend the time for examination or otherwise alter the limitations is expected to show good cause to justify such an order." 7 James Wm. Moore, et al, *Moore's Federal Practice,* § 30.45 (3d. ed.2006)."In multi-party cases, the need for each party to examine the witness may warrant additional time, although duplicative questioning is discouraged."*Id.*"The Court must allow additional time consistent with Rule 26(2) if need for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination. For example, a court may provide additional time to depose a witness who is uncooperative and refuses to answer questions. When

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 2
Slip Copy, 2007 WL 735773 (D.Conn.)
**2007 WL 735773 (D.Conn.)**

additional time is required for an uncooperative deponent, the amount of time needed will depend on the deponent's behavior."*Id.; See* Laplante v. Estano, 226 F.R.D. 439, 440 (D.Conn.2005) (rule provides that court must allow additional time needed for fair examination of deponent, so number of hours needed depends on deponents cooperation).

*2 After due consideration of the parties arguments, and a full reading of the deposition transcript, the Court finds an extension of time is warranted.[FN1]

> FN1. At the hearing, Ms. Calderon provided a complete copy of her deposition transcript, dated December 8, 2006, for consideration by the Court.

Based upon a review of the transcript of the deposition of December 8, 2006, the Court finds that plaintiff was recalcitrant and uncooperative in her refusal to answer questions that seek information that is clearly relevant, not privileged, not overly broad and not unduly burdensome. *See*Fed.R.Civ.P. 26(b)(1). On the other hand, the Court also finds that the deposition, taken as a whole, was not a "waste of time" as defendants contend and that some productive testimony was elicited.

The Court directs plaintiff to the following guidelines when the deposition resumes. First, allow the attorney to finish his question before beginning an answer and listen very carefully to the question that is asked. When a question is not understood, the deponent should ask counsel to rephrase the question. When a question calls for a "yes or no" answer, the deponent is directed to answer "yes or no." A narrative is not an appropriate response to a "yes or no" question. When a question asks for specific information, the deponent is directed to answer the question in a concise responsive manner.

Too often during the December deposition, counsel interrupted plaintiff's answer to direct her to provide a "yes or no" answer or to cutoff testimony that was not responsive to counsel's question. "Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)."*See*Fed.R.Civ.P. 30(d)(1); 7 James Wm. Moore, et al, *Moore's Federal Practice*, § 30.43 (3d. ed.2006). Since plaintiff is appearing *pro se* she may state her objection pursuant to Fed.R.Civ.P. 30(d)(1), but is directed to answer the question unless she is asserting a privilege. A motion to exclude the testimony may be filed at a later time for determination by the Court. *See*Fed.R.Civ.P. 30(3)(c).

Plaintiff's oral request for a deposition by written questions is denied.

Defendants will renotice plaintiff's continued deposition for a five (5) hour examination to be conducted within thirty (30) days of this order. If, at the conclusion of five (5) hours, defendants seek more time, they are instructed to contact the Court by phone to make a particularized request. Plaintiff indicated that she can travel to Day Pitney's Hartford office by public transportation. Counsel should confer with plaintiff about the public transportation schedule when setting a time. Alternatively, the deposition may be held at the District Court in Bridgeport on a date when the Court is available to hear objections and oversee the deposition.

Plaintiff is cautioned that, if she fails to be cooperative in answering obviously relevant questions, the deposition will be continued thereafter, at her expense, until she complies with the Federal Rules of Civil Procedure. Fed.R.Civ.P. 30(d)(3) ("If the court finds that any impediment, delay or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof.").

*3 Defendants St. Paul Travelers Insurance Inc., Phoenix Insurance Company and David M. Ford are entitled to notice a separate deposition of plaintiff under the Federal Rules of Civil Procedure. *See*Fed.R.Civ.P. 30(a)(1) and 30(c). However, the Court believes that, with cooperation, the defendants St. Paul Travelers Insurance Inc., Phoenix Insurance Company and David M. Ford may be able to complete plaintiff's deposition within the time allotted to West Marine, Inc., and Boat/US, Inc. in this order.

*Discovery Disputes*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

The parties are reminded of their obligations pursuant to D. Conn. L. Civ. R. 37(a-d), in resolving their discovery disputes. In particular,

[n]o motion pursuant to Rules 26 through 37, Fed.R.Civ.P., shall be filed *unless* counsel making the motion has conferred with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution. In the event the consultations of counsel do not fully resolve the discovery issues, counsel making a discovery motion shall file with the Court, as part of the motion papers, an affidavit certifying that he or she has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court, and has been unable to reach such an agreement. If some of the issues raised by the motion have been resolved by agreement, the affidavit shall specify the issues so resolved and the issues remaining unresolved.

D. Conn. L. Civ. R. 37(a) (emphasis added). The obligation to confer and discuss applies to *pro se* parties as well as to counsel. The parties are also directed to follow Local Rule 37(b) for the format for filing any discovery motions.

*Settlement Conference*

A settlement conference is scheduled for March 12, 2007 at 2:00 PM. [Doc. # 31].

CONCLUSION

Accordingly, plaintiff's motions for protective order **[Doc. # 43 and 47] are DENIED.**

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 6(a), 6(e) and 72(a); and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

D.Conn.,2007.

Calderon v. Symeon
Slip Copy, 2007 WL 735773 (D.Conn.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2314639 (W.D.Wash.)
**2004 WL 2314639 (W.D.Wash.)**

Page 1

Grill v. Costco Wholesale Corp.
W.D.Wash.,2004.
Only the Westlaw citation is currently available.
United States District Court,W.D. Washington.
Susan GRILL, et al., Plaintiffs,
v.
COSTCO WHOLESALE CORP., et al., Defendants.
No. C03-2450RSM.

Oct. 7, 2004.

Adam Karp, Bellingham, WA, Katrina Eve Glogowski, Seattle, WA, for Plaintiffs.
Charles A. Valente, Praveen Kosuri, Eli M. Rollman, Krasnow Saunders Cornblath, LLP, Chicago, IL., and Steven H. Winterbauer, Winterbauer & Diamond P.L.L.C., Seattle, WA, for Defendants.

ORDER GRANTING MOTION TO COMPEL DEPOSITION

MARTINEZ, J.
*1 This matter comes before the Court on defendants' Motion to Compel the Resumption of Plaintiff Susan Grill's Deposition. (Dkt.# 45). Plaintiff appeared for her deposition on June 30, 2004, and testified for approximately 6 1/2 hours. At the request of the Court reporter, when it became apparent that the deposition would not be completed in one seven-hour period, the parties agreed to resume the deposition on another day. Plaintiff agrees that defendants have a right to continue her deposition; however, plaintiff argues that she should be required to attend for only the remaining 37 minutes of the time allotted under Rule 30 of the Civil Rules of Civil Procedure. SeeFed.R.Civ.P. 30(d)(2). Defendants assert that more time is necessary for a full and fair deposition of plaintiff, and ask this Court to compel plaintiff to appear for as much time as is necessary to complete her testimony.

Having reviewed defendants' motion, plaintiff's response, defendants' reply to that response, and the remainder of the record, the Court hereby ORDERS:

(1) Defendants' Motion to Compel (Dkt.# 45) is GRANTED. Under Fed.R.Civ.P. 30(a)(2)(B), a party wishing to depose a person more than once must obtain leave of Court. See *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,* 244 F.3d 189, 192 (2001). Likewise, discovery may be limited by the Court for good cause shown "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."Fed.R.Civ.P. 26(c). However, a deposition may be extended beyond the imposed time limit of one seven-hour day if "additional time consistent with Fed.R.Civ.P. 26(b)(2) is needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination."Fed.R.Civ.P. 30(d)(2)."Considerations relevant to the granting of [such] extension of time include the need for additional time for full exploration of the theories upon which the witness relies, or where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition."*Boston Science Corp. v. Cordis Corp.,* 2004 WL 1945643 at *2 (N.D.Cal.2004).

In the instant case, defendants note that plaintiff has alleged approximately 30 separate occasions of discrimination by defendants at five of defendants' Washington State warehouses. Defendants explain that while they covered substantial ground during the first 6 1/2 hours of the deposition, they were unable to question plaintiff about these allegations. Moreover, during the deposition it became apparent that not all relevant documents had been produced, and defendants will need to question plaintiff about those documents during the remainder of her deposition.

While plaintiff asserts that her deposition should be limited to the remaining 37 minutes because defendants asked "hour after hour" of irrelevant questions, she points to no portion of the deposition transcript or video tape in support of that assertion. Accordingly, the Court finds that good cause has been shown by defendants for an order compelling the resumption of Susan Grill's deposition for an amount of time necessary to complete defendants' questioning. The Court notes that additional remedies under Rule 30(d)(4) remain available to plaintiff should that become necessary during the course of

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 2314639 (W.D.Wash.)  
**2004 WL 2314639 (W.D.Wash.)**

Page 2

the remainder of her deposition.

*2 (2) The Clerk shall direct a copy of this Order to all counsel of record.

W.D.Wash.,2004.
Grill v. Costco Wholesale Corp.
Not Reported in F.Supp.2d, 2004 WL 2314639 (W.D.Wash.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2006 WL 726680 (D.Conn.)  
**2006 WL 726680 (D.Conn.)**

Page 1

HVincent v. Mortman
D.Conn.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
Brianna Paige VINCENT, ppa Heather Vincent, and Heather Vincent, Ind.
v.
Howard MORTMAN, M.D., and Sharon OB/GYN Associates
No. 3:04 CV 491(JBA).[FN1]

> FN1. This lawsuit has been consolidated with *Vincent v. Physicians of Women's Health, LLC.* 3:06 CV 249(JBA). (*See* Dkts.135, 139-41).

March 17, 2006.

Joel Thomas Faxon, Michael A. Stratton, Stratton Faxon, New Haven, CT, for Brianna Paige Vincent, ppa Heather Vincent, and Heather Vincent, Ind.
Richard A. Roberts, Thomas J. Lengyel, Nuzzo & Roberts, Cheshire, CT, Christine Norton, Madonna A. Sacco, Maria S. Spalding, Bai, Pollock, Blueweiss & Mulcahey, Shelton, CT, for Howard Mortman, M.D., and Sharon OB/GYN Associates.

*RULING ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER*

MARGOLIS, Magistrate J.
*1 This lawsuit is proceeding against defendants Dr. Howard Mortman, Sharon OB/GYN Associates, and Physicians for Women's Health, LLC. The Second Amended Complaint, filed June 7, 2005, alleges negligence (Count Three) and negligent infliction of emotional distress (Count Four)(Dkt.# 72). United States District Judge Janet Bond Arterton referred this lawsuit to this United States Magistrate Judge for discovery purposes on January 5, 2005. (Dkt.# 50). Under the current scheduling order, discovery is to be completed by July 13, 2006. (Dkt.# 117, ¶ 1).

On February 23, 2006, defendants Dr. Mortman and Sharon OB/GYN Associates filed the pending Motion for Protective Order and brief in support (Dkt.# 128),[FN2] as to which plaintiffs filed a brief in opposition five days later and Request for Leave to Reopen Deposition under Fed.R.Civ.P. 30(a)(2)(B) (Dkt.# 130).[FN3] The sole issue raised in the pending motion is whether plaintiffs may depose defendant Dr. Mortman for a second time, after having already deposed him for nearly eight hours on July 25, 2005. (Dkt. # 128, Brief at 4).

> FN2. The following exhibits were attached: excerpts from the deposition transcript of Susan Shannon, taken on May 27, 2005 (Exh. A); copy of Revised Re-Notice of Deposition of Dr. Mortman, dated February 14, 2006 (Exh. B); and copies of case law.

> FN3. The following two exhibits were attached: excerpts from the deposition transcript of Nurse Carolyn Salinas (Exh. A); and copy of medical records (Exh. B).

As both sides recognize, this matter is governed by FED. R. CIV. P. 30(a)(2)(B), which requires "leave of the court, ... granted to the extent consistent with the principles stated in Rule 26(b)(2)," where "the person to be examined already has been deposed in the case," unless the parties stipulate otherwise.[FN4]

> FN4. Plaintiffs did not seek such leave prior to their Revised Re-Notice of Deposition on February 14, 2006 (Dkt.# 128, Exh. B), but only in their filing five days after defendants' motion. While federal judges in the Southern District of New York appear to disallow retroactive applications under Rule 30(a)(2)(B), *see Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 239-40 (S.D.N.Y.2002) (citations omitted), this Magistrate Judge nonetheless will permit plaintiffs' request, *nunc pro tunc*, given the largely unnecessary motion practice in this action. (*See, e.g.,* Dkts.55, 64, 80, 86, 98, 107, 122, 131-34, 136, 138, 142-43, 145-47).

Plaintiffs argue that a limited second deposition of defendant Dr. Mortman is necessary because of a critical factual dispute regarding whether Dr.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Mortman ordered a "stat" C-Section in a telephone conversation he had with Nurse Carolyn Salinas on March 15, 2003, at 6:51 a.m. (Dkt. # 130, at 1-2). In his medical records and at his deposition on July 25, 2005, Dr. Mortman represented that he had given such an order (*id.* & Exh. B). However, at her deposition, taken some five months later, Nurse Salinas testified Dr. Mortman had given no such order. (*Id.* at 1-2 & Exh. A). As a result, plaintiffs argue that they never questioned Dr. Mortman regarding the standards applicable to giving the "stat" order because they had assumed, based on his medical records and his testimony, that he given such an order. (*Id.* at 2). Thus, plaintiffs want to question defendant Dr. Mortman on this limited issue.

Under Rule 30(a)(2)(B), courts "frequently permit a deposition to be reopened where the witness was inhibited from providing full information at the first deposition" or "where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition." *Keck v. Union Bank of Switzerland,* 1997 WL 411931, at *1 (S.D.N.Y. July 22, 1997)(multiple citations omitted).*See also Seth Co., Inc. v. United States,* 2003 WL 1874738, at *2-3 (D.Conn. Mar.3, 2003) (permitting second deposition of corporate plaintiff's associates where defense counsel "has identified specific areas of inquiry [defendant] did not cover or ... did not cover in sufficient depth" based on newly developed facts). Given Nurse Salinas' testimony at her December 2005 deposition, this case is one in which "new information comes to light triggering questions that [plaintiffs] would not have thought to ask at the first deposition" of defendant Dr. Mortman. *Keck,* 1997 WL 411931, at *1.

*2 Plaintiffs additionally wish to question Dr. Mortman about a subsequent C-Section protocol about which Dr. Mortman testified at his deposition, but this protocol was not produced until former defendant Sharon Hospital was ordered to do so, in a discovery ruling, filed January 30, 2006. (Dkt. # 130, at 2; *see also* Dkt. # 122). Plaintiffs may question defendant Dr. Mortman about this new protocol, only to the extent that having the new protocol before him varies his prior testimony regarding such protocol.

Accordingly, defendants' Motion for Protective Order (Dkt.# 128) is *denied in large part* and plaintiffs' Request for Leave to Reopen Deposition (Dkt.# 130) is *granted in limited part,* such that plaintiffs may redepose defendant Dr. Mortman only with respect to: (i) the standards applicable to giving the "stat" order; and (ii) whether having the new protocol before him varies his prior testimony regarding such protocol, and if so, in what respects.

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

*See*28 U.S.C. § 636(b)(written objections to ruling must be filed within ten days after service of same); FED. R. CIV. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS,* 892 F.2d 15, 16 (2d Cir.1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

D.Conn.,2006.
Vincent v. Mortman
Not Reported in F.Supp.2d, 2006 WL 726680 (D.Conn.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.