UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARENCE R. COLLINS, Jr., et al. | : | CIVIL ACTION<br>No. 303CV945 (CFD) |
| V. | : | |
| OLIN CORPORATION | : | September 8, 2008 |

## OLIN CORPORATION'S REPLY TO PLAINTIFFS' OPPOSITION TO OLIN'S MOTION TO COMPEL DEPOSITIONS OF REPRESENTATIVE CLASS MEMBERS

Olin Corporation ("Olin") submits this reply memorandum in further support of its motion to compel the deposition of each Representative Class Member ("RCM") who will be the subject of the upcoming trial on the issues of liability and damages.

At issue is Olin's request for a four hour deposition with each previously deposed RCM in order to inquire into all issues of liability and damages, including topics (such as damages) addressed in the first deposition to the extent that such topics are implicated by information, circumstances and/or new theories that arose after an RCM was first deposed. Plaintiffs have rejected Olin's request.

This is not the first time Plaintiffs have refused an Olin discovery request and forced Olin to involve the Court in a discovery dispute the Parties themselves should have been able to resolve. In 2004, Plaintiffs refused to tender all the named class representatives for depositions. In ordering the Plaintiffs to tender all of the named class representatives, Magistrate Judge Smith held:

> These depositions are undoubtedly relevant and the court finds that they are not unreasonably cumulative or duplicative nor does their burden or expense outweigh their likely benefit. That the plaintiff feels that such discovery is 'not warranted' is of no import.

*See*, August 17, 2004 Ruling on Defendants' Motion to Compel (citation omitted) [Docket # 105]

The same rationale and result applies to this dispute over the RCM depositions. Plaintiffs' protestations are of no import

Plaintiffs' most recent suggestion that Olin be permitted to take a two hour deposition of each RCM that is limited to topics not addressed during the first deposition is untenable and unworkable. As noted in Olin's Memorandum In Support of its Motion to Compel [Docket #261], Plaintiffs' position ignores the change in circumstances since the original depositions. Plaintiffs' position also ignores the law.

That Plaintiffs' position is untenable and unworkable is obvious when one reads the cases they cite in support of their strained position. Plaintiffs cite *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94 (S.D.N.Y.) for the proposition that the party seeking a second deposition should be prohibited from re-questioning the deponent on *any topics* covered in his previous testimony. Plaintiffs' Opposition, p. 4 [Docket #262]. Plaintiffs' citation to *Tri-Star* is both misplaced and incomplete. Indeed, *Tri-Star* allowed the second deposition of an in-house attorney/senior executive. *Id.* at 102. In so doing, the Court did not prohibit re-questioning on all topics covered in the previous deposition. Rather, the Court specifically held that because the deponent had already been deposed, the questioner "may not re-question him regarding any of the topics covered in his previous testimony, **except where necessary to elicit new testimony regarding new claims and issues raised in [defendant's] Amended Third-Party Answer.**" *Id.* at 102-103 (emphasis added—the bold text contains the *Tri-Star* language that Plaintiffs conveniently omitted from their Opposition).

2

What *Tri-Star allowed* is precisely what Olin intends to do—cover prior topics and issues only where necessary to elicit testimony regarding new claims, positions and issues raised in the course of this litigation since the time of Plaintiffs original depositions in 2004 and 2005.

At the time of Plaintiffs' original depositions in 2004 and 2005, there was a single putative class of claimants—those who owned property in the Newhall Section of Hamden. Now, Plaintiffs have created, and the Court has certified, three subclasses of plaintiffs that did not exist at the time of the original depositions—a "Contaminated Property" subclass, a "Stigma" subclass, and a "Response Cost" subclass. Plaintiffs' three subclasses are now seeking damages based on different theories.

According to Plaintiffs, Olin should not be permitted to explore Plaintiffs new damage theories or new positions. Rather, Plaintiffs take the position that "[r]egardless of how this case has evolved due to the Court's rulings, the RCMs are *fact* witnesses who have been previously deposed and thoroughly examined on facts relevant to the subject matter of this case. Accordingly, Olin should not be able to re-examine the RCMs on topics discussed during the first depositions." Plaintiffs' Opposition, p. 6 (emphasis in original). Plaintiffs' Opposition suggests that "permissible topics for the second deposition include changes in the RCMs' personal situations that affect their damages and subsequent testing on their properties since their first depositions." *Id.* at 5. Presumably, the creation of subclasses was not a change in the RCM's personal situation, nor is it related to subsequent testing on the RCMs' properties.

Certainly Olin must be permitted to explore the bases for each of the subclasses' alleged damages, as well as any other changed circumstances with the RCMs. However, given Plaintiffs' position, it is clear that without the Court's intervention, Plaintiffs will not permit Olin

3

to examine Plaintiffs' to probe the bases for the new subclasses and new theories which Plaintiffs now advance.

An example highlights why Plaintiffs' position is untenable and unworkable. Plaintiffs now allege (and did not when the prior depositions were taken) that members of the "Stigma" subclass have suffered two separate and distinct harms, apparently manifested at different times and involving different forms or amounts of damage. In response to Olin's pending Motion for Partial Summary Judgment Based on Statute of Limitations [Docket #208], in March 2008, Plaintiffs' expert took the position that:

> "[w]hile the residential properties in the Stigma Subclass *may* have experienced some reduction in property value as a result of their properties' proximity to the Hamden Middle School and surrounding public parks, the properties in the Stigma Subclass experienced a **separate, distinct and additional harm** when regulatory authorities confirmed the existence of contamination at private residential properties within the Newhall Neighborhood"

*See*, Plaintiffs' Memorandum In Opposition to Olin Corporation's Partial Motion for Summary Judgment Based on Statute of Limitations, pp.5-6 (citing March 31, 2008 Affidavit of Christopher K. Kerin) (emphasis in original) [Docket #246]

If one adopts the Plaintiffs' argument, Olin would be prohibited from questioning any of the RCMs whose depositions have previously been taken on these purported changes in their damages, because the "topic" of damages was among the issues covered in the first deposition. In essence, Plaintiffs counsel wishes to foreclose inquiry into changed theories and changed circumstances, brought about in reaction to developments in the case. Plaintiffs argue that the "separate, distinct and additional harm" should go unexplored.

Equally untenable and unworkable is Plaintiffs' position that Olin should not be permitted to inquire of the RCMs how the existence of the three subclasses (that did not exist when each RCM was originally deposed) affects their respective damages. If Olin asks an RCM what damages they allege (and the source of those damages) based on their being in the

4

Contaminated Property subclass as opposed to the Response Cost subclass or the Stigma subclass, will Plaintiffs object because Olin (or the Town of Hamden) already addressed the topic of "damages" at the first deposition?

Recognizing the significance of the Parties' dispute, when negotiations between Plaintiffs and Olin reached an impasse, Olin suggested that the parties conduct a couple of "test" depositions. The purpose of the "test" depositions was two-fold. First, they would allow the Plaintiffs to see the types of questions and topics Olin intended to cover to determine if counsel in fact felt the questions and topics were objectionable. Second, if Plaintiffs did object to the questions and topics, the parties would have a record that could be presented to the Court for a ruling. Plaintiffs rejected this approach and insisted that if a deposition went forward there would have to be limitations with respect to the topics to be covered. As set out herein, there is no practical way for the Parties to limit the scope of the RCM depositions in advance of the depositions.

Rather than address the law and particular circumstances of this case, Plaintiffs simply repeat over and over that Olin not be permitted to examine the RCMs on topics discussed during the first depositions. This intractable position that Plaintiffs have consistently taken is what prompted Olin to file the instant motion to compel.

Notably missing from Plaintiffs' opposition brief is any substantive attempt to distinguish the cases cited by Olin for the propositions that: 1) a deposition may be reopened "where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition" *Vincent v. Mortman*, 2006 WL 726680, *1 (D.Conn. 2006); 2) a second deposition could address "old issues to the extent that they are implicated by information that arose after [defense witness] was first deposed." *Auto Alliance International,*

*Inc. v. U.S.* 2008 WL 2441051 (CITI 2008); 3) considerations relevant to the granting of additional time "include the need for additional time for full exploration of the theories upon which the witness relies" *Grill vs. Costco Wholesale Corp.*, 2004 WL 2314639 (W.D.Wash. 2004); 4) "[b]ecause of the time that has elapsed, the addition of new claims [contained in a Fifth Amended Complaint which had not been filed prior to the initial depositions], and the evident knowledge of the witnesses in particular areas, re-examination of the two witnesses is likely to provide additional information not obtainable at the first depositions." *Collins v. International Dairy Queen*, 189 F.R.D. 496 (M.D. Ga. 1999)(approving additional 4 hours of on the record deposition time to conduct additional discovery and acknowledging that some questions from defendants' counsel in these supplemental depositions might touch on subject matters about which these witnesses were questioned in their initial depositions); and 5) "In multi-party cases, the need for each party to examine the witness may warrant additional time." *Calderon v. Symeon*, 2007 WL 735773 at *1 (D.Conn. 2007).

In addition to the incomplete citation to *Tri-Star*, the other primary case cited by Plaintiffs, *Expert Choice, Inc. v. Gaertner, Inc.*, 2006 U.S.Dist. Lexis 41466 (D.Conn. 2006), is distinguishable and does not further Plaintiffs' argument. *Expert Choice* arose in the context of two 30(b)(6) deposition notices. The second deposition was not requested due to a change in circumstances, a change in the pleadings, or due to any factual changes occurring after the initial deposition. Despite this, the Court still allowed the second deposition. With respect to preventing a "second bite at the apple", the Court merely suggested that the parties work to remove redundant portions of the second 30(b)(6) notice that were already sufficiently testified to in the initial 30(b)(6) deposition. *Id.* at *20. Nothing in the *Expert Choice* opinion prevents Olin from deposing the RCMs as Olin intends to do.

6

Finally, Plaintiffs' assertion that there will be a significant burden on the RCMs if they are subjected to an additional deposition (be it two hours or four hours) is disingenuous. Presumably when the RCMs agreed to represent the classes that have been certified, they agreed to participate in this litigation. With respect to traveling to Hartford, that is where the case has been pending for over 5 years and is a location to which Plaintiffs have traveled on at least one occasion to attend a Court hearing. While Olin is not willing to concede that the RCM depositions should go forward in Hamden, if Plaintiffs can show that any RCM would suffer hardship if the depositions took place in Hartford, Olin is certainly willing to discuss and accommodate any such reasonable request.

## CONCLUSION

Throughout these proceedings, the parties and the Court contemplated that Olin would need additional time to depose the RCMs on the merits. These beliefs were evident even before new theories were advanced by the Plaintiffs and before changes in circumstances occurred. For the reasons set forth herein, as well as in Olin's Motion to Compel and supporting Memorandum, Olin Corporation respectfully requests that the Court grant Olin's Motion to Compel depositions of the 16 RCMs and that Olin be allowed to depose each RCM that was previously deposed for 4 hours of on the record deposition time and that the scope of such depositions not be limited, that is to say that Olin Corporation be permitted to inquire into all issues of liability and damages, including old issues to the extent that they are implicated by information, circumstances and/or new theories that arose after a Representative Class Member was first deposed.

SLC-3081955-1

Respectfully Submitted,

HUSCH BLACKWELL SANDERS, LLP


By:   /s/ Joel B. Samson
      Michael H. Wetmore (ct24899)
      Joel B. Samson (ct24898)
      Omri E. Praiss (ECF registration pending)
      190 Carondelet Plaza, Suite 600
      St. Louis, Missouri 63105
      Telephone: 314-480-1500
      Fax: 314-480-1505
      michael.wetmore@husch.com
      joel.samson@husch.com
      omri.praiss@husch.com

and

BROWN RUDNICK BERLACK ISRAELS LLP
      Mark S. Baldwin, Esq.
      185 Asylum St.
      CityPlace I, 38th Floor
      Hartford, CT  06103
      Telephone: 860-509-6500
      Fax: 860-509-6501
      mbaldwin@brownrudnick.com

*Attorneys for Defendant Olin Corporation*

8

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will serve all counsel of record by operation of the CM/ECF system.


_/s/ Joel B. Samson_____

SLC-3081955-1