

**NEWHALL COALITION**
**357 MILL ROCK ROAD**
**HAMDEN CT 06517**
**(203)-506-6482**

One People One Goal:
**BETTERMENT OF NEWHALL NEIGHBORHOOD**

**Clerk of the Court**
**U. S. District Court**
**District of Connecticut**
**United States Courthouse**
**450 Main Street,**
**Hartford, CT 06106**

February 13, 2010

*United States District Court*
*District of Connecticut*
*FILED AT HARTFORD*
*Feb. 18, 2010*
*Roberta D. Tabora, Clerk*
*By _____*
*Deputy Clerk*

Re: Collins, et al v. Olin Corp., et al.; Docket No. 3:03-CV-945 (CFD)

Dear Judge Christopher Droney:

Further to my earlier letter informing you that we reject all terms of the settlement presented to us by court appointed attorneys, McRoberts & Roberts, L.L.P. et al., and requesting you to direct the said attorneys to consult and seek our approval in any further negotiations with Olin Corporation and if the said attorneys are unable or unwilling to proceed as being requested, then to appoint alternate Attorneys so that justice can be served in this case.

I am also acknowledging the receipt of:

a.  Plaintiffs' Counsel's Response to Objection to Settlement-Supplemental Memorandum of Law in Support of Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds, sent to me by McRoberts & Roberts, L.L.P , Dated February 11, 2010.

b.  Olin's Response to Elizabeth Hayes' Letter to the Court sent to me by Husch Blackwell Sanders, LLP, Dated February ii, 2010.

Before I address some of the contested contents of these documents, may I request the court to direct McRoberts & Roberts, L.L.P. to provide us with copies of "one hundred sixty-seven (167) class members" release forms, who they claim have been sent to them. This information

should have been part of their submission, just as I attached the list of all signatories to my letter. This is just one example of how crucial information is conveniently withheld from us by attorneys who are supposed to protect our interests.

## RESPONSE TO THE CONTESTED CONTENTS

### 1.   The Settlement Will Have No Effect on the "Consent Order by DEP"

In the mind of plaintiffs' Counsel it may be that the two proceedings are separate and distinct. The understanding one gets from the submission of the defendants' attorneys is totally different. Remediation is mentioned in that document more that six times. The amount of $20,000,000 mentioned more than once in the document, is only for four feet maximum remediation. In the meeting with the class representatives at Keefe Community Center where the settlement was rejected, it was mentioned by the same attorneys that in the absence of any other agreed plan they had to base the settlement amount on the four feet remediation. To the question, what happens if the remediation plan changes, will the amount of settlement change the attorneys had no answer.

It is undisputable from the consent order; Olin has accepted its responsibility for all residential areas (as one of the four "Responsible Parties").

Even before the consent order, by establishing "Newhall Panel", providing funds for its meeting, and appointing and paying for the facilitators, Olin had accepted total responsibility for the contamination in the entire residential area. It is only after the present legal action that Olin has somehow convinced "everyone" except the residents that it is only responsible for 56 properties. This is a direct effect of the way Plaintiffs' attorneys have handled this case. Indeed if this case is handled in the manner Plaintiffs' attorneys are advocating, the residents will have no further choice except of living with a four feet remediation.

In fact it will not be surprising if those "167" who have sent their release forms have also in despair signed the access agreement for Olin Corp to begin four feet remediation.

The settlement being forced on the residents has already and will further have adverse effect on the likelihood of total cleanup of their neighborhood.

### 2. The Settlement Agreement Preserves Claims Related to Possible Future Physical Injury

Olin Corp. will surely use the settlement in future if there is ever an occasion to claim possible future physical, emotional or economic injury. So far their *modus operandi* is to contest everything, even those responsibilities that they have previously accepted. Their logic seems to be that they have nothing to lose by prolonging and delaying the rightful solution to the problem. Their latest submission is an excellent example: it contests every item, as if they have and never had anything to do with the contamination issue, and so it is their generosity that they are agreeing to this settlement. The naivety of the Plaintiffs' attorney is mind-boggling. After arguing that they will prevail in all aspect of this case Olin Corp. attorneys are urging the court to approve the settlement. My humble intellect misses the logic.

### 3. The Settlement Does Not Reflect the Relative Strength of the Various Claims

All along all residents of Newhall were assured by these attorneys that their claims have merit. If only 56 claims were worthy of compensation, why did these attorneys waste the time and resources of the rest of the residents? If these attorneys had any doubt about the claims of any residents, they concealed that information from the residents. Even after the ruling that Olin is responsible only for post 1931 dumping, residents were given the impression that they still have valid claims. The majority of the people who attended those meetings, that are being presented as proof of adequate communication with the residents, are in that class that, that according to the Plaintiffs' attorneys, have no or the least right of claim. If the attorneys knew it all along, this is another example of withholding vital information from us.

### 4. Response to objection that Counsel "Negotiated this Settlement With Olin Corp. Without our Knowledge or Participation"

The attorneys had the permission to negotiate and bring the offer back to the residents. Instead of bringing an offer from Olin for settlement, the attorneys brought a done deal, a settlement.
The attorney's description of July 23, August 31 and September 14, 2009 meetings is a proof how we were kept in dark about the details of the offer until the last meeting held in Keefe Center. At that meeting only the representatives of the class action were invited and were for the first times informed of the details of settlement including the amounts to be paid to each

subclass. All those that attended the meeting rejected the settlement. In spite of that unanimous rejection the attorneys proceeded without any authority to solicit release forms from all the residents. Many who have no idea what transpired at the meeting have sent the release forms and are now shocked that the attorneys were acting on their own without class representative's knowledge or approval.

This settlement in spite of the repeated claims that it has no bearing on the cleanup plan is based on four feet remediation. Those properties that after four feet cleanup still have contamination at the property are to be paid $23,000 gross. Those that will be totally remediated will be paid $7,600 and those that are in the stigma calass will be paid $750. If there is indeed no bearing of this settlement on the remediation, we ask the following question.

If through our persistence we succeed in convincing DEP and Olin Corp. to do 100% cleanup then how would it be fair that one group that is totally decontaminated gets $23,000 while the other group also totally decontaminated receive only $7,600 and third one with no stigma left receives $750.

This settlement is indeed, in addition to being unfair, a disguised way of imposing four feet remediation on this neighborhood.

I therefore respectfully request that this settlement may not be imposed on this already discriminated neighborhood and additionally the attorney who have by their action lost our confidence be summarily replaced.

Sincerely yours,

*Elizabeth Hayes*

Elizabeth Hayes
President Newhall Coalition
Newhall Advisory Committee