UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARENCE R. COLLINS, JR., et al.,<br>        Plaintiffs, | :<br>:<br>: |
| v. | : Civil Action No. 3:03-cv-945 (CFD) |
| | : |
| OLIN CORPORATION, et al.<br>        Defendants. | :<br>:<br>: |

**RULING ON MOTION FOR PROPOSED SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES**

This case arises out of a class action suit brought by the plaintiffs, homeowners in the Newhall section of Hamden, Connecticut, against several defendants, including Olin Corporation ("Olin"). The plaintiffs alleged that the soil and groundwater on their properties was contaminated as a result of the defendant's conduct. For the following reasons, this Court finds that the proposed settlement is procedurally and substantively fair, the distribution of settlement proceeds is reasonable and adequate, and grants the motion for settlement. The motion for attorneys' fees and expenses is also granted.

**I.      Factual Background and Procedural History**

In May of 2003, the plaintiffs brought this action against Olin and the Town of Hamden. They alleged that industrial wastes produced by the Winchester plant in New Haven were deposited in their neighborhood in Hamden (the Newhall neighborhood) and have contaminated their properties. The plaintiffs sought relief for negligence; recklessness; violation of the

Connecticut Environmental Protection Act of 1971, Conn. Gen. Stat. § 22a-15 *et seq.*; engaging in abnormally dangerous activity; intentional infliction of emotional distress; and recovery of response costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607.  The Court has certified a class comprised of all persons who owned property on May 2, 2003 in the Newhall neighborhood, and three subclasses: (1) the Contaminated Properties Subclass, (2) the Stigma Subclass, and (3) the Response Costs Subclass.

Counsel for the parties eventually agreed on a proposed settlement agreement.  The terms of this proposal include a settlement fund in the amount of $1,391,500 to be distributed among the plaintiffs.  A Remedial Action Plan approved by the Connecticut Department of Environmental Protection, although not part of this proposed settlement, has been initiated, and is separately funded in the amount of $40,000,000.

## II.     Legal Standards and Discussion

Under the Federal Rules of Civil Procedure, a proposed settlement which binds class members may be approved only "after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In addition, a fair settlement may not have been the product of collusion.  See Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000).

To determine the fairness of a proposed settlement, a Court must examine both its procedural and substantive fairness.  See D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (noting that "[t]he District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms").  Procedural fairness looks to "the negotiating process by which the settlement was reached."

Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982). A procedurally fair settlement must be "the result of arm's-length negotiations" wherein plaintiffs' counsel "possessed the experience and ability, and . . . engaged in the discovery, necessary to effective representation of the class's interests." Id., citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 463-66 (2d Cir. 1974). To decide if the substantive terms of the proposed settlement are fair, the Court must consider the nine Grinnell factors:

> "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

Grinnell, 495 F.2d at 463 (internal quotations omitted).

Moreover, a presumption of fairness, adequacy, and reasonableness may attach if the Court finds that arm's length negotiations took place between experienced counsel after a period of meaningful discovery. See Wal-MartStores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005), citing Manual for Complex Litigation, Third, § 30.42 (1995). Federal courts have adopted a "strong judicial policy in favor of settlements, particularly in the class action context." In re Painewebber Limited Partnerships Litigation, 147 F.3d 132, 138 (2d Cir. 1998), citing In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995) and In re Pacific Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).

### A.     Procedural Fairness

Since the plaintiffs in this case were adequately represented and, as a result, the proposed

settlement was the product of "arm's length negotiations," see Weinberger, 698 F.2d at 74, the proposed settlement is procedurally fair. This case was originally filed in May 2003. See, e.g. Notice of Removal, Civil Action No. 03-cv-945 (CFD), Dkt. # 1. Since that time, counsel for the plaintiffs consulted experts, conducted many depositions, interviewed fact witnesses, and requested production of numerous documents. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 10. As a result, counsel developed a sufficient level of familiarity with the case so as to seek and obtain certification of the class, brief and argue dispositive motions, and engage Olin's counsel in settlement negotiations. See id.

During those negotiations, counsel for the parties functioned as adversaries. Magistrate Judge Thomas P. Smith held a settlement conference involving counsel for both sides on June 18, 2009 in Hartford. See Notice of Settlement Conference, Civil Action No. 03-cv-945 (CFD), Dkt. # 287. When these negotiations did not lead to a resolution, counsel for both parties again convened in Boston for a full-day mediation before retired Judge William Cahill of the San Francisco County Superior Court. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 11. The compensation structure set forth in the proposed settlement agreement comports with Judge Cahill's recommendation. See id. This proposal would create a settlement fund that is three times as large as Olin's final offer during the settlement conference before Judge Smith. See id.

After more than six years of litigation and several formal mediation sessions, counsel for both sides agreed to a proposed settlement funded by Olin to an extent that far exceeds its initial offers. This record suggests that the plaintiffs received adequate legal representation and that the settlement agreement is the product of "arm's length negotiations." See Weinberger, 698 F.2d at

74.  Without any evidence of collusion, the procedural element of this proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Adequate notice was also provided to all class members.

### B. Substantive Fairness

#### 1. Complexity, Expense, and Likely Duration of Litigation

Under Grinnell, the Court must examine a variety of factors in determining the substantive fairness of a proposed settlement.  See 495 F.2d at 463.  In this case, the "complexity, expense and likely duration of the litigation," see id., counsels in favor of finding this proposed settlement to be fair.  Should this case continue, counsel for the plaintiffs face complex issues of environmental law.  In order to try to prove their case, the plaintiffs would have to identify and retain a variety of expert witnesses.  Counsel for the plaintiffs set forth seven specific categories which would require expert testimony at trial, including toxicology, waste disposal practices, environmental contamination, ammunition, diminution of property values, and emotional distress.  See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 13.  In addition to the complex issues of proof, securing expert testimony in these areas would be expensive for the plaintiffs.  Furthermore, rejecting this proposed settlement would force this case to continue into its seventh year of litigation, with much time still ahead.  As a result, this factor counsels in favor of approving the proposed settlement.

#### 2. Reaction of Class Members

Another important aspect of evaluating the fairness of the proposed settlement is the

reaction of the class members.  See Grinnell, 495 F.2d at 463.  During the notice period, none of the Contaminated Properties Subclass decided to opt out of the proposed settlement and just six of the 452 members of the Stigma Subclass elected to do so.  See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, pp. 14-15.  Afterwards, Elizabeth Hayes, President of the Newhall Coalition, submitted a letter protesting the settlement which was signed by other class members.[1]  See Letter from Elizabeth Hayes, Civil Action No. 03-cv-945 (CFD), Dkt. # 315 (hereinafter "Hayes Letter").  This letter articulated several objections to the proposed settlement, primarily that they preferred full remediation (instead of a clean-up that extended four feet below the surface) and that their claims justify more favorable compensation.  See id., pp. 3-4.  At the fairness hearing, Ms. Hayes and other class members spoke to the Court and voiced the reasons behind their opposition to the proposed settlement.

The Court understands that the class members who spoke at the settlement hearing, like all the other plaintiffs, have suffered a terrible ordeal.  Although not part of this settlement, under the current plan, Olin and the State of Connecticut will each contribute half of the $40 million required to fund the proposed remediation process.  See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 7.  As to this settlement, homes in the Contaminated Properties Subclass will be remediated up to four feet below the surface.  The class members whose homes are not fully remediated by this clean-up will receive $23,000, while class

---

[1] Plaintiffs' counsel contends that the letter contains signatures from individuals who are not members of the class.  Of the eighty-five signatures, twenty-seven were not members of the class.  See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, pp. 6-7.  Of the fifty-eight signatures, seven were members of the Contaminated Properties Subclass and fifty-one were members of the Stigma Subclass.  See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, pp. 6-7.

members whose homes are fully remediated will receive $7,600. See id. at pp. 22-23. Members of the Stigma Subclass will receive $750 per property and all members will retain several claims, including the ability to seek damages for manifest physical injuries. See id. at pp. 4, 23.[2] Going forward, the class members have no assurances that their claims would survive further dispositive motions or that they would ultimately prevail at trial. Furthermore, the Court recognizes the substantial sums allocated by both Olin and the State of Connecticut toward the current remediation plan set forth in the proposed settlement. Continued litigation would risk that fewer financial resources would be available to fund remediation at a later date.

The Court may approve a proposed settlement even where substantial portions of the class have objected. See, e.g. TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 462 (2d Cir. 1987) (affirming approval of settlement where between fifty-four and fifty-eight percent of classmembers objected); County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1325 (2d Cir. 1990) (affirming approval of settlement where "a majority" of classmembers objected); Grant v. Bethlehem Steel Corp., 823 F.2d 20, 23 (2d Cir. 1987) (affirming approval of settlement where as many as forty-eight percent of class may have objected). Even if the Court accepts each of the signatories to the Hayes Letter as objectors, less than twelve percent of the classmembers will have objected to the proposed settlement. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 16. On the other hand, nearly thirty percent of the Stigma Subclass has submitted Settlement Forms, along with a majority of the Contaminated Properties Subclass members. See id. Accordingly, this Court may approve the proposed settlement, so long as it is procedurally and substantively fair, despite the objections set forth by the signatories

---

[2]These amounts are before court-approved deduction of attorneys' fees and expenses.

to the Hayes Letter.

          *3.*     *Stage of Proceedings and Amount of Discovery Completed*

Several dispositive motions and settlement conferences have taken place throughout the pendency of this case. As previously discussed, counsel for both parties attended full-day mediation sessions before Magistrate Judge Smith of this Court and retired Judge Cahill of the San Francisco County Superior Court. In addition, a variety of dispositive motions have been briefed, argued, and decided. Most recently, Olin moved for summary judgment on statute-of-limitations grounds, see Defendant's Motion for Summary Judgment, Civil Action No. 03-cv-945 (CFD), Dkt. # 208, which was denied. See Ruling on Defendant's Partial Motion for Summary Judgment, Civil Action No. 03-cv-945 (CFD), Dkt. # 281. Previously, Olin successfully moved for partial summary judgment, which lead to the dismissal of those claims which were based on actions taken prior to 1932 by Olin's predecessor company. See Olin Corporation's Motion for Summary Judgment, Civil Action No. 03-cv-945 (CFD), Dkt. # 111; Ruling on Defendant's Partial Motion for Summary Judgment, Civil Action No. 03-cv-945 (CFD), Dkt. # 178. In addition, counsel for the plaintiffs sought and obtained class certification. See Ruling on Plaintiffs' Third Amended Motion for Class Certification, Civil Action No. 03-cv-945 (CFD), Dkt. # 232. To file and argue these various motions, counsel for the plaintiffs would have reviewed documents, interviewed witnesses, taken depositions, and otherwise fully investigated the plaintiffs' claims. Based on the number of dispositive motions filed and argued in this case, as well as the substantial efforts undertaken during settlement conferences, this Court finds that the maturity of the litigation counsels in favor of approving the proposed

settlement.

                4.      *Risk of Establishing Liability and Damages*

This factor requires the Court to balance the benefits of immediate recovery promised by the the proposed settlement agreement against the risks attendant to further litigation. See Grinnell, 495 F.2d at 463. As discussed above, the proposed settlement guarantees the plaintiffs financial compensation and remediation of their properties up to four feet below the surface. Meanwhile, if litigation were to continue, the plaintiffs would face serious challenges in establishing their claims against Olin. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 18. As discussed in this Court's prior ruling on the issue of successor liability, see Ruling on Defendant's Partial Motion for Summary Judgment, Civil Action No. 03-cv-945 (CFD), Dkt. # 178, the plaintiffs would not be able to recover for any of the damages they sustained as a result of actions taken prior to 1931. Should litigation continue, Olin stated an intent to move for summary judgment in an effort to preclude any recovery by the Stigma Subclass. See Dkt. # 314. In all, several significant issues complicate the plaintiffs' ability to prove Olin liable during further litigation.

Many of the same factors which complicate the ability of the plaintiffs to prove that Olin is liable would also hinder their attempts to prove damages. Counsel for the plaintiffs acknowledged that the process of establishing damages would have rested on an unpredictable "battle of the experts." Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 19. Since the proposed settlement promises plaintiffs more than $1 million in recovery and also funds a significant remediation process, the plaintiffs would face a serious risk of a

lower recovery if the litigation continued.

>    5.   *Risk of Maintaining the Class Action and Olin's Ability to Withstand Greater Judgment*

The risks associated with maintaining class certification and the defendant's ability to pay a larger sum in settlement are neutral factors which "weigh neither for nor against approval" of a proposed settlement.  In re Luxottica Group S.p.A. Securities Litigation, 233 F.R.D. 306, 314 (E.D.N.Y. 2006).  While this Court has certified the class of plaintiffs in this case, see Ruling on Plaintiffs' Third Amended Motion for Class Certification, Civil Action No. 03-cv-945 (CFD), Dkt. # 232, Olin could still seek decertification of the class before trial, after a verdict, or on appeal.  Though Olin has not stated an intent to do so, the ever-present risk of class decertification counsels in favor of approving the proposed settlement.  See generally McLaughlin v. American Tobacco Co., 522 F.3d 215 (2d Cir. 2008) (decertifying class on appeal).

Even if Olin could withstand a larger judgment, "fairness does not require that the [defendant] empty its coffers before this Court will approve a settlement."  McBean v. City of New York, 233 F.R.D. 377, 388 (S.D.N.Y. 2006).  In addition to payments in excess of $1 million that will be made to the individual plaintiffs, Olin is also contributing $20 million to help fund the remediation efforts.  Therefore, the defendant will pay a significant amount to the plaintiffs, both directly and indirectly, under the proposed settlement.  As a result, if this Court determines that the proposed settlement is substantively fair, based on the other Grinnell factors, Olin's ability to withstand a higher judgment would not preclude approval of the proposed

settlement. See D'Amato, 236 F.3d at 85 (noting that "this factor, standing alone, does not suggest that the settlement is unfair"). See also In re Paine Webber Ltd. Partnership Lit., 171 F.R.D. 104, 129 (S.D.N.Y. 1997) (same); In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 178 n. 9 (S.D.N.Y. 2000) (same).

6. *Reasonableness in Light of Plaintiffs' Strengths and Weaknesses*

The Court's inquiry into whether the proposed settlement falls within the range of reasonableness "is not susceptible of a mathematical equation yielding a particularized sum," In re Michael Milken and Associates Sec. Lit., 150 F.R.D. 57, 66 (S.D.N.Y. 1993), but rather "must be judged in light of the strengths and weaknesses of the plaintiff[s'] case." In re Austrian and German Bank Holocaust Litigation, 80 F. Supp. 2d at 178 (internal quotation marks omitted). As discussed above, the plaintiffs face several significant obstacles in proving Olin's liability, the necessary damages, and surviving any further dispositive motions. Given these difficulties as well as the other factors discussed above, the proposed settlement is within a range that is reasonable in the view of this Court.

**C.     Attorneys' Fees and Expenses**

In this case, counsel for the plaintiffs seeks $463,833.33 in attorneys' fees, which accounts for one third (33.33%) of the total fund. The Second Circuit has expressed a preference for the percentage method of calculating attorneys' fees, noting that such an approach "aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396

-11-

F.3d 96, 121 (2d Cir. 2005), quoting In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577, at *25 (S.D.N.Y. 2002) (internal quotations omitted).  To determine whether that percentage is reasonable, the Court must analyze several factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000), quoting In re Union Carbide Corp. Consumer Products Business Securities Litig., 724 F.Supp. 160, 163 (S.D.N.Y. 1989).

In this case, the Goldberger factors support an award of fees sought by plaintiffs' counsel.  Since the beginning of this case more than six years ago, counsel has worked a combined 8,468.6 hours.  See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 25.  At a normal billing rate, they submit that nearly $2,000,000 in fees would have been reasonably charged.  See id.  As discussed throughout this ruling, this case was extremely complex.  Counsel faced a challenging environmental tort case, which required expert consultation and numerous evidentiary challenges.  Several dispositive motions were filed and argued.  Furthermore, plaintiffs' counsel is experienced in the field of environmental law and, in this case, litigated against similarly competent and qualified counsel for the defense.  A compensation of one third of the total fund is in line with the percentage fees awarded in similar class action suits.  See, e.g. Silverberg v. People's Bank, 23 Fed.Appx. 46, 48 (2d Cir. 2001) (affirming award to plaintiffs' counsel of "nearly" one third of the settlement fund in attorneys' fees); Dullard v. Berkeley Associates Co., 606 F.2d 890, 895, fn. 5 (2d Cir. 1979) (observing that awarding one third of recovery, after costs, is "presumptively permissible" in personal injury cases).  Finally, public

policy considerations justify this award of attorneys' fees.  In environmental tort cases, issues of proof and causation are often difficult.  Contingent-fee arrangements will encourage other attorneys to accept and prosecute cases on behalf of individuals who have sustained injuries similar to those of the plaintiffs in this case.

Plaintiffs' counsel also requests $183,294.84 in expenses which were incurred during this suit.  Generally, courts may award reimbursement to counsel for "expenses that are 'incidental and necessary' to the representation, provided they are 'reasonable.'"  Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987), quoting Northcross v. Board of Education, 611 F.2d 624, 639 (6th Cir.1979).  These costs were originally generated in connection with consulting and securing experts and consultants, deposing witnesses, traveling, and other incidental expenses.  See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 29.  Generally, "investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review-are the type for which the paying, arms' length market reimburses attorneys."  In re Global Crossing Securities and ERISA Litig., 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (internal quotation marks omitted).  As discussed above, expert input is especially important in the prosecution of an environmental tort case.  Therefore, consulting with experts and consultants in the field was "incidental and necessary" to representing the interests of the plaintiff class.  See Reichman, 818 F.2d at 283.  Likewise, deposing witnesses and the related travel and incidental expenses are also necessary to representing the class.  See In re Global Crossing, 225 F.R.D. at 468.  Since the amount of costs requested is also reasonable, plaintiffs' counsel is entitled to the requested fees.

### III. Conclusion

For the foregoing reasons, the Motion for Settlement [Dkt. # 308] and the Motion for Attorneys' Fees and Expenses [Dkt. # 310] are GRANTED.

So ordered this <u>21st</u> day of April, 2010 at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**